Name David Tyrone Samuel

Street Address 1100 Howe Ave, Apt 126

City and County Sacramento, Sacramento

State and Zip Code California, 95825

Telephone Number 512-522-8571



**FILED**

OCT 18 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
   DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

David Tyrone Samuel

Sydney Brooke Roberts

see attached

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

### -against-

Sacramento Housing and Redevelopment Agency

La Shelle Dozier

see attached

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Amended

**Complaint for a Civil Case**

Case No. 2:22-cv-01699 TLN AC PS
*(to be filled in by the Clerk's Office)*

Jury Trial: ☐ Yes ☐ No
    *(check one)*

Additional Plaintiffs:

AIMS, A Minor

DAYS, A Minor

Additional Defendants:

Tanya Cruz
Tameka Jackson
Tiffany Brown
Ibra Henly
Tyler Thao
and DOES 1-10 inclusive.

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | David Samuel |
| Street Address | 1100 Howe Ave, Apt 126 |
| City and County | Sacramento, Sacramento |
| State and Zip Code | California, 95825 |
| Telephone Number | 512-522-8571 |

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known).  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Sacramento Housing and Redevelopment Agency |
| Job or Title (if known) | |
| Street Address | 801 12th Street |
| City and County | Sacramento, Sacramento |
| State and Zip Code | California, 95814 |
| Telephone Number | (916) 440-1390 |

Defendant No. 2

| | |
|---|---|
| Name | La Shelle Dozier |
| Job or Title (if known) | Executive Director |
| Street Address | 801 12th Street |
| City and County | Sacramento, Sacramento |
| State and Zip Code | California, 95814 |
| Telephone Number | (916) 440-1319 |

2

Additional Plaintiff Information:

Sydney Brooke Roberts
1100 Howe Ave, Apt 126
Sacramento, Sacramento
California, 95825
(512) 522-8571

AIMS, A minor

DAYS, A minor

Defendant No. 3

| | |
|---|---|
| Name | MaryLiz Paulson |
| Job or Title (if known) | Manager of Housing Choice Voucher Operations |
| Street Address | 801 12th Street |
| City and County | Sacramento, Sacramento |
| State and Zip Code | California, 95814 |
| Telephone Number | (916) 440-1390 |

Defendant No. 4

| | |
|---|---|
| Name | Tory Lynch |
| Job or Title (if known) | Program Manager |
| Street Address | 801 12th Street |
| City and County | Sacramento, Sacramento |
| State and Zip Code | California, 95814 |
| Telephone Number | (916) 440-1390 |

## II.   Basis for Jurisdiction

Federal Courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in Federal Court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same state as any plaintiff.

What is the basis for Federal Court jurisdiction? *(check all that apply)*

☒ Federal question          ☐ Diversity of citizenship

3

Additional Defendant Information:

Tanya Cruz
801 12th Street
Sacramento, Sacramento
California, 95814
(916) 440-1390

Tameka Jackson
801 12th Street
Sacramento, Sacramento
California, 95814
(916) 440-1390

Tiffany Brown
801 12th Street
Sacramento, Sacramento
California, 95814
(916) 440-1390

Ibra Henly
801 12th Street
Sacramento, Sacramento
California, 95814
(916) 440-1390

Tyler Thao
801 12th Street
Sacramento, Sacramento
California, 95814
(916) 440-1390

and DOES 1-10 inclusive
801 12th Street
Sacramento, Sacramento
California, 95814
(916) 440-1390

Fill out the paragraphs in this section that apply to this case.

**A.    If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Americans with Disabilities Act and Amendments, Fair Housing Act and Amendments, Rehabilitation Act and Amendments, Fourteenth Amendment Due Process

**B.    If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. *Or* is a citizen of *(foreign nation)* _____.

4

b.     If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____. *Or is* incorporated under the laws of *(foreign nation)* _____, and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.     The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

_____

_____

_____

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

See attached
_____

_____

_____

_____

_____

Plaintiffs David Samuel, Sydney Roberts, AIMS, and DAYS are a family residing in Sacramento County who are participants in the Department of Housing and Urban Development's (HUD) Housing Choice Voucher (HCV) program.

Sacramento Housing and Redevelopment Agency (SHRA) is a public/private corporation which is a recipient of federal funding to implement HUD's HCV program in the city and county of Sacramento. SHRA is a Public Housing Authority (PHA).

