Name          David Tyrone Samuel

Street Address  1100 Howe Ave, Apt 126

City and County  Sacramento, Sacramento

State and Zip Code  California, 95825

Telephone Number  512-522-8571

**FILED**

**Nov 15, 2022**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

David Tyrone Samuel

Sydney Brooke Roberts

see attached

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**-against-**

Sacramento Housing and Redevelopment Agency

La Shelle Dozier

see attached

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Amended Complaint 11/11/2022
**Complaint for a Civil Case**

Case No. 2:22-cv-01699-TLN-AC

*(to be filled in by the Clerk's Office)*

Jury Trial:     ☐ Yes     ☐ No
              *(check one)*

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name          David Tyrone Samuel

Street Address     1100 Howe Ave, Apt 126

City and County    Sacramento, Sacramento

State and Zip Code    California, 95825

Telephone Number    512-522-8571

Additional Plaintiffs, See Attached

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

Name          Sacramento Housing and Redevelopment Agency

Job or Title
(if known)

Street Address     801 12th Street

City and County    Sacramento, Sacramento

State and Zip Code    California, 95814

Telephone Number    (916) 440-1390

Defendant No. 2

Name          La Shelle Dozier

Job or Title      Executive Director
(if known)

Street Address     801 12th Street

City and County    Sacramento, Sacramento

State and Zip Code    California, 95814

Telephone Number    (916) 440-1319

Defendant No. 3

| | |
|---|---|
| Name | MaryLiz Paulson |
| Job or Title (if known) | Manager of Housing Choice Voucher Operations |
| Street Address | 801 12th Street |
| City and County | Sacramento, Sacramento |
| State and Zip Code | California, 95814 |
| Telephone Number | (916) 440-1390 |

Defendant No. 4

| | |
|---|---|
| Name | Tory Lynch |
| Job or Title (if known) | Program Manager |
| Street Address | 801 12th Street |
| City and County | Sacramento, Sacramento |
| State and Zip Code | California, 95814 |
| Telephone Number | (916) 440-1390 |

Additional Defendants:  See Attached

## II.    Basis for Jurisdiction

Federal Courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in Federal Court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same state as any plaintiff.

What is the basis for Federal Court jurisdiction? *(check all that apply)*

☒   Federal question                   ☐   Diversity of citizenship

3

Fill out the paragraphs in this section that apply to this case.

**A.**    **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Title II of the Americans with Disabilities Act, Fair Housing Act, Sections 504 and 508 ___

of the Rehabilitation Act, Fourteenth Amendment U.S. Constitution _____   _____

_____

**B.**    **If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

    a.    If the plaintiff is an individual

The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

    b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

    a.    If the defendant is an individual

The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. *Or* is a citizen of *(foreign nation)* _____.

4

    b.      If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____. *Or* is incorporated under the laws of *(foreign nation)* _____, and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.      The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than \$75,000, not counting interest and costs of court, because *(explain)*:

_____
_____
_____

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

See Attached _____
_____
_____
_____
_____

IV.    **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See Attached
_____

_____

_____

_____

_____


V.    **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: __11/11__, 2022.

Signature of Plaintiff    _____
Printed Name of Plaintiff    David Tyrone Samuel

Signature of Plaintiff    _____
Printed Name of Plaintiff    Sydney Brooke Roberts

## I.) INTRODUCTION

1) This complaint is an attempt to correct a continuing practice of rights violations by Defendants Sacramento Housing and Redevelopment Agency, it's Employees, and it's Governors ("SHRA"), which have denied the plaintiffs full and equitable access to program services through the Department of Housing and Urban Development ("HUD") Housing Choice Voucher ("HCV") program.

2) The SHRA Board of Governors ("BOARD") and executive staff have created policies and procedures which constitute disability discrimination in the HCV program in an attempt to maximize the number of HCV vouchers available. The BOARD and executive staff made the calculated decision that due to the low occurrence of disabled individuals pursuing and prevailing in complaints for disability discrimination and due process violations, that aggressively denying reasonable accommodation is an economically advantageous policy.

3) This discriminatory animus is so extreme that the BOARD and executive staff have interpreted statutes and regulation to empower their employees, who have no medical qualifications whatsoever, to override determinations of medical necessity by actual physicians and disabled individuals themselves. This in spite of guidance from HUD which describes this behavior as unequivocally illegal.

4) Despite comprehensive notice to the BOARD and executive staff that these policies and procedures violate the rights of disabled individuals in the form of a 2020 voluntary compliance agreement, and having been required to complete organization wide training regarding ensuring the rights of disabled individuals in the HCV program, the BOARD and executive staff have failed to modify their policies or procedures in any fashion to correct these rights violations and comply with federal law. Further, the BOARD and executive staff are aware of and quote from a guidebook published by HUD which describes these policies in plain language as illegal.

5) SHRA employees often decided to take these discriminatory actions in opposition to the stated policies and procedures of the organization. SHRA supervisory staff often ignored policies and procedures which would have required them to comply with the law like having an

administrative review process, or processing vouchers in a consistent way, while at the same time refusing to make changes to policies as reasonable accommodation.

6) The items in this complaint allege the BOARD, SHRA executive staff, and supervisory staff and case workers violated Plaintiffs rights as described Titles VIII and IX of the Civil Rights Act of 1968 (as the Fair Housing Act, 42 U.S. Code §§3601 et seq., "FHA"), Title II of the Americans with Disabilities Act (42 U.S. Code §§1201 et seq., "ADA"), Sections 504 and 508 of the Rehabilitation Act of 1973 (29 U.S. Code §§701 et seq., "REHAB"), and Fourteenth Amendment due process and equal protection clauses.

7) Because of the deliberate indifference to the rights of disabled individuals, plaintiffs have experienced discrimination by the BOARD and executive staff which has directly resulted in Plaintiffs being evicted and forced into homelessness, a delay and denial of medical treatment for disabilities, disruption to educational progress, extreme emotional and physical distress, and a loss of employment and other economic opportunities. Further, the BOARD and SHRA executive staff's discrimination has increased the risk of institutionalization for the plaintiffs and denied access to services in an integrated fashion.

