**[ FILED ]**

David Samuel, Pro Se
Sydney Roberts, Pro Se
1100 Howe Ave, Apt 126
Sacramento, CA 95825
512-522-8571
edfed@possiblymaybe.com

JUN 0 2 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS<br><br>DAVID TYRONE SAMUEL,<br><br>AIMS (A MINOR),<br><br>DAYS (A MINOR)<br><br>      Plaintiffs,<br><br>v.<br><br>SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY ET AL.,<br><br>      Defendants | Case No: 2:22-cv-01699 DJC AC<br><br><br>Plaintiffs Motion for Partial Summary Judgment on Third Amended Complaint<br><br><br>Fed R. Civ. P. 56(a)<br><br><br>Date:  July 20, 2023<br>Time:  1:30 PM<br>Judge:  Hon. Daniel J. Calabretta<br>Courtroom: Number 10 - 13th Floor |

1)      Pursuant to Federal Rule of Civil Procedure 56(a), Plaintiffs Sydney Brooke Roberts ("MADDY"), David Tyrone Samuel ("DAVID"), MAPS, and AIMS respectfully move this Court for an order granting Summary Judgment in their favor on claims 1 and 5 of the Third Amended Complaint ("COMPLAINT"), discrimination due to disability under the Fair Housing Act ("FHA"), Americans with Disabilities Act ("ADA"), and Rehabilitation Act ("REHAB"), and discrimination due to disability type under FHA, ADA, and REHAB.

PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT ON THIRD AMENDED
COMPLAINT - 1

2)    In support, Plaintiffs concurrently file -

3)    Plaintiff's Memorandum of Points and Authorities in Support of Plaintiffs Motion for Partial Summary Judgment

4)    Plaintiffs Certification of Meet and Confer Exhaustion

5)    Plaintiff David Tyrone Samuel Affidavit in Support of Plaintiffs Motion for Summary Judgment

6)    Plaintiff Sydney Brooke Roberts Affidavit in Support of Plaintiffs Motion for Summary Judgment

7)    Plaintiffs move that all relief requested under Claims 1 and 5 in COMPLAINT be granted.


*David Samuel*

David Samuel
Date   06/02/2023


*Sydney Roberts*

Sydney Roberts
Date     06/02/2023


PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT ON THIRD AMENDED COMPLAINT - 2

NAME, ADDRESS AND TELEPHONE NUMBER OF ATTORNEY(S)
EDWARD P. GARSON (SBN 96786)
ALEXANDER CHEUNG (SBN 297720)
WILSON ELSER MOSKOWITZ EDELMAN & DICKER
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-0990

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sydney Brooke Roberts,<br>David Samuel,<br>A.I.M.S.,<br>D.A.Y.S.,<br><br>PLAINTIFF(S),<br>v.<br>Sacramento Housing and Redevelopment<br>Agency, et. al,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>2:22-cv-01699-DJC AC<br><br><br>**PROOF OF SERVICE - ACKNOWLEDGMENT<br>OF SERVICE** |

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of
Sacramento _____, State of California, and not a
party to the above-entitled cause. On __June 02_____, 20 __23____, I served a true copy of
__Plaintiffs Motion for Partial Summary Judgment on Third Amended Complaint_____
by personally delivering it to the person (s) indicated below in the manner as provided in FRCivP 5(b); by
depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following:
(list names and addresses for person(s) served.  Attach additional pages if necessary.)

Place of Mailing: _3350 Arapaho Way, Antelope, CA 95843_____
Executed on __June 02_____, 20__23____ at_Sacramento_____, California

Please check one of these boxes if service is made by mail:

☐ I hereby certify that I am a member of the Bar of the United States District Court, Central District of
   California.
☐ I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the
   service was made.
☒ I hereby certify under the penalty of perjury that the foregoing is true and correct.

*Barbara McGarvey*
Signature of Person Making Service

### ACKNOWLEDGEMENT OF SERVICE

I, _____, received a true copy of the within document on _____.


_____          _____
*Signature*                                    *Party Served*

David Samuel, Pro Se
Sydney Roberts, Pro Se
1100 Howe Ave, Apt 126
Sacramento, CA 95825
512-522-8571
edfed@possiblymaybe.com

### IN THE UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS<br><br>DAVID TYRONE SAMUEL,<br><br>AIMS (A MINOR),<br><br>DAYS (A MINOR)<br><br>Plaintiffs,<br><br>v.<br><br>SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY ET AL.,<br><br>Defendants | Case No: 2:22-cv-01699 DJC AC<br><br>Plaintiff's Memorandum of Points and Authorities in Support of Plaintiffs Motion for Partial Summary Judgment;<br><br>Fed R. Civ. P. 56(a)<br><br>Date: July 20, 2023<br>Time: 1:30 PM<br>Judge: Hon. Daniel J. Calabretta<br>Courtroom: Number 10 - 13th Floor |

### MEMORANDUM OF POINTS AND AUTHORITIES

### Table of Contents

I.      Introduction _____5

II.     Statement of Undisputed Facts _____5

        A.      Defendants _____5

        B.      Plaintiffs _____6

        C.      Background _____7

        D.      Other Relevant Events _____8

III.    Argument _____9

        A.      Disability Discrimination Claim 1 – Refusal to Accommodate _____9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

1. FHA Discrimination Standards _____9

2. ADA and REHAB Discrimination Standards _____9

3. HUD Discrimination Standards _____10

4. Refusal to Reasonably Accommodate is Discrimination under FHA, ADA, REHAB, and HUD Standards _____12

5. Defendants Acts are Unavoidably Discriminatory Due to Lack of Good Faith Interactive Process _____14

6. Defendants Practice and Policy Circumvents or Substantially Limits Access to Services _____16

7. Defendants Received Training and Notices Regarding Discriminatory Practices, Chose to Discriminate Anyway ____18

B. Disability Discrimination Claim 5 – Disparate Treatment by Type ___19

1. Refusing the Same Accommodation, or Requiring a Less Effective Accommodation to Individuals Based on Disability Type is Discrimination under FHA, ADA, and REHAB _____19

2. Refusing to Make Effective Communication Accommodations Except for Specific Classes of Disability is Discriminatory ___20

C. Discriminatory Effect, Personal and Vicarious Liability _____21

IV. Conclusion _____22

1. Factual Summary _____22

2. Grounds for Judgment _____23

V. References _____24

### TABLE OF AUTHORITIES

**CASES**

**US Supreme Court**

US Airways, Inc. v. Barnett, 535 US 391 (2002) ("BARNETT") _____22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

Bragdon v. Abbott, 524 US 624 (1998) ("BRAGDON") _____23

United States v. Georgia, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2D 650 (2006)

("GEORGIA") _____10

Olmstead v. LC, 527 U.S. 581, 119 S. Ct. 2176, 144 L. Ed. 2D 540 (1999)

("OLMSTEAD") _____10

**9th District**

Coghlan v. American Seafoods Co. LLC., 413 F. 3d 1090 (9th Circuit 2005)

("COGHLAN") _____22

Duvall v. County of Kitsap, 260 F. 3d 1124 (9th Circuit 2001) ("DUVALL") ____15, 20

McGary v. City of Portland, 386 F. 3d 1259 (9th Circuit 2004) ("MCGARY")10, 22, 23

Humphrey v. Memorial Hospitals Ass'n, 239 F. 3d 1128 (9th Circuit 2001)

("HUMPHREY") _____16

Huynh v. HARASZ, No. 14-CV-02367-LHK (N.D. Cal. May 12, 2016) ("HYUNH") 13, 14

Giebeler v. M & B ASSOCIATES, 343 F. 3d 1143 (9th Circuit 2003)

