

MAY 30 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK



David Samuel, Pro Se
Sydney Roberts, Pro Se
108 Rinetti Way
Rio Linda, CA 95673
512-522-8571
edfed@possiblymaybe.com

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SYDNEY BROOKE ROBERTS

DAVID TYRONE SAMUEL,

AIMS (A MINOR),

DAYS (A MINOR)

   Plaintiffs,

v.

SACRAMENTO HOUSING AND
REDEVELOPMENT AGENCY ET AL.,

   Defendants

Case No: 2:22-cv-01699 DJC AC

**Plaintiffs Response to Defendants Ex
Parte application for Continuance of
the Settlement Conference**

1) There are no factual controversies in the Plaintiffs complaint.

2) Plaintiffs have repeatedly expressed the nature of the damages, both in the
actual complaint itself, and follow up communication with Defendants counsel (Ex. 1).

3) Plaintiffs have even provided the case they are using as a template for damages
(Huynh v. HOUSING AUTHORITY OF THE COUNTY OF SANTA CLARA, Dist. Court,
ND California 2017).

4) Defendants counsel has failed to engage attempts to conference in good faith,
and are apparently using the excuse regarding computation of damages as a mechanic
to delay further discovery.

- 1

5)      Plaintiffs discovery provides no surprises, as nearly all of the documents are provided by or have been previously available to Defendants.

6)      Plaintffs ask the court to proceed with the discovery conference as already scheduled, as no good cause exists for delaying it.

*David Samuel* 05/30/2024

David Samuel
Date

*Sydney Roberts* 05/30/2024

Sydney Roberts
Date

- 2

May 05, 2024
Initial Disclosures
Settlement Terms

Plaintiffs believe the precedent offered in Huynh v. HOUSING AUTHORITY OF THE COUNTY OF SANTA CLARA, Dist. Court, ND California 2017 is a baseline for settlement terms.

The acts alleged by Plaintiffs are materially similar, except Plaintiffs are able to meet the additional policy or practice allegations not met in the cited case.   Plaintiffs further allegations have a clear and well documented chain of evidence, provided by the Defendants themselves in their own words.

As Plaintiffs were evicted, suffered threat of eviction for more than a year, and repeatedly notified Defendants that they were under continuous threat of eviction due to the alleged violations, and rather than take action to correct those violations, Defendants repeatedly broke agreements which would have prevented further emotional distress and all other harm.

Plaintiffs believe fair settlement to be $1,000,000 for each Plaintiff.  Plaintiffs also believe an acknowledgment from Defendants that they did engage in discriminatory acts against the Plaintiffs, immediate correction of discriminatory policies and practices by Defendants, and a letter mailed to all current HCV recipient families with disabilities that Defendants have previously failed to a) perform an individualized analysis before denying reasonable accommodation requests, b) engage in an interactive process when necessary, c) and are required to grant requested reasonable accommodations, even if recipient families do not accept alternatives offered by Defendants.


David Samuel

Sydney Roberts

 Gmail

**David Samuel <davidsa@possiblymaybe.com>**

---

## RE: Roberts v. SHRA; 21727.00057

---

**David Samuel** <davidsa@possiblymaybe.com>                                                     Wed, May 15, 2024 at 12:22 AM
To: "Cheung, Alexander" <Alexander.Cheung@wilsonelser.com>
Cc: "maddy@possiblymaybe.com" <maddy@possiblymaybe.com>, "Garson, Edward"
<Edward.Garson@wilsonelser.com>, "Fereira, Vieana" <Vieana.Fereira@wilsonelser.com>, "King, Kathleen"
<Kathleen.King@wilsonelser.com>

Alexander,

We can add an add two additional columns to the master spreadsheet with a "item" and "description" column if that
will help clarify.  The "item" column will note which of the four items an exhibit is related to.  The "description"
column will briefly describe which particular statute or regulation it is being introduced to support and how it supports it.  For
example, next to exhibit 1 the "description" column will note "admission of RA denial by policy and practice", along
with "FHA, ADA" under the "item" column, and next to exhibit 42 the item will note "denial of due process", and
"description" will note "admission no hearing officer was available six months post hearing request".  If there are
questions regarding any particular item, we are happy to describe them.

We also have a second set of disclosures being prepared which we are hoping to have to you by May 20, 2024.  With
this second set of documents, we'd also like to modify errant exhibit labeling on a few of the already disclosed
document.  Using exhibit 42 as an example here, it contains the marking "E14-1" and "E14-2" in the upper right
corner, these markings will be removed until they are submitted as part of future motions complying with the included
exhibit numbering.

We are not interested in delaying the settlement conference as very few of the items were inaccessible to Defendants,
and are largely made up of documents and video already in Defendants possession.  The documents which the
Defendants did not have access to, for example exhibits 4 and 5, serve only to support the factual basis of the
statements in the complaint regarding our attempts to contact defendants, and again should be apparent.

The key narrative of this lawsuit is that despite receiving recent organization wide training prior in the year and a half
before the alleged acts to settle another lawsuit alleging largely the same types of violations, that the Defendants
continue to engage in them because they have economic incentive to do so.  The defendants continue to discriminate
against protected classes in ways which harm their housing in order to keep their top line spend on the vouchers
stable each year despite the underlying housing costs in the Sacramento area more than doubling each year.

In the next set of exhibits which will include SHRA's budgets between 2018 and 2023, we will show that the only way
that they could achieve a 1% year over year variation in HCV program spend is by becoming increasingly
discriminatory in policy and practice regarding reasonable accommodations, and show that this is supported by items
like exhibits 21 and 22 (instituted as part of the recent disability discrimination settlement) which show that despite an
increasing ratio of disabled individuals, the defendants denied or ignored a greater portion of requests each year.

I think most of these documents require much more honest conversations with your clients especially since they are
documents initiated by them.  In exhibit 1 alone it might be of concern as to why they partially cited 24 CFR 982.402
(hint: it's because citing the full regulation contradicts their position), why they acknowledge not engaging in an
interactive process prior to denying the request, why they point to general policy rather than an "individualized
analysis" as the reasoning for the denial.  I would recommend reading through the included HCV guidebook sections
as well as city/county occupancy codes for 2022 and compare what those have to say with your client compared to
what's in that letter.

The bottom line is that your clients tortured us for a year and a half despite being informed of the situation, being
aware of the impending eviction, and having a trivially simple solution to it.  Instead they retaliated against us and
show no signs at all that they won't continue doing it in the future, meaning our housing stability will once again be at
risk when the wind changes over there.  They have systemic fraud issues going on with these vouchers over there, we
can show with us as an example, that SHRA knowingly suppresses HCV payments to individuals who are receiving
county services through other programs, while still billing the county for HCV payments, effectively doubling to tripling

Ex. 1-3

the spend on homeless services in Sacramento County just to keep their top line budget stable.

Their willingness to harm both participants and the county/city itself to keep their budget stable resulted in the collapse of Sacramento Self Help Housing, which up until January 2023 was the primary homeless services agency in Sacramento County (https://californialocal.com/localnews/statewide/ca/article/show/96766-the-collapse-of-sacramento-self-help-housing/, https://www.redbluffdailynews.com/2023/03/27/a-sacramento-housing-nonprofit-is-closing-more-than-560-people-could-be-homeless/).  From what evidence I have available, 3/4 of the individuals enrolled in Sacramento County's PRTS program received vouchers that SHRA invented ways to not honor, blowing a massive hole in SSHH's budget and rendering over 200 individuals and counting homeless.  This article by Theresa Clift at the Sacramento Bee details (https://www.aol.com/news/sacramento-program-worked-chronically-homeless-120000161.html) EXACTLY the same type of behind the scenes awfulness that SHRA has been pushing which killed SSHH, and the only reason it didn't kill NextMove as well is because they are property owners themselves and had a stable enough reserve.  At our previous address, 1100 Howe, more than 120 people (AT ONE ADDRESS, https://www.sacbee.com/news/local/article269536632.html) were made homeless because SHRA did not properly process HCV vouchers, refused to grant accommodations, and just general screwed over everyone to keep their top level budget spend stable.

The bottom line is that your clients are doing a huge amount of harm and have managed to disguise the amount of active interference they are causing with the city, county, and state's housing policies.  They are notoriously awful and petty, and it took a LITERAL FEDERAL LAWSUIT to get them to even consider not being horrible for a moment.  A jury could award $50 million dollars (we aren't asking for this) and it would save the county money over the next few years by forcing the Board of Supervisors to take more active management of the organization and start asking the hard questions about how their budget managed to stay stable when every other housing initiative around it was literally on fire.  The answer isn't because of their excellent management.

David and Maddy
[Quoted text hidden]