FILED

JUN 0 4 2025

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

David Samuel, Pro Se
Sydney Roberts, Pro Se
108 Rinetti Way
Rio Linda, CA 95673
512-522-8571
edfed@possiblymaybe.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS | Case No: 2:22-cv-01699 DJC AC |
| DAVID TYRONE SAMUEL, | |
| AIMS (A MINOR), | **JOINT STATEMENT RE DISCOVERY DISAGREEMENTS** |
| DAYS (A MINOR) | |
| Plaintiffs, | |
| v. | Date: June 18, 2025 |
| | Time: 10:00 a.m. |
| | Courtroom: 26 (8th Floor) |
| SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY ET AL., | Judge: Hon. Allison Claire |
| Defendants | |

## EXECUTIVE SUMMARY

1)    Defendants Sacramento Housing and Redevelopment Agency (SHRA), LaShelle Dozier, MaryLiz Paulson, Troy Lynch, Tanya Cruz, Lisa Macias, Tiffany Brown, Ibra Henley, and DOES 1-50 have engaged in systematic discovery misconduct spanning over two months.

2)    *[**Defendants' Response**] Defendants dispute this mischaracterization of systemic discovery misconduct.*

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 1

3)      Despite serving eight categories of discovery requests beginning April 3, 2025, Defendants have provided zero substantive responses while simultaneously pursuing aggressive discovery against Plaintiffs, including deposition demands.

4)      *[Defendants' Response] Defendants requested from Plaintiffs, and Plaintiffs agreed, to an initial one-week extension for Request for Production of Documents served on April 3, 2025 and due on May 5, 2025. A further extension to May 30, 2025, was requested on May 5, 2025, given the stated scope and breadth of inquiry needed to respond.*

5)      [Plaintiffs Response to Defendants Response]  Defendants provide no evidence that they undertook any discovery efforts prior to May 2025 just as they previously represented to Plaintiffs and the Court. Defendants' only production of named Defendant email (from Paulson) was not archived or made available until May 29, 2025, and no comparable production was made from any other named Defendant. Despite claiming that the "volume" of material justified multiple extensions, Defendants employ three attorneys and multiple office staff and, as a public entity, are required under both the California Public Records Act and federal recordkeeping requirements to maintain and promptly produce these records. The real reason for Defendants' extension requests was not any genuine burden, but their stated belief that the Court would grant a motion for summary judgment and excuse compliance with discovery altogether. [End Response]

*[Defendants' response]  Defendants vehemently dispute the accusation and inference that they acted in anything but good faith in gathering and responding to discovery and in requesting extensions. Plaintiffs appear not to understand the*

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 2

processes in place at SHRA which must be followed to respond to the extensive discovery requested by Plaintiffs. *[End Defendants' Response]*

6) Defendants have refused Plaintiffs' good-faith offers for conditional extensions that included rolling production of critical documents. This calculated asymmetrical conduct has resulted in irreparable prejudice, including spoliation of witness testimony through concealed departures of key personnel, and obstruction of Plaintiffs' ability to establish individual liability under Section 504 of the Rehabilitation Act, the Fair Housing Act, and the Americans with Disabilities Act.

7) *[Defendants' Response]* *Defendants dispute this mischaracterization of Defendants' conduct.*

8) Critically, as outlined in recent days, new evidence gaps have emerged, including:

9) The disappearance of key witness John Lew, whose evidence was previously identified as essential by both parties but who is now unaccounted for and unresponsive to all communications.

10) Defendants' failure to produce core Reasonable Accommodation Committee (RACC) records and operating emails, including membership lists, agendas, internal votes, and final recommendations. Despite repeated requests, no systematic production or preservation of these documents has occurred. The absence of these materials blocks inquiry into the policy and deliberative processes at the heart of Plaintiffs' claims. Defendants' attempt to cure their noncompliance by producing a massive, unindexed, and largely irrelevant document dump exceeding 10,000 pages, which fails to respond to targeted discovery requests and actively frustrates meaningful review.

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 3

11)    *[Defendants' Response] Defendants' document production was responsive to the requests which touched on numerous topics, involving many of Defendants' employees, and spanning, in many cases, four to five years' time. Included in the production were manuals, emails, graphs, charts, and memos from Defendants. Defendants served supplemental responses to request for admissions and interrogatories propounded on all individual Defendants.*

12)    *After service of the supplemental responses and document production, Plaintiffs claim that Defendants' responses (without identifying the specific interrogatory or request objected to) require further responses and/or production. [End Defendants' Response]*

13)    **[Plaintiffs Response to Defendants Response]** Defendants' claim that their production was responsive is contradicted by the actual content produced. Of all named Defendants, only emails sent to or from MaryLiz Paulson were produced; no stand-alone communications from any other individual Defendant were included, unless Paulson was directly copied or a party to the conversation. This is not meaningful compliance and leaves out a vast quantity of potentially responsive records.

*[Defendants' Response] Plaintiffs seemingly ignore the emails produced  and the privilege log which identified numerous emails which were withheld due to privileges including attorney-client and third-party privacy and financial right. [End Defendants' Response]*

14)    Additionally, Plaintiffs note that throughout the meet-and-confer process, Defendants repeatedly represented that additional time was needed to contact individually named Defendants and obtain input or verifications for their discovery

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 4

responses. However, Defendants ultimately provided certifications and verified statements on behalf of these individuals without disclosing what specific efforts, if any, were made to contact them, what records were requested or produced, or whether any search for ESI or additional documents was conducted. At no point have Defendants addressed the scope or adequacy of their efforts to collect electronically stored information (ESI), or their obligations under the Requests for Production.

*[Defendants' Response] Defendants' are not aware that the parties have discussed the nature, volume, and mechanics of producing ESI discovery. The parties have only recently discussed ESI discovery transmission methods and media that meet Plaintiffs' reasonable accommodation needs. [End Defendants' Response]*

15)    Further, Plaintiffs have only recently learned that most of the individually named Defendants are no longer employed by SHRA, a fact Defendants have not disclosed to the Court or to Plaintiffs. This concealment has directly prejudiced Plaintiffs' ability to conduct timely discovery, secure depositions, or obtain authentic responses. Defendants' refusal to disclose separations, departures, or changes in control further undermines the reliability of the certifications and verifications provided, and raises serious concerns about spoliation of relevant records and loss of access to key witnesses. By failing to update the Court or Plaintiffs on the employment status of these parties, Defendants have compounded the existing discovery prejudice and increased the risk that crucial evidence is now permanently lost or outside the Court's reach.

*[Defendants' Response] Defendants do not have an affirmative responsibility to advise Plaintiffs of Defendants' employment status. [End Defendants' Response]*

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 5

16)    Plaintiffs' claims concern SHRA's policy and practice regarding reasonable accommodation denials, which implicate hundreds of requests and denials between at least 2021 and 2025. Despite this, Defendants produced only a single, highly anonymized document purporting to memorialize a March 23, 2023 Reasonable Accommodation Committee meeting with all member data and actual deliberative content redacted or omitted. This provides no detail about the Committee's operation or the individualized assessment (or lack thereof) in any Plaintiff's case. If Defendants were able to so thoroughly anonymize and redact these documents for discovery, then privacy cannot justify their failure to produce comprehensive records.

*[Defendants' Response] Defendants responded to the discovery requests as they were stated by Plaintiffs. If Plaintiffs desire additional information, going beyond the stated discovery requests, then Plaintiffs need to prepare and serve additional discovery. Defendants have no duty to respond beyond the request as stated, or to guess at what Plaintiffs may be asking outside the stated request. [End Defendants' Response]*

17)    Defendants' description of producing "manuals, emails, graphs, charts, and memos" is also misleading. Thousands of pages described as "graphs and charts" in fact consisted almost entirely of items such as raw GIS data consisting of single-column listing of over 10,000 voucher addresses, spread across hundreds of pages, and map images for particular zip codes or census tracts. These data dumps were provided without any analysis, index, or relation to the actual discovery requests at issue. The bulk production of irrelevant or undifferentiated data does not substitute for the targeted

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 6

documents that Plaintiffs requested, such as Reasonable Accommodation Committee records, decision-making communications, and documentation of policy or practice.

*[Defendants' Response] Plaintiffs also assume the existence of documents that simply may not exist. Plaintiffs must go forward with the depositions of SHRA employees who have been offered in response to topics requested by Plaintiffs.*

18)    Critically, the absence of any electronically stored information ("ESI"), correspondence, or documentation relating to John Lew is especially prejudicial. John Lew is not only a central witness in the Third Amended Complaint, but also repeatedly referenced by Defendants as a key official who supposedly provided a fair hearing and ensured regulatory compliance. Yet, in over 10,000 pages of produced documents, there is no ESI, no internal communications about his departure, no evidence of his deliberative role, and no hearing officer analysis, only a redacted version of his contract. Defendants' failure to preserve or produce any records associated with Lew undermines both Plaintiffs' access to the evidence and the factual basis for Defendants' own arguments.

19)    This pattern of delay and incomplete disclosure, combined with aggressive redaction, anonymization, and the production of largely irrelevant data, leaves Plaintiffs with no way to determine whether the discovery provided is even remotely complete or honest. The Court cannot rely on the integrity of the production when it remains entirely unclear whether Defendants have conducted a real search or simply produced what was convenient.  **[End Response]**

*[Defendants' response]    Defendants vehemently dispute the accusation and inference that they acted in anything but good faith in gathering and responding to*

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 7

*discovery and in requesting extensions. Plaintiffs appear not to understand the processes in place at SHRA which must be followed to respond to the extensive discovery requested by Plaintiffs. [End Defendants' Response]*

20)    Plaintiffs David Samuel and Sydney Roberts respectfully request immediate sanctions including compelled discovery, adverse inferences, monetary sanctions, and extension of discovery deadlines.

21)    *[Defendants' Response] Defendants have complied with the responses and requests and vehemently dispute any alleged grounds for sanctions.*

## I. APPLICABLE LEGAL STANDARDS

### A. Discovery Sanctions Under Federal Rule 37

22)    Federal Rule of Civil Procedure 37 provides the Court with broad discretionary power to impose sanctions for discovery misconduct. Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980). The Ninth Circuit recognizes that '[d]iscovery sanctions should be appropriate to the discovery abuse, serve to deter other litigants from similar conduct, and provide compensation for expenses caused by the misconduct.' Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006).

23)    Under Rule 37(d), when a party fails to serve answers or responses to properly served discovery requests, the Court may order sanctions including:

24)    Directing that designated facts be taken as established;

25)    Prohibiting the disobedient party from supporting or opposing designated claims or defenses;

26)    Striking pleadings in whole or in part;

27)    Dismissing the action or proceeding in whole or in part;

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 8

28) Rendering judgment by default against the disobedient party;

29) Treating the failure as contempt of court.

**B. Standards for Willful Discovery Misconduct**

30) The Ninth Circuit distinguishes between negligent and willful discovery violations, with willful misconduct warranting more severe sanctions. Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995). Factors indicating willful misconduct include:

31) Pattern of non-compliance over extended periods;

32) Pursuit of discovery while refusing to provide responses;

33) Failure to preserve documents despite litigation notice;

34) Evasive or incomplete responses without justification.

**C. Complete Non-Compliance Distinguished from Proportionality Limits**

35) Courts distinguish between proportionality challenges to specific burdensome requests and complete failure to participate in discovery. Valley Engineers, Inc. v. Electric Eng'g Co., 158 F.3d 1051, 1057 (9th Cir. 1998) (sanctioning party that demanded discovery while failing to provide required responses).

36) The Ninth Circuit has consistently held that 'broad discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant.' Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). However, this discretion does not extend to excusing complete non-participation in the discovery process.

37) Proportionality arguments are unavailing where, as here, Defendants have

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 9

provided zero substantive responses while simultaneously pursuing their own discovery. Courts have repeatedly sanctioned parties for 'complete and willful failure to provide discovery responses' that create 'extreme[e] prejudice[]' to opposing parties. Unpublished Disposition, 911 F.2d 737, at *2 (9th Cir. 1988).

38)    Defendants' obligations are particularly heightened given their status as government entities subject to heightened transparency requirements.

## II. MEET AND CONFER EFFORTS

39)    Pursuant to Federal Rule 37(d) and Local Rule 251(c), Plaintiffs have made extensive good faith efforts to resolve these discovery disputes without court intervention:

40)    Chronology of Meet and Confer Efforts:

41)    April 3, 2025: Plaintiffs serve initial discovery requests and cover letter to defense counsel Monica Castillo (Wilson Elser) regarding internal SHRA records, RACC, RA policies, and communications.

42)    April 8, 2025: Plaintiffs serve additional discovery requests for RFTA approvals/denials, rent reasonableness, and related documents.

April 10, 2025: Defendants (Monica Castillo) respond by letter stating intent to withhold discovery, asserting pending motions excuse compliance. Plaintiffs mischaracterize Ms. Castillo's correspondence regarding discovery responses.

43)    April 12, 2025: Plaintiffs serve requests for phone logs, procedural hearing records, and Lynch communications.

44)    April 18, 2025: Plaintiffs serve requests for system logs/configurations and internal SHRA communications.

45)     April 25, 2025: Plaintiffs serve RFP for SSHH, CSH, and housing program interactions.

46)     Defendants April 14–18, 2025: Plaintiffs offer conditional extension of discovery deadlines, contingent on rolling production. Defendants explicitly refuse by email.

47)     [*Defendants Response*] *Plaintiffs' condition extension was on May 5, 2025. Defendants only responded by thanking Plaintiffs for the extension to May 12, 2025.*

47)     [**Plaintiffs Response to Defendants Response**] Defendants' summary of the extension negotiations is both incomplete and misleading. On May 5, 2025, Defendants requested an extension of the discovery deadline to May 12, 2025. Plaintiffs granted this extension on the explicit condition that Defendants would not object to a further extension of the overall discovery schedule.

48)     On May 7, 2025, Defendants requested a second extension, to May 14, 2022, which was again granted on the condition of stipulating to extension of discovery close.

49)     Later on May 7, 2025 the Defendants asked for a THIRD extension, this time to May 30, 2025. Plaintiffs responded by requesting rolling production of discovery and good faith certification of their collection efforts as a condition for further extension.

50)     Defendants declined these conditions and Plaintiffs then made clear that they expected Defendants to comply fully with the Court's discovery requirements and deadlines. [**End Response**]

51)     April 26, 2025: Plaintiffs send final written demand for compliance before seeking Rule 37 relief.  Defense counsel has acknowledged receipt of discovery but failed to provide substantive responses, provided only general objections, refused to identify

Rule 30(b)(6) designees despite repeated requests, and continues to insist that pending summary judgment and related motions excuse compliance.

52)    [*Defendants Response*] *On May 30, 2025, Defendants provided supplemental, substantive responses to Plaintiffs' numerous discovery requests.*

### III. DEFENDANTS' SYSTEMATIC DISCOVERY MISCONDUCT

### A. Complete Failure to Respond to Eight Categories of Discovery

53)    [*Defendants Response*] *On May 30, 2025, Defendants provided supplemental, substantive responses and a significant document production to Plaintiffs' numerous discovery requests. Defendants exercised the option under Rule 33(d) of the Federal Rules of Civil Procedure to produce writings in response to Interrogatory No. 5, Set One, to Defendant MaryLiz Paulson, and produced a document identifying RACC membership.*

54)    Timeline of Discovery Requests and Non-Compliance:

55)    April 3, 2025: SHRA internal records: RACC membership, RA policies, communications, RFTA processing delays/denials. Defendants: Paulson, Dozier, DOES 1-50. Days outstanding: 55. Status: No substantive response, boilerplate/general objections only; no documents produced.

56)    April 8, 2025: RFTA approvals/denials, rent reasonableness, decision logs, landlord communications. Defendants: Paulson, Lynch, DOES 1-50. Days outstanding: 50. Status: No substantive response, boilerplate/general objections only; no documents produced.

57)    April 12, 2025: Phone logs (RA line), Lynch communications, hearing records. Defendants: Lynch, Paulson, DOES 1-50. Days outstanding: 46. Status: No substantive

response, boilerplate/general objections only; no documents produced.

58)    April 18, 2025: Phone system logs, configurations, internal communications. Defendants: Paulson, Henley, DOES 1-50. Days outstanding: 40. Status: No substantive response, boilerplate/general objections only; no documents produced.

59)    April 25, 2025: SSHH/CSH records, housing program communications/interactions. Defendants: Paulson, DOES 1-50. Days outstanding: 33. Status: No substantive response, boilerplate/general objections only; no documents produced.

### B. Ongoing Failures to Identify Key Personnel and Witnesses

60)    Defendants have concealed the identities and contact info for crucial witnesses:

61)    Lisa Macias: Former SHRA employee, current whereabouts concealed.

62)    Tiffany Brown: Former SHRA employee, departure circumstances concealed.

63)    Ibra Henley: Former SHRA employee, no contact info provided.

64)    Tanya Cruz: Former SHRA Employee, information concealed.

65)    DOES 1-50: Defendants refuse to identify personnel involved in Plaintiffs' cases, including RA/hearing decision-makers, Rule 30(b)(6) designees, and custodians of records.

66)    Plaintiffs specifically note the unexplained disappearance of John Lew, a previously identified fact witness who held critical information regarding the RACC and SHRA's reasonable accommodation procedures. Despite explicit requests, Defendants have provided no current contact information, nor have they explained the failure to preserve his anticipated testimony or responsive documents. Lew's absence and Defendants' failure to acknowledge his disappearance compounds the prejudice already

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 13

facing Plaintiffs and supports adverse inferences.

67)    Defendants have produced no comprehensive, chronological set of RACC membership lists, operating emails, meeting agendas, or recommendations, despite these being explicitly sought in written discovery and central to both policy and individualized claims of deliberate indifference. Defendants' "document dump" of unsorted and duplicative records has not cured this deficiency, as Plaintiffs are unable to reconstruct who made critical policy decisions or how those decisions were made.

68)    *[Defendants Response] By the end of day on June 3, 2025, Defendants will have re-served the document production in smaller sized files, pursuant to Plaintiffs' request and have produced a privilege log. Defendants produced responsive documents in its possession, custody or control.*

### C. Critical Records and Witness Testimony Subject to Spoliation

69)    SSHH records: Entity dissolved during litigation, no preservation action, likely destroyed.

70)    CSH records: Entity rebranded during litigation, transition records not preserved.

71)    Electronic communications: No phone logs, emails, configs produced for Plaintiffs' requests.

72)    Testimony of former employees/DOES 1-50: Concealed departures, failure to preserve access.

73)    Defendants' refusal or failure to identify all RACC members, circulate preservation notices, or confirm the existence of systematic email or file archives for the RACC or for former SHRA personnel (such as Macias, Brown, Lew, and others)

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 14

increases the likelihood that key evidence has been lost, destroyed, or remains concealed.

74)    **[Defendants Response]** *On May 30, 2025, Defendants provided supplemental, substantive responses and a significant document production to Plaintiffs' numerous discovery requests. Defendants exercised the option under Rule 33(d) of the Federal Rules of Civil Procedure to produce writings in response to Interrogatory No. 5, Set One, to Defendant MaryLiz Paulson, and produced a document identifying RACC membership*

### D. Abusive Document Dump Instead of Good Faith Production

75)    Rather than comply with discovery obligations, Defendants have attempted to evade production by "dumping" over 10,000 pages of unindexed, unlabeled, and often duplicative records on Plaintiffs. This so-called "production" is not responsive: it contains mostly irrelevant materials, with only a small fraction potentially germane to Plaintiffs' requests. The document dump is not organized by date, custodian, or subject matter, and it omits any index or cross-reference to Plaintiffs' targeted requests—making it impossible to locate key records, such as Reasonable Accommodation Committee emails, membership rosters, or deliberative communications.

76)    This tactic, condemned by courts as "sandbagging" and bad-faith obstruction, only increases Plaintiffs' burden, requiring review of thousands of pages to find a handful of responsive documents. See In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 351, 363 (N.D. Ill. 2005) ("A party may not hide a needle in a haystack of irrelevant documents."); Lyon v. Bankers Life & Cas. Co., 2011 WL 124629, at *2 (D. Kan. Jan.

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 15

14, 2011) ("[A]n undifferentiated mass production of records does not satisfy a party's discovery obligations.").

77)    The result is not "compliance" but a deepening of the original prejudice—preventing Plaintiffs from efficiently identifying and using the very records most essential to their claims, especially under the compressed timeline caused by Defendants' prior delays.

78)    *[Defense Response] By the end of day on June 3, 2025, Defendants will have re-served the document production in smaller sized files, pursuant to Plaintiffs' request and have produced a privilege log. Defendants produced responsive documents in its possession, custody or control.*

## IV. DEFENDANTS' ASYMMETRICAL DISCOVERY CONDUCT DEMONSTRATES WILLFUL MISCONDUCT

79)    Defendants have aggressively pursued their own discovery, including interrogatories, RFAs, RFPs, and deposition notices for both Plaintiffs, while refusing to produce any substantive responses to Plaintiffs' discovery.

80)    *[Defense Response] Request for Admissions were served on Plaintiffs in November 2024, with Plaintiffs filing their Request to Withdraw Admissions on or about April 9, 2025.  Request for Production also were served on Plaintiffs in November 2024; Plaintiff only recently responded that their Disclosures contained all documents they would be producing.*

81)    Defendants noticed Plaintiffs' depositions for June 9 and June 10, 2025, while refusing to identify their own Rule 30(b)(6) designees or confirm employee availability for deposition.

82) Plaintiffs have responded in good faith to all outstanding defense discovery requests:

83) Document production completed and served May 6, 2024.

84) In contrast, Defendants have produced zero substantive responses to any of Plaintiffs' eight categories of requests served over more than 50 days.

85) The asymmetry is willful and egregious, especially given Defendants' status as a government agency. See Valley Engineers, Inc. v. Electric Eng'g Co., 158 F.3d 1051, 1057 (9th Cir. 1998).

86) [Defendants Response] *Defendants have identified persons most knowledgeable on the topics requested by Plaintiffs and have provided dates prior to the June 25, 205, discovery cut-off for those persons' depositions.*

## V. ANALYSIS BY INDIVIDUAL DEFENDANT

### A. MaryLiz Paulson – Primary Decision-Maker

87) Role: Director, Housing Choice Voucher Unit; Chair of Reasonable Accommodation Committee. Responsive Documents: RFTA processing decisions, landlord communications, internal policy docs, decision logs. Prejudice: Plaintiffs cannot establish individual liability or deliberate indifference without her records.

### B. LaShelle Dozier – Supervisory Authority

88) Role: Executive Director, SHRA. Responsive Documents: Supervisory RFTA reviews, policy implementation, communications, staff training records. Prejudice: Unable to establish supervisory liability/policy authority without these records.

### C. Troy Lynch – Records Custodian/Communications

89) Role: Supervisor, HCV Unit. Responsive Documents: Phone logs, hearing

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 17

records, communications with Plaintiffs, technical configs. Prejudice: Procedural due process and communication claims cannot be proved without his documentation.

90)   **D. DOES 1-50 – Concealed Personnel**

91)   Defendants' refusal to identify personnel prevents service/discovery, blocks liability chain, and prevents testimony.

92)   Defendants' pattern of concealing or failing to preserve evidence extends to RACC membership, meeting records, and all communications regarding Plaintiffs' reasonable accommodation requests.

## VI. IRREPARABLE PREJUDICE TO PLAINTIFFS

### A. Temporal Prejudice

93)   Discovery Deadline: June 30, 2025

94)   Expert Disclosure Deadline: July 31, 2025

95)   Dispositive Motion Deadline: September 1, 2025

96)   Trial Date: January 20, 2026

97)   Defendants' delays compress Plaintiffs' ability to complete discovery, depose witnesses, and meet deadlines.

98)   [*Defendants Response*] *Plaintiffs elected to commence discovery in April 2025.*

99)   **[Plaintiffs Response to Defense Response]** Defendants' assertion that Plaintiffs first sought discovery in April 2025 is incorrect. Plaintiffs' first documented attempt to meet and confer regarding discovery occurred in April 2023 and is reflected in the email record. Plaintiffs served a similar set of discovery requests again in April 2024 in full compliance with the Court's scheduling order. Defendants declined to participate in those earlier rounds of discovery, and their initial disclosure consisted of a

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 18

false certification that they had access only to John Lew's email address, despite evidence that SHRA possessed his full contract and other contact information.

100)    Defendants' selective timeline omits more than a year of Plaintiffs' efforts to initiate and advance discovery, and ignores Defendants' own repeated refusals to participate in good faith. **[End Response]**

*[Defendants' response]    Defendants are not aware of discovery requests propounded by Plaintiffs prior to April 2025. In May 2024, the parties mutually served their Initial Disclosures. [End Defendants' Response]*

### B. Evidentiary Prejudice

101)    Plaintiffs' ability to prove claims is irreparably harmed by the disappearance or inaccessibility of key witnesses (such as John Lew and other RACC participants), as well as by the total absence of RACC records and deliberative emails. Defendants' "document dump" of over 10,000 pages, most of which are irrelevant, duplicative, or unindexed, further impedes Plaintiffs' ability to identify who took specific actions and why.

102)    *[Defendants Response] By the end of day on June 3, 2025, Defendants will have re-served the document production in smaller sized files, pursuant to Plaintiffs' request and have produced a privilege log. Defendants produced responsive documents in its possession, custody or control.*

103)    Spoliated documents and testimony include: SSHH/CSH records, internal communications, RACC agendas and votes, phone logs, policy emails, and all records associated with former employees or Does 1–50. Defendants have not provided any reasonable assurance that these materials were preserved or systematically searched.

Departing witnesses: Defendants have made no effort to secure cooperation or testimony from former SHRA staff, instead concealing the departures until after they occurred.

104)    [*Defendants Response*] *By the end of day on June 3, 2025, Defendants will have re-served the document production in smaller sized files, pursuant to Plaintiffs' request and have produced a privilege log. Defendants produced responsive documents in its possession, custody or control.*

### C. Strategic Prejudice

105)    Plaintiffs must establish deliberate indifference, discriminatory intent, or individual liability without internal communications, policy documents, and witness testimony, all in Defendants' exclusive control.

106)    Defendants' refusal to produce the RACC's internal operating materials, votes, and email correspondence obstructs Plaintiffs' ability to prove the existence of blanket denial policies or the absence of individualized assessment, which are core elements of Plaintiffs' claims under the ADA, FHA, and Section 504.

107)    [**Defendants Response**] *On May 30, 2025, Defendants provided supplemental, substantive responses and a significant document production to Plaintiffs' numerous discovery requests. Defendants exercised the option under Rule 33(d) of the Federal Rules of Civil Procedure to produce writings in response to Interrogatory No. 5, Set One, to Defendant MaryLiz Paulson, and produced a document identifying RACC membership.*

### D. Monetary Prejudice

108)    Additional Discovery Costs: $1,250 (document production, postage, research,

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 20

and copying; based on actual and estimated outlays for repeated discovery attempts).

109)    Expert Witness Fees: $2,500 (for extended engagement/consultation with expert(s) unable to prepare a full report without discovery).

110)    Litigation Expenses for Unnecessary Meet-and-Confer Efforts: $4,000 (representing time and resources expended by Plaintiffs for repeated correspondence, preparation of supplemental discovery, and additional motion practice made necessary by Defendants' noncompliance)

111)    Witness Location Costs: $750 (estimated cost for skip tracing, background searches, and research into concealed SHRA personnel and third-party witnesses).

112)    Lost Opportunity Costs: $2,000 (conservative value for inability to secure and preserve evidence, resulting in procedural and evidentiary disadvantage).

113)    Total Estimated Monetary Prejudice: $10,500.

## VII. RELIEF REQUESTED

### A. Immediate Compelled Discovery

114)    Order Defendants to:

115)    Produce all documents responsive to requests served April 3, 8, 12, 18, and 25, 2025.

116)    *[Defendants Response]* *By the end of day on June 3, 2025, Defendants will have re-served the document production in smaller sized files, pursuant to Plaintiffs' request and have produced a privilege log. Defendants produced responsive documents in its possession, custody or control.*

117)    Identify all DOES with contact info and last known employment info.

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 21

118)    Designate Rule 30(b)(6) deponents for all noticed topics, available for deposition within 14 days.

119)    [**Defendants Response**] *Defendants have identified persons most knowledgeable on the topics requested by Plaintiffs and have provided dates prior to the June 25, 205, discovery cut-off for those persons' depositions.*

120)    Produce all relevant electronic records and communications.

121)    [**Defendants Response**] *By the end of day on June 3, 2025, Defendants will have re-served the document production in smaller sized files, pursuant to Plaintiffs' request and have produced a privilege log. Defendants produced responsive documents in its possession, custody or control.*

122)    Issue and confirm preservation notices for all responsive data.

123)    [**Defendants Response**] *By the end of day on June 3, 2025, Defendants will have re-served the document production in smaller sized files, pursuant to Plaintiffs' request and have produced a privilege log. Defendants produced responsive documents in its possession, custody or control.*

124)    Order Defendants to conduct and certify a systematic search for all RACC-related emails, membership lists, meeting records, and deliberative materials, including any correspondence referencing Plaintiffs or Plaintiffs' reasonable accommodation requests.

125)    [**Defendants Response**] *On May 30, 2025, Defendants provided supplemental, substantive responses and a significant document production to Plaintiffs' numerous discovery requests. Defendants exercised the option under Rule 33(d) of the Federal Rules of Civil Procedure to produce writings in response to Interrogatory No. 5, Set*

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 22

*One, to Defendant MaryLiz Paulson, and produced a document identifying RACC membership. By the end of day on June 3, 2025, Defendants will have re-served the document production in smaller sized files, pursuant to Plaintiffs' request and have produced a privilege log. Defendants produced responsive documents in its possession, custody or control.*

126)    Order Defendants to provide the last known contact information and all correspondence for John Lew and any other former employees identified as relevant witnesses, with an explanation for any gaps in preservation or production.

### B. Adverse Inferences for Spoliated Evidence

127)    Plaintiffs request adverse inferences as previously listed.

### C. Monetary Sanctions

128)    Plaintiffs request monetary sanctions in the amount of $10,500, representing:

129)    Litigation expenses and costs for unnecessary meet-and-confer efforts and motion practice: $4,000

130)    Costs of extended discovery period (postage, document handling, research): $1,250

131)    Expert witness fees due to delay and incomplete discovery: $2,500

132)    Witness location and background research: $750

133)    Lost opportunity costs due

134)    *[**Defendants Response**] There are no grounds for sanctions as discussed above.*

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 23

Respectfully Submitted,

David Samuel

David Samuel
May 4, 2025

Sydney Roberts

Sydney Roberts
May 4, 2025

/s/

Monica Castillo
Attorneys for Defendants Sacramento
Housing and Redevelopment Agency, et
al.
May 4, 2025

JOINT STATEMENT RE DISCOVERY DISAGREEMENTS - 24