# RECEIVED

SEP 15 2025

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

David Samuel, Pro Se
Sydney Roberts, Pro Se
108 Rinetti Way
Rio Linda, CA 95673
512-522-8571
edfed@possiblymaybe.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS<br><br>DAVID TYRONE SAMUEL,<br><br>AIMS (A MINOR),<br><br>DAYS (A MINOR)<br><br>     Plaintiffs,<br><br>v.<br><br>SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY ET AL.,<br><br>    Defendants | Case No: 2:22-cv-01699 DJC AC<br><br><br>**FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** |

## INTRODUCTION

This lawsuit challenges Defendants' written directives and unwritten practices and customs that, from 2018 through 2023, converted a coordinated rehousing system into a deliberate gatekeeping and payment-avoidance machine. As standard practice, reasonable accommodation denials were fast, thin, and not based on any interactive process. Defendants used pretexts to block access to program services and accommodations: refusing captioning when needed for remote hearings; restricting communication channels and then using that restriction to deny effective communication to the household and authorized representatives; ignoring provider outreach despite

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES - 1

signed releases; misdirecting mail; and leaning on stale rent reasonableness outputs while refusing to refresh comparables. When participants requested payment-standard relief, Defendants invoked unsupported HUD rationales to say it could not be done even though HUD policy allows exception payment standards up to 120 percent and ZIP/SAFMR alignment for disability-related needs and market conditions.

This avoidance and cost shifting extended to both reasonable accommodation and hearings, where process itself became a budgeting control rather than a gateway to equal access. Narrow items that did not raise subsidy outlays moved quickly. By contrast, accommodations that would increase payment standards or require rent reasonableness recalibration were parked for months and then denied in batch entries without provider outreach or an interactive process. Hearings were noticed and then postponed or ended without the case file, proceeded without captioning when needed, and produced no timely written decisions, allowing Defendants to run out the clock while citing their own communication limits as pretext. Related gates included (a) the use of annual recertifications to create the illusion of active participation, (b) the intentional prolonging of RFTA processing, and (c) the enforcement of a one-RFTA-at-a-time rule.

**Program-wide data show the chilling effect.**

Across categories, less than half of reasonable accommodation requests were approved. This had a disparate impact on participants with disabilities, effectively creating a two-tiered system that systematically favored accommodations for physical needs, such as live-in aides, while routinely denying those for mental and behavioral health disabilities, where approvals hovered near five percent while even favored categories remained below fifty percent.

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES - 2

Illustrating these practices, Plaintiffs' September 2022 package requested multiple accommodations beyond bedrooms, including payment-standard relief and rent reasonableness calibration for an otherwise approvable unit. Defendants mailed missing-document instructions to Plaintiffs instead of the physician, issued boilerplate denials, and left non-bedroom items sitting for months. After service of this complaint, Defendants supplied their own rationale for an extra-bedroom approval that did not resolve the September bedroom request and did not adjudicate the payment-standard components. Even with that supposed approval, staff applied two-bedroom figures after a three-bedroom approval, ran apartment comparables against a duplex or single-family unit, and treated a rent reasonableness cap as immovable instead of using the payment-standard accommodations Plaintiffs requested.

**Communication limits were used as pretext to deny effective communication to the spouse or co-head and to authorized aides or representatives.**

After service on March 8, 2023, entries clustered but core duties were still missed. A hearing was noticed and then ended without the case file and without captioning when needed. Program managers directed staff away from email despite a pending effective-communication request. At the same time program counsel represented to the court that the accommodation had been granted and the core complaint issue cured, staff voided the RFTA for an otherwise approvable unit, recorded 53 days of tolling, and mailed void letters. There was no interactive process, no provider contact, and no grant or proper adjudication of the payment-standard accommodations that would have cleared an approvable tenancy.

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 3

These policies and practices were the moving force behind the deprivation of Plaintiffs' federal rights to reasonable accommodations, effective communication, and procedural due process and form the basis of this Complaint, which details how Defendants' actions as applied to Plaintiffs Sydney Roberts and David Samuel violated the Fair Housing Act, the Americans with Disabilities Act, the Rehabilitation Act, and the Due Process Clause of the Fourteenth Amendment.

## JURISDICTION, VENUE, AND STANDING

This Court has subject-matter jurisdiction under 28 U.S.C. 1331 because this action arises under the Constitution and laws of the United States, including the Fair Housing Act, 42 U.S.C. 3601 et seq.; Title II of the Americans with Disabilities Act, 42 U.S.C. 12131 et seq.; Section 504 of the Rehabilitation Act, 29 U.S.C. 794; and 42 U.S.C. 1983. Jurisdiction is also proper under 28 U.S.C. 1343(a)(3)-(4). The Court has supplemental jurisdiction over related state-law claims, including claims under the California Fair Employment and Housing Act and other state provisions, pursuant to 28 U.S.C. 1367(a). Declaratory relief is authorized by 28 U.S.C. 2201-2202.

Personal jurisdiction is proper because all Defendants reside in California and, at all relevant times, acted under color of state law within this District. A substantial part of the events or omissions giving rise to these claims occurred in this District.

Venue is proper in the Eastern District of California under 28 U.S.C. 1391(b)(1)-(2). Intradistrict assignment to the Sacramento Division is proper under Local Rule 120.

Plaintiffs have standing to seek injunctive and declaratory relief because they remain HCV participants or reasonably expect future moves, recertifications, reasonable-accommodation requests, hearings, and related interactions with the

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 4

challenged policies and practices. There is a real and immediate threat of future injury absent prospective relief. Plaintiffs also have standing to seek damages and other remedies for past harms, including lost housing opportunities, eviction exposure, out-of-pocket costs, and property loss caused by Defendants' conduct.

No further exhaustion of administrative remedies is required to bring claims under the Fair Housing Act, Title II of the ADA, Section 504, or 42 U.S.C. 1983.

**PARTIES**

Plaintiff Sydney Roberts ("MADDY") is an adult resident of Sacramento County and a participant in the Housing Choice Voucher (HCV) program during the relevant period. She is a qualified individual with a disability within the meaning of Title II of the ADA and Section 504 based on disability-related limitations that substantially limit one or more major life activities. MADDY also asserts associational disability discrimination based on barriers imposed on the household.

Plaintiff David Samuel ("DAVID") is an adult resident of Sacramento County and a participant in the HCV program during the relevant period. He is diagnosed with autism spectrum disorder (ASD) with comorbid PTSD, ADHD, major depressive disorder, and generalized anxiety disorder.

Plaintiff AIMS is a minor child of DAVID and MADDY and is diagnosed with ASD.

Plaintiff DAYS is a minor child of DAVID and MADDY and is diagnosed with ASD.

Each Plaintiff, including AIMS and DAYS, is a qualified individual with a disability within the meaning of Title II of the ADA and Section 504. Plaintiffs requested reasonable accommodations and effective communication, including an additional

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 5

bedroom, exception or payment-standard relief, rent-reasonableness calibration, blackout and sound-mitigation measures, housekeeping assistance, email or real-time text, and captioning for remote hearings, and provided medical verification and signed releases.

Defendant Sacramento Housing and Redevelopment Agency (SHRA) is a California public entity headquartered in Sacramento County. SHRA administers the HCV program in Sacramento County, is a public entity under the ADA, and is a recipient of federal financial assistance under Section 504.

Defendant La Shelle Dozier served as SHRA Executive Director during the relevant period. Acting within her authority as SHRA's highest-ranking official, she approved and ratified the policies and customs challenged here, including voucher parking through recertifications in lieu of timely extensions, the one-RFTA-at-a-time gate without disability modification, restrictions on email communication during active accommodation processing, and reliance on stale or mis-addressed rent-reasonableness data. She received or was copied on communications putting her on notice of Plaintiffs' accommodation requests, hearing defects, misaddressed mail, and file-production failures, and she failed to correct these practices, thereby causing and ratifying the violations at issue.

Defendant MaryLiz Paulson served as Director of SHRA's HCV unit and as SHRA's Section 504 lead during the relevant period. She signed or directed reasonable accommodation determinations relevant to Plaintiffs, led or directed the RA Committee, and on May 2 to 3, 2023 instructed staff to restrict email communication with Plaintiffs despite a pending effective-communication request, during time-sensitive RFTA and

comparables exchanges. She personally participated in or directed the March 20, 2023 one-bedroom-only approval and the April 3, 2023 RA denial letter while non-bedroom accommodation items remained unadjudicated, and she failed to ensure provider outreach or an interactive process despite executed releases.

Defendant Tanya Cruz served as a program manager or supervisor within SHRA's HCV unit. She participated in accommodation processing and hearing operations, represented SHRA at the September 12, 2022 hearing where she stated she could not make a decision and would refer the matter back to the RA Committee, and then canceled the issuance of a written decision on or about September 15, 2022. On May 2 to 3, 2023 she joined in directing staff to avoid email communication with Plaintiffs during active accommodation and RFTA processing.

Defendant Troy Lynch served as a supervisor within SHRA's HCV unit. He trained staff, including CRUZ, on hearing procedures, supervised RA and hearing operations affecting Plaintiffs in 2022 to 2023, and participated in decisions to proceed without captioning when needed, to conduct hearings without producing the case file, and to apply the missed-appointment rule after agency-caused defects. He also participated in or approved the continuation of the one-RFTA gate without disability modification.

Defendant Ibra Henley was responsible for hearing operations and components of accommodation processing, including noticing, scheduling, and file handling. He coordinated Zoom logistics and 15-day notices after service, failed to ensure captioning when needed, ended or allowed the April 20, 2023 hearing to end without the case file, and later recorded "family did not show" and invoked a missed-appointment rule to

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES - 7

uphold prior denials. He also delayed hearing officer engagement despite an active professional services agreement and ongoing requests for decisions.

Defendant Tiffany Brown was an SHRA employee with duties related to accommodation processing, hearings, notices, or participant communications. On information and belief, she authored or issued correspondence and entries connected to Plaintiffs' April 3, 2023 RA letter, the May 5, 2023 Notice of Incomplete RFTA, and related mailings, and participated in restricting email communication during active processing, contributing to delays and denial of effective communication.

Defendant Lisa Macias was an SHRA employee with duties related to accommodation processing, hearings, notices, or participant communications. On information and belief, she authored or issued correspondence and entries connected to the May 5, 2023 Notice of Incomplete RFTA, the May 25, 2023 void notices and tolling entries, and related mailings, and participated in restricting email communication during active processing, contributing to delays and denial of effective communication.

Defendants Dozier, Paulson, Cruz, Lynch, Henley, Brown, and Macias are sued in their individual capacities for their personal participation in, direction of, or knowing failure to prevent the acts and omissions alleged. Each is alleged to have taken specific actions or to have directed or ratified specific actions that violated Plaintiffs' clearly established rights. Under the Fair Housing Act, each is a "person" who may be held directly liable for their own conduct and for failing to take prompt corrective action when they knew or should have known of discrimination, and liable for interference with FHA rights. Plaintiffs assert FHA claims against these individuals on those bases.

Doe Defendants 1 to 10 are SHRA employees or agents whose identities are

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 8

presently unknown. They participated in accommodation review, hearing operations, rent-reasonableness determinations, voucher processing, records handling, or related actions described herein. Each is alleged to have taken specific actions or to have directed or ratified specific actions that violated Plaintiffs' clearly established rights. Under the Fair Housing Act, each is a "person" who may be held directly liable for their own conduct and for failing to take prompt corrective action when they knew or should have known of discrimination, and liable for interference with FHA rights. Plaintiffs assert FHA claims against these individuals on those bases.

Entity Doe Defendants 11 to 15 are contractors or vendors retained by SHRA during the relevant period, including rent-reasonableness vendors and hearing-officer providers, who acted in concert with SHRA with respect to the practices challenged in this action.

### ACRONYMS AND TERMS

ADA - Americans with Disabilities Act, Title II. Requires public entities to provide reasonable modifications and effective communication.

Section 504 - Section 504 of the Rehabilitation Act. Prohibits disability discrimination by recipients of federal financial assistance.

FHA - Fair Housing Act. Prohibits discrimination in housing, including failure to make reasonable accommodations.

PHA - Public Housing Agency. The local agency that administers HUD housing programs (including HCV), sets local policies through an Administrative Plan, issues vouchers, sets and applies payment standards, conducts rent reasonableness and HQS inspections, processes reasonable accommodations, and executes HAP contracts.

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 9

HCV - Housing Choice Voucher program. A federal rent subsidy administered by a local PHA that lets eligible families lease units in the private market. The PHA calculates tenant rent and pays a subsidy (HAP) to the owner after approval.

Voucher - The authorization issued by the PHA allowing a family to search for housing within defined timelines and terms.

HAP - Housing Assistance Payment. The monthly subsidy the PHA pays to the owner under a HAP contract once the unit is approved and the tenancy is under lease.

RFTA - Request for Tenancy Approval. The tenant and owner/Property Manager submit this to the PHA with the unit address, proposed contract rent, utilities, tenancy type, and terms. It triggers rent reasonableness, affordability testing, HQS inspection, and, if approved, HAP contracting. SHRA has a local rule allowing only one active RFTA at a time unless modified.

Payment standard - The schedule amount the PHA uses to calculate the subsidy for a given unit size and area. It is not a rent cap. PHAs set payment standards relative to FMR/SAFMR and may approve exception payment standards where policy allows.

FMR - Fair Market Rent. HUD-published benchmark by metro/county used to set payment standards.

SAFMR - Small Area Fair Market Rent. HUD-published ZIP-level FMR intended to reflect neighborhood rents and improve access to higher-opportunity areas. PHAs can base payment standards on SAFMR.

EPS - Exception Payment Standard. A payment standard above the regular schedule that a PHA may approve in specific circumstances, including as a reasonable

accommodation. In HUD policy, RA-based EPS up to 120 percent of the applicable FMR/SAFMR does not require prior HUD approval; above 120 percent requires HUD review.

Rent reasonableness - A required PHA finding that the proposed contract rent is reasonable compared with similar unassisted units. Factors include location, size, quality, age, amenities, services, utilities, and accessibility features. It must reflect current, address-matched comparables. It is separate from payment standards but both must be satisfied for approval.

Gross rent - Contract rent plus any tenant-paid utility allowance. Gross rent is used for affordability testing.

Affordability rule - At initial lease-up, if gross rent exceeds the payment standard, the tenant's share may not exceed 40 percent of the family's adjusted monthly income. This is commonly the first approval gate.

HQS - Housing Quality Standards. Minimum health and safety requirements a unit must meet for HAP. Inspected before HAP starts and periodically thereafter. Plaintiffs requested housekeeping assistance as an accommodation because HQS compliance is a program obligation enforced by SHRA, not a private lease term.

RA - Reasonable accommodation. A change to policies, practices, or services necessary to afford a person with disabilities an equal opportunity to participate in or benefit from the program. Examples in this case include an additional bedroom, payment-standard exceptions, rent reasonableness recalibration, effective communication by email/real-time text, captioning, and housekeeping assistance tied to HQS.

Effective communication - ADA/Section 504 duty to provide auxiliary aids and services and to honor accessible channels requested by the person with a disability, including captioning for remote hearings and email/real-time text where needed.

Interactive process - The required back-and-forth engagement with the participant and, when authorized, the provider to evaluate and implement reasonable accommodations in a timely, individualized way.

IH - Informal hearing. A participant's adjudicative process for certain PHA decisions. Requires timely notice, access to the file, an impartial hearing officer, and a reasoned written decision.

Issued / Out searching - Yardi status codes indicating the family holds a voucher but is not under HAP at a unit. SHRA used these statuses for extended periods while recertifying files.

Extension - Additional voucher search time granted by the PHA.

Tolling - Pausing the voucher expiration clock for defined processing periods (for example, while an RFTA is under review or after a voided RFTA).

FSRP - Flexible Supportive Rehousing Program. County program that paired households with supportive services and PRTS to speed placement and stabilize tenancies.

PRTS - Property Related Tenant Services. Landlord-facing and tenancy-support tasks performed by providers (for example, holding units, coordinating inspections and repairs, addressing landlords' concerns, and problem-solving to keep a unit approvable).

Property Manager - The owner's agent or management company representative for a rental unit. Used here instead of "owner" when dealing with day-to-day leasing steps. Yardi - SHRA's program administration platform (for example, Yardi Voyager for PHAs). It is not a social-services case-management system; SHRA used its Notes and attachments as a de facto case log. Notes are staff-entered and may be posted after events; where relevant, we identify both event dates and entry dates.

DOE - Placeholder for an unidentified SHRA staff member or contractor. The complaint will substitute the person's name when discovery identifies the actor.

## FACTUAL ALLEGATIONS

### Record-keeping conventions

Yardi is SHRA's housing and voucher administration platform, not a social-services case-management tool. SHRA used Yardi Notes, status codes, and attachments as the operative program file. Entries may be posted after the underlying event; where relevant below, the event date is used and Yardi is cited for provenance. (Provenance: Yardi notes, status histories, and attachments.)

### Program background and shift (2018 to 2020)

In 2018 and 2019, SHRA worked as an integrated partner with the County's Flexible Supportive Rehousing Program (FSRP) and nonprofit case managers, creating third-party contacts in Yardi, coordinating referrals, and moving initial lease-ups quickly. (Provenance: Yardi tags and third-party contact entries; program correspondence.)

By late 2019 into 2020, large cohorts tied to FSRP sat in Issued or Out Searching status with no HAP, while SHRA cycled annual recertifications instead of using time-

limited extensions, keeping files active without paying subsidy. (Provenance: Yardi status histories; utilization summaries.)

From 2019 to 2023, SHRA kept large cohorts in Issued or Out Searching status with zero HAP while cycling annual recertifications in lieu of extensions, preserving active participation without lease-up or subsidy outlay. Plaintiffs' file reflects this pattern: SHRA processed renewals and recerts during non-leasing status (June 15, 2021; April 4, 2022). The first voucher extension for this period is not recorded until September 2022, roughly three months after SHRA changed status based on Plaintiffs' move request tied to impending eviction, with additional extensions following in 2023. (Provenance: Yardi notes for 06/15/2021 and 04/04/2022; extension logs; correspondence.)

The practice suppressed actual lease-ups while maintaining participation counts. Public leasing and utilization snapshots during 2022 to 2023 show reduced lease-up rates alongside a sizable share of issued vouchers kept Out Searching. (Provenance: utilization dashboards; local reports.)

**Baseline placement and address handling (2018 to 2020)**

RFTA intake for 2328 Empress St., Apt. 1 was recorded October 24, 2018; inspection passed and HAP began November 6, 2018; leases and contracts were recorded by email November 27, 2018. Baseline intervals: 13 days RFTA to HAP; 34 days RFTA to executed lease or contract. (Provenance: Yardi notes.)

SHRA's records show awareness of a later move to 1100 Howe Ave., Apt. 126 and use of that address for notices. By June 28, 2019, SHRA recorded the household out of Empress; in 2020 SHRA sent an overpayment notice to the former Empress

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES - 14

landlord while listing Howe as the current address. (Provenance: Yardi notes; correspondence.)

SHRA's July 25, 2019 recertification packet lists 1100 Howe Ave., Apt. 126 and includes signature blocks for Head of Household and Spouse or Co-Head, signed by Sydney B. Roberts and David T. Samuel. (Provenance: recertification packet.)

On June 9, 2020, SHRA's Authorization for Release of Information bears separate signature lines for Head of Household and Spouse or Co-Head, executed by Roberts and Samuel. (Provenance: authorization form.)

On June 9, 2020, SHRA's Things You Should Know HUD disclosure form includes separate signature lines for Head of Household and Spouse or Co-Head, completed by Roberts and Samuel. (Provenance: HUD disclosure.)

SHRA created and maintained third-party contacts for SSHH with "Use third party = Yes" (Aug 14, 2018 entry for Nancy Ozsvath; updated Jun 29, 2020 for Ashley Valentine), recognizing co-head status and provider involvement for communications. (Provenance: Yardi third-party contact entries.)

**Annuals and renewals (2021 to 2022)**

On June 15, 2021, SHRA generated and mailed the renewal packet to 1100 Howe Ave., Apt. 126, while the assisted-unit field in the file continued to list 2328 Empress St., Apt. 1. Initiator is not identified beyond staff processing entries. (Provenance: Yardi notes; renewal packet metadata.)

On April 4, 2022, SHRA generated and mailed the recertification to 1100 Howe Ave., Apt. 126, with the assisted-unit field still showing 2328 Empress St., Apt. 1.

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES - 15

(Provenance: Yardi notes; recertification records.)

**Newborn paperwork and RA kickoff (May to June 2022)**

On May 12, 2022, SHRA issued an incomplete-interim notice demanding newborn documents within seven days when the infant was under two weeks old. (Provenance: correspondence; Yardi notes.)

On May 19, 2022, through SSHH case manager Ashley Valentine, Plaintiffs requested reasonable accommodations including an additional bedroom, exception or payment-standard relief, rent reasonableness calibration, and effective communication by email or real-time text; medical verification and releases authorized provider contact. (Provenance: Yardi notes; email records.)

On May 26 to 31, 2022, at SHRA's request for specific wording, the treating physician supplied a support letter tracking SHRA's requested language. Plaintiffs delivered the letter to SHRA while the lobby was closed. (Provenance: email records; personal knowledge.)

On June 2, 2022, Yardi reflects that the RA Committee met regarding Plaintiffs' request; no provider outreach is recorded immediately after. (Provenance: Yardi notes.)

SHRA's RA materials state that the Committee meets weekly; provider pages are to be sent by staff (not handed to the client); families are not required to use SHRA's form if a current provider letter supplies necessary information; and staff must re-fax provider pages twice before voiding for non-response. None of those steps appear in the file before denial. (Provenance: RA brochure; internal RA procedure and training deck; Yardi notes.)

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 16

For Kaiser providers, SHRA's workflow requires staff to complete Pages 1 to 2 with the client, send Pages 3 to 4 directly to the provider, and chrono transmission attempts. No such transmissions or chronos appear before denial. (Provenance: internal RA training; Yardi notes.)

On June 20, 2022, staff asserted non-receipt of the physician verification; Plaintiffs then emailed a photo of the letter to ra@shra.org. The same day, SHRA mailed a missing-documents letter to Plaintiffs. The file shows no fax or mail to the physician despite releases. (Provenance: email records; correspondence; Yardi notes.)

Three days later, on June 24, 2022, the RA Committee denied the bedroom accommodation with boilerplate language suggesting alternate sleeping arrangements. (Provenance: Yardi notes; mailing log.)

Callbacks, hearing request, and nonfunctional line (July to August 2022)

On July 1, 2022, Plaintiffs submitted a Resident Portal callback; confirmation said a return call would occur within 48 hours. (Provenance: portal and Yardi entries.)

On July 11, 2022, staff noted no callback had occurred and informed Plaintiffs of the denial. (Provenance: Yardi notes.)

During July and August 2022, Plaintiffs and their case worker submitted numerous Resident Portal requests and emails seeking RA and hearing status; system replies promised a 48-hour callback, but no callback is recorded. (Provenance: portal confirmations; Yardi notes; email threads.)

During July and August 2022, calls to the RA line reached a recorded greeting, offered no monitored mailbox or TTY or text, and disconnected. Attempts are logged without returned calls. (Provenance: phone logs; personal knowledge.)

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES - 17

On August 2 to 4, 2022, Plaintiffs faxed a hearing request; SHRA logged receipt August 9. (Provenance: fax logs; Yardi notes.)

**Hearing, cancellation, and follow-ups (September to December 2022)**

On September 12, 2022, an informal hearing proceeded by Zoom without captioning. Program representative CRUZ stated she could not make a decision and would refer the matter back to the RA Committee. The hearing officer directed Plaintiffs to email their brief to ra@shra.org for a written decision within two weeks; Plaintiffs sent the brief the same day and opened additional Portal tickets requesting the file and decision. (Provenance: personal knowledge; email records; portal entries.)

Hearing standards require timely notice, access to the case file before the hearing, an impartial officer, and a reasoned written decision. Plaintiffs were told to expect a decision within two weeks but received none; when the hearing reconvened April 20, 2023, SHRA ended it because the file had not been provided. (Provenance: hearing notices; hearing memo; correspondence.)

On September 15, 2022, CRUZ called and canceled issuance of a decision. (Provenance: Yardi notes; personal knowledge.)

On September 16, 2022, Plaintiffs objected in writing to the cancellation and renewed requests for a written decision and complete case file. Additional Portal tickets and emails followed without substantive response. (Provenance: Yardi notes; portal entries; email records.)

From late September through December 2022, Plaintiffs and their case worker submitted repeated Portal requests, emails, and call-back requests for RA status, provider outreach, and hearing scheduling. Entries show "forwarded," "will return call,"

or "in queue," with no returned calls documented. (Provenance: Yardi portal history; email records; call logs.)

In October and November 2022, Plaintiffs specifically requested captioning for any continued remote hearing and effective communication by email or real-time text for the household; no captioning was arranged and email remained restricted. (Provenance: email records; Yardi notes.)

In November 2022, HENLEY stated internally that SHRA would not begin looking for a new hearing officer until after the holidays. No scheduling steps are recorded in November or December 2022. (Provenance: internal scheduling emails; Yardi notes.)

In 2022, SHRA executed a multi-year professional services agreement with LEW for hearing support, then failed to use it after the September 12, 2022 hearing produced no decision; no hearings were scheduled under that contract before service, evidencing managerial awareness and ratification of the hearing gap. (Provenance: procurement file; contract record; internal emails.)

On September 26, 2022, Plaintiffs submitted an updated RA letter (separate rooms; effective email or real-time text; sound-dampening or blackout; search assistance; extensions) and renewed their hearing request. (Provenance: correspondence; personal knowledge.)

Also on September 26, 2022, Plaintiffs submitted a calculation summary showing that, with a three-bedroom accommodation and corresponding payment-standard adjustment, the family could have remained at 1100 Howe; the file shows no adjudication of this item. (Provenance: calculation summary attached to 09/26/2022 RA update; correspondence.)

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES - 19

On September 29, 2022, Plaintiffs submitted an approvable comparable for a three-bedroom unit in the same complex at 1100 Howe (The Eleven Hundred), showing that with a three-bedroom or payment-standard accommodation the family could remain in place. SHRA did not adjudicate it. But for that failure, the eviction cascade that followed would likely have been avoided. (Provenance: 09/29/2022 correspondence and attachment; affordability or calculation materials; Yardi receipt.)

In September 2022, following Plaintiffs' move request prompted by impending eviction, SHRA issued the first voucher extension for this period roughly three months later; subsequent extensions followed in 2023. (Provenance: Yardi extension logs; correspondence.)

**Eviction pressure and second denial (November to December 2022)**

On November 6, 2022, the landlord issued an eviction notice at Howe; Plaintiffs circulated the papers to caseworkers November 8 and 10. (Provenance: court and email records.)

On November 16, 2022, SHRA denied an additional bedroom again, proposing alternate sleeping arrangements. The file reflects no contact with the treating physician despite releases. (Provenance: correspondence; Yardi notes.)

On December 4 to 6, 2022, SHRA's system sent an appointment reminder, then canceled, stating it could not find the tenant in the system, despite the linked portal account. (Provenance: appointment email; portal workflow.)

**Payment standards context and HUD authority (late 2022 to January 2023)**

In late 2022, SHRA acknowledged rapidly changing rents by invoking HUD's streamlined authority and SAFMR to raise local payment standards and posted

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 20

"Payment Standards Effective January 1, 2023," reflecting use of the up-to-120 percent allowance to address inflation. (Provenance: SHRA payment-standard table; HUD policy summary.)

HUD policy permits PHAs to approve exception payment standards as a reasonable accommodation, aligned to FMR or SAFMR and, within defined limits, without prior HUD approval, when needed to equalize access. Plaintiffs' September 2022 package sought this relief; non-bedroom components were not adjudicated. (Provenance: HUD HCV guidance; RA submissions.)

**Post-service cluster and RA split-track (March to April 2023)**

On March 8, 2023, Defendants were served with the Third Amended Complaint. (Provenance: service records.)

On March 9, 2023, staff stated rescheduling of the RA hearing was imminent and apologized for delay. (Provenance: email records.)

Only after service did SHRA restart vendor outreach and hearing scheduling; HENLEY set up Zoom logistics and discussed 15-day notices. (Provenance: procurement and scheduling emails; Yardi notes.)

On March 20, 2023, the RA Committee approved one additional bedroom without any new March 2023 request from the family; the entry supplies committee-created reasoning rather than reflecting an interactive process with Plaintiffs. The approval letter was misaddressed to Empress. (Provenance: Yardi entries 03/21/2023 and 05/01/2023; mailing log.)

On March 21, 2023, Plaintiffs accepted issuance of a three-bedroom voucher while preserving hearing rights and outstanding RA issues, and requested prompt

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES - 21

issuance. (Provenance: correspondence.)

On March 23, 2023, Plaintiffs were served with an unlawful detainer under which they were ultimately evicted. (Provenance: court documents.)

On March 25, 2023, Plaintiffs executed a Holding Agreement for an otherwise approvable unit, listing monthly rent, deposit, and crediting the holding fee to move-in. (Provenance: holding agreement.)

On March 30 to 31, 2023, SHRA produced a Calculation Summary that referenced the old Empress address and used a payment standard inconsistent with the approved three-bedroom size; an Affordability Worksheet concluded "This unit is approvable." (Provenance: calculation summary; affordability worksheet; payment-standard schedule.)

SHRA advised that move-in could proceed before HAP finalization, while warning that any processing delay (for example, failed inspection, wrong address entry, rent study re-run) would leave Plaintiffs responsible for full, unsubsidized rent. (Provenance: move-in advisories; inspection and payment processing records.)

In early April 2023, Plaintiffs submitted the RFTA electronically; SHRA recorded receipt April 2. On April 3, SHRA issued an RA letter to Empress denying email-only communication, treating blackout or sound-dampening as a landlord issue, and stating two bedrooms each for David and AIMS; staff continued applying a two-bedroom payment standard afterward. (Provenance: RFTA; Yardi notes; correspondence.)

On April 4 and April 13, 2023, SHRA noticed an informal hearing for April 20 by Zoom; notices were mailed and emailed. Plaintiffs requested the complete file and hearing materials. (Provenance: Yardi notes; correspondence.)

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 22

On April 20, 2023, SHRA convened the hearing, then ended it because the case file had not been provided. Captioning again was not provided. The officer directed rescheduling with file production in advance. (Provenance: hearing memo; Yardi notes.)

In April 2023, in parallel with hearing notices, Plaintiffs sent additional emails and Portal requests for the complete case file, captioning, and confirmation of three-bedroom payment standards; responses did not include the file and captioning was not arranged. (Provenance: email threads; portal entries; hearing memo.)

From September 2022 through May 2023, Plaintiffs repeatedly requested effective communication by email or real-time text and captioning for remote hearings; SHRA restricted email communication during active RA processing and did not arrange captioning for the September 12, 2022 or April 20, 2023 hearings. Public entities must provide auxiliary aids and services and give primary consideration to the individual's requested method of communication. (Provenance: email threads; internal emails; hearing memo.)

**Rent reasonableness processing errors and communications gating (late April to May 2023)**

On April 26, 2023, SHRA asked the Property Manager to confirm the exact unit address; the Property Manager replied the home is a duplex or single-family and that classification affects numbers. (Provenance: Yardi notes; Property Manager communications.)

On April 28, 2023, staff recommended an "approvable" rent of approximately 2,147 against the manager's ask of approximately 2,930 and asked if the manager would accept; the Property Manager flagged SHRA had been running the unit as an

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES - 23

apartment. (Provenance: Yardi notes; Property Manager communications.)

On April 28, 2023, SHRA noted a Yardi outage and recorded that the RFTA would need to be returned or voided when restored. (Provenance: Yardi notes.)

On May 1, 2023, staff told the Property Manager they reran affordability with the correct voucher size and apologized; they stated the unit passed affordability on income but failed rent reasonableness and sent comparables. (Provenance: Yardi notes; email records.)

On May 2, 2023, Plaintiffs asked whether rent reasonableness had been run correctly, citing comparables and SAFMR; staff acknowledged earlier runs used apartment-type comps and later said they reran with the correct voucher size. (Provenance: email records; Yardi notes.)

Rent reasonableness outputs relied on vendor data that lagged market conditions and used mis-typed or mismatched addresses; when Plaintiffs supplied corrected addresses and current comparables, SHRA delayed refreshes and continued to apply stale outputs to cap approvable rent. Rent reasonableness is a mandatory, contemporaneous finding that compares the subject to similar unassisted units based on address-matched factors (location, size, age, quality, amenities, services, utilities, accessibility). Applying stale or mis-addressed comparables defeats the rule's purpose and produces under-market caps that diverge from ZIP-level SAFMR conditions SHRA had already acknowledged. (Provenance: vendor outputs and methodology; address-correction emails; Yardi re-run entries; SAFMR or payment-standard table.)

On May 2 to 3, 2023, Program Manager CRUZ and Director PAULSON instructed staff not to email Plaintiffs and to use phone or voicemail during time-

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 24

sensitive RFTA and comparables exchanges, despite Plaintiffs' pending effective-communication request and SHRA's routine email and portal usage. (Provenance: internal emails.)

In May 2023, despite the pending request, Plaintiffs continued to send emails and Portal requests supplying current comparables and address corrections while SHRA left voicemails and mailed notices. (Provenance: portal entries; email threads; mailing logs.)

Despite SHRA's own forms designating David Samuel as Spouse or Co-Head with executed consents across multiple years, management limited communication to the Head of Household and used that restriction as a pretext to deny effective communication to the household and authorized representatives. Therefore, limiting communications to the Head of Household, despite executed Spouse or Co-Head designations and third-party authorizations, functioned as a pretext to deny effective communication to the household and authorized representatives during time-critical approvals. (Provenance: 2019 to 2020 HUD or SHRA forms; internal emails May 2 to 3, 2023; Yardi notes.)

On May 3, 2023, the hearing officer issued a memo that the April 20 hearing was ended and would be rescheduled because SHRA had not provided the case file. (Provenance: hearing memo.)

On May 5, 2023, staff sent a Notice of Incomplete RFTA with a seven-day response window and requested manager-submitted comps. During delays on the pending RFTA, Plaintiffs asked SHRA to process an alternate unit concurrently or to hold the pending RFTA while recalculations were completed. Staff refused under

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES - 25

SHRA's one-RFTA-at-a-time rule and declined to modify that local rule as an ADA and Section 504 accommodation, despite the documented risk of losing units. (Provenance: correspondence; emails; Yardi notes.)

On May 10 to 16, 2023, FSRP social worker Caitlyn Grabill followed up with the Property Manager for the community on comparables; on May 16 the asking rent increased to approximately 3,115, and SHRA stated it would reprocess affordability and rent reasonableness. (Provenance: Yardi notes; email threads.)

On May 17 to 24, 2023, Grabill and Plaintiffs requested clarification on approvable rent and the distinction between payment standard and rent reasonableness. They provided a market analysis that matched the Property Manager's analysis for the community and showed the unit passed the 40 percent affordability rule using SHRA's online tool. SHRA did not issue a clear written position on approvability. (Provenance: email threads; market analysis attachments; affordability-tool screenshots; Yardi notes.)

In late May 2023, Grabill documented confusion about what SHRA would approve and asked for a single point of contact to reconcile discrepancies between SHRA's outputs and the aligned market analyses; despite repeated emails, portal messages, and calls from both the social worker and Plaintiffs, SHRA provided no definitive approvable-rent number before voiding the RFTA. This confusion was not individual error; it reflected the collapse of the County and FSRP cooperation pathway that had enabled fast, coordinated leasing in 2018 to 2019. (Provenance: FSRP or Grabill emails; portal entries; Yardi notes; 2018 to 2019 coordination entries.)

On May 11, 2023, program counsel Brad Nakano confirmed internally that closed

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES - 26

captioning must be provided when needed for remote hearings, underscoring that captioning had not been provided at the September 12, 2022 or April 20, 2023 settings. The thread also asserted staff were not required to communicate by email with anyone other than the Head of Household. (Provenance: internal legal emails.)

On May 19, 2023, staff entered a late summary: original RFTA canceled; manager ask increased to about 3,115; affordability recalculated about 3,034; rent reasonableness recalculated about 2,470; comparables resent. (Provenance: Yardi notes.)

On May 25, 2023, while program counsel sought court status implying that accommodation had been granted and a core issue cured, staff voided the RFTA for an otherwise approvable unit, recorded 53 days of tolling, and mailed void letters; notices to Plaintiffs were misaddressed to Empress. (Provenance: Yardi notes; mailing logs; correspondence.)

Post-void, mixed notices, and no effective relief (June 2023 to February 2024) On June 2, 2023, SHRA's supplemental hearing brief acknowledged the March 20 approval and the April 3 denial and newly stated Plaintiffs had a three-bedroom voucher, while recording "family did not show" and upholding prior denials under a missed-appointment rule. (Provenance: hearing briefs; Yardi notes.)

In mid-June 2023, case manager communications show SHRA requested unit details and floor plans; SHRA granted a voucher extension to August 29, 2023. (Provenance: Yardi notes.)

On August 17 to 22, 2023, SHRA and All Asset Property Management processed a new RFTA for 108 Rinetti Way; rent reasonableness was set at 2,246 against an initial

ask of 2,700; the Property Manager accepted 2,246; inspections were ordered and completed. (Provenance: Yardi notes.)

In late September to October 1, 2023, the sheriff posted a Notice to Vacate at Howe; on October 1 the sheriff completed the lockout and restored possession to the landlord. (Provenance: sheriff notices; writ and return.)

On November 28, 2023, SHRA activated HAP for 108 Rinetti Way effective October 12, 2023 and sent notices to tenant and Property Manager (contract rent 2,246; HAP 2,092; tenant rent 154). (Provenance: Yardi notes.)

On January 4, 2024, SHRA issued an Informal Hearing Notice for February 2, 2024 by Zoom as "mailed and emailed"; on February 21, 2024, SHRA recorded "family did not show" and invoked an Administrative Plan provision to uphold prior decisions. (Provenance: Yardi notes.)

**Addressing and communication pattern**

SHRA recorded returned Empress mail on or about January 6, 2020 and an August 19, 2020 entry that Plaintiffs were out of Empress after June 28, 2019 while using Howe for current contact. Nonetheless, SHRA mailed the March 20, 2023 approval, the April 3, 2023 RA letter, and the May 25, 2023 "Voided RFTA" to Empress. (Provenance: Yardi notes; mailing logs.)

Despite executed Spouse or Co-Head designations and third-party authorizations, management restricted email communication to the Head of Household during active accommodation processing and hearing preparation, using that restriction as a pretext to deny effective communication to the household and authorized representatives. (Provenance: HUD or SHRA forms; internal emails; Yardi notes.)

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES - 28

**Processing intervals and voucher-parking motive**

Baseline 2018 processing was 13 days from RFTA (10/24/2018) to HAP (11/6/2018). In 2023, the voided attempt ran 53 days from RFTA receipt (4/2/2023) to void (5/25/2023). The 2023 Rinetti placement took 51 days from "ready for inspection" (8/22/2023) to HAP (10/12/2023). These elongated intervals occurred while Plaintiffs faced finite bridge periods and risk of housing loss. (Provenance: Yardi notes; Property Manager communications.)

The combined use of long-term Issued and Out Searching status, annual recertifications in lieu of timely extensions (first extension not until September 2022), and tolling after a voided RFTA preserved reported participation while deferring subsidy outlays. For Plaintiffs, this manifested as zero HAP during 2021 to 2022 despite active renewals and recerts, a 53-day tolling entry after the voided RFTA, and delayed extensions, all while approvable units were lost. (Provenance: Yardi history; tolling entry 05/25/2023; extension records.)

This bookkeeping, parking vouchers in Out Searching, recertifying without HAP, and tolling voided RFTAs, preserved participation counts while holding subsidy outlays flat during a period of rising market rents, a pattern reflected in contemporaneous utilization snapshots. (Provenance: utilization dashboards; tolling and recert entries.)

**Systemic use of RA and hearing procedures as gates**

Committee handling shows two tracks. Items that did not increase subsidy outlays (for example, a bedroom label change) could move quickly when SHRA chose to act. Payment-standard accommodations and rent reasonableness calibrations were parked for months and then denied in batch entries, without provider outreach or an

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 29

interactive process. These batch denials and stalls coincided with prolonged Issued and Out Searching statuses and recertifications-in-lieu-of-extensions, reinforcing a voucher-parking practice that suppressed lease-ups while maintaining participation counts. (Provenance: Yardi 03/20 to 03/29/2023 entries; RA logs; status histories; utilization snapshots.)

Program managers directed staff away from email during active accommodations; captioning was not provided when needed; hearings were noticed and then ended without a file; written decisions were delayed or missing; and misaddressed mail was used alongside missed-contact rules to uphold denials. (Provenance: internal emails; hearing memos; Yardi notes; mailing logs.)

Program-wide RA outcomes show fewer than half of accommodation requests were approved. The disparity was acute for mental and behavioral health accommodations, with approvals around five percent, while even favored categories (for example, live-in aide, certain durable medical equipment) remained below fifty percent. (Provenance: RA tracking spreadsheets; approval-rate summaries; RA committee minutes.)

**Resulting harm and regional impact**

As a direct and foreseeable result, Plaintiffs lost approvable housing opportunities, incurred out-of-pocket costs (holding deposits, duplicate application fees, interim housing), suffered eviction and loss of personal property, and experienced disruption of medically necessary therapies tied to housing instability. Plaintiffs will supplement with itemized valuations, receipts, and expert analysis quantifying personal-property losses, interim housing costs, and therapy disruptions causally linked to the

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES - 30

approval delays and communication barriers. (Provenance: holding agreements; receipts; eviction and loss records; medical scheduling records.)

Program-wide effects included cost shifting to nonprofits during prolonged non-HAP periods, erosion of capacity among partners, reduced lease-up rates during 2022 to 2023, and maintenance of participation counts by parking vouchers and recycling files through annuals rather than executing HAP contracts. (Provenance: provider invoices; utilization dashboards; local reports.)

During extended non-HAP periods SHRA shifted hotel, unit-holding, and case-management costs to nonprofit partners. As these costs escalated, providers reduced placements and capacity; Sacramento Self-Help Housing, the region's long-standing 211 and 311 homeless navigation anchor, ultimately dissolved. (Provenance: provider invoices; local reports.)

Public leasing and utilization data for 2022 to 2023 align with the above practices: lease-up declined while issued-but-unleased (Out Searching) remained elevated, confirming that SHRA preserved participation counts without converting vouchers to HAP. (Provenance: utilization dashboards; local reports.)

**CLAIMS FOR RELIEF**

**Count I — 42 U.S.C. 3604(f)(3)(B) — Against SHRA; and against DOZIER, PAULSON, CRUZ, LYNCH, HENLEY, BROWN, and MACIAS in their individual capacities**

Plaintiffs re-allege the foregoing allegations. Plaintiffs are qualified individuals with disabilities, and SHRA is a covered housing provider administering HCV program services.

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 31

Plaintiffs requested reasonable accommodations necessary to afford equal opportunity to use and enjoy a dwelling and to access HCV services, including but not limited to an additional bedroom, exception or increased payment standards aligned to FMR or SAFMR, calibration or refresh of rent-reasonableness comparables, effective communication by email and real-time text, captioning for remote hearings, and housekeeping support to meet HQS.

Defendants, including the Individual Defendants identified above, refused or unreasonably delayed these accommodations by issuing boilerplate denials, failing to contact providers despite releases, misdirecting mail, restricting communications to the Head of Household, refusing captioning, declining to refresh stale or mis-addressed comparable-rent studies, and failing to adjudicate payment-standard components. Liability for refusing reasonable accommodations does not require proof of discriminatory animus.

Separately and in the alternative, Defendants' acts and omissions interfered with the exercise or enjoyment of FHA rights by restricting effective communication, withholding or delaying the case file needed for hearings, and using misaddressed notices and missed-contact rules to uphold denials.

These violations caused concrete injury, including loss of approvable housing opportunities, eviction exposure and lockout, disruption of therapy and services, out-of-pocket costs, and personal property loss.

Plaintiffs seek declaratory and injunctive relief, compensatory and, where permitted by law, punitive damages against non-immune individual defendants, and fees and costs under 42 U.S.C. 3613.

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 32

**Count II — Americans with Disabilities Act, Title II (Failure to Modify Policies and Provide Effective Communication)**

42 U.S.C. Section 12132; 28 C.F.R. Sections 35.130(b)(7), 35.160 — Against SHRA

Plaintiffs re-allege the foregoing allegations. SHRA is a public entity administering HCV services and obligations.

Plaintiffs requested reasonable modifications to policies and practices and auxiliary aids and services, including primary consideration for email and real-time text, captioning for remote hearings, modification of the one-RFTA-at-a-time rule, exception payment standards, and prompt refresh of rent-reasonableness determinations upon corrected data.

SHRA failed to reasonably modify its policies and failed to provide effective communication by restricting email to the Head of Household, refusing captioning, misaddressing notices, using an unmonitored RA phone line, and declining to adjust local rules that predictably caused the loss of units.

As a direct result, Plaintiffs were denied meaningful access to HCV services and suffered the injuries described above.

Plaintiffs seek declaratory and injunctive relief, compensatory damages upon proof of deliberate indifference, and fees and costs under 42 U.S.C. Section 12205.

For clarity, this ADA Title II claim is asserted against SHRA as the public entity. Plaintiffs do not assert individual-capacity liability under Title II. Plaintiffs seek damages on a deliberate indifference standard and prospective relief.

**Count III — Rehabilitation Act Section 504 (Disability Discrimination)**

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES - 33

**29 U.S.C. Section 794 — Against SHRA**

Plaintiffs re-allege the foregoing allegations. SHRA receives federal financial assistance and is subject to Section 504.

By refusing needed accommodations and effective communication and by failing to engage in an interactive process, SHRA excluded Plaintiffs from participation in, denied them the benefits of, or subjected them to discrimination under a federally funded program by reason of disability.

Injury and damages include loss of approvable tenancies, eviction and lockout, increased costs, disruption of therapies, and loss of personal property.

Plaintiffs seek declaratory and injunctive relief, compensatory damages upon proof of deliberate indifference, and fees and costs as permitted by 29 U.S.C. Section 794a(b).

For clarity, this Section 504 claim is asserted against SHRA as the federal-funds recipient. Plaintiffs do not assert individual-capacity liability under Section 504. Plaintiffs seek damages on a deliberate indifference standard and prospective relief.

**Count IV (42 U.S.C. 1983 – Procedural Due Process) – Monell and Individual Liability Against SHRA, and against DOZIER, PAULSON, LYNCH, CRUZ, HENLEY, BROWN, and MACIAS in their individual capacities**

Plaintiffs re-allege the foregoing allegations. Plaintiffs possess a protected property interest in HCV benefits and in timely, accurate administrative determinations affecting those benefits.

Acting under color of state law, the Individual Defendants personally participated in, directed, or knowingly failed to prevent deprivations of due process, including:

issuing opaque or misleading notices; misaddressing mail; restricting effective communication despite pending requests; conducting hearings without captioning when needed; convening a hearing and then ending it because the case file had not been provided; failing to timely issue reasoned written decisions; and applying a missed-appointment rule after agency-caused defects.

SHRA is liable under Monell because these deprivations were the moving force behind Plaintiffs' injuries and occurred pursuant to SHRA policies, customs, and practices that include, without limitation:

(1) voucher parking through recertifications in lieu of timely extensions to suppress HAP outlays;

(2) a one-RFTA-at-a-time gate, applied without modification for disability and despite predictable loss of units;

(3) reliance on stale or mis-typed or mis-addressed rent-reasonableness comparables, and refusal to refresh with corrected data;

(4) a custom of delaying and denying reasonable accommodation requests that would increase subsidy costs, while processing narrow items that do not raise costs;

(5) restrictions on email communication to the Head of Household during active accommodations, used as a pretext to deny effective communication to the household and authorized representatives;

(6) failure to provide captioning for remote hearings when needed;

(7) misaddressed and inconsistent mailings used alongside missed-contact rules to uphold denials; and

(8) post-service record backfilling in place of contemporaneous interactive

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 35

processing and prompt file production.

SHRA's final policymakers, including DOZIER (Executive Director) and PAULSON (HCV Director and Section 504 lead), had actual or constructive knowledge of these policies and customs, ratified them, and were deliberately indifferent to the known and obvious consequences. Their directions and failures to correct, including the May 2 to 3, 2023 directive restricting email communication during active accommodation and RFTA processing, proximately caused the violations.

As a direct and proximate result, Plaintiffs suffered concrete injuries, including loss of approvable housing opportunities, eviction exposure and lockout, disruption of therapies and services, out-of-pocket costs, and loss of personal property.

Plaintiffs seek declaratory and injunctive relief, nominal damages where available, compensatory damages upon proof of causation, and fees and costs under 42 U.S.C. 1988.

**Count V — Fair Housing Act Sections 3604(b) and 3604(f)(2) (Discriminatory Terms, Conditions, or Privileges) — Pled in the alternative Against SHRA; and against DOZIER, PAULSON, CRUZ, LYNCH, HENLEY, BROWN, and MACIAS in their individual capacities**

Plaintiffs re-allege the foregoing allegations. Defendants imposed disability-discriminatory terms, conditions, and privileges in program participation and services by narrowing approvals to favored categories and employing rent-reasonableness methods that disproportionately blocked otherwise approvable tenancies tied to disability-related needs.

This created a two-tiered system that systematically favored accommodations for

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES - 36

physical needs, such as live-in aides, while routinely denying accommodations for mental and behavioral health disabilities. Program-wide data show that fewer than half of accommodation requests were approved across categories, and that approvals for mental and behavioral health accommodations were approximately five percent.

Each Individual Defendant is a person under the FHA and is directly liable for their own conduct and for failing to take prompt corrective action they knew or should have known was necessary to prevent discrimination. Plaintiffs also allege discriminatory effects liability where policies and practices caused unjustified disparate impacts without requiring proof of intent.

Defendants' practices caused the injuries described above. Plaintiffs seek declaratory and injunctive relief, compensatory and statutory damages, punitive damages against non-immune individual defendants where permitted, and fees and costs as provided by law.

**Count VI — California FEHA (Housing): Failure to Make Reasonable Accommodations and Failure to Engage in the Interactive Process Government Code 12955; 2 CCR 12176-12179 — Against SHRA; and against DOZIER, PAULSON, CRUZ, LYNCH, HENLEY, BROWN, and MACIAS for aiding and abetting under Government Code 12955(g)**

Plaintiffs re-allege the foregoing allegations. SHRA is a covered housing provider and program administrator under FEHA.

FEHA required SHRA to consider and implement reasonable accommodations and to engage in a timely, good-faith interactive process, including prompt information exchange, clarification before denial, and fair evaluation of alternatives. Undue delay

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 37

can constitute denial. Requests could not be refused based on agency-preferred forms, and requests for assistance with forms or alternative communication methods had to be treated as accommodation requests.

SHRA violated FEHA by refusing or delaying accommodations for additional bedroom space, exception payment standards, rent-reasonableness calibration, housekeeping for HQS, and effective communication; by failing to contact providers despite releases; by proposing alternate sleeping arrangements without voluntary agreement; and by denying captioning and email-based communication while misaddressing notices and restricting channels.

Independently and in the alternative, each Individual Defendant aided and abetted SHRA's FEHA violations by participating in, enforcing, or directing the policies and practices described above, including communications restrictions during active accommodation processing, refusal to refresh rent-reasonableness data, and application of approval gates that predictably caused the loss of approvable units.

These violations caused the injuries described above. Plaintiffs seek declaratory and injunctive relief, compensatory damages, and fees and costs under Government Code 12965(b).

**Count VII — ADA Title II and Section 504 (Denial of Access to Services) — Pled in the alternative Against SHRA**

Plaintiffs re-allege the foregoing allegations. Independently and in the alternative, SHRA denied access to services by maintaining a nonfunctional RA phone line, refusing requested email and real-time text communications, failing to provide captioning when needed, applying approval gates that predictably suppressed lease-ups for families with

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 38

disability-related needs, and using stale or mis-addressed rent-reasonableness data while declining to modify local rules such as the one-RFTA gate.

These practices denied Plaintiffs meaningful access to HCV services and caused the injuries described above.

Plaintiffs seek declaratory and injunctive relief, compensatory damages as permitted by law, and attorneys' fees and costs.

## PRAYER FOR RELIEF

Plaintiffs request that the Court enter judgment in their favor and award the following relief.

**Declaratory relief**. A declaration that Defendants' policies, practices, and customs described in this Complaint violate the Fair Housing Act, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and, where reached, the Due Process Clause of the Fourteenth Amendment.

**Permanent injunctive relief**. A written, interactive accommodation process with defined timelines, provider outreach requirements, re-contact protocols, and acceptance of current provider letters in lieu of agency forms where those letters supply the necessary information. Primary consideration to the individual's requested method of communication, including email and real-time text where needed. Compliance with 24 C.F.R. 982.555 and related due process requirements for hearings, including timely notice, access to the case file before the hearing, an impartial officer, provision of captioning or other auxiliary aids when needed, and timely reasoned written decisions. Transparent, ZIP-matched rent reasonableness determinations with address validation, disclosure of comparable addresses and age, contemporaneous refreshes when

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 39

corrected data or current comparables are presented, and mechanisms to approve exception payment standards as reasonable accommodations consistent with HUD policy and SAFMR or FMR conditions. Permission for concurrent or alternative RFTA processing when delay risks loss of housing or when disability-related accommodations affect payment standards, and removal or modification of single-RFTA gating where necessary as an ADA or Section 504 accommodation. Functioning, monitored communication channels including text-capable and TTY-capable lines, reliable voicemail, and email-based communication upon request, with no categorical no-email directives for households with pending or approved communication accommodations.

**Independent Monitor**. Appointment of an Independent Monitor as Special Master under Fed. R. Civ. P. 53 for thirty-six months, with authority to review data, recommend corrective actions and timelines, issue quarterly public compliance reports, and access records under appropriate protective orders, together with anti-retaliation safeguards.

**Equitable voucher relief**. Extension, tolling, or restoration of voucher time limits and related approvals as needed to remedy past denials and delays, and other measures necessary to restore Plaintiffs to the position they would have occupied but for the violations.

**Damages**. Compensatory damages for out-of-pocket losses including holding deposits, duplicate application fees, interim housing costs, and other quantifiable expenses. Compensatory damages for disruption of therapies and services, emotional distress, and loss of personal property. Punitive damages only to the extent permitted by law against non-immune defendants, including individual-capacity defendants under

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 40

42 U.S.C. 1983 and, where allowed, under the FHA. Plaintiffs do not seek punitive damages under ADA Title II or Section 504 and do not seek punitive damages against SHRA to the extent barred.

**Costs and expenses (pro se)**. Taxable costs under 28 U.S.C. 1920 and other recoverable litigation expenses, including expert fees where authorized by law. If Plaintiffs later retain counsel, Plaintiffs seek reasonable attorneys' fees as permitted by 42 U.S.C. 3613(c)(2), 42 U.S.C. 12205, 29 U.S.C. 794a(b), and 42 U.S.C. 1988 if reached.

**Interest**. Pre-judgment and post-judgment interest as permitted by law.

**Further relief**. Any additional legal or equitable relief the Court deems just and proper to remedy and deter the violations described.

**Jury Demand**

Plaintiffs demand trial by jury on all issues so triable.

**CERTIFICATION AND SIGNING**

Under Federal Rule of Civil Procedure 11, by signing this Complaint, Plaintiffs certify that it is not presented for any improper purpose; that the legal contentions are warranted by existing law or by a nonfrivolous argument to modify or extend the law; that the factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for investigation or discovery; and that any denials of factual contentions are warranted on the evidence or, where specifically so identified, are reasonably based on belief or a lack of information.

Plaintiffs agree to keep current mailing and email addresses on file with the Clerk and to promptly update contact information for service. Plaintiffs consent to receive

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 41

notices and communications by any method authorized for pro se litigants in this District, including CM/ECF notifications if and when permitted.

Respectfully submitted,

*David Samuel*

David Samuel
September 16, 2025

*Sydney Roberts*

Sydney Roberts
September 16, 2025

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES  - 42

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT**

Plaintiffs' Motion for Leave to File a Fourth Amended and Supplemental Complaint came on for decision. Having considered the papers and the record, and good cause appearing, the Court finds and orders as follows:

The Court finds that post-Third Amended Complaint events have been referenced by the parties and considered by the Court in managing and resolving disputes in this action, including the March 20, 2023 accommodation entry; the April 20, 2023 hearing that was ended for lack of the file and without captioning; the May 25, 2023 voiding of an otherwise approvable RFTA with a 53-day tolling entry; the October 12, 2023 start of HAP at 108 Rinetti Way; and hearing notices and entries in January and February 2024.

In view of those later developments, leave to file a supplemental pleading is warranted under Federal Rule of Civil Procedure 15(d), and leave to amend is warranted under Rule 15(a)(2). To the extent a scheduling order applies, the Court also finds good cause under Rule 16(b)(4).

Plaintiffs' Motion is GRANTED. The Clerk shall file Plaintiffs' Fourth Amended and Supplemental Complaint as of the date of this Order. Upon filing, the 4ASC is the operative pleading and supersedes all prior complaints, consistent with Local Rule 220.

Defendants shall answer or otherwise respond within 14 days after service of the 4ASC, as provided by Rule 15(a)(3). Nothing in this Order waives or limits any defense or objection available under the Federal Rules or other applicable law.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT** - 10

Any pending motions directed to a superseded complaint are DENIED AS MOOT without prejudice to renewal as appropriate in response to the 4ASC.

The case caption shall be updated to match the 4ASC, including the use of minors' initials consistent with Federal Rule of Civil Procedure 5.2. The Clerk shall update the docket accordingly.

Existing case deadlines remain in effect unless modified. Within 14 days, the parties shall file a joint status report proposing any necessary schedule adjustments in light of the 4ASC.

The Court makes no findings on the merits at this time.

IT IS SO ORDERED.

Dated: _____

Hon. Allison Claire

United States Magistrate Judge

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT - 11**

NAME, ADDRESS AND TELEPHONE NUMBER OF ATTORNEY(S)
EDWARD P. GARSON (SBN 96786)
MONICA CASTILLO (SBN 146154)
WILSON ELSER MOSKOWITZ EDELMAN & DICKER
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-0990

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sydney Brooke Roberts,<br>David Samuel,<br>A.I.M.S.,<br>D.A.Y.S.,              PLAINTIFF(S),<br>v.<br>Sacramento Housing and Redevelopment<br>Agency, et. al,<br><br>                          DEFENDANT(S). | CASE NUMBER<br><br>**2:22-cv-01699-DJC AC**<br><br><br>**PROOF OF SERVICE - ACKNOWLEDGMENT<br>OF SERVICE** |

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Sacramento                                                                              , State of California, and not a party to the above-entitled cause. On _September 16_                              , 20 _25_        , I served a true copy of
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE FOURTH AMENDED AND SUPPLEMENTAL C(
by personally delivering it to the person (s) indicated below in the manner as provided in FRCivP 5(b); by depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following: (list names and addresses for person(s) served. Attach additional pages if necessary.)

Place of Mailing: _3350 Arapaho Way, Antelope, CA 95843_
Executed on _September 16_            , 20 _25_        at _Sacramento_                          , California

Please check one of these boxes if service is made by mail:

☐ I hereby certify that I am a member of the Bar of the United States District Court, Central District of California.
☐ I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.
☒ I hereby certify under the penalty of perjury that the foregoing is true and correct.

*Barbara McGarvey*
*Signature of Person Making Service*

### ACKNOWLEDGEMENT OF SERVICE

I, _____, received a true copy of the within document on _____.

_____          _____
*Signature*                        *Party Served*

CV-40 (01/00)                    **PROOF OF SERVICE - ACKNOWLEDGMENT OF SERVICE**