David Samuel, a member of the family, is a qualified disabled person receiving social security disability insurance (SSDI). David is diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), Autism Spectrum Disorder (ASD), Major Depressive Disorder (MDD), and Post Tramautic Stress Disorder (PTSD). SHRA has been aware that David is disabled and may require reasonable accommodation through verification of SSDI benefits as part of it's income verification process. SHRA verified income from the family, including asking additional questions about David's SSDI income as recently as May 18, 2022.

SHRA further has access to David's complete medical records from his provider which clearly notes these diagnoses. Finally, SHRA received a note from David Samuel's physician verifying the need for reasonable accommodation. David is currently attempting to attend college to retrain into a position which better accommodates these disabilities and is searching for work at home opportunities which would allow better management of disabling conditions.

AIMS, a minor and member of the family, is a disabled person with a diagnosis of ASD. AIMS receives speech, occupational, and behavioral therapy at home, and requires reasonable accommodation to establish a distraction free space with only the items necessary to perform these therapies.  SHRA is aware that AIMS may need reasonable accommodation because it was informed of such via reasonable accommodation request.  SHRA requested and received on May 18th, 2022 information about whether AIMS was receiving SSI for disability, demonstrating knowledge of potential need for reasonable accommodation.

"The family" refers to the recipient family, in particular those with qualifying disabilities to support the following claims.

In June of 2018, the family was enrolled in FSRP, an intensive homelessness reduction program administered by the county of Sacramento, which provided housing assistance and wrap around services for chronically homeless disabled individuals https://www.saccounty.gov/news/latest-news/Pages/Whatever-It-Takes-%E2%80%93-A-New-Approach-.aspx).

As part of the wrap around services, the family was assigned a social worker to manage housing related issues as part of a program called Property Related Tenant Services (PRTS). The PRTS Social worker, Ashley Valentine ("AV") an employee of Sacramento Self Help Housing (SSHH), was responsible for coordinating all matters related to housing, including communication with SHRA regarding the issuance, renewal, and maintenance of an HCV voucher for the family.

As part of the HCV program enrollment process, SHRA performed an income verification for the family, which required the family to provide a verification letter for David's SSDI benefits.  Between the SSDI benefits verification letter, FSRP program enrollment, subsequent medical records

submission, note from physician, and both informal and formal reasonable accommodation requests, SHRA had full awareness that the family may need reasonable accommodation.

The family brings these complaints under section 1983 for violations of the ADA, FHA, Rehab Act, and due process clause of the Fourteenth Amendment. The family has reason to believe it can demonstrate violations of the Administrative Procedures Act (APA) have also occurred with additional discovery.

The family believes that monetary damages are appropriate because SHRA engages in a pattern or practice of discrimination and other rights violations, and these practices are documented in their administrative guide. The administrative guide is SHRA's promulgation of policies developed by the agency itself along with it's interpretation of ADA, FHA, and Rehab Act requirements.

The family believes that it has ample evidence to demonstrate that SHRA behaved with deliberate indifference in violating the rights of the family, having both recently entering into voluntary compliance agreement (VCA) in January of 2020 containing a requirement to provide extensive training with regard to reasonable accommodation to prevent future violations. Despite this training, SHRA continues the same pattern or practice of discrimination and rights violations it agreed to avoid in the VCA.

This complaint has several complaint items of similar type which occurred over an extended time period and are thus numbered separately. All complaint items are ongoing as of the time of filing. The family certifies that none of these items are frivolous, that it has uncontroversial and overwhelming evidence to support each item, it believes it can demonstrate qualification for damages and standing at trial, and the evidence is sufficient enough that a jury will decide for the family with regard to each item.

This complaint relies on guidance from HUD and the United States Department of Justice (DOJ) to interpret SHRA's legal requirements under the FHA, ADA, and Rehab Act. This guidance comes in the form of joint statements released by HUD and DOJ, and these statements directly address many of the items within this complaint. When this complaint references this guidance, it is implying grounds for the complaint item rests on violations of FHA, ADA, and Rehab Act requirements.

These joint statements, titled "REASONABLE ACCOMMODATIONS UNDER THE FAIR HOUSING ACT" (https://www.hud.gov/sites/documents/huddojstatement.pdf) and "REASONABLE MODIFICATIONS UNDER THE FAIR HOUSING ACT" (https://www.hud.gov/sites/documents/reasonable_modifications_mar08.pdf) are referred to collectively as "HUD/DOJ".

## Section I – Denial or Delay of Reasonable Accommodation

SHRA has on multiple occasions denied the family reasonable accommodation consistent with requirements of the FHA, ADA, and Rehab Act. The denials come in stark contrast with guidance offered by HUD/DOJ, at times taking positions which are the literal opposite of the guidance. The continual denial of even basic effective communication accommodation has denied the family the opportunity to fully participate in the program and resulted in physical stress, emotional distress, and setbacks in achieving their employment, education, and treatment goals.

1)  On May 17, 2022 SHRA denied the family's informal reasonable accommodation request, made directly to an unknown SHRA supervisor ("supervisor") in a phone call for an extra bedroom.  The need for the accommodation was provided to supervisor via phone call, in which the supervisor was reversing a voucher termination the family had not been notified of.  The nexus between the disability and request was provided at the time, which was to provide the family an opportunity to pursue educational, employment, and treatment in the unit while providing full use and enjoyment of the unit. The supervisor did not provide reason or recourse for the reasonable accommodation denial consistent with FHA requirements.

2)  On May 19, 2022, the family was advised by AV to submit a formal reasonable accommodation request for an extra bedroom on their HCV voucher to SHRA.  The family did so on the same day and included an authorization form to speak with David's physician and a full copy of David's medical records which included information about disabling conditions.  On May 31, 2022 the family submitted a letter from David's physician which also supported the nexus between the reasonable accommodation request and David's disability.  Despite this, SHRA made several requests for medical records they already possessed, while failing to discuss the accommodation with the family or physician.

On July 15, 2022 the family received a letter from SHRA stating the accommodation request had been denied because SHRA believed alternative accommodations may exist and among other reasons that SHRA is legally required to treat all families of like composition the same.  The family attempted to contact SHRA to determine what information SHRA used in their determination as it did not appear the accommodation was decided on a case by case basis.  SHRA's denial letter contained only one method to contact the deciding parties, a phone number which advised the caller that the voicemail box owner had no access to it, to not leave a message, after which it disconnected.  HUD's technical directive PIH 2010-26 (HA) offers this guidance regarding the request:

> G(7) "Unit Size. In public housing, a family with a disability may need a unit that is larger than the PHA's permitted occupancy standards. It is unlawful to fail to provide a reasonable accommodation which denies such a family the opportunity to apply for and obtain a larger unit if the disability of the family member requires this type of accommodation."

3)  On June 20, 2022 the family requested as a reasonable accommodation that SHRA communicate via email, consistent with the FHA's effective communication requirement in a phone conversation with an unknown individual over SHRAs general information line.  The need for this accommodation is the family has difficulty following extended phone conversations.

The family made another request for this accommodation directly with an SHRA employee over the phone on June 27, and July 15.  On July 29, the family spoke with SHRA employee Tameka Jackson and made the request again, and made another request on August 19, 2022.  The family made further requests on written requests August 3, September 12, and via certified letter on September 16, 2022.

SHRA has failed to approve or deny the accommodation timely and refuse to communicate via email.

4)  On June 27th, 2022 the family requested as a reasonable accommodation that SHRA raise the payment standard and/or lower the rental calculation portion of the rent during a conversation with an SHRA employee on their main information line.  The need for this accommodation was the family required housing which fit the noise and access to services requirements of the family, and none was available in their search.  SHRA has both failed to approve or deny the accommodation.

5) On July 15th, 2022 the family requested an extension to the voucher deadline as a reasonable accommodation in a phone call with an SHRA employee.  The need for this accommodation was to allow extra time to locate a unit which fit the specific disability requirements of the family.   The family also requested a voucher extension on SHRA's website, which stated a response within 48 hours.  That request as of the time of filing several months later is still open and SHRA has neither approved or denied the request.

6) On September 16, 2022 and September 23, 2022 the family made via email and certified letter, additional reasonable accommodation requests for bedrooms, payment standard adjustment, and communication reasonable accommodations which have also been ignored by SHRA.  This is inconsistent with HUD/DOJ guidance which requires prompt (presumably a higher standard than timely) responses with regard to reasonable accommodation requests.

## Section II – Accessibility of Services

SHRA has, as a consistent pattern or practice, deliberately made services unavailable to the family. The has effectively denied the family the ability to obtain housing which fits their needs, and resulted in physical stress, emotional distress, and setbacks in achieving their employment, education, and treatment goals.

7) SHRA has made services inaccessible to the family due to disability. SHRA during the months of June, July, August, and September 2022 repeatedly failed to provide a way to contact a case worker directly.  Specific examples of this are:

> a)  The SHRA website's "request a callback" feature which promised a callback from a worker within 48 hours.  The family's call back request submitted on July 1st, 2022 remained open on the website until sometime in September 2022, when the option was removed from the family's profile.

> b) SHRA's reasonable accommodation committee telephone number, which was listed as the only option to request a hearing regarding reasonable accommodation hearings or issues, had a voice mail message which stated the caller did not have access to the voicemail, not to leave a message, and the line would disconnect.  The family attempted to call this number several times over the course of June through September 2022 and received the same message each time. Sometime after September 15th, 2022 a new voicemail message was recorded which did not disconnect, however calls were not returned for messages left on September 15th, and September 22nd, 2022.

> c) SHRA continues to prevent direct access to their offices, or any method of direct communication with case workers.  As of September 2022, SHRA's lobby is closed to the public, and the closest a participant can come to the lobby is a cage outside of the office with access controlled by a security guard.

> d) SHRA staff, including supervisors and case workers refuse to return voicemails or respond to requests for contact left with employees on the main HCV information line despite more than a dozen requests between June and September 2022.  Information line employees state that they do not have access or authority to process case information.

The requirement for accessible services are a requirement of the ADA, Rehab Act, and FHA.

8)  This refusal to make services accessible is particularly jarring as SHRA maintains a separate system that AV was able to access and receive responses from within minutes.  The family has evidence that SHRA deliberately maintains separate channels of communication, and repeatedly confirmed via those channels with AV that they were aware of the communication attempts, while failing to respond directly to the family's attempts to access program services.  This violates the FHA's effective communication requirements, and because the family believes it was due to communication requirements due disability, ADA and Rehab Act requirements.

9)  SHRA is aware that denial of reasonable accommodation is impacting the family's housing choices, having received notice that the family on two occasions received information from housing providers that they would be able to provide suitable housing to the family, however adjustments to payment standards or room size were required.  Despite notification that appropriate housing was available, SHRA continues to deny or ignore the family's reasonable accommodation requests, and to date has not approved a single request.

## Section III – Discrimination based on disability type

SHRA discriminated against the family in multiple discrete incidents due to the family's type of disability violating the family's rights established under the FHA, ADA, and Rehab Act.   This discrimination based on disability type or perceived severity violates anti-discrimination requirements noted in 24 CFR Section 8.33, and resulted in severe physical stress, emotional distress, and setbacks in achieving their employment, education, and treatment goals.  HUD/DOJ gives this guidance with regard to discrimination by type:

> Questions and Answers(1) "The Act prohibits housing providers from discriminating against applicants or residents because of their disability or the disability of anyone associated with them and from treating persons with disabilities less favorably than others because of their disability. The Act also makes it unlawful for any person to refuse "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford ...person(s) [with disabilities] equal opportunity to use and enjoy a dwelling."

10)  SHRA, as part of it's documented policies, discriminated against the family based on their type of disability on multiple occasions.  The SHRA Housing Choice Voucher Administrative Plan ("PLAN") (https://www.shra.org/wp-content/uploads/2020/07/J.-2021-Admin-Plan-County-DRAFT.pdf) documents this pattern or practice with several examples.

> a)  The PLAN, Chapter 5 titled "Subsidy Standards", explicitly allows room size exceptions to to its subsidy standards when the accommodation is to support disabilities which require a "Live-In Aide[s]" or "Medical Equipment".  The PLAN does not define qualifying medical equipment nor is it clear why the family's stated use of the room does not qualify as "Medical Equipment".  The denial letter issued by SHRA dated July 08, 2022 for an extra bedroom adjustment discriminates against all disabilities which do not fit SHRA's narrow (and in and of itself a rights violation) definition of these conditions.

> b)  The PLAN, Chapter 5 requires a single permanent Live-In Aide, who uses the room as their permanent residence.  The family is qualified for In Home Supportive Services from the state of California and have been considering this option particularly as David and AIMS needs are

becoming more complex. This discriminates against any set of disability requirements in which the family may need multiple live-in aides who provide various services, such as occupational, speech, or behavioral therapy, or the flexibility to contract with a service which employs most qualified professionals, particularly those consistent with the family's specific disability requirements. The PLAN chapter 5 states:

> "An additional bedroom will **not** be approved for multiple caregivers who provide service to a participant(s)/applicant(s) on a rotating or part-time basis (i.e. less than 12 hours per day).

> Once approved, the live-in aide must use the subsidized unit as his or her primary place of residence.

> An additional bedroom will not be provided for family members of a live-in aide (e.g. the live-in aide's children, spouse/partner, etc.)" (emphasis from PLAN)

This restriction limits the family's medical options by barring the use of any aide who may already have a residence or family from providing extended care services to the family. It is unclear who would qualify to provide these services after SHRA's impositions on the pool of potential care providers, and appears to be designed intentionally to prohibit or limit reasonable accommodation.

c) As SHRA does allow Reasonable Accommodation of an extra bedroom in instances where a family has disabilities which meet the narrow requirements offered above and can find a provider which can comply with those requirements, but refuse accommodation based on other disability types, this represents discrimination based on disability type or need.

## Section IV – Violations of FHA, ADA, and Rehab Act Reasonable Accommodation Requirements.

SHRA has disregard the family's rights on several occasions with justification coming from their documented policies. These violations represent a continuing pattern of deliberate indifference in discriminating against or violating the family's right to reasonable accommodation. This continued pattern or practice of rights violation and discrimination has caused a tremendous amount of physical stress, and emotional distress for the family as well as resulting in setbacks achieving their employment, education, and treatment goals.

11) The PLAN Chapter 5 includes specific requirements that all reasonable accommodation requests for adjustment to the payment standard be made according to a specific process, limiting the family's options for requesting a reasonable accommodation. The family made this request in both June 2022, and July 2022 verbally under the assumption it would be continued into the family's existing reasonable accommodation request and were not made aware that there was a specific requirement without which SHRA would not process the request.

Further, the form mentioned in SHRA's PLAN ("Request for Reasonable Accommodation") does/did not actually exist. SHRA offers only one form, regardless of disability or request, a "AUTHORIZATION FOR USE OR DISCLOSURE OF HEALTH INFORMATION". Continuing in

SHRA's egregiousness, this form requires that recipients sacrifice HIPAA and Privacy Act protections to even be considered for reasonable accommodation.

Both the requirement that families provide their entire medical record, including information unrelated to the request, and that the family follow a specific process with a specific form are contrary to guidance offered by HUD/DOJ:

> "A provider may not refuse a request, however, because the individual making the request did not follow any formal procedures that the provider has adopted. If a provider adopts formal procedures for processing reasonable accommodation requests, the provider should ensure that the procedures, including any forms used, do not seek information that is not necessary to evaluate if a reasonable accommodation may be needed to afford a person with a disability equal opportunity to use and enjoy a dwelling."

12) The PLAN Chapter 5 explicitly disallows adjustment to payment standards until after an inspection of the unit has been completed. Not only has this prevented the family from working with potential housing providers with the accommodated payment standard in order to qualify for suitable housing, it adds additional requirements to the reasonable accommodation inconsistent with HUD/DOJ guidance. The net effect of this is to deny housing opportunities and program participation to the family.

13) SHRA denied an extra bedroom reasonable accommodation in a letter dated July 08, 2022 while failing to engage in the interactive process as required by FHA, ADA, and Rehab Act. HUD/DOJ guidance offer that the interactive process is non-discretionary part of the process.

> a) Between May 18, 2022 and July 15, 2022, when the family received the denial letter, SHRA did not attempt to discuss the accommodation with the family at all despite repeated attempts by the family to establish communication regarding the accommodation.

> b) Further, SHRA did not contact the family's physician despite requiring authorization to do so before processing the reasonable accommodation request.

> c) SHRA claimed in bad faith the denial of the extra bedroom was based on "medical information" despite failing to note in plain language what information was actually considered.

14) SHRA claimed that it denied the request for reasonable accommodation of an extra bedroom because policy or practice requires them to deny all reasonable accommodations. This despite acknowledging that there is a nexus between the reasonable accommodation and the family's disability related requirements, or consistent with HUD/DOJ guidance, the accommodation is necessary. The reasoning offered by SHRA in their denial letter is:

> "Your request states that you require an additional bedroom due to disability, however, needs can be met without increasing the voucher size. We recommend alternative sleeping arrangements. There are two bedrooms currently on the voucher and one could be made available to your disabled family member."

It then follows by quoting SHRA policy and regulation as justification. As SHRA did not engage in the interactive process, it is unclear how SHRA came to this decision other than their policy or practice required denial of all reasonable accommodations. This position was further supported on September

12, 2022 when SHRA employee Tanya Cruz stipulated in an informal hearing regarding the issue that SHRA does not contest that the accommodation is necessary, only that SHRA is required by policy or practice to deny any request when it feels an alternative exists.

HUD/DOJ guidance offers a very clear definition for when a reasonable accommodation is deemed necessary:

> "A requested accommodation or modification may be necessary when there is an identifiable relationship, or nexus, between the requested accommodation or modification and the individual's disability."

The guidance repeatedly reminds PHAs such as SHRA that denying a reasonable accommodation which meets this standard is illegal, unless it represents an undue burden on the program.

15)  SHRA denied the family's reasonable accommodation request for an extra bedroom in a letter dated July 08, 2022 because it's policy and practice prohibits it from considering reasonable accommodation needs on a case by case basis.  The denial letter states as reason for denying the accommodation:

> "The subsidy standards must be applied consistently for all families of like size and composition."

HUD/DOJ guidance make very clear the FHA, ADA, and Rehab Act requirement to evaluate reasonable accommodations on a case by case basis, with deference given to the disabled family's statement of needs:

> "A "reasonable accommodation" is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling, including public and common use spaces. Since rules, policies, practices, and services may have a different effect on persons with disabilities than on other persons, treating persons with disabilities exactly the same as others will sometimes deny them an equal opportunity to use and enjoy a dwelling. The Act makes it unlawful to refuse to make reasonable accommodations to rules, policies, practices, or services when such accommodations may be necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling."

16)  SHRA continues to refuse to provide timely responses to reasonable accommodation requests in a timely manner.  Since it's initial May 17, 2022 request, SHRA has responded to only one request, from May 19, 2022.  By continuing to ignore reasonable accommodation requests SHRA continues to in effect deny them.  HUD/DOJ offers this guidance regarding timeliness:

> "A provider has an obligation to provide prompt responses to reasonable accommodation requests. An undue delay in responding to a reasonable accommodation request may be deemed to be a failure to provide a reasonable accommodation."

## Section V – Deliberate Indifference

17)  SHRA, as a matter of policy or practice, interprets requirements regarding implementation of reasonable accommodation requirements in a fashion which contradicts HUD/DOJ guidance of FHA requirements with the resulting effect of denying rights to the family.

   a)  While HUD/DOJ guidance offers that a reasonable accommodation is "necessary" if a qualified disabled person provides a nexus between the request and disability, SHRA appears to interpret "necessary" to mean if they feel other alternatives are available.

   b)  Contrary to HUD/DOJ guidance, SHRA states that according to policy or practice the possible existence of an alternative, regardless of the family's view of that alternative, may render an accommodation not necessary.

   c)  SHRA intentionally truncates regulatory requirements in order to reach this conclusion.  The requirement according to HUD/DOJ guidance is that the requirement be necessary for "full enjoyment of the premises" to the same degree as a non disabled family.

SHRA's suggestion that the family make **alternate** arrangements indicates that it is aware there may be impingement on the family's full use and enjoyment of the premises, but this impingement is not part of it's interpretation of FHA, ADA, and Rehab Act requirements.

18)  The PLAN Chapter 5 violates regulatory requirements for Room Size Calculation by explicitly stating it will terminate Housing Assistance Payments if occupancy isn't higher than the room allocation standards described by FHA requirements.  It goes on to state that a one bedroom voucher does not qualify as under housed if it has four persons.  As SHRA recommends in it's Reasonable Accommodation denial that one bedroom be used for reasonable accommodation purposes, the net result would be four persons in effectively a one bedroom unit.  This is inconsistent with FHA requirements which explicitly offer as a part of subsidy standards one bedroom per two persons.

19)  The PLAN Chapter 5 states SHRA has the discretionary right to deny changes in family composition.  It was implied during a phone call with unknown SHRA supervisor on May 17th, 2022 that because the family had not yet submitted a birth certificate or social security number for newborn DAYS within 30 days (as these were still processing) that the family was in violation of policy and this contributed to SHRAs decision to terminate their voucher without notice. Specific policy included in SHRA's plan mentions that all of these changes require prior approval:

   "A spouse/partner and his or her minor children
   A minor who had been part of the assisted household who moved out and is returning to the household,
   A PHA pre-approved live-in aide,
   Birth of children by an existing family member,
   Long-term foster placement or court-ordered custody,
   Court granted guardianship or conservatorship,
   Adult children of the head of household or spouse who are disabled,"

And later offers:

   "HCV participants must obtain prior authorization of any additions to the household."

It is unclear how SHRA has determined regulations allow it to require pre-approval of birth or deny court ordered family composition (including the birth of a child in the family's case), however the threat of termination due to failed "pre-approval" of the birth of the family member is inconsistent with FHA regulations.

SHRAs PLAN Chapter 5 continues to illustrate this pattern of deliberate indifference to regulation by offering the following with regard to foster or court ordered additions:

> "The PHA will add such members to the family composition; however, the addition will not be reflected in the subsidy calculation until the foster child(ren) or adult(s) have been verified as being in the household for six months."

Even if this results in an "under-housed" condition according to FHA requirements.  Even more incredibly, the PLAN goes on to explicitly state that SHRA retains the discretionary right to limit family composition if they are required to increase voucher room size:

> "The PHA may limit the number of foster children who may be added to the household based on the family's current voucher size. If adding additional foster children to the household will result in an increase in the voucher size and causes an under-housed situation for the family in the subsidized unit, the PHA may deny the addition."

## Section VI – Due Process Violations

SHRA on several occasions deprived the family of due process in both the conduct of it's administrative hearing process and denial of reasonable accommodations.

20)  On May 17, 2022 the family made a reasonable accommodation request during a phone call with an unknown SHRA supervisor.  The supervisor denied the request outright without requesting any additional information from the family or informing the family of the right to informal or formal hearing for the denial of services.

21)  On July 15, 2022 the family received a denial letter for a second, formal reasonable accommodation request submitted May 19, 2022.  This letter provided as the only way to request an informal or formal hearing was to call a telephone number which contained the message that the individual did not have access to the voicemail box and advised the caller to not leave a message, after which it immediately disconnected.   SHRA was not only aware that this number was non-functional, that it could not even take voicemails suggests it had been non-functional for quite some time.  Providing a non-functioning number as the only method to request an informal hearing is an intentional attempt to deny due process by SHRA.

22)  SHRA, though either refusing to timely return calls, refusing to timely respond to correspondence, or modifying it's website to remove communication options, also deprived the family of due process for reasonable accommodation requests made on several occasions, including May 17, 2022, June 27, 2002, August 3, 2022, September 16, 2022, and September 23, 2022.

23)  SHRA delivered notice of informal hearing for a reasonable accommodation denial letter dated July 8, 2022.  This was hearing informally requested on July 15, 2022 and formally requested on

August 3, 2022.  The hearing notice arrived on September 2, 2022 and contained items which denied the due process to the family and violated the family's FHA rights.

a)  The notice, received less than 10 days before a scheduled hearing date of September 12, 2022, required at least 10 days notice if the family was going to have representation at the hearing.  This requirement prevented the family from having representation during the informal hearing.  No such pre-notification requirement exists in 24 CFR § 982.555 which offers only:

(3) "At its own expense, the family may be represented by a lawyer or other representative."

b)  The notice required the family call a number to verify attendance or communicate any issues with SHRA.  While the phone call requirement reflected a continual refusal of SHRA to engage in effective communication practices with the family, just as concerning was the phone number leading to a voicemail box which stated the individual doesn't have access to the voicemail, not to leave a message, after which it disconnected.  This prevented the family from making any arrangements before the hearing to view and copy any documents which would be used at the hearing.  Further, until the date and time of the hearing, the family was unsure if SHRA would leverage "lack of confirmation" as rationale to cancel the hearing.

c)  The notice fails to note any information about other parties, their positions, or their relationship with SHRA, denying the family the ability to properly prepare questions or request witnesses be present at the hearing.

d)  The notice does not note the family's right to have the hearing recorded and transcribed, an option the family would have desired as a reasonable accommodation, even at it's own expense.

e)  The notice states:

"No additional evidence may be presented at hearing.  All evidence would have been subject to review by the Reasonable Accommodation Committee, therefore if the participant wishes to submit additional evidence he or she should contact the Housing Authority and request to cancel the hearing, then submit the additional evidence to the committee."

It's unclear how this process could even be considered a hearing without the ability to present evidence or witnesses relevant to the case, and this guidance is inconsistent with 24 CFR § 982.555 which governs the informal hearing process and provides:

(e)(5) "The PHA and the family must be given the opportunity to present evidence, and may question any witnesses. Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings."

f)  Due to the reasonable accommodation information phone number provided by SHRA being unreachable, and SHRA refusing to communicate via email (despite sending zoom credentials to the family's email address ahead of the hearing), the family had no opportunity to examine or copy documents presented by SHRA prior to the hearing.  Further, the lack of effective communication denied due process by restricting all potential discovery available to the family.

24)  The family was not given the opportunity to examine or copy it's case file before the hearing due to effective communication refusals and service accessibility refusals by SHRA, effectively closing off SHRA's internal process and shielding whatever procedures the RACC used to make their determination. The family was informed that the documents were not in an available format for screen sharing over zoom.

25)  SHRA has refused to make a decision available from the September 12, 2022 hearing, violating the family's due process and rights under the FHA.

>(e)(6) "Issuance of decision. The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing. A copy of the hearing decision shall be furnished promptly to the family."

>a)  On September 15, 2022 Tanya Cruz contacted the family by telephone and asked the family not to comply with the hearing officer's request to send via email a brief of the family's arguments used during the hearing.  The family informed Tanya Cruz that they had already complied with the request on September 12, 2022.

>b)  Tanya Cruz stated this meant the hearing officer could not deliver a decision in the case.  The family asked for what reason a decision was not being delivered to which Tanya Cruz replied "We don't have a reason."  The family stated that the hearing officer's last instructions were to send the brief and we would receive a decision in two weeks, what would be the next steps, to which Tanya Cruz replied that SHRA would call back with another hearing date.

>c)  On September 16, 2022 the family mailed a certified letter to SHRA stating that they did not agree with SHRA vacating the hearing, had not been given instructions from the hearing officer to the contrary, and still expected a decision within two weeks.  The family included a copy of it's hearing brief in the letter.

>d)  One month after the hearing, SHRA has yet to contact the family or deliver a decision for the hearing.

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

see attached

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:  10 / 18 , 20 22.

Signature of Plaintiff

Printed Name of Plaintiff    David Samuel

Signature of Plaintiff

Printed Name of Plaintiff    Sydey Roberts

6

## Relief

Each item in the complaint is part of a continued pattern or practice of deliberate indifference by SHRA and it's employees resulting in the denial of rights to the family, access to federal program services, and the pain of continued discrimination based on the family's disabilities.

These actions individually and as a continuing pattern of behavior has resulted in the family experiencing a reduction in the ability to participate in major life activities including loss of potential income due to inability to establish an accommodating environment at home, a delay in achieving academic goals, and a delay in achieving treatment goals related to their disabilities.

These acts have also directly resulted in the family experiencing increased anxiety, depression and other emotional distress, exacerbation of existing symptoms of their disabilities, and loss of housing opportunities.  Together, these acts demonstrate that SHRA knowingly and willfully discriminates against disabled families as part of pattern or practice including the family.

Despite having ample opportunity to remedy issues that SHRA has recently been required to undergo organization wide training to prevent, SHRA continues to violate the rights of disabled people, and they do so for reasons completely indifferent to the needs of disabled individuals including the family.

That SHRA's PLAN could contain so many policy descriptions which are in direct opposition to HUD/DOJ guidance or that the PLAN argues that it holds as justification to not grant reasonable accommodation to a family is they may have to start following the law for all reasonable accommodation requests suggests an agency that has completely lost sight of it's obligations and duty. We ask for relief significant enough to correct this and remind them of their duty since past attempts have failed.

As relief, the family asks $25,000 for each violation of the family's rights against each defendant.

The family asks $200,000 in redress for pain, suffering, loss of employment, education, and housing opportunities, and exacerbation of symptoms, consistent with defined penalties against an organization with 200 or more employees.

The family asks $1,000,000 in punitive damages against SHRA as prior settlements have failed to motivate to correct recent bad behavior of the same type.

The family also asks SHRA be required to implement extensive, organization wide training regarding reasonable accommodations, consisting of no less then ten hours per employee with a vendor approved by the family.

The family also requests that SHRA be required to post signage, of no less than 36" x 48" in the lobby of each of its offices, which contains the following text from HUD's Reasonable Accommodations FAQ, in text large enough to be easily readable and with appropriate color visibility:

> "A reasonable accommodation is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with disabilities to have an equal opportunity to use and enjoy a dwelling, including public and common use spaces, or to fulfill their program obligations. Any change in the way things are customarily done that enables a person with

disabilities to enjoy housing opportunities or to meet program requirements is a reasonable accommodation.

In other words, reasonable accommodations eliminate barriers that prevent persons with disabilities from fully participating in housing opportunities, including both private housing and in federally-assisted programs or activities.

Housing providers may not require persons with disabilities to pay extra fees or deposits or place any other special conditions or requirements as a condition of receiving a reasonable accommodation.

Since rules, policies, practices, and services may have a different effect on persons with disabilities than on other persons, treating persons with disabilities exactly the same as others will sometimes deny persons with disabilities an equal opportunity to enjoy a dwelling or participate in the program.

Not all persons with disabilities will have a need to request a reasonable accommodation. However, all persons with disabilities have a right to request or be provided a reasonable accommodation at any time.

Under Section 504 and the ADA, public housing agencies, other federally-assisted housing providers, and state or local government entities are required to provide and pay for structural modifications as reasonable accommodations/modifications."

The family also requests that a plaque, primarily constituted of bronze or an appropriate alloy, measuring no less than 3" x 12" be placed in prominent view in front of SHRA offices located at 801 12th Street, Sacramento, California 95814 and transferred to any new office if the office relocates, bearing the text: "We improve lives through advocacy for the economically disadvantaged and disabled".

The family requests reimbursement of all fees and expenses involved in bringing this complaint.

Finally, the family reserves the right to take possession of the plaque after one year at the expense of SHRA.