8) This complaint seeks injunctive and declaratory relief to stop and correct the immediate harm of these rights violations, as well as civil and punitive damages for past and ongoing harm, as well as preventing future harm.

9) Plaintiffs ask the courts discretion to appoint an attorney to represent them in this private action (28 CFR § 36.501(a)). Due to communication difficulties imparted by the Plaintiffs disabilities and the likely need for reasonable accommodation, a court appointed attorney would greatly improve the flow of proceedings and ensure that the rights of all parties are well represented.

## II.) JURISDICTION AND VENUE

10) This action arises under 42 U.S. Code § 1983, ADA, REHAB, FHA, due process clause and equal protection clauses of the US Constitution.

11)  This court is the proper venue and has jurisdiction as all alleged acts occurred inside within the county of Sacramento, California and all Defendants currently do business in the county of Sacramento, California and arise from violations of Federal laws.

### III.)  THE PARTIES

### Plaintiffs

12)  David Tyrone Samuel is a member of a household participating in the HCV program since 2018, and currently resides in the city of Sacramento, California.  David is a qualified disabled person (42 U.S. Code § 3602(h)) currently receiving Social Security Disability Insurance (SSDI) benefits for disability since 2014.  David is currently diagnosed with and receiving treatment for Attention Deficit Hyperactivity Disorder ("ADHD"), Autism Spectrum Disorder ("ASD"), Chronic Post Traumatic Stress Disorder ("cPTSD"), and Major Depressive Disorder ("MDD").  David is attempting to complete educational training to obtain permanent employment in a position which better accommodations his needs, and is actively pursing employment which allows work from home and may be at risk of institutionalization without reasonable accommodation.

13)  Sydney Brooke Roberts is a member of the same household participating in the HCV program, currently resides in Sacramento, California.  Sydney and David are the parents of two children, AIMS, age 4 and DAYS, an infant.

14)  AIMS is oldest daughter of David and Sydney, and a member of the household residing in Sacramento, California.  AIMS is a qualified disabled person (42 U.S. Code § 3602(h)) diagnosed with ASD and is currently non-verbal. AIMS requires intensive behavioral, occupational, and speech therapy and may be at risk of institutionalization without reasonable accommodation.

15)  DAYS is the infant daughter of David and Sydney, born in 2022 and currently residing in Sacramento, California.  AIMS cannot be roomed with DAYS at this time due to intense distress and behavioral reaction from AIMS when DAYS cries or otherwise experiences distress.  DAYS requires a subsidy size exception for family circumstances consistent with 24 CFR § 982.402(b)(8).

16)  Plaintiffs are referred to collectively as PLAINTIFFS, with the intent to communicate that federal nondiscrimination laws that protect against disability discrimination cover not only tenants and home seekers with disabilities, but also buyers and renters without disabilities who live or are associated with individuals with disabilities.

**Defendants**

17)  Sacramento Housing and Redevelopment Agency ("SHRA") is a public/private corporation with offices in Sacramento, California which receives federal funding to implement the HUD HCV program in the city and county of Sacramento.  SHRA is a Public Housing Agency ("PHA").  SHRAs and it's employees and governors have a listed contact address of 801 12th Street, Sacramento, California, 95814 with a listed contact phone number of (916) 440-1390.

**SHRA Employees**

18)  La Shelle Dozier as Executive Director, with an address in Sacramento, California.

19)  MaryLiz Paulson as Director Housing Choice Voucher Program, 504 compliance officer, and Chair of the Reasonable Accommodation Compliance Committee ("RACC").

20)  Tory Lynch as Program Manager and RACC member, responsible for evaluating reasonable accommodation requests and compliance.

21)  Tanya Cruz as Program Manager and SHRA Administrative Hearing representative.

22)  Tameka Jackson as SHRA Case Worker.

23)  Lisa Macias as SHRA Case Worker.

24)  Tiffany Brown as SHRA Case Worker.

25)  Ibra Henly in unknown SHRA position.

26)  Tyler Thao as RACC assistant.

**SHRA Board of Governors, County of Sacramento**

27)  Supervisor Phil Serna, SHRA governing board member for the County of Sacramento.

28)  Supervisor Rich Desmond, SHRA Governing Board member for the County of Sacramento.

29)  Supervisor Sue Frost, SHRA Governing Board member for the County of Sacramento.

30)  Supervisor Don Nottoli, SHRA Governing Board member for the County of Sacramento.

**SHRA Board of Governors, City of Sacramento**

31) Darrell Steinberg, SHRA Governing Board Member for the City of Sacramento.

32) Angelique Ashby, SHRA Governing Board Member for the City of Sacramento.

33) Sean Loloee, SHRA Governing Board Member for the City of Sacramento.

34) Jeff Harris, SHRA Governing Board Member for the City of Sacramento.

35) Katie Valenzuela, SHRA Governing Board Member for the City of Sacramento.

36) Jay Schenirer, SHRA Governing Board Member for the City of Sacramento.

37) Eric Guerra, SHRA Governing Board Member for the City of Sacramento.

38) Rick Jennings II, SHRA Governing Board Member for the City of Sacramento.

39) Mai Vang, SHRA Governing Board Member for the City of Sacramento.

40) All members of the SHRA Governing Board for the County of Sacramento, and SHRA Governing Board for the City of Sacramento are collectively referred to as the "BOARD".

**Unknown Parties**

41) Unknown SHRA supervisor 1

42) Unknown SHRA employee 1

43) Unknown SHRA employee 2

**The BOARD**

44) The BOARD is responsible for promulgating regulation and guidance issued by HUD into a set of policies and procedures that guide SHRAs daily operations.  This guide, the Housing Choice Voucher Program Administrative Plan ("PLAN") is required by both federal law and HUD guidance to be free of discriminatory policies and comply with all relevant federal law.

45) As a requirement for receiving federal funding, SHRA and the BOARD accept waivers from immunity.

46) The BOARD has been made aware that policy and procedures at SHRA are discriminatory, having entered into at least one voluntary compliance agreement ("VCA") regarding disability discrimination in January of 2020 for denying reasonable accommodation.  This VCA required approval by the BOARD, contained language in which SHRA agreed to modify it's policies to

no longer be discriminatory, and required extended training on reasonable accommodation provided by a third party vendor.

47) PLAINTIFFS have personally emailed most members of the BOARD in an attempt to remediate the items within this complaint, and all but one member of the BOARD failed to respond.

48) The BOARD is included as PLAINTIFFS because they are ultimately responsible for promulgating discriminatory policy and procedures that SHRA adheres to.  It is ultimately the responsibility of the BOARD to ensure that adequate training is implemented by SHRA to prevent rights violations, and to correct, through personnel or policy changes, practices which do constitute violations.

<b>SHRA Employees</b>

49) La Shelle Dozier ("DOZIER") is included as the executive director of SHRA, ultimately responsible for ensuring that SHRA complies with all federal regulation and HUD guidance, as well as implementing training to ensure that SHRA does not violate rights established through federal statutes.  DOZIER had prior notice about current policies and practices at SHRA which constituted violations through acceptance of the VCA.  Further, DOZIER was previously head of SHRAs HCV program operations, and this position required that they serve as the program 504/Rehab Act compliance officer.  This position should have given them reasonable awareness that policies and procedures were discriminatory.

50) Further, it ultimately falls in the hands of DOZIER to ensure that services are accessible to all, including the special requirements which may be necessary for disabled individuals.  DOZIER not only had awareness that services were not accessible, a reasonable person would be aware that the HCV program was being administered in a way to intentionally limit access to the program, including failure to provide effective communication with voucher holders.

51) MaryLiz Paulson ("PAULSON") is included as the director of HCV program operations for SHRA.  PAULSON is currently the 504/Rehab Act compliance officer, and directly responsible for ensuring policies and procedures of the HCV program do not violate rights established through federal statute and comply with all HUD guidance.  PAULSON is also listed as the chair

of the Reasonable Accommodation Compliance Committee ("RACC"), and is required to be a party to each decision made in regard to reasonable accommodation. In both positions, PAULSON was required to have the knowledge to determine what constitutes disability discrimination, and establish policy and procedures which complied with all HUD guidance regarding reasonable accommodation. It is unknown to PLAINTIFFS which SHRA staff comprised the RACC other than PAULSON and LYNCH.

52) The RACC denial letter provided by SHRA was signed by PAULSON. PAULSON was also party to the VCA, and with deliberate indifference has chosen to continue practices which violate rights established through federal statute. Further, PAULSON made decisions and gave instructions to subordinates that also clearly violated SHRA policy in the PLAN.

53) Tory Lynch ("LYNCH") is included as a member of the RACC, and for their direct involvement in discriminatory policies. LYNCH received notice from PLAINTIFFS that their denial of reasonable accommodation was illegal, and with deliberate indifference continues to guide policy and procedures which violate rights established through federal statute. LYNCH was personally required to undergo training to prevent violations of rights granted through federal statute. LYNCH further gave instructions to subordinates and made decisions that they reasonably should have known were both against SHRA policy noted in the PLAN and contrary to HUD guidance.

54) Unknown Supervisor 1 ("SUPERVISOR") is included as a decision making party, who refused to make reasonable accommodation over the phone, without following any policy stated in the PLAN other than their own belief that they had a right to discriminate.

### IV: TIMELINE

55) PLAINTIFFS received their voucher on September 14, 2018 as part of a Sacramento County program to reduce chronic homelessness among the disabled. This program included wrap around services from Sacramento Self Help Housing ("SSHH") a vendor who provided Property Related Tenant Services ("PRTS"). The PRTS case worker, Ashley Valentine ("VALENTINE") was responsible for coordinating housing related issues, including coordinating with SHRA regarding the issuance and maintenance of the voucher.

56) As part of the PRTS program services, the County of Sacramento agreed to reimburse the PRTS vendor for rental expenses, with the expectation that the unit would be subsidized under a voucher when it became available through SSHH the following month.  On August 7, 2018 PLAINTIFFS moved to EMPRESS, with the instruction that SHRA would issue a voucher for the unit at some time in the near future.

57) When PLAINTIFFS received their voucher, it was ostensibly to provide a rental subsidy for their current address at the time, 2328 Empress St, Apt 1, Sacramento, CA 95815 ("EMPRESS").  SHRA added VALENTINE as the primary contact for the voucher, and ostensibly all communication regarding the voucher flowed through VALENTINE.

58) The HCV program has very clear guidelines through regulations provided in 24 CFR §§ 982.1 through 982.5 including how long a family has to find suitable housing, the process through which payment assistance is established, and rules governing the yearly inspection of qualified housing units to ensure compliance with HUD guidance.  Further, the rules also the process of moving to another unit, terminating an existing lease and when modifications to housing standards are allowable.  SHRA is required to submit yearly reports to HUD indicating that it is in compliance with these regulations.

59) Despite the issuance of the HCV voucher, it is unclear whether SHRA has ever paid a subsidy.  During the year and a half that PLAINTIFFS resided at EMPRESS, SHRA issued two yearly voucher renewal notices, but delivered no notice that EMPRESS was unsubsidized.

60) In June 2020, for reasons still unknown to PLAINTIFFS, SSHH moved the family to a new unit located at 1100 Howe Ave, Apt 126, Sacramento, CA 95825 ("HOWE") and vacated EMPRESS.  PLAINTIFFS were assured that the PRTS vendor would handle all requirements for the move, and this assumption seemed supported when SHRA began sending renewal notices addressed to PLAINTIFFS at HOWE.

61) In September 2020, PLAINTIFFS received a renewal notice addressed to them at HOWE but listing EMPRESS as the subsidized unit.  Plaintiffs called SHRA and spoke to an unknown case worker ("CASEWORKER") with concerns that filling out the renewal with the EMPRESS address would constitute fraud under program guidelines.  The SHRA case worker informed the

family they would discuss the matter with VALENTINE who was listed as the primary contact for our case.  When PLAINTIFFS called SHRA a second time in September 2020 and spoke to CASEWORKER, the case worker indicated that the matter had been resolved, and a renewal was not necessary at that time.

62) In June 2021, PLAINTIFFS received a voucher renewal notice addressed to them at HOWE and submitted it on June 15, 2021 with the address under subsidy listed as HOWE. PLAINTIFFS another yearly re-certification notice addressed to them at HOWE, which they again submitted with the address under subsidy listed as HOWE on April 04, 2022.

63) PLAINTIFFS would later learn that at no point was HOWE under HCV subsidy, and it wasn't clear whether EMPRESS was ever under HCV subsidy.  The voucher status was apparently being kept updated without subsidy through a back channel agreement between SSHH and SHRA, in violation of program rules.  It is still unclear to PLAINTIFFS who SHRA was paying a subsidy between July 2020 and May 2022.

64) On April 30, 2022 PLAINTIFFS received notice from SSHH that it's contract with the County of Sacramento had been terminated and the family had sixty days to vacate the unit.  A few days prior to receiving this notice, DAYS was born.  PLAINTIFFS contacted VALENTINE the first week of May to inquire about the notice and ask for assistance transferring their voucher to another unit in the same community.  VALENTINE stated they would look into next steps for the family.

65) In a letter dated May 12, 2022 Lisa Macias ("MACIAS") sent a notice of incomplete interim addressed to PLAINTIFFS at HOWE threatening to terminate services if DAYS government issued birth certificate, social security card, and section 214 form supporting change in family composition were not submitted by May 19, 2022 our status would be terminated.   DAYS was less than a month old at this time.

66) The next day, PLAINTIFFS received a notice that our renewal was incomplete, and required extra information about income, including why monthly deposits were lower than the full SSDI monthly benefit (child support payments), and if AIMS was receiving SSI benefits.  It was

unclear at the time why SHRA had suddenly taken this interest when the income deduction had not changed during the entire period covered under the voucher.

67) PLAINTIFFS received a voice mail from MACIAS early in the second week of May 2022 indicating the voucher may be canceled because PLAINTIFFS had not submitted supplementary questions timely. PLAINTIFFS called SHRA and spoke to CASEWORKER, informing the individual that in the four days since they had received the request for additional income information they submitted the information via the online portal, and verified the upload while the case worker was on the phone. CASEWORKER indicated they would contact VALENTINE for more information.

68) PLAINTIFFS now believe this was the beginning of attempts by SHRA staff to unravel whatever deal they had with SSHH, by inventing scenarios under which PLAINTIFFS could be terminated for program violations.

69) On May 17, 2022 PLAINTIFFS received a call from VALENTINE stating that SHRA terminated the voucher because PLAINTIFFS had not submitted social security and birth records for DAYS, born the previous month, and because the PLAINTIFFS had moved to another unit without submitting necessary forms. PLAINTIFFS received no notice regarding this termination before or after being notified by VALENTINE. VALENTINE recommended PLAINTIFFS call SHRA and speak to a supervisor to overturn the termination.

70) PLAINTIFFS spoke to SUPERVISOR and noted that SSHH was listed as the primary contact for voucher related issues and should have submitted the prior paperwork. PLAINTIFFS also noted that SHRA had been sending renewal notices and the recent income inquiry to them at HOWE, indicating SHRA was aware of the move for at least two years.

71) PLAINTIFFS noted they had received no notice that SHRA was considering terminating their voucher prior to it being terminated, and that all renewal forms submitted all had the address as HOWE. PLAINTIFFS contacted SHRA in September 2020 noting concern about whether it would constitute fraud to list EMPRESS as their residence if they did not live there. SHRA indicated no issues and stated they would discuss it with VALENTINE.

72) PLAINTIFFS also noted that DAYS social security paperwork had only arrived that day, and the birth certificate was expected to arrive shortly. PLAINTIFFS stated they would submit both within the following days. SUPERVISOR agreed to re-issue the voucher, but insisted the voucher be issued under the EMPRESS address. PLAINTIFFS expressed concern about this being potentially fraud and SUPERVISOR indicated that it was the only option available, and since PLAINTIFFS were moving soon anyway, it didn't matter.

73) PLAINTIFFS asked SUPERVISOR about the process of requesting an extra bedroom being added to the voucher as a reasonable accommodation, to which SUPERVISOR responded absolutely not, and stated PLAINTIFFS were "lucky" they overturned the termination.

74) On May 18, 2022 PLAINTIFFS were still unsure about what was happening with their housing and were under the expectation that SSHH would terminate their residency and evict them soon due to the notice received on April 30, 2020. PLAINTIFFS contacted VALENTINE to get information about the lease for their current unit and were informed the unit was leased by SSHH, and we were tenants of SSHH, not the apartment community itself. PLAINTIFFS informed VALENTINE that they had difficulty locating a unit, particularly one that met their treatment needs and VALENTINE recommended formally requesting the reasonable accommodation instead of a verbal request as they were harder to deny.

75) PLAINTIFFS submitted a copy of DAYS birth certificate, social security card, and HUD-214 form, along with another copy of the letter verifying their income to VALENTINE, who transmitted them to SHRA and confirmed they received it. VALENTINE responded with a copy of a release of authorization form, which SHRA considers it's formal reasonable accommodation request form.

76) On May 19, 2022 PLAINTIFFS submitted a complete set of treatment records and the authorization form to contact their physician through VALENTINE, who confirmed SHRA had received it. VALENTINE replied with a response from CASEWORKER which confirmed they had received the paper work and also responded to a question about home ownership options posed to VALENTINE.

77) On May 26, 2022 PLAINTIFFS physician asked what exact language was needed in the note supporting the reasonable accommodation request.  PLAINTIFFS relayed this to VALENTINE, who responded with the necessary language.  On May 31, 2022, PLAINTIFF provided a photograph of the letter to VALENTINE who submitted it to CASEWORKER, and because PLAINTIFFS had no option for direct contact with staff, delivered the original letter to the SHRA drop box outside of their office.

78) On June 02, 2022 PLAINTIFFS received notice stating an electronic voucher appointment was available online, and required signatures to complete issuance.   Inexplicably, the notification was mailed to HOWE but internally addressed to EMPRESS.

79) Between May 19, 2022 when the formal request was made and July 15, 2022 when PLAINTIFFS received the denial letter signed by PAULSON on behalf of the RACC, no employee of SHRA made an attempt to contact PLAINTIFFS or their physician other than to repeatedly request the same medical records they already had in their possession.  PLAINTIFFS proactively made several attempts during this time period to engage in the interactive process with the RACC, which were refused by either refusing to return voice mail message or having a RACC contact number that did not accept voice mail messages at all.

80) On June 20, 2022 PLAINTIFFS contacted SHRA through their main number and made their first effective communication reasonable accommodation request.  This call was precipitated by a letter from Tyler Thao ("THAO"), requesting another copy of the physicians letter, medical records, and asking PLAINTIFFS to fill out another authorization form. PLAINTIFFS attempted to call the number provided for the RACC, which contained a message by PAULSON which advised callers not to leave a voice mail because they had no access to the voice mail, and immediately disconnected.  PLAINTIFFS called the number for THAO multiple times and left voice mail messages, none of which were returned.

81) PLAINTIFFS called the SHRA HCV information line and spoke to an unknown SHRA employee, and requested an email address through which they could communicate with SHRA as PLAINTIFFS do not have access to a fax machine, and phone calls were difficult for PLAINTIFFS due to their disability.  As PLAINTIFFS had already submitted the original letter

to SHRA, only photographs of the letter were available. The individual provided an email address for the RACC as ra@shra.org, and PLAINTIFFS emailed the photograph of the letter. No response was received.

82) On July 1, 2022 PLAINTIFFS submitted a callback request on the SHRA website which states that a worker would return the call within 48 hours. As of September 26, 2022 the request was still pending.

83) On July 11, 2022 PLAINTIFFS contacted VALENTINE stating they had not received any communication from SHRA about the reasonable accommodation request and SHRA was not responding to the website callback request. VALENTINE reached out to SHRA and received a response from Tiffany Brown ("BROWN") within the hour stating that BROWN was working on it and would respond sometime later in the week. PLAINTIFFS did not receive any response from BROWN.

84) PLAINTIFFS on July 15, 2022 attempted to call the number listed on the denial as the only method of contacting the RACC and after again not being able to leave a voice mail message, called SHRAs general information number and asked to speak to speak to a supervisor about the reasonable accommodation denial. Tameka Jackson ("JACKSON") accepted the call and noted that she would not be able to personally answer any questions but she would leave a note in the case file for the request. JACKSON stated it may be more than week before we received a call back from a supervisor, since it was at the supervisors discretion to return the call.

85) By July 29, 2022 no supervisor returned the call. PLAINTIFFS, after examining the HUD Reasonable Accommodations FAQ website discovered that any request for an informal hearing, verbal or formal, was required to be followed up on by program guidelines. PLAINTIFFS called SHRAs RACC contact number again and the number refused to allow voicemails, called SHRAs legal department number and left a voice mail, and called SHRAs HCV information line number and left a spoke to JACKSON about a hearing. JACKSON again stated they were not able to provide any case information but would forward it to a supervisor. JACKSON suggested that PLAINTIFFS fax a written request to SHRA, which PLAINTIFFS submitted on August 04, 2022.

86) PLAINTIFFS again noted to JACKSON that they were they were nearing at the end of PRTS program funding, and without room size or rent adjustment to the voucher PLAINTIFFS would not be able to find suitable housing.  JACKSON noted that they did not have the ability to make any adjustments themselves but would forward the information to the necessary parties, including the written fax request for informal hearing.

87) No one from SHRA responded to PLAINTIFFS requests during the month of August until PLAINTIFFS emailed members of the BOARD on August 26, 2022 to ask why a hearing was not being offered consistent with program requirements.  During the month of August, PLAINTIFFS made several more calls to the RACC number, legal number, and SHRA information line, and each time made a request for informal hearing, request for effective communication via email, and requested voucher adjustments because PLAINTIFFS were in imminent risk of being homeless.

88) On August 28, 2022 JACKSON emailed PLAINTIFFS from the ra@shra.org email address, login credentials for a zoom meeting on September 12, 2022.  PLAINTIFFS responded to this email address the same day requesting hearing rules and any other relevant information before the hearing to prepare.  No response was received.

89) On September 06, 2022 PLAINTIFFS received a letter from SHRA signed by Ibra Henly ("HENLEY")  with hearing procedures and requirements.  Among these requirements was that PLAINTIFFS provide at least ten days notice if they planned on having representation, that PLAINTIFFS were not allowed to present any evidence of nexus between the accommodation and disability, that PLAINTIFFS were not allowed to present any evidence at all if they did not submit said evidence to the RACC at least five days before the hearing.  The letter noted that the hearing was only to determine whether or not the RACC complied with relevant regulation, hosted by a judge of their choosing.

90) On September 12, 2022 PLAINTIFFS attended an informal hearing hosted by hearing officer John Lew ("LEW") and attended by Tanya Cruz ("CRUZ") over Zoom teleconference.  It is unclear what relationship LEW has with SHRA.  During the hearing LEW stated that SHRA acknowledges that a nexus exists between the request and disability, and as such they did not

need to consider any evidence regarding this link. LEW repeatedly asked CRUZ to verify this was SHRAs position, to which she agreed.

91) CRUZ stated that they were appearing on behalf of Tory Lynch ("LYNCH"), and that LYNCH as a member of the RACC was ultimately the individual responsible for the denial of reasonable accommodation. CRUZ further stated they had no ability to accept any recommendations by the hearing officer, despite the PLAN and HUD requirement, and they would need to refer all recommendations to the RACC for reconsideration.

92) LEW reminded CRUZ of the requirement multiple times, however CRUZ insisted that they were required to forward all recommendations to the RACC and could not agree to any recommendations by LEW.

93) During the September 12, 2022 hearing CRUZ stated PLAINTIFFS case file could not be examined because it was "not available in the correct format", and CRUZ was not able to provide any of the documents presented either physically or via email to PLAINTIFFS, they were only available via screen share of CRUZ desktop. The documents provided did not add any explanation or description of the process the RACC used in making their decision, note which individuals were involved in making the decision, note a date the RACC met to make the decision.

94) CRUZ stated SHRAs argument was that the hearing, which required external pressure to even grant, constituted the interactive process required, and that filing a complaint in court constituted the "formal" administrative process. PLAINTIFFS objected to this argument as it is impossible for something to be interactive when it occurs after the decision is already made. LEW stated they would consider this and asked PLAINTIFFS to move on.

95) Having been restricted by lack of proper notice from SHRA and hearing rules which prohibited presenting any evidence regarding the nexus between the request and disability (e.g. "necessity"), PLAINTIFFS presented evidence from HUD's Reasonable Accommodation Frequently Asked Questions ("FAQ"), which states in plain language that denying reasonable accommodation for reasons other than program hardship is illegal. PLAINTIFFS further presented the HUD/DOJ Joint Statement on Reasonable Accommodation ("HUD/DOJ"), which

was coherent with the FAQ. Finally PLAINTIFFS presented evidence from the SHRA PLAN which noted that the denial was contrary to stated policies.

96) LEW asked CRUZ for a rebuttal, and CRUZ responded that PLAINTIFFS were "just quoting regulations", and they had no response to it. LEW then asked PLAINTIFFS questions about whether the accommodation was "necessary" and why the alternative arrangement offered by PAULSON and the RACC didn't fit their needs. PLAINTIFFS noted that CRUZ, PAULSON, and LYNCH did not argue the reasonable accommodation was unnecessary, only that they felt another option was available. Further, PLAINTIFFS were explicitly barred from presenting evidence regarding medical need both in the hearing instructions provided by HENLEY and by LEW at the beginning of the hearing. LEW continued to press medical necessity, to which the PLAINTIFFS noted that the SHRA PLAN does allow housing modification for durable medical equipment, and because the room itself was the durable medical equipment, this is exactly how the accommodation would be used for PLAINTIFFS.

97) LEW stopped the hearing and asked PLAINTIFFS to submit a written summary of their arguments to CRUZ via email at ra@shra.org and CRUZ would forward them, plus any dissent SHRA had to LEW. PLAINTIFFS noted they would not have access to any argument SHRA made in this instance, but agreed to this process. LEW once again reminded CRUZ that they would need to personally be able to accept the hearing recommendations, to which CRUZ again replied they could not, and were required to refer everything back to the RACC for processing.

98) On September 12, 2022 PLAINTIFFS emailed SHRA an argument "brief", which included links to HUD/DOJ, FAQ, and relevant PLAN sections. It further included links to recent DOJ settlements against PHAs and noted the similarity between SHRAs behavior and the alleged behavior in the settlements.

99) On September 15, 2022 CRUZ called PLAINTIFFS and stated that LEW would not be able to submit a decision for the hearing, and asked PLAINTIFFS to not submit the written summary. PLAINTIFFS were given no reason for the lack of decision, and were told that SHRA would set another hearing date in the future. PLAINTIFFS stated they had already submitted the brief three days prior, and they did not understand with or agree to a rescheduling of the hearing.

PLAINTIFFS noted they had been waiting more than four months at this point for the accommodation and further delay was unacceptable.  Further, PLAINTIFFS noted that they requested all communication, especially of critical information like this, to take place over email. CRUZ stated SHRA would contact PLAINTIFFS when a new hearing was setup.

100) On September 16, 2022 PLAINTIFFS via certified mail sent a letter disagreeing with the lack of decision, noted that LEW had not contacted them about the change and that PLAINTIFFS were assuming the hearing guidance was still correct.  PLAINTIFFS noted that a hearing decision was expected in the fourteen day period noted by LEW and regulation, and that again, communication of this nature occur via email.  PLAINTIFFS included a copy of their hearing arguments in the letter.  SHRA received the letter on September 19, 2022.  As of November 12, 2022, a decision has not been issued for the hearing.

101) On September 26, 2022, PLAINTIFFS sent another letter via certified mail requesting all previous accommodation for effective communication and voucher adjustments as a reasonable accommodation, to which SHRA has failed to respond.

## V – COMPLAINT

### Claim 1: Denial of Housing Modification as Reasonable Accommodation

102) This complaint item is supported by the following facts: PLAINTIFFS requested reasonable accommodation from SHRA, SHRA, including PAULSON, LYNCH, THAO, CRUZ and enabled by policies and procedures determined by the BOARD along with inadequate training and oversight by DOZIER, denied that reasonable accommodation for reasons other than undue hardship. The RACC acknowledged a nexus between the requested accommodation and PLAINTIFFS disabilities, however no employee consulted with PLAINTIFFS or their recommending physician before denying the accommodation, and the individuals denying the request had adequate knowledge this was illegal.

103) Because the BOARD, RACC including PAULSON and LYNCH, and enabled by deliberate indifference on the part of DOZIER, violated rights granted through statute, and refused to comply with both HUD guidance and their own PLAN, PLAINTIFFS have endured significant amounts of emotional distress, humiliation, loss of medical treatment options in an integrated

environment, loss of employment opportunities in an integrated environment, and will likely suffer a life long effect of this discrimination due to missed treatment milestones.  All of these effects are the direct result of a pattern of deliberate indifference toward the effect of their discriminatory policies and practices toward PLAINTIFFS.

**Cause**

104) SHRA has accepted a waiver of immunity as a condition of accepting federal funding.

105) PLAINTIFFS are entitled to relief for deprivation of the right to equal protection under the law(42 U.S Code § 1983), including non-discrimination.

106) SHRA discriminated against PLAINTIFFS on the basis of disability as defined by the FHA (42 U.S Code § 3602(h)), ADA(42 U.S. Code § 12112(5)(A)), and REHAB (29 U.S Code § 701(a)(4)).

**Relief**

107) An injunction approving the housing adjustment reasonable accommodations (28 CFR § 36.501(b)).

108) A preventative order extending the voucher expiration date until suitable housing can be obtained by Plaintiffs (24 CFR § 982.303(b)(2)).

109) A declaration that denying a reasonable accommodation request, without evaluating the request on a case by case basis and engaging in the interactive process, is illegal.

110) For the court to assign an attorney to represent Plaintiffs in the civil complaint (28 CFR § 36.501(a)).

111) $200,000 in compensatory and punitive damages against Sacramento Housing and Redevelopment Agency consistent with the number of employees (42 U.S. Code § 1981(b)(3)).

112) $103,591 in civil penalties against each named defendant for violating Plaintiffs rights under the ADA (42 U.S. Code § 12188(b)(2)(C)(i)) adjusted for inflation (28 CFR § 85.5), or $207,183 in civil penalties if this is a subsequent violation.

113) $115,054 in civil penalties against each named defendant for violating Plaintiffs rights under the FHA (42 U.S. Code § 3614(d)(1)(C)(i)), adjusted for inflation or $230,107 in civil penalties if this is a subsequent violation.

114) Prominent signage in the lobby of all buildings owned or operated by SHRA containing language describing the right to reasonable accommodation and affirming denial of reasonable accommodation is illegal.

115) All other remedies the court determines just and proper.

**Claim 2:  Effective Communication Reasonable Accommodation Denial**

116) PLAINTIFFS on multiple occasions made requests that SHRA provide effective communication via email as a reasonable accommodation.  SHRA, including THAO, BROWN, PAULSON, MACIAS, LYNCH, CRUZ and enabled by lack adequate training and oversight by DOZIER and the BOARD, refused to do so, despite having fair notice in the form of the HUD Effective Communication Frequently Asked Questions noting it was a statutory requirement to do so.  Despite using email in the course of daily business, SHRA refused to use it to communicate with PLAINTIFFS.  By refusing to comply with effective communication requirements, SHRA denied PLAINTIFFS access to program services in the most integrated fashion possible.

**Cause**

117) SHRA has accepted a waiver of immunity as a condition of accepting federal funding.

118) PLAINTIFFS are entitled to relief for deprivation of the right to equal protection under the law(42 U.S Code § 1983), including non-discrimination.

119) SHRA discriminated against PLAINTIFFS on the basis of disability as defined by the FHA (42 U.S Code § 3602(h)), ADA(42 U.S. Code § 12112(5)(A)), and REHAB (29 U.S Code § 701(a)(4)).

**Relief**

120) A declaration from the court asserting Plaintiffs right to effective communication with SHRA, specifically over email.

121) A declaration that unnecessary delays making decisions regarding reasonable accommodation is disability discrimination, having the same effect as a denial.

122) For the court to assign an attorney to represent Plaintiffs in the civil complaint (28 CFR § 36.501(a)).

123) $200,000 in compensatory and punitive damages against Sacramento Housing and Redevelopment Agency consistent with the number of employees (42 U.S. Code § 1981(b)(3)).

124) $103,591 in civil penalties against each named defendant for violating Plaintiffs rights under the ADA (42 U. S. Code § 12188(b)(2)(C)(i)) adjusted for inflation (28 CFR § 85.5), or $207,183 in civil penalties if this is a subsequent violation.

125) $115,054 in civil penalties against each named defendant for violating Plaintiffs rights under the FHA (42 U.S. Code § 3614(d)(1)(C)(i)), adjusted for inflation or $230,107 in civil penalties if this is a subsequent violation.

126) Prominent signage in the lobby of all buildings owned or operated by SHRA containing language describing the right to reasonable accommodation and affirming denial of reasonable accommodation is illegal.

127) All other remedies the court determines just and proper.

### Claim 3:  Denial of Due Process

128) PAULSON, LYNCH, MACIAS, SUPERVISOR, CRUZ, enabled by policies and procedures established by the BOARD and lack of oversight and training by DOZIER, denied or ignored multiple reasonable accommodation requests as alleged above, dated May 17, 2022, May 19, 2022, June 20, 2022, August 4, 2022, September 16, 2022, and September 26, 2022 without providing a hearing or formal process for them.

129) While PAULSON, LYNCH, and the RACC granted a hearing for the denial of the May 19, 2022 reasonable accommodation on September 12, 2022, they provided insufficient notice to for PLAINTIFFS to bring representation and barred PLAINTIFFS from presenting any evidence which disagreed with the RACC determination.  Further, CRUZ, representing SHRA, provided no evidence which supported the RACC decision, simply stating that RACC determinations are indisputable.

130) Despite the incomprehensibly regulation violating rules by SHRA, when it became clear that SHRA could not defend their position, SHRA simply abandoned and ignored the hearing process altogether, while attempting to convince PLAINTIFFS to not comply with the hearing officer's instructions.

131) This denial of due process continued the harms outlined above.

## Cause

132) SHRA has accepted a waiver of immunity as a condition of accepting federal funding.

133) PLAINTIFFS are entitled to relief for deprivation of the right to equal protection under the law(42 U.S Code § 1983), including non-discrimination and the due process clause of the Fourteenth Amendment.

134) Plaintiffs were denied the right to an expeditious hearing regarding the adverse decision (24 CFR § 982.555(d)). Plaintiffs have been denied the right to the issuance of a factual decision regarding the adverse action by SHRA (24 CFR § 982.555(e)(6)).

## Relief

135) As relief for the past and continuing discriminatory acts by SHRA, Plaintiffs ask the court for civil penalties for harm caused and to prevent future harm. As this harm is derived from SHRA refusing to comply with its own policies Plaintiffs ask for $1,000,000 in punitive damages against each party and $1,000,000 in compensatory damages.

136) All other remedies the court determines just and proper.

## Claim 4: Accessibility of Services

137) Plaintiffs made many requests for MACIAS, JACKSON, BROWN, THAO, PAULSON, and the BOARD to provide accessibility to program services in the most integrated fashion possible as alleged above. All were denied or ignored.

138) DOZIER, PAULSON, and the BOARD intentionally made services inaccessible to PLAINTIFFS, evidenced by SHRA communicating with VALENTINE over the same methods requested by PLAINTIFFS.

139) SHRA, including PAULSON, DOZIER, and the BOARD continue to make services available in the least accessible manner possible, and ignores attempts to access program services, even through PLAN approved access methods.

140) This continued pattern of denial of access to program services has continued the pattern of harms outlined above.

**Cause**

141) SHRA has accepted a waiver of immunity as a condition of accepting federal funding.

142) PLAINTIFFS are entitled to relief for deprivation of the right to equal protection under the law(42 U.S Code § 1983).

x) SHRA discriminated against PLAINTIFFS on the basis of disability as defined by the FHA (42 U.S Code § 3602(h)), ADA(42 U.S. Code § 12112(5)(A)), and REHAB (29 U.S Code § 701(a)(4)).

**Relief**

143) $200,000 in compensatory and punitive damages against Sacramento Housing and Redevelopment Agency consistent with the number of employees (42 U.S. Code § 1981(b)(3)).

144) $103,591 in civil penalties against each named defendant for violating Plaintiffs rights under the ADA (42 U.S. Code § 12188(b)(2)(C)(i)) adjusted for inflation (28 CFR § 85.5), or $207,183 in civil penalties if this is a subsequent violation.

145) $115,054 in civil penalties against each named defendant for violating Plaintiffs rights under the FHA (42 U.S. Code § 3614(d)(1)(C)(i)), adjusted for inflation or $230,107 in civil penalties if this is a subsequent violation.

**Claim 5: Discrimination Based on Disability Type**

146) The BOARD, DOZIER, PAULSON, LYNCH, and CRUZ discriminated against PLAINTIFFS based on their type of disability as alleged above.  SHRA maintains a separate set of "approvable" reasonable accommodation requests depending on type of disability.

147) SHRA for example does approve text communication with hearing impaired individuals, but refuses to do so for PLAINTIFFS disability.  SHRA will approve housing modifications for individuals with disabilities with "durable medical equipment", but refuse to do so for the PLAINTIFFS, who require an extra room to be used as durable medical equipment.

148) SHRA goes as far as enacting policy in their PLAN which even serves to limit the type of care available to them based on their disability type.  The PLAN requires a live in aide to be a

permanent resident with the voucher family, requires a single individual to provide any care that may be provided, and refuses to allow family members to be live in aides.

149) These limitations discriminate against PLAINTIFFS by allowing a ridiculously limited type of care to be approved.

## Cause

150) SHRA has accepted a waiver of immunity as a condition of accepting federal funding.

151) PLAINTIFFS are entitled to relief for deprivation of the right to equal protection under the law(42 U.S Code § 1983).

152) SHRA discriminated against PLAINTIFFS on the basis of disability as defined by the FHA (42 U.S Code § 3602(h)), ADA(42 U.S. Code § 12112(5)(A)), and REHAB (29 U.S Code § 701(a)(4)).

## Relief

153) $200,000 in compensatory and punitive damages against Sacramento Housing and Redevelopment Agency consistent with the number of employees (42 U.S. Code § 1981(b)(3)).

154) $103,591 in civil penalties against each named defendant for violating Plaintiffs rights under the ADA (42 U.S. Code § 12188(b)(2)(C)(i)) adjusted for inflation (28 CFR § 85.5), or $207,183 in civil penalties if this is a subsequent violation.

155) $115,054 in civil penalties against each named defendant for violating Plaintiffs rights under the FHA (42 U.S. Code § 3614(d)(1)(C)(i)), adjusted for inflation or $230,107 in civil penalties if this is a subsequent violation.

## Claim 6:  Discrimination Based on Family Composition

156) The SHRA PLAN written by the BOARD and administered by DOZIER and PAULSON imposes limits on family composition, and explicitly states SHRA will force an "under-housed" condition if SHRA family members exceed what SHRA believes the family should have.

157) Chapter 5 of the PLAN states for instance that it may deny adding extra bedrooms for foster children, even if this placement is court ordered.  By forcing this under-housed condition, SHRA then has grounds to terminate program services.

## Cause

158) SHRA has accepted a waiver of immunity as a condition of accepting federal funding.

159) PLAINTIFFS are entitled to relief for deprivation of the right to equal protection under the law(42 U.S Code § 1983).

160) The FHA provides protection against discrimination against family status, including adoptive or foster parents.

## Relief

161) $200,000 in compensatory and punitive damages against Sacramento Housing and Redevelopment Agency consistent with the number of employees (42 U.S. Code § 1981(b)(3)).

162) $115,054 in civil penalties against each named defendant for violating Plaintiffs rights under the FHA (42 U.S. Code § 3614(d)(1)(C)(i)), adjusted for inflation or $230,107 in civil penalties if this is a subsequent violation.

## V. RELIEF

163) Plaintiffs have experienced continued discrimination by SHRA resulting in harms noted above.  Plaintiffs have evidence which shows SHRA has engaged in this discrimination in the recent past, and SHRAs policies and procedures will obligate it to continue the practice of rights violations into the future without significant corrective action by the court.  Plaintiffs ask for all relief outlined above.  In addition, the Plaintiffs ask for all costs and fees associated with bringing this complaint.