("GIEBELER") _____22

**LAW**

**Statutes**

29 USC § 794(a) _____10

42 USC § 1983 _____10

42 USC § 3602(b) _____12

42 USC § 3602(h) _____5

42 USC § 3604(f)(3)(B) _____9

42 USC § 3613(a)(1)(2) _____9

42 USC § 3613(c)(1)(2) _____9

42 USC § 12102(1) _____6

**Regulations**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

24 CFR § 5.403(2)(iv) _____5

24 CFR § 8.4(b)(1)(iii)(iv)(v)(vi) _____21

24 CFR § 8.4(b)(4)(i)(ii) _____17

24 CFR § 8.4(d) _____6

24 CFR § 8.50(a) _____9

24 CFR 100.5(b) _____21

24 CFR § 100.7(a)(1) _____21

24 CFR § 100.202(c) _____10

24 CFR § 100.204(a) _____22

24 CFR § 982.52(a) _____9

24 CFR 982.402(b) _____13

28 CFR § 35.108(d)(2)(ii) _____17

28 CFR § 35.108(d)(2)(iii)(E)(F) _____6

28 CFR § 35.108(d)(3)(iv) _____6

28 CFR § 35.130(b)(3)(ii) _____19

28 CFR § 35.130(b)(8) _____19

**SHRA Documents**

Housing Authority of the County of Sacramento California Housing Choice Voucher
Program Administrative Plan 2022 ("ADMIN") _____9, 15, 16, 17, 22

The Housing Authority of the City of Sacramento 2022 Admissions and Continued
Occupancy Policy ("ACOP") _____13

HUD Conciliation Agreement 09-20-0002 ("VCA") _____8, 9, 17, 19

**Guidance**

Joint Statement of the Department of Housing and Urban Development and the
Department of Justice Reasonable Accommodations Under the Fair Housing Act
("JOINT") _____10, 18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS
MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

HUD Notice PIH2011-31 ("2011-31") _____ 11, 18

HUD Notice PIH2014-25(HA) ("2014-25") _____ 11, 18

## I.    INTRODUCTION

1)    Plaintiff Sydney Brooke Roberts, David Samuel, AIMS, and DAYS ("Plaintiffs") respectfully submit this Memorandum of Points and Authorities in support of their Motion for Partial Summary Judgment on their third amended complaint ("COMPLAINT").

## STATEMENT OF UNDISPUTED FACTS

### A)    Defendants

2)    Defendants Sacramento Housing and Redevelopment Agency "SHRA" administer the Department of Housing and Urban Development ("HUD") Housing Choice Voucher ("HCV") program for the city and county of Sacramento.

3)    Defendants LaShelle Dozier ("DOZIER"), MaryLiz Paulson ("PAULSON"), Troy Lynch ("LYNCH"), Tanya Cruz ("CRUZ"), and DOES 1-4, collectively ("MANAGERS") are executives or program managers for SHRA, with supervisory responsibility.

4)    Defendants Phil Serna, Rich Desmond, Sue Frost, and Don Nottoli, collectively ("COUNTY"), at the time of COMPLAINT filing served as Supervisors for the County of Sacramento and executives of the housing authority of the county of Sacramento.

5)    Defendants Darrell Steinberg, Angelique Ashby, Sean Loloee, Jeff Harris, Katie Valenzuela, Jay Schenirer, Eric Guerra, Rick Jennings II, and Mai Vang, collectively ("CITY"), at the time of COMPLAINT filing served as Council Members for the city of Sacramento, and executives of the housing authority of the city of Sacramento.

### B)    Plaintiffs

6)    Plaintiffs are a family consistent with 24 CFR § 5.403(2)(iv), and participants in good standing in the HCV program.

7)    Plaintiff David Tyrone Samuel ("DAVID") is a qualified disabled individual consistent with the definitions in 42 USC § 3602(h) (Fair Housing Act ("FHA")) and 42

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 5

USC § 12102(1) (Americans with Disabilities Act Amendments Act ("ADA") and the Rehabilitation Act of 1973 as amended ("REHAB"), diagnosed with "Autism Spectrum Disorder" and "complex Post Traumatic Stress Disorder", with "obvious" impairments under 28 CFR § 35.108(d)(2)(iii)(E)(F).

8)     SHRA and MANAGERS are aware or should be aware of DAVID's qualified disability status, having required and received medical documentation and income verification through Social Security Disability Insurance documents, and noted this disability status in their case files.

9)     Plaintiff Sydney Brooke Roberts ("MADDY") is a qualified disabled individual, consistent with the FHA, ADA, and REHAB definitions.

10)    Plaintiff AIMS (a minor), is the daughter of DAVID and MADDY, and a qualified disabled individual consistent with FHA, ADA, and REHAB definitions diagnosed with "Autism Spectrum Disorder". SHRA and MANAGERS are aware of or should be aware of AIMS status, having received medical documentation and other documents noticing her status. AIMS disabilities and needs are "obvious" (28 CFR § 35.108(d)(2)(iii)(E), (28 CFR § 35.108(d)(3)(iv)).

11)    Plaintiff DAYS (a minor), is the infant daughter of DAVID and MADDY, and requires reasonable accommodation due to the risk from unsupervised behavioral interactions with AIMS.

12)    Both DAVID and AIMS disabilities require occupational, mental health, and behavioral therapy, in an environment conducive to each. The most integrated setting for each would be in their own home, as occupational and behavioral therapy are only available regularly on an in home basis (24 CFR § 8.4(d)).

13)    DAVID has been attempting to start a home based business, which would provide employment and income to the household, while also accommodating his disabilities.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 6

14) AIMS was preschool age at the time of the COMPLAINT filing and now kindergarten age. Due to housing instability AIMS has not had the opportunity to engage school district related services to prepare for integration in a public classroom setting.

15) Plaintiffs requested the reasonable accommodations because without them, they have not been able to access necessary medical, educational, and employment services in their home, have had to employ sleeping arrangements which eliminate basic enjoyment necessities like having a proper living room area or dining room table, and increased stress due to management of behavioral symptoms which ordinarily require extended periods in an isolated space.

**C) Background**

16) On May 19, 2022, September 22, 2022, and September 28, 2022, Plaintiffs submitted written Reasonable Accommodation requests for a change in their HCV family unit size payment standard to SHRA (E1, E8, E42-2).

17) SHRA and MANAGERS requested and received a copy of DAVIDs complete medical records, despite already being aware of the qualified disability status (E40).

18) SHRA and MANAGERS requested and received verification from DAVIDs physician verifying the benefit from the change in payment standards (specifically, the increase in bedroom size on the voucher) (E40). SHRA and MANAGERS also received a copy of AIMS diagnostic report from her physician, with detailed information regarding her specific disability related needs (E42-4 et seq).

19) Sometime between June 24, 2022 and July 08, 2022 PAULSON sent a letter informing Plaintiffs that their reasonable accommodation request had been denied (E4).

20) In the denial letter dated July 08, 2022 from SHRA and signed by PAULSON, PAULSON provides SHRA only considered information submitted to them (E4), and did not request additional information before denying the request (E40).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 7

21)    PAULSON's letter continues by listing a series of blanket policies that SHRA believes it must adhere to for all recipient families, presumably regardless of the need for reasonable accommodation (E4).

22)    Plaintiffs mailed and emailed written reasonable accommodation requests to SHRA on September 22, 2022 and September 28, 2022 for payment standard adjustments, effective communication accommodations, and reasonable modifications (E8, E42).

23)    In a letter dated November 16, 2022, PAULSON signed a letter denying reasonable accommodation using the same language as the letter dated July 08, 2022, the only change being the addition of AIMS name (E6).

24)    This letter did not address any other accommodation or modification requests from the September letters, and does not address how the requested payment standard increase of two bedrooms would be consistent with the language of the letter suggesting one bedroom could be used by a single disabled family member.

### D)    Other Relevant Events

25)    On March 12, 2020 Defendants SHRA entered a conciliation agreement with HUD and an Unknown Party (VCA). The agreement was entered by DOZIER on behalf of SHRA (VCA P. 11). Under the agreement terms, Defendants SHRA and DOZIER agree that it is an unlawful act of discrimination to refuse reasonable accommodations when those accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling (VCA § I(20)). Defendants further agreed to make reasonable accommodations and modifications when they are necessary to afford an individual with disabilities "full and equal enjoyment of the premises" in a timely manner (VCA § I(23(a))).

26)    The terms of VCA included training for reasonable accommodation policy and procedures for all members of Defendant SHRA's HCV unit, including MANAGERS.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 8

This training required documenting and implementing policy for reasonable accommodation requests which do not require evaluation by SHRA's "Reasonable Accommodation Committee" (VCA § I(18)).

27)    From at least April 01, 2022 to at least November 30, 2022 Defendant SHRA did not allow public access to their facilities, and offered no in person access to case workers or their HCV facility lobby.  While processing reasonable accommodation requests, no SHRA employee attempted to make "visual" disability assessments.

28)    SHRA policy is to "fully comply" with all HUD guidance and notices (ADMIN P. 203 ¶ 1 § B "Reasonable Accommodation Policy", 24 CFR § 982.52(a)).  SHRA must submit a certification of compliance with HUD (24 CFR § 8.50(a)).

### III.    Argument

### A)    Disability Discrimination Claim 1 – Refusal to Accommodate

#### 1) FHA Discrimination Standards

29)    The FHA (42 USC § 3604(f)(3)(B)) defines disability discrimination as:

> "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling;"

30)    The right to action for disability discrimination under FHA is provided under 42 USC § 3613(a)(1)(2), and right to relief under 42 USC § 3613(c)(1)(2), including actual and punitive damages, permanent or temporary injunction or restraining order, any other remedies the court feels are appropriate, and at it's discretion, attorney fees and costs.

31)    PHAs may only deny an accommodation once a disability and connection between the disability and request have been confirmed when the accommodation imposes an undue administrative AND financial burden or fundamental alteration of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 9

services (JOINT P. 7 § 7 "Are there any instances when a provider can deny a request for reasonable accommodation without violating the act?").

### 2) ADA and REHAB Discrimination Standards

32) 42 U.S.C. § 12133 provides a right to action for discrimination under Title II of the ADA. 42 USC § 12131(1)(A)(B) applies Title II to "any State or local government;" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government;".

33) REHAB (29 USC § 794(a)) and ADA title II (42 USC § 12132) bar discrimination based on disability, and Courts have taken this to mean that denial of reasonable accommodation constitutes discrimination similar to the FHA definition and ADA Title I and III definitions.

34) OLMSTEAD establishes the requirement that public agencies are required under ADA Title II and REHAB to provide reasonable accommodation or modifications, particularly in housing contexts.

35) The 9th Circuit further explores the contours of ADA Title II and REHAB reasonable accommodation requirements in MCGARY *1267, where it found that even facially neutral policies may burden individuals with disabilities more than others, and failure to reasonably accommodate may constitute discrimination due to disability.

36) In GEORGIA, the Supreme Court found discrimination based on reasonable accommodation denial constitutes a 14th amendment equal protection claim, allowing action under 42 USC § 1983.

37) ADA and REHAB define blanket requests for medical records or making decisions regarding the provision of services based on the nature or severity of a handicap as discrimination (24 CFR § 100.202(c)).

### 3) HUD Discrimination Standards

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 10

38)    All PHAs administering HCV programs on behalf of HUD are required to comply with all HUD regulations and program directives (24 CFR § 982.52).  These directives include the content of HUD's Public and Indian Housing (PIH) Notices, Rules, and Regulations as well as official statements issued by HUD.

39)    HUD regulations implementing REHAB, ADA, and FHA both authorize and require SHRA to issue exceptions to payment standards for households with disabilities, as well as provide a listing of known available units, or provide assistance in locating units which meet the needs of individuals with disabilities 24 CFR § 8.28(a)(3)(4)(5).

40)    HUD Policy makes clear that an accommodation may only be denied under a specific set of circumstances (Notice PIH2011-31 P. 8 "Reasonable Accommodations"):

> "When a family member requires a policy modification to accommodate a disability, PHAs must make the policy modification unless doing so would result in a fundamental alteration in the nature of the program or an undue financial and administrative burden."

41)    HUD requires PHAs to make changes to payment standards in the HCV program as a reasonable accommodation (2014-25 § B "Reasonable Accommodation"):

> "A family's composition or circumstances may warrant the provision of an additional bedroom to permit disability-related overnight care and allow the family equal use and enjoyment of the unit...A reasonable accommodation request may only be denied if it would impose an undue financial and administrative burden on the housing provider or fundamentally alter the nature of the provider's operations."

42)    2011-31 and 2014-25 both go on to describe denying reasonable accommodation for reasons other than those defined statute and regulation, including

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 11

whether "other options" are available as discriminatory unless an undue burden or fundamental alteration of services exists.

### 4) Refusal to Reasonably Accommodate is Discrimination under FHA, ADA, REHAB, and HUD Standards

43)     On May 19, 2022, September 22, 2022 and September 28, 2022 Plaintiffs submitted written reasonable accommodation requests for a change in payment standards affecting their voucher (42 USC § 3602(b)).  Having confirmed the Plaintiffs qualified disability status, Defendants next task was to determine whether or not a nexus between the request and accommodation existed, if it was not apparent.

44)     Plaintiffs provided the nexus in their reasonable accommodation request, stating it was to be utilized for medical and educational purposes, and provided a letter from DAVID's physician verifying the medical benefit of the accommodation, as well as medical documentation from AIMS physician verifying her accommodation needs.  With the nexus verified by both Plaintiffs and their physicians, SHRA was required to grant the accommodation unless the accommodation imparted an "undue administrative *and* financial burden" or a "fundamental alteration" of services.

45)     The July 8, 2022 and November 16, 2022 denial letters do not state the accommodation was denied because a "nexus between the disability and request" did not exist, that the request represented an "undue administrative and financial burden", or that they were a "fundamental alteration of services".

46)     It makes no mention of what information was used to make the decision, how they came to the decision, the qualifications of the individuals making the decision, or even who actually made the decision other than PAULSON.  There is no indication that any medical professional was consulted, no specialist provided an opinion supporting the decision, or any case specific evaluation ever occurred.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 12

47)    The denial letters only state the accommodations were denied, and recommended the family utilize the living room as a bedroom so that the disabled family member could be accommodated.  It further goes on to state it is SHRA policy to deny reasonable accommodation because it is compelled by law to apply a blanket policy requiring the lowest payment standard possible, which supersedes FHA, ADA, REHAB, and HUD requirements.

48)    PAULSON acknowledges the disability related nexus between the request by recommending the family utilize "alternative sleeping arrangements" to accommodate the "disabled family member" as an alternative post denial.

49)    The denial emphasizes language from 24 CFR 982.402(b)(1)(3) in support of this policy, while omitting the language in 24 CFR 982.402(b)(8) which offers a broad range of exceptions, including for reasonable accommodation.

50)    Defendants recommendation for alternate sleeping arrangements violates their own policy: "The family may choose to utilize the living room as a sleeping space; but it shall not be occupied as a permanent sleeping space for more than one person" (ACOP Page 59 ¶ 9) as PAULSON's suggestion would force three individuals into a single bedroom in order implement the recommendation in the July 08, 2022 denial, or four individuals into the living room to implement the November 16, 2022 denial recommendation.

51)    In HYUNH, a case with significant parallels, the defendants denied reasonable accommodation for a change in payment standards (extra bedroom) for families with the same disabilities as Plaintiffs.

52)    The Court noted first noted that Defendants interpretation of their regulatory requirements are incorrect and requiring Plaintiffs to use the living room as a bedroom is an optional policy choice rather than regulatory or HUD requirement (HYUNH *27):

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS
MOTION FOR PARTIAL SUMMARY JUDGMENT - 13

"By not providing the requested reasonable accommodation, one family member would have to sleep in the living room. On this point, federal regulations allow, but do not require, HACSC to consider a living area as a sleeping area."

53)    It further addresses the facially discriminatory nature of the denial recommendation noting: "However, HACSC concedes that they do not require non-disabled households to use the living room as a sleeping area" (HYUNH *27).

54)    Denying the facially reasonable requests, after both the disability became "known" or "obvious" and the relationship between the request and disability were made "known" or "obvious", Defendants denials were discriminatory acts as they did not claim "undue burden" or "fundamental alteration".

55)    Defendants do not "recommend" individuals without disabilities sacrifice their living spaces, nor is it plausible that converting a living area into a sleeping area represents equal enjoyment of a dwelling as a household with a non-disabled family member.

### 5)    Defendants Acts are Unavoidably Discriminatory Due to Lack of Good Faith Interactive Process

56)    Prior to denying the reasonable accommodation requests, Defendants did not attempt to communicate with Plaintiffs or their physicians directly.  Further, Defendants appear to be resting their reason for denying the accommodation requests solely on the belief that blanket occupancy requirements supersede reasonable accommodation requirements.  Defendants letters give no indication that an individualized assessment was performed, and instead rely entirely on misinterpretations of both HUD requirements and their own policies.  Courts have found this adherence to blanket

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 14

policies inherently prevents the case by case analysis required under FHA, ADA, and REHAB (HYUNH *28):

> "Defendants' alleged decision to instead act on a blanket and classwide basis does not allow for the individualized analysis of equal use and enjoyment that may be necessary under Barnett, McGary, and Giebeler."

57)    At best, the Defendants may believe that making a "recommendation" constitutes the interactive process, despite it coming after rather than before a denial.  Courts however have found even in this incorrect interpretation, simply making a "recommendation" fails to meet ADA and FHA requirements (DUVALL *1139):

> "Accordingly, a public entity does not "act" by proffering just any accommodation: it must consider the particular individual's need when conducting its investigation into what accommodations are reasonable."

58)    The failure to initiate the interactive process for any written request violated Defendants documented policies (ADMIN, Page 205 § "Interactive Process"):

> "In those cases, where an evaluation of the qualified provider's recommendation indicates an alternate accommodation may be similarly effective, and based on the RACC's recommendation, the Reasonable Accommodation Receiver, or designated staff, may engage in an interactive process with the client. This negotiation attempts to reach agreement between the original request and an alternate accommodation that would effectively address the disability-related need as stated by the provider. **Note that the client must voluntarily agree to an alternate accommodation**".

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 15

59)     Even if Defendants contend that the accommodations were denied due to "undue hardship" or "fundamental alteration", their own policy notes the interactive process must still occur (ADMIN P. 203 § "Undue Hardship"):

> "The PHA may deny the request and/or present an alternate accommodation that will still meet the need of the person. Prior to the decision, the RACC or the Receiver should interact with the requester."

60)     SHRA and MANAGERS did not initiate or engage in an interactive process before denying the reasonable accommodation, which Courts have found makes them liable for statutory anti- discrimination remedies (HUMPHREY *1138 citing Barnett v. US Air, Inc., 228 F. 3d 1105 9th Circuit 2000):

> "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees." Id. Those "who fail to engage in the interactive process in good faith[] face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible."

> **6)     Defendants Practice and Policy Circumvents or Substantially Limits Access to Services**

61)     Polices or practices which have the effect of subjecting individuals to discrimination on the basis of disability (28 CFR 35.130(b)(i)), or attempting to defeat or substantially impair the anti-discrimination objectives of a public entity are disability discrimination (28 CFR 35.130(b)(ii)).

62)     Defendants policies and acts alleged in COMPLAINT subject individuals to discrimination based on disability by attempting to defeat or impair program objectives of full and equal enjoyment by:

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 16

63)     a) Redefining when a reasonable accommodation may be automatically granted without formal review from the "obvious", "readily apparent", or "otherwise known" standard of FHA, ADA and REHAB to "visible" (ADMIN P. 204 § C "Informal reasonable accommodation requests", 24 CFR § 8.4(b)(4)(i)(ii)). Defendants policy requires automatically granting an accommodation "reasonable in relation to the client's visible disability", and excludes all individuals without "visible" disabilities from the streamlined approval requirements of ADA and REHAB (28 CFR § 35.108(d)(2)(ii)). Defendants agreed to undergo training and correct these policies prior to the acts in the COMPLAINT (VCA§ I(18)).

64)     b) This imparts unnecessary delays in granting reasonable accommodation when it should be immediately approved by adding extra processing requirements by a reasonable accommodation "receiver" which may take a month or more, then requiring a secondary evaluation a "reasonable accommodation compliance committee" ("RACC") imparting further delay. The RACC further does not apply the accommodation instantly when they approve it, instead requiring the family to wait up to a month for payment standards change (ADMIN P. 116 § F "Changes in Voucher Size..."). This delay is the same policy or practice observed in VCA § B, and which Defendants agreed to remedy in VCA § I(19).

65)     c) Defendants policy requires medical professionals to write documents which require knowledge of the Defendants policies, rather than providing an assessment of medical need (ADMIN P.203 § B – "Methods used to Certify a Person with a Disability and the Need for a Reasonable Accommodation"). This is not only outside the scope of a physician's responsibilities, it is explicitly barred by many medical provider's policies. Defendants exacerbate this by requiring very specific language from the documents without providing clear statutory definitions of the language required, or clear samples of the language required. This limits approval for reasonable accommodation only to

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 17

individuals with physicians who's provider groups have policies which allow making assertions about external program qualifications.

66)    d) Defendants sham RACC has no obvious purpose other than denying reasonable accommodation, even those already approved, an attempt to circumvent ADA and REHAB requirements.  ADMIN requires all reasonable accommodation requests to flow through a "reasonable accommodation receiver" who collects documentation or information to determine a disability and nexus consistent with FHA, ADA, and REHAB requirements.

67)    It further requires the "receiver" alone to engage in the interactive process, when Defendants choose to use it.  Once the documentation necessary to support the reasonable accommodation becomes available, the request is required under FHA, ADA, and REHAB to be automatically granted.  The Defendants implementation of the RACC has no function other than inventing reasons to deny reasonable accommodation, contrary to the HUD description of ensuring that PHAs are *complying* with reasonable accommodation requirements.

### 7)    Defendants Received Training and Notices Regarding Discriminatory Practices, Chose to Discriminate Anyway

68)    In Defendants Motion to Dismiss Plaintiff's Third Amended Complaint ("MOTION"), they argued that ADA and REHAB did not apply to Defendants as they only applied in employment contexts, despite recent reasonable accommodation compliance training  (VCA I § 18), illustrating their ignorance or indifference to statutory requirements by SHRA and MANAGERS.  All HUD guidance including JOINT, 2011-31, and 2014-25 clearly note the applicability of FHA, ADA, and REHAB statutes and regulations to Defendants services.

69)    The language used in the reasonable accommodation denial, only a year and a half after the organization wide training on the topic was completed, is a violation of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 18

ADA, REHAB, and FHA anti-discrimination requirements. This language has remained as official policy of Defendants since at least 2020, despite the requirement by HUD to administer the program in compliance with all relevant laws and agreements to correct all discriminatory language in Defendants policy in VCA.

      **B.**      **Disability Discrimination Claim 5 – Disparate Treatment by Type**

            **1)**      **Refusing the Same Accommodation, or Requiring a Less Effective Accommodation to Individuals Based on Disability Type is Discrimination under FHA, ADA, and REHAB**

70)    Title II of the ADA (42 USC § 12134) bars offering less effective accommodations to disabled individuals based on their disability type (28 CFR § 39.130(b)(1)(iii)(iv)(vii)). By offering certain accommodations only to individuals with specific disabilities (e.g. renal failure) and denying the same accommodations to other disabled individuals (e.g. sensory or cognitive disorders) with the same need, Defendants policy openly discriminates against individuals based on disability type (24 CFR 8.4(b)(1)(iv), 28 CFR § 35.130(b)(3)(ii)).

71)    ADA and REHAB also bar imposing eligibility criteria which screen an individual or class of individuals from fully and equally enjoying any service being offered (28 CFR § 35.130(b)(8)). Defendants reasonable accommodation policy creates a "permitted" class for certain accommodation (e.g. "medical equipment") and excludes all others (24 CFR 8.4(b)(1)(iii)).

72)    By only permitting payment standard adjustments for "medical equipment" or "live-in aides", while requiring individuals with other disabilities to make compromises to their living spaces when the same accommodation may be necessary for full and equal use and enjoyment of a dwelling is discriminatory under FHA, and denying the same service or benefit due to disability type is discriminatory under ADA and REHAB (28 CFR § 35.130(a)).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 19

73) Defendants policy states that they would have granted reasonable accommodation to families with "medical equipment" requirements or "live-in aide" requirements, however solely due to Plaintiffs specific disabilities did Defendants deny the reasonable accommodation requests.

### 2) Refusing to Make Effective Communication Accommodations Even Without Reasonable Accommodation is Discriminatory

74) Under ADA and REHAB, PHAs are required to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others (28 CFR § 35.160(a)(1)).

75) The right to communication accommodations comes through the FHA (28 CFR § 35.104, "Auxiliary aids and services"(4)) and defines denying effective communication as a discriminatory act (28 CFR § 35.130(b)(1)(vii)).

76) A reasonable accommodation request is not required for an individual to receive effective communication accommodations for any entity covered under the FHA, SHRA and MANAGERS must make available auxiliary aids and services based on the individual needs of the requesting party, with deference to the specific request of the of the individual or their companions, and the communication accommodation must be provided in a timely manner (28 CFR § 35.160(b)(1)(2)).

77) Requiring individuals with a disability to communicate only via methods Defendants prefer to communicate with, without consideration of the disabled individual's needs, also constitutes discrimination under Title II of the ADA and REHAB. The duty to investigate and provide effective communication accommodation is well settled by case law, and the failure to act on the accommodation request satisfies the deliberate indifference test for discrimination under the ADA and REHAB (DUVALL *1140).

78)    SHRA and MANAGERS, through both their lack of response and explicitly in their denial letters, refused to make any effective communication accommodate despite numerous requests, while recognizing they are required to offer accommodation to hearing impaired individuals is discrimination by disability type (24 CFR § 8.4(b)(1)(ii)).

C.    **Discriminatory Effect, Personal and Vicarious Liability**

79)    FHA institutes liability for discriminatory housing practices under 24 CFR § 100.7(a)(1), including:

> "(i) person's own conduct that results in a discriminatory housing practice and (ii) Failing to take prompt action to correct and end a discriminatory housing practice by that person's employee or agent, where the person knew or should have known of the discriminatory conduct."

80)    FHA also provides that policies or practices which have discriminatory effect, rather than intent imparts this liability (24 CFR 100.5(b)).

81)    MANAGERS are responsible for executing the policies drafted by CITY and COUNTY had a responsibility to not engage in discriminatory acts, whether they "knew" they were discriminatory or not.

82)    CITY and COUNTY are responsible for creating policies which are non-discriminatory and are liable for the discriminatory effect of those policies whether or not they "knew" the policies were discriminatory.

83)    SHRA, MANAGERS, CITY, and COUNTY had prior awareness that their policies and practices were discriminatory, agreed to correct them, then chose not to do so. Despite certifying their non-discriminatory compliance with HUD, notification from Plaintiffs, and extensive training, Defendants allowed and encouraged these discriminatory practices.

**IV. Conclusion**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 21

### A.    Factual Summary

84)    To establish a claim of disability discrimination under the FHA we must establish (GIEBELER *1148):

> (1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap "may be necessary" to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation.

85)    The FHA also describes failing to grant reasonable accommodations as unlawful discrimination (24 CFR § 100.204(a)).

86)    Under the ADA, a similar four part test exists (MCGARY *1265):

> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

87)    To prove an accommodation claim, we can do so by providing either direct or indirect evidence of the discrimination (COGHLAN *1095).

88)    To demonstrate an accommodation is reasonable even if undue hardship or fundamental alteration of services is claimed, we "need only show that an "accommodation" seems reasonable on its face, i. e., ordinarily or in the run of cases." (BARNETT *402).

89)    The accommodations are reasonable on their face in the context of the FHA and housing (GIEBELER *1157) as it's offered to individuals with certain classes of disability as documented prong in processing payment standards (ADMIN P. 48 § B "Exceptions to Subsidy Standards"). Defendants acknowledge the accommodation was reasonable by "recommending" the same accommodation, just without an adjustment to rules, policies, or practices (E4, E6).

90)    The accommodations were necessary as without them, Plaintiffs would be required to sacrifice enjoyment of their dwelling non-disabled individuals would not be required to, including converting their living room area into a sleeping area, or requiring the family to avoid rooms they would ordinarily use for sleeping or recreation during a behavioral issue related to their disabilities.  These conditions create an impairment to the full use and enjoyment of the dwelling (MCGARY *1263).

91)    ADA and REHAB discrimination claims overlap, as ADA statutes were drafted to include and build upon the requirements of REHAB (BRAGDON *632).

92)    There is no dispute Plaintiffs submitted reasonable accommodation requests, on their own behalf, were qualified to do so, for reasons related to their disabilities, and those reasons were to provide a full opportunity to use and enjoy a dwelling.

93)    There is no dispute Defendants refused those reasonable accommodation requests, without engaging an interactive process, for reasons other than undue burden or fundamental alteration of services.

94)    There is no dispute Defendants offer reasonable accommodations to some classes of disabilities while denying them to others.

### B.    Grounds for Judgment

95)    Federal Rules of Civil Procedure 56(a) provides:
> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

96)    There are no facts or evidence available which could demonstrate that Defendants acts do not constitute disability discrimination.  The evidence provides direct evidence of this discrimination, and Defendants own documented policies establish awareness that the acts in COMPLAINT claims 1 and 5 were discriminatory.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 23

### V.    References

97)    2011-31 - https://www.hud.gov/sites/documents/PIH2011-31.PDF

98)    2014-25 - https://www.hud.gov/sites/documents/PIH2014-25MARKUPOVERSUB.PDF

99)    ACOP - https://www.shra.org/wp-content/uploads/2022/01/2022-ACOP-City.pdf

100)    ADMIN - https://www.shra.org/wp-content/uploads/2022/04/HCV-2022-Administrative-Plan-Final.pdf

101)    JOINT - https://www.hud.gov/sites/documents/huddojstatement.pdf

102)    VCA – https://www.hud.gov/sites/dfiles/FHEO/documents/20Sacramento%20Housing_CA-VCA_Final%20(002).pdf

### Evidence

103)    E1 – "May 19, 2022 Reasonable Accommodation Request"

104)    E4 – "July 8, 2022 Reasonable Accommodation Denial"

105)    E8 – "September 22, 2022 Reasonable Accommodation Request"

106)    E42 – "September 28, 2022 Reasonable Accommodation Request"

107)    E6 – "November 11, 2022 Reasonable Accommodation Denial"

108)    E40 – "April 20, 2022 SHRA Reasonable Accommodation Brief"

109)    E41 – "July 20, 2022 physician response regarding contact from SHRA"

*David Samuel*

David Samuel

Date    06/02/2023

*Sydney Roberts*

Sydney Roberts

Date    06/02/2023

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT - 24



# AUTHORIZATION FOR USE OR E1-1
# DISCLOSURE OF HEALTH
# INFORMATION

(This form is available electronically upon request)

**HEALTH CARE PROFESSIONAL** - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

**THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION, WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.**

This Request is made on behalf of: ☐ Head-Of-Household  ☒ Another **David Samuel**

**t0032944**                 **Sydney Roberts**
Tcode                        Name
**1100 Howe Ave, Apt 126**          **Sacramento, CA 95825**
Address                            city/State/Zip

Phone(s) **512-917-8112**         Alt Phone _____

Type of Accommodation(s) Requested: (PLEASE PRINT LEGIBLY) **Extra bedroom for management of disability symptoms for David and Artemis, isolated space for medical appointments, and school.**

Physician/Health Care
Professional's Name:          **Michel Medina**

Name of Employer or Practice:  **Kaiser Permanente**

Address: **2031 Howe Ave, Sacramento, CA 95825**

Phone: **1-916-973-5300**   Fax: _____ Date: **05/19/2022**

I hereby voluntarily authorize the Physician/Health Care Professional named above to disclose information from my record to the Housing Authority of Sacramento on the attached verification form for the purpose of verifying my disability status and need for an accommodation. The Housing Authority may use the information solely for such purpose.

**AUTHORIZATION EXPIRATION AND REVOCATION**
I understand that I may revoke this authorization in writing at any time. The written revocation will be effective upon receipt, except to the extent that the disclosing party or others have acted in reliance upon this authorization. If this authorization has not been revoked, it will terminate one year from the date of my signature, unless I have specified a different expiration date or expiration event.

**SPECIFYING A SHORTER TERM AUTHORIZATION**
This authorization should expire on: _____ or upon the following conditions




rev 03/10/2017

### TERMS OF AUTHORIZATION

I understand that the health care provider will not condition treatment or eligibility for care on my providing this authorization.

I understand that information disclosed by this authorization may be subject to redisclosure by the recipient and may no longer be protected by the Health Insurance Portability and Accountability Act Privacy Rule [45 CFR Part 164], and the Privacy Act of 1974 [5 USC 552a].

I understand that I have the right to receive a copy of this authorization.

Print Name  **Sydney Roberts**

Signature _____ Date __05/19/2022__

---

**Housing Authority Use Only:**

Faxed to Medical Professional on: _____          Faxed By: _____
                                   (Date)

Tenant Code: _____          Housing Specialist: _____
                                            HS Code: _____

☐ HCV Resident    ☐ HCV applicant
☐ PH Resident     ☐ PH applicant





rev 03/10/2017



E4-1

Mailbox CW 22
t0032944

July 8, 2022

Sydney Roberts
1100 Howe AVE 126
Sacramento, CA 95825

Dear Mr./Ms. Roberts,

Your request for an additional bedroom as a reasonable accommodation for the disabilities of David Samuel is hereby denied. Based on an evaluation of the information you and your health care professional submitted, we are unable to approve your request. Your request states that you require an additional bedroom due to disability, however, needs can be met without increasing the voucher size. We recommend alternative sleeping arrangements. There are two bedrooms currently on the voucher and one could be made available to your disabled family member.

The guidelines that are used to determine if a reasonable accommodation (RA) request meets the RA threshold are the Housing and Urban Development (HUD) regulations, the Housing Authority's administrative plan and the Housing Choice Voucher (HCV) guide book.

The regulations are found in the Code of Federal Regulations – specifically 24 CFR 982.402.

In 24CFR 982.402

- The PHA must establish subsidy standards that determine the number of bedrooms needed for families of different sizes and compositions
- The subsidy standards must provide for the **smallest number of bedrooms needed to house a** family without overcrowding
- The subsidy standards must be applied consistently for all families of like size and composition.

It also states that

- The family may lease an otherwise acceptable dwelling unit with fewer bedrooms than the family unit size
- The family may lease an otherwise acceptable dwelling unit with more bedrooms than the family unit size

Given these regulations the Housing Authority also has policies that guide us in addition to the HUD regulations.

Per our Administrative Plan – chapter 5

- The PHA does NOT determine who shares a bedroom/sleeping room, but there must be at least one person per bedroom on the voucher.





**E4-2**



> One bedroom will be allotted for the head of household and spouse or co-head and one bedroom will be assigned for each additional two persons.

*These standards relate to the number of bedrooms on the voucher, not the family's actual living arrangements.*

A third document we look at is the HCV Guidebook – which is information provided by HUD for the PHA's to use when administering the HCV program. This document states that:

> a living room may be used as a sleeping (bedroom) space, but no more than two persons may occupy the space.

We are willing to review any additional information you may wish to submit in support of your request. Additional documentation may be faxed to (916) 264-1533. Any information your health care provider wishes to submit, must be sent directly to our office from their office, additional information may be faxed directly to (916) 264-1533.

If you disagree with this determination, you have the right to speak with a Committee Coordinator to discuss the possibility of modifying your request, the health care provider's recommendations and/or to request a hearing, provided we receive your request within fifteen days of your receipt of this letter. You may call (916) 449-6346 to reach the Committee Coordinator by phone.

Sincerely,

Maryllo Paulson, Director, Housing Choice Voucher Program
Sacramento Housing and Redevelopment Agency





DocuSign Envelope ID: 0A7E1CEB-BA21-4A63-9CB2-ACE4CDF2A696

**E6-1**



CHANGING LIVES

Mailbox CW 22
t0032944

November 16, 2022

Sydney Roberts
1100 Howe AVE 126
Sacramento, CA 95825

Dear Mr./Ms. Roberts,

Your request for an additional bedroom as a reasonable accommodation for the disabilities of David and █████ Samuel is hereby denied. Based on an evaluation of the information you and your health care professional submitted, we are unable to approve your request. Your request states that you require an additional bedroom due to disability, however, needs can be met without increasing the voucher size. We recommend alternative sleeping arrangements. There are two bedrooms currently on the voucher and they could be made available to your disabled family members.

The guidelines that are used to determine if a reasonable accommodation (RA) request meets the RA threshold are the Housing and Urban Development (HUD) regulations, the Housing Authority's administrative plan and the Housing Choice Voucher (HCV) guide book.

The regulations are found in the Code of Federal Regulations – specifically 24 CFR 982.402.

In 24CFR 982.402

> The PHA must establish subsidy standards that determine the number of bedrooms needed for families of different sizes and compositions
> The subsidy standards **must** provide for the **smallest number of bedrooms needed** to house a family without overcrowding
> The subsidy standards must be applied consistently for all families of like size and composition.

It also states that

> The family may lease an otherwise acceptable dwelling unit with fewer bedrooms than the family unit size
> The family may lease an otherwise acceptable dwelling unit with more bedrooms than the family unit size

Given these regulations the Housing Authority also has policies that guide us in addition to the HUD regulations.

Per our Administrative Plan – chapter 5

> The PHA does NOT determine who shares a bedroom/sleeping room, but there must be at least one person per bedroom on the voucher.





**E6-2**

DocuSign Envelope ID: 0A7E1CEB-BA21-4A63-9CB2-ACE4CDF2A696



CHANGING LIVES

> One bedroom will be allotted for the head of household and spouse or co-head and one bedroom will be assigned for each additional two persons.

*These standards relate to the number of bedrooms on the voucher, not the family's actual living arrangements.*

A third document we look at is the HCV Guidebook – which is information provided by HUD for the PHA's to use when administering the HCV program. This document states that:

> a living room may be used as a sleeping (bedroom) space, but no more than two persons may occupy the space.

We are willing to review any additional information you may wish to submit in support of your request. Additional documentation may be faxed to (916) 264-1533. Any information your health care provider wishes to submit, must be sent directly to our office from their office, additional information may be faxed directly to (916) 264-1533.

If you disagree with this determination, you have the right to speak with a Committee Coordinator to discuss the possibility of modifying your request, the health care provider's recommendations and/or to request a hearing, provided we receive your request within fifteen days of your receipt of this letter. You may call (916) 449-6346 to reach the Committee Coordinator by phone.

Sincerely,

*MaryLiz Paulson*

MaryLiz Paulson, Director, Housing Choice Voucher Program
Sacramento Housing and Redevelopment Agency



Equal Housing
Opportunity



# E40-1

## REASONABLE ACCOMMODATION (R/A)
## INFORMAL HEARING BRIEF

| | |
|---|---|
| Tenant Name: Sydney Roberts | T-code: t0032944 |
| Hearing Date: 04.20.2023 @ 3:00pm via ZOOM | Unit Address: Have not leased up |

Family consists of 4 people: Sydney Roberts, head-of-household, David Samuel, spouse, Artemis Samuel, 4-year-old household member and Demeter Samuel, 1 year-old household member. They are not currently being subsidized in a unit. They have a 2-bedroom voucher and have been on the program since September 14th, 2018.  They are requesting an extra bedroom on behalf of the Spouse David Samuel, an extra bedroom on behalf of daughter Artimis, sound proofing and black out curtains, assistance with housekeeping, communication via email and assistance with finding housing.

| | |
|---|---|
| May 19, 2022 | The family submitted an R/A request for a "Separate Room" on behalf of Household members David Samuel and Artemis Samuel. **(Exhibit A)** |
| May 23, 2022 | The doctor responded with Mental Health Assessment & Plan for David Samuel **(Exhibit B)** |
| June 1, 2022 | The R/A Committee requested additional information on David Samuel and all information for Artemis. |
| June 20, 2022 | The Doctor Responded that Household Member, David would benefit from a reasonable accommodation for an extra bedroom. **(Exhibit C)** |
| June 24, 2022 | The R/A Committee denied the request for an additional room. The Committee recommended alternate sleeping arrangements. A letter was sent to the family denying the request. **(Exhibit D)** |
| September 09, 2022 | Informal Hearing was held.  The Hearing Officer was unable to complete the process so the informal Hearing was postponed. The family was notified via phone call on September 15, 2023 by Tanya Cruz, Program Manager. **(Exhibit E)** |
| November 09, 2022 | The R/A Committee reviewed a request for an additional room to allow David to have a separate room and to allow Artemis to have a separate room. The R/A Committee denied the request for an additional room. The Committee recommended alternate sleeping arrangements. **(Exhibit E 1-2)** |
| March 20, 2023 | The R/A Committee reviewed a request for an additional room to allow David to have a separate room and to allow Artemis to have a separate room and housekeeping services. (Exhibit F) |

| | |
|---|---|
| March 20, 2023 | R/A Committee approved one additional bedroom. Granting a 3BR voucher would allow both household members, David Samuel and Artemis Samuel, to have their own room. The request for housekeeping services from SHRA was denied as this would be a fundamental change in the program. SHRA does not provide housekeeping services. A letter was sent to the family. (Exhibit G) |
| March 29, 2023 | The R/A Committee reviewed a request for two additional bedrooms on behalf of David and Artemis; sound proofing and black out curtains in the rooms of David and Artemis; request to have all communication conducted via email on behalf of David; request for voucher extensions. (Exhibit F) |
| March 29, 2023 | R/A Committee denied the request as no nexus was established to provide both David and Artemis two bedrooms each. (Exhibit I) |

## **Conclusion:**

Based on the foregoing, the PHA respectfully requests that the trier of fact determine that it correctly denied Ms. Robert's reasonable accommodation request.

Respectfully submitted,

Troy Lynch,
SHRA Program Manager


## EXHIBIT SUMMARY

| | |
|---|---|
| Exhibit A: | R/A request form, pages 1 and 2 – Completed by Participant |
| Exhibit B: | Mental health Assessment & Plan for David Samuel |
| Exhibit C: | Doctors Letter for David Samuel |
| Exhibit D: | R/A Denial letter |
| Exhibit E: | R/A Informal Hearing appointment letter |
| Exhibit F: | Request from family |
| Exhibit G: | R/A Decision letter |
| Exhibit H: | R/A Decision letter |
| Exhibit I: | Informal Hearing Notice |

kp.org/messagecenter
**Following up on SHRA letter**



**MICHEL MEDINA MD**
To: David Samuel (Viewed)
Jul 26, 2022 at 10:20:00 AM

I have not. And I just went to double check my physical mail box to see if maybe they mailed a letter and I havent gotten anything from them

---

## Following up on SHRA letter



**David Samuel**
To: MICHEL MEDINA MD
Jul 20, 2022 at 4:12 AM

Dr Medina,

Did SHRA contact you regarding the letter? They denied the request without contacting me and they don't mention the letter at all in the denial reasoning.

**E42-1**

David Samuel
Sydney Roberts
1100 Howe Ave, Apt 126
Sacramento, CA 95825
shra@possiblymaybe.com

SHRA
630 I Street
Sacramento, CA 95814
ra@shra.org
Attn:  HCV Reasonable Accommodations

CW22
T0032944

Re: t0032944

SHRA,

Our situation has been updated and we need to make additional reasonable accommodation requests.

First, we require a voucher able to accommodate an extra room to support Artemis educational and rehabilitation goals, as initially requested.  As an accommodation both Artemis and David require separate spaces, which will need to be sound isolated and setup as distraction free spaces.  These spaces are not able to be shared, as each space will be configured to accommodate different needs between David and Artemis.

The additional spaces for both David and Artemis require sound proofing and control of external light sources, preferably with black out shades for windows if necessary.

We again request that all communication be conducted via email as a reasonable accommodation.  Our email adress is shra@possiblymaybe.com.  Please feel free to email us if you have any questions or concerns.

We are requesting a list of available housing from SHRA maintained for individuals with disabilities which meets our housing needs as a reasonable accommodation.  We also request any assistance available from SHRA in finding housing which meets our housing needs.

Finally, as a reasonable accommodation for the difficulty of finding appropriate housing to fit our disability related needs, we are requesting an extension of the voucher deadline.  We request that our extension timeline include an adequate period to perform a housing search after SHRA has provided a list of available housing.

Thank you for your time.

David, Sydney, Artemis, and Demeter

via email and registered mail

RECEIVED BY

SEP 26 2022

SHRA / SCAN ROOM

09/29/2022
David Samuel
Sydney Roberts
1100 Howe Ave, Apt 126
Sacramento, CA 95825
shra@possiblymaybe.com
tcode: t0032944

**SHRA**

**SEP 30 2022**

**Scan/Mail** C~122

Sacramento Housing and Redevelopment Agency
630 I Street
Sacramento, CA 95814
ra@shra.org

Re: Reasonable Accommodation Voucher Status

Case Worker:

I am writing to again request that our reasonable accommodation for an extra bedroom on our voucher allocation be approved and expedited.   Please find included in this packet a copy of Artemis Samuel's medical records, which should provide certification of disability.  The extra bedrooms will allow full use and enjoyment of the unit while allowing for necessary accommodations for treatment, education, and employment goals.  I am including a copy of the rent affordability worksheet provided by the community as a reference.

We have spoken to the community manager in our current complex and they've determined that we would qualify under current payment standards for all units larger than two bedrooms.  They have agreed to hold the unit aside for one week, at which time we will need to provide evidence that a voucher size upgrade is in process.

As SHRA has already determined a nexus exists between David Samuel's disabilities and the reasonable accommodation request, and Artemis Samuel was also included on our reasonable accommodation request pending formal diagnosis,  this should provide the necessary confirmation to determine a nexus between the reasonable accommodation request also exists for Artemis Samuel.   As this reasonable accommodation has already been delayed for several months, we ask that this request be expedited so that we can begin the process of applying for and moving into the qualified unit the community has set aside for us.

If there are any additional questions or concerns, please feel free to contact us at
shra@possiblymaybe.com.

Thank you for your time,


David, Maddy, Artemis, and Demeter.

# E42-3

 Rent Affordability Worksheet For Housing Choice Voucher Program

September 29, 2022

**Name:** Sydney Roberts
**Prospective Address:** 1100 Howe Ave
**Voucher Issue Date:** 08-01-2022

**Tenant Code:** t0032944
**Thomas Grid:**
**Voucher Expiration Date:** 08-01-2023

| | |
|---|---|
| 1. Authorized Voucher Size: | 3 |
| 2. Total BR Size of Unit: | 3 |
| 3. Authorized Payment Standard for zipcode 95825 (from schedule using lower of voucher size and unit size): | 2,574 |
| 4. Utility Allowance (from schedule using lower of voucher size and unit size): | 262 |

Unit Type: HCV apartments
Cooking - Electric: 13
Heating - Natural Gas: 31
Water Heating - Natural Gas: 21
Other Electric: 48
Flat Fee Electric: 23
Air Conditioning: 23
Water: 47
Sewer: 18
Trash: 40

| | |
|---|---|
| 5. How much is the rent?: | 2,160 |
| 6. Gross Rent of Unit (Contract Rent plus Utility Allowance): | 2422 |

**If Gross Rent is less than Payment Standard (line 6 < line 3) then unit is approvable. You can stop here. Otherwise 40% rule (below) applies.**

| | |
|---|---|
| 7. Adjusted Monthly Income (ami): | 1275 |
| 8. Unadjusted Monthly Income (umi): | 1388 |
| 9. TTP (higher of 30% of ami or 10% of umi or $50): | 382 |
| 10. Total Housing Payment (GR - TTP): | 2040 |
| 11. Tenant's Portion of Rent (Contract Rent - Total Housing Payment): | 120 |

Note: If this amount is negative, it is sent to the tenant, called utility reimbursement payment, and tenant rent to owner is zero

| | |
|---|---|
| 12. 40% of adjusted monthly: | 510 |

**40% Rule: If Tenant Portion of Rent plus Utility Allowance is less than 40% of monthly adjusted income, (line 11 plus 4 < line 12) then unit is approvable**

## This unit is approvable

Kaiser Medical Record#: ███████
Date of Evaluation:  09/14/2022

B.  Restricted, repetitive patterns of behavior, interests, or activities, as manifested by at least two of the following, currently or by history (examples are illustrative, not exhaustive; see text):

| Met | Not Met | |
|---|---|---|
| X | | **(B1)** Stereotyped or repetitive motor movements, use of objects, or speech (e.g., simple motor stereotypies, lining up toys or flipping objects, echolalia, idiosyncratic phrases). |
| | | Comments: ███████ showed clear examples of motor and verbal stereotypies. |
| X | | **(B2)** Insistence on sameness, inflexible adherence to routines, or ritualized patterns of verbal or nonverbal behavior (e.g., extreme distress at small changes, difficulties with transitions, rigid thinking patterns, greeting rituals, need to take same route or eat same food every day). |
| | | Comments: ███████ showed difficulties with transitions and some apparent resistance to control through avoidance or ignoring. |
| X | | **(B3)** Highly restricted, fixated interests that are abnormal in intensity or focus (e.g., strong attachment to or preoccupation with unusual objects, excessively circumscribed or perseverative interests). |
| | | Comments: ███████ showed a limited pattern of interest overall, but on preferred activities or interests. She showed a very intense level of interest and efforts to redirect her away from that activity or object were met with distress. |
| X | | **(B4)** Hyper- or hypo-reactivity to sensory input or unusual interest in sensory aspects of the environment (e.g., apparent indifference to pain/temperature, adverse response to specific sounds or textures, excessive smelling or touching of objects, visual fascination with lights or movement). |
| | | Comments: ███████ was reported and observed to show evidence of sensory differences across many sensory modalities. |

Specify current severity for restricted, repetitive patterns of behavior:

| Severity level | Restricted, repetitive behaviors |
|---|---|
| Level 3 "Requiring very substantial support" | Inflexibility of behavior, extreme difficulty coping with change, or other restricted/repetitive behaviors markedly interfere with functioning in all spheres. Great distress/difficulty changing focus or action. |

CONFIDENTIAL

Samuel, Artemis
Kaiser Medical Record#: 19676474
Date of Evaluation: 09/14/2022

Page 13 of 13    **E42-5**

| X-Level 2 "Requiring substantial support" | Inflexibility of behavior, difficulty coping with change, or other restricted/repetitive behaviors appear frequently enough to be obvious to the casual observer and interfere with functioning in a variety of contexts. Distress and/or difficulty changing focus or action. |
| Level 1 "Requiring support" | Inflexibility of behavior causes significant interference with functioning in one or more contexts. Difficulty switching between activities. Problems of organization and planning hamper independence. |
| Not applicable | |

| Met | Not Met | |
|---|---|---|
| X | | C. Symptoms must be present in the early developmental period (but not become fully manifest until social demands exceed limited capacities, or may be masked by learned strategies later in life). |
| X | | D. Symptoms cause clinically significant impairment in social, occupation, or other important areas of current functioning. |
| X | | E. These disturbances are not better explained by intellectual disability or global developmental delay. Intellectual disability and ASD frequently co-occur; to make comorbid diagnoses of ASD and intellectual disability, social communication should be below that expected for general developmental level. |

## DIAGNOSTIC IMPRESSIONS

F84.0   Autism Spectrum Disorder
*Requiring very substantial support for deficits in social communication (Level 3)*
*Requiring substantial support for restricted, repetitive behaviors (Level 2)*
Without accompanying intellectual impairment
With accompanying expressive and receptive language impairment

Thank you for the referral. I very much appreciate having had the opportunity to work with Artemis and her father.

Katherine A. Redwine, Ph.D.
Licensed Psychologist PSY 21705

CONFIDENTIAL

NAME, ADDRESS AND TELEPHONE NUMBER OF ATTORNEY(S)
EDWARD P. GARSON (SBN 96786)
ALEXANDER CHEUNG (SBN 297720)
WILSON ELSER MOSKOWITZ EDELMAN & DICKER
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-0990

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sydney Brooke Roberts,<br>David Samuel,<br>A.I.M.S.,<br>D.A.Y.S.,                PLAINTIFF(S),<br>v.<br>Sacramento Housing and Redevelopment<br>Agency, et. al,<br><br>                          DEFENDANT(S). | CASE NUMBER<br><br>**2:22-cv-01699-DJC AC**<br><br>**PROOF OF SERVICE - ACKNOWLEDGMENT<br>OF SERVICE** |

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Sacramento _____, State of California, and not a party to the above-entitled cause. On __ **June 02** _____, 20 **23** ____, I served a true copy of __ **Plaintiff's Memorandum of Points and Authorities in Support of Plaintiffs Motion for Partial Summary** __ by personally delivering it to the person (s) indicated below in the manner as provided in FRCivP 5(b); by depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following: (list names and addresses for person(s) served. Attach additional pages if necessary.)

Place of Mailing: 3350 Arapaho Way, Antelope, CA 95843 _____

Executed on __ **June 02** _____, 20 __ **23** ___ at Sacramento _____, California

Please check one of these boxes if service is made by mail:

☐  I hereby certify that I am a member of the Bar of the United States District Court, Central District of California.

☐  I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

☒  I hereby certify under the penalty of perjury that the foregoing is true and correct.

*Barbara McGarvey*

*Signature of Person Making Service*

## ACKNOWLEDGEMENT OF SERVICE

I, _____, received a true copy of the within document on _____.

_____           _____

*Signature*                                                      *Party Served*

CV-40 (01/00)                          PROOF OF SERVICE - ACKNOWLEDGMENT OF SERVICE