FILED

MAR 09 2026

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

David Samuel, Pro Se
Sydney Roberts, Pro Se
108 Rinetti Way
Rio Linda, CA 95673
512-522-8571
edfed@possiblymaybe.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS<br><br>DAVID TYRONE SAMUEL,<br><br>Plaintiffs,<br><br>v.<br><br>SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY ET AL.,<br><br>Defendants | Case No: 2:22-cv-01699 DJC AC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT; PLAINTIFFS' ADDITIONAL MATERIAL FACTS; EVIDENTIARY OBJECTIONS; RULE 56(d) REQUEST; DECLARATION OF DAVID SAMUEL; AND EXHIBIT LIST** |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

1)      This case is not about a single, cured error. It is about repeated written refusals of requested accommodations, repeated failures to provide the hearing process that was supposed to review those refusals, and continued obstruction of actual voucher use even after SHRA's March 20, 2023 partial approval. Defendants ask the Court to overlook three separate written denials and treat later process failures as though they were the first moment at which discrimination could exist. That is not the law and it is not the record.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ - 1**

2)    The July 8, 2022 denial, the November 16, 2022 denial, and the April 3, 2023 denial were each completed discriminatory acts when issued. The later hearing failures matter because they denied review of those completed refusals and caused additional harm. The record further shows that SHRA repeatedly refused accommodations without individualized assessment or meaningful interactive process, denied effective communication under a head-of-household-only rule that conflicts with Title II and Section 504, and failed to comply with 24 C.F.R. § 982.555 in administering the hearing process. Defendants' motion should be denied.

**ARGUMENT**

**I. The written denials were the discriminatory acts.**

3)    Under the Fair Housing Act, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). For ADA Title II and Section 504, once a public entity knows accommodation is needed and refuses or fails to act after adequate notice, that refusal is actionable, and the entity must undertake a fact specific investigation rather than deny by inaction or speculation. See 28 C.F.R. § 35.160.

4)    That means the July 8, 2022 denial, the November 16, 2022 denial, and the April 3, 2023 denial were each already completed discriminatory acts when issued. SHRA's July 8, 2022 letter states the request is "hereby denied." (Ex. 4.) SHRA's November 16, 2022 letter again states the request is "hereby denied." (Ex. 10.) SHRA's April 3, 2023

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ** - 2

letter denies additional accommodation items, including the expanded housing request and email communication. (Ex. 16.)

5)   Defendants' March 20, 2023 cure theory is therefore backwards. At most, March 20 bears on whether some later harm was partly mitigated. It does not erase already completed refusals. Plaintiffs' March 21 response made that explicit by stating that the three-bedroom offer did not satisfy the requested accommodation need and that multiple denials still required hearing. (Ex. 14.)

**II. First track: May 2022 request, July 8 denial, September 12 hearing failure.**

6)   Plaintiffs and Ashley Valentine, Plaintiffs' housing social worker, were actively working in May 2022 to submit the accommodation request to SHRA, and Ashley confirmed she sent the form through the portal. (Ex. 3.) Plaintiffs executed a Kaiser ROI on May 19, 2022 identifying Dr. Michel Medina and Kaiser Permanente and describing the requested accommodation as an extra bedroom for management of disability symptoms for David and AIMS, isolated space for medical appointments, and school. (Ex. 1.) On May 31, 2022, Dr. Medina provided a physician statement that David would medically benefit from having an additional room. (Ex. 2.)

7)   SHRA's own training required staff to move the request forward once the forms were returned. SHRA trained staff that accommodation requests could be made at any time and in any format, that staff should send Kaiser verification materials directly to the provider, that staff should log those steps, and that staff should never ask for or log the nature of the disability. (Ex. 28.)

8)   SHRA did not follow its own process. Dr. Medina later stated SHRA had not contacted him and that he checked his physical mailbox and still had nothing from

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ - 3**

SHRA. (Ex. 5.) Once SHRA had notice that accommodation was needed, it was required to investigate and gather enough information to make a reasoned, fact specific decision. See 28 C.F.R. § 35.160.

9) SHRA's July 8, 2022 denial was therefore already a completed discriminatory act. The later September 12 hearing failure did not create discrimination out of nothing. It denied review of a discrimination that had already occurred. (Ex. 4.)

10) After the September 12, 2022 hearing, Tanya Cruz informed Plaintiffs that the hearing could not be decided by Jonathan Lew and that Lew was unable to render a decision, even though Lew stated the hearing concluded successfully and instructed Plaintiffs to submit post-hearing briefing. Lew stated a decision would issue by September 28, 2022. (Ex. 7.) Defendants later disclosed that the hearing was recorded and identified Lew as the hearing officer, but they never produced the recording. (Ex. 33.) By May 2, 2023, MaryLiz Paulson was still asking internally where the hearing decision for this tenant could be found. (Ex. 22.)

**III. Second track: September 29, 2022 request, November 16 denial, hearing limbo.**

11) Plaintiffs' September 29, 2022 request was distinct and broader than the first track. It sought separate spaces for David and AIMS, email-only communication, housing-search assistance, and extension-related relief. (Ex. 8.) The same packet stated that the then-current landlord had determined the family would qualify under current payment standards for units which would fit some of their disability related needs with a higher payment standard, would hold such a unit for one week, and included an affordability worksheet concluding the unit at 1100 Howe Ave was approvable. (Ex. 9.)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ - 4**

12)     SHRA's November 16, 2022 denial of the September 29, 2022 request was a second completed discriminatory act. SHRA's own framing broadened the request to include both Plaintiffs, but the denial still relied on materially the same template logic as the July denial, including alternative sleeping arrangements and a living room may be used as a sleeping bedroom space. (Exs. 4, 10.)

13)     On December 9, 2022, SHRA acknowledged the hearing request, said the matter would likely be scheduled in January, and recognized that David had requested communication by email. (Ex. 11.) On December 12, 2022, Plaintiffs asked which denial the hearing would cover because there had already been multiple denials and the September hearing had produced no decision. (Ex. 11.) By February 1, 2023, Plaintiffs were expressly stating that the September request still included open payment-adjustment and communication items and remained unresolved. (Ex. 12.)

**IV. Third track: March 20 letter, March 21 objection, April 3 denial.**

14)     On March 20, 2023, SHRA approved a three-bedroom voucher so David and AIMS would have separate sleeping rooms and could share family space, while denying housekeeping. (Ex. 13.) Plaintiffs immediately responded that the offer did not satisfy the requested accommodation need, that the request was not for mere extra sleeping space, and that multiple denials still required hearing. Plaintiffs also clarified the expanded housing request as a five-bedroom structure tied to disability-related needs. (Ex. 14.)

15)     SHRA's internal March 29, 2023 committee notes show it was then addressing a broader set of requests, including additional room requests, blackout curtains, soundproofing, a housing list, housing-search assistance, email-only communication,

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ - 5**

and extensions. (Ex. 15.) On April 3, 2023, SHRA issued another denial. It denied separate bedrooms and denied email communication by asserting communications are directed to the head of household, while admitting that communication with David by email had occurred only as a courtesy. (Ex. 16.)

16)    That April 3, 2023 denial was already a third completed discriminatory act. The April 20, 2023 hearing shutdown denied review of that third refusal. (Ex. 16.)

17)    Defendants' March 20 cure theory misstates the FHA accommodation framework. The FHA makes unlawful a refusal to make reasonable accommodations in rules or policies when necessary to afford equal opportunity to use and enjoy a dwelling, and Ninth Circuit authority describes public agencies as having an affirmative duty to make such accommodations through modification of rules and policies. SHRA's July 8, November 16, and April 3 denials were therefore completed refusals when issued. A later partial approval may bear on mitigation or later damages, but it does not retroactively erase those earlier refusals.

18)    Furthermore, the argument that Plaintiffs suffered 'insufficient evidence of actual harm' invites this Court to impermissibly weigh evidence. The concrete emotional and financial distress suffered by Plaintiffs between the July 8, 2022 denial and the March 20, 2023 partial approval including the documented exacerbation of disability symptoms, the threat of imminent housing loss, and the out-of-pocket Papago rent increases creates a genuine dispute of material fact. At the summary judgment stage, the Court must draw all inferences of harm in Plaintiffs' favor. Whether Plaintiffs suffered 'enough' harm during that nine-month gap period is strictly a question of fact for the jury, not a matter for summary adjudication.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ - 6**

19)    The prejudice was concrete, not abstract. In September 2022, Plaintiffs had a presently available three-bedroom opportunity at 1100 Howe that SHRA's own affordability worksheet marked approvable, and the landlord was prepared to hold a qualifying unit briefly. SHRA nevertheless issued the November 16 denial. In March and April 2023, Plaintiffs then pursued the Arbors unit as an actual housing option addressing disability-related needs that remained unmet. Plaintiffs worked directly and through housing social worker Caitlyn Grabill, paid application-related costs, negotiated with the landlord, and repeatedly sought clarity from SHRA about why the unit was being delayed or denied. SHRA did not provide meaningful clarity. Instead, Arbors later informed Plaintiffs that SHRA had voided the RFTA, determined Plaintiffs were not eligible, and caused refund of only the $200 holding deposit. This caused lost housing opportunities, wasted application efforts, prolonged instability, and humiliation with landlords who had been led to believe the tenancy was viable.

**V. SHRA repeatedly refused accommodations without interactive process or individualized assessment.**

20)    The record does not show a genuine interactive process or individualized assessment. It shows repeated refusals without the investigation SHRA's own training required. SHRA trained staff that, if provider information was incomplete, the RACC should follow up for clarification and work interactively with the family before making a decision. (Ex. 28.) Yet SHRA did not contact Dr. Medina, despite having the ROI and provider information, and later denied the request anyway. (Exs. 1, 5.)

21)    Once SHRA had notice of the requested accommodation, it was not free to deny first and investigate later. Ninth Circuit law requires a public entity, upon receiving an

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ - 7**

accommodation request, to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation, and a denial without investigation is sufficient to defeat summary judgment where the record permits a finding of deliberate indifference. Here, SHRA had the ROI, provider information, and internal training directing follow-up for clarification, yet did not contact the provider before issuing denials. On this record, Defendants cannot obtain summary judgment by recasting non-investigation as lawful discretion.

22)    Discovery responses reinforce the same point. Henley admitted she coordinated the activities of the Reasonable Accommodation Compliance Committee, reviewed requests for completeness before sending them to the committee, is not a licensed medical professional or social worker, and admitted the request was questioned for completeness and clarity. (Exs. 46-47.)

**VI. Effective communication: SHRA's head-of-household-only rule violated Title II and Section 504.**

23)    Defendants' head-of-household-only communication theory is inconsistent with the governing regulations. Title II requires a public entity to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others; defines a companion as a family member, friend, or associate who is an appropriate person with whom the public entity should communicate; and requires appropriate auxiliary aids and services where necessary, with primary consideration given to the request of the individual with a disability. 28 C.F.R. § 35.160. HUD's Section 504 regulation likewise requires effective communication with applicants, beneficiaries, and members of the public and equally

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ - 8**

effective communication systems where the recipient communicates by telephone. 24 C.F.R. § 8.6.

24)    SHRA's actual conduct violated those standards and did so after explicit notice. SHRA internally tracked David's repeated request for email communication, denied email-only communication on head-of-household grounds, admitted that any email to David had only been as a courtesy, told staff not to email David directly, and instructed staff to continue calling instead. (Exs. 11, 23.) Plaintiffs repeatedly notified SHRA that its communication practices violated governing disability rules and that the issue remained unresolved, yet SHRA continued the same rule after explicit notice. (Ex. 12; Exs. 31-32.)

25)    Outside of the initial voucher-signing process, David was the only Plaintiff with whom SHRA actually communicated regarding the matters at issue here. The calls, emails, hearing-related communications, accommodation follow-up, and related voucher issues were handled through David, not through any separate, comparable course of communication with Sydney. That actual course of dealing matters because it undercuts SHRA's later attempt to justify denial of communication accommodations on the theory that only the head of household could be contacted. The record instead shows that SHRA itself treated David as the operative point of contact for the relevant issues, while later invoking a contrary rule to deny effective communication.

26)    Paulson's admissions strengthen this section. She admitted she received emails requesting communication accommodations, including email and real-time captioning, and admitted SHRA does not maintain a centralized or accessible database to log and monitor accommodation denials. (Exs. 39-42.)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ - 9**

27)     The September 12 sequence itself also undermines Defendants' new narrative. The hearing lasted approximately two hours. During that time, Lew made substantive rulings, including rejecting Cruz's attempt to submit an affidavit for Troy Lynch because Lynch was not present. When the hearing ended, Lew did not announce a medical emergency or a continuance. Instead, he instructed Plaintiffs to submit a post-hearing brief through SHRA for forwarding to him. Plaintiffs complied that same evening. Cruz then called on September 15 and stated only that no decision would issue. Plaintiffs immediately memorialized that sequence on September 16. A reasonable factfinder could conclude from that sequence that SHRA did not lawfully continue a hearing after a medical emergency, but failed to complete the hearing and later supplied a different explanation.

28)     Defendants do not dispute that SHRA enforced a head-of-household-only communication rule and used that rule to deny direct email communication with David while instructing staff to call instead. On this undisputed record, that categorical rule is incompatible with Title II's effective-communication framework. The governing regulations, which the Ninth Circuit treats as controlling, require communications with companions with disabilities to be as effective as communications with others and require primary consideration to the requested aid or service. SHRA therefore could not substitute an internal head-of-household designation for the federal effective-communication standard. At minimum, Defendants are not entitled to summary judgment on this issue as a matter of law.

29)     Under 28 C.F.R. § 35.160, a public entity must take appropriate steps to ensure that communications with applicants, participants, members of the public, and

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ - 10**

companions with disabilities are as effective as communications with others. The regulation defines "companion" to include a family member or associate who is an appropriate person with whom the public entity should communicate, and it requires the entity to give primary consideration to the aid or service requested by the individual with a disability. On this record, Defendants do not dispute that SHRA applied a head-of-household-only communication rule and used that rule to deny direct email communication with David while still communicating with him when convenient. That categorical rule is incompatible with Title II's effective-communication framework. The governing regulations are controlling unless contrary to statute, and they do not permit SHRA to substitute an internal administrative designation for the federally required, individualized effective-communication standard.  Because the policy and its application are undisputed, Defendants cannot obtain summary judgment by treating that rule as legally sufficient under Title II.

**VII. Hearing failures: 24 C.F.R. § 982.555 was violated, and SHRA controlled the April 20 session.**

30)     When a hearing is required, the PHA must proceed in a reasonably expeditious manner, must give the family the opportunity to examine directly relevant PHA documents before the hearing, and if the PHA does not make those documents available on request, it may not rely on them at the hearing. The hearing officer must issue a written decision stating briefly the reasons for the decision, and a copy must be furnished promptly to the family. 24 C.F.R. § 982.555.

31)     The September 12, 2022 hearing did not result in the prompt written decision required by HUD's hearing regulation, and Defendants' later "medical emergency /

lawful continuance" narrative conflicts with what Plaintiffs personally observed. The hearing began at approximately 10:00 a.m. and ended at approximately 12:00 p.m., plus or minus about five minutes. During the hearing, Lew made substantive rulings, including rejecting Tanya Cruz's attempt to present an affidavit on behalf of Troy Lynch because Lynch was not present. When the hearing ended, no medical emergency was announced, described, or otherwise apparent to Plaintiffs, and Lew instead directed Plaintiffs to submit a post-hearing brief through SHRA for forwarding to him. Plaintiffs complied that same evening. The September 16 memorialization says only that Cruz later informed Plaintiffs the matter could not be decided, with no medical-emergency explanation. (Ex. 7.) Defendants later disclosed the recording and identified Lew, but withheld the recording. (Ex. 33.) By May 2, 2023, Paulson was still asking where the hearing decision could be found. (Ex. 22.)

30)     The April 20, 2023 hearing failure was even clearer. Plaintiffs requested the case file, witness information, recording, and voice-to-text accommodation before the hearing. (Ex. 18.) SHRA replied that the hearing would be recorded and an electronic copy could be provided. (Ex. 18.) Plaintiffs documented that Tanya Cruz cancelled the hearing after a private discussion, that Plaintiffs objected, and that Plaintiffs were ready to proceed rather than reschedule. (Ex. 19.) SHRA's own hearing-result form then confirmed that the case file had not been provided, Plaintiffs objected to rescheduling, and the hearing officer ended the matter because due process review was incomplete. (Ex. 21.)

32)     The April 20 transcript is significant because it shows not only a defective hearing, but SHRA staff effectively driving termination of the session over Plaintiffs'

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ - 12**

objection. Cruz's own admissions match that record. She admitted she attended the hearing, told Plaintiffs it would be cancelled and rescheduled, did not provide a written decision or explanation, and participated in internal SHRA discussions regarding hearing requests or accommodations. (Ex. 43.) This was not a harmless scheduling problem. It was a second failed hearing that prolonged the effect of the earlier denials, prevented timely review, and further impaired Plaintiffs' ability to secure housing while actual opportunities remained time-sensitive.

**VIII. Papago shows that after March 20 SHRA still obstructed actual use of the voucher.**

33)    Papago was not merely a neutral rent-calculation issue. SHRA's own records show address uncertainty, unit-number confusion, apartment-versus-duplex concern, and a rerun using the correct voucher size, which SHRA employee Leah Shaw acknowledged and apologized for to her supervisors. (Ex. 24.)

34)    SHRA's own log shows the Papago rent increased during the delay. (Ex. 24.) Plaintiffs submitted a distinct May 19, 2023 accommodation request for a rent-reasonableness adjustment, and the process was opaque not only to Plaintiffs but also to the family's housing social worker Caitlyn Grabill and landlord Greystar. (Exs. 25-27.) Plaintiffs also compiled contemporaneous rental information showing that available three-bedroom inventory in 95843 remained in the same general range as the Arbors. (Ex. 27.) This opacity caused concrete harm. Plaintiffs worked through SHRA directly and through social workers, paid application-related costs, negotiated with landlords, and repeatedly sought a clear explanation for why the unit was failing or why the process was taking so long. SHRA did not provide one. Arbors ultimately informed

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ - 13**

Plaintiffs that SHRA had voided the RFTA, determined Plaintiffs were not eligible for the home, and would refund only the $200 holding deposit, leaving Plaintiffs to explain SHRA's reversal to a landlord who had been actively working with them.

35)     The September 2022 accommodation request was not abstract. The September 29, 2022 packet stated that the then-current landlord had determined the family qualified under current payment standards for units larger than two bedrooms and had agreed to hold the unit aside for one week pending proof that a voucher-size upgrade was in process. (Ex. 9.) The accompanying affordability worksheet for 1100 Howe concluded that the three-bedroom unit was approvable. (Ex. 9.) SHRA's later November 16 denial therefore did not merely reject a theory of accommodation. It foreclosed a concrete housing opportunity that was then available.

**IX. SHRA had extensive notice and training, and still repeated the same violations.**

36)     The record shows these were not accidental one-off errors committed in ignorance of the governing rules. In the 2020 HUD Conciliation Agreement / Voluntary Compliance Agreement, SHRA agreed that all employees in its Public Housing and Housing Choice Voucher units would receive fair-housing training with an emphasis on reasonable accommodations and separate training on SHRA's own accommodation procedures and practices. (Ex. 34.)

37)     In that same agreement, SHRA acknowledged that it must process accommodation requests in a reasonably timely manner and in compliance with the FHA, Section 504, and Title II. (Ex. 34.) SHRA also acknowledged duties relating to effective communication and due-process grievance standards. (Ex. 34.)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ - 14

38)    Separately, the HUD/DOJ Joint Statement on Reasonable Accommodations explains that a reasonable accommodation is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling, and that a housing provider violates the FHA by refusing such an accommodation when the statutory criteria are met. HUD and DOJ, Joint Statement on Reasonable Accommodations under the Fair Housing Act (May 17, 2004). (Ex. 35.)

39)    Discovery admissions make the notice point even stronger. Dozier admitted SHRA is a public entity subject to Title II, admitted she signed SHRA's Voluntary Compliance Agreement with HUD, and admitted that the agreement requires SHRA to provide effective communication and accessible grievance procedures under Section 504 and the ADA. She also admitted in part that, as Executive Director, she had authority to review decisions related to informal hearings and reasonable accommodations and act appropriately where decisions deviated from the Administrative Plan, and admitted SHRA has no written policy requiring reasonable-accommodation complaints or hearing cancellations to be logged and tracked by Executive Management or Human Resources. (Exs. 36-38.)

40)    Paulson admitted she is the Section 504 coordinator for the Housing Choice Voucher program and admitted she is a member of the Reasonable Accommodation Compliance Committee that reviews and makes determinations on reasonable-accommodation requests. (Exs. 39-42.)

**X. Castillo's declaration and the no depositions were taken theme do not create entitlement to judgment.**

41)    Castillo's declaration is weak where it matters. It asserts no depositions were taken, there is no admissible evidence that Plaintiffs were denied a benefit, and there is no admissible evidence of statutory violations. (See Castillo Decl.) Those are litigation conclusions, not genuine evidentiary foundations.

42)    The no depositions were taken point is also misleading. Plaintiffs did not simply decline deposition discovery. Throughout May to July 2025, Defendants were still failing to provide substantive discovery, had not fully identified responsive witnesses, offered certain PMKs only on compressed notice, and later tried to surface Lew only after discovery closed. (Exs. 30-32.)

43)    Defendants' own discovery responses reinforce that problem. SHRA repeatedly objected to discovery as overbroad, vague, ambiguous, and not reasonably calculated to lead to admissible evidence, then limited its responses or referred Plaintiffs elsewhere. (Exs. 49-50.)

## XI. Admissibility of Defendants' own produced records.

44)    Defendants' refrain that Plaintiffs have no admissible evidence is incorrect. Plaintiffs rely principally on documents Defendants themselves produced in discovery. Those materials may be authenticated under Rule 901 by Defendants' production, Bates labeling, distinctive characteristics, and supporting declarations tying the exhibits to Defendants' production. Rule 56 expressly permits factual positions to be supported with documents, electronically stored information, declarations, admissions, interrogatory answers, and other materials. Fed. R. Civ. P. 56(c). If a declaration is used, it must be based on personal knowledge and set out facts that would be admissible in evidence. Fed. R. Civ. P. 56(c)(4). Statements by SHRA employees on

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ - 16**

matters within the scope of their employment are opposing-party statements under Federal Rule of Evidence 801(d)(2), and SHRA's routinely kept operational records may also be presented in admissible form under Rules 803(6) or 803(8) where applicable.

45) Defendants cannot produce these records in discovery and then pretend they are categorically unusable at summary judgment.

## XII. In the alternative, Plaintiffs request limited Rule 56(d) relief.

46) Defendants' theory that the September 12, 2022 hearing was lawfully continued due to a medical emergency appears for the first time in the present motion. Defendants did not previously assert that theory when earlier opportunities existed to do so, and they did not disclose Mr. Lew's alleged medical emergency as a defense theory or as significant information supporting any defense (Ex. 33). The timing of that assertion further undermines its reliability and confirms that it is being offered as a post hoc justification rather than a contemporaneously asserted explanation.

47) For the later blocks addressing hearing, due process, equal protection, and related rights, the same record shows that the September 12 hearing produced no timely decision, the April 20 hearing was shut down after SHRA failed to provide the case file and accommodations, and Defendants still withhold the September 12 recording after disclosing its existence. The same record also shows selective and inconsistent treatment of disability-related requests, including the head-of-household-only communication rule and repeated narrowing of disability accommodation requests into non-disability administrative categories. Plaintiffs therefore incorporate their earlier responses and Additional Material Facts rather than repeating identical factual disputes under different headings.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ - 17**

48)    It would be error to grant summary judgment while Defendants withhold the best evidence of the September 12 hearing. The Ninth Circuit has held that where an existing recording could be dispositive, the court may not grant summary judgment without first addressing the plaintiff's Rule 56(d) request for that evidence. Defendants disclosed that the September 12 hearing was recorded and now rely on a new 'medical emergency / lawful continuance' narrative to seek judgment. Plaintiffs cannot fairly test that narrative without the recording, related metadata, and post-hearing communications. If the Court does not deny the motion outright, it should defer ruling and order immediate production of that limited evidence.

## EVIDENTIARY OBJECTIONS

49)    Plaintiffs formally object to the Declaration of MaryLiz Paulson under Federal Rules of Evidence 602 (Lack of Personal Knowledge) and 802 (Hearsay), specifically regarding any assertion that the September 12, 2022 hearing officer suffered a 'medical emergency' or was 'unable to return to work.' By her own admission, Paulson states only that she 'eventually learned' of these purported facts (Ex. 22). She was not the hearing officer and does not establish that she was present during the hearing. The Court cannot rely on inadmissible, second-hand hearsay to establish an 'undisputed fact' that the September 12 hearing was lawfully continued rather than unlawfully abandoned.

50)    Plaintiffs object to Castillo's declaration to the extent it offers legal conclusions such as there is no admissible evidence of denial, discrimination, or statutory violation.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ - 18**

_David Samuel_

David Samuel
March 8, 2026


_Sydney Roberts_

Sydney Roberts
March 8, 2026

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MSJ - 19**

PROOF OF SERVICE

I, David Tyrone Samuel, declare:

I am a plaintiff in this action and am over the age of 18. My address is 108 Rinetti Way, Rio Linda, California 95673.

On March 9, 2026, I served a true and correct copy of the following documents:

1. Plaintiffs' Opposition to Defendants' Motion for Summary Judgment
2. Plaintiffs' Response to Defendants' Separate Statement and Plaintiffs' Additional Material Facts
3. Declaration of David Samuel in Support of Rule 56(d) Request
4. Plaintiffs' Exhibit List

I served these documents by electronic mail from Rio Linda, California, to:

Edward P. Garson
Wilson Elser Moskowitz Edelman & Dicker LLP
Edward.Garson@WilsonElser.com

Monica Castillo
Wilson Elser Moskowitz Edelman & Dicker LLP
Monica.Castillo@WilsonElser.com

I did not receive, within a reasonable time after transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 9, 2026, at Rio Linda, California.

*David Samuel*

David Tyrone Samuel
Plaintiff, Pro Se

David Samuel, Pro Se
Sydney Roberts, Pro Se
108 Rinetti Way
Rio Linda, CA 95673
512-522-8571
edfed@possiblymaybe.com

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS<br><br>DAVID TYRONE SAMUEL,<br><br>Plaintiffs,<br><br>v.<br><br>SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY ET AL.,<br><br>Defendants | Case No: 2:22-cv-01699 DJC AC<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT** |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT

Plaintiffs submit the following response to Defendants' Separate Statement in compliance with Local Rule 260(b), followed by Plaintiffs' Additional Material Facts.

**ISSUE 1**

**Plaintiffs' Cause of Action for violations of the Fair Housing Act, 42 U.S.C. §§ 3602, 3604.**

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| 1. On November 15, 2022, Plaintiffs filed their Third Amended Complaint (TAC). The TAC asserts causes of action for violations of | Undisputed in part; disputed in part. Undisputed that the TAC contains the allegations Defendants summarize. Disputed to the extent Fact 1 is presented as a |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 1

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| the Americans with Disabilities Act, the Fair Housing Act, the Rehabilitation Act and the 14th 1. Amendment's Equal Protection and Due Process Clauses. The TAC prays for general damages and statutory penalties in excess of $7.75 million, punitive damages, declarative and injunctive relief. The TAC alleges sometime prior to May 18, 2022, Plaintiffs requested from Defendants an extra bedroom as a reasonable accommodation. Plaintiffs allege a supervisor of Defendants denied the request and thus denied Plaintiffs equal opportunity to use their housing voucher. The TAC further alleges that on May 19, 2022, Plaintiffs submitted a written, reasonable accommodation request which was denied on or about July 15, 2022. The TAC alleges that between the time of the request and the denial, Defendants failed to engage in an interactive process. The TAC alleges Plaintiffs made several written and verbal requests to have a hearing on the denial of their request for an additional bedroom. A Zoom hearing was held on September 12, 2022. Plaintiffs allege they were restricted by lack of proper notice from Defendants and hearing rules regarding evidence. *Supporting Evidence: RJN Ex. A, Third Amended Complaint, Dkt. 11.* | complete or accurate statement of the material facts because it omits the failure to issue a decision after the September 12, 2022 hearing, the distinct September 29, 2022 request, the November 16, 2022 denial addressing both David and AIMS, the March 21, 2023 objection to the March 20 letter, the April 3, 2023 additional denials, and SHRA's continued obstruction of actual voucher use after March 20, 2023. |
| 2. On March 20, 2023, Plaintiffs' request for an additional bedroom was granted. Plaintiffs' new request | Undisputed in part; disputed in part. Undisputed that on March 20, 2023 SHRA issued a letter stating that one additional |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 2

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| for housekeeping services was denied as it required a fundamental change in the program and presented an undue hardship. A letter was sent to Plaintiffs informing them they would be issued a three bedroom voucher.<br><br>*Supporting Evidence: Ex. A to Index of Evidence; Castillo Decl. ¶ 4.* | bedroom would be approved and housekeeping would be denied, and that Plaintiffs would be issued a three-bedroom voucher. (Ex. 13.) Disputed to the extent Defendants imply this cured prior denials or resolved the accommodation dispute. Plaintiffs immediately responded that the three-bedroom offer did not satisfy the requested accommodation need and that multiple denials still required hearing. (Ex. 14.) SHRA then issued additional denials on April 3, 2023. (Ex. 16.) |
| 3. On or about December 4, 2023, Defendants filed their Answer to the TAC. They denied each allegation of the TAC.<br><br>*Supporting Evidence: RJN Ex. B, Dkt. 49.* | Undisputed as a procedural fact only. |
| 4. On August 14, 2024, this Court terminated AIMS and DAYS as Plaintiffs in this matter.<br><br>*Supporting Evidence: RJN Ex. C, Aug. 14, 2024 Order, Dkt. 64.* | Undisputed as a procedural fact only. |
| 5. On November 4, 2024, Defendants served Plaintiffs with Requests for Admission, Set One.<br><br>*Supporting Evidence: Castillo Decl. ¶ 5; Exs. B-1, B-2.* | Undisputed as a procedural fact only. |
| 6. On or about March 6, 2025, Defendants filed their Motion for Summary Judgment based on Plaintiffs' failure to respond to Request for Admissions.<br><br>*Supporting Evidence: RJN Ex. D, Dkt. 83.* | Undisputed as a procedural fact only. |
| 7. On or about April 9, 2025, Plaintiffs filed a Motion to Withdraw Deemed Admissions. | Undisputed as a procedural fact only. |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 3**

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| Supporting Evidence: RJN Ex. E, Dkt. 88. | |
| 8. On or about May 15, 2025, this Court issued its Minute Order. The Court granted Plaintiffs' Motion to Withdraw admissions and deemed admitted Plaintiffs' filed responses. The Court denied Defendants' motion for summary judgment without prejudice, as it relied heavily on Plaintiffs' non-responses to the request for admissions, non-responses which were then deemed withdrawn.<br><br>Supporting Evidence: RJN Ex. F, May 15, 2025 Minute Order. | Undisputed as a procedural fact only, including that the Court later permitted withdrawal of deemed admissions and denied Defendants' earlier summary judgment motion without prejudice because it relied heavily on the prior nonresponses. |
| 9. Plaintiffs' deemed-admitted Requests for Admissions were all denials, including that Plaintiffs' requested relief for an injunction approving the housing adjustment reasonable accommodation was moot and that Plaintiffs' requested relief for civil penalties and punitive damages was moot, among others.<br><br>Supporting Evidence: RJN Ex. E, Ex. A. | Undisputed in part; disputed in part. Undisputed that the earlier deemed-admitted RFAs were denials. Disputed to the extent Defendants imply the deemed-admitted posture remained operative after withdrawal. |
| 10. On or about May 27, 2025, Defendants produced documents responsive to Plaintiffs' document request.<br><br>Supporting Evidence: Ex. C to Index of Evidence; Castillo Decl. ¶ 6. | Undisputed in part; disputed in part. Undisputed that Defendants produced the listed letters and notices. Disputed to the extent Fact 10 omits that those very documents show multiple distinct denials, continuing hearing confusion, and an April 3 denial of email communication on head-of-household grounds. |
| 11. On or about September 30, 2025, Plaintiffs produced numerous documents, including several emails between Plaintiff Samuel | Disputed. Defendants' characterization that Plaintiffs' April 28, 2023 email fails to address the complex calculations of approved rent SHRA must undertake is argument, not an |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 4

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| and Sacramento Self Help employees and Defendants regarding call-back requests; Plaintiff Samuel's 4/28/2023 email to Defendants regarding SHRA's denial of a rental application due to rent exceeding approval payment standards fails to address the complex calculations of approved rent SHRA must undertake. *Supporting Evidence: Ex. D to Index of Evidence; Castillo Decl. ¶ 7.* | undisputed fact. The Papago record reflects wrong voucher size, address uncertainty, duplex/apartment concern, reruns, and later price increase. (Ex. 24.) |
| 12. On or about September 29, 2025, Plaintiffs produced supplemental documents including numerous HUD guidelines unrelated to the subject case issues, HUD Fair Housing and Non-Discrimination Requirements, and a HUD/DOJ Joint Statement on the grounds for denials of reasonable accommodation requests. *Supporting Evidence: Ex. E to Index of Evidence; Castillo Decl. ¶ 8.* | Undisputed in part; disputed in part. Undisputed that Plaintiffs produced HUD and fair-housing materials, including the HUD/DOJ Joint Statement. Disputed to the extent Defendants imply those materials are irrelevant or unrelated because they bear directly on accommodation denials and effective communication. |
| 13. No depositions were taken in this matter. *Supporting Evidence: Castillo Decl. ¶ 9.* | Undisputed in part; disputed in part. Undisputed that no depositions were completed. Disputed to the extent Defendants imply witness access was freely available or that the absence of depositions was a neutral choice. Defendants were still withholding substantive discovery and key witness access while offering some witnesses only on compressed notice and later surfaced Lew only after discovery closed. (Exs. 30-32.) |
| 14. Fact discovery is now closed. *Supporting Evidence: RJN Ex. G, Jan. 15, 2026 Order.* | Undisputed only that Defendants cite later docket or status materials in support of a post-fact-discovery posture. Disputed to the extent Defendants use that posture to convert a discovery-access problem of their own making into an evidentiary defect. |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 5**

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| 15. There is no admissible evidence that Plaintiffs were denied a benefit.<br><br>*Supporting Evidence: Castillo Decl. ¶ 10.* | Disputed. The written denials are themselves direct evidence that Plaintiffs were denied the benefit of the requested accommodations. SHRA's July 8, 2022 letter states the request is hereby denied. (Ex. 4.) SHRA's November 16, 2022 letter again states the request is hereby denied. (Ex. 10.) SHRA's April 3, 2023 letter denies additional accommodation items, including the expanded housing request and email communication. (Ex. 16.) Those denials are the discriminatory acts. The later hearing failures, withheld recording, and post-March obstruction aggravate and confirm the injury, but they are not the point at which discrimination first arose. |
| 16. While the September 12, 2022 hearing regarding the denial of Plaintiffs' reasonable accommodation request was taking place, the hearing officer had a medical emergency and the hearing had to be ended. The medical emergency rendered the hearing officer unable to return to work. MaryLiz Paulson, the Director of the Housing Choice Voucher program at SHRA, then commenced the procurement process to hire a new hearing officer. The procurement process is lengthy, needs to follow governmental regulations, and can often take months to locate a suitable contractor. The hearing continued in April 2023 when SHRA had a new hearing officer under contract.<br><br>*Supporting Evidence: Paulson Decl. ¶¶ 1, 3-5.* | Disputed. Defendants' medical emergency or continued-hearing narrative is not reliably supported. Plaintiffs' contemporaneous September 16 memorialization states only that Cruz informed them the matter could not be decided, with no medical-emergency explanation. (Ex. 7.) SHRA's April 20 hearing brief later said only that the September hearing officer was unable to complete the process and that the matter was postponed, not that there was a medical emergency or inability to return to work. Defendants' own brief then adds that Paulson eventually learned the officer could not return to work. By May 2, 2023, Paulson herself was still asking where the hearing decision could be found. (Ex. 22.) Defendants also disclosed the September 12 recording and have withheld it. (Ex. 33.) |
| 17. There is no admissible evidence of Defendants' violation of the Fair Housing Act, 42 U.S.C. §§ 3602, | Disputed. Under the FHA, a refusal to make a necessary reasonable accommodation is discrimination. 42 U.S.C. § 3604(f)(3)(B). |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 6

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| **3604.**<br>*Supporting Evidence: Castillo Decl. ¶ 11.* | SHRA issued repeated written refusals on July 8, 2022, November 16, 2022, and April 3, 2023. (Exs. 4, 10, 16.) The hearing failures, withheld recording, and post-March obstruction are additional evidence, not the point at which discrimination first arose. |

ISSUE 2

Plaintiffs' Cause of Action for violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| 18. On November 15, 2022, **Plaintiffs filed their Third Amended Complaint (TAC). The TAC asserts causes of action for violations of the Americans with Disabilities Act, the Fair Housing Act, the Rehabilitation Act and the 14th Amendment's Equal Protection and Due Process Clauses. The TAC prays for general damages and statutory penalties in excess of $7.75 million, punitive damages, declarative and injunctive relief. The TAC alleges sometime prior to May 18, 2022, Plaintiffs requested from Defendants an extra bedroom as a reasonable accommodation. Plaintiffs allege a supervisor of Defendants denied the request and thus denied Plaintiffs equal opportunity to use their housing voucher. The TAC further alleges that on May 19, 2022, Plaintiffs submitted a written, reasonable** | Undisputed in part; disputed in part. Undisputed that the TAC contains the allegations Defendants summarize. Disputed to the extent Fact 1 is presented as a complete or accurate statement of the material facts because it omits the failure to issue a decision after the September 12, 2022 hearing, the distinct September 29, 2022 request, the November 16, 2022 denial addressing both David and AIMS, the March 21, 2023 objection to the March 20 letter, the April 3, 2023 additional denials, and SHRA's continued obstruction of actual voucher use after March 20, 2023. |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 7

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| accommodation request which was denied on or about July 15, 2022. The TAC alleges that between the time of the request and the denial, Defendants failed to engage in an interactive process. The TAC alleges Plaintiffs made several written and verbal requests to have a hearing on the denial of their request for an additional bedroom. A Zoom hearing was held on September 12, 2022. Plaintiffs allege they were restricted by lack of proper notice from Defendants and hearing rules regarding evidence. *Supporting Evidence: RJN Ex. A, Third Amended Complaint, Dkt. 11.* | |
| 19. On March 20, 2023, Plaintiffs' request for an additional bedroom was granted. Plaintiffs' new request for housekeeping services was denied as it required a fundamental change in the program and presented an undue hardship. A letter was sent to Plaintiffs informing them they would be issued a three bedroom voucher. *Supporting Evidence: Ex. A to Index of Evidence; Castillo Decl. ¶ 4.* | Undisputed in part; disputed in part. Undisputed that on March 20, 2023 SHRA issued a letter stating that one additional bedroom would be approved and housekeeping would be denied, and that Plaintiffs would be issued a three-bedroom voucher. (Ex. 13.) Disputed to the extent Defendants imply this cured prior denials or resolved the accommodation dispute. Plaintiffs immediately responded that the three-bedroom offer did not satisfy the requested accommodation need and that multiple denials still required hearing. (Ex. 14.) SHRA then issued additional denials on April 3, 2023. (Ex. 16.) |
| 20. On or about December 4, 2023, Defendants filed their Answer to the TAC. They denied each allegation of the TAC. *Supporting Evidence: RJN Ex. B, Dkt. 49.* | Undisputed as a procedural fact only. |
| 21. On August 14, 2024, this Court | Undisputed as a procedural fact only. |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 8

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| terminated AIMS and DAYS as Plaintiffs in this matter. *Supporting Evidence: RJN Ex. C, Aug. 14, 2024 Order, Dkt. 64.* | |
| 22. On November 4, 2024, Defendants served Plaintiffs with Requests for Admission, Set One. *Supporting Evidence: Castillo Decl. ¶ 5; Exs. B-1, B-2.* | Undisputed as a procedural fact only. |
| 23. On or about March 6, 2025, Defendants filed their Motion for Summary Judgment based on Plaintiffs' failure to respond to Request for Admissions. *Supporting Evidence: RJN Ex. D, Dkt. 83.* | Undisputed as a procedural fact only. |
| 24. On or about April 9, 2025, Plaintiffs filed a Motion to Withdraw Deemed Admissions. *Supporting Evidence: RJN Ex. E, Dkt. 88.* | Undisputed as a procedural fact only. |
| 25. On or about May 15, 2025, this Court issued its Minute Order. The Court granted Plaintiffs' Motion to Withdraw admissions and deemed admitted Plaintiffs' filed responses. The Court denied Defendants' motion for summary judgment without prejudice, as it relied heavily on Plaintiffs' non-responses to the request for admissions, non-responses which were then deemed withdrawn. *Supporting Evidence: RJN Ex. F, May 15, 2025 Minute Order.* | Undisputed as a procedural fact only, including that the Court later permitted withdrawal of deemed admissions and denied Defendants' earlier summary judgment motion without prejudice because it relied heavily on the prior nonresponses. |
| 26. Plaintiffs' deemed-admitted Requests for Admissions were all denials, including that Plaintiffs' | Undisputed in part; disputed in part. Undisputed that the earlier deemed-admitted RFAs were denials. Disputed to the extent |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 9

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| requested relief for an injunction approving the housing adjustment reasonable accommodation was moot and that Plaintiffs' requested relief for civil penalties and punitive damages was moot, among others. *Supporting Evidence: RJN Ex. E, Ex. A.* | Defendants imply the deemed-admitted posture remained operative after withdrawal. |
| 27. On or about May 27, 2025, Defendants produced documents responsive to Plaintiffs' document request. *Supporting Evidence: Ex. C to Index of Evidence; Castillo Decl. ¶ 6.* | Undisputed in part; disputed in part. Undisputed that Defendants produced the listed letters and notices. Disputed to the extent Fact 10 omits that those very documents show multiple distinct denials, continuing hearing confusion, and an April 3 denial of email communication on head-of-household grounds. |
| 28. On or about September 30, 2025, Plaintiffs produced numerous documents, including several emails between Plaintiff Samuel and Sacramento Self Help employees and Defendants regarding call-back requests; Plaintiff Samuel's 4/28/2023 email to Defendants regarding SHRA's denial of a rental application due to rent exceeding approval payment standards fails to address the complex calculations of approved rent SHRA must undertake. *Supporting Evidence: Ex. D to Index of Evidence; Castillo Decl. ¶ 7.* | Disputed. Defendants' characterization that Plaintiffs' April 28, 2023 email fails to address the complex calculations of approved rent SHRA must undertake is argument, not an undisputed fact. The Papago record reflects wrong voucher size, address uncertainty, duplex/apartment concern, reruns, and later price increase. (Ex. 24.) |
| 29. On or about September 29, 2025, Plaintiffs produced supplemental documents including numerous HUD guidelines unrelated to the subject case issues, HUD Fair Housing and Non-Discrimination Requirements, and a HUD/DOJ Joint Statement on the | Undisputed in part; disputed in part. Undisputed that Plaintiffs produced HUD and fair-housing materials, including the HUD/DOJ Joint Statement. Disputed to the extent Defendants imply those materials are irrelevant or unrelated because they bear directly on accommodation denials and effective communication. |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 10

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| grounds for denials of reasonable accommodation requests.<br><br>*Supporting Evidence: Ex. E to Index of Evidence; Castillo Decl. ¶ 8.* | |
| **30. No depositions were taken in this matter.**<br><br>*Supporting Evidence: Castillo Decl. ¶ 9.* | Undisputed in part; disputed in part. Undisputed that no depositions were completed. Disputed to the extent Defendants imply witness access was freely available or that the absence of depositions was a neutral choice. Defendants were still withholding substantive discovery and key witness access while offering some witnesses only on compressed notice and later surfaced Lew only after discovery closed. (Exs. 30-32.) |
| **31. Fact discovery is now closed.**<br><br>*Supporting Evidence: RJN Ex. G, Jan. 15, 2026 Order.* | Undisputed only that Defendants cite later docket or status materials in support of a post-fact-discovery posture. Disputed to the extent Defendants use that posture to convert a discovery-access problem of their own making into an evidentiary defect. |
| **32. There is no admissible evidence that Plaintiffs were denied a benefit.**<br><br>*Supporting Evidence: Castillo Decl. ¶ 10.* | Disputed. The written denials are themselves direct evidence that Plaintiffs were denied the benefit of the requested accommodations. SHRA's July 8, 2022 letter states the request is hereby denied. (Ex. 4.) SHRA's November 16, 2022 letter again states the request is hereby denied. (Ex. 10.) SHRA's April 3, 2023 letter denies additional accommodation items, including the expanded housing request and email communication. (Ex. 16.) Those denials are the discriminatory acts. The later hearing failures, withheld recording, and post-March obstruction aggravate and confirm the injury, but they are not the point at which discrimination first arose. |
| **33. While the September 12, 2022 hearing regarding the denial of Plaintiffs' reasonable accommodation request was taking place, the hearing officer had a** | Disputed. Defendants' medical emergency or continued-hearing narrative is not reliably supported. Plaintiffs' contemporaneous September 16 memorialization states only that Cruz informed them the matter could not |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 11

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| medical emergency and the hearing had to be ended. The medical emergency rendered the hearing officer unable to return to work. MaryLiz Paulson, the Director of the Housing Choice Voucher program at SHRA, then commenced the procurement process to hire a new hearing officer. The procurement process is lengthy, needs to follow governmental regulations, and can often take months to locate a suitable contractor. The hearing continued in April 2023 when SHRA had a new hearing officer under contract.<br><br>Supporting Evidence: Paulson Decl. ¶¶ 1, 3-5. | be decided, with no medical-emergency explanation. (Ex. 7.) SHRA's April 20 hearing brief later said only that the September hearing officer was unable to complete the process and that the matter was postponed, not that there was a medical emergency or inability to return to work. Defendants' own brief then adds that Paulson eventually learned the officer could not return to work. By May 2, 2023, Paulson herself was still asking where the hearing decision could be found. (Ex. 22.) Defendants also disclosed the September 12 recording and have withheld it. (Ex. 33.) |
| 34. There is no admissible evidence of Defendants' violation of the Americans with Disabilities Act.<br><br>Supporting Evidence: Castillo Decl. ¶ 11. | Disputed. SHRA's own records show repeated accommodation denials, denial of direct email communication on head-of-household grounds, failure to conduct the required individualized inquiry after notice, failure to provide the case file before the April 20, 2023 hearing, and withholding of the September 12, 2022 recording after disclosing its existence. (Exs. 4, 10, 16, 21, 22, 33.) Those records are admissible evidence of ADA-related violations and cannot be converted into no evidence by labeling them insufficient. |

**ISSUE 3**

Plaintiffs' Cause of Action for violations of the Rehabilitation Act, 29 U.S.C. §§ 701, 794, 504.

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 12

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| 35. On November 15, 2022, Plaintiffs filed their Third Amended Complaint (TAC). The TAC asserts causes of action for violations of the Americans with Disabilities Act, the Fair Housing Act, the Rehabilitation Act and the 14th Amendment's Equal Protection and Due Process Clauses. The TAC prays for general damages and statutory penalties in excess of $7.75 million, punitive damages, declarative and injunctive relief. The TAC alleges sometime prior to May 18, 2022, Plaintiffs requested from Defendants an extra bedroom as a reasonable accommodation. Plaintiffs allege a supervisor of Defendants denied the request and thus denied Plaintiffs equal opportunity to use their housing voucher. The TAC further alleges that on May 19, 2022, Plaintiffs submitted a written, reasonable accommodation request which was denied on or about July 15, 2022. The TAC alleges that between the time of the request and the denial, Defendants failed to engage in an interactive process. The TAC alleges Plaintiffs made several written and verbal requests to have a hearing on the denial of their request for an additional bedroom. A Zoom hearing was held on September 12, 2022. Plaintiffs allege they were restricted by lack of proper notice from Defendants and hearing rules regarding evidence. *Supporting Evidence: RJN Ex. A, Third Amended* | Undisputed in part; disputed in part. Undisputed that the TAC contains the allegations Defendants summarize. Disputed to the extent Fact 1 is presented as a complete or accurate statement of the material facts because it omits the failure to issue a decision after the September 12, 2022 hearing, the distinct September 29, 2022 request, the November 16, 2022 denial addressing both David and AIMS, the March 21, 2023 objection to the March 20 letter, the April 3, 2023 additional denials, and SHRA's continued obstruction of actual voucher use after March 20, 2023. |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 13**

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| *Complaint, Dkt. 11.* | |
| **36. On March 20, 2023, Plaintiffs' request for an additional bedroom was granted. Plaintiffs' new request for housekeeping services was denied as it required a fundamental change in the program and presented an undue hardship. A letter was sent to Plaintiffs informing them they would be issued a three bedroom voucher.** *Supporting Evidence: Ex. A to Index of Evidence; Castillo Decl. ¶ 4.* | Undisputed in part; disputed in part. Undisputed that on March 20, 2023 SHRA issued a letter stating that one additional bedroom would be approved and housekeeping would be denied, and that Plaintiffs would be issued a three-bedroom voucher. (Ex. 13.) Disputed to the extent Defendants imply this cured prior denials or resolved the accommodation dispute. Plaintiffs immediately responded that the three-bedroom offer did not satisfy the requested accommodation need and that multiple denials still required hearing. (Ex. 14.) SHRA then issued additional denials on April 3, 2023. (Ex. 16.) |
| **37. On or about December 4, 2023, Defendants filed their Answer to the TAC. They denied each allegation of the TAC.** *Supporting Evidence: RJN Ex. B, Dkt. 49.* | Undisputed as a procedural fact only. |
| **38. On August 14, 2024, this Court terminated AIMS and DAYS as Plaintiffs in this matter.** *Supporting Evidence: RJN Ex. C, Aug. 14, 2024 Order, Dkt. 64.* | Undisputed as a procedural fact only. |
| **39. On November 4, 2024, Defendants served Plaintiffs with Requests for Admission, Set One.** *Supporting Evidence: Castillo Decl. ¶ 5; Exs. B-1, B-2.* | Undisputed as a procedural fact only. |
| **40. On or about March 6, 2025, Defendants filed their Motion for Summary Judgment based on Plaintiffs' failure to respond to Request for Admissions.** *Supporting Evidence: RJN Ex. D, Dkt.* | Undisputed as a procedural fact only. |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 14**

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| 83. | |
| **41. On or about April 9, 2025, Plaintiffs filed a Motion to Withdraw Deemed Admissions.** *Supporting Evidence:* RJN Ex. E, Dkt. 88. | Undisputed as a procedural fact only. |
| **42. On or about May 15, 2025, this Court issued its Minute Order. The Court granted Plaintiffs' Motion to Withdraw admissions and deemed admitted Plaintiffs' filed responses. The Court denied Defendants' motion for summary judgment without prejudice, as it relied heavily on Plaintiffs' non-responses to the request for admissions, non-responses which were then deemed withdrawn.** *Supporting Evidence:* RJN Ex. F, May 15, 2025 Minute Order. | Undisputed as a procedural fact only, including that the Court later permitted withdrawal of deemed admissions and denied Defendants' earlier summary judgment motion without prejudice because it relied heavily on the prior nonresponses. |
| **43. Plaintiffs' deemed-admitted Requests for Admissions were all denials, including that Plaintiffs' requested relief for an injunction approving the housing adjustment reasonable accommodation was moot and that Plaintiffs' requested relief for civil penalties and punitive damages was moot, among others.** *Supporting Evidence:* RJN Ex. E, Ex. A. | Undisputed in part; disputed in part. Undisputed that the earlier deemed-admitted RFAs were denials. Disputed to the extent Defendants imply the deemed-admitted posture remained operative after withdrawal. |
| **44. On or about May 27, 2025, Defendants produced documents responsive to Plaintiffs' document request.** *Supporting Evidence:* Ex. C to Index of Evidence; Castillo Decl. ¶ 6. | Undisputed in part; disputed in part. Undisputed that Defendants produced the listed letters and notices. Disputed to the extent Fact 10 omits that those very documents show multiple distinct denials, continuing hearing confusion, and an April 3 denial of email communication on head-of- |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 15

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
|  | household grounds. |
| **45. On or about September 30, 2025, Plaintiffs produced numerous documents, including several emails between Plaintiff Samuel and Sacramento Self Help employees and Defendants regarding call-back requests; Plaintiff Samuel's 4/28/2023 email to Defendants regarding SHRA's denial of a rental application due to rent exceeding approval payment standards.**<br><br>*Supporting Evidence: Ex. D to Index of Evidence; Castillo Decl. ¶ 7.* | Undisputed in part; disputed in part. Undisputed that Plaintiffs produced the identified materials. Disputed to the extent Fact 45 omits that those materials support Plaintiffs' position concerning call-back failures and the Papago-related denial. The Papago record reflects wrong voucher size, address uncertainty, duplex/apartment concern, reruns, and later price increase. (Ex. 24.) |
| **46. On or about September 29, 2025, Plaintiffs produced supplemental documents, including numerous HUD guidelines unrelated to the subject case issues, HUD Fair Housing and Non-Discrimination Requirements, and a HUD/DOJ Joint Statement on the grounds for denials of reasonable accommodation requests fails to address the complex calculations of approved rent SHRA must undertake.**<br><br>*Supporting Evidence: Ex. E to Index of Evidence; Castillo Decl. ¶ 8.* | Undisputed in part; disputed in part. Undisputed that Plaintiffs produced HUD and fair-housing materials, including the HUD/DOJ Joint Statement. Disputed to the extent Defendants imply those materials are irrelevant or unrelated or that they fail to address the issues in this case, because they bear directly on accommodation denials and effective communication. |
| **47. No depositions were taken in this matter.**<br><br>*Supporting Evidence: Castillo Decl. ¶ 9.* | Undisputed in part; disputed in part. Undisputed that no depositions were completed. Disputed to the extent Defendants imply witness access was freely available or that the absence of depositions was a neutral choice. Defendants were still withholding substantive discovery and key witness access while offering some witnesses only on compressed notice and later surfaced Lew only after discovery closed. (Exs. 30-32.) |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 16

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| 48. Fact discovery is now closed.<br><br>*Supporting Evidence: RJN Ex. G, Jan. 15, 2026 Order.* | Undisputed only that Defendants cite later docket or status materials in support of a post-fact-discovery posture. Disputed to the extent Defendants use that posture to convert a discovery-access problem of their own making into an evidentiary defect. |
| 49. There is no admissible evidence that Plaintiffs were denied a benefit.<br><br>*Supporting Evidence: Castillo Decl. ¶ 10.* | Disputed. The written denials are themselves direct evidence that Plaintiffs were denied the benefit of the requested accommodations. SHRA's July 8, 2022 letter states the request is hereby denied. (Ex. 4.) SHRA's November 16, 2022 letter again states the request is hereby denied. (Ex. 10.) SHRA's April 3, 2023 letter denies additional accommodation items, including the expanded housing request and email communication. (Ex. 16.) Those denials are the discriminatory acts. The later hearing failures, withheld recording, and post-March obstruction aggravate and confirm the injury, but they are not the point at which discrimination first arose. |
| 50. While the September 12, 2022 hearing regarding the denial of Plaintiffs' reasonable accommodation request was taking place, the hearing officer had a medical emergency and the hearing had to be ended. The medical emergency rendered the hearing officer unable to return to work. MaryLiz Paulson, the Director of the Housing Choice Voucher program at SHRA, then commenced the procurement process to hire a new hearing officer. The procurement process is lengthy, needs to follow governmental regulations, and can often take months to locate a suitable contractor. The hearing continued in April 2023 when SHRA had a new hearing officer under | Disputed. Defendants' medical emergency or continued-hearing narrative is not reliably supported. Plaintiffs' contemporaneous September 16 memorialization states only that Cruz informed them the matter could not be decided, with no medical-emergency explanation. (Ex. 7.) SHRA's April 20 hearing brief later said only that the September hearing officer was unable to complete the process and that the matter was postponed, not that there was a medical emergency or inability to return to work. Defendants' own brief then adds that Paulson eventually learned the officer could not return to work. By May 2, 2023, Paulson herself was still asking where the hearing decision could be found. (Ex. 22.) Defendants also disclosed the September 12 recording and have withheld it. (Ex. 33.) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 17**

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| contract.<br><br>*Supporting Evidence: Paulson Decl. ¶¶ 1, 3-5.* | |
| **51. There is no admissible evidence of Defendants' violation of the Rehabilitation Act, 29 U.S.C. §§ 701, 794, 504.**<br><br>*Supporting Evidence: Castillo Decl. ¶ 11.* | Disputed. Under Section 504 and the Rehabilitation Act, SHRA could not deny necessary accommodations and effective communication after notice and then claim there is no evidence of violation. SHRA's own records show repeated written refusals on July 8, 2022, November 16, 2022, and April 3, 2023, denial of email communication on head-of-household grounds, and hearing failures. (Exs. 4, 10, 16, 21, 22, 33.) The hearing failures, withheld recording, and post-March obstruction are additional evidence, not the point at which discrimination first arose. |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 18**

**ISSUE 4**

Plaintiffs' Cause of Action for violations of equal protection under 42 U.S.C. § 1983.

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
| --- | --- |
| 52. On November 15, 2022, Plaintiffs filed their Third Amended Complaint (TAC). The TAC asserts causes of action for violations of the Americans with Disabilities Act, the Fair Housing Act, the Rehabilitation Act and the 14th Amendment's Equal Protection and Due Process Clauses. The TAC prays for general damages and statutory penalties in excess of $7.75 million, punitive damages, declarative and injunctive relief. The TAC alleges sometime prior to May 18, 2022, Plaintiffs requested from Defendants an extra bedroom as a reasonable accommodation. Plaintiffs allege a supervisor of Defendants denied the request and thus denied Plaintiffs equal opportunity to use their housing voucher. The TAC further alleges that on May 19, 2022, Plaintiffs submitted a written, reasonable accommodation request which was denied on or about July 15, 2022. The TAC alleges that between the time of the request and the denial, Defendants failed to engage in an interactive process. The TAC alleges Plaintiffs made several written and verbal requests to have a hearing on the denial of their request for an additional bedroom. A Zoom hearing was held on September 12, 2022. Plaintiffs | Undisputed in part; disputed in part. Undisputed that the TAC contains the allegations Defendants summarize. Disputed to the extent Fact 1 is presented as a complete or accurate statement of the material facts because it omits the failure to issue a decision after the September 12, 2022 hearing, the distinct September 29, 2022 request, the November 16, 2022 denial addressing both David and AIMS, the March 21, 2023 objection to the March 20 letter, the April 3, 2023 additional denials, and SHRA's continued obstruction of actual voucher use after March 20, 2023. |

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| allege they were restricted by lack of proper notice from Defendants and hearing rules regarding evidence.<br><br>*Supporting Evidence: RJN Ex. A, Third Amended Complaint, Dkt. 11.* | |
| **53. On March 20, 2023, Plaintiffs' request for an additional bedroom was granted. Plaintiffs' new request for housekeeping services was denied as it required a fundamental change to the program and presented an undue hardship. A letter was sent to Plaintiffs informing them that they would be issued a three-bedroom voucher.**<br><br>*Supporting Evidence: Ex. A to Index of Evidence; Castillo Decl.* | Undisputed in part; disputed in part. Undisputed that on March 20, 2023 SHRA issued a letter stating that one additional bedroom would be approved and housekeeping would be denied, and that Plaintiffs would be issued a three-bedroom voucher. (Ex. 13.) Disputed to the extent Defendants imply this cured prior denials or resolved the accommodation dispute. Plaintiffs immediately responded that the three-bedroom offer did not satisfy the requested accommodation need and that multiple denials still required hearing. (Ex. 14.) SHRA then issued additional denials on April 3, 2023. (Ex. 16.) |
| **54. On or about December 4, 2023, Defendants filed their Answer to the TAC. They denied each allegation of the TAC.**<br><br>*Supporting Evidence: RJN Ex. B, Dkt. 49.* | Undisputed as a procedural fact only. |
| **55. On August 14, 2024, this Court terminated AIMS and DAYS as Plaintiffs in this matter.**<br><br>*Supporting Evidence: RJN Ex. C, Aug. 14, 2024 Order, Dkt. 64.* | Undisputed as a procedural fact only. |
| **56. On November 4, 2024, Defendants served Plaintiffs with Requests for Admission, Set One.**<br><br>*Supporting Evidence: Castillo Decl. ¶ 5; Exs. B-1, B-2.* | Undisputed as a procedural fact only. |
| **57. On or about March 6, 2025,** | Undisputed as a procedural fact only. |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 20**

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| Defendants filed their Motion for Summary Judgment based on Plaintiffs' failure to respond to Request for Admissions. <br> *Supporting Evidence: RJN Ex. D, Dkt. 83.* | |
| 58. On or about April 9, 2025, Plaintiffs filed a Motion to Withdraw Deemed Admissions. <br> *Supporting Evidence: RJN Ex. E, Dkt. 88.* | Undisputed as a procedural fact only. |
| 59. On or about May 15, 2025, this Court issued its Minute Order. The Court granted Plaintiffs' Motion to Withdraw admissions and deemed admitted Plaintiffs' filed responses. The Court denied Defendants' motion for summary judgment without prejudice, as it relied heavily on Plaintiffs' non-responses to the request for admissions, non-responses which were then deemed withdrawn. <br> *Supporting Evidence: RJN Ex. F, May 15, 2025 Minute Order.* | Undisputed as a procedural fact only, including that the Court later permitted withdrawal of deemed admissions and denied Defendants' earlier summary judgment motion without prejudice because it relied heavily on the prior nonresponses. |
| 60. Plaintiffs' deemed-admitted Requests for Admissions were all denials, including that Plaintiffs' requested relief for an injunction approving the housing adjustment reasonable accommodation was moot and that Plaintiffs' requested relief for civil penalties and punitive damages was moot, among others. <br> *Supporting Evidence: RJN Ex. E, Ex. A.* | Undisputed in part; disputed in part. Undisputed that the earlier deemed-admitted RFAs were denials. Disputed to the extent Defendants imply the deemed-admitted posture remained operative after withdrawal. |
| 61. On or about May 27, 2025, Defendants produced documents responsive to Plaintiffs' document | Undisputed in part; disputed in part. Undisputed that Defendants produced the listed letters and notices. Disputed to the |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 21

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| request.<br><br>*Supporting Evidence: Ex. C to Index of Evidence; Castillo Decl. ¶ 6.* | extent Fact 10 omits that those very documents show multiple distinct denials, continuing hearing confusion, and an April 3 denial of email communication on head-of-household grounds. |
| 62. On or about September 30, 2025, Plaintiffs produced numerous documents, including several emails between Plaintiff Samuel and Sacramento Self Help employees and Defendants regarding call-back requests; Plaintiff Samuel's 4/28/2023 email to Defendants regarding SHRA's denial of a rental application due to rent exceeding approval payment standards fails to address the complex calculations of approved rent SHRA must undertake.<br><br>*Supporting Evidence: Ex. D to Index of Evidence; Castillo Decl. ¶ 7.* | Disputed. Defendants' characterization that Plaintiffs' April 28, 2023 email fails to address the complex calculations of approved rent SHRA must undertake is argument, not an undisputed fact. The Papago record reflects wrong voucher size, address uncertainty, duplex/apartment concern, reruns, and later price increase. (Ex. 24.) |
| 63. On or about September 29, 2025, Plaintiffs produced supplemental documents including numerous HUD guidelines unrelated to the subject case issues, HUD Fair Housing and Non-Discrimination Requirements, and a HUD/DOJ Joint Statement on the grounds for denials of reasonable accommodation requests.<br><br>*Supporting Evidence: Ex. E to Index of Evidence; Castillo Decl. ¶ 8.* | Undisputed in part; disputed in part. Undisputed that Plaintiffs produced HUD and fair-housing materials, including the HUD/DOJ Joint Statement. Disputed to the extent Defendants imply those materials are irrelevant or unrelated because they bear directly on accommodation denials and effective communication. |
| 64. No depositions were taken in this matter.<br><br>*Supporting Evidence: Castillo Decl. ¶ 9.* | Undisputed in part; disputed in part. Undisputed that no depositions were completed. Disputed to the extent Defendants imply witness access was freely available or that the absence of depositions was a neutral choice. Defendants were still withholding substantive discovery and key witness access |

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 22

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| | while offering some witnesses only on compressed notice and later surfaced Lew only after discovery closed. (Exs. 30-32.) |
| **65. Fact discovery is now closed.** *Supporting Evidence: RJN Ex. G, Jan. 15, 2026 Order.* | Undisputed only that Defendants cite later docket or status materials in support of a post-fact-discovery posture. Disputed to the extent Defendants use that posture to convert a discovery-access problem of their own making into an evidentiary defect. |
| **66. There is no admissible evidence that Plaintiffs were denied a benefit.** *Supporting Evidence: Castillo Decl. ¶ 10.* | Disputed. The written denials are themselves direct evidence that Plaintiffs were denied the benefit of the requested accommodations. SHRA's July 8, 2022 letter states the request is hereby denied. (Ex. 4.) SHRA's November 16, 2022 letter again states the request is hereby denied. (Ex. 10.) SHRA's April 3, 2023 letter denies additional accommodation items, including the expanded housing request and email communication. (Ex. 16.) Those denials are the discriminatory acts. The later hearing failures, withheld recording, and post-March obstruction aggravate and confirm the injury, but they are not the point at which discrimination first arose. |
| **67. While the September 12, 2022 hearing regarding the denial of Plaintiffs' reasonable accommodation request was taking place, the hearing officer had a medical emergency and the hearing had to be ended. The medical emergency rendered the hearing officer unable to return to work. MaryLiz Paulson, the Director of the Housing Choice Voucher program at SHRA, then commenced the procurement process to hire a new hearing officer. The procurement process is lengthy, needs to follow governmental regulations, and can** | Disputed. Defendants' medical emergency or continued-hearing narrative is not reliably supported. Plaintiffs' contemporaneous September 16 memorialization states only that Cruz informed them the matter could not be decided, with no medical-emergency explanation. (Ex. 7.) SHRA's April 20 hearing brief later said only that the September hearing officer was unable to complete the process and that the matter was postponed, not that there was a medical emergency or inability to return to work. Defendants' own brief then adds that Paulson eventually learned the officer could not return to work. By May 2, 2023, Paulson herself was still asking where the hearing decision could be |

| Defendants' Undisputed Material Fact and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|
| often take months to locate a suitable contractor. The hearing continued in April 2023 when SHRA had a new hearing officer under contract.<br><br>*Supporting Evidence: Paulson Decl. ¶¶ 1, 3-5.* | found. (Ex. 22.) Defendants also disclosed the September 12 recording and have withheld it. (Ex. 33.) |
| 68. There is no admissible evidence of Defendants' violation of the Rehabilitation Act, 29 U.S.C. §§ 701, 794, 504.<br><br>*Supporting Evidence: Castillo Decl. ¶ 11.* | Disputed. Fact 68 appears to be a copy-paste error. The later issue block concerns Plaintiffs' constitutional claims, but Fact 68 repeats Rehabilitation Act wording already used in the statutory-accommodation sections. To the extent Defendants intend to assert there is no admissible evidence of a constitutional or § 1983 violation, that assertion is contradicted by SHRA's own records showing repeated written denials of requested accommodations, denial of email communication on head-of-household grounds, failure to provide the required hearing file before April 20, 2023, failure to issue a timely decision after September 12, 2022, and withholding of the September 12 recording after disclosing its existence. (Exs. 4, 10, 16, 21, 22, 33.) |

## PLAINTIFFS' ADDITIONAL MATERIAL FACTS

1) On August 31, 2022, SHRA emailed Plaintiffs the Zoom information for a September 12, 2022 hearing. (Ex. 6.)

2) On September 15, 2022, Tanya Cruz informed Plaintiffs that the September 12 hearing could not be decided by Jonathan Lew and that Lew was unable to render a decision, with no explanation provided. (Ex. 7.)

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 24

3) Plaintiffs' September 16, 2022 letter memorialized that the hearing had concluded, briefing had been requested, and Plaintiffs understood a decision would be issued by September 28, 2022. (Ex. 7.)

4) Defendants later disclosed that Jonathan Lew was the September 12 hearing officer and that a video recording of that hearing existed. (Ex. 33.)

5) By May 2, 2023, MaryLiz Paulson was still asking internally where the hearing decision for this tenant could be found. (Ex. 22.)

6) Plaintiffs and Ashley Valentine were actively working in May 2022 to submit the accommodation request to SHRA, and Ashley confirmed she sent the form through the portal. (Ex. 3.)

7) Plaintiffs executed a Kaiser ROI on May 19, 2022 identifying Dr. Michel Medina and the accommodation need, and Dr. Medina later stated SHRA had not contacted him. (Exs. 1, 5.)

8) On May 31, 2022, Dr. Medina provided a physician statement that David would medically benefit from having an additional room. (Ex. 2.)

9) On September 29, 2022, Plaintiffs submitted a distinct reasonable accommodation request that included separate spaces for David and AIMS, email-only communication, housing-search assistance, and extension-related relief. (Ex. 8.)

10) The September 2022 packet also stated that the then-current landlord had determined the family qualified under current payment standards for units larger than two bedrooms and would hold a unit for one week, and it included an affordability

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 25**

worksheet concluding a 3-bedroom unit at 1100 Howe Ave was within payment standards. (Ex. 9.)

11) SHRA's July 8, 2022 denial letter signed by MaryLiz Paulson framed the denied request as one for David Samuel only. (Ex. 4.)

12) SHRA's November 16, 2022 denial letter signed by MaryLiz Paulson framed the denied request as one including both Plaintiffs. (Ex. 10.)

13) The July and November 2022 denial letters use materially identical template reasoning. (Exs. 4, 10.)

14) On December 9, 2022, SHRA acknowledged the hearing request and recognized that David had requested communication by email. (Ex. 11.)

15) On December 12, 2022, Plaintiffs asked SHRA which denial the hearing would cover because there had already been multiple denials and the September hearing had produced no decision. (Ex. 11.)

16) By February 1, 2023, Plaintiffs were expressly stating that the September request still included open payment-adjustment and communication items and remained unresolved. (Ex. 12.)

17) On March 20, 2023, SHRA issued a three-bedroom voucher so David and AIMS would have separate sleeping rooms and could share family space, while denying housekeeping. (Ex. 13.)

18) On March 21, 2023, Plaintiffs responded that the three-bedroom offer did not satisfy the requested accommodation need and that multiple denials still required hearing. (Ex. 14.)

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 26**

19) In that same March 21 communication, Plaintiffs clarified the expanded housing request as a five-bedroom structure tied to disability-related needs. (Ex. 14.)

20) On March 29, 2023, SHRA internally recorded that the RA committee discussed additional room requests, blackout curtains, soundproofing, a housing list, housing-search assistance, email-only communication, and extensions. (Ex. 15.)

21) On April 3, 2023, SHRA denied separate bedrooms and denied email communication by asserting communications are directed to the head of household. (Ex. 16.)

22) On April 18, 2023, Plaintiffs requested the complete case file, hearing materials, and voice-to-text accommodation in advance of the April 20 hearing. (Ex. 18.)

23) On April 20, 2023, Plaintiffs documented that Tanya Cruz cancelled the hearing after a private discussion, that Plaintiffs objected, and that Plaintiffs were ready to proceed. (Ex. 19.)

24) SHRA's own hearing-result form later confirmed that the case file had not been provided, Plaintiffs objected to rescheduling, and the hearing officer ended the matter because due process review was incomplete. (Ex. 21.)

25) Tanya Cruz admitted she attended the April 20, 2023 hearing, admitted she informed Plaintiffs during the hearing that it would be cancelled and rescheduled, admitted she did not provide a written decision or explanation for the cancellation, and admitted she participated in internal SHRA discussions concerning the cancellation and rescheduling. (Ex. 20.)

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 27

26) SHRA internally adopted and implemented a head-of-household-only email rule, denied email-only communication on that basis, admitted any email to David had only been as a courtesy, told staff not to email David directly, and instructed staff to continue calling instead. (Exs. 11, 23.)

27) SHRA's own training said staff should send Kaiser verification materials directly to the provider, should never ask for or chrono the nature of the disability, and should follow up and work interactively with the family if provider information was incomplete. (Ex. 28.)

28) Papago was not merely a neutral rent-calculation issue. SHRA's own records show address uncertainty, unit-number confusion, apartment-versus-duplex concern, and a rerun using the correct voucher size. (Ex. 24.)

29) SHRA's own chronology shows the Papago rent increased during the delay. (Ex. 24.)

30) On May 19, 2023, Plaintiffs submitted a distinct reasonable accommodation request for a rent-reasonableness adjustment for Papago. (Ex. 25.)

31) The Papago process was opaque not only to Plaintiffs but also to Caitlyn Grabill and Greystar. (Exs. 26-27.)

32) Plaintiffs compiled contemporaneous comparable-rent information showing that available three-bedroom inventory in 95843 was in the same general range as the Arbors. (Ex. 27.)

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 28**

33) SHRA's 2022 RA decisions spreadsheet, produced through public-records request #23-30, provides pattern corroboration that SHRA meaningfully processed some accommodation categories while functionally rejecting or minimizing others. (Ex. 29.)

34) Plaintiffs repeatedly notified SHRA that SHRA's practices violated governing statutes and regulations and that the accommodation and communication issues remained unresolved, but SHRA continued the same denials and restrictions. (Ex. 12; Exs. 31-32.)

35) In the 2020 HUD Conciliation Agreement / Voluntary Compliance Agreement, SHRA agreed that all Public Housing and Housing Choice Voucher employees would receive fair-housing training with an emphasis on reasonable accommodations and separate training on SHRA's own accommodation procedures, and SHRA agreed to maintain accessible grievance procedures and effective communication. (Exs. 36-38.)

36) Dozier admitted SHRA is a public entity subject to Title II, admitted she signed SHRA's Voluntary Compliance Agreement with HUD, and admitted that the agreement requires SHRA to provide effective communication and accessible grievance procedures under Section 504 and the ADA. (Exs. 36-38.)

37) Dozier admitted in part that, as Executive Director, she had authority to review decisions related to informal hearings and reasonable accommodations and act appropriately where decisions deviated from the Administrative Plan, and admitted SHRA has no written policy requiring reasonable-accommodation requests to be directed only to the head of household. (Exs. 36-38.)

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 29

38) Paulson admitted she is the Section 504 coordinator for the Housing Choice Voucher program and admitted she is a member of the Reasonable Accommodation Compliance Committee that reviews and makes determinations on reasonable-accommodation requests. (Exs. 39-42.)

39) INCORPORATION FOR LATER DUPLICATED ISSUE BLOCKS. Plaintiffs incorporate their responses to Issue 1 Facts 1 through 17 and Plaintiffs' Additional Material Facts 1 through 38 because Defendants reuse the same incomplete chronology, the same hearing narrative, the same March 20 cure framing, and the same no-admissible-evidence rhetoric in later issue blocks, including Facts 32 through 34 and 66 through 68.c in later issue blocks, including Facts 32 through 34, 49 through 51, and 66 through 68.

40) For the ADA and Rehabilitation Act blocks, the same record shows repeated denial of accommodations, repeated failure to investigate, and deliberate refusal to provide effective communication even while SHRA used email when it suited SHRA. For the due process blocks, the same record shows that the September 12 hearing produced no timely decision, the April 20 hearing was shut down after SHRA failed to provide the case file and accommodations, and Defendants still withhold the September 12 recording.

41)    For the ADA and Rehabilitation Act blocks, the same record shows repeated denial of accommodations, repeated failure to investigate, and deliberate refusal to provide effective communication even while SHRA used email when it suited SHRA. For the due process blocks, the same record shows that the September 12 hearing produced no timely decision, the April 20 hearing was shut down after SHRA failed to

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 30

provide the case file and accommodations, and Defendants still withhold the

September 12 recording.


*David Samuel*

David Samuel
March 8, 2026


*Sydney Roberts*

Sydney Roberts
March 8, 2026

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT - 31

David Samuel, Pro Se
Sydney Roberts, Pro Se
108 Rinetti Way
Rio Linda, CA 95673
512-522-8571
edfed@possiblymaybe.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS | Case No: 2:22-cv-01699 DJC AC |
| DAVID TYRONE SAMUEL, | |
| Plaintiffs, | **DECLARATION OF DAVID SAMUEL IN** |
| v. | **SUPPORT OF RULE 56(d) REQUEST** |
| SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY ET AL., | |
| Defendants | |

## DECLARATION OF DAVID SAMUEL IN SUPPORT OF RULE 56(d) REQUEST

I, David Samuel, declare:

1)      I am a plaintiff in this action. I make this declaration based on my personal knowledge. If called as a witness, I could and would testify competently to the matters stated here.

2)      Defendants' motion relies in part on a factual narrative that the September 12, 2022 hearing was interrupted by a medical emergency, that the hearing officer could not return to work, and that the matter was continued rather than concluded.

3)      I attended the September 12, 2022 hearing. The hearing began at 10:00 a.m. and ended at approximately 12:00 p.m.

**DECLARATION OF DAVID SAMUEL IN SUPPORT OF RULE 56(d) REQUEST - 1**

4)   During that hearing, Jonathan Lew ruled on issues presented by the parties, including refusing Tanya Cruz's attempt to present an affidavit on behalf of Troy Lynch because Mr. Lynch was not present.

5)   During the hearing, and when the hearing ended, there was no announcement that Mr. Lew had suffered a medical emergency, and no one stated he would be unable to return to work, and no one stated the matter was being continued.

6)   At the end of the hearing, Mr. Lew instructed Plaintiffs to submit a post-hearing brief to SHRA at ra@shra.org for forwarding to him. Plaintiffs complied and submitted that brief on the evening of September 12, 2022.

7)   On September 15, 2022, Tanya Cruz called me and informed Plaintiffs only that Jonathan Lew could not render a decision. Plaintiffs immediately memorialized that sequence in writing on September 16, 2022 and both emailed and mailed a copy to Defendants.

8)   Defendants later disclosed that the September 12 hearing was recorded and identified Jonathan Lew as the hearing officer, but have not produced that recording (Ex. 33).

9)   Defendants have not produced that recording, despite repeated requests.

10)   Plaintiffs learned of the existence of the September 12, 2022 recording only through Defendants' later disclosure. Before that disclosure, Plaintiffs did not know SHRA had preserved a recording of the hearing.

11)   The September 12, 2022 recording and the minimal related communications with Jonathan Lew are essential to oppose Defendants' motion because Defendants ask the

**DECLARATION OF DAVID SAMUEL IN SUPPORT OF RULE 56(d) REQUEST - 2**

Court to accept a later declaration narrative about what occurred at that hearing while withholding the best evidence of what actually occurred.

12)    Without the September 12, 2022 recording, associated metadata, and the narrow set of scheduling and post-hearing communications with Jonathan Lew, Plaintiffs cannot present the best available evidence of the hearing sequence or fairly test Defendants' medical emergency / continuance theory.

13)    Plaintiffs therefore request limited Rule 56(d) relief directed only to the complete September 12, 2022 hearing recording, associated metadata, any scheduling or post-hearing communications with Jonathan Lew from September 12 through September 30, 2022, and any draft or final decision or statement identifying whether such a decision existed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: March 8, 2026

David Samuel

David Samuel

**DECLARATION OF DAVID SAMUEL IN SUPPORT OF RULE 56(d) REQUEST - 3**

David Samuel, Pro Se
Sydney Roberts, Pro Se
108 Rinetti Way
Rio Linda, CA 95673
512-522-8571
edfed@possiblymaybe.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS | Case No: 2:22-cv-01699 DJC AC |
| DAVID TYRONE SAMUEL, | |
| Plaintiffs, | **Exhibit List** |
| v. | |
| SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY ET AL., | |
| Defendants | |

**EXHIBIT LIST**

Exhibit 1. May 19, 2022 Kaiser ROI and completed RA packet

Exhibit 2. May 31, 2022 Dr. Medina physician statement

Exhibit 3. Ashley Valentine May 2022 initiation emails

Exhibit 4. July 8, 2022 denial letter

Exhibit 5. July 20, 2022 Dr. Medina no-contact email

Exhibit 6. August 31, 2022 September 12 hearing notice

Exhibit 7. September 16, 2022 memorialization email

Exhibit 8. September 29, 2022 distinct request packet

Exhibit 9. September 29, 2022 1100 Howe approvability materials

Exhibit 10. November 16, 2022 denial letter

**Exhibit List - 1**

Exhibit 11. December 2022 hearing-request and email-communication chain

Exhibit 12. February 1, 2023 unresolved payment-adjustment and communication email

Exhibit 13. March 20, 2023 approval letter

Exhibit 14. March 21, 2023 response rejecting cure and clarifying expanded request

Exhibit 15. March 29, 2023 internal committee note

Exhibit 16. April 3, 2023 denial letter

Exhibit 17. April 3, 2023 hearing notice

Exhibit 18. April 18, 2023 case-file and accommodation request

Exhibit 19. April 20, 2023 objection email

Exhibit 20. April 20, 2023 hearing transcript excerpts

Exhibit 21. May 3, 2023 hearing-result form

Exhibit 22. May 2, 2023 Paulson where would I find it email

Exhibit 23. May 2 to May 3, 2023 internal effective-communication chain

Exhibit 24. Papago address / duplex / wrong-voucher-size chain

Exhibit 25. May 19, 2023 Papago rent-reasonableness accommodation request

Exhibit 26. Caitlyn Grabill opacity emails

Exhibit 27. Greystar / comparable-rent chain

Exhibit 28. SHRA training materials

Exhibit 29. Public-records request #23-30 opening and release emails

Exhibit 30. July 10, 2025 Lew / Olson / Prozorov deposition demand

Exhibit 31. May 28, 2025 discovery-deficiency email

Exhibit 32. June 11, 2025 short-notice deposition / discovery-deficiency email

**Exhibit List - 2**

Exhibit 33. Defendants' disclosure identifying the September 12 recording and Jonathan Lew

Exhibit 34. 2020 HUD Conciliation Agreement / Voluntary Compliance Agreement

Exhibit 35. HUD/DOJ Joint Statement on Reasonable Accommodations under the FHA

Exhibit 36. Dozier amended RFA Set One

Exhibit 37. Dozier amended RFA Set Two

Exhibit 38. Dozier amended ROG Set One

Exhibit 39. Paulson amended RFA Set One

Exhibit 40. Paulson amended RFA Set Two

Exhibit 41. Paulson amended ROG Set One

Exhibit 42. Paulson amended ROG Set Two

Exhibit 43. Cruz amended RFA Set One

Exhibit 44. Brown amended RFA Set One

Exhibit 45. Macias amended RFA Set One

Exhibit 46. Henley amended RFA Set One

Exhibit 47. Henley amended RFA Set Two

Exhibit 48. Troy Lynch amended RFA Set One

Exhibit 49. SHRA responses to Plaintiffs' RFP Set Three

Exhibit 50. SHRA responses to Plaintiffs' RFP Set Four

**Exhibit 1**



# AUTHORIZATION FOR USE OR DISCLOSURE OF HEALTH INFORMATION

(This form is available electronically upon request)

---

**HEALTH CARE PROFESSIONAL** - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

---

**THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION, WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.**

This Request is made on behalf of: ☐ Head-Of-Household  ☒ Another **David Samuel**

**t0032944**                  **Sydney Roberts**
Tcode                        Name
**1100 Howe Ave, Apt 126**          **Sacramento, CA 95825**
Address                           city/State/Zip

Phone(s) **512-917-8112** Alt Phone_____

Type of Accommodation(s) Requested: (PLEASE PRINT LEGIBLY) **Extra bedroom for management of disability symptoms for David and Artemis, isolated space for medical appointments, and school.**

---

Physician/Health Care Professional's Name: **Michel Medina**

Name of Employer or Practice: **Kaiser Permanente**

Address: **2031 Howe Ave, Sacramento, CA 95825**

Phone: **1-916-973-5300**  Fax: _____ Date: **05/19/2022**

I hereby voluntarily authorize the Physician/Health Care Professional named above to disclose information from my record to the Housing Authority of Sacramento on the attached verification form for the purpose of verifying my disability status and need for an accommodation. The Housing Authority may use the information solely for such purpose.

**AUTHORIZATION EXPIRATION AND REVOCATION**
I understand that I may revoke this authorization in writing at any time. The written revocation will be effective upon receipt, except to the extent that the disclosing party or others have acted in reliance upon this authorization. If this authorization has not been revoked, it will terminate one year from the date of my signature, unless I have specified a different expiration date or expiration event.

**SPECIFYING A SHORTER TERM AUTHORIZATION**
This authorization should expire on: _____ or upon the following conditions





rev 03/10/2017

---

### TERMS OF AUTHORIZATION

I understand that the health care provider will not condition treatment or eligibility for care on my providing this authorization.

I understand that information disclosed by this authorization may be subject to redisclosure by the recipient and may no longer be protected by the Health Insurance Portability and Accountability Act Privacy Rule [45 CFR Part 164], and the Privacy Act of 1974 [5 USC 552a].

I understand that I have the right to receive a copy of this authorization.

Print Name **Sydney Roberts**

Signature _____ Date **05/19/2022**

---

**Housing Authority Use Only:**

Faxed to Medical Professional on: _____          Faxed By: _____
                        (Date)

Tenant Code: _____          Housing Specialist: _____
                                HS Code: _____

☐ HCV Resident      ☐ HCV applicant
☐ PH Resident       ☐ PH applicant


Equal Housing Opportunity



rev 03/10/2017



**KAISER PERMANENTE.**

PSYCHIATRY HOWE AVE
2031 HOWE AVE
SACRAMENTO CA 95825-0176
Dept: 916-973-5300
Main: 916-973-5000

Date: 5/31/2022
Name of Patient: David Samuel
Medical Record Number: 110009362420

To: Sacramento Housing and Redevelopment Agency (SHRA)
Re: Reasonable Accommodations

**Physician Statement**

The above-named patient is under the care of Kaiser Permanente North Valley Mental Health.
David would medically benefit from having reasonable accommodations that include having an
additional room.

Name of physician (please print):    MICHEL MEDINA MD

Physician signature:    _[signature]_  5/31/2022

Exhibit 3

 Gmail                                    **David Samuel <davidsa@possiblymaybe.com>**

---

## Reasonable Accommodation Request

9 messages

---

**David Samuel** <davidsa@possiblymaybe.com>                    Thu, May 26, 2022 at 7:59 AM
To: Ashley Valentine <avalentine@sacselfhelp.org>

Ashley,

My doctor is asking exactly what the reasonable accommodation needs to ask for and he will try to have it available within the next few days. I'm imagining it's more specific than "David would medically benefit from having an extra room?"

David

---

**Ashley Valentine** <avalentine@sacselfhelp.org>                    Thu, May 26, 2022 at 11:23 AM
To: David Samuel <davidsa@possiblymaybe.com>

Hi David and yes.

"David would medically benefit from having an extra room. This will greatly assist him to focus, concentrate, and diligently complete his tasks as a parent."

Something like that.

Are you still a student?

[Quoted text hidden]

---

**David Samuel** <davidsa@possiblymaybe.com>                    Sun, May 29, 2022 at 1:47 PM
To: Ashley Valentine <avalentine@sacselfhelp.org>

Ashley,

The doctor said it was going to take two business days, so I should have the reasonable accommodations letter with that language by Wednesday. I didn't take classes the last two semesters so I need to register again. Not sure what my current status is, but it will be student again this upcoming semester.

David
[Quoted text hidden]

---

**David Samuel** <davidsa@possiblymaybe.com>                    Sun, May 29, 2022 at 2:08 PM
To: Ashley Valentine <avalentine@sacselfhelp.org>

Ashley,

I forgot to mention, I dropped off a copy of Demeter's birth certificate, social security card, and declaration in the SHRA drop box on Thursday. I haven't heard anything back from Lisa Macias and her voicemail box is full.

SHRA003356

Case 2:22-cv-01699-DJC-AC     Document 152     Filed 03/09/26     Page 62 of 471     Exhibit 3-2

(Quoted text hidden)

---

**Ashley Valentine** <avalentine@sacselfhelp.org>

Tue, May 31, 2022 at 9:48 AM

To: David Samuel <davidsa@possiblymaybe.com>

Good Morning David and Thank You for this information.

I also sent the documents through the SHRA Portal.

(Quoted text hidden)

---

**David Samuel** <davidsa@possiblymaybe.com>

Tue, May 31, 2022 at 2:09 PM

To: Ashley Valentine <avalentine@sacselfhelp.org>

Ashley,

Doctor has a physical letter ready, what's the best way to deal with that?  Picture like before?

David

(Quoted text hidden)

---

**Ashley Valentine** <avalentine@sacselfhelp.org>

Tue, May 31, 2022 at 2:13 PM

To: David Samuel <davidsa@possiblymaybe.com>

Hi David,

Scanned as a PDF would be best but a clear picture will work as well.

(Quoted text hidden)

---

**David Samuel** <davidsa@possiblymaybe.com>

Tue, May 31, 2022 at 4:10 PM

To: Ashley Valentine <avalentine@sacselfhelp.org>

(Quoted text hidden)

> **com.google.android.apps.photos.Image.pdf**
> 2542K

---

**Ashley Valentine** <avalentine@sacselfhelp.org>

Tue, May 31, 2022 at 4:59 PM

To: David Samuel <davidsa@possiblymaybe.com>

Good Afternoon David and Thank You.

I sent the form to SHRA.

(Quoted text hidden)

SHRA003357

Exhibit 4



**CHANGING LIVES**

Mailbox CW 22
t0032944

July 8, 2022

Sydney Roberts
1100 Howe AVE 126
Sacramento, CA 95825

Dear Mr./Ms. Roberts,

Your request for an additional bedroom as a reasonable accommodation for the disabilities of David Samuel is hereby denied. Based on an evaluation of the information you and your health care professional submitted, we are unable to approve your request. Your request states that you require an additional bedroom due to disability, however, needs can be met without increasing the voucher size. We recommend alternative sleeping arrangements. There are two bedrooms currently on the voucher and one could be made available to your disabled family member.

The guidelines that are used to determine if a reasonable accommodation (RA) request meets the RA threshold are the Housing and Urban Development (HUD) regulations, the Housing Authority's administrative plan and the Housing Choice Voucher (HCV) guide book.

The regulations are found in the Code of Federal Regulations – specifically 24 CFR 982.402.

In 24CFR 982.402

- The PHA must establish subsidy standards that determine the number of bedrooms needed for families of different sizes and compositions
- The subsidy standards **must** provide for the **smallest number of bedrooms needed** to house a family without overcrowding
- The subsidy standards must be applied consistently for all families of like size and composition.

It also states that

- The family may lease an otherwise acceptable dwelling unit with fewer bedrooms than the family unit size
- The family may lease an otherwise acceptable dwelling unit with more bedrooms than the family unit size

Given these regulations the Housing Authority also has policies that guide us in addition to the HUD regulations.

Per our Administrative Plan – chapter 5

- The PHA <u>does NOT determine who shares a bedroom</u>/sleeping room, but there must be at least one person per bedroom on the voucher.



Equal Housing
Opportunity

Sacramento Housing & Redevelopment Agency 630 I Street, Sacramento CA 95814
(916) 440-1390 | TTY 711 or 1 (800) 855-7100 | www.shra.org





➢ One bedroom will be allotted for the head of household and spouse or co-head and one bedroom will be assigned for each additional two persons.
*These standards relate to the number of bedrooms on the voucher, not the family's actual living orrangements.*

A third document we look at is the HCV Guidebook – which is information provided by HUD for the PHA's to use when administering the HCV program. This document states that:

➢ a living room may be used as a sleeping (bedroom) space, but no more than two persons may occupy the space.

We are willing to review any additional information you may wish to submit in support of your request. Additional documentation may be faxed to (916) 264-1533. Any information your health care provider wishes to submit, must be sent directly to our office from their office, additional information may be faxed directly to (916) 264-1533.

If you disagree with this determination, you have the right to speak with a Committee Coordinator to discuss the possibility of modifying your request, the health care provider's recommendations and/or to request a hearing, provided we receive your request within fifteen days of your receipt of this letter. You may call (916) 449-6346 to reach the Committee Coordinator by phone.

Sincerely,

DocuSigned by:

*MaryLiz Paulson*

MaryLiz Paulson, Director, Housing Choice Voucher Program
Sacramento Housing and Redevelopment Agency





kp.org/messagecenter
**Following up on SHRA letter**



**MICHEL MEDINA MD**
To: David Samuel (Viewed)
Jul 26, 2022 at 10:20:00 AM

I have not. And I just went to double check my physical mail box to see if maybe they mailed a letter and I havent gotten anything from them

## Following up on SHRA letter

 **David Samuel**
To: MICHEL MEDINA MD
Jul 20, 2022 at 4:12 AM

Dr Medina,

Did SHRA contact you regarding the letter? They denied the request without contacting me and they don't mention the letter at all in the denial reasoning.

Exhibit 6



t0032944
CW22

8/26/2022

Sydney Roberts
1100 Howe Ave #126
Sacramento, CA 95825

SUBJECT:  NOTICE OF HEARING

Dear Mr/Mrs **Sydney Roberts:**

We received your request for a hearing regarding the matter below:

_____  Termination of your Section 8 eligibility.

_____  Change in your family's rent portion.

_____  Change in the unit size of your Certificate or Voucher.

X       Denial of Your Reasonable Accommodation

This is to notify you that you have been scheduled to meet with a Hearing Officer on **9/12/2022 at 11:00AM.** The hearing will be held via ZOOM. Please, follow the link here;
Topic: RA Hearing Sydney Roberts T0032944
Time: Sep 12, 2022 11:00 AM Pacific Time (US and Canada)

Join Zoom Meeting
https://shra-org.zoom.us/j/89006839844?pwd=SWlDYzBwTzJsUGs2OWhlTXBBVkJhZz09

Meeting ID: 890 0683 9844
Passcode: 941165
One tap mobile
−16694449171,,89006839844#,,,,*941165# US
−16699009128,,89006839844#,,,,*941165# US (San Jose)

Dial by your location
    +1 669 444 9171 US
    +1 669 900 9128 US (San Jose)

**Please call 916-449-6346 to confirm that you will attend this hearing at the stated time and date no later than 9/2/2022.** If you are unable to connect via Zoom video we can arrange to provide you with on-site assistance at our office at 630 I Street, Sacramento, CA 95814. You also have the option of calling into the Zoom meeting.  We have your email address as shra@possiblymaybe.com and this is where we will send the link to the meeting.  If this is no longer a good email address, please contact us to update it right away.

The Housing Authority made a decision on your case based on the information provided at the

time. If you submit new information for the Reasonable Accommodation (RA) Committee to consider or if your situation has changed, please, provide this written documentation to your caseworker 5 days prior to the hearing as it may affect the decision. Note: the RA Committee may have to review and consider new information, prior to the hearing.

The Hearing Officer's function is to review the Housing Authority's decision to ensure that it is consistent with regulation and policy.

**If you should require the agency to provide a translator please call (916) 449-6346 no later than 5 days before the hearing, so that arrangements may be made. Please feel free to leave a message including the client name and the language needed.**

If you are unable to attend this hearing at the scheduled date and time, please call the person certifying this notice at (916) 449-6346. If you arrive more than 15 minutes late or are unable to attend, please be prepared to show good cause why the hearing should be rescheduled. Good Cause is described below in Section 2b.

## HEARING PROCESS

The following guidelines will be used to govern the informal hearing process for the Housing Choice Voucher (HCV) Programs administered by the Sacramento Housing and Redevelopment Agency (SHRA).

1.    Upon receipt of the hearing request, the proposed adverse action will be suspended pending the outcome of the hearing.

2.    The participant will be notified of the hearing in writing within 60 days of the receipt of the hearing request. The notice shall specify:

   a.    The date, time and place of the hearing.

   b.    A contact person and phone number to be used to reschedule and continue hearings. Hearings will be continued only upon determination of "good cause," defined as an unavoidable conflict in a meeting time with another agency, doctor or company which seriously affects the health, safety or welfare of the participant or his/her immediate family. Only one continuance will be allowed.

   c.    The procedures governing the informal hearing.

3.    The procedures governing the informal hearing will be as follows:

   a.    The participant has the right to examine the contents of his/her file.

   b.    The informal hearing shall only concern issues for which the participant has received a Notice of Adverse Action.

   c.    No additional evidence may be presented at hearing. All evidence would have been subject to review by the Reasonable Accommodation Committee, therefore

if the participant wishes to submit additional evidence he or she should contact the Housing Authority and request to cancel the hearing, then submit the additional evidence to the committee.

d.  The participant may be represented by an attorney or a designated representative at his or her own expense. However, it will be required that SHRA will be given a minimum of ten (10) days advance notice of this intent. SHRA reserves the right to have its own attorney present at such a proceeding.

e.  Consistent with 24 CFR 966.55, hearing procedures will be conducted by any person or persons designated by SHRA other than the person who made or approved the decision under review or subordinate of such a person.

f.  Should the participant not appear at his/her scheduled hearing, he/she will be afforded three days to contact SHRA. SHRA will reschedule the hearing with the understanding that the claimant will provide written documentation verifying "good cause" for his/her absence. The hearing will be rescheduled only one time. **If you need to reschedule your hearing, please contact the undersigned hearing coordinator at (916) 449-6346.**

4.  Participants will be notified of the results of the hearing as follows:

a.  A written Notice of Decision will be sent to the participant within fifteen (15) calendar days of the decision.

b.  The Notice of Decision shall contain the following:

(1)  A summary of the evidence for the decision;

(2)  If the decision is based upon money owed, the amount owed shall be stated;

(3)  The date the decision goes into effect; and

(4)  The amount of time the participant has to pursue a formal hearing by filing this cause of action in a court of law.

I certify that this notice was sent by first-class mail to the addressee above on                .

Signed _____
        Ibra Henley, Hearing Coordinator

Exhibit 7

 Gmail

**David Samuel <davidsa@possiblymaybe.com>**

---

## Hearing Reschedule Response
1 message

---

**David Samuel** <davidsa@possiblymaybe.com>
To: Reasonable Accommodations <ra@shra.org>

Fri, Sep 16, 2022 at 8:02 AM

Tanya Cruz,

Please find attached our response to the phone call on Thursday, September 15th, 2022 regarding hearing officer John Lew being unable to render a decision regarding the reasonable accommodation hearing.

If you have any questions or concerns please feel free to email us at shra@possiblymaybe.com

Thank you for your time.


David

---

**2 attachments**

**SHRA_Hearing_Reschedule.pdf**
21K

**SHRA_Reasonable_Accommodation_Summary_Brief.pdf**
59K

Exhibit 8

David Samuel
Sydney Roberts
1100 Howe Ave, Apt 126
Sacramento, CA 95825
shra@possiblymaybe.com

SHRA
630 I Street
Sacramento, CA 95814
ra@shra.org
Attn:  HCV Reasonable Accommodations

CW22
T0032944

Re: t0032944

SHRA,

Our situation has been updated and we need to make additional reasonable accommodation requests.

First, we require a voucher able to accommodate an extra room to support Artemis educational and rehabilitation goals, as initially requested.  As an accommodation both Artemis and David require separate spaces, which will need to be sound isolated and setup as distraction free spaces.  These spaces are not able to be shared, as each space will be configured to accommodate different needs between David and Artemis.

The additional spaces for both David and Artemis require sound proofing and control of external light sources, preferably with black out shades for windows if necessary.

We again request that all communication be conducted via email as a reasonable accommodation.  Our email adress is shra@possiblymaybe.com.  Please feel free to email us if you have any questions or concerns.

We are requesting a list of available housing from SHRA maintained for individuals with disabilities which meets our housing needs as a reasonable accommodation.  We also request any assistance available from SHRA in finding housing which meets our housing needs.

Finally, as a reasonable accommodation for the difficulty of finding appropriate housing to fit our disability related needs, we are requesting an extension of the voucher deadline.  We request that our extension timeline include an adequate period to perform a housing search after SHRA has provided a list of available housing.

Thank you for your time.

David, Sydney, Artemis, and Demeter

via email and registered mail

**RECEIVED BY**

**SEP 2 6 2022**

**SHRA / SCAN ROOM**

SHRA003372

**Exhibit 8-2**

09/29/2022
David Samuel
Sydney Roberts
1100 Howe Ave, Apt 126
Sacramento, CA 95825
shra@possiblymaybe.com
tcode: t0032944

**SHRA**

**SEP 3 0 2022**

**Scan/Mail** C∠122

Sacramento Housing and Redevelopment Agency
630 I Street
Sacramento, CA 95814
ra@shra.org

Re: Reasonable Accommodation Voucher Status

Case Worker:

I am writing to again request that our reasonable accommodation for an extra bedroom on our voucher allocation be approved and expedited.   Please find included in this packet a copy of Artemis Samuel's medical records, which should provide certification of disability. The extra bedrooms will allow full use and enjoyment of the unit while allowing for necessary accommodations for treatment, education, and employment goals. I am including a copy of the rent affordability worksheet provided by the community as a reference.

We have spoken to the community manager in our current complex and they've determined that we would qualify under current payment standards for all units larger than two bedrooms. They have agreed to hold the unit aside for one week, at which time we will need to provide evidence that a voucher size upgrade is in process.

As SHRA has already determined a nexus exists between David Samuel's disabilities and the reasonable accommodation request, and Artemis Samuel was also included on our reasonable accommodation request pending formal diagnosis, this should provide the necessary confirmation to determine a nexus between the reasonable accommodation request also exists for Artemis Samuel.   As this reasonable accommodation has already been delayed for several months, we ask that this request be expedited so that we can begin the process of applying for and moving into the qualified unit the community has set aside for us.

If there are any additional questions or concerns, please feel free to contact us at shra@possiblymaybe.com.

Thank you for your time,


David, Maddy, Artemis, and Demeter.

SHRA003373

**Exhibit 9**

09/29/2022
David Samuel
Sydney Roberts
1100 Howe Ave, Apt 126
Sacramento, CA 95825
shra@possiblymaybe.com
tcode: t0032944

**SHRA**

**SEP 30 2022**

**Scan/Mail** C∿122

Sacramento Housing and Redevelopment Agency
630 I Street
Sacramento, CA 95814
ra@shra.org

Re: Reasonable Accommodation Voucher Status

Case Worker:

I am writing to again request that our reasonable accommodation for an extra bedroom on our voucher allocation be approved and expedited. Please find included in this packet a copy of Artemis Samuel's medical records, which should provide certification of disability. The extra bedrooms will allow full use and enjoyment of the unit while allowing for necessary accommodations for treatment, education, and employment goals. I am including a copy of the rent affordability worksheet provided by the community as a reference.

We have spoken to the community manager in our current complex and they've determined that we would qualify under current payment standards for all units larger than two bedrooms. They have agreed to hold the unit aside for one week, at which time we will need to provide evidence that a voucher size upgrade is in process.

As SHRA has already determined a nexus exists between David Samuel's disabilities and the reasonable accommodation request, and Artemis Samuel was also included on our reasonable accommodation request pending formal diagnosis, this should provide the necessary confirmation to determine a nexus between the reasonable accommodation request also exists for Artemis Samuel. As this reasonable accommodation has already been delayed for several months, we ask that this request be expedited so that we can begin the process of applying for and moving into the qualified unit the community has set aside for us.

If there are any additional questions or concerns, please feel free to contact us at shra@possiblymaybe.com.

Thank you for your time,


David, Maddy, Artemis, and Demeter.

SHRA003373

Exhibit 9-2

 **Rent Affordability Worksheet For Housing Choice Voucher Program**

September 29, 2022

**Name:** Sydney Roberts
**Prospective Address:** 1100 Howe Ave
**Voucher Issue Date:** 08-01-2022

**Tenant Code:** t0032944
**Thomas Grid:**
**Voucher Expiration Date:** 08-01-2023

| | |
|---|---|
| 1. Authorized Voucher Size: | 3 |
| 2. Total BR Size of Unit: | 3 |
| 3. Authorized Payment Standard for zipcode 95825 (from schedule using lower of voucher size and unit size): | 2,574 |
| 4. Utility Allowance (from schedule using lower of voucher size and unit size): | 262 |

> Unit Type: HCV apartments
> Cooking - Electric: 13
> Heating - Natural Gas: 31
> Water Heating - Natural Gas: 21
> Other Electric: 48
> Flat Fee Electric: 23
> Air Conditioning: 23
> Water: 47
> Sewer: 18
> Trash: 40

| | |
|---|---|
| 5. How much is the rent?: | 2,160 |
| 6. Gross Rent of Unit (Contract Rent plus Utility Allowance): | 2422 |

**If Gross Rent is less than Payment Standard (line 6 < line 3) then unit is approvable. You can stop here. Otherwise 40% rule (below) applies.**

| | |
|---|---|
| 7. Adjusted Monthly Income (ami): | 1275 |
| 8. Unadjusted Monthly Income (umi): | 1388 |
| 9. TTP (higher of 30% of ami or 10% of umi or $50): | 382 |
| 10. Total Housing Payment (GR - TTP): | 2040 |
| 11. Tenant's Portion of Rent (Contract Rent - Total Housing Payment): | 120 |

Note: if this amount is negative, it is sent to the tenant, called utility reimbursement payment, and tenant rent to owner is zero

| | |
|---|---|
| 12. 40% of adjusted monthly: | 510 |

**40% Rule: If Tenant Portion of Rent plus Utility Allowance is less than 40% of monthly adjusted income, (line 11 plus 4 < line 12) then unit is approvable**

## This unit is approvable

SHRA003374

**Exhibit 10**

DocuSign Envelope ID: 0A7E1CEB-BA21-4A63-9CB2-ACE4CDF2A696



Mailbox CW 22
t0032944

November 16, 2022

Sydney Roberts
1100 Howe AVE 126
Sacramento, CA 95825

Dear Mr./Ms. Roberts,

Your request for an additional bedroom as a reasonable accommodation for the disabilities of David and Artemis Samuel is hereby denied. Based on an evaluation of the information you and your health care professional submitted, we are unable to approve your request. Your request states that you require an additional bedroom due to disability, however, needs can be met without increasing the voucher size. We recommend alternative sleeping arrangements. There are two bedrooms currently on the voucher and they could be made available to your disabled family members.

The guidelines that are used to determine if a reasonable accommodation (RA) request meets the RA threshold are the Housing and Urban Development (HUD) regulations, the Housing Authority's administrative plan and the Housing Choice Voucher (HCV) guide book.

The regulations are found in the Code of Federal Regulations – specifically 24 CFR 982.402.

In 24CFR 982.402

- The PHA must establish subsidy standards that determine the number of bedrooms needed for families of different sizes and compositions
- The subsidy standards **must** provide for the **smallest number of bedrooms needed** to house a family without overcrowding
- The subsidy standards must be applied consistently for all families of like size and composition.

It also states that

- The family may lease an otherwise acceptable dwelling unit with fewer bedrooms than the family unit size
- The family may lease an otherwise acceptable dwelling unit with more bedrooms than the family unit size

Given these regulations the Housing Authority also has policies that guide us in addition to the HUD regulations.

Per our Administrative Plan – chapter 5

- The PHA <u>does NOT determine who shares a bedroom</u>/sleeping room, but there must be at least one person per bedroom on the voucher.





**Exhibit 10-2**

DocuSign Envelope ID. 0A7E1CEB-BA21-4A63-9CB2-ACE4CDF2A696



CHANGING LIVES

> One bedroom will be allotted for the head of household and spouse or co-head and one bedroom will be assigned for each additional two persons.
>
> *These standards relate to the number of bedrooms on the voucher, not the family's actual living arrangements.*

A third document we look at is the HCV Guidebook – which is information provided by HUD for the PHA's to use when administering the HCV program.  This document states that:

> a living room may be used as a sleeping (bedroom) space, but no more than two persons may occupy the space.

We are willing to review any additional information you may wish to submit in support of your request. Additional documentation may be faxed to (916) 264-1533.  Any information your health care provider wishes to submit, must be sent directly to our office from their office, additional information may be faxed directly to (916) 264-1533.

If you disagree with this determination, you have the right to speak with a Committee Coordinator to discuss the possibility of modifying your request, the health care provider's recommendations and/or to request a hearing, provided we receive your request within fifteen days of your receipt of this letter. You may call (916) 449-6346 to reach the Committee Coordinator by phone.

Sincerely,

*MaryLiz Paulson*

MaryLiz Paulson, Director, Housing Choice Voucher Program
Sacramento Housing and Redevelopment Agency



Equal Housing
Opportunity



Exhibit 11

 Gmail

David Samuel <davidsa@possiblymaybe.com>

---

## Reasonable Accommodation / Informal Hearing Request
3 messages

---

**Reasonable Accommodations** <ra@shra.org>                    Fri, Dec 9, 2022 at 3:33 PM
To: "home@possiblymaybe.com" <home@possiblymaybe.com>

Hello Ms. Roberts,

I apologize for the delay in getting back to you , I was out unexpectedly. It is my understanding that your preference is to communicate via email. You are welcome to contact me by phone (number is below). We received your request for an Informal Hearing and your hearing will be scheduled. With the holidays, it is most likely to be scheduled for a date in January. If you would like to request a different accommodation, I am happy to assist you with that. Please, let me know. Thank you.

Best,

Ibra Henley

Housing Choice Voucher (HCV)

Sacramento Housing and Redevelopment Agency

916.449.6346

ra@shra.org

www.shra.org



This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

---

**Reasonable Accommodations** <ra@shra.org>                    Fri, Dec 9, 2022 at 3:53 PM
To: "shra@possiblymaybe.com" <shra@possiblymaybe.com>

From: Reasonable Accommodations

**Sent:** Friday, December 9, 2022 3:33 PM
**To:** home@possiblymaybe.com
**Subject:** Reasonable Accommodation / Informal Hearing Request

[Quoted text hidden]

---

**David Samuel** <davidsa@possiblymaybe.com>                    Mon, Dec 12, 2022 at 9:52 AM
To: Reasonable Accommodations <ra@shra.org>

Ibra Henley,

Which reasonable accommodation denial would this hearing cover?  There have been several, including the September, 2022 hearing a decision was not delivered for.

In our most recent reasonable accommodation request sent via certified letter (assuming this is what you are referring to), we requested extra bedrooms to be added as a reasonable accommodation, an increase to payment standards on the voucher due to the difficulty of finding appropriate housing which suits our disability needs, that all communication with SHRA occur via a text format (preferrably email, but TTY or some other real time text service is appropriate).

As the adverse action SHRA has taken against us does not get time off for the holidays, this response should not be interpreted as waiving the timeliness requirement for the informal hearing.

Thank you
[Quoted text hidden]

**Exhibit 12**

**Archived:** Thursday, May 29, 2025 4:39:13 PM
**From:** Reasonable Accommodations
**Sent:** Monday, February 6, 2023 5:22:26 PM
**To:** Rachel Fune Carolyn Barden
**Subject:** FW: Reasonable Accommodation
**Importance:** Normal
**Sensitivity:** None
**Attachments:**
image001.png;

---

Hi,

I received this message. Â Mr. Samuel has been waiting for an Informal Hearing. Â He is asking for contact info for Legal: â€œCan you also provide an email or TTY contact number for your legal team, as we need to check on service of process for the ongoing civil complaint.â€

I donâ€™t have any information about an â€œongoing civil complaint.â€Â Not sure if you do or not.Â Thank you.
Best.

Ibra█████ (she/her/hers)
Housing Choice Voucher (HCV)
Sacramento Housing and Redevelopment Agency
916.449.6346
██████shra.org
www.shra.org

This email and any attachments thereto may contain private, confidential and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

**From:** David Samuel <davidsa@possiblymaybe.com>
**Sent:** Wednesday, February 1, 2023 1:01 PM
**To:** Reasonable Accommodations <ra@shra.org>
**Subject:** Re: Reasonable Accommodation

Hello,

Are we scheduling for one, or both reasonable accommodation denials?

We need to clearly state that this delay is not agreed to by us, and is a violation of both HUD policy and regulations, as well as FHA and ADA statutory requirements.

In our September reasonable accommodation request we requested in addition to the change in voucher size, we requested a payment standards adjustment, payment adjustment, and communication requirements among other things which were not addressed in the second denial letter. Those requests are still open despite SHRA inactivity.

SHRA000750



Mailbox CW22
T0032944

March 20, 2023

Sydney Roberts
2328 Empress Street #1
Sacramento, CA 95815

Dear Mr./Mrs. Roberts,

Your requests for one additional bedroom for David Samuel and Artemis Samuel as a reasonable accommodation and your request for Housekeeping services from SHRA as a reasonable accommodation have been reviewed by the Reasonable Accommodation Compliance Committee (RACC).  One additional bedroom for David Samuel and Artemis Samuel as a reasonable accommodation is hereby approved.  You will be issued a 3 bedroom voucher so that both David and Artemis have separate sleeping rooms and so that they can share family space.

If the basis for the approval of this reasonable accommodation ceases to exist, the approved voucher size will revert to the current eligible size.  You are responsible for reporting all changes in accordance with family obligations described at your annual recertification.

Your request for housekeeping services from SHRA as a reasonable accommodation is denied as this would be a fundamental change in the program. Sacramento Housing and Redevelopment Agency (SHRA) does not provide housekeeping services.

If you disagree with this determination, you have the right to speak with a Committee Coordinator to discuss the possibility of modifying your request, the health care provider's recommendations and/or to request a hearing, provided we receive your request within fifteen days of your receipt of this letter.  You may call (916) 449-6346 to reach the Committee Coordinator by phone.

Should you have any questions related to the change in your voucher, please contact our customer service center at (916) 440-1390 and ask for your caseworker.

Sincerely,

*MaryLiz Paulson*
MaryLiz Paulson
504 Coordinator





**Exhibit 14**

 Gmail                                   **David Samuel <davidsa@possiblymaybe.com>**

---

## Reasonable Accommodation
17 messages

---

**Reasonable Accommodations <ra@shra.org>**                 Thu, Mar 9, 2023 at 5:23 PM
To: "home@possiblymaybe.com" <home@possiblymaybe.com>

Hello.

We are very close to being able to reschedule the Informal Hearing. We apologize for the delay. I have attached pages 1-2 for each family member as you did not specify what the new request was or whom it is on behalf of. Please, complete and return as appropriate.

Best,

Ibra Henley (she/her/hers)

Housing Choice Voucher (HCV)

Sacramento Housing and Redevelopment Agency

916.449.6346

ra@shra.org

www.shra.org



This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

**4 attachments**

📄 **t0032944_3.pdf**
   164K

📄 **T0032944_2.pdf**
   164K

📄 **t00132944_1.pdf**
   159K

# Exhibit 14-2

t0032944_4.pdf
163K

---

**David Samuel** <davidsa@possiblymaybe.com>                                    Thu, Mar 9, 2023 at 6:03 PM
To: Reasonable Accommodations <ra@shra.org>

There seems to be a misunderstanding, we submitted a reasonable accommodation request on September 29th, 2022 which was denied.  That denial included the names of the family members the reasonable accommodations were requested for.

We are asking if this hearing is for the denial of separate reasonable accommodation requests. one made in May 2022 or the one made in September 2022?

David

[Quoted text hidden]

---

**David Samuel** <davidsa@possiblymaybe.com>                                    Mon, Mar 13, 2023 at 10:54 AM
To: Reasonable Accommodations <ra@shra.org>

Are these forms part of a mandatory process for requesting a reasonable accommodation?

We also need to request housekeeping services as part of the RA.

David
[Quoted text hidden]

---

**David Samuel** <davidsa@possiblymaybe.com>                                    Mon, Mar 13, 2023 at 1:35 PM
To: Reasonable Accommodations <ra@shra.org>

Also, in case it wasn't clear, we are making a reasonable accommodation request for housekeeping services from SHRA.

The purpose of the request is to a) allow us to meet the requirements of the programs inspection and housing standards requirements, and b) allow us full and equal use of the premises.

Without this reasonable accommodation we may not be able to meet the requirements of the program.  With the reasonable accommodation we will be able to meet program requirements.

Thank you,

David
[Quoted text hidden]

---

**David Samuel** <davidsa@possiblymaybe.com>                                    Thu, Mar 16, 2023 at 10:31 AM
To: Reasonable Accommodations <ra@shra.org>

We still haven't received a response to this reasonable accommodation request sent Monday, March 13th, 2023, and question about the reasonable accommodation process.

Are these forms part of a mandatory process to be granted reasonable accommodation?

And what is the status of the reasonable accommodation request made on Monday, March 13th, 2023?

David.
[Quoted text hidden]

---

**Reasonable Accommodations** <ra@shra.org>                                     Fri, Mar 17, 2023 at 3:12 PM

To: David Samuel <davidsa@possiblymaybe.com>, Reasonable Accommodations <ra@shra.org>

Hello Mr. Samuel,

I have been out of the office unexpectedly for most of the week. I will look into your questions and respond Monday, March 20, 2023.

Best,

Ibra Henley (she/her/hers)

Housing Choice Voucher (HCV)

Sacramento Housing and Redevelopment Agency

916.449.6346

ra@shra.org

www.shra.org



**NOTICE OF AGENCY HOLIDAY CLOSURE**

All SHRA offices, including Housing Choice Voucher and Conventional Public Housing, will be closed Monday, March 27, 2023 in observance of the Cesar Chavez holiday. Regular business hours will resume Tuesday, March 28, 2023.

[Quoted text hidden]

---

**Reasonable Accommodations** <ra@shra.org>                           Mon, Mar 20, 2023 at 5:37 PM
To: Reasonable Accommodations <ra@shra.org>, David Samuel <davidsa@possiblymaybe.com>

Hello Mr. Samuel,

Attached is a new decision related to your request for an additional bedroom and your request for housekeeping services. Your request for a 3BR is approved as a reasonable accommodation. (Housekeeping services are denied as this is a fundamental change to the Housing Choice Voucher program which provides rental subsidies for low-income families.)

Previously, your request for a 3rd bedroom was denied and you requested an Informal Hearing. Please let us know if the Informal Hearing is no longer needed.

Regarding your question about if our Reasonable Accommodation Request forms were required, our RA request forms are provided as a service to our participants to ensure all the questions are answered. Our form requests all of the essential information that the Committee needs to make their determination. If we receive all the relevant

information in another written format (i.e., a letter), that is fine.

[Quoted text hidden]
[Quoted text hidden]

---

**Roberts, Sydney t0032944 App_Denial2023.pdf**
223K

---

**David Samuel** <davidsa@possiblymaybe.com>                    Mon, Mar 20, 2023 at 6:14 PM
To: Reasonable Accommodations <ra@shra.org>

We request an informal hearing to appeal both the bedroom decision and the denial of housekeeping services.

Assuming that this letter overrides the denial letter issued in November 2022, which was the request for both David and Artemis Samuel, that request was for a FOUR bedroom voucher and thus this note does not meet our requirements for reasonable accommodation.

Our September 29th, 2022 reasonable accommodation request also had several additional requests which have not been addressed, separate from the housekeeping services noted.

If SHRA wishes to combine both the September 29th, 2022 reasonable accommodation request with this most recent one for house keeping services, we have no objection to that.

The "reasonable accommodation" form is a request for authorization and asks for no information specific to a reasonable accommodation at all.  What specific information does SHRA require in order to approve a reasonable accommodation request?

David
[Quoted text hidden]

---

**David Samuel** <davidsa@possiblymaybe.com>                    Mon, Mar 20, 2023 at 6:16 PM
To: Caitlyn Grabill <cgrabill@consumersselfhelp.org>

Caitlyn,

So supposedly a three bedroom voucher has been approved, but they are also using the Empress address to physically mail the letter.  Can you check into this with SHRA?

David
[Quoted text hidden]

---

**4 attachments**

 **image001.png**
15K

 **image001.png**
15K

 **image001.png**
15K

**Roberts, Sydney t0032944 App_Denial2023.pdf**
223K

**Exhibit 14-5**

**David Samuel** <davidsa@possiblymaybe.com>                    Mon, Mar 20, 2023 at 6:19 PM
To: Reasonable Accommodations <ra@shra.org>

Further we've completed all online renewals and verification to our current address at 1100 Howe Ave, Apt 126, Sacramento CA, 95825. We have two years worth of letters, addressed to us at this address for the last two years, including the reasonable accommodation denial letters.

Why is this letter, with confidential information, being mailed to an address SHRA has good knowledge is invalid?

David
[Quoted text hidden]

---

**David Samuel** <davidsa@possiblymaybe.com>                    Mon, Mar 20, 2023 at 6:26 PM
To: "Dulce C. Candy" <maddy@possiblymaybe.com>

---------- Forwarded message ---------
From: **David Samuel** <davidsa@possiblymaybe.com>
Date: Mon, Mar 20, 2023 at 6:14 PM
Subject: Re: Reasonable Accommodation
To: Reasonable Accommodations <ra@shra.org>

[Quoted text hidden]

**2 attachments**


image001.png
15K


image001.png
15K

---

**David Samuel** <davidsa@possiblymaybe.com>                    Tue, Mar 21, 2023 at 5:24 AM
To: Reasonable Accommodations <ra@shra.org>

Apologies for the third email so soon, however I hope this helps with clarity regarding this case.

We accept the "reasonable accommodation committee" decision to offer a third bedroom "so that both David and Artemis have separate sleeping rooms and so that they can share family space."

We look forward to the issuance of that voucher immediately to assist in our search for appropriate housing.

This offer however does not satisfy the need for hearing as the offer does not satisfy the requested reasonable accommodation need for David or Artemis. As noted in both the May 2022 and September 2022 requests, the request is not for extra sleeping space but for a room which will be used to facilitate David and Artemis educational, employment, and medical treatment needs.

As explained in the September 12, 2022 hearing and the September 2022 reasonable accommodation request, the rooms are effectively medical devices in and of themselves, configured specifically to accommodate both David and Artemis disability related needs. Both the July and November 2022 denial letters acknowledge this use when they stated our family sleep in the living room and use the second bedroom for disability related needs.

Considering this, we still have three outstanding reasonable accommodation denials which need to be addressed via informal hearing.

Further, in light of SHRA's offer to grant an exception of an extra sleeping room based on our family circumstances consistent with 24 CFR 982.402(b)(8), we need to modify our September 2022 reasonable accommodation request for a voucher size of five bedrooms, the three bedroom base voucher, plus one room each for Artemis and David's disability related needs.

It has been ten months since our initial reasonable accommodation request and more than the 90 days noted in SHRA's PHA plan for an informal hearing regarding this matter. As SHRA continues to enforce adverse action against us while in violation of both HUD requirements and SHRA's own documented policy and procedures manual, we expect informal hearings for these matters to occur as promptly as possible as we are still experiencing harm due to these violations.

It is unclear why SHRA did not grant the reasonable accommodation request while knowingly not having the capacity to hold an informal hearing consistent with HUD regulation, but we look forward to exploring that as part of the informal hearing process.

In summary, we accept the three bedroom offer from SHRA granted as an exception for our family circumstances and look forward to the voucher being issued as soon as possible. We also still require informal hearings for all three reasonable accommodation denials, as the exception does not satisfy our reasonable accommodation request.

David

[Quoted text hidden]

---

**David Samuel** <davidsa@possiblymaybe.com>                                          Tue, Mar 21, 2023 at 6:02 AM
To: Caitlyn Grabill <cgrabill@consumersselfhelp.org>, "Dulce C. Candy" <maddy@possiblymaybe.com>

---------- Forwarded message ----------
From: **David Samuel** <davidsa@possiblymaybe.com>
Date: Tue, Mar 21, 2023, 5:24 AM
Subject: Re: Reasonable Accommodation
To: Reasonable Accommodations <ra@shra.org>

[Quoted text hidden]

---

**Caitlyn Grabill** <cgrabill@consumersselfhelp.org>                                   Tue, Mar 21, 2023 at 9:35 AM
To: David Samuel <davidsa@possiblymaybe.com>

Yes! I will email your SHRA worker this morning.

*Caitlyn J. Grabill* | (she/her/hers)

**Intensive Case Manager | Consumers Self Help Center**



1851 Heritage Lane, Suite 187 | Sacramento, CA 95815

Work cell: 916.767.7643

# Exhibit 14-7

www.consumersselfhelp.org

[Quoted text hidden]

---

**Caitlyn Grabill** <cgrabill@consumersselfhelp.org>                    Tue, Mar 21, 2023 at 9:40 AM
To: David Samuel <davidsa@possiblymaybe.com>

Sorry for a thousand emails!

For stone creek and pheasant, should I go and finish them or should we retract and apply for 3 bed instead?



*Caitlyn J. Grabill*  |(she/her/hers)

**Intensive Case Manager | Consumers Self Help Center**

1851 Heritage Lane, Suite 187| Sacramento. CA 95815

Work cell: 916.767.7643

www.consumersselfhelp.org

From: David Samuel <davidsa@possiblymaybe.com>
Sent: Monday, March 20, 2023 6:16 PM
To: Caitlyn Grabill <cgrabill@consumersselfhelp.org>
Subject: Fwd: Reasonable Accommodation

Caitlyn,

[Quoted text hidden]

---

**David Samuel** <davidsa@possiblymaybe.com>                    Tue, Mar 21, 2023 at 9:57 AM
To: Caitlyn Grabill <cgrabill@consumersselfhelp.org>

Caitlyn (correctly),

Let's get the bird in the hand first with the voucher first before we commit to pushing on the 3 bedroom option. Since they usually respond pretty fast for you, let's pause submitting application fees (and the like) for 24 hours.

**Exhibit 14-8**

If we can confirm the voucher, then I think these jump up to the first preference: https://www.arborshomes.com/floorplans/magnolia-renovated. I have a friend who lives in the area, and these are kind of like duplexes including a fenced yard and the elementary school is attached directly to the community.

Whichever we go, please make sure we are documenting all this thoroughly as the intention is to make the economic impact of this part of what I ask them to reimburse to CSH.

[Quoted text hidden]

---

**Reasonable Accommodations** <ra@shra.org>                                           Tue, Mar 21, 2023 at 12:57 PM
To: David Samuel <davidsa@possiblymaybe.com>, Reasonable Accommodations <ra@shra.org>


Thank you. Your emails have been received.

[Quoted text hidden]

| Reasonable Accommodation | General | Informal Hearing Notice mailed via USPS and emailed (davidsa@possiblymaybe.com) to family. IH scheduled for 04.20.2023 @ 3:00pm via ZOOM. | ihenley | 4/4/2023 | | | | | |
| RFTA Received | Tracking On - FSRP | RFTA Submitted for T0032944 at 7957 Papago Way, Antelope, CA 95843 on 4/2/2023 via RFTA Online | | 4/2/2023 | | | | | |
| Reasonable Accommodation | General | RA committee met to discuss additional room for both spouse (Samuel) and child (Artimes), black out curtains and sound proofing, list of available housing, assistance with housing search, email communication only, and extensions. Request for additional bedrooms is denied as no nexus is provided by medical provider. Additionally denying request for email communication only as there is no nexus to support for Hoh. RA will be voiding the request for blackout curtains, soundproofing, assistance with searching services, list of available housing, and extension requests. The assistance is already being provided. | mmagana | 3/29/2023 | | | | | |
| Annual | Letter | Annual recertification packet printed. Letter date is Apr 15 2023 | | 3/23/2023 | | 8/1/2023 | | | |
| Reasonable Accommodation | General | On 03/20/2023, the R/A committee considered a request for an additional bedroom for David Samuel and Artemis Samuel and for "housekeeping services from SHRA." Request for one additional bedroom is approved and voucher size will be increased to a three bedroom. The request for housekeeping services is denied as this would be a fundamental change in the program. SHRA does not provide housekeeping services. | ihenley | 3/21/2023 | | | | | |
| Voucher Extension - Operations | General | New Service Provider, Consumer Self Help, reached out requesting a voucher extension. Per supervisor, MNgo, extension is approved. Voucher now expires 5/8/23. Emailed to new service provider. | lmacias | 3/9/2023 | | | | | |
| Phone Calls - Operations | Tracking Off | Call tracked off. Response sent via Portal | lmacias | 2/1/2023 | | | | | |
| Notification | General | home@possiblymaybe.com: Please check your email regarding status of the request for RA hearing. | cw22 | 2/1/2023 | | | | | |
| Reasonable Accommodation | General | Responded to request for call back. In previous communication with Mr.Samuel, he specifically requested that communication be via email; shra@possiblymaybe.com Emailed hoh regarding the request for an informal hearing. Request was received and family is in the queue for a hearing. This writer explained that we hope to schedule the hearing very soon and if they need assistance with requesting a different/new reasonable accommodation, that this writer would be happy to assist. This writer's phone number is listed in the emails. Email sent to shra@possiblymaybe.com and home@possiblymaybe.com from ra@shra.org. | ihenley | 2/1/2023 | | | | | |
| Callback confirmation email sent | General | home@possiblymaybe.com | | 1/31/2023 | | | | | |
| Callback confirmation text sent | General | 5129178112: Your callback request has been forwarded to your caseworker. They will return your message within the next 48 hours. Thank you, SHRA | | 1/31/2023 | | | | | |
| Phone Calls - Operations | OperSpec22 | Tenant requested a phone call at 5129178112 via the Resident Portal regarding: I would like to request a reasonable accommodation, Still no response re: RA or hearings for prior RA. | | 1/31/2023 | | | | | |
| Reasonable Accommodation | General | Responded to request for call back. In previous communication with Mr.Samuel, | ihenley | 12/9/2022 | | | | | |



Mailbox cw22
T0032944

April 3, 2023

Sydney Roberts
2328 Empress Street #1
Sacramento, Ca 95815

Dear Mr./Ms. Roberts,

Your request for separate bedrooms on behalf of David and Artemis as a reasonable accommodation (RA) for their disabilities is hereby denied. An additional bedroom was previously approved to allow both David and Artemis to have their own rooms. No nexus was established to provide both David and Artemis two bedrooms each.

Your request for sound proofing and black out curtains in the rooms on behalf of David and Artemis as a reasonable accommodation for their disabilities is hereby voided. This request should be directed to the unit's landlord. Sacramento Housing and Redevelopment Agency (SHRA) does not have jurisdiction over the physical unit.

Your request to have all communication conducted via email on behalf of David as a reasonable accommodation for his disability is hereby denied. In most instances, communication is directed to the head of household, Sydney Roberts. We have not received any information regarding Ms. Roberts being disabled. As a courtesy, during the RA process, we have communicated with Mr. Samuel via email as the reasonable accommodation request(s) involved him directly.

Requests for voucher extensions are granted at the department level, by your caseworker. If and when a requested extension is denied, you may request an exception as a reasonable accommodation.

You may find resources / assistance to find housing using the following links:
https://www.shra.org/find-housing/
https://www.shra.org/wp-content/uploads/2023/01/Project-Listing-for-website-2022-1-30-23.pdf
https://www.shra.org/targeted-population-housing-programs/







CHANGING LIVES

The "Finding Housing Using Your Voucher Workshop" is conducted virtually and you can register at, https://shra-org.zoom.us/meeting/register/tZcIdOyopj8tG9CGqKEcgkoBR6v0SwrSE0wI. There is also a "How to Find and Keep Housing Using Your Voucher Video" located here https://www.shra.org/housing-choice-voucher-program/ https://www.affordablehousing.com/sacramento-ca/9090-chantal-way-331099/

We are willing to review any additional information you may wish to submit in support of your request. Any information your health care provider wishes to submit, must be sent directly to our office from their office, additional information may be faxed directly to (916) 264-1533.

If you disagree with this determination, you have the right to speak to a Committee Coordinator and/or to request a hearing, provided we receive your request within 30 days of your receipt of this letter. You may call (916) 449-6346 to reach the Committee Coordinator by phone.

Sincerely,

*MaryLiz Paulson*

MaryLiz Paulson
504 Coordinator



Equal Housing
Opportunity





T0032944
cw22

April 3, 2023

Sydney Roberts
1100 Howe Ave #126
Sacramento, CA 95825

SUBJECT: NOTICE OF HEARING

Dear Mr/Mrs **Roberts:**

We received your request for a hearing regarding the matter below:

_____ Termination of your Section 8 eligibility.

_____ Change in your family's rent portion.

_ ____ Change in the unit size of your Certificate or Voucher.

X         Denial of Your Reasonable Accommodation

This is to notify you that you have been scheduled to meet with a Hearing Officer on **04.20.2023 at 3:00pm.** The hearing will be held via ZOOM. Please, follow the link here; https://shra-org.zoom.us/j/89874208936


**Please call 916-449-6346 to confirm that you will attend this hearing at the stated time and date no later than 04.13.2023.** If you are unable to connect via Zoom video we can arrange to provide you with on-site assistance at our office at 630 I Street, Sacramento, CA 95814. You also have the option of calling into the Zoom meeting.  We have your email address as shra@possiblymaybe.com and this is where we will send the link to the meeting. If this is no longer a good email address, please contact us to update it right away.

The Housing Authority made a decision on your case based on the information provided at the time. If you submit new information for the Reasonable Accommodation (RA) Committee to consider or if your situation has changed, please, provide this written documentation to your caseworker 5 days prior to the hearing as it may affect the decision. Note: the RA Committee may have to review and consider new information, prior to the hearing.

The Hearing Officer's function is to review the Housing Authority's decision to ensure that it is consistent with regulation and policy.

**If you should require the agency to provide a translator please call (916) 449-6346 no later than 5 days before the hearing, so that arrangements may be made.  Please feel free to leave a message including the client name and the language needed.**

If you are unable to attend this hearing at the scheduled date and time, please call the person

certifying this notice at (916) 449-6346.  If you arrive more than 15 minutes late or are unable to attend, please be prepared to show good cause why the hearing should be rescheduled. Good Cause is described below in Section 2b.

## HEARING PROCESS

The following guidelines will be used to govern the informal hearing process for the Housing Choice Voucher (HCV) Programs administered by the Sacramento Housing and Redevelopment Agency (SHRA).

1. Upon receipt of the hearing request, the proposed adverse action will be suspended pending the outcome of the hearing.

2. The participant will be notified of the hearing in writing within 60 days of the receipt of the hearing request.  The notice shall specify:

    a. The date, time and place of the hearing.

    b. A contact person and phone number to be used to reschedule and continue hearings. Hearings will be continued only upon determination of "good cause," defined as an unavoidable conflict in a meeting time with another agency, doctor or company which seriously affects the health, safety or welfare of the participant or his/her immediate family.  Only one continuance will be allowed.

    c. The procedures governing the informal hearing.

3. The procedures governing the informal hearing will be as follows:

    a. The participant has the right to examine the contents of his/her file.

    b. The informal hearing shall only concern issues for which the participant has received a Notice of Adverse Action.

    c. No additional evidence may be presented at hearing. All evidence would have been subject to review by the Reasonable Accommodation Committee, therefore if the participant wishes to submit additional evidence he or she should contact the Housing Authority and request to cancel the hearing, then submit the additional evidence to the committee.

    d. The participant may be represented by an attorney or a designated representative at his or her own expense.  However, it will be required that SHRA will be given a minimum of ten (10) days advance notice of this intent.  SHRA reserves the right to have its own attorney present at such a proceeding.

    c. Consistent with 24 CFR 966.55, hearing procedures will be conducted by any person or persons designated by SHRA other than the person who made or approved the decision under review or subordinate of such a person.

**Exhibit 17-3**

f.     Should the participant not appear at his/her scheduled hearing, he/she will be afforded three days to contact SHRA. SHRA will reschedule the hearing with the understanding that the claimant will provide written documentation verifying "good cause" for his/her absence. The hearing will be rescheduled only one time. **If you need to reschedule your hearing, please contact the undersigned hearing coordinator at (916) 449-6346.**

4.     Participants will be notified of the results of the hearing as follows:

a.     A written Notice of Decision will be sent to the participant within fifteen (15) calendar days of the decision.

b.     The Notice of Decision shall contain the following:

(1)     A summary of the evidence for the decision;

(2)     If the decision is based upon money owed, the amount owed shall be stated;

(3)     The date the decision goes into effect; and

(4)     The amount of time the participant has to pursue a formal hearing by filing this cause of action in a court of law.

I certify that this notice was sent by first-class mail to the addressee above on 04.04.2023.


Signed _____

        Ibra Henley, Hearing Coordinator

**Exhibit 18**

It is our expectation that a digital copy of the complete hearing, including the private conversation between Tanya Cruz, Troy ███ and D'Jon Paul Scott-Miller and transcript will be provided in a reasonably expeditious manner.

Further, we have concerns that SHRA and it's employees, specifically Troy ███ Ibra ███ MaryLiz ███ and LaShelle ███ are retaliating against our family due to these reasonable accommodation issues. Specifically, a request to expedite an HQS inspection was provided and agreed to by SHRA, a copy of an unlawful detainer was made available to support the request to expedite. SHRA has decided to neither expedite or process in a reasonable amount of time the necessary inspections despite being aware of the unlawful detainer.

We do not understand why SHRA continues to discriminate against our family and retaliate against us for seeking redress regarding that discrimination, but we again ask that this stop.

Thank you for your time,


David

On Tue, Apr 18, 2023 at 4:02â€¯PM David Samuel <davidsa@possiblymaybe.com> wrote:

Ibra,

We still need access to the complete case file.

Is SHRA planning on presenting any evidence or have any witnesses testify regarding the RACC justification for the decisions?

Is SHRA still planning on barring presentation of any evidence challenging the RACC justification?

Can you provide the specific request denials this hearing will cover, the date the denial was issued should be sufficient.

We plan on presenting four pieces of evidence contemporaneous to the RACC decision, attached to this email:
1) email chain between us and Ashley Valentine, beginning May 26, 2022 and ending May 31, 2022.
2) Kaiser Medical Messages between David Samuel and Dr. Michael Medina dated July 20, 2022.
3) email chain between us and Ibra ███ titled "Reasonable Accommodation / Informal Hearing Request" dated December 09, 2022.
4) email chain between us and Ibra ███ titled "Reasonable Accommodation" dated February 01, 2023.

All other documents will either be presented by SHRA or should exist within our case file.

We may provide extra documents if additional evidence or testimony regarding the RACC process is presented at the hearing.

We request the complete electronic copy of the hearing as soon as it is available, and request pricing for the transcription.

Does SHRA plan to make available the real time text service or voice to text translation service requested as a reasonable accommodation?

As an aside, the dates in Mr. ███ timeline vary from the dates in the provided documentation, e.g. the hearing date (September 12, 2022) and the date physician endorsement was submitted (May 31, 2022).

Thank you for your time,

David

SHRA001340

Exhibit 18-2

On Tue, Apr 18, 2023 at 3:09â€¯PM Reasonable Accommodations <ra@shra.org> wrote:

Hello Mr. Samuel,

The documents have been placed in a folder in BOX. You should have received a link to that folder which contains the Informal Hearing Brief and exhibits. Please, check your junk folder if you do not see the email. The hearing will be recorded. We can provide you with an electronic copy. You may have the recording transcribed at your own expense.

Please, confirm that your attorney will be present at the Informal Hearing. Thank you.

Best,

Ibra ██████ (she/her/hers)
Housing Choice Voucher (HCV)
Sacramento Housing and Redevelopment Agency
916.449.6346
██████ shra.org
www.shra.org



This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

---

**From:** David Samuel <davidsa@possiblymaybe.com>
**Sent:** Tuesday, April 18, 2023 12:49 PM
**To:** Reasonable Accommodations <ra@shra.org>; Troy ███ <██████ shra.org>; La Shelle ███ <██████ shra.org>; MaryLiz ███ <██████ shra.org>; bouncetestcba321@shra.org; Dulce C. Candy <maddy@possiblymaybe.com>; Maddy, David and Artemis Samuel <home@possiblymaybe.com>
**Subject:** Re: Waive or Expedite HQS inspection, expedited RTFA processing

All,

SHRA still has not communicated that it intends to comply with regulations protecting our due process rights enumerated in 24 CFR 982.55.

Specifically SHRA has failed to communicate any information about the actual matter of the hearing, has not provided the necessary discovery materials and requested witness information, is disallowing the presentation of evidence, and has not acknowledged the request for recording and transcription.

Further, SHRA still has not communicated that it intends to comply with our reasonable accommodation request for a text based, voice to text, or real time transcription service to be made available so that we may be able to fully participate.

As SHRA is recently under advisement that their policies do in fact violate necessary due process requirements via the summary judgements granted in Welch v. Housing Authority of the County of Sacramento et al 2:2021cv00974 TLN (ED California 2021), it's our hope that you will take the necessary precautions against continuing this pattern of discriminatory behavior.

SHRA001341

**Archived:** Thursday, May 29, 2025 7:42:52 PM
**From:** David Samuel
**Mail received time:** Thu, 20 Apr 2023 23:12:09
**Sent:** Thu, 20 Apr 2023 16:11:26
**To:** Reasonable Accommodations
**Cc:** Troy ▮ La Shelle ▮ MaryLiz ▮ bouncetestcba321@shra.org Dulce C. Candy Maddy, David and Artemis Samuel
**Subject:** Re: Waive or Expedite HQS inspection, expedited RTFA processing
**Importance:** Normal
**Sensitivity:** None
**Attachments:**
image001.png; image002.png;

---

All,

I wanted to follow up with everyone regarding the reasonable accommodation hearing which was scheduled today at 3:00pm on 04/20/2023.

The zoom hearing was attended by Tanya Cruz and Troy ▮ representing SHRA, and D'Jon Paul Scott-Miller of the Alameda Housing Authority acting as Hearing Officer.

The meeting was recorded, as confirmed during the meeting by Tanya Cruz and D'Jon Paul Scott-Miller.

SHRA, represented by Ibra ▮ over email, and Tanya Cruz in the hearing have both confirmed that a digital copy of the meeting would be made available, and that a transcript would also be made available. All parties are aware that we made this request and have not indicated a reason why it would not be available.

We also requested a real time text or voice to text service be made available as a reasonable accommodation. This was not provided.

Prior to the meeting, we requested our case file and all documents regarding the case be available before hand, to ensure due process provided by  These were not made available.

In response to our request for these documents, particularly any documentation the reasonable accommodation committee used in processing the decision to deny our May 19, 2022 reasonable accommodation request, SHRA, represented by Tanya Cruz cancelled hearing after a private discussion with D'Jon Paul Scott-Miller.

We objected to this cancellation, asked if any form of relief of appeal was available, and clearly stated that we were ready to proceed without the requested documents rather than reschedule. Tanya Cruz insisted the hearing was cancelled and would be rescheduled, and when challenged why Tanya Cruz was making this decision rather than the hearing officer, and again stating our objection and willingness to proceed, D'Jon Paul Scott-Miller ignored our willingness to proceed and affirmed the cancellation of the hearing.

This is the second time SHRA has cancelled a hearing regarding this issue, despite setting the hearing and having adequate notice of the issues.

SHRA001300

It is our expectation that a digital copy of the complete hearing, including the private conversation between Tanya Cruz, Troy ███ and D'Jon Paul Scott-Miller and transcript will be provided in a reasonably expeditious manner.

Further, we have concerns that SHRA and it's employees, specifically Troy ███ Ibra ███ MaryLiz ███ and LaShelle ███ are retaliating against our family due to these reasonable accommodation issues. Specifically, a request to expedite an HQS inspection was provided and agreed to by SHRA, a copy of an unlawful detainer was made available to support the request to expedite. SHRA has decided to neither expedite or process in a reasonable amount of time the necessary inspections despite being aware of the unlawful detainer.

We do not understand why SHRA continues to discriminate against our family and retaliate against us for seeking redress regarding that discrimination, but we again ask that this stop.

Thank you for your time,


David


On Tue, Apr 18, 2023 at 4:02 PM David Samuel <davidsa@possiblymaybe.com> wrote:
Ibra,

We still need access to the complete case file.

Is SHRA planning on presenting any evidence or have any witnesses testify regarding the RACC justification for the decisions?

Is SHRA still planning on barring presentation of any evidence challenging the RACC justification?

Can you provide the specific request denials this hearing will cover, the date the denial was issued should be sufficient.

We plan on presenting four pieces of evidence contemporaneous to the RACC decision, attached to this email:
1) email chain between us and Ashley Valentine, beginning May 26, 2022 and ending May 31, 2022.
2) Kaiser Medical Messages between David Samuel and Dr. Michael Medina dated July 20, 2022.
3) email chain between us and Ibra ███ titled "Reasonable Accommodation / Informal Hearing Request" dated December 09, 2022.
4) email chain between us and Ibra ███ titled "Reasonable Accommodation" dated February 01, 2023.

All other documents will either be presented by SHRA or should exist within our case file.

We may provide extra documents if additional evidence or testimony regarding the RACC process is presented at the hearing.

We request the complete electronic copy of the hearing as soon as it is available, and request pricing for the transcription.

Does SHRA plan to make available the real time text service or voice to text translation service requested as a reasonable accommodation?

As an aside, the dates in Mr. ███ timeline vary from the dates in the provided documentation, e.g. the hearing date (September 12, 2022) and the date physician endorsement was submitted (May 31, 2022).

SHRA001301

## Transcript 1: GMT20230420-220455_Recording_640x360 3 min (transcribed on 06-Mar-2026 21-07-21).srt

1
00:00:00,000 --> 00:00:29,980
Thank you.

2
00:00:30,000 --> 00:00:42,320
Hello.

3
00:00:42,320 --> 00:00:48,300
Can you hear us okay, Mr. Roberts?

4
00:00:49,340 --> 00:00:50,300
Yes, I can hear you.

5
00:00:51,000 --> 00:00:51,360
Great.

6
00:00:52,820 --> 00:00:55,140
So my name is Dijon Paul Scott Miller.

7
00:00:55,140 --> 00:00:59,540
I am the informal hearing officer for you today.

8
00:01:00,000 --> 00:01:05,280
I am an independent person outside of Sacramento Housing Authority, so I am unfamiliar with

9
00:01:05,280 --> 00:01:05,940
your case.

10
00:01:06,440 --> 00:01:08,680
There are no biases on my end.

11
00:01:09,460 --> 00:01:18,100
And so I will be reviewing any documentation submitted by yourself or Sacramento Housing

Exhibit 20-2

00:01:18,100 --> 00:01:23,900
Authority listening to you all's testimony today and making a written decision within

00:01:23,900 --> 00:01:25,440
14 days.

00:01:26,179 --> 00:01:29,960
Do you have any questions before we get started?

00:01:31,600 --> 00:01:31,840
Yeah.

00:01:32,100 --> 00:01:35,500
How familiar are you with what the case is about?

00:01:36,340 --> 00:01:39,000
I don't know anything about what the case is about.

00:01:39,480 --> 00:01:44,780
Do you have experience with regional accommodation, the interactive process?

00:01:45,460 --> 00:01:45,960
I do.

00:01:46,580 --> 00:01:46,800
Okay.

00:01:47,460 --> 00:01:48,440
That's what I need.

00:01:49,539 --> 00:01:50,640
I'm ready to start.

00:01:50,640 --> 00:01:52,300
Okay, great.

00:01:52,840 --> 00:01:55,420
So Sacramento Housing Authority will go first.

00:01:55,620 --> 00:02:03,900
They will present a brief and any documentation that they may need to go over.

00:02:04,660 --> 00:02:11,920
Once they have finished going over the brief and any documentation, you are able to respond

00:02:11,920 --> 00:02:16,980
or rebut anything that they have stated and then present your case.

00:02:16,980 --> 00:02:17,859
It seems like it.

00:02:18,100 --> 00:02:21,000
Just before we get started, I do have a couple of issues.

00:02:21,859 --> 00:02:24,899
The first is you're going to see me looking away quite often.

00:02:26,000 --> 00:02:28,620
I need a text-to-speech translator.

00:02:28,920 --> 00:02:32,280
I requested that as a reasonable accommodation and it wasn't provided.

00:02:32,820 --> 00:02:34,959
So I'm having to run that on another computer.

00:02:35,780 --> 00:02:43,079
It's not perfect, but I may need to interrupt a bit to make sure that what the translator

00:02:43,080 --> 00:02:45,560
is telling me is accurate to what's being said.

36
00:02:48,480 --> 00:02:48,920
Okay.

37
00:02:49,340 --> 00:02:53,720
The second thing is that I still haven't received the case file yet.

38
00:02:55,200 --> 00:02:58,300
You know, it's in the CFRs that that should have been provided.

39
00:02:58,780 --> 00:03:06,680
I asked for it a couple of times and I still have no idea how to verify any of the documents

40
00:03:06,680 --> 00:03:10,360
or statements that they're going to make without having access to that case file.

41
00:03:11,000 --> 00:03:18,220
So just to make that due process issue known, you know, we haven't covered the reasonable

42
00:03:18,220 --> 00:03:22,100
accommodation request and we still don't have the actual case file.

43
00:03:22,960 --> 00:03:27,140
David, if you wouldn't mind, I'm going to have you go into the waiting room

44
00:03:27,140 --> 00:03:30,559
and then I'll call you back in a second.

45
00:03:36,519 --> 00:03:36,920
Okay.

46
00:03:37,000 --> 00:03:38,420
Give me one second.

47
00:03:38,820 --> 00:03:39,399
I'll be right back.

## Transcript 2: GMT20230420-221057_Recording_640x360 9 min (transcribed on 06-Mar-2026 21-06-31).srt

1
00:00:00,000 --> 00:00:16,320
So I'm hoping that conversation was recorded because we just did the whole I don't know anything

2
00:00:16,320 --> 00:00:22,080
about the case thing and we just sidebarred for a private conversation without even asking.

3
00:00:22,400 --> 00:00:23,660
That was a little weird.

4
00:00:26,160 --> 00:00:29,940
So David, I did check in with you, let you know you'd be going into the rating room,

5
00:00:30,080 --> 00:00:35,320
but what's going to happen because you didn't have time or the brief was not provided to you,

6
00:00:35,820 --> 00:00:39,400
we're going to make sure the brief is provided to you so you can review.

7
00:00:39,400 --> 00:00:42,220
Not the brief, the case file.

8
00:00:43,060 --> 00:00:43,720
I have the brief.

9
00:00:46,320 --> 00:00:48,360
What do you mean the case file?

10
00:00:49,020 --> 00:00:52,900
The case file that would contain the notes that, for example,

11
00:00:53,020 --> 00:00:56,760
the reasonable accommodation committee used to decide.

Exhibit 20-6

00:00:57,080 --> 00:00:58,480
Yeah, that's the brief.

00:00:58,720 --> 00:01:01,360
We call it a brief and exhibit.

00:01:02,000 --> 00:01:07,740
So because you don't have it, we are going to make sure you get it so you can review

00:01:07,740 --> 00:01:09,480
and this hearing will be rescheduled.

00:01:11,340 --> 00:01:11,860
No.

00:01:11,860 --> 00:01:19,100
Firstly, I'm not sure that you're understanding.

00:01:19,240 --> 00:01:22,060
I'm actually wanting the entire SHRA case file.

00:01:22,720 --> 00:01:29,060
You know, 92555 specifically says the entire SHRA case file.

00:01:29,480 --> 00:01:32,940
Not a brief, not the entire case file.

00:01:32,940 --> 00:01:39,800
I know that if somebody asks you for a case file, does that sound like a brief?

00:01:41,259 --> 00:01:47,539
So you mentioned that you wanted the documents that were used by the committee to make the
decision,

00:01:47,960 --> 00:01:51,000
which would be the entire case file, which includes the documents.

00:01:51,340 --> 00:01:51,460
Yep.

00:01:51,920 --> 00:01:52,100
Yeah.

00:01:52,100 --> 00:01:54,940
And that's what we're going to get to you so that you have time to review

00:01:54,940 --> 00:01:57,160
and this hearing will be rescheduled.

00:01:57,160 --> 00:02:00,880
So I don't agree with that.

00:02:01,619 --> 00:02:09,780
If I may, sir, it sounds like you're wanting to review your entire file,

00:02:09,900 --> 00:02:13,400
your housing authority file before the hearing.

00:02:13,800 --> 00:02:16,840
That's the request that was made and you're saying was not granted.

00:02:17,660 --> 00:02:20,519
Yeah, that was a request that I made several days ago.

00:02:20,520 --> 00:02:21,220
Okay.

00:02:21,760 --> 00:02:26,880
And that we have already gotten to this point without providing it.

00:02:27,500 --> 00:02:35,100
And this has been delayed since, I'm not sure which issue this is supposed to be covering,

00:02:35,300 --> 00:02:39,220
but the first denial was July 8, 2002.

00:02:39,820 --> 00:02:43,000
And it is now April 20, 2023.

00:02:43,000 --> 00:02:49,260
And SHRA is asserting that we need to make another delay.

00:02:51,560 --> 00:02:58,240
That's, I would rather make a note of that and continue.

00:03:00,560 --> 00:03:01,280
Okay.

00:03:01,280 --> 00:03:11,600
I do find it important since you stated that your due process was not followed,

00:03:12,000 --> 00:03:16,420
that you have time to review your file.

00:03:18,000 --> 00:03:24,720
Especially, it sounds like you, like that's important for you to present a case today.

00:03:25,500 --> 00:03:30,300
It's not important for me to present a case since members of the reasonable accommodation

00:03:30,300 --> 00:03:31,120
committee are here.

00:03:31,280 --> 00:03:38,500
So we're going to still move forward with rescheduling because we need to make sure

00:03:38,500 --> 00:03:39,700
you've had time to review.

**48**
00:03:39,760 --> 00:03:45,860
I want to make a note that she is telling me what's happening and not you, the hearing officer.

**49**
00:03:46,480 --> 00:03:49,180
This is really unusual.

**50**
00:03:49,400 --> 00:03:50,480
Yeah, a little bit.

**51**
00:03:51,040 --> 00:03:52,240
No, it's not unusual.

**52**
00:03:53,060 --> 00:03:54,100
This is the house.

**53**
00:03:54,220 --> 00:04:01,260
I mean, it's the housing authority and I am an independent contractor acting as a hearing officer.

**54**
00:04:01,280 --> 00:04:01,840
Okay.

**55**
00:04:02,200 --> 00:04:07,140
I have stated that your due process was not followed and that you made a request to review

**56**
00:04:07,140 --> 00:04:10,260
your case file prior to the hearing.

**57**
00:04:10,700 --> 00:04:16,100
And so I do find it also important that you have that opportunity before you proceed with

**58**
00:04:16,100 --> 00:04:17,040
an informal hearing.

**59**
00:04:17,220 --> 00:04:20,920
So the hearing will be rescheduled for you to have that process as requested.

Exhibit 20-10

00:04:21,500 --> 00:04:21,720
Okay.

00:04:21,720 --> 00:04:21,800
Okay.

00:04:22,380 --> 00:04:26,900
This recording, the transcript is being provided and the electronic copy of this is still being

00:04:26,900 --> 00:04:29,940
provided, including the off-the-record conversation?

00:04:29,940 --> 00:04:33,580
There was no off-the-record conversation.

00:04:33,580 --> 00:04:42,000
But when we broke and immediately Tanya, as she stated before we broke, that she was going

00:04:42,000 --> 00:04:43,320
to go look into something.

00:04:43,440 --> 00:04:46,460
She wanted to look into whether or not the brief was provided.

00:04:46,460 --> 00:04:50,880
And when Tanya came back to the group, the recording resumed.

00:04:51,419 --> 00:04:57,000
And that is when she let both myself and Troy know that the hearing would be rescheduled

00:04:57,000 --> 00:05:00,700
for you to receive what you have requested.

00:05:01,099 --> 00:05:02,900
So yes, everything was recorded.

72
00:05:03,039 --> 00:05:05,539
There was no off-the-record conversations had.

73
00:05:05,979 --> 00:05:06,120
Perfect.

74
00:05:06,340 --> 00:05:06,500
Okay.

75
00:05:06,659 --> 00:05:11,140
That's what I needed to make sure that everything was recorded and I'll be able to see those

76
00:05:11,140 --> 00:05:12,020
statements being made.

77
00:05:12,020 --> 00:05:14,419
Yes.

78
00:05:16,820 --> 00:05:22,700
So, I mean, thanks for wasting all of our times for, I mean, it's not like there weren't,

79
00:05:23,299 --> 00:05:23,740
it wasn't.

80
00:05:24,380 --> 00:05:24,859
Yeah.

81
00:05:24,919 --> 00:05:27,680
And I apologize on behalf of the agency.

82
00:05:28,039 --> 00:05:30,700
We want to make sure you get your due process.

83
00:05:30,700 --> 00:05:35,240
So we'll get this rescheduled ASAP and make sure you get a copy of the brief and all of the

84
00:05:35,240 --> 00:05:36,400
documents attached to it.

85
00:05:36,400 --> 00:05:45,900
And is there any appeal process, administrative relief that happens here?

86
00:05:46,260 --> 00:05:48,919
Because this obviously was not my issue.

87
00:05:50,840 --> 00:05:53,080
What do you mean by administrative relief?

88
00:05:54,520 --> 00:05:58,820
So you've, I clearly requested the documents beforehand.

89
00:05:59,820 --> 00:06:02,099
Is there any penalty involved?

90
00:06:02,100 --> 00:06:05,160
Is there anyone I can appeal this reschedule to?

91
00:06:05,700 --> 00:06:16,840
Is there any other remedy but for me to continue accepting SHRA not providing due process other

92
00:06:16,840 --> 00:06:18,460
than continuing with the civil suit?

93
00:06:18,640 --> 00:06:18,760
Yes.

94
00:06:21,460 --> 00:06:27,140
The point of the reschedule is to provide due process and provide you with the documentation

95
00:06:27,140 --> 00:06:30,219
and the opportunity to review your file as requested.

Exhibit 20-13

96
00:06:31,740 --> 00:06:34,560
And that's the whole point of needing to reschedule.

97
00:06:38,380 --> 00:06:38,860
Okay.

98
00:06:39,000 --> 00:06:40,039
So those were words.

99
00:06:44,120 --> 00:06:46,560
So what happens next, I guess?

100
00:06:46,659 --> 00:06:50,260
I mean, we're sitting here staring at each other, but we haven't actually set any real

101
00:06:50,260 --> 00:06:56,960
concrete dates or is this, you'll find out again in the future?

102
00:06:56,960 --> 00:07:01,299
Like when you canceled the May 12th hearing or the September 12th hearing?

103
00:07:01,460 --> 00:07:03,239
I'll know sometime in the future.

104
00:07:04,140 --> 00:07:07,080
I mean, not exactly the best track record here.

105
00:07:07,159 --> 00:07:07,359
Yes.

106
00:07:07,500 --> 00:07:13,620
So we're going to get you a copy of the brief ASAP along with the exhibits and get the hearing

107
00:07:13,620 --> 00:07:14,260
rescheduled.

108
00:07:14,520 --> 00:07:17,859
So that is the information that we're giving to you and that's what we will do.

109
00:07:18,679 --> 00:07:21,060
So what date is that going to happen?

110
00:07:21,820 --> 00:07:22,719
The reschedule.

111
00:07:22,799 --> 00:07:25,740
I can't give you that date because we'll need to coordinate with the hearing officer.

112
00:07:25,740 --> 00:07:28,560
So I can't give you a date right now.

113
00:07:29,340 --> 00:07:29,500
Okay.

114
00:07:29,680 --> 00:07:30,260
You know what?

115
00:07:31,580 --> 00:07:35,840
At this point, I have the evidence that I need with regard to this.

116
00:07:35,940 --> 00:07:41,180
This is a clear example of the, I don't need to reschedule.

117
00:07:41,700 --> 00:07:46,700
What I do need is a copy of this hearing and the transcript.

118
00:07:46,700 --> 00:07:51,539
And as long as we get that, we don't need to reschedule.

119
00:07:52,539 --> 00:07:56,659
So you don't want to reschedule the informal hearing for reasonable accommodation?

120
00:07:57,680 --> 00:07:58,760
Yeah, correct.

121
00:07:58,920 --> 00:08:01,640
We have had the reasonable accommodation hearing.

122
00:08:01,640 --> 00:08:05,860
This satisfies what I needed to demonstrate.

123
00:08:06,860 --> 00:08:07,780
This is fine.

124
00:08:08,380 --> 00:08:14,140
All I need is the actual recording as promised and the transcript of me.

125
00:08:14,140 --> 00:08:25,180
Other than that, it's, you know, this is another attempt at this.

126
00:08:25,280 --> 00:08:30,659
I do not think it's in our best interest to continue making attempts to do this hearing

127
00:08:30,659 --> 00:08:34,960
because SHRA isn't able to comply with the process requirements.

128
00:08:34,960 --> 00:08:37,600
Okay, we can definitely give you a copy.

129
00:08:37,600 --> 00:08:37,960
Correct.

130
00:08:38,040 --> 00:08:39,100
We don't need to reschedule.

131
00:08:39,740 --> 00:08:40,100
Okay.

Exhibit 20-16

132
00:08:40,880 --> 00:08:45,040
We'll still get you a copy of the brief and the exhibits, but it's your choice whether or

133
00:08:45,040 --> 00:08:46,160
not you choose to reschedule.

134
00:08:46,640 --> 00:08:46,960
Okay.

135
00:08:47,140 --> 00:08:47,920
Thank you very much.

136
00:08:48,020 --> 00:08:48,480
Thank you.

137
00:08:48,480 --> 00:08:48,520
Thank you.

138
00:08:48,520 --> 00:08:48,580
Thank you.

## Verbal Testimony

None.

## Decision

**The decision is upheld, in accordance with Administrative Plan which states the following:**

*"If the family misses an appointment or deadline or is more than 15 minutes late for an appointment, they will be required to show "good cause" for their missed or late appointment (as defined in the Glossary) or the action of the PHA shall take effect and another hearing will not be granted. If the family does not show "good cause" within 3 days of the missed appointment, the Hearing Officer's decision will stand."*



D'Jon
Informal Hearing Officer

If you do not agree with the decision made above, there are other legal remedies available to you, such as initiating a civil action. The time within which judicial review may be sought is governed by California Code of Civil Procedure section 1094.6.

2

SHRA001622

## NOTIFICATION OF INFORMAL HEARING RESULTS

**May 3, 2023**

**Sacramento Housing & Redevelopment Agency**
**630 I Street**
**Sacramento, CA 95814**

**This hearing was conducted by D'Jon** █████████ **– Informal Hearing Officer for the Sacramento Housing & Redevelopment Agency (SHRA), on Wednesday April 20, 2023, at the request of Sydney Roberts. The hearing took place via Zoom.**

**SHRA was represented by Troy** ██ **– Program Manager, and Tanya** ██ **– Program Manager was observing.**

**Sydney Roberts represented himself.**

## Hearing Rescheduled

During introductions Mr. Roberts stated that he did not receive the case file even after requesting it couple times and has no way to verify any documents or statements without having access and wants to make the due process issue known.

Ms. ██ placed Mr. Roberts into the waiting room and stepped away from the Zoom. When Ms. ██ returned she stated the hearing would be rescheduled to provide Mr. Roberts with the case file for review prior to the hearing and brought Mr. Roberts back from the waiting room.

Mr. Roberts objected to the hearing being rescheduled. I agreed that as he has stated his due process was violated and he did not have an opportunity to properly review documentation for his case, I did not feel comfortable proceeding and the hearing was ended.



D'Jon ███████
Informal Hearing Officer

Cc:    Sydney Roberts

SHRA001623

## NOTIFICATION OF INFORMAL HEARING RESULTS

June 14, 2023

**Sacramento Housing & Redevelopment Agency**
**630 I Street**
**Sacramento, CA 95814**

**Sydney Roberts (T0032944)**
**1100 Howe Ave #126**
**Sacramento, CA 95825**

This hearing was conducted by D'Jon ▮▮▮▮▮▮▮ – Informal Hearing Officer for the Sacramento Housing & Redevelopment Agency (SHRA), on Friday June 2, 2023, at the request of the Sydney Roberts household. The hearing took place via Zoom.

SHRA was represented by Tanya ▮ – Program Manager.

Sydney Roberts nor any other member was present.

### Background

Housing Choice Voucher (HCV) participant Chanda Rozier requested a Reasonable Accommodation (RA) for an additional bedroom, which SHRA subsequently denied.

### Summary of Evidence

SHRA provided a brief which outlined the RA request, documents submitted, and decision rendered.

SHRA provided an Authorization for use or Disclosure of Health Information received **May 19, 2022**.

SHRA provided an MH Progress Note from Michel Medina MD with Kaiser Permanente dated **October 6, 2021**.

SHRA provided a letter from Michel Medina MD with Kaiser Permanente dated **May 31, 2022,** in support of an RA for David Samuel.

SHRA provided a Certification of Need for Reasonable Accommodation received **October 21, 2022**.

SHRA provided a letter dated **October 28, 2022,** denying the RA request.

1

SHRA001624

**Exhibit 22**

**To:** Tameka ███████ < ███████ shra.org>
**Cc:** Melanie Olson <molson@shra.org>
**Subject:** t0032944 Roberts

Hi!
I'm looking for the Hearing Decision for this tenant.
Where would I find it?



## SACRAMENTO CITY AND COUNTY HOUSING AUTHORITY

MaryLiz ███████
Director, HCV
SHRA
630 I Street
Sacramento, CA 95814
Phone (916) 440-1310

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

SHRA001094

**Archived:** Thursday, May 29, 2025 11:26:00 PM
**From:** Tanya █
**Sent:** Tuesday, May 2, 2023 12:49:53 PM
**To:** Leah █
**Subject:** RE: t0032944 Roberts
**Importance:** Normal
**Sensitivity:** None

---

Hi Leah,

You can call him back and provide the same information you provided to the third party contact.

Thank you.

**Tanya █**
**Program Manager**
Homeless Innovations
Sacramento Housing and Redevelopment Agency
www.shra.org

**From:** Leah █ < █ shra.org>
**Sent:** Tuesday, May 2, 2023 11:49 AM
**To:** Tanya █ < █ shra.org>
**Subject:** t0032944 Roberts

Hi Tanya,

David Samuel emailed me, should I just tell him that I was able to speak with his third party on file and was able to relay the information to her?

Best,

Leah █
Housing Program Technician II
Homeless Innovations
Email | █ shra.org

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete

SHRA001095

**Exhibit 23**

the meantime, I have directed Leah to not email David Samuel directly.

Thank you,

**Tanya** ▉
**Program Manager**
Homeless Innovations
Sacramento Housing and Redevelopment Agency
www.shra.org

**From:** Ibra▉ <▉shra.org>
**Sent:** Tuesday, May 2, 2023 2:34 PM
**To:** Tanya▉ <▉shra.org>; MaryLiz▉ <▉shra.org>
**Subject:** RE: Calls without leaving a voicemail

Hi Tanya,

He has made the request to only communicate via email however the RACC denied that request. Especially, when it is not RA related. We communicate with the HOH who is not disabled generally speaking. I have been communicating with Mr. Samuel via email as a courtesy because he was the person requesting the RA. For matters related to the voucher itself, there is nothing approved.

Best,

**Ibra**▉ (she/her/hers)
Housing Choice Voucher (HCV)
Sacramento Housing and Redevelopment Agency
916.449.6346
▉shra.org
www.shra.org



This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

**From:** Tanya▉ <▉shra.org>
**Sent:** Tuesday, May 2, 2023 2:19 PM
**To:** MaryLiz▉ <▉shra.org>; Ibra▉ <▉shra.org>
**Subject:** FW: Calls without leaving a voicemail

Hello,

Ibra â€" do you know if Sydney Roberts/David Samuel has submitted a request that we only correspond with them in writing?

SHRA002929

Leah has been attempting to call them since yesterday to inform them we are still processing the RFTA .

MaryLiz â€" can you please let me know how you would like me to move forward on this case? I can email David if you would like.

Thank you,

**Tanya** ████
**Program Manager**
Homeless Innovations
Sacramento Housing and Redevelopment Agency
www.shra.org

**From:** David Samuel <davidsa@possiblymaybe.com>
**Sent:** Tuesday, May 2, 2023 2:08 PM
**To:** Reasonable Accommodations <ra@shra.org>; La Shelle ████ < ████ shra.org>; MaryLiz ████ < ████ shra.org>; Troy ████ < ████ shra.org>; Tanya ████ < ████ shra.org>; Leah ████ < ████ shra.org>
**Subject:** Calls without leaving a voicemail

All,

I'm not sure for what purpose I'm receiving calls from 916-440-1390 without voicemails, but it feels like harassment and we request you please stop.

If you must call our phone, leave a voicemail with your email address and we will respond to you as soon as we can.

As you are aware, we've requested as an effective communication accommodation that you only communicate with our family via email or equivalent text service. Attempting to communicate with us via other methods impedes our ability to participate in the program.

If these calls are a continued pattern of behavior, please be aware that we do have call logs which record when the call came in, from which number, and the length of time of the call. SHRA's phone systems also keep equivalent logs, and as such it is possible to match the party to the call.

Thank you for your time,

David

SHRA002930

**Subject:** RE: Calls without leaving a voicemail

Hi Tanya,

He has made the request to only communicate via email however the RACC denied that request. Especially, when it is not RA related. We communicate with the HOH who is not disabled generally speaking. I have been communicating with Mr. Samuel via email as a courtesy because he was the person requesting the RA. For matters related to the voucher itself, there is nothing approved.

Best,

Ibra ████ (she/her/hers)
**Housing Choice Voucher (HCV)**
**Sacramento Housing and Redevelopment Agency**
916.449.6346
████████shra.org
www.shra.org

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

**From:** Tanya ████ < ████ shra.org>
**Sent:** Tuesday, May 2, 2023 2:19 PM
**To:** MaryLiz ████ < ████ shra.org>; Ibra ████ < ████ shra.org>
**Subject:** FW: Calls without leaving a voicemail

Hello,

Ibra – do you know if Sydney Roberts/David Samuel has submitted a request that we only correspond with them in writing?

Leah has been attempting to call them since yesterday to inform them we are still processing the RFTA.

MaryLiz – can you please let me know how you would like me to move forward on this case? I can email David if you would like.

Thank you.

**Tanya** ████
**Program Manager**
Homeless Innovations
Sacramento Housing and Redevelopment Agency
www.shra.org

SHRA003027

**Exhibit 23-4**

**From:** David Samuel <davidsa@possiblymaybe.com>
**Sent:** Tuesday, May 2, 2023 2:08 PM
**To:** Reasonable Accommodations <ra@shra.org>; La Shelle ▇▇▇ <▇▇▇shra.org>; MaryLiz ▇▇▇ <▇▇▇shra.org>; Troy ▇▇ <▇▇▇shra.org>; Tanya ▇▇ <▇▇▇shra.org>; Leah ▇▇ <▇▇▇shra.org>
**Subject:** Calls without leaving a voicemail

All,

I'm not sure for what purpose I'm receiving calls from 916-440-1390 without voicemails, but it feels like harassment and we request you please stop.

If you must call our phone, leave a voicemail with your email address and we will respond to you as soon as we can.

As you are aware, we've requested as an effective communication accommodation that you only communicate with our family via email or equivalent text service.  Attempting to communicate with us via other methods impedes our ability to participate in the program.

If these calls are a continued pattern of behavior, please be aware that we do have call logs which record when the call came in, from which number, and the length of time of the call.  SHRA's phone systems also keep equivalent logs, and as such it is possible to match the party to the call.

Thank you for your time,

David

SHRA003028

**Archived:** Thursday, May 29, 2025 2:51:30 PM
**From:** David Samuel
**Mail received time:** Tue, 2 May 2023 21:08:25
**Sent:** Tue, 2 May 2023 14:07:44
**To:** Reasonable Accommodations La Shelle ▮▮▮ MaryLiz ▮▮▮ Troy ▮▮ Tanya ▮▮ Leah ▮▮
**Subject:** Calls without leaving a voicemail
**Importance:** Normal
**Sensitivity:** None

---

All

I'm not sure for what purpose I'm receiving calls from 916-440-1390 without voicemails, but it feels like harassment and we request you please stop.

If you must call our phone, leave a voicemail with your email address and we will respond to you as soon as we can.

As you are aware, we've requested as an effective communication accommodation that you only communicate with our family via email or equivalent text service. Attempting to communicate with us via other methods impedes our ability to participate in the program.

If these calls are a continued pattern of behavior, please be aware that we do have call logs which record when the call came in, from which number, and the length of time of the call. SHRA's phone systems also keep equivalent logs, and as such it is possible to match the party to the call.

Thank you for your time,

David

SHRA003029

If you must call our phone, leave a voicemail with your email address and we will respond to you as soon as we can.

As you are aware, we've requested as an effective communication accommodation that you only communicate with our family via email or equivalent text service. Attempting to communicate with us via other methods impedes our ability to participate in the program.

If these calls are a continued pattern of behavior, please be aware that we do have call logs which record when the call came in, from which number, and the length of time of the call. SHRA's phone systems also keep equivalent logs, and as such it is possible to match the party to the call.

Thank you for your time,

David

SHRA003072

**Archived:** Thursday, May 29, 2025 2:53:15 PM
**From:** Reasonable Accommodations Reasonable Accommodations
**Sent:** Tuesday, May 2, 2023 3:03:56 PM
**To:** Reasonable Accommodations Brad ██████  Reasonable Accommodations Tanya ██
**Cc:** MaryLiz ██████
**Subject:** RE: Calls without leaving a voicemail
**Importance:** Normal
**Sensitivity:** None

---

Hi Brad,

I am working on drafting the denial for MaryLiz. Thanks.

Best,

Ibra ██████ (she/her/hers)
Housing Choice Voucher (HCV)
Sacramento Housing and Redevelopment Agency
916.449.6346
██████shra.org
www.shra.org



ÂÂÂÂÂÂÂ 🅕 🔘 ▶

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

**From:** Brad ██████ <██████shra.org>
**Sent:** Tuesday, May 2, 2023 2:58 PM
**To:** Reasonable Accommodations <ra@shra.org>; Tanya ██ <██████shra.org>
**Cc:** MaryLiz ██████ <██████shra.org>
**Subject:** RE: Calls without leaving a voicemail

There is no need to respond to this.

Please confirm that the RA request for effective communication was denied due to lack of supporting documentation that HOH needs this accommodation.

**From:** Reasonable Accommodations <ra@shra.org>
**Sent:** Tuesday, May 2, 2023 2:56 PM
**To:** Tanya ██ <██████shra.org>; Brad ██████ <██████shra.org>
**Cc:** MaryLiz ██████ <██████shra.org>
**Subject:** FW: Calls without leaving a voicemail

FYI

SHRA003073

Archived: Thursday, May 29, 2025 2:53:26 PM
From: Ibra ███
Sent: Thursday, May 11, 2023 10:01:28 AM
To: Brad ███ Reasonable Accommodations Carolyn ███
Cc: MaryLiz ███
Subject: RE: Calls without leaving a voicemail
Importance: Normal
Sensitivity: None

---

Ok.Â  Thanks for the clarification, Brad.

Best,

Ibra ███ (she/her/hers)
Housing Choice Voucher (HCV)
Sacramento Housing and Redevelopment Agency
916.449.6346
███shra.org
www.shra.org

SHRA
CHANGING LIVES

ÂÂÂÂÂÂÂ 🅕 ⊙ ▶

*NOTICE OF AGENCY HOLIDAY CLOSURE*
*Please note that all Agency offices, including Housing Choice Voucher and Conventional Public Housing, will be closed Monday, May 29, 2023 in observance of Memorial Day. Regular business hours will resume Tuesday, May 30, 2023.*

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

From: Brad ███ <███shra.org>
Sent: Thursday, May 11, 2023 9:54 AM
To: Ibra ███ <███shra.org>; Reasonable Accommodations <ra@shra.org>; Carolyn ███ <███shra.org>
Cc: MaryLiz ███ <███shra.org>
Subject: RE: Calls without leaving a voicemail

Ibra,

Section 504 requires effective communication for those that are disabled, particularly in remote hearings. Consequently, a request for a specific type of effective communication would be sufficient provided the requestor informs us of the disability (i.e., deaf or hard of hearing, blind or low vision). If Mr. Samuel has specified that he needs closed captioning for the hearing due to a disability, then we must provide it, regardless of whether he's provided documentation. If, on the other hand, he has not mentioned that he has a need due to disability, then we should ask him generally if the closed captioning is needed because of a disability. If he confirms that it is due a disability, then we should provide the service during the remote hearing, even if he does not provide supporting documentation.

Notwithstanding the above obligation, effective communication does not include the obligation to communicate by email to a person other than the HOH.

Brad

**From:** Ibra█████ <█████shra.org>
**Sent:** Thursday, May 11, 2023 7:44 AM
**To:** Brad█████ <█████shra.org>; Reasonable Accommodations <ra@shra.org>; Carolyn█████ <█████shra.org>
**Cc:** MaryLiz█████ <█████shra.org>
**Subject:** RE: Calls without leaving a voicemail

Hi Brad,

All the hearings are being done via ZOOM. The brief is usually sent  along with the notice and it states specifically what was requested and denied but if you want that added to the Notice, I can add it there as well.  Also, the section where you made edits is taken directly from the Admin Plan so my question is, would you recommend changing the Admin Plan as well?

In reference to the HUD guidance on effective communication, my question is are we expected to provide the closed captioning (talk to text) for anyone with a disability no matter what that disability is?  Or would we, as we do when reviewing an RA request, look at the disability and request the nexus from a â€œknowledgeable third party?â€

Thanks.

Best,

Ibra█████ (she/her/hers)
Housing Choice Voucher (HCV)
Sacramento Housing and Redevelopment Agency
916.449.6346
█████shra.org
www.shra.org



*NOTICE OF AGENCY HOLIDAY CLOSURE*
*Please note that all Agency offices, including Housing Choice Voucher and Conventional Public Housing, will be closed Monday, May 29, 2023 in observance of Memorial Day. Regular business hours will resume Tuesday, May 30, 2023.*

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

**From:** Brad█████ <█████shra.org>
**Sent:** Wednesday, May 10, 2023 4:33 PM
**To:** Reasonable Accommodations <ra@shra.org>; Carolyn█████ <█████shra.org>; Ibra█████ <█████shra.org>
**Cc:** MaryLiz█████ <█████shra.org>
**Subject:** RE: Calls without leaving a voicemail

Ibra, I am revising the Notice because it does not contain all that is required by the Admin Plan.

With respect to his request for records, you may not have seen this in my email below:

Per the admin plan, if we provide hard copies, we can charge them for the reasonable cost.  I would set forth the cost to him

**Exhibit 24**

Archived: Thursday, May 29, 2025 11:26:13 PM
From: Leah █████
Sent: Friday, April 28, 2023 8:31:11 AM
To: Arbors at Antelope Leasing
Subject: RE: t0032944 Roberts
Importance: Normal
Sensitivity: None

_____

Is there a unit number attached to this address?

Best

Leah █████
Housing Program Technician II
Homeless Innovations
Email | ██████shra.org

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.


CHANGING LIVES

From: Arbors at Antelope Leasing <Arborslease@greystar.com>
Sent: Wednesday, April 26, 2023 4:21 PM
To: Leah █████ < █████shra.org>
Subject: Re: t0032944 Roberts

That is the correct address. Thank you.

Noreen Chong | Leasing Manager |Dale Carnegie Advanced Sales Certified

The Arbors at Antelope | 3700 Navaho Dr. | Antelope, CA 95843

o 916.344.5222 | arborslmgr@greystar.com

Proudly managed by Greystar®

█ Greystar® is supports St. Jude Children's Research Hospital and Canto Hope

SHRA001098

Exhibit 24-2

**From:** Leah ███ <███shra.org>
**Sent:** Wednesday, April 26, 2023 4:12 PM
**To:** Arbors at Antelope Leasing <Arborslease@greystar.com>
**Subject:** [EXTERNAL] t0032944 Roberts

Good afternoon,

Can you confirm with me that the RFTA address located at 7957 PAPAGO WAY, ANTELOPE, CA 95843 is the correct address for the above applicant? Or has this street name changed?

Best,

Leah ███
Housing Program Technician II
Homeless Innovations
Email | ███shra.org

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.



SHRA
CHANGING LIVES

SHRA001099

**Archived:** Thursday, May 29, 2025 11:26:21 PM
**From:** Leah █████
**Sent:** Wednesday, April 26, 2023 4:12:03 PM
**To:** Arborslease@greystar.com
**Subject:** t0032944 Roberts
**Importance:** Normal
**Sensitivity:** None

---

Good afternoon,

Can you confirm with me that the RFTA address located at 7957 PAPAGO WAY, ANTELOPE, CA 95843 is the correct address for the above applicant? Or has this street name changed?

Best,

Leah █████
Housing Program Technician II
Homeless Innovations
Email | █████shra.org

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.


SHRA
CHANGING LIVES

SHRA001100

2. **Rent Reasonableness** - An analysis is completed which compares the rent to similar units in the area. This will determine if the rent amount is reasonable for the unit (in comparison to rents for other comparable unassisted units). The analysis is completed using the following factors:

- The location, quality, size, unit type, and age of the rental property
- Any amenities, housing services, maintenance, and utilities provided and paid by the owner
- Other comparable rental properties' verifiable contract rent, and market conditions

Best,

Leah ███
Housing Program Technician II
Homeless Innovations
Email: ███ shra.org

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.



SHRA
CHANGING LIVES

**From:** Arbors at Antelope Leasing <Arborslease@greystar.com>
**Sent:** Friday, April 28, 2023 10:31 AM
**To:** Leah ███ <███ shra.org>
**Subject:** Re: t0032944 Roberts

**No there is not. It is a duplex and that is its correct address.**

Noreen Ching | Leasing Manager |Dale Carnegie Advanced Sales Certified

The Arbors at Antelope | 3700 Navaho Dr. | Antelope, CA 95843

o 916.344.5222 | arborslmgr@greystar.com

Proudly managed by Greystar®

Join Greystar® in supporting St. Jude Children's Research Hospital and Camp Hope

**From:** Leah ███ <███ shra.org>
**Sent:** Friday, April 28, 2023 8:31 AM

SHRA001112

To: Arbors at Antelope Leasing <Arborslease@greystar.com>
Subject: [EXTERNAL] RE: t0032944 Roberts

Is there a unit number attached to this address?



Best.

Leah ▇
Housing Program Technician II
Homeless Innovations
Email | ▇▇▇ shra.org

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.



CHANGING LIVES

From: Arbors at Antelope Leasing <Arborslease@greystar.com>
Sent: Wednesday, April 26, 2023 4:21 PM
To: Leah ▇ <▇▇shra.org>
Subject: Re: t0032944 Roberts

That is the correct address. Thank you.


Noreen Ching | Leasing Manager |Dale Carnegie Advanced Sales Certified

The Arbors at Antelope | 3700 Navaho Dr. | Antelope, CA 95843

o 916.344.5222 | arborslmgr@greystar.com


Proudly managed by Greystar®

Join Greystar in supporting St. Jude Children's Research Hospital and Canine Companions


---

From: Leah ▇ <▇▇shra.org>
Sent: Wednesday, April 26, 2023 4:12 PM
To: Arbors at Antelope Leasing <Arborslease@greystar.com>
Subject: [EXTERNAL] t0032944 Roberts

Good afternoon,

SHRA001113

Can you confirm with me that the RFTA address located at 7957 PAPAGO WAY, ANTELOPE, CA 95843 is the correct address for the above applicant? Or has this street name changed?

Best,

Leah ▮▮▮
Housing Program Technician II
Homeless Innovations
Email | ▮▮▮▮ shra.org

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.



CHANGING LIVES

SHRA001114

**Archived:** Thursday, May 29, 2025 11:29:33 PM
**From:** Arbors at Antelope Leasing
**Sent:** Friday, April 28, 2023 10:32:20 AM
**To:** Leah ▮
**Subject:** Re: t0032944 Roberts
**Importance:** Normal
**Sensitivity:** None

---

No there is not. It is a duplex and that is its correct address.

Noreen Ching | Leasing Manager |Dale Carnegie Advanced Sales Certified
The Arbors at Antelope | 3700 Navaho Dr. | Antelope, CA 95843
o 916.344.5222 | arborslmgr@greystar.com

Proudly managed by Greystar®

Join Greystar® in supporting St. Jude Children's Research Hospital and Camp Hope

---

**From:** Leah ▮ <▮shra.org>
**Sent:** Friday, April 28, 2023 8:31 AM
**To:** Arbors at Antelope Leasing <Arborslease@greystar.com>
**Subject:** [EXTERNAL] RE: t0032944 Roberts

Is there a unit number attached to this address?

Best,

Leah ▮
Housing Program Technician II
Homeless Innovations
Email | ▮shra.org

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.


CHANGING LIVES

**From:** Arbors at Antelope Leasing <Arborslease@greystar.com>
**Sent:** Wednesday, April 26, 2023 4:21 PM
**To:** Leah ▮ <▮shra.org>
**Subject:** Re: t0032944 Roberts

**Exhibit 24-8**

o 916.344.5222 | arborslmgr@greystar.com

Proudly managed by Greystar®

Join Greystar® in supporting St. Jude Children's Research Hospital and City of Hope

---

**From:** Leah ▮▮▮ <▮▮▮shra.org>
**Sent:** Wednesday, April 26, 2023 4:12 PM
**To:** Arbors at Antelope Leasing <Arborslease@greystar.com>
**Subject:** [EXTERNAL] t0032944 Roberts

Good afternoon,

Can you confirm with me that the RFTA address located at 7957 PAPAGO WAY, ANTELOPE, CA 95843 is the correct address for the above applicant? Or has this street name changed?

Best,

Leah ▮▮▮
Housing Program Technician II
Homeless Innovations
Email | ▮▮▮shra.org

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.



SHRA
CHANGING LIVES

SHRA001130

Archived: Thursday, May 29, 2025 11:31:00 PM
From: Arbors at Antelope Leasing
Sent: Friday, April 28, 2023 10:55:28 AM
To: Leah ▮▮
Subject: Re: t0032944 Roberts
Importance: Normal
Sensitivity: None

---

Hello Leah,

Are you running this as a duplex and not as an apartment? Your system has been trying to run these homes as apartments where they are not and I know that it has to do with the Melrod system. I know depending on how it's ran, it will affect the numbers.

We have been getting the same homes approved for higher rents and the 2147 price point seems way too low for what we have been receiving.

Noreen Ching | Leasing Manager |Dale Carnegie Advanced Sales Certified
The Arbors at Antelope | 3700 Navaho Dr. | Antelope, CA 95843
o 916.344.5222 | arborslmgr@greystar.com

Proudly managed by
Greystar

Greystar is supporting St. Jude Children's Research Hospital and Camp Hope

---

From: Leah ▮▮ <▮▮shra.org>
Sent: Friday, April 28, 2023 10:52 AM
To: Arbors at Antelope Leasing <Arborslease@greystar.com>
Subject: [EXTERNAL] RE: t0032944 Roberts

Good morning,

Please see below.

I would like to update you that the affordability result came back and the recommended rent for this unit located at 7957 PAPAGO WAY, ANTELOPE, CA 95843 is $2147.00 versus the initial offer of $2930.00

Is the landlord willing to accept $2147.00 as contract rent? Please advise by 05/2/23 on how you would like to proceed. Please see below as to how we came to this figure.

SHRA001131

**Exhibit 24-10**

The Arbors at Antelope | 3700 Navaho Dr. | Antelope, CA 95843

o 916.344.5222 | arborslmgr@greystar.com

Proudly managed by Greystar®

Join Greystar® in supporting St. Jude Children's Research Hospital and Camp Hope

---

**From:** Leah ▮ <▮ shra.org>
**Sent:** Wednesday, April 26, 2023 4:12 PM
**To:** Arbors at Antelope Leasing <Arborslease@greystar.com>
**Subject:** [EXTERNAL] t0032944 Roberts

Good afternoon,

Can you confirm with me that the RFTA address located at 7957 PAPAGO WAY, ANTELOPE, CA 95843 is the correct address for the above applicant? Or has this street name changed?

Best,

Leah ▮
Housing Program Technician II
Homeless Innovations
Email | ▮ shra.org

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.



SHRA001661

Exhibit 24-11

Archived: Friday, May 30, 2025 12:46:43 AM
From: Arbors at Antelope Leasing
Sent: Friday, April 28, 2023 11:02:53 AM
To: Leah▮
Subject: Re: t0032944 Roberts
Importance: Normal
Sensitivity: None

---

Okay no worries, just wanted to be sure. There have been some homes that are randomly flagged as apartments and I had someone email me before stating that the person may or may not pass based on what the home was determined to be.

We are unable to lower the rent any lower than it is.

Noreen Ching | Leasing Manager |Dale Carnegie Advanced Sales Certified
The Arbors at Antelope | 3700 Navaho Dr. | Antelope, CA 95843
o 916.344.5222 | arborslmgr@greystar.com

Proudly managed by
Greystar
The Greystar Foundation Supporting St. Jude Children's Research Hospital and Camp Hope

---

From: Leah▮ <▮shra.org>
Sent: Friday, April 28, 2023 10:57 AM
To: Arbors at Antelope Leasing <Arborslease@greystar.com>
Subject: [EXTERNAL] RE: t0032944 Roberts

Good morning,

Thanks for your email.

Yes I did run this unit as a duplex; this is not based off of rent reasonableness as far as units in the area for the dollar amount you are requesting. It is based off of the tenants affordability, which is why I provided the detailed email below for a better understanding.

Best,

Leah▮
Housing Program Technician II
Homeless Innovations
Email | ▮shra.org

SHRA001662

**Subject:** Re: t0032944 Roberts

That is the correct address. Thank you.

Noreen Ching | Leasing Manager |Dale Carnegie Advanced Sales Certified
The Arbors at Antelope | 3700 Navaho Dr. ¡ Antelope, CA 95843
o 916.344.5222 | arborslmgr@greystar.com

Proudly managed by Greystar®

the Greystar® is supporting St. Jude Children's Research Hospital and Camp Hope

---

**From:** Leah ███ <████shra.org>
**Sent:** Wednesday, April 26, 2023 4:12 PM
**To:** Arbors at Antelope Leasing <Arborslease@greystar.com>
**Subject:** [EXTERNAL] t0032944 Roberts

Good afternoon,

Can you confirm with me that the RFTA address located at 7957 PAPAGO WAY, ANTELOPE, CA 95843 is the correct address for the above applicant? Or has this street name changed?

Best,

Leah ███
Housing Program Technician II
Homeless Innovations
Email: ███shra.org

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.



SHRA
CHANGING LIVES

SHRA001666

Exhibit 24-13

Archived: Friday, May 30, 2025 12:48:58 AM
From: Leah█
Sent: Monday, May 1, 2023 10:19:23 AM
To: Arbors at Antelope Leasing
Subject: RE: t0032944 Roberts
Importance: Normal
Sensitivity: None
Attachments:
Comparability Data Worksheet.pdf; Comparability Data Worksheet.pdf; Comparability Data Worksheet.pdf;

---

Good morning,


Happy Monday ðŸ˜Š


I was able to run the affordability again with the correct voucher size (My apologies). I do see that it is approvable based off the tenants income however based off of rent reasonableness it is not; which came out to $2543.00 . I have attached 3 Â Rent Reasonableness Comparability Data Sheetâ€™s to this email if you would like to fill them out; so I can submit for review for the asking price at $2930.00


Please let me know how you would like to proceed.



Best,

Leah█
Housing Program Technician II
Homeless Innovations
Email |█████shra.org

This email and any attachments thereto may contain private. confidential and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.


SHRA
CHANGING LIVES

From: Arbors at Antelope Leasing <Arborslease@greystar.com>
Sent: Friday, April 28, 2023 10:55 AM
To: Leah█ <█████shra.org>
Subject: Re: t0032944 Roberts

SHRA001667



## SACRAMENTO CITY AND COUNTY HOUSING AUTHORITY

MaryLiz ████
Director, HCV & SERA
SHRA
630 I Street
Sacramento, CA 95814
Phone (916) 440-1310

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

**From:** David Samuel <davidsa@possiblymaybe.com>
**Sent:** Friday, April 28, 2023 3:11 PM
**To:** Reasonable Accommodations <ra@shra.org>; La Shelle ████ < ████shra.org>; MaryLiz ████ < ████shra.org>; Troy ████ < ████shra.org>; Tanya ████ < ████shra.org>; bouncetestcba321@shra.org; Caitlyn ████ < ████consumersselfhelp.org>; ████ Yesenia < ████saccounty.gov>; Maddy, David and Artemis Samuel <home@possiblymaybe.com>
**Subject:** Denial of RFTA, Retaliation against our family for pending complaint, Housing and Disability Discrimination

All,

We have just received notice from a housing provider we submitted an application to, and to which a RFTA was submitted for a month ago that SHRA has denied the application because the amount of rent exceeds "approveable" payment standards.

SHRA has indicated to the housing provider the approvable standard is significantly lower than the three bedroom payment standard for the 95843 zip code, see attached 2023 SHRA Payment Standard handout.

As SHRA is aware, both via letter from the "Reasonable Accommodation Compliance Committee" and via direct communication from Program Manager Troy ████ the three bedroom payment standard should have been applied, see attached "Voucher increase extension notice" and "Reasonable Accommodation Denial March 20, 2023".

The housing provider has indicated that SHRA has indicated the maximum payment standard for the unit is $2147.00, indicating SHRA is using a two bedroom payment standard for the zip code.

Further, this denial comes despite repeated assurances from SHRA that the processing of the RFTA would be expedited,

**Exhibit 24-15**

despite clear evidence that it was not, and no HQS inspection was even scheduled.

This denial of housing comes days after SHRA decided to, for a second time, unilaterally cancel an informal hearing for denial of payment standard modification, denying us due process for a second time, over a period of nearly a year.

SHRA did not communicate with our family or representatives before making this decision, and did not offer any alternatives before making this decision.

It appears SHRA has chosen to retaliate against our family for pursuing due process regarding housing and disability discrimination, and appears to be making concerted efforts to deny any sort of due process regarding these issues.

SHRA is aware of our housing situation, and have repeatedly taken adverse action against our family in spite of it.

We write this email to notice all parties of these actions, in hope that we can find a solution which will result in SHRA no longer engaging in housing and disability discrimination against our family, comply with relevant statutes and regulations, and prevent further retaliation against our family for pursing due process for these violations.

Thank you for your time,

David

SHRA001748

Exhibit 24-16

**Archived:** Thursday, May 29, 2025 3:32:44 PM
**From:** Reasonable Accommodations
**Sent:** Mon, 1 May 2023 16:18:08
**To:** MaryLiz ████  Tanya ████
**Cc:** Brad ████  Carolyn ████
**Subject:** FW: Denial of RFTA, Retaliation against our family for pending complaint, Housing and Disability Discrimination
**Importance:** High
**Sensitivity:** None
**Attachments:**
Payment-Standard-Handout-1-2022.pdf; Voucher increase extension notice-1.pdf; SHRA_Reasonable-
Accommodation_Denial_03-20-2023.pdf;

---

HI MaryLiz,

It seems that Mr. Samuel is confused about the denial of the RFTA. Would you advise that the FSRP caseworker contact him to help him understand the affordability test? It would appear that he is confused about how the payment standard is used and the calculation done to determine affordability.

Best,

Ibra ████ (she/her/hers)
Housing Choice Voucher (HCV)
Sacramento Housing and Redevelopment Agency
916.449.6346
████ shra.org
www.shra.org



This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

**From:** David Samuel <davidsa@possiblymaybe.com>
**Sent:** Friday, April 28, 2023 3:11 PM
**To:** Reasonable Accommodations <ra@shra.org>; La Shelle ████ <████ shra.org>; MaryLiz ████
<████ shra.org>; Troy ████ <████ shra.org>; Tanya ████ <████ shra.org>; bouncetestcba321@shra.org; Caitlyn
████ <████ consumersselfhelp.org>; ████ Yesenia <████ saccounty.gov>; Maddy, David and Artemis Samuel
<home@possiblymaybe.com>
**Subject:** Denial of RFTA, Retaliation against our family for pending complaint, Housing and Disability Discrimination

All,

We have just received notice from a housing provider we submitted an application to, and to which a RFTA was submitted for a month ago that SHRA has denied the application because the amount of rent exceeds "approveable" payment standards.

SHRA has indicated to the housing provider the approvable standard is significantly lower than the three bedroom payment standard for the 95843 zip code, see attached 2023 SHRA Payment Standard handout.

As SHRA is aware, both via letter from the "Reasonable Accommodation Compliance Committee" and via direct communication from Program Manager Troy ▮▮▮ the three bedroom payment standard should have been applied, see attached "Voucher increase extension notice" and "Reasonable Accommodation Denial March 20, 2023".

The housing provider has indicated that SHRA has indicated the maximum payment standard for the unit is $2147.00, indicating SHRA is using a two bedroom payment standard for the zip code.

Further, this denial comes despite repeated assurances from SHRA that the processing of the RFTA would be expedited, despite clear evidence that it was not, and no HQS inspection was even scheduled.

This denial of housing comes days after SHRA decided to, for a second time, unilaterally cancel an informal hearing for denial of payment standard modification, denying us due process for a second time, over a period of nearly a year.

SHRA did not communicate with our family or representatives before making this decision, and did not offer any alternatives before making this decision.

It appears SHRA has chosen to retaliate against our family for pursuing due process regarding housing and disability discrimination, and appears to be making concerted efforts to deny any sort of due process regarding these issues.

SHRA is aware of our housing situation, and have repeatedly taken adverse action against our family in spite of it.

We write this email to notice all parties of these actions, in hope that we can find a solution which will result in SHRA no longer engaging in housing and disability discrimination against our family, comply with relevant statutes and regulations, and prevent further retaliation against our family for pursing due process for these violations.

Thank you for your time,

David

SHRA001750

**Exhibit 25**

Archived: Thursday, May 29, 2025 12:49:13 PM
From: David Samuel
Mail received time: Tue, 23 May 2023 17:29:50
Sent: Tue, 23 May 2023 10:29:07
To: Reasonable Accommodations Caitlyn █████ Leah █████
Subject: Re: Rent Reasonableness Reasonable Accommodation Request, 05/19/2023, the Arbors.
Importance: Normal
Sensitivity: None

---

We have not received a response regarding this reasonable accommodation request.

Please provide an update on the status?

David

On Fri, May 19, 2023 at 3:59â€¯PM David Samuel <davidsa@possiblymaybe.com> wrote:
To SHRA,

We are formally requesting a "Rent Reasonableness" adjustment as a reasonable accommodation for our RFTA submitted to the Arbors.

The unit we have submitted a RFTA for at the Arbors has several features which are uniquely beneficial to our disability needs, including a low noise environment, local school/educational/treatment options, and increased square footage for medical, educational, and employment footage. The Arbors also provides close access to our support network.

The unit we have applied for is less than the payment standard for the zip code 95843. SHRA has not provided information on how it is calculating "reasonableness" or a list of comparable units in the zip code which may be "reasonable".

Because of it's unique features which are not available at any other community within the zip code, it uniquely meets our disability related needs.

David

SHRA003298

**Exhibit 25-2**

Archived: Thursday, May 29, 2025 12:49:18 PM
From: Reasonable Accommodations
Sent: Wed, 24 May 2023 21:07:55
To: Reasonable Accommodations David Samuel Caitlyn ▮▮▮ Leah ▮▮▮
Subject: RE: Rent Reasonableness Reasonable Accommodation Request, 05/19/2023, the Arbors.
Importance: Normal
Sensitivity: None

---

Hello Mr. Samuel,

We have received your request and are reviewing it.

Best,

Ibra ▮▮▮ (she/her/hers)
Housing Choice Voucher (HCV)
Sacramento Housing and Redevelopment Agency
916.449.6346
▮▮▮shra.org
www.shra.org



ÀÂÂÂÂÂÀ 🙰 🖸 ▶

*NOTICE OF AGENCY HOLIDAY CLOSURE*
*Please note that all Agency offices, including Housing Choice Voucher and Conventional Public Housing, will be closed Monday, May 29, 2023 in observance of Memorial Day. Regular business hours will resume Tuesday, May 30, 2023.*

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by other than the sender or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

**From:** David Samuel <davidsa@possiblymaybe.com>
**Sent:** Tuesday, May 23, 2023 10:29 AM
**To:** Reasonable Accommodations <ra@shra.org>; Caitlyn ▮▮▮ <▮▮▮consumersselfhelp.org>; Leah ▮▮▮ <▮▮▮shra.org>
**Subject:** Re: Rent Reasonableness Reasonable Accommodation Request, 05/19/2023, the Arbors.

We have not received a response regarding this reasonable accommodation request.

Please provide an update on the status?

David

On Fri, May 19, 2023 at 3:59â€PM David Samuel <davidsa@possiblymaybe.com> wrote:

To SHRA,

We are formally requesting a "Rent Reasonableness" adjustment as a reasonable accommodation for our RFTA submitted to the Arbors.

SHRA003299

Exhibit 25-3

The unit we have submitted a RFTA for at the Arbors has several features which are uniquely beneficial to our disability needs, including a low noise environment, local school/educational/treatment options, and increased square footage for medical, educational, and employment footage. The Arbors also provides close access to our support network.

The unit we have applied for is less than the payment standard for the zip code 95843. SHRA has not provided information on how it is calculating "reasonableness" or a list of comparable units in the zip code which may be "reasonable".

Because of it's unique features which are not available at any other community within the zip code, it uniquely meets our disability related needs.

David

SHRA003300

**Exhibit 26**

# June 14-15, 2023 Caitlyn / SHRA opacity chain

Selected Gmail messages rendered for transfer to another thread. This packet focuses on SHRA's opacity about payment standards, rent reasonableness. and what units were actually approvable.

## Email 1

**Date: 2023-06-14 08:17 AM**

**From: Caitlyn Grabill <cgrabill@consumersselfhelp.org>**

**To: David Samuel <davidsa@possiblymaybe.com>**

**Subject: Re: Future Unit requirements**

I absolutely agree.
On your portal do you have a copy of your three bed voucher, and any communication stating they might be leaning towards approving the four? When we do the applications they generally ask for a copy of said voucher.

I have seen them approve a 1bed at river pointe in natomas, as well as pheasant point and stone creek in the same area.

I have also gotten a 2 bed approval at the meadows in Citrus Heights.

Those units have all been on the nicer side.

In the meeting yesterday when I asked about your case they stated it wasn't denied due to payment standards (SHRA payment standards) but because of rent reasonableness (the apartment was asking too much for that unit because other units in the area which were similar were much cheaper) they stated they would be sending those figures to me.

They stated approval is based on both whether or not the unit can be approved based on tenant portion and SHRA subsidy vs contract rent (payment standards) and whether or not the unit is priced reasonably as compared to other units.
I rarely have the issue of "reasonableness" come up but I am attributing that to the fact that the unit was not in the "hood."

Look at those other complexes and let me know if any of that might be of interest.
I'll ask around private landlords for any homes that might be in the Arbors area as well.

As far as houses vs apartments the houses we've had approved have been pretty scattered but most have leaned towards south and north area.

## Email 2

**Date: 2023-06-14 08:44 AM**

**From: David Samuel <davidsa@possiblymaybe.com>**

**To: Caitlyn Grabill <cgrabill@consumersselfhelp.org>**

**Subject: Re: Future Unit requirements**

Caitlyn,

**Exhibit 26-2**

We don't have any document other than the extension notice sent by Tory Lynch that reflects a three bedroom voucher. We also have contradictory notices from them regarding the three bedroom voucher not actually being a three bedroom voucher based on Leah Shaw's RFTA denials.

There is no indication they will approve a four bedroom voucher (or a three bedroom at this point), other than it being a legal requirement for them to do so.

The "rent reasonableness" thing is obviously garbage, the whole point of SAFMR is to create guidelines that don't require a reasonableness calculation. It's literally the difference between the regional fair market rates (which sometimes may have required reasonableness calculations) and SAFMR, with the intent to lower the administrative burden on PHAs. Instead, SHRA has managed to weaponize the language against their customer base, much like the reasonable accommodation process itself.

My impression is that they are working against a nominal dollar value as a cap, and anything which exceeds that cap they are going to deny. This makes 1 and 2 bedrooms easier to approve, but they'll fight on anything larger than that. Trying to figure out what that dollar cap is, and have requested program records including their leasing rates by zip code to shed some light on it hopefully.

They still have not sent formal notice of anything regarding the RFTA voiding, the reasonableness accommodation request, nothing.

## Email 3

Date: 2023-06-15 11:13 AM

From: Caitlyn Grabill <cgrabill@consumersselfhelp.org>

To: David Samuel <davidsa@possiblymaybe.com>

Subject: Re: Follow up

Good Morning.

I was able to speak with SHRA supervisor yesterday and I was given a copy of your updated 3 bed voucher and the calculation summary. I also reminded her you have a request for four bedroom but I agree lets focus on the three for now.

Have you looked at Sunset Ridge apartments? The three bed two bath 1056 Sq Ft is listed for July 14th at $2650. Its not too far from Arbors.

## Email 4

Date: 2023-06-15 11:36 AM

From: David Samuel <davidsa@possiblymaybe.com>

To: Caitlyn Grabill <cgrabill@consumersselfhelp.org>

Subject: Re: Follow up

Caitlyn,

I'm familiar with them, website looks like they have a three bedroom unit opening up mid July.

Compared to the Arbors, it's a pretty massive step down, especially since their units are priced higher than some of the Arbors three bedroom units now.

For example this one https://www.arborshomes.com/floorplans/magnolia is listed as $2535 for a 13 month lease.

This one is even better because of that huge patio area: https://www.arborshomes.com/floorplans/sycamore, one is available this month and is only $65 more than the Sunset Ridge unit.

All the prices in the area are roughly similar, and on a dollar per square foot basis Arbors is hands down the least expensive. The biggest problem right now is we have no idea what is approvable. Can we get someone to agree to do a "rent reasonableness" calculation before submitting a RFTA? Or is rent reasonableness only something that a specific department has the magic to conjure up? It's so deceptive to have an approvability worksheet that literally means nothing when it comes to approval.

Guess long story short, Arbors is available sooner, better in all ways than Sunset Ridge, and fits our needs better, but will they approve either anyway?


## Email 5

**Date: 2023-06-15 11:40 AM**

**From: Caitlyn Grabill <cgrabill@consumersselfhelp.org>**

**To: David Samuel <davidsa@possiblymaybe.com>**

**Subject: RE: Follow up**

Hello,

Let me ask the supervisor if she can preapprove any of these options since they haven't sent clear definitions of "rent reasonableness."
I feel like it is a totally reasonable request to ask if it would be even possible before spending app fees.
I will utilize both links you sent.

**Exhibit 27**

Archived: Thursday, May 29, 2025 2:34:53 PM
From: David Samuel
Mail received time: Fri, 12 May 2023 04:37:26
Sent: Thu, 11 May 2023 21:36:44
To: Caitlyn ▮▮▮▮ Leah ▮▮▮▮
Subject: Re: [EXTERNAL] Re: Application Update
Importance: Normal
Sensitivity: None

Caitlyn,

I'm looking over the program regulations and this is all kinds of wrong. They have literally have no authority reduce reasonableness assumption before ordering an HQS inspection. The only other 1300 sq ft comps in that area are actual houses, and even those don't have the same amenities/community features a community like the Arbors would.

Part of the bigger problem is that they've dragged this out for nearly a month and a half, and in that time the unit prices have gone down. However because they are using some magic formula, we have no way to know what we'd qualify for.

This unit: https://www.arborshomes.com/floorplans/sycamore-renovated is 1500+ square feet, is ~$200 less than the prior one, but would we qualify? Far better comp, and way below the SAFMR, but are they seeing "renovated" and deciding to make up reasons to deny it? This is what we would like to apply for, but are we just burning more application fees to do so?

The quote that they gave the Arbors, ~$2100, is over one thousand dollars below the SAFMR limit. It's actually ~$150 below the TWO BEDROOM SAFMR. That's not even enough for the non-upgraded units https://www.arborshomes.com/floorplans/sycamore. There are literally zero three bedroom units in Sacramento that would meet their quoted "reasonableness" standard outside of the hood, and even those are completely without amenities.

Even the 3 bed/2 bath units here at the 1100, with a far lower SAFMR, lower square footage, and way fewer amenities (e.g. covered parking) starts at $2375 a month - https://www.theelevenhundred.com/apartments/ca/sacramento/floor-plans#/floorplans/933590313/.

There are only four apartment communities in 95843 with 3 bedroom units available:

The Legacy Antelope - Apt 122 $2386 for a May 31 move in, 1087 sq ft, no covered parking, fenced yard, no adjacent elementary school, etc, and Apt 153, $2446 for a June 16 move in. https://www.legacy-antelope.com/floorplans/montclaire

Antelope Ridge - Apt 119 $2518 for a May 31 move in, 1125 sq ft, no covered parking, etc. They also have two upstairs units, #84 and #88 available for $2588 a month. They do allow adding a one car garage for an addition $75 a month.

Sunset Ridge Apartments - Unit 68 $2700 for a June 8 (earliest date) move in, 1056 sq ft, no covered parking, yard, school, etc, but they do have vinyl plank flooring. https://www.thesunsetridgeapts.com/antelope/sunset-ridge-apartments/floorplans/three-bedroom-two-bath-1000705/fp_name/occupancy_type/conventional/

This is the entirety of the inventory for three bedroom apartment units in 95843. A month and a half ago when we submitted the application at the Arbors all of those prices were higher. Other than these exact units, the entirety of the remaining rental inventory are single family homes or condos. And for those, which are all in the same price range as these, we trade amenities

SHRA003290

like "Playground". "Community Room", and "On Site Management".

It's literally impossible that they came up with the reasonableness rate they quoted the Arbors, and impossible that our preferred unit above doesn't meet reasonableness standards considering it's clearly the largest sq ft unit with the best amenities. The "renovation" is supposed to *add* to reasonableness not subtract from it somehow.

They are literally steering people away from high SAFMR zip codes using this "rent reasonableness" dodginess, the equivalent of Red Lining, which now that I think of it I need to add to the complaint. How is it even possible that they generated the SAFMR they did, which is supposed to be based on these same rates?

What's crazier about all this is the reason why they were able to do the 120% January adjustment at all is because their voucher utilization/success rate has plummeted over the last year because of this type of madness (https://www.shra.org/wp-content/uploads/2018/03/18-03-27-Payment-Standards.pdf).  The preferred unit above is actually only $20 higher than the raw HUD SAFMR (which means Greystar goofed by pulling from the wrong data source) https://www.huduser.gov/portal/datasets/fmr/fmrs/FY2023_code/2023zip_code_calc.odn?zeta=95843&metro_code=METRO40900M40900&year=2023&hypo=hypo, which is well within reasonable accommodation territory which grants up to a 20% adjustment.  Which I've requested.  It looks like they are selectively applying the 120% boost to "cheaper" zip codes and redlining out "expensive" ones.

Just as a reminder, the SAFMR for 95843 is $3240 (https://www.shra.org/wp-content/uploads/2023/01/Payment-Standard-Handout-1-2022.pdf).  The payment standard they quoted the Arbors hasn't been accurate since 2018 (https://www.shra.org/wp-content/uploads/2018/03/18-03-27-Payment-Standards.pdf).

Like there has to be an ombudsman or something for SHRA, the county or city has to have some type of oversight or accountability officer right?  This isn't a little bit off it's blatantly and obviously off.

This is so frustrating, they've published tools and standards that are apparently knowingly worthless guidance and we have no way to know what's approvable or not.  There's literally no context possible in which they could legally void the RFTA for the above unit, but following the law doesn't seem to be something they really care all that much about.

David


On Thu, May 11, 2023 at 5:07  PM Caitlyn ██████ <██████ consumersselfhelp.org> wrote:
Let me try and get someone on the phone tommorow at SHRA to get better clarification about the concerns you bring up here because they are valid, and then we can see from where to go.


Get Outlook for iOS

From: David Samuel <davidsa@possiblymaybe.com>
Sent: Thursday, May 11, 2023 5:04:25 PM
To: Caitlyn ████ <██████ consumersselfhelp.org>; Leah ████ <██████ shra.org>
Subject: Re: [EXTERNAL] Re: Application Update

Caitlyn,

SHRA003291

Exhibit 27-3

Sorry last one, I'm so upset right now.  Seriously, the option that we have is to take a lower quality/un-upgraded unit?  A unit that should have worse comparables?  How is it even possible to approve that worse unit when the rent delta between the upgraded and un-upgraded units averages around $200?  Can they tell us what the actual approvable amount is since the SAFMR doesn't seem to mean anything?

David

On Thu, May 11, 2023 at 4:56â€¯PM David Samuel <davidsa@possiblymaybe.com> wrote:
  Caitlyn,

  Sorry about the rant and the emails but what do we do here?  This is the guidance for the reasonableness checklist - https://www.hud.gov/sites/dfiles/PIH/documents/HCV_Guidebook_Rent%20Reasonableness_updated_Sept%202020.pdf.
  Pages 12-13 have the actual list.  There's literally not a single negative indicator on that list which explains why the unit hundreds of dollars below the SAFMR, and which qualifies via their online tool by hundreds of dollars could possibly not qualify.

  How do we know what is actually approveable other than some cap that's illegal to directly express so they bounce around it with this garbage?  It seems like the only qualifier in place here was someone thought the rent amount was too high.  The Arbors provided literally identical units with the same features in their comparison, but somehow those were invalid for ??? reasons?

  David

  On Thu, May 11, 2023 at 4:41â€¯PM David Samuel <davidsa@possiblymaybe.com> wrote:
    Caitlyn,

    It's bonkers, like what possible feature or amenity could possibly be deducted from the Arbors?  It's literally got every single possible check box since they are essentially duplexes with an entire set of amenities around it.  Is it possible to get a list of how much each supposed feature adds or extracts from the "reasonableness" calculation since the SAFMR is apparently useless?

    David

    On Thu, May 11, 2023 at 4:35â€¯PM David Samuel <davidsa@possiblymaybe.com> wrote:
      Caitlyn,

      At this point, our relationship with the Arbors is starting off completely strained, and not by any action or inaction on our part.  SHRA has already created a potentially hostile housing environment because somehow it takes them a month to plug in some numbers on a RFTA?  It's frustrating that this option, which would have been so beneficial for Artemis especially, is now potentially burned.  Am I reading this wrong?

      David

      On Thu, May 11, 2023 at 4:28â€¯PM David Samuel <davidsa@possiblymaybe.com> wrote:
        Caitlyn,

        The issue is that SHRA is disregarding the published SAFMR and using some arbitrary method of calculating

"reasonableness". If "reasonableness" isn't agreeing with the tool on their website, it means that we potentially continue throwing away application fees contingent on whatever arbitrary process SHRA has convinced themselves isn't defacto retaliation. Unless SHRA can provide a clear criteria for how they calculate "reasonableness", we are kind of hamstrung here. Unfortunately I can't get a hearing for an emergency order to prevent this mess until the end of June.

I honestly have no idea what to do here. From my perspective they are clearly suppressing housing options both through unreasonable delays and by disregarding the guidelines set by HUD. That their comparables are supposedly this out of sync with the SAFMR released four months before we applied is bonkers.

Like it doesn't even matter if it is higher than the comparables, that it's a disability accommodation alone makes it approveable. From the PHA guide - "A PHA must permit a higher rent that may be necessary as a reasonable accommodation for persons with disabilities in accordance with Federal civil rights laws."

I really don't know what to do here, it's pretty clear that they are attempting to strip the "choice" part out of the voucher, which thankfully is one of the things I added in the amended complaint that they discriminate based on rental rate. If I acquiesce here they continue harming everyone, including the landlords who had to sit on empty units for a month, and people looking for housing. If I don't, then my family gets harmed.

That they haven't communicated any of this to us directly, particularly since this is an adverse action, is pretty outrageous.

I really don't know what to do here.

David

On Thu, May 11, 2023 at 4:05â€¯PM Caitlyn ▮▮▮ <▮▮▮consumersselfhelp.org> wrote:
We can also move forward with looking for a different unit all together if you want to do that instead.

Get Outlook for iOS

---

**From:** Caitlyn ▮▮▮ <▮▮▮consumersselfhelp.org>
**Sent:** Thursday, May 11, 2023 3:57:25 PM
**To:** David Samuel <davidsa@possiblymaybe.com>
**Subject:** Re: [EXTERNAL] Re: Application Update

Hello

I received a call back from the arbors stating that SHRA denied the RFTA because the Apt. price was too high and SHRA gave them a price that they could accept however the arbors denied that because itâ€™s not comparable to what their other units are going for however the arbor staff also let me know that your application could be transferred to another unit that wasnâ€™t a newly renovated and that would fit within the price range that SHRA is asking for and that you as a tenant could communicate with the arbors staff thatâ€™s what you wanted to do and they would be willing to do it.

What do you think?

I apologize Iâ€™m using text to speech to write this email because Iâ€™m driving.

Get Outlook for iOS

SHRA003293



# Reasonable Accommodation
## Bullet Points

A participant may request an accommodation in any format: verbally, in writing, or in person. The Agency will then provide a copy of the Request for Reasonable Accommodation form to the participant. All requests for exceptions to the policies such as a reasonable accommodation for a person with disabilities must be submitted to SHRA's Reasonable Accommodation (RA) Committee. The RA Committee will review the family's request and the information from a reliable, health care professional, such as a doctor, social worker, or caseworker and make a decision as to whether to grant or deny the reasonable accommodation request. (Administrative Plan Chapters 5 and 23)

To print the Reasonable Accommodation forms, in the Resident screen, go to the Data tab and select Letters.



Select the letter category Third Party Verification



Select RA Authorization Ops page 1 & 2 - First two pages only of RA form



Complete the fields as follows:



**Exhibit 28-3**

Page 1 and page 2 of the Reasonable Accommodation forms will populate.

The participant only completes these 2 forms. If there are 2 requests for 2 household members, then 2 RA forms must be completed (1 for each person).

**SHRA**

**AUTHORIZATION FOR USE OR DISCLOSURE OF HEALTH INFORMATION**
(This form is available electronically upon request)

**HEALTH CARE PROFESSIONAL** - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

**THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION. WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.**

This Request is made on behalf of ☐ Head-Of-Household ☐ Another _____

⟵ HOH needs to check the box if the RA is for HOH or a HHM

Test test
680 1 Street
Sacramento, CA 95814

Phone: _____ Alt Phone: _____

⟵ A phone number needs to be listed

Type of Accommodations Requested (please print legibly) _____

⟵ Description needs to state why the RA is being requested, no medical conditions e.g. live-in aide or extra bedroom for medical equipment.

Physician/Health Care Professional's Name: _____

Name of Employer of Practice: _____

Address: _____

Phone: _____ Fax: _____ Date: _____

⟵ Name of Physician/Healthcare Provider, if applicable Name of Practice Address, Phone Number, Fax Number and Date

I hereby voluntarily authorize the Physician/Health Care Professional named above to disclose information from my record to the Housing Authority of Sacramento on the attached verification form for the purpose of verifying my disability status and need for an accommodation. The Housing Authority may use the information solely for such purpose.

**AUTHORIZATION EXPIRATION AND REVOCATION**
I understand that I may revoke this authorization in writing at any time. The written revocation will be effective upon receipt, except to the extent that the disclosing party or others have acted in reliance upon this authorization. If this authorization has not been revoked, it will terminate one year from the date of my signature, unless I have specified a different expiration date or expiration event.

**SPECIFYING A SHORTER TERM AUTHORIZATION**
This authorization should expire on: _____ or upon the following conditions.

_____

80017430

1 OF 4

If the request is for medical equipment, in the type of accommodation requested it must list the medical equipment that will be in the additional room.

Type of Accommodation(s) Requested: (PLEASE PRINT LEGIBLY) _____
Request for additional room for medical equipment. The medical equipment is an electric scooter, treadmill and stationary bike. _____

If the request is for a higher payment standard, in the type accommodation requested it must list the why the unit accommodates the disability. The RFTA must be also submitted with the RA.

Type of Accommodation(s) Requested: (PLEASE PRINT LEGIBLY) _____
Request for higher payment standard to rent unit at 125 Beach Street, Sacramento, CA 95815 that has walk-in bathtub with wheelchair accessible bathroom. _____

**Exhibit 28-4**

**TERMS OF AUTHORIZATION**

I understand that the health care provider will not condition treatment or eligibility for care on my providing this authorization.

I understand that information disclosed by this authorization may be subject to redisclosure by the recipient and may no longer be protected by the Health Insurance Portability and Accountability Act Privacy Rule [45 CFR Part 164], and the Privacy Act of 1974 [5 USC 552a].

I understand that I have the right to receive a copy of this authorization.

Signature: _____    Date: _____

⇐ Signature - HOH or if the request is for an adult Household Member needs to sign the form and date

---

**Housing Authority Use Only.**

Faxed to Medical Professional on: _____
(Date)

Faxed By: Maria Avidas

Tenant Code: t0017430

HCV Caseworker: Sondra Smith
CW Code: cw13

☐ HCV Resident    ☐ HCV applicant    ☐ SPC Resident    ☐ SPC applicant
☐ PH Resident     ☐ PH applicant

t0017430

⇐ Caseworker completes the required information in the box – enter the date the RA form was faxed and mark the applicable box "HCV Resident"

---

If the family has Kaiser, then the Kaiser Form must be also completed. The Kaiser form is in Yardi Letters, Third Party Verification. Select "RA form for Kaiser"



TEST, JANE (t0017430)

Select Letter Category: [Third Party Verification ▾]
[Next]

Select Letter:
- ☐ Appt no letter - To place appt in Yardi when no letter is sent.
- ☐ Bank - Third party form for bank verification
- ☐ Child Care - Third Party form for child care
- ☐ Child Support - Third party form for child support
- ☐ Employment - Third party form for employment verification
- ☐ Family Contribution - Third party form
- ☐ Financial Aid - Third Party form for financial aid
- ☐ Full Time Student - Third party form for full time student
- ☐ Pension - Third party form for pension verification
- ☐ Postal Verification - To request address information from the postmaster
- ☐ RA authorization HCV Intake - Reasonable Accommodation Authorization Form
- ☐ RA Authorization Ops page 1 & 2 - First two pages only of RA form
- ☐ RA Authorization Ops page 3 & 4 - Reasonable Accommodation Authorization Form for use by operations
- ☐ RA form for Kaiser - RA authorization for Kaiser
- ☐ Unemployment - Third party form for employment verification
- ☐ Update Correspondence - can be used to add, delete and change correspondents

[Next]

---

SHRA006453

Complete the fields as follows:    Select Letter Options    | Previous |

Chrono Category [................] ▾

Select chrono from list [................] ▾

And/Or additional chrono | Printing Kaiser Form |

Mailbox (goes in barcode) [........] ▾

Chrono Subcategory (for RFTA received category) | Tracking On ▾ |

Add Chrono? | Yes ▾ |

Create third party? | Yes ▾ |

| Word Merge |

---

**KAISER PERMANENTE.**

AUTHORIZATION FOR USE OR DISCLOSURE OF PATIENT HEALTH INFORMATION

Note: These may apply to certain requests

Patient Name: _____
Medical Record number _____ Birth Date: _____
Address: _____
City _____ State _____
Zip Code _____ Phone # ( ) _____
Email: _____

➤ The client needs to complete this top section.

Kaiser Permanente may release this information to: ☐ Check if same as above
Recipient Name: Sacramento Housing and Redevelopment Agency
Address: 630 I Street _____ City Sacramento ___ State CA Zip Code 95814
Phone # (916) 440-1390 _____ Email N/A

This disclosure can be used for the following purpose(s): ☐ Personal Use  ☐ Legal  ☐ Insurance
☐ Medical Treatment  ☒ Medical Condition Verification  ☐ Disability  ☐ FMLA  ☐ Workers' Comp

Check ONLY one of the following three options to identify the health information to be released.
☒ Option 1: Form Completion (a substitute form or relevant medical records may be released)
☐ Option 2: Last 2 years of Kaiser Permanente Medical Office and Kaiser Foundation Hospital records
☐ Option 3: Records as specified. You must complete Step 1 and Step 2 below.
  Step 1: Enter date range or date(s) of the records to be released _____
  Step 2: Select types of records to be released
    ☐ KP Medical Office    ☐ Kaiser Foundation Hospital  ☐ Immunization    ☐ Lab Results
    ☐ Diagnostic Images    ☐ Copays & Deductibles    ☐ Itemized Billing  ☐ Pharmacy
    ☐ Other (provider, department, specialty): _____

NOTE: Hospital and Medical Office records released as part of this authorization may contain references related to mental health, addiction, and HIV medical conditions.

Check the boxes below if you want this release to include the following information. Otherwise, this information will be excluded.
☐ Mental Health Treatment Records  ☐ Addiction Medicine Treatment Records  ☐ HIV Test Results

Media Type: ☐ Electronic  ☒ Paper  Delivery Preference: ☐ Electronic  ☒ Mail  ☐ Pickup

DURATION: Authorization shall remain in effect for one year from the date of signature below. However, in Washington D.C. permission to release addiction medicine treatment records expires after six (6) months.

REVOCATION: You or your personal representative may cancel this authorization for future releases by submitting a written request to the Release of Information Unit listed for your region of service on the reverse side of this form. Your cancellation will not affect information that was released prior to receipt of the written request.

REDISCLOSURE: Once the information is released, it may not be protected under federal privacy law (HIPAA). State or other federal law may require the recipient to obtain your authorization before further disclosure.

Kaiser Permanente may not condition treatment, payment, enrollment, or eligibility for benefits on whether you sign this authorization. This disclosure is made at your request. For Virginia patients, a copy of this authorization and a note stating to whom your information was disclosed will be included in your medical record. A copy of the original authorization is valid. You have a right to a copy of this completed authorization.

Date _____ Signature _____  If personal representative, print name/relation _____

➤ The client needs to sign and date the form.

---

Make sure a copy of page 1, 2 and if applicable the Kaiser form is in Open Work Desk.

When page 1 and page 2 are completed and if applicable the Kaiser form, print page 3 and page 4 to send to the doctor/medical professional that the client provided on page 1. Page 3 and page 4 are never handed to the client or sent to scan.

To print page 3 and 4, go to Yardi Letters



Complete the fields as follows:



**LICENSED PHYSICIAN OR ATTENDING HEALTH CARE PROFESSIONAL'S CERTIFICATION OF NEED FOR REASONABLE ACCOMMODATION**

*Health Care Professional, when you have completed the two pages of the attached form please fax all four pages to 916-264-1533.*

**Part I – Certification of Applicant as a Person with a Disability:**

In my opinion, the Applicant named herein has a disability, which is defined as:
- (a) A physical or mental impairment that substantially limits one or more major life activities; or
- (b) having a record of such impairment; or
- (c) being regarded as having such an impairment.

Choose One:
- [ ] Yes. Go to Part II of this document.       **Don't skip.**
- [ ] No. Go to Part V of this document.

**Part II – Accommodation of Disability:**

Under applicable Federal law, a Reasonable Accommodation is defined as a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling, including a public and common use spaces.

I recommend the following type of reasonable accommodation in order to ensure that this applicant has an equal housing opportunity:

**A.   In Home Care:**

- [ ] Care Provider: A person that assists a person in the home on a part time basis. *(Does not live in the home.)* The number of hours of care per day that is needed: _____ hours/day.
- [ ] Live-in Aide: A person that *resides with* an elderly or disabled person. A Live-in Aide is a person for the care of the Applicant to accommodate his/her disability.

    Will a work aide be in the unit a minimum of 12 hours per day in order to meet the residual needs? [ ] NO [ ] YES.     **Don't skip. Item you need.**
    If Yes, explain who must reside with the applicant? We grant an additional provision for services (please print legibly):
    _____
    _____

**B.   Unit Accommodation:**

- [ ] The Applicant requires a wheelchair accessible housing to accommodate his/her disability.
- [ ] The Applicant needs the following modification to accommodate his/her disability. (e.g. wanted appliances and cabinets due to inability to reach, grab bars in bathroom, access to parking, or accommodation for hearing and/or sight impaired persons, etc.). Please describe the specific type of accommodation needed. (please print legibly)
    _____
    _____

**C.   Companion Animal or Service Animal Accommodation:**

- [ ] The Applicant requires a companion or service animal to accommodate his/her disability. The Housing Authority has a policy of allowing no more than 2 animals per unit. If you feel that client needs more than 2 animals in order to reasonably accommodate their disability, please explain (please print legibly):
    _____
    _____

3 OF 4

**D.   Other Accommodation:**

- [ ] The Applicant needs another type of accommodation not listed above for his/her disability. Please explain in detail (below) what type of accommodation is needed (please print legibly):
    _____
    _____
    _____

**PART III – REASONABLENESS**

Please check **one** of the following:
- [ ] This requested accommodation will improve the quality of life.     **Don't skip.**
  OR
- [ ] This requested accommodation is medically necessary.

How does the requested accommodation listed on Page 1 provide the patient with equal opportunity and access to housing? Clearly describe why this accommodation is necessary (please print legibly):
    _____
    _____
    _____

**PART IV – DURATION**

Is the accommodation needed on a permanent basis because the applicant's condition is not expected to improve in the near future?   [ ] Yes, go to Part V   [ ] No, continue

Please provide an estimated time period for reevaluation of the applicant condition's and need for an accommodation: _____

Note: Sacramento Housing Authority reserves the right to require recertification of the need for an accommodation on an annual basis notwithstanding the responses provided above.

**PART V – CERTIFICATION**

Based on my professional knowledge of said client, I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____     _____
Physician's/Health Care Professional's Signature     Date

_____     _____
Print Name     Title

*Please fax this request for reasonable accommodation to 916-264-1533.*

4 OF 4

When sending RA paperwork to the doctor/medical professional, you must enter a chrono.

In the resident home screen, go to Chrono.

Click Add New Chrono

- Category: Reasonable Accommodation (Tracking)
- -- Sub-Category: General



Chrono needs to state how the RA paperwork was sent, to whom, the phone number, fax number, who the RA is for and what type of RA accommodation is requested (i.e. adding a live-in aide (LIA) and that it was sent to the RA Coordinator on what date.

## TEST, TEST - t0017430

| Fitler By: Category | | | Mode Search Note Text | | | Added in Last |
|---|---|---|---|---|---|---|
| | | ▽ | ▽ | | | 365 |

| Category | Mode | Note | Staff | Date | FR? |
|---|---|---|---|---|---|
| Reasonable Accommodation | General | RA paperwork sent via fax to Dr. James Smith, Mercy Medical Group, Phone number 916-440-1390 Fax number 916-449-1285. HOH Test Test requesting a LIA. RA paperwork sent to RA Coordinator on 10/12/2018. | mavdalas | 10/10/2018 | ☐ |

Page 1 and page 2 and the Kaiser form are sent to scan and copies are also sent to the RAC (RA Coordinator, currently Ibra Henley). RA committee currently meets on Wednesday mornings.

The Reasonable Accommodation (RA) Committee sends the family a letter letting them know if the RA was approved or denied.

If the reasonable accommodation request is denied, the applicant or participant will be sent a letter regarding the reason for the denial. The applicant or participant may contact staff to discuss the reason for the denial and may submit a revised request for a reasonable accommodation.

If the RA was approved for only a specific amount of time, such as 12 months or 18 months, or 2 years, etc, then the RA process will need to be requested and approved again if the family still needs the RA. The caseworker must check the RA Chrono every time they complete an annual or interim recertification. To filter and check the Reasonable Accommodation "Tracking On" Chrono and "Tracking On Expiration Date", see examples below:

| Category | Mode | Note | Staff | Date | FR? | Due By | Complete | NR | Edit |
|---|---|---|---|---|---|---|---|---|---|
| Reasonable Accommodation | Tracking On | R/A committee met to consider a request for separate bedrooms for head of household, Alyana and Joel. Request is approved, voucher size to increase to a 3 bedroom. Request is to be evaluated in two years when Alyana turns 18. | mhamilto | 2/25/2016 | ☐ | | | ☐ | |

| Category | Mode | Note | Staff | Date | FR? | Due By | Complete | NR | Edit |
|---|---|---|---|---|---|---|---|---|---|
| Reasonable Accommodation | Tracking On | R/A committee met to consider a request for a live in aide. Request is approved for a live in aide and the voucher size will be increased to a 2 bedroom when the live in aide is approved. Will reevaluate in 1 year. | ljordan | 6/25/2015 | ☐ | | | ☐ | |

| Category | SubCategory | Note | | | Date | Due By | Comp Date | NR |
|---|---|---|---|---|---|---|---|---|
| Reasonable Accommodation | Tracking On Expiration Date | R A committee met to consider a request for an additional bedroom for live in aide on behalf of HOH Request is approved for a live in aide and the voucher size will be increased to a 2 bedroom when the live in aide is approved. Re-evaluate in one year. | | | 7-26-2018 8:49:01 AM | 48 | mnoua | ccarsway |

If the family is not interested in requesting to redo that RA that just expired, then the RA tracking must be turned off in Chrono. The voucher size will be reduced at the next annual recertification or move.



**Exhibit 28-9**



CHANGING LIVES

**Reasonable Accommodation
Bullet Points**

A participant may request an accommodation in any format: verbally, in writing, or in person. The Agency will then provide a copy of the Request for Reasonable Accommodation form to the participant. All requests for exceptions to the policies such as a reasonable accommodation for a person with disabilities must be submitted to SHRA's Reasonable Accommodation (RA) Committee. The RA Committee will review the family's request and the information from a reliable, health care professional, such as a doctor, social worker, or caseworker and make a decision as to whether to grant or deny the reasonable accommodation request. (Administrative Plan Chapters 5 and 23)

To print the Reasonable Accommodation forms, in the Resident screen, go to the Data tab and select Family Detail Info.



Under the Summary Tab, select # Family Members

| Summary | General | Admission | Special Programs | Unit | F |
|---|---|---|---|---|---|

| # Family Members | 4 | # of Dependents | 1 | M |
| Asset Cash Value | 47,905.00 | Asset Income | 62.00 | E |
| Annual Income | 19,302.00 | Excluded Income | 0.00 | D |
| Medical/Disability | 1,275.00 | Excluded Medical/Disability | 549.00 | E |
| Child Care Expense | 6,000.00 | Excluded Childcare | 1,200.00 | H |

SHRA006458

Exhibit 28-10

Select the family member that the Reasonable Accommodation is being requested for



In the Reports Tab at the top of the page, use the drop down menu to select RA Request Pages 1-2

SHRA006459

Page 1 and page 2 of the Reasonable Accommodation forms will populate.

The participant only completes these 2 forms. If there are 2 requests for 2 household members, then 2 RA forms must be completed (1 for each person).

**SHRA**

**AUTHORIZATION FOR USE OR DISCLOSURE OF HEALTH INFORMATION**
(This form is available electronically upon request)

HEALTH CARE PROFESSIONAL – The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THIS ACCOMMODATION. WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.

This Request is made on behalf of: ☐ Head-Of-Household ☐ Another _____

⟸ HOH needs to check the box if the RA is for HOH or a HHM

Test test
6404 Street
Sacramento, CA 95814

Phone: _____ Alt Phone _____

⟸ A phone number needs to be listed

Type of Accommodation(s) Requested: (PLEASE PRINT LEGIBLY) _____
_____
_____
_____

⟸ Description needs to state why the RA is being requested, no medical conditions e.g., live-in aide or extra bedroom for medical equipment.

Physician/Health Care Professional's Name: _____

Name and Employer of Practice: _____

⟸ Name of Physician/Healthcare Provider if applicable Name of Practice Address, Phone Number, Fax Number and Date

Address: _____

Phone: _____ Fax _____ Date: _____

I hereby voluntarily authorize the Physician/Health Care Professional named above to disclose information from my record to the Housing Authority of Sacramento on the attached verification form for the purpose of verifying my disability status and need for an accommodation. The Housing Authority may use the information solely for such purpose.

AUTHORIZATION EXPIRATION AND REVOCATION
I understand that I may revoke this authorization in writing at any time. The written revocation will be effective upon receipt, except to the extent that the disclosing party or others have acted in reliance upon this authorization. If this authorization has not been revoked, it will terminate one year from the date of my signature, unless I have specified a different expiration date or expiration event.

SPECIFYING A SHORTER TERM AUTHORIZATION
This authorization should expire on _____, or upon the following conditions.

_____

1 OF 4

03/17430

---

If the request is for medical equipment, in the type of accommodation requested it must list the medical equipment that will be in the additional room.

> Type of Accommodation(s) Requested: (PLEASE PRINT LEGIBLY) _____
>
> **Request for additional room for medical equipment. The medical equipment**
>
> **is an electric scooter, treadmill and stationary bike.**

If the request is for a higher payment standard, in the type of accommodation requested it must list the why the unit accommodates the disability. The RFTA must be also submitted with the RA.

> Type of Accommodation(s) Requested: (PLEASE PRINT LEGIBLY) _____
>
> **Request for higher payment standard to rent unit at 125 Beach Street, Sacramento,**
>
> **CA 95815 that has walk-in bathtub with wheelchair accessible bathroom.**

TERMS OF AUTHORIZATION

I understand that the health care provider will not condition treatment or eligibility for care on my providing this authorization.

I understand that information disclosed by this authorization may be subject to redisclosure by the recipient and may no longer be protected by the Health Insurance Portability and Accountability Act Privacy Rule (45 CFR Part 164), and the Privacy Act of 1974 [5 USC 552a].

I understand that I have the right to receive a copy of this authorization.

Signature: _____    Date: _____

Signature - HOH or if the request is for an adult Household Member needs to sign the form and date



Housing Authority Use Only:
Faxed to Medical Professional on _____ Date
Faxed By: Maria Avdalas

Tenant Code: t0017430

HCV Caseworker: Sandra Smith
CW Code: cw13

☐ HCV Resident    ☐ HCV applicant    ☐ SPC Resident    ☐ SPC applicant
☐ PH Resident    ☐ PH applicant

t0017430

Caseworker completes the required information in the box – enter the date the RA form was faxed and mark the applicable box "HCV Resident"

If the family has Kaiser, then the Kaiser Form must be also completed. The Kaiser also located in the Reports Tab drop down



**Exhibit 28-13**

The client needs to complete
this top section.

**KAISER PERMANENTE.**

Patient Name: _____
Medical Record Number _____
Birth Date: _____ Email: _____

Do not use for patient copies of or access to their medical records. Patients should go to kp.org/requestrecords to conveniently request medical records, FMLA and Disability certifications.

**AUTHORIZATION FOR USE OR DISCLOSURE OF PATIENT HEALTH INFORMATION**
**To the Following Third-Party Recipient (Fees may be required)**

Recipient Name: _____
Address: _____
City: _____ State: _____ Zip Code: _____
Phone # ( _____ ) _____ Email: _____

This disclosure can be used for the following purpose(s): ☐ Legal ☐ Insurance ☐ Medical Certification ☐ Other

Hospital and Medical Office records released as part of this authorization may contain references related to mental health, addiction, and HIV medical conditions documented by primary care.

I authorize the following to be disclosed for the selected time frame:
☐ Form Completion (a substitute form or relevant medical records may be released in lieu)   ☐ Medical Records
☐ Diagnostic Images   ☐ Itemized Billing Records   ☐ Pharmacy Copays   ☐ Medical Copays
Time Frame: Last ☐ 3 months ☐ 6 months ☐ 1 year ☐ 2 years ☐ 5 years ☐ All electronic records

Check the boxes below if you want this release to include the protected treating department or HIV initial test result information. If not checked, this treating department information will be excluded.
☐ Mental Health Treatment Records   ☐ Addiction Medicine Treatment Records   ☐ HIV Lab Test Results
Kaiser Permanente Oregon locations need to also check this box if they want Genetic Testing Information released. ☐

**DURATION:** Authorization shall remain in effect for 6 months from the date of signature below.
**REVOCATION:** You or your personal representative may cancel this authorization for future releases by submitting a written request to the Release of Information Unit listed for your region of service found on kp.org/requestrecords. Your cancellation will not affect information that was released prior to receipt of the written request.
**REDISCLOSURE:** Once this information is released, it may not be protected under federal privacy law (HIPAA). State or other federal law may require the recipient to obtain your authorization before further disclosure.

Kaiser Permanente may not condition treatment, payment, enrollment, or eligibility for benefits on whether you sign this authorization. This disclosure is made at your request. For Virginia patients, a copy of this authorization, and a note stating to whom your information was disclosed will be included in your medical record. A copy of the original authorization is valid. You have a right to a copy of this completed authorization.
We will provide the requested information in electronic format to the recipient unless the recipient contact us to make other arrangements.

Date _____  Signature _____  If personal representative, print name/relationship

The client needs to sign
and date this section.

Make sure a copy of page 1, 2 and if applicable the Kaiser form is in Open Work Desk.

When page 1 and page 2 are completed and if applicable the Kaiser form, print page 3 and page 4 to send to the doctor/medical professional that the client provided on page 1. Page 3 and page 4 are never handed to the client or sent to scan.

SHRA006462

**Exhibit 28-14**

To print page 3 and 4, back to the Family Member screen, use the Reports Tab drop down menu and select RA Request Pages 3-4

When sending RA paperwork to the doctor/medical professional, you must enter a chrono.

In the resident home screen, go to Chrono.

Click Add New Chrono

- Category: Reasonable Accommodation (Tracking)
- Sub-Category: General



Chrono needs to state how the RA paperwork was sent, to whom, the phone number, fax number, who the RA is for and what type of RA accommodation is requested (i.e. adding a live-in aide (LIA) and that it was sent to the RA Coordinator on what date.

# TEST, TEST - t0017430

**Fitler By: Category**                    **Mode Search Note Text**        **Added in Last**

|                |         |                                                                                                                                                                                      |          |            | 365 |
|----------------|---------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|----------|------------|-----|
| **Category**   | **Mode** | **Note**                                                                                                                                                                            | **Staff** | **Date**   | **FR?** |
| Reasonable Accommodation | General | RA paperwork sent via fax to Dr. James Smith, Mercy Medical Group, Phone number 916-440-1390 Fax number 916-449-1285. HOH Test Test requesting a LIA. RA paperwork sent to RA Coordinator on 10/12/2018. | mavdalas | 10/10/2018 | ☐ |

Page 1 and page 2 and the Kaiser form are sent to scan and copies are also sent to the RAC (RA Coordinator, currently Ibra Henley).  RA committee currently meets on Thursday mornings.

The Reasonable Accommodation (RA) Committee sends the family a letter letting them know if the RA was approved or denied.

If the reasonable accommodation request is denied, the applicant or participant will be sent a letter regarding the reason for the denial. The applicant or participant may contact staff to discuss the reason for the denial and may submit a revised request for a reasonable accommodation.

If the RA was approved for only a specific amount of time, such as 12 months or 18 months, or 2 years, etc, then the RA process will need to be requested and approved again if the family still needs the RA.  The

X:\Sec8AppLeads\Training\Ops lead Training Folder\OPS Lead Training Binder 2016

caseworker must check the RA Chrono every time they complete an annual or interim recertification. To filter and check the Reasonable Accommodation "Tracking On" Chrono and "Tracking On Expiration Date", see examples below:

| Category | Mode | Note | Staff | Date | FR? | Due By | Complete | NR | Edit |
|---|---|---|---|---|---|---|---|---|---|
| Reasonable Accommodation | Tracking On | R/A committee met to consider a request for separate bedrooms for head of household, Alyana and Joel. Request is approved, voucher size to increase to a 3 bedroom. Request is to be evaluated in two years when Alyana turns 18. | mham-llo | 2/25/2016 | | | | | |

| Category | Mode | Note | Staff | Date | FR? | Due By | Complete | NR | Edit |
|---|---|---|---|---|---|---|---|---|---|
| Reasonable Accommodation | Tracking On | R/A committee met to consider a request for a live in aide. Request is approved for a live in aide and the voucher size will be increased to a 2 bedroom when the live in aide is approved. Will reevaluate in 1 year. | jordan | 6/25/2015 | | | | | |

| Category | SubCategory | Note | | | | | |
|---|---|---|---|---|---|---|---|
| Reasonable Accommodation | Tracking On Expiration Date | R A committee met to consider a request for an additional bedroom for live in aide on behalf of HOH. Request is approved for a live in aide and the voucher size will be increased to a 2 bedroom when the live in aide is approved. Re-evaluate in one year. | | 7/26/2018 8:49:01 AM | 48 | vmoua | ccaraway |

If the family is not interested in requesting to redo that RA that just expired, then the RA tracking must be turned off in Chrono. The voucher size will be reduced at the next annual recertification or move.





Reasonable Accommodation

Getting It Right The First Time

Exhibit 28-18

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 172 of 471

# The Law

- ## <u>Section 504 of the Rehabilitation Act of 1973</u>

  No otherwise qualified individual with handicaps shall solely by reason of his handicap be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance



SHRA006467

Exhibit 28-19

# The Law

- 24 CFR §§ 8.20, 8.21, 8.24 and 8.33]. PHAs and other recipients of Federal financial assistance are required to make reasonable adjustments to their rules, policies, practices and procedures in order to enable an applicant or resident with a disability to have an equal opportunity to use and enjoy the housing unit, the common areas of a dwelling or participate in or access programs and activities conducted or sponsored by the PHA and/or recipient. When a family member requires a policy modification to accommodate a disability, PHAs must make the policy modification unless doing so would result in a fundamental alteration in the nature of its program or an undue hardship on the PHA's programs.

SHRA006468

Exhibit 28-20

# The Request

- Is REQUIRED – they must ask for the accommodation, but they don't need to use our language.
- Any Time /Any Way – they can ask at any time in any format.
- Print Pages 1-2 and provide to the participant.
- Chrono what the participant is requesting and for what

- Ask if they are a Kaiser patient and if so Print Pages 1-2 and the Kaiser ROI and Instruction page.
- Once returned to us completed, fax pages 1-4 to the provider

- Fax pages 1-4

SHRA006469

Exhibit 28-21

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 175 of 471

# The Request



**AUTHORIZATION FOR USE OR DISCLOSURE OF HEALTH INFORMATION**

(This form is available electronically upon request)

INVESTING IN COMMUNITIES

---

**HEALTH CARE PROFESSIONAL.** - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

---

**THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION, WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.**

This Request is made on behalf of: ■ Head-Of-Household  ☐ Another

«firstname» «lastname»
«addr1» «addr2»
«city», «state» «zip»

Phone(s) _____   Alt Phone _____

SHRA006470

Exhibit 28-22

# The Request



**INSHRA**

INVESTING IN COMMUNITIES

## AUTHORIZATION FOR USE OR
## DISCLOSURE OF HEALTH INFORMATION

(This form is available electronically upon request)

---

**HEALTH CARE PROFESSIONAL** - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

---

**THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION, WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.**

This Request is made on behalf of: ☐ Head-Of-Household ☒ Another *Madison Bumgarner*

«firstname» «lastname»
«addr1» «addr2»
«city», «state» «zip»

Phone(s)_____ Alt Phone_____

SHRA006471

Exhibit 28-23

# The Request



**SHRA**

INVESTING IN COMMUNITIES

## AUTHORIZATION FOR USE OR
## DISCLOSURE OF HEALTH INFORMATION
(This form is available electronically upon request)

HEALTH CARE PROFESSIONAL - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION, WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.

This Request is made on behalf of: ☐ Head-Of-Household ☐ Another_____

«firstname» «lastname»
«addr1» «addr2»
«city», «state» «zip»

Phone(s)_____ Alt Phone_____

Type of Accommodation(s) Requested: (PLEASE PRINT LEGIBLY)_____

# NEVER ASK FOR THE NATURE OF
# THE DISABILITY.

SHRA006472

Exhibit 28-24

# The Request



## AUTHORIZATION FOR USE OR
## DISCLOSURE OF HEALTH INFORMATION

(This form is available electronically upon request)

INVESTING IN COMMUNITIES

**HEALTH CARE PROFESSIONAL.** - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

SHRA006473

Exhibit 28-25

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 179 of 471

# The Request

SHRA006474

Exhibit 28-26

# The Request

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 180 of 471



## AUTHORIZATION FOR USE OR
## DISCLOSURE OF HEALTH INFORMATION
(This form is available electronically upon request)

INVESTING IN COMMUNITIES

**HEALTH CARE PROFESSIONAL** - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

**THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION, WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.**

This Request is made on behalf of: ☐ Head-Of-Household  ☒ Another  *Joe Panik*

«firstname» «lastname»
«addr1» «addr2»
«city», «state» «zip»

Phone(s) _____     Alt Phone _____

Type of Accommodation(s) Requested: (PLEASE PRINT LEGIBLY)

*extra bedroom for live in aide*

SHRA006475

Exhibit 28-27

# Medical Equipment

- The committee needs to know what medical equipment the client needs to accommodate the disability.

- The medical provider needs to know what medical equipment the client is claiming to need

  - The medical provider can respond to a medical equipment request more easily if the equipment is listed.

SHRA006476

Exhibit 28-28

# The Request



**AUTHORIZATION FOR USE OR DISCLOSURE OF HEALTH INFORMATION**

(This form is available electronically upon request)

INVESTING IN COMMUNITIES

---

**HEALTH CARE PROFESSIONAL.** - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

---

**THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION, WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.**

This Request is made on behalf of: ☐ Head-Of-Household ☒ Another _Hunter Pence_

«firstname» «lastname»
«addr1» «addr2»
«city», «state» «zip»

Phone(s) _____ Alt Phone _____

Type of Accommodation(s) Requested: (PLEASE PRINT CLEARLY)

_extra bedroom for medical equipment weight bench, rowing machine cry towel, treadmill_

SHRA006477

Exhibit 28-29

# Payment Standard

- 24 CFR §982.505(d), any PHA may, without HUD approval, establish an exception payment standard of up to and including 120 percent of the FMR if required as a reasonable accommodation for a family that includes a person with a disability.
  - When a family requests a higher payment standard, they must demonstrate that the chosen unit uniquely meets the disabled person's needs
  - A RFTA must be submitted with the request
  - When making such an approval, the PHA will maintain documentation that the PHA performed the required rent reasonableness analysis and will also maintain documentation that the unit meets the needs of the person with disabilities.

SHRA006478

Exhibit 28-30

# The Request

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 184 of 471



## AUTHORIZATION FOR USE OR
## DISCLOSURE OF HEALTH INFORMATION

(This form is available electronically upon request)

INVESTING IN COMMUNITIES

---

**HEALTH CARE PROFESSIONAL** - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

---

**THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION, WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.**

This Request is made on behalf of: ☐ Head-Of-Household   ☒ Another   *Evan Longoria*

«firstname» «lastname»
«addr1» «addr2»
«city», «state» «zip»

Phone(s)                                Alt Phone

Type of Accommodation(s) Requested: (PLEASE PRINT CLEARLY)

*higher payment standard because unit has sauna built into bathroom*

SHRA006479

Exhibit 28-31

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 185 of 471

# The Request

- Fax to medical provider

- Wait for confirmation page

- Send all 4 pages to Elyse

- Chrono



SHRA006480

Exhibit 28-32

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 186 of 471

# The Request

- Chrono must contain the following:
  - What is being requested, on whose behalf, and where the fax was sent.
    - Received R/A request for extra bedroom for live in aide on behalf of Brandon Belt. Faxed to (Medical Provider) at 916-123-4567 and sent original to Elyse.

**NEVER CHRONO THE NATURE OF THE DISABILITY.**

SHRA006481

Exhibit 28-33

# Summary

- Regulation requires review of all requests
- Request is allowed at any time by any means
- Head of Household or Another is clear
- Requested accommodation is clear
  - Medical Equipment – What is needed?
  - Higher Payment Standards – Why this unit? – RFTA
- Fax/Confirmation page
- Send to Elyse
- Chrono
- Never chrono medical information

SHRA006482

Exhibit 28-34

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 188 of 471

# Questions



SHRA006483

Exhibit 276-25



# REASONABLE ACCOMMODATIONS

SHRA006484

Exhibit 28-36

# What is a Reasonable Accommodation?

A reasonable accommodation is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with disabilities to have an equal opportunity to use and enjoy a dwelling, including public and common use spaces, or to fulfill their program obligations.

The Housing Authority **MUST** ensure that persons with disabilities can receive an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, as those who do not have disabilities.

SHRA006485

Exhibit 28-37

## Section 504 provides rights to persons with disabilities in HUD-funded programs and activities.

Section 504 of the Rehabilitation Act of 1973 is called simply "Section 504."

Section 504 is not the only law that prohibits disability discrimination in programs receiving HUD funds or financial assistance.

Other federal laws that provide nondiscrimination on the basis of disability include the Fair Housing Act, the Americans with Disabilities Act, and the Architectural Barriers Act.

SHRA006486

Exhibit 28-38

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 192 of 471

# Informal
# Vs.
# Formal R/A Process

Not all Reasonable Accommodation requests need to go before the committee. There are 2 different processes:

Informal

Formal

SHRA006487

Exhibit 28-39

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 193 of 471

# Informal

## Requests that do not need to be sent to a third-party source for further verification or to the Reasonable Accommodation Compliance Committee (RACC) for review.

- Client's disability is obvious
- The request does not require Committee approval



SHRA006488

Exhibit 28-40

Case 2:22-cv-01699-DJC-AC     Document 152     Filed 03/09/26     Page 194 of 471

# Informal Process Continued

All reasonable accommodations
granted informally shall be
reviewed and approved by the
appropriate Supervisor or Program
Manager prior to implementation.

SHRA006489

Exhibit 28-41

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 195 of 471

# Informal Examples

There must be a nexus between the observed disability and the requested reasonable accommodation

- A participant with quadriplegia requested a front door ramp, wider doorways, grab bars, and reduced-height and cut-out kitchen cabinetry (Public Housing)

- A visual disability or impairment which would require an accommodation wherein business will be conducted over the telephone, by home visits, or by other means not involving trips to the office.

SHRA006490

Exhibit 28-42

**Formal**

Requests are sent to a third-party source and then be reviewed by the Reasonable Accommodation Compliance Committee.

SHRA006491

Exhibit 28-43

# Formal Process

Formal processing of reasonable accommodation requests is required when:

- the disability and/or the need for a specific accommodation is not visible; or

- it is not clear how the requested accommodation is related to the disability, or

Always allow participant/applicant to make a request (even if you believe that it is ineligible). We should never deny their ability to request.

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 197 of 471

SHRA006492

Exhibit 28-44

# FORMAL EXAMPLES

- Live-in aide
- Additional bedroom (for medical equipment)
- Companion animal (for public housing)
- To rent from family member
- Request to move or to port to a higher cost unit or jurisdiction (during times of limited funding)

SHRA006493

Exhibit 28-45

# Items that do not need to go to the Committee

- Increase payment standards (depends on unit and nexus)
- Request for a Home Visit to complete paperwork
- Request for larger size print on applications or letters
- Break first year of the lease (mutual agreement)

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 199 of 471

SHRA006494

Exhibit 28-46

# Ineligible Requests

- To move into a unit owned by a family member who also resides in the unit

- Temporary, short-term accommodations

- Requests on behalf of persons who are not current program participants/applicants.

SHRA006495



SHRA006496

Exhibit 28-47

Exhibit 28-48



**S T E P**

**1**

Upon a client's request for a RA staff should immediately ***recommend*** that the client complete the first two pages of the *Authorization for Use or Disclosure of Health Information* form.



How can we help you?

RA006497

Exhibit 28-49

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 203 of 471

When a participant provides a letter or note from a 3rd party in support of the RA request, it should be noted in Yardi (Chrono) and sent to the Committee Coordinator.



SHRA006498

Exhibit 28-50

Client Provides Letter from Doctor Is this an RA Request?

**If a current letter is received from a qualified professional requesting a reasonable accommodation that provides all the relevant information, the letter can be accepted as an option for the standard form.**

Enter a chrono that the letter was received and send the copy to the RA Coordinator and send page 1 and 2 to the client.

SHRA006499

Exhibit 28-51

# The Request



The Form
Request



INVESTING IN COMMUNITIES

## AUTHORIZATION FOR USE OR
## DISCLOSURE OF HEALTH INFORMATION
(This form is available electronically upon request)

---

**HEALTH CARE PROFESSIONAL.** - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

---

**THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION, WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.**

This Request is made on behalf of: ■ Head-Of-Household ☐ Another

«firstname» «lastname»
«addr1» «addr2»
«city», «state» «zip»

Phone(s) _____ Alt Phone _____

SHRA006500

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 205 of 471

Exhibit 28-52

# The Request

 **ISHRA**

INVESTING IN COMMUNITIES

## AUTHORIZATION FOR USE OR
## DISCLOSURE OF HEALTH INFORMATION
(This form is available electronically upon request)

**HEALTH CARE PROFESSIONAL.** - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

**THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION, WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.**

This Request is made on behalf of: ☐ Head-Of-Household  ☒ Another *Madison Bumgarner*

«firstname» «lastname»
«addr1» «addr2»
«city», «state» «zip»

Phone(s) _____     Alt Phone _____

SHRA006501

Exhibit 28-53

# The Request



**SHRA**

INVESTING IN COMMUNITIES

## AUTHORIZATION FOR USE OR DISCLOSURE OF HEALTH INFORMATION

(This form is available electronically upon request)

**HEALTH CARE PROFESSIONAL** - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION, WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.

This Request is made on behalf of: ☐ Head-Of-Household ☒ Another _Brandon Belt_

«firstname» «lastname»
«addr1» «addr2»
«city», «state» «zip»

Phone(s) _____ Alt Phone _____

Type of Accommodation(s) Requested: (please print request)

_extra bedroom_

This request does not have enough information, must state how the bedroom will be used

SHRA006502

Exhibit 28-54

# Extra Bedroo



## SHRA
INVESTING IN COMMUNITIES

## AUTHORIZATION FOR USE OR
## DISCLOSURE OF HEALTH INFORMATION
(This form is available electronically upon request)

**HEALTH CARE PROFESSIONAL.** - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

**THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION. WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.**

This Request is made on behalf of: ☐ Head-Of-Household ☒ Another **Bran Stark**

«firstname» «lastname»
«addr1» «addr2»
«city», «state» «zip»

Phone(s)_____ Alt Phone_____

Type of Accommodation(s) Requested: (PLEASE PRINT LEGIBLY)

**extra bedroom**
**for live in aide**

Physician/Health Care
Professional's Name

SHRA006503

Exhibit 28-55



# HIGHER PAYMENT STANDARD

**In the type of accommodation requested it must list how or why the unit accommodates the disability. The RFTA must be also submitted with the RA. (Committee can not review request without the RFTA being submitted)**

Type of Accommodation(s) Requested: (PLEASE PRINT LEGIBLY) _____

Request for higher payment standard to rent unit at 125 Beach Street, Sacramento, CA 95815 that has walk-in bathtub with wheelchair accessible bathroom.

SHRA006504

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 209 of 471

Exhibit 28-56

# Rent From a Relative

What specifically does the **UNIT** have that meets the disability related need?

- Ask the client what specific characteristics the unit has that assists with the disability.
- This assists the medical provider in responding to the request
- Remember to never write the disability on the form or in the chrono

SHRA006505

Exhibit 28-57

**KAISER PERMANENTE.**

(*Kaiser Permanente entities and
listed on reverse side of this form)

**AUTHORIZATION FOR USE
OR DISCLOSURE OF PATIENT
HEALTH INFORMATION**
Note: Fees may apply to certain requests

Patient Name: _____
Medical Record number: _____ Birth Date: _____
Address: _____
City: _____ State: _____
Zip Code: _____ Phone # ( )
Email: _____

| Kaiser Permanente may release this information to: ☐ Check if same as above |
|---|
| Recipient Name: Sacramento Housing and Redevelopment Agency |
| Address: 630 I Street            City: Sacramento    State: CA  Zip Code: 95814 |
| Phone # ( 916 ) 440 - 1390        Email: N/A |

This disclosure can be used for the following purpose(s): ☐ Personal Use  ☐ Legal  ☐ Insurance
☐ Medical Treatment  ☒ Medical Condition Verification  ☐ Disability  ☐ FMLA  ☐ Workers' Comp

**Check ONLY one of the following three options to identify the health information to be released.**
☒ Option 1: Form Completion (a substitute form or relevant medical records may be released)
☐ Option 2: Last 2 years of Kaiser Permanente Medical Office and Kaiser Foundation Hospital records
☐ Option 3: Records as specified. You must complete Step 1 and Step 2 below.

Step 1. Enter date range or date(s) of the records to be released: _____
Step 2. Select types of records to be released.
☐ KP Medical Office   ☐ Kaiser Foundation Hospital  ☐ Immunization   ☐ Lab Results
☐ Diagnostic Images   ☐ Copays & Deductibles   ☐ Itemized Billing  ☐ Pharmacy
☐ Other (provider, department, specialty): _____

**NOTE:** Hospital and Medical Office records released as part of this authorization may contain references related to mental health, addiction, and HIV medical conditions.

**Check the boxes below if you want this release to include the following information. Otherwise, this information will be excluded.**

☐ Mental Health Treatment Records   ☐ Addiction Medicine Treatment Records  ☐ HIV Test Results

Media Type: ☐ Electronic   ☒ Paper   Delivery Preference: ☐ Electronic   ☒ Mail   ☐ Pickup

**DURATION:** Authorization shall remain in effect for one year from the date of signature below. However, in Washington, D.C. permission to release addiction medicine treatment records expires after six (6) months.

**REVOCATION:** You or your personal representative may cancel this authorization for future releases by submitting a written request to the Release of Information Unit listed for your region of service on the reverse side of this form. Your cancellation will not affect information that was released prior to receipt of the written request.

**REDISCLOSURE:** Once this information is released, it may not be protected under federal privacy law (HIPAA). State or other federal law may require the recipient to obtain your authorization before further disclosure.

Kaiser Permanente may not condition treatment, payment, enrollment, or eligibility for benefits on whether you sign this authorization. This disclosure is made at your request. For Virginia patients, a copy of this authorization and a note stating to whom your information was disclosed will be included in your medical record. A copy of the original authorization is valid. You have a right to a copy of this completed authorization.

Date _____  Signature _____     If personal representative print name/relationship



# Kaiser Permanente requires an additional form in addition to the SHRA forms.

**Client,
Do you have
Kaiser Insurance?**

SHRA006506

Exhibit 28-58

# Verbal Requests

Any time a client requests a RA verbally and has not returned the forms, in Yardi Library will be a link to an Email Form.

Complete the form on the day the verbal request is made and send to the RA Coordinator at RA@shra.org.

SHRA006507

Exhibit 28-59

Untitled - Message (HTML)

| Message | Insert | Options | Format Text | Review |

To... RA@shra.org

Cc...

Subject: **Verbal Reasonable Accommodation Request**

The following client has requested a reasonable accommodation verbally.
Please do not include any medical diagnosis information in the chrono or this email.

| | |
|---|---|
| TENANT CODE: | |
| CLIENT NAME | |
| CLIENT PHONE NUMBER | |
| CLIENT EMAIL | |
| REASONABLE ACCOMODATION REQUEST | |
| CHRONO COMPLETED (yes or no) | |
| DATE RA FORMS SENT TO CLIENT | |
| How were the forms sent to the client? (mail, fax, DocuSign, etc) | |
| Comments/Notes: | |

SHRA006508

Exhibit 28-60

# Chrono Chrono Chrono

## TEST, TEST - t0017430

| Fitler By: Category | | Mode | Search Note Text | Added ii Last |
|---|---|---|---|---|

| | ⌄ | ⌄ | | 365 |

| Category | Mode | Note | Staff | Date | FR? |
|---|---|---|---|---|---|
| Reasonable Accommodation | General | RA paperwork sent via fax to Dr. James Smith, Mercy Medical Group, Phone number 916-440-1390 Fax number 916-449-1285. HOH Test Test requesting a LIA. RA paperwork sent to RA Coordinator on 10/12/2018. | mavdalas | 10/10/2018 | ☐ |

When sending RA paperwork to the doctor/medical professional, when you receive a verbal request or when you make a change to a RA form, you **MUST** enter a chrono.

Never chrono the nature of the disability, even if the client wrote it on the form.

In the resident home screen, go to Chrono, click "Add New Chrono"

Select -

**Category: Reasonable Accommodation (Tracking)**
**Sub-Category: General**

SHRA006509

Exhibit 28-61

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 215 of 471

**S
T
E
P

2**

Once the completed forms are received,
staff will review the form for completeness
and work with the client
to clarify the request as needed.
Staff will ensure that all appropriate
information is provided
and will then sign and date the
bottom of the form
(designated for office use only).
The client will be provided with a copy of the
form if requested.

SHRA006510

Exhibit 28-62



Customer Service
☑ Excellent
☐ Very Good
☐ Satisfactory



**SHRA**

INVESTING IN COMMUNITIES

**AUTHORIZATION FOR USE OR
DISCLOSURE OF HEALTH INFORMATION**

(This form is available electronically upon request)

HEALTH CARE PROFESSIONAL - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION. WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.

This Request is made on behalf of: ☐ Head-Of-Household ☑ Another _Brandon Belt_

«firstname» «lastname»
«addr1» «addr2»
«city», «state» «zip»

Phone(s)_____ Alt Phone_____

Type of Accommodation(s) Requested:

extra bedroom
for live in aide 10/2/18 ah

**If you call the client and need to add the reason
to the form for why they need an extra
bedroom, chrono that they gave you permission
to alter the form, date and initial the change.**

SHRA006511

Exhibit 28-63

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 217 of 471

Send all four pages of the *Authorization For Use Or Disclosure of Health Information* form and if applicable the Kaiser form to the qualified professional identified by the client.

Advise the client to contact the qualified professional to encourage their participation and cooperation in the timely processing of their reasonable accommodation request.

CHRONO in Yardi RA forms were sent to the qualified professional and send all four pages to the RA Coordinator with the fax confirmation sheet if sent vi~ f~~ h~ ~l~~~ ~f business.



**FAX**

SHRA006512

Exhibit 28-64

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 218 of 471



**S
T
E
P

3**

The Reasonable Accommodation Coordinator is responsible for the centralized tracking and filing up until consideration of the Reasonable Accommodation.

The Reasonable Accommodation Coordinator respond to status questions from clients or process questions from qualified professionals.

SHRA006513

Exhibit 28-65

**S**
**T**
**E**
**P**

**4**

## Role of the Reasonable Accommodation Compliance Committee (RACC)

The RACC reviews all completed reasonable accommodation requests weekly. The members are:

Management staff from both Public Housing and HCV

At least three (3) members are necessary to make a quorum.

SHRA006514

Exhibit 28-66

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 220 of 471

# Information on R/A Committee

- The RACC meets every Thursday

- The committee reviews all RAs received for the Agency (not just for the HCV program)

- RACC members meet to review and evaluate the requested accommodations based on the provider's verification of disability-related need and recommendations.

- If the information submitted by the health provider is incomplete, the RACC may follow up to request additional information or clarification.

- The RACC shall also review the *Informal Requests for Reasonable Accommodations* and maintain documentation of these decisions.

- Chris Anderson

Exhibit 28-67

The RACC shall determine whether the reasonable accommodation request is:

- Approved; or
- Denied;
- Void

The RACC may also work interactively with the family to obtain additional information or to look at other alternatives through an interactive process before making a decision.

The Chair of the RACC is also the HUD Section 504 Coordinator for the PHA.

SHRA006516

Exhibit 28-68

# Client Communication and the Interactive Process

In the event that the qualified provider is non-responsive for twenty-one (21) calendar days, a void letter shall be issued saying that no response has been received from the specified provider.

The void letter specifies that any additional information will be considered.

**STEP 5**

SHRA006517

Exhibit 28-69

# HOME VISITS

When requests are made for an additional bedroom for medical equipment, a home visit may be scheduled to evaluate the size and quantity of the equipment to be accommodated.

SHRA006518

Exhibit 28-70

# Completing the

# Reasonable Accommodation Process

The purpose of granting the accommodation is to either allow a disabled person access to the program or to allow a disabled person to obtain all of the same benefits of program participation as a non-disabled person.

When the decision is made, a chrono is entered in Yardi by the RACC.

An approval or denial letter is sent, and a copy of this letter will be placed in the tenant file. No confidential health-related information shall be included in the tenant or case file.

SHRA006519

Exhibit 28-71



**STEP 7**

No further annual approvals for reasonable accommodations will be needed during subsequent re-certifications as long as the client's health care provider has previously certified that the condition is not expected to improve over the long term.

However, the PHA retains the right to re-evaluate the need for the RA at any time. Staff will then require third party verification in order to verify the need for the RA.

If it is believed the reasonable accommodation was granted under false pretenses, an interim examination and re-evaluation may be initiated with supervisory approval.

Exhibit 28-72

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 226 of 471

# Review of the RA

For Example:

- An extra bedroom for a live-in aide has approved but 120 days have elapsed, and no live-in aide has been requested to be added into the home.

- The RA was approved for a live-in aide for one year

SHRA006521

Exhibit 28-73

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 227 of 471

**S
T
E
P

8**

## Confirmation at Inspection

When the RACC approves an additional bedroom for any purpose, a note is sent to the inspectors at the time of annual inspection so that the Agency can verify that the bedroom is continuing to be used for its approved purpose.

If the purpose of the bedroom has been changed from what was approved, the inspector will take photographs and send to the caseworker who will then call the family in for a Mandatory Tenant Conference (MTC).

At the MTC, the staff will determine the next appropriate steps.

SHRA006522

Exhibit 28-74

**S**
**T**
**E**
**P**

**9**

## Grievance or Appeal Process

If the RACC denies the requested accommodation, a letter is sent to the family stating that any additional information will be considered at any time it is received.

The client is also provided with a phone number, which they may call to speak with the Reasonable Accommodation Coordinator.

The family is notified of their right to appeal the decision by requesting an Informal Hearing before a third party.

During the Informal Hearing the family may present their reasons for requesting the reasonable accommodation and any supporting documentation.

SHRA006523

knowledge

information

answers

solution

helpful

patience

patient

Customer

service

thank

think

training

assistance

SHRA006524

Exhibit 28-75

Exhibit 28-76

# References

HCV Administrative Plan Chapter 24
REASONABLE ACCOMMODATION
POLICY AND PROCEDURES

HUD Website:

https://www.hud.gov/program_offices/fair_housing_equal_opp/reasonable_accommodations_and_modifications

SHRA006525

Exhibit 28-77

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 231 of 471



Reasonable Accommodations

SHRA006526

Exhibit 28-78

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 232 of 471



What is a Reasonable Accommodation?

A reasonable accommodation is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with disabilities to have an equal opportunity to use and enjoy a dwelling, including public and common use spaces, or to fulfill their program obligations.

The Housing Authority **MUST** ensure that persons with disabilities can receive an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, as those who do not have disabilities.

SHRA006527

Exhibit 28-79

# Section 504 provides rights to persons with disabilities in HUD-funded programs and activities.

Section 504 of the Rehabilitation Act of 1973 is called simply "Section 504."

Section 504 is not the only law that prohibits disability discrimination in programs receiving HUD funds or financial assistance.

Other federal laws that provide nondiscrimination on the basis of disability include the Fair Housing Act, the Americans with Disabilities Act, and the Architectural Barriers Act.

SHRA006528

Exhibit 28-80

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 234 of 471

**Informal Vs. Formal R/A Process**

Not all Reasonable Accommodation requests need to go before the committee. There are 2 different processes:

Informal

Formal

SHRA006529

Exhibit 28-81

# Informal

Requests that do not need to be sent to a third-party source for further verification or to the Reasonable Accommodation Compliance Committee (RACC) for review.

- Client's disability is obvious
- The request does not require Committee approval



SHRA006530

Exhibit 28-82

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 236 of 471



**Informal Process Continued**

All reasonable accommodations granted informally shall be reviewed and approved by the appropriate Supervisor or Program Manager prior to implementation.

Exhibit 28-83

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 237 of 471

# Informal Examples

There must be a nexus between the observed disability and the requested reasonable accommodation

- A participant with quadriplegia requested a front door ramp, wider doorways, grab bars, and reduced-height and cut-out kitchen cabinetry (Public Housing)

- A visible disability or impairment which would require an accommodation wherein business will be conducted over the telephone, by home visits, or by other means not involving trips to the office.

SHRA006532

Exhibit 28-84

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 238 of 471

# Formal

Requests that must be sent to a third-party source and then be reviewed by the Reasonable Accommodation Compliance Committee.

SHRA006533

Exhibit 28-85



Formal processing of reasonable accommodation requests is required when:

- the disability and/or the need for a specific accommodation is not visible; or

- it is not clear how the requested accommodation is related to the disability, or

Always allow participant/applicant to make a request (even if you believe that it is ineligible). We should never deny their ability to request.

SHRA006534

Exhibit 28-86

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 240 of 471



FORMAL EXAMPLES

- Live-in aide
- Additional bedroom (for medical equipment)
- Companion animal (for public housing)
- To rent from family member
- Request to move or to port to a higher cost unit or jurisdiction (during times of limited funding)

SHRA006535

Exhibit 28-87

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 241 of 471

# Items that do not need to go to the Committee

- Increase payment standards (depends on unit and nexus)

- Request for a Home Visit to complete paperwork

- Request for larger size print on applications or letters

- Break first year of the lease (mutual agreement)

Exhibit 28-88

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 242 of 471

# Ineligible Requests

- To move into a unit owned by a family member who also resides in the unit

- Temporary, short-term accommodations

SHRA006537

Exhibit 28-89

A participant or applicant may request an accommodation in any format:

In Writing

Verbally

In Person

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 243 of 471

SHRA006538

Exhibit 28-90

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 244 of 471

**S
T
E
P

1**

Upon a client's request for a RA staff should immediately ***recommend*** that the client complete the first two pages of the *Authorization for Use or Disclosure of Health Information* form.



RA006539

Exhibit 28-91

**If a current letter is received from a qualified professional requesting a reasonable accommodation that provides all the relevant information, the letter can be accepted as an option for the standard form.**

Client Provides Letter from Doctor
Is this an RA Request?

Enter a chrono that the letter was received and send the copy to the RA Coordinator and send page 1 and 2 to the client.

SHRA006540

Exhibit 28-92

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 246 of 471

# The Form
# Request



## AUTHORIZATION FOR USE OR
## DISCLOSURE OF HEALTH INFORMATION

(This form is available electronically upon request)

INVESTING IN COMMUNITIES

HEALTH CARE PROFESSIONAL. - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION, WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.

This Request is made on behalf of: ☒ Head-Of-Household  ☐ Another

«firstname» «lastname»
«addr1» «addr2»
«city», «state» «zip»

Phone(s) _____    Alt Phone _____

SHRA006541

Exhibit 28-93



# AUTHORIZATION FOR USE OR DISCLOSURE OF HEALTH INFORMATION

(This form is available electronically upon request)

INVESTING IN COMMUNITIES

**HEALTH CARE PROFESSIONAL.** - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

**THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION. WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.**

This Request is made on behalf of: ☐ Head-Of-Household ☒ Another *Madison Bumgarner*

«firstname» «lastname»
«addr1» «addr2»
«city», «state» «zip»

Phone(s) _____ Alt Phone _____

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 247 of 471

Exhibit 28-94



**The Request**



# AUTHORIZATION FOR USE OR DISCLOSURE OF HEALTH INFORMATION

(This form is available electronically upon request)

INVESTING IN COMMUNITIES

---

**HEALTH CARE PROFESSIONAL** - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

---

THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION, WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.

This Request is made on behalf of: ☐ Head-Of-Household ☑ Another _Brandon Belt_

«firstname» «lastname»
«addr1» «addr2»
«city», «state» «zip»

Phone(s) _____ Alt Phone _____

Type of Accommodation(s) Requested: (please print clearly)

_extra bedroom_

This request does not have enough information, must state how the bedroom will be used

SHRA006543

Exhibit 28-95

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 249 of 471



## AUTHORIZATION FOR USE OR DISCLOSURE OF HEALTH INFORMATION

**SHRA**

INVESTING IN COMMUNITIES

(This form is available electronically upon request)

**HEALTH CARE PROFESSIONAL** - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

**THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION, WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.**

This Request is made on behalf of: ☐ Head-Of-Household ☒ Another **Bran Stark**

«firstname» «lastname»
«addr1» «addr2»
«city», «state» «zip»

Phone(s)_____ Alt Phone _____

Type of Accommodation(s) Requested: (PLEASE PRINT LEGIBLY)

**extra bedroom for live in aide**

Physician/Health Care Professional's Name: _____

Extra Bedroom Live in Aide

SHRA006544

Exhibit 28-96



Type of Accommodation(s) Requested: (PLEASE PRINT LEGIBLY) _____

Request for higher payment standard to rent unit at 125 Beach Street, Sacramento, CA 95815 that has walk-in bathtub with wheelchair accessible bathroom.

SHRA006545

Exhibit 28-97



Rent From a Relative

What specifically does the UNIT have that meets the disability need?

- Ask the client what specific characteristics the unit has that assists with the disability.
- This assists the medical provider in responding to the request
- Remember to never write the disability on the form or in the chrono

SHRA006546

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 252 of 471

**KAISER PERMANENTE.**

*(Kaiser Permanente entities are listed on reverse side of this form)*

**AUTHORIZATION FOR USE OR DISCLOSURE OF PATIENT HEALTH INFORMATION**

Note: Fees may apply to certain requests

Patient Name: _____

Medical Record number _____ Birth Date: _____

Address: _____

City _____ State: _____

Zip Code: _____ Phone # ( ) _____

Email: _____

Exhibit 28-98

| Kaiser Permanente may release this information to: ☐ Check if same as above |
|---|
| Recipient Name: Sacramento Housing and Redevelopment Agency |
| Address: 630 I Street     City Sacramento     State: CA  Zip Code 95814 |
| Phone # ( 916 ) 440 - 1390     Email: N/A |

This disclosure can be used for the following purpose(s): ☐ Personal Use  ☐ Legal  ☐ Insurance
☐ Medical Treatment  ☒ Medical Condition Verification  ☐ Disability  ☐ FMLA  ☐ Workers' Comp

**Check ONLY one of the following three options to identify the health information to be released.**

☒ Option 1: Form Completion (a substitute form or relevant medical records may be released)

☐ Option 2: Last 2 years of Kaiser Permanente Medical Office and Kaiser Foundation Hospital records

☐ Option 3: Records as specified. You must complete Step 1 and Step 2 below.

Step 1. Enter date range or date(s) of the records to be released _____

Step 2. Select types of records to be released:

☐ KP Medical Office  ☐ Kaiser Foundation Hospital  ☐ Immunization  ☐ Lab Results
☐ Diagnostic Images  ☐ Copays & Deductibles  ☐ Itemized Billing  ☐ Pharmacy
☐ Other (provider, department, specialty): _____

NOTE: Hospital and Medical Office records released as part of this authorization may contain references related to mental health, addiction, and HIV medical conditions.

**Check the boxes below if you want this release to include the following information. Otherwise, this information will be excluded.**

☐ Mental Health Treatment Records  ☐ Addiction Medicine Treatment Records  ☐ HIV Test Results

Media Type: ☐ Electronic  ☒ Paper   Delivery Preference: ☐ Electronic  ☒ Mail  ☐ Pickup

**DURATION:** Authorization shall remain in effect for one year from the date of signature below. However, in Washington, D.C. permission to release addiction medicine treatment records expires after six (6) months.

**REVOCATION:** You or your personal representative may cancel this authorization for future releases by submitting a written request to the Release of Information Unit listed for your region of service on the reverse side of this form. Your cancellation will not affect information that was released prior to receipt of the written request.

**REDISCLOSURE:** Once the information is released, it may not be protected under federal privacy law (HIPAA). State or other federal law may require the recipient to obtain your authorization before further disclosure.

Kaiser Permanente may not condition treatment, payment, enrollment, or eligibility for benefits on whether you sign this authorization. This disclosure is made at your request. For Virginia patients, a copy of this authorization, and a note stating to whom your information was disclosed will be included in your medical record. A copy of the original authorization is valid. You have a right to a copy of the completed authorization.

Date _____  Signature _____  Personal representative: print name relationship _____

# Kaiser Permanente requires an additional form in addition to the SHRA forms.



**Client,
Do you have
Kaiser Insurance?**

SHRA006547

Exhibit 28-99

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 253 of 471

# Verbal Requests

Any time a client requests a RA verbally
and has not returned the forms,
in Yardi Library will be a link to an
Email Form.
Complete the form on the day the verbal
request is made and send to the RA
Coordinator at RA@shra.org.

SHRA006548

Exhibit 28-100

To.    RA@shra.org

Cc.

Subject    **Verbal Reasonable Accommodation Request**

The following client has requested a reasonable accommodation verbally.
Please do not include any medical diagnosis information in the chrono or this email.

| | |
|---|---|
| **TENANT CODE:** | |
| **CLIENT NAME** | |
| **CLIENT PHONE NUMBER** | |
| **CLIENT EMAIL** | |
| **REASONABLE ACCOMODATION REQUEST** | |
| **CHRONO COMPLETED** (yes or no) | |
| **DATE RA FORMS SENT TO CLIENT** | |
| How were the forms sent to the client? (mail, fax, DocuSign, etc) | |
| Comments/Notes: | |

SHRA006549

Exhibit 28-101

# Chrono Chrono Chrono

## TEST, TEST - t0017430

| Fitler By: Category | | Mode Search Note Text | | Added ii Last |
|---|---|---|---|---|
| ▼ | ▼ | | | 365 |

| Category | Mode | Note | Staff | Date | FR? |
|---|---|---|---|---|---|
| Reasonable Accommodation | General | RA paperwork sent via fax to Dr. James Smith, Mercy Medical Group, Phone number 916-440-1390 Fax number 916-449-1285. HOH Test Test requesting a LIA. RA paperwork sent to RA Coordinator on 10/12/2018. | mavdalas | 10/10/2018 | ☐ |

When sending RA paperwork to the doctor/medical professional, when you receive a verbal request or when you make a change to a RA form, you **MUST** enter a chrono.

Never chrono the nature of the disability, even if the client wrote it on the form.

In the resident home screen, go to Chrono, click "Add New Chrono"

Select -

Category: Reasonable Accommodation (Tracking)
Sub-Category: General

SHRA006550

Exhibit 28-102

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 256 of 471

**S**
**T**
**E**
**P**
**2**

Once the completed forms are received, staff will review the form for completeness and work with the client to clarify the request as needed. Staff will ensure that all appropriate information is provided and will then sign and date the bottom of the form (designated for office use only). The client will be provided with a copy of the form if requested.

SHRA006551

Exhibit 28-103



Customer Service

☑ Excellent
☐ Very Good
☐ Satisfactory



## AUTHORIZATION FOR USE OR
## DISCLOSURE OF HEALTH INFORMATION

(This form is available electronically upon request)

INVESTING IN COMMUNITIES

HEALTH CARE PROFESSIONAL - The person listed below has applied for an accommodation for his/her disability and is required to obtain a certification to verify the disability and the need for the accommodation listed below. Please complete pages 3-4 of this document.

THE FIRST TWO PAGES ARE TO BE COMPLETED BY THE RESIDENT OR APPLICANT REQUESTING THE ACCOMMODATION, WHEN YOU HAVE COMPLETED THIS PAGE, PLEASE RETURN IT TO YOUR SPECIALIST OR MANAGER.

This Request is made on behalf of: ☐ Head-Of-Household ■ Another _Brandon Belt_

«firstname» «lastname»
«addr1» «addr2»
«city», «state» «zip»

Phone(s)_____ Alt Phone_____

Type of Accommodation(s) Requested: _____

_extra bedroom_
_for live in aide 10/11/18 ah_

**If you call the client and need to add the reason to the form for why they need an extra bedroom, chrono that they gave you permission to alter the form, date and initial the change.**

SHRA006552

Exhibit 28-104

Send all four pages of the *Authorization For Use Or Disclosure of Health Information* form and if applicable the Kaiser form to the qualified professional identified by the client.

Advise the client to contact the qualified professional to encourage their participation and cooperation in the timely processing of their reasonable accommodation request.

CHRONO in Yardi RA forms were sent to the qualified professional and send all four pages to the RA Coordinator with the fax confirmation sheet if sent via fax by close of business.



SHRA006553

Exhibit 28-105



The Reasonable Accommodation Coordinator is responsible for the centralized tracking and filing up until consideration of the Reasonable Accommodation.

The Reasonable Accommodation Coordinator respond to status questions from clients or process questions from qualified professionals.

SHRA006554

Exhibit 28-106

**S**
**T**
**E**
**P**

**4**

## Role of the Reasonable Accommodation Compliance Committee (RACC)

The RACC reviews all completed reasonable accommodation requests weekly. The members are:

Management staff from both Public Housing and HCV

At least three (3) members are necessary to make a quorum.

SHRA006555

Exhibit 28-107



Information on R/A Committee

- The RACC meets every Thursday

- The committee reviews all RAs received for the Agency (not just for the HCV program)

- RACC members meet to review and evaluate the requested accommodations based on the provider's verification of disability-related need and recommendations.

- If the information submitted by the health provider is incomplete, the RACC may follow up to request additional information or clarification.

- The RACC shall also review the *Informal Requests for Reasonable Accommodations* and maintain documentation of these decisions.

- Chronos decision

SHRA006556

Exhibit 28-108

The RACC shall determine whether the reasonable accommodation request is:

- Approved; or
- Denied;
- Void

The RACC may also work interactively with the family to obtain additional information or to look at other alternatives through an interactive process before making a decision.

The Chair of the RACC is also the HUD Section 504 Coordinator for the PHA.

SHRA006557

Exhibit 28-109



Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 263 of 471

## <u>Client Communication and the Interactive Process</u>

In the event that the qualified provider is non-responsive for twenty-one (21) calendar days, a void letter shall be issued saying that no response has been received from the specified provider.

The void letter specifies that any additional information will be considered.

SHRA006558

Exhibit 28-110

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 264 of 471



When requests are made for an additional bedroom for medical equipment, a home visit may be scheduled to evaluate the size and quantity of the equipment to be accommodated.

SHRA006559

Exhibit 28-111

# **Completing the**

# **Reasonable Accommodation Process**



The purpose of granting the accommodation is to either allow a disabled person access to the program or to allow a disabled person to obtain all of the same benefits of program participation as a non-disabled person.

When the decision is made, a chrono is entered in Yardi by the RACC.

An approval or denial letter is sent, and a copy of this letter will be placed in the tenant file. No confidential health-related information shall be included in the tenant or case file.

SHRA006560

Exhibit 28-112



**STEP 7**

No further annual approvals for reasonable accommodations will be needed during subsequent re-certifications as long as the client's health care provider has previously certified that the condition is not expected to improve over the long term.

However, the PHA retains the right to re-evaluate the need for the RA at any time. Staff will then require third party verification in order to verify the need for the RA.

If it is believed the reasonable accommodation was granted under false pretenses, an interim examination and re-evaluation may be initiated with supervisory approval.

SHRA006561

Exhibit 28-113

Case 2:22-cv-01699-DJC-AC   Document 152   Filed 03/09/26   Page 267 of 471



Review of the RA

## For Example:

- An extra bedroom for a live-in aide has approved but 120 days have elapsed, and no live-in aide has been requested to be added into the home.

- The RA was approved for a live-in aide for one year

SHRA006562

Exhibit 28-114

Case 2:22-cv-01699-DJC-AC    Document 152    Filed 03/09/26    Page 268 of 471

**S
T
E
P**

**8**

## Confirmation at Inspection

When the RACC approves an additional bedroom for any purpose, a note is sent to the inspectors at the time of annual inspection so that the Agency can verify that the bedroom is continuing to be used for its approved purpose.

If the purpose of the bedroom has been changed from what was approved, the inspector will take photographs and send to the caseworker who will then call the family in for a Mandatory Tenant Conference (MTC).

At the MTC, the staff will determine the next appropriate steps.

SHRA006563

Exhibit 28-115



## **Grievance or Appeal Process**

If the RACC denies the requested accommodation, a letter is sent to the family stating that any additional information will be considered at any time it is received.

The client is also provided with a phone number, which they may call to speak with the Reasonable Accommodation Coordinator.

The family is notified of their right to appeal the decision by requesting an Informal Hearing before a third party.

During the Informal Hearing the family may present their reasons for requesting the reasonable accommodation and any supporting documentation.

SHRA006564

Exhibit 28-116

SHRA006565

assistance

solution

helpful
patience
Service
Customer

thank
training

information
knowledge
answers

Exhibit 28-117



References

**HCV Administrative Plan Chapter 24**

**REASONABLE ACCOMMODATION**

**POLICY AND PROCEDURES**

**HUD Website:**

https://www.hud.gov/program_offic
es/fair_housing_equal_opp/reasona
ble_accommodations_and_modificat
ions

SHRA006566

**RA_Decisions 2022 1.xlsx**

| | | |
|---|---|---|
| 2022-01-01 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-01-03 00:00:00 | Requested | Extra BR for Med Equipment |
| 2022-01-03 00:00:00 | Requested | Extra BR other |
| 2022-01-04 00:00:00 | Requested | Extra Br for LIA |
| 2022-01-04 00:00:00 | Requested | Other |
| 2022-01-06 00:00:00 | Requested | Other |
| 2022-01-06 00:00:00 | Requested | Other |
| 2022-01-06 00:00:00 | Voided | Other |
| 2022-01-07 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-01-07 00:00:00 | Requested | Extra BR for Med Equipment |
| 2022-01-10 00:00:00 | Requested | Extra Br for LIA |
| 2022-01-10 00:00:00 | Requested | Extra Br for LIA |
| 2022-01-10 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-01-10 00:00:00 | Requested | Other |
| 2022-01-11 00:00:00 | Requested | Extra Br for LIA |
| 2022-01-11 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-01-11 00:00:00 | Requested | Other |
| 2022-01-12 00:00:00 | Approved | Extra Br for LIA |
| 2022-01-12 00:00:00 | Approved | Extra Br for LIA |
| 2022-01-12 00:00:00 | Approved | Extra Br for LIA |
| 2022-01-12 00:00:00 | Approved | Extra Br for LIA |
| 2022-01-12 00:00:00 | Approved | Extra Br for LIA |
| 2022-01-12 00:00:00 | Denied | Extra Br for LIA |
| 2022-01-12 00:00:00 | Denied | Extra Br for LIA |
| 2022-01-12 00:00:00 | Denied | Extra Br for LIA |
| 2022-01-12 00:00:00 | Denied | Other |
| 2022-01-12 00:00:00 | Requested | Other |
| 2022-01-14 00:00:00 | Requested | Extra Br for LIA |
| 2022-01-14 00:00:00 | Requested | Extra Br for LIA |
| 2022-01-14 00:00:00 | Requested | Extra Br for LIA |
| 2022-01-14 00:00:00 | Requested | Extra Br for LIA |
| 2022-01-14 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-01-14 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-01-18 00:00:00 | Voided | Other |
| 2022-01-19 00:00:00 | Approved | Extra Br for LIA |
| 2022-01-19 00:00:00 | Approved | Extra Br for LIA |
| 2022-01-19 00:00:00 | Approved | Extra Br for LIA |
| 2022-01-19 00:00:00 | Approved | Extra Br for LIA |
| 2022-01-24 00:00:00 | Approved | Increase in PS |
| 2022-01-24 00:00:00 | Requested | Move request |
| 2022-01-26 00:00:00 | Denied | Extra Br for LIA |
| 2022-01-26 00:00:00 | Denied | Extra BR other |
| 2022-01-26 00:00:00 | Denied | Increase in PS |
| 2022-01-31 00:00:00 | Requested | Other |
| 2022-02-01 00:00:00 | Requested | Move request |
| 2022-02-02 00:00:00 | Approved | Extra Br for LIA |

**Exhibit 29-2**

| | | |
|---|---|---|
| 2022-01-01 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-02-02 00:00:00 | Approved | Extra Br for LIA |
| 2022-02-02 00:00:00 | Denied | Extra BR for Med Equiptment |
| 2022-02-02 00:00:00 | Denied | Extra BR other |
| 2022-02-02 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-02-02 00:00:00 | Requested | Extra BR other |
| 2022-02-02 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-02 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-02 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-02 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-02 00:00:00 | Voided | Extra BR for Med Equiptment |
| 2022-02-02 00:00:00 | Voided | Extra BR for Med Equiptment |
| 2022-02-02 00:00:00 | Voided | Extra BR other |
| 2022-02-02 00:00:00 | Voided | Extra BR other |
| 2022-02-02 00:00:00 | Voided | Other |
| 2022-02-03 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-03 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-02-03 00:00:00 | Requested | Extra BR other |
| 2022-02-03 00:00:00 | Requested | Extra BR other |
| 2022-02-03 00:00:00 | Requested | Rent from Relative |
| 2022-02-04 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-02-07 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-07 00:00:00 | Requested | Increase in PS |
| 2022-02-07 00:00:00 | Requested | Rent from Relative |
| 2022-02-08 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-08 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-08 00:00:00 | Requested | Extra BR other |
| 2022-02-08 00:00:00 | Requested | Extra BR other |
| 2022-02-08 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-08 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-08 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-08 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-08 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-08 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-08 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-08 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-08 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-08 00:00:00 | Voided | Extra BR for Med Equiptment |
| 2022-02-08 00:00:00 | Voided | Extra BR for Med Equiptment |
| 2022-02-08 00:00:00 | Voided | Extra BR other |
| 2022-02-08 00:00:00 | Voided | Extra BR other |
| 2022-02-08 00:00:00 | Voided | Extra BR other |
| 2022-02-08 00:00:00 | Voided | Move request |
| 2022-02-08 00:00:00 | Voided | Other |
| 2022-02-09 00:00:00 | Approved | Extra Br for LIA |
| 2022-02-09 00:00:00 | Approved | Extra BR for Med Equiptment |
| 2022-02-09 00:00:00 | Approved | Extra BR for Med Equiptment |
| 2022-02-09 00:00:00 | Denied | Extra BR for Med Equiptment |

| | | |
|---|---|---|
| 2022-01-01 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-02-09 00:00:00 | Denied | Extra BR for Med Equipment |
| 2022-02-09 00:00:00 | Denied | Extra BR other |
| 2022-02-09 00:00:00 | Denied | Extra BR other |
| 2022-02-09 00:00:00 | Denied | Extra BR other |
| 2022-02-09 00:00:00 | Denied | Extra BR other |
| 2022-02-09 00:00:00 | Denied | Extra BR other |
| 2022-02-09 00:00:00 | Denied | Extra BR other |
| 2022-02-09 00:00:00 | Denied | Extra BR other |
| 2022-02-09 00:00:00 | Denied | Rent from Relative |
| 2022-02-09 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-09 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-09 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-09 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-02-09 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-02-09 00:00:00 | Requested | Extra BR other |
| 2022-02-09 00:00:00 | Voided | Other |
| 2022-02-10 00:00:00 | Requested | Other |
| 2022-02-11 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-11 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-02-11 00:00:00 | Requested | Extra BR other |
| 2022-02-11 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-14 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-02-14 00:00:00 | Requested | Extra BR other |
| 2022-02-14 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-15 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-15 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-15 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-15 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-16 00:00:00 | Approved | Extra Br for LIA |
| 2022-02-16 00:00:00 | Approved | Extra Br for LIA |
| 2022-02-16 00:00:00 | Approved | Extra BR for Med Equiptment |
| 2022-02-16 00:00:00 | Denied | Extra BR for Med Equiptment |
| 2022-02-16 00:00:00 | Denied | Extra BR for Med Equiptment |
| 2022-02-16 00:00:00 | Denied | Extra BR other |
| 2022-02-16 00:00:00 | Denied | Extra BR other |
| 2022-02-16 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-16 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-16 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-02-16 00:00:00 | Voided | Increase in PS |
| 2022-02-16 00:00:00 | Voided | Other |
| 2022-02-17 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-17 00:00:00 | Requested | Extra BR other |
| 2022-02-17 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-22 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-22 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-22 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-02-22 00:00:00 | Requested | Extra BR other |

Exhibit 29-4

| | | |
|---|---|---|
| 2022-01-01 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-02-23 30:00:00 | Approved | Extra Br for LIA |
| 2022-02-23 00:00:00 | Approved | Extra Br for LIA |
| 2022-02-23 00:00:00 | Approved | Extra Br for LIA |
| 2022-02-23 00:00:00 | Approved | Extra BR other |
| 2022-02-23 00:00:00 | Denied | Extra Br for LIA |
| 2022-02-23 00:00:00 | Denied | Extra BR for Med Equiptment |
| 2022-02-23 00:00:00 | Denied | Extra BR other |
| 2022-02-23 00:00:00 | Denied | Extra BR other |
| 2022-02-23 00:00:00 | Denied | Extra BR other |
| 2022-02-23 00:00:00 | Denied | Rent from Relative |
| 2022-02-23 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-23 00:00:00 | Requested | Extra BR other |
| 2022-02-23 00:00:00 | Requested | Increase in PS |
| 2022-02-24 00:00:00 | Requested | Extra BR other |
| 2022-02-25 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-25 30:00:00 | Voided | Extra Br for LIA |
| 2022-02-25 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-25 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-25 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-25 00:00:00 | Voided | Extra Br for LIA |
| 2022-02-25 00:00:00 | Voided | Extra BR for Med Equiptment |
| 2022-02-25 00:00:00 | Voided | Extra BR for Med Equiptment |
| 2022-02-25 00:00:00 | Voided | Extra BR for Med Equiptment |
| 2022-02-25 30:00:00 | Voided | Extra BR other |
| 2022-02-25 00:00:00 | Voided | Other |
| 2022-02-28 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-28 00:00:00 | Requested | Extra Br for LIA |
| 2022-02-28 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-02-28 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-03-02 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-02 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-02 00:00:00 | Approved | Extra BR for Med Equiptment |
| 2022-03-02 00:00:00 | Approved | Rent from Relative |
| 2022-03-02 00:00:00 | Denied | Extra Br for LIA |
| 2022-03-02 00:00:00 | Denied | Extra BR for Med Equiptment |
| 2022-03-02 00:00:00 | Denied | Extra BR for Med Equiptment |
| 2022-03-02 00:00:00 | Denied | Extra BR for Med Equiptment |
| 2022-03-02 00:00:00 | Denied | Extra BR other |
| 2022-03-02 00:00:00 | Denied | Extra BR other |
| 2022-03-02 00:00:00 | Denied | Extra BR other |
| 2022-03-02 00:00:00 | Denied | Extra BR other |
| 2022-03-02 00:00:00 | Requested | Extra BR other |
| 2022-03-02 00:00:00 | Requested | Other |
| 2022-03-04 00:00:00 | Requested | Extra Br for LIA |
| 2022-03-04 00:00:00 | Requested | Extra Br for LIA |
| 2022-03-04 00:00:00 | Requested | Extra Br for LIA |
| 2022-03-04 00:00:00 | Voided | Extra Br for LIA |

**Exhibit 29-5**

| 2022-01-01 00:00:00 | Requested | Extra BR for Med Equiptment |
|---|---|---|
| 2022-03-04 00:00:00 | Voided | Extra Br for LIA |
| 2022-03-04 00:00:00 | Voided | Extra Br for LIA |
| 2022-03-04 00:00:00 | Voided | Extra BR for Med Equiptment |
| 2022-03-04 00:00:00 | Voided | Extra BR for Med Equiptment |
| 2022-03-04 00:00:00 | Voided | Extra BR other |
| 2022-03-05 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-03-07 00:00:00 | Requested | Extra Br for LIA |
| 2022-03-07 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-03-07 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-03-08 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-08 00:00:00 | Approved | Other |
| 2022-03-08 00:00:00 | Denied | Extra BR for Med Equiptment |
| 2022-03-08 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-03-08 00:00:00 | Requested | Move request |
| 2022-03-09 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-09 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-09 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-09 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-09 00:00:00 | Denied | Extra BR for Med Equiptment |
| 2022-03-09 00:00:00 | Denied | Extra BR other |
| 2022-03-09 00:00:00 | Denied | Extra BR other |
| 2022-03-09 00:00:00 | Denied | Extra BR other |
| 2022-03-09 00:00:00 | Denied | Extra BR other |
| 2022-03-09 00:00:00 | Denied | Extra BR other |
| 2022-03-09 00:00:00 | Denied | Extra BR other |
| 2022-03-14 00:00:00 | Approved | Extra BR for Med Equiptment |
| 2022-03-14 00:00:00 | Requested | Extra Br for LIA |
| 2022-03-14 00:00:00 | Requested | Extra Br for LIA |
| 2022-03-14 00:00:00 | Requested | Extra Br for LIA |
| 2022-03-14 00:00:00 | Requested | Extra Br for LIA |
| 2022-03-14 00:00:00 | Voided | Extra Br for LIA |
| 2022-03-14 00:00:00 | Voided | Extra Br for LIA |
| 2022-03-14 00:00:00 | Voided | Extra BR for Med Equiptment |
| 2022-03-14 00:00:00 | Voided | Move request |
| 2022-03-15 00:00:00 | Approved | Rent from Relative |
| 2022-03-15 00:00:00 | Requested | Extra Br for LIA |
| 2022-03-15 00:00:00 | Voided | Other |
| 2022-03-16 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-16 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-16 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-16 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-16 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-16 00:00:00 | Approved | Extra BR for Med Equiptment |
| 2022-03-16 00:00:00 | Approved | Extra BR for Med Equiptment |
| 2022-03-16 00:00:00 | Denied | Extra BR other |
| 2022-03-16 00:00:00 | Denied | Extra BR other |
| 2022-03-16 00:00:00 | Requested | Extra Br for LIA |

| | | |
|---|---|---|
| 2022-01-01 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-03-17 00:00:00 | Requested | Rent from Relative |
| 2022-03-17 00:00:00 | Voided | Extra Br for LIA |
| 2022-03-17 00:00:00 | Voided | Extra Br for LIA |
| 2022-03-17 00:00:00 | Voided | Extra Br for LIA |
| 2022-03-17 00:00:00 | Voided | Extra BR other |
| 2022-03-18 00:00:00 | Requested | Extra BR other |
| 2022-03-21 00:00:00 | Requested | Extra Br for LIA |
| 2022-03-21 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-03-21 00:00:00 | Requested | Extra BR other |
| 2022-03-21 00:00:00 | Requested | Other |
| 2022-03-23 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-23 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-23 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-23 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-23 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-23 00:00:00 | Denied | Extra BR other |
| 2022-03-23 00:00:00 | Denied | Extra BR other |
| 2022-03-23 00:00:00 | Requested | Extra Br for LIA |
| 2022-03-23 00:00:00 | Voided | Extra BR for Med Equipment |
| 2022-03-24 00:00:00 | Requested | Extra BR for Med Equipment |
| 2022-03-25 00:00:00 | Requested | Extra BR other |
| 2022-03-29 00:00:00 | Requested | Extra Br for LIA |
| 2022-03-29 00:00:00 | Requested | Extra Br for LIA |
| 2022-03-30 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-30 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-30 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-30 00:00:00 | Approved | Extra Br for LIA |
| 2022-03-30 00:00:00 | Approved | Extra BR for Med Equiptment |
| 2022-03-30 00:00:00 | Approved | Other |
| 2022-03-30 00:00:00 | Denied | Extra BR for Med Equiptment |
| 2022-03-30 00:00:00 | Denied | Move request |
| 2022-03-30 00:00:00 | Requested | Extra Br for LIA |
| 2022-03-30 00:00:00 | Requested | Extra BR other |
| 2022-03-31 00:00:00 | Requested | Extra BR other |
| 2022-03-31 00:00:00 | Requested | Other |
| 2022-03-31 00:00:00 | Requested | Rent from Relative |
| 2022-04-01 00:00:00 | Voided | Extra Br for LIA |
| 2022-04-01 00:00:00 | Voided | Extra Br for LIA |
| 2022-04-01 00:00:00 | Voided | Extra Br for LIA |
| 2022-04-01 00:00:00 | Voided | Extra BR for Med Equipment |
| 2022-04-01 00:00:00 | Voided | Extra BR other |
| 2022-04-04 00:00:00 | Requested | Extra Br for LIA |
| 2022-04-04 00:00:00 | Requested | Extra Br for LIA |
| 2022-04-04 00:00:00 | Requested | Other |
| 2022-04-05 00:00:00 | Requested | Extra Br for LIA |
| 2022-04-05 00:00:00 | Requested | Extra Br for LIA |
| 2022-04-05 00:00:00 | Requested | Extra BR other |

| | | |
|---|---|---|
| 2022-01-01 00:00:00 | Requested | Extra BR for Med Equipment |
| 2022-04-06 00:00:00 | Denied | Extra BR other |
| 2022-04-06 00:00:00 | Requested | Other |
| 2022-04-06 00:00:00 | Voided | Other |
| 2022-04-08 00:00:00 | Requested | Extra Br for LIA |
| 2022-04-08 00:00:00 | Voided | Extra Br for LIA |
| 2022-04-08 00:00:00 | Voided | Extra BR other |
| 2022-04-11 00:00:00 | Requested | Extra Br for LIA |
| 2022-04-11 00:00:00 | Requested | Extra Br for LIA |
| 2022-04-11 00:00:00 | Requested | Extra BR other |
| 2022-04-13 00:00:00 | Approved | Extra Br for LIA |
| 2022-04-13 00:00:00 | Approved | Extra Br for LIA |
| 2022-04-13 00:00:00 | Approved | Extra Br for LIA |
| 2022-04-13 00:00:00 | Approved | Extra Br for LIA |
| 2022-04-13 00:00:00 | Approved | Extra BR other |
| 2022-04-13 00:00:00 | Denied | Extra Br for LIA |
| 2022-04-13 00:00:00 | Denied | Extra BR other |
| 2022-04-13 00:00:00 | Denied | Extra BR other |
| 2022-04-13 00:00:00 | Denied | Extra BR other |
| 2022-04-13 00:00:00 | Denied | Extra BR other |
| 2022-04-13 00:00:00 | Denied | Extra BR other |
| 2022-04-13 00:00:00 | Denied | Rent from Relative |
| 2022-04-14 00:00:00 | Requested | Extra Br for LIA |
| 2022-04-14 00:00:00 | Requested | Extra Br for LIA |
| 2022-04-14 00:00:00 | Requested | Extra Br for LIA |
| 2022-04-18 00:00:00 | Requested | Increase in PS |
| 2022-04-19 00:00:00 | Requested | Extra BR other |
| 2022-04-19 00:00:00 | Requested | Other |
| 2022-04-20 00:00:00 | Approved | Extra Br for LIA |
| 2022-04-20 00:00:00 | Approved | Extra Br for LIA |
| 2022-04-20 00:00:00 | Approved | Extra Br for LIA |
| 2022-04-20 00:00:00 | Denied | Extra BR other |
| 2022-04-20 00:00:00 | Denied | Extra BR other |
| 2022-04-20 00:00:00 | Denied | Extra BR other |
| 2022-04-20 00:00:00 | Requested | Extra BR for Med Equipment |
| 2022-04-22 00:00:00 | Requested | Extra Br for LIA |
| 2022-04-22 00:00:00 | Requested | Extra Br for LIA |
| 2022-04-22 00:00:00 | Requested | Extra BR other |
| 2022-04-22 00:00:00 | Requested | Rent from Relative |
| 2022-04-22 00:00:00 | Voided | Extra Br for LIA |
| 2022-04-22 00:00:00 | Voided | Extra Br for LIA |
| 2022-04-22 00:00:00 | Voided | Extra Br for LIA |
| 2022-04-22 00:00:00 | Voided | Extra BR other |
| 2022-04-25 00:00:00 | Requested | Extra BR other |
| 2022-04-27 00:00:00 | Approved | Extra BR other |
| 2022-04-27 00:00:00 | Denied | Extra BR other |
| 2022-04-27 00:00:00 | Requested | Extra Br for LIA |
| 2022-04-28 00:00:00 | Requested | Other |

| | | |
|---|---|---|
| 2022-01-01 00:00:00 | Requested | Extra BR for Med Equipment |
| 2022-04-28 00:00:00 | Requested | Other |
| 2022-04-28 00:00:00 | Requested | Other |
| 2022-04-29 00:00:00 | Requested | Other |
| 2022-04-29 00:00:00 | Requested | Rent from Relative |
| 2022-05-02 00:00:00 | Voided | Other |
| 2022-05-04 00:00:00 | Approved | Extra Br for LIA |
| 2022-05-04 00:00:00 | Approved | Extra Br for LIA |
| 2022-05-04 00:00:00 | Denied | Extra BR for Med Equipment |
| 2022-05-04 00:00:00 | Denied | Extra BR other |
| 2022-05-04 00:00:00 | Denied | Extra BR other |
| 2022-05-04 00:00:00 | Denied | Extra BR other |
| 2022-05-04 00:00:00 | Denied | Other |
| 2022-05-04 00:00:00 | Voided | Other |
| 2022-05-06 00:00:00 | Voided | Extra Br for LIA |
| 2022-05-06 00:00:00 | Voided | Extra Br for LIA |
| 2022-05-06 00:00:00 | Voided | Other |
| 2022-05-09 00:00:00 | Requested | Extra Br for LIA |
| 2022-05-09 00:00:00 | Requested | Extra BR other |
| 2022-05-09 00:00:00 | Requested | Extra BR other |
| 2022-05-09 00:00:00 | Voided | Extra BR for Med Equipment |
| 2022-05-10 00:00:00 | Voided | Extra Br for LIA |
| 2022-05-10 00:00:00 | Voided | Extra Br for LIA |
| 2022-05-10 00:00:00 | Voided | Increase in PS |
| 2022-05-11 00:00:00 | Approved | Extra Br for LIA |
| 2022-05-11 00:00:00 | Approved | Extra Br for LIA |
| 2022-05-11 00:00:00 | Approved | Extra Br for LIA |
| 2022-05-11 00:00:00 | Denied | Extra BR other |
| 2022-05-11 00:00:00 | Requested | Extra Br for LIA |
| 2022-05-11 00:00:00 | Requested | Move request |
| 2022-05-13 00:00:00 | Approved | Other |
| 2022-05-13 00:00:00 | Requested | Extra Br for LIA |
| 2022-05-13 00:00:00 | Voided | Extra Br for LIA |
| 2022-05-13 00:00:00 | Voided | Extra Br for LIA |
| 2022-05-13 00:00:00 | Voided | Extra Br for LIA |
| 2022-05-13 00:00:00 | Voided | Extra BR for Med Equipment |
| 2022-05-13 00:00:00 | Voided | Rent from Relative |
| 2022-05-16 00:00:00 | Requested | Extra BR other |
| 2022-05-16 00:00:00 | Requested | Increase in PS |
| 2022-05-18 00:00:00 | Approved | Increase in PS |
| 2022-05-18 00:00:00 | Denied | Extra BR other |
| 2022-05-18 00:00:00 | Denied | Extra BR other |
| 2022-05-18 00:00:00 | Denied | Extra BR other |
| 2022-05-18 00:00:00 | Voided | Increase in PS |
| 2022-05-19 00:00:00 | Requested | Extra BR other |
| 2022-05-20 00:00:00 | Requested | Extra Br for LIA |
| 2022-05-20 00:00:00 | Requested | Extra BR other |
| 2022-05-23 00:00:00 | Requested | Extra Br for LIA |

| | | |
|---|---|---|
| 2022-01-01 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-05-23 00:00:00 | Requested | Extra BR other |
| 2022-05-23 00:00:00 | Requested | Other |
| 2022-05-23 00:00:00 | Voided | Extra Br for LIA |
| 2022-05-23 00:00:00 | Voided | Other |
| 2022-05-24 00:00:00 | Requested | Extra Br for LIA |
| 2022-05-25 00:00:00 | Approved | Extra Br for LIA |
| 2022-05-25 00:00:00 | Approved | Extra Br for LIA |
| 2022-05-25 00:00:00 | Approved | Extra Br for LIA |
| 2022-05-25 00:00:00 | Approved | Extra Br for LIA |
| 2022-05-25 00:00:00 | Approved | Extra Br for LIA |
| 2022-05-25 00:00:00 | Approved | Extra BR for Med Equiptment |
| 2022-05-25 00:00:00 | Denied | Extra Br for LIA |
| 2022-05-25 00:00:00 | Denied | Extra Br for LIA |
| 2022-05-25 00:00:00 | Denied | Extra BR for Med Equiptment |
| 2022-05-25 00:00:00 | Denied | Extra BR other |
| 2022-05-25 00:00:00 | Denied | Extra BR other |
| 2022-05-25 00:00:00 | Denied | Extra BR other |
| 2022-05-25 00:00:00 | Denied | Extra BR other |
| 2022-05-25 00:00:00 | Denied | Extra BR other |
| 2022-05-25 00:00:00 | Denied | Rent from Relative |
| 2022-05-25 00:00:00 | Requested | Other |
| 2022-05-25 00:00:00 | Voided | Other |
| 2022-05-26 00:00:00 | Approved | Extra Br for LIA |
| 2022-05-26 00:00:00 | Requested | Extra Br for LIA |
| 2022-05-26 00:00:00 | Requested | Other |
| 2022-05-27 00:00:00 | Requested | Extra Br for LIA |
| 2022-05-27 00:00:00 | Requested | Extra Br for LIA |
| 2022-05-27 00:00:00 | Voided | Extra Br for LIA |
| 2022-05-27 00:00:00 | Voided | Extra BR other |
| 2022-05-27 00:00:00 | Voided | Extra BR other |
| 2022-06-01 00:00:00 | Approved | Extra Br for LIA |
| 2022-06-01 00:00:00 | Approved | Extra Br for LIA |
| 2022-06-01 00:00:00 | Denied | Extra BR other |
| 2022-06-01 00:00:00 | Denied | Extra BR other |
| 2022-06-01 00:00:00 | Requested | Extra Br for LIA |
| 2022-06-01 00:00:00 | Requested | Extra BR other |
| 2022-06-07 00:00:00 | Requested | Extra Br for LIA |
| 2022-06-08 00:00:00 | Approved | Extra Br for LIA |
| 2022-06-08 00:00:00 | Approved | Extra Br for LIA |
| 2022-06-08 00:00:00 | Approved | Extra Br for LIA |
| 2022-06-08 00:00:00 | Denied | Extra BR other |
| 2022-06-08 00:00:00 | Denied | Move request |
| 2022-06-08 00:00:00 | Voided | Move request |
| 2022-06-09 00:00:00 | Requested | Other |
| 2022-06-10 00:00:00 | Requested | Extra Br for LIA |
| 2022-06-10 00:00:00 | Requested | Extra Br for LIA |
| 2022-06-10 00:00:00 | Requested | Extra Br for LIA |

| | | |
|---|---|---|
| 2022-01-01 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-06-14 00:00:00 | Requested | Extra Br for LIA |
| 2022-06-15 00:00:00 | Approved | Extra Br for LIA |
| 2022-06-15 00:00:00 | Approved | Extra Br for LIA |
| 2022-06-15 00:00:00 | Denied | Extra Br for LIA |
| 2022-06-15 00:00:00 | Denied | Extra BR other |
| 2022-06-15 00:00:00 | Denied | Extra BR other |
| 2022-06-15 00:00:00 | Denied | Extra BR other |
| 2022-06-15 00:00:00 | Requested | Extra Br for LIA |
| 2022-06-15 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-06-15 00:00:00 | Voided | Extra BR other |
| 2022-06-15 00:00:00 | Voided | Extra BR other |
| 2022-06-17 00:00:00 | Requested | Extra Br for LIA |
| 2022-06-17 00:00:00 | Requested | Other |
| 2022-06-20 00:00:00 | Requested | Extra Br for LIA |
| 2022-06-20 00:00:00 | Requested | Extra Br for LIA |
| 2022-06-20 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-06-24 00:00:00 | Approved | Extra Br for LIA |
| 2022-06-24 00:00:00 | Approved | Extra Br for LIA |
| 2022-06-24 00:00:00 | Approved | Extra Br for LIA |
| 2022-06-24 00:00:00 | Approved | Extra BR other |
| 2022-06-24 00:00:00 | Denied | Extra BR other |
| 2022-06-24 00:00:00 | Denied | Extra BR other |
| 2022-06-24 00:00:00 | Denied | Rent from Relative |
| 2022-06-24 00:00:00 | Voided | Extra Br for LIA |
| 2022-06-28 00:00:00 | Voided | Move request |
| 2022-06-28 00:00:00 | Voided | Other |
| 2022-06-29 00:00:00 | Approved | Extra Br for LIA |
| 2022-06-29 00:00:00 | Approved | Extra Br for LIA |
| 2022-06-29 00:00:00 | Denied | Extra BR other |
| 2022-07-06 00:00:00 | Approved | Extra Br for LIA |
| 2022-07-06 00:00:00 | Approved | Extra Br for LIA |
| 2022-07-06 00:00:00 | Denied | Extra Br for LIA |
| 2022-07-06 00:00:00 | Denied | Extra BR for Med Equiptment |
| 2022-07-12 00:00:00 | Requested | Extra Br for LIA |
| 2022-07-12 00:00:00 | Requested | Extra Br for LIA |
| 2022-07-12 00:00:00 | Requested | Extra Br for LIA |
| 2022-07-12 00:00:00 | Requested | Other |
| 2022-07-15 00:00:00 | Approved | Extra Br for LIA |
| 2022-07-15 00:00:00 | Denied | Extra BR other |
| 2022-07-15 00:00:00 | Denied | Extra BR other |
| 2022-07-15 00:00:00 | Voided | Increase in PS |
| 2022-07-18 00:00:00 | Approved | Extra Br for LIA |
| 2022-07-18 00:00:00 | Approved | Extra Br for LIA |
| 2022-07-18 00:00:00 | Approved | Extra Br for LIA |
| 2022-07-18 00:00:00 | Approved | Extra Br for LIA |
| 2022-07-18 00:00:00 | Approved | Extra Br for LIA |
| 2022-07-18 00:00:00 | Approved | Extra Br for LIA |

| | | |
|---|---|---|
| 2022-01-01 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-07-18 00:00:00 | Requested | Extra Br for LIA |
| 2022-07-18 00:00:00 | Voided | Increase in PS |
| 2022-07-20 00:00:00 | Approved | Extra Br for LIA |
| 2022-07-20 00:00:00 | Denied | Increase in PS |
| 2022-07-20 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-07-21 00:00:00 | Voided | Extra BR for Med Equiptment |
| 2022-07-21 00:00:00 | Voided | Extra BR for Med Equiptment |
| 2022-07-21 00:00:00 | Voided | Extra BR for Med Equiptment |
| 2022-07-21 00:00:00 | Voided | Extra BR for Med Equiptment |
| 2022-07-21 00:00:00 | Voided | Extra BR for Med Equiptment |
| 2022-07-21 00:00:00 | Voided | Extra BR for Med Equiptment |
| 2022-07-21 00:00:00 | Voided | Move request |
| 2022-07-27 00:00:00 | Requested | Extra Br for LIA |
| 2022-07-29 00:00:00 | Approved | Extra Br for LIA |
| 2022-07-29 00:00:00 | Approved | Extra Br for LIA |
| 2022-07-29 00:00:00 | Requested | Extra Br for LIA |
| 2022-07-29 00:00:00 | Requested | Extra Br for LIA |
| 2022-07-29 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-07-29 00:00:00 | Requested | Other |
| 2022-07-29 00:00:00 | Requested | Other |
| 2022-07-29 00:00:00 | Voided | Other |
| 2022-08-02 00:00:00 | Denied | Extra BR other |
| 2022-08-02 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-08-03 00:00:00 | Approved | Extra Br for LIA |
| 2022-08-03 00:00:00 | Approved | Extra Br for LIA |
| 2022-08-03 00:00:00 | Approved | Extra Br for LIA |
| 2022-08-03 00:00:00 | Approved | Extra Br for LIA |
| 2022-08-03 00:00:00 | Requested | Move request |
| 2022-08-03 00:00:00 | Requested | Other |
| 2022-08-03 00:00:00 | Voided | Extra Br for LIA |
| 2022-08-03 00:00:00 | Voided | Extra Br for LIA |
| 2022-08-03 00:00:00 | Voided | Extra Br for LIA |
| 2022-08-03 00:00:00 | Voided | Move request |
| 2022-08-04 00:00:00 | Voided | Extra Br for LIA |
| 2022-08-08 00:00:00 | Requested | Extra BR other |
| 2022-08-08 00:00:00 | Requested | Extra BR other |
| 2022-08-08 00:00:00 | Requested | Extra BR other |
| 2022-08-08 00:00:00 | Requested | Other |
| 2022-08-10 00:00:00 | Approved | Extra Br for LIA |
| 2022-08-10 00:00:00 | Approved | Extra Br for LIA |
| 2022-08-10 00:00:00 | Approved | Extra Br for LIA |
| 2022-08-10 00:00:00 | Approved | Extra Br for LIA |
| 2022-08-10 00:00:00 | Approved | Extra Br for LIA |
| 2022-08-10 00:00:00 | Requested | Extra Br for LIA |
| 2022-08-10 00:00:00 | Requested | Extra BR other |
| 2022-08-10 00:00:00 | Requested | Other |
| 2022-08-11 00:00:00 | Requested | Extra Br for LIA |

Exhibit 29-12

| | | |
|---|---|---|
| 2022-01-01 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-08-12 00:00:00 | Requested | Extra Br for LIA |
| 2022-08-12 00:00:00 | Requested | Extra BR other |
| 2022-08-15 00:00:00 | Approved | Extra Br for LIA |
| 2022-08-17 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-08-17 00:00:00 | Requested | Other |
| 2022-08-19 00:00:00 | Approved | Extra Br for LIA |
| 2022-08-19 00:00:00 | Approved | Extra Br for LIA |
| 2022-08-19 00:00:00 | Approved | Extra Br for LIA |
| 2022-08-19 00:00:00 | Denied | Extra BR other |
| 2022-08-19 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-08-19 00:00:00 | Voided | Extra Br for LIA |
| 2022-08-19 00:00:00 | Voided | Extra Br for LIA |
| 2022-08-26 00:00:00 | Approved | Increase in PS |
| 2022-08-30 00:00:00 | Requested | Other |
| 2022-08-30 00:00:00 | Requested | Other |
| 2022-08-30 00:00:00 | Requested | Other |
| 2022-08-30 00:00:00 | Requested | Other |
| 2022-08-31 00:00:00 | Approved | Extra Br for LIA |
| 2022-08-31 00:00:00 | Approved | Extra Br for LIA |
| 2022-08-31 00:00:00 | Denied | Extra BR other |
| 2022-08-31 00:00:00 | Denied | Extra BR other |
| 2022-08-31 00:00:00 | Denied | Other |
| 2022-08-31 00:00:00 | Requested | Extra Br for LIA |
| 2022-08-31 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-08-31 00:00:00 | Voided | Increase in PS |
| 2022-09-02 00:00:00 | Requested | Extra BR other |
| 2022-09-02 00:00:00 | Requested | Other |
| 2022-09-02 00:00:00 | Requested | Other |
| 2022-09-06 00:00:00 | Requested | Extra Br for LIA |
| 2022-09-06 00:00:00 | Requested | Other |
| 2022-09-12 00:00:00 | Approved | Extra Br for LIA |
| 2022-09-12 00:00:00 | Denied | Extra BR for Med Equiptment |
| 2022-09-12 00:00:00 | Denied | Extra BR other |
| 2022-09-12 00:00:00 | Denied | Extra BR other |
| 2022-09-12 00:00:00 | Denied | Extra BR other |
| 2022-09-12 00:00:00 | Voided | Other |
| 2022-09-13 00:00:00 | Requested | Extra Br for LIA |
| 2022-09-13 00:00:00 | Requested | Extra Br for LIA |
| 2022-09-13 00:00:00 | Requested | Extra BR other |
| 2022-09-13 00:00:00 | Requested | Other |
| 2022-09-13 00:00:00 | Requested | Other |
| 2022-09-13 00:00:00 | Requested | Other |
| 2022-09-14 00:00:00 | Denied | Extra BR for Med Equiptment |
| 2022-09-14 00:00:00 | Requested | Extra Br for LIA |
| 2022-09-14 00:00:00 | Voided | Extra Br for LIA |
| 2022-09-14 00:00:00 | Voided | Extra Br for LIA |
| 2022-09-14 00:00:00 | Voided | Extra Br for LIA |

| | | |
|---|---|---|
| 2022-01-01 00:00:00 | Requested | Extra BR for Med Equipment |
| 2022-09-14 00:00:00 | Voided | Extra BR for Med Equipment |
| 2022-09-14 00:00:00 | Voided | Extra BR for Med Equipment |
| 2022-09-14 00:00:00 | Voided | Extra BR other |
| 2022-09-14 00:00:00 | Voided | Extra BR other |
| 2022-09-14 00:00:00 | Voided | Extra BR other |
| 2022-09-14 00:00:00 | Voided | Extra BR other |
| 2022-09-14 00:00:00 | Voided | Extra BR other |
| 2022-09-14 00:00:00 | Voided | Increase in PS |
| 2022-09-14 00:00:00 | Voided | Other |
| 2022-09-14 00:00:00 | Voided | Other |
| 2022-09-14 00:00:00 | Voided | Other |
| 2022-09-14 00:00:00 | Voided | Other |
| 2022-09-14 00:00:00 | Voided | Other |
| 2022-09-15 00:00:00 | Approved | Other |
| 2022-09-15 00:00:00 | Approved | Other |
| 2022-09-15 00:00:00 | Denied | Other |
| 2022-09-15 00:00:00 | Requested | Extra BR for Med Equipment |
| 2022-09-15 00:00:00 | Requested | Extra BR for Med Equipment |
| 2022-09-15 00:00:00 | Requested | Extra BR for Med Equipment |
| 2022-09-15 00:00:00 | Requested | Extra BR other |
| 2022-09-15 00:00:00 | Requested | Extra BR other |
| 2022-09-16 00:00:00 | Denied | Extra Br for LIA |
| 2022-09-16 00:00:00 | Denied | Extra BR for Med Equipment |
| 2022-09-16 00:00:00 | Denied | Extra BR for Med Equipment |
| 2022-09-16 00:00:00 | Denied | Other |
| 2022-09-16 00:00:00 | Requested | Other |
| 2022-09-20 00:00:00 | Requested | Extra Br for LIA |
| 2022-09-20 00:00:00 | Requested | Extra Br for LIA |
| 2022-09-21 00:00:00 | Approved | Extra Br for LIA |
| 2022-09-21 00:00:00 | Approved | Extra Br for LIA |
| 2022-09-21 00:00:00 | Approved | Extra BR for Med Equipment |
| 2022-09-21 00:00:00 | Denied | Extra Br for LIA |
| 2022-09-21 00:00:00 | Denied | Extra BR for Med Equipment |
| 2022-09-21 00:00:00 | Denied | Extra BR for Med Equipment |
| 2022-09-21 00:00:00 | Denied | Extra BR for Med Equipment |
| 2022-09-21 00:00:00 | Denied | Extra BR for Med Equipment |
| 2022-09-21 00:00:00 | Denied | Extra BR for Med Equipment |
| 2022-09-21 00:00:00 | Denied | Extra BR other |
| 2022-09-21 00:00:00 | Voided | Other |
| 2022-09-22 00:00:00 | Requested | Extra BR for Med Equipment |
| 2022-09-22 00:00:00 | Requested | Other |
| 2022-09-23 00:00:00 | Requested | Extra Br for LIA |
| 2022-09-23 00:00:00 | Requested | Extra BR for Med Equipment |
| 2022-09-23 00:00:00 | Requested | Extra BR for Med Equipment |
| 2022-09-23 00:00:00 | Requested | Move request |
| 2022-09-23 00:00:00 | Requested | Other |
| 2022-09-23 00:00:00 | Requested | Other |

| | | |
|---|---|---|
| 2022-01-01 00:00:00 | Requested | Extra BR for Med Equipment |
| 2022-09-26 00:00:00 | Requested | Extra BR for Med Equipment |
| 2022-09-26 00:00:00 | Requested | Extra BR other |
| 2022-09-26 00:00:00 | Requested | Extra BR other |
| 2022-09-26 00:00:00 | Requested | Other |
| 2022-09-27 00:00:00 | Requested | Extra BR other |
| 2022-09-27 00:00:00 | Requested | Other |
| 2022-09-28 00:00:00 | Approved | Extra Br for LIA |
| 2022-09-28 00:00:00 | Approved | Extra Br for LIA |
| 2022-09-28 00:00:00 | Approved | Extra Br for LIA |
| 2022-09-28 00:00:00 | Approved | Extra Br for LIA |
| 2022-09-28 00:00:00 | Approved | Extra Br for LIA |
| 2022-09-28 00:00:00 | Approved | Extra BR other |
| 2022-09-28 00:00:00 | Denied | Extra BR for Med Equipment |
| 2022-09-28 00:00:00 | Denied | Extra BR for Med Equipment |
| 2022-09-28 00:00:00 | Denied | Extra BR other |
| 2022-09-28 00:00:00 | Denied | Extra BR other |
| 2022-09-28 00:00:00 | Requested | Move request |
| 2022-09-28 00:00:00 | Requested | Other |
| 2022-09-28 00:00:00 | Requested | Other |
| 2022-09-28 00:00:00 | Voided | Extra BR other |
| 2022-09-28 00:00:00 | Voided | Other |
| 2022-09-29 00:00:00 | Requested | Other |
| 2022-09-29 00:00:00 | Requested | Other |
| 2022-09-30 00:00:00 | Requested | Extra Br for LIA |
| 2022-10-05 00:00:00 | Approved | Extra Br for LIA |
| 2022-10-05 00:00:00 | Approved | Extra Br for LIA |
| 2022-10-05 00:00:00 | Approved | Extra Br for LIA |
| 2022-10-05 00:00:00 | Approved | Extra BR other |
| 2022-10-10 00:00:00 | Requested | Extra BR other |
| 2022-10-10 00:00:00 | Requested | Other |
| 2022-10-11 00:00:00 | Voided | Extra Br for LIA |
| 2022-10-11 00:00:00 | Voided | Extra Br for LIA |
| 2022-10-11 00:00:00 | Voided | Other |
| 2022-10-12 00:00:00 | Approved | Extra Br for LIA |
| 2022-10-12 00:00:00 | Approved | Extra Br for LIA |
| 2022-10-12 00:00:00 | Approved | Extra BR for Med Equipment |
| 2022-10-12 00:00:00 | Denied | Extra BR other |
| 2022-10-12 00:00:00 | Denied | Extra BR other |
| 2022-10-12 00:00:00 | Requested | Extra Br for LIA |
| 2022-10-12 00:00:00 | Requested | Other |
| 2022-10-12 00:00:00 | Voided | Extra BR other |
| 2022-10-13 00:00:00 | Requested | Extra BR other |
| 2022-10-14 00:00:00 | Requested | Extra BR other |
| 2022-10-17 00:00:00 | Requested | Other |
| 2022-10-18 00:00:00 | Requested | Extra Br for LIA |
| 2022-10-18 00:00:00 | Requested | Extra BR other |
| 2022-10-19 00:00:00 | Denied | Extra BR for Med Equipment |

| 2022-01-01 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-10-19 00:00:00 | Denied | Extra BR for Med Equiptment |
| 2022-10-19 00:00:00 | Denied | Extra BR other |
| 2022-10-19 00:00:00 | Denied | Extra BR other |
| 2022-10-19 00:00:00 | Denied | Extra BR other |
| 2022-10-19 00:00:00 | Requested | Move request |
| 2022-10-19 00:00:00 | Voided | Other |
| 2022-10-20 00:00:00 | Approved | Extra BR other |
| 2022-10-20 00:00:00 | Requested | Extra Br for LIA |
| 2022-10-26 00:00:00 | Voided | Extra Br for LIA |
| 2022-10-27 00:00:00 | Approved | Extra Br for LIA |
| 2022-10-27 00:00:00 | Approved | Extra Br for LIA |
| 2022-10-27 00:00:00 | Approved | Extra Br for LIA |
| 2022-10-27 00:00:00 | Denied | Extra Br for LIA |
| 2022-10-27 00:00:00 | Denied | Extra BR other |
| 2022-10-27 00:00:00 | Denied | Extra BR other |
| 2022-10-27 00:00:00 | Denied | Extra BR other |
| 2022-10-27 00:00:00 | Denied | Extra BR other |
| 2022-10-27 00:00:00 | Voided | Other |
| 2022-10-28 00:00:00 | Requested | Other |
| 2022-11-01 00:00:00 | Denied | Rent from Relative |
| 2022-11-01 00:00:00 | Requested | Extra Br for LIA |
| 2022-11-02 00:00:00 | Approved | Extra BR for Med Equiptment |
| 2022-11-02 00:00:00 | Approved | Extra BR for Med Equiptment |
| 2022-11-02 00:00:00 | Denied | Extra Br for LIA |
| 2022-11-02 00:00:00 | Voided | Other |
| 2022-11-03 00:00:00 | Requested | Extra Br for LIA |
| 2022-11-03 00:00:00 | Requested | Extra Br for LIA |
| 2022-11-03 00:00:00 | Requested | Other |
| 2022-11-03 00:00:00 | Requested | Other |
| 2022-11-03 00:00:00 | Requested | Other |
| 2022-11-07 00:00:00 | Requested | Extra BR for Med Equiptment |
| 2022-11-08 00:00:00 | Requested | Extra Br for LIA |
| 2022-11-08 00:00:00 | Requested | Extra BR other |
| 2022-11-08 00:00:00 | Requested | Extra BR other |
| 2022-11-08 00:00:00 | Requested | Extra BR other |
| 2022-11-08 00:00:00 | Requested | Other |
| 2022-11-08 00:00:00 | Requested | Other |
| 2022-11-08 00:00:00 | Requested | Other |
| 2022-11-08 00:00:00 | Voided | Extra Br for LIA |
| 2022-11-08 00:00:00 | Voided | Extra Br for LIA |
| 2022-11-08 00:00:00 | Voided | Extra Br for LIA |
| 2022-11-08 00:00:00 | Voided | Extra Br for LIA |
| 2022-11-08 00:00:00 | Voided | Extra Br for LIA |
| 2022-11-08 00:00:00 | Voided | Extra Br for LIA |
| 2022-11-08 00:00:00 | Voided | Extra BR other |
| 2022-11-08 00:00:00 | Voided | Extra BR other |
| 2022-11-09 00:00:00 | Denied | Extra BR other |

| Date | Status | Type |
|---|---|---|
| 2022-01-01 00:00:00 | Requested | Extra BR for Med Equipment |
| 2022-11-09 00:00:00 | Denied | Extra BR other |
| 2022-11-14 00:00:00 | Requested | Other |
| 2022-11-16 00:00:00 | Voided | Extra BR for Med Equipment |
| 2022-11-16 00:00:00 | Voided | Extra BR for Med Equipment |
| 2022-11-16 00:00:00 | Voided | Extra BR for Med Equipment |
| 2022-11-18 00:00:00 | Approved | Extra Br for LIA |
| 2022-11-18 00:00:00 | Approved | Extra Br for LIA |
| 2022-11-18 00:00:00 | Voided | Extra Br for LIA |
| 2022-11-18 00:00:00 | Voided | Other |
| 2022-11-23 00:00:00 | Approved | Extra Br for LIA |
| 2022-11-23 00:00:00 | Denied | Extra Br for LIA |
| 2022-11-23 00:00:00 | Denied | Other |
| 2022-11-30 00:00:00 | Denied | Extra BR for Med Equipment |
| 2022-12-01 00:00:00 | Requested | Extra BR other |
| 2022-12-06 00:00:00 | Requested | Other |
| 2022-12-07 00:00:00 | Approved | Extra Br for LIA |
| 2022-12-07 00:00:00 | Approved | Extra Br for LIA |
| 2022-12-07 00:00:00 | Approved | Extra Br for LIA |
| 2022-12-07 00:00:00 | Approved | Extra Br for LIA |
| 2022-12-07 00:00:00 | Approved | Extra BR other |
| 2022-12-07 00:00:00 | Denied | Extra BR other |
| 2022-12-07 00:00:00 | Voided | Other |
| 2022-12-09 00:00:00 | Requested | Extra Br for LIA |
| 2022-12-09 00:00:00 | Requested | Extra Br for LIA |
| 2022-12-09 00:00:00 | Requested | Extra Br for LIA |
| 2022-12-09 00:00:00 | Requested | Extra BR for Mec Equiptment |
| 2022-12-09 00:00:00 | Requested | Other |
| 2022-12-13 00:00:00 | Requested | Extra BR for Med Equipment |
| 2022-12-13 00:00:00 | Requested | Extra BR other |
| 2022-12-13 00:00:00 | Requested | Other |
| 2022-12-13 00:00:00 | Requested | Other |
| 2022-12-14 00:00:00 | Approved | Extra Br for LIA |
| 2022-12-14 00:00:00 | Approved | Extra Br for LIA |
| 2022-12-14 00:00:00 | Approved | Extra Br for LIA |
| 2022-12-14 00:00:00 | Denied | Extra Br for LIA |
| 2022-12-14 00:00:00 | Denied | Extra Br for LIA |
| 2022-12-14 00:00:00 | Denied | Extra Br for LIA |
| 2022-12-14 00:00:00 | Denied | Extra BR other |
| 2022-12-15 00:00:00 | Approved | Extra Br for LIA |
| 2022-12-16 00:00:00 | Requested | Other |
| 2022-12-20 00:00:00 | Requested | Other |
| 2022-12-21 00:00:00 | Approved | Extra Br for LIA |
| 2022-12-21 00:00:00 | Approved | Extra BR for Med Equiptment |
| 2022-12-21 00:00:00 | Approved | Extra BR for Med Equiptment |
| 2022-12-21 00:00:00 | Denied | Extra BR other |
| 2022-12-21 00:00:00 | Denied | Extra BR other |
| 2022-12-22 00:00:00 | Requested | Other |

Exhibit 30

# July 10, 2025 - Demand for Immediate Disclosure and Depositions

*Email extract packaged for deposition-basis / discovery-stonewalling issues*

**From:** David Samuel <davidsa@possiblymaybe.com>

**To:** "Garson, Edward" <edward.garson@wilsonelser.com>; "Castillo, Monica" <monica.castillo@wilsonelser.com>; "Maddy, David and Artemis Samuel" <home@possiblymaybe.com>

**Subject:** Demand for Immediate Disclosure and Depositions: Lew, Olson, and Prozorov

**Sent:** 2025-07-10 18:15:17 -0700

**Gmail link:** https://mail.google.com/mail/#all/197f70d120588a56

---

Counsel:

Defendants withheld John Lew throughout discovery. He was not identified as a fact or expert witness, was not produced for deposition, and you only provided an email address when pressed. You did not state he was available or under your control. You did not produce any contemporaneous records from him or related to the September 12, 2022 hearing. You are now designating Lew as an expert after discovery has closed. This is a clear violation of your disclosure obligations and an attempt to introduce testimony Plaintiffs had no opportunity to challenge or investigate. It also indicates Defendants have been in contact with Lew and could have produced him all along.

Plaintiffs further object to Defendants' designation of Melanie Olson and Ilya Prozorov as expert witnesses after the close of discovery:

Melanie Olson: Plaintiffs have never received any disclosure identifying Olson as having any role in the facts of this case, nor any documents or correspondence from or about Olson. Defendants never disclosed Olson as a fact or expert witness or produced any records supporting her involvement. Defendants are now designating Olson as an expert to testify about the reasonable accommodation process "particularly in Plaintiffs' case" for the first time. This is improper. Plaintiffs demand all documents Olson has created or relied on, and confirmation of her availability for deposition.

Ilya Prozorov: Defendants repeatedly refused to facilitate discovery as to Prozorov, claimed he was not responsive, and did not disclose him as a witness. Defendants now seek to use Prozorov as an expert on voucher processing and approval timelines after withholding him from discovery. Plaintiffs demand all records related to Prozorov's involvement with Plaintiffs' voucher and confirmation of his availability for deposition.

Plaintiffs demand the following:

1. Confirmation that Lew, Olson, and Prozorov are available and proposed deposition dates for each within the next thirty days, at Defendants' expense.
2. Production of all records any of these witnesses created or controlled regarding this case, including any notes, drafts, or any video or audio recording of the September 12, 2022 hearing.
3. A sworn declaration from Lew regarding the existence or nonexistence of any recording or decision from the hearing.

If you refuse, Plaintiffs will object to any testimony or evidence from Lew, Olson, or Prozorov, will seek preclusion of this late-disclosed evidence, and will preserve all objections for appeal. Defendants' conduct is

indefensible.

Please respond within three business days.

David

Exhibit 31

# May 28, 2025 - Local Rule 251(c) Conference Statement

*Email extract packaged for deposition-basis / discovery-stonewalling issues.*

**From:** David Samuel <davidsa@possiblymaybe.com>

**To:** "Garson, Edward" <edward.garson@wilsonelser.com>; "Castillo, Monica" <monica.castillo@wilsonelser.com>; "Maddy, David and Artemis Samuel" <home@possiblymaybe.com>; Barbara McGarvey <sea@possiblymaybe.com>

**Subject:** Local Rule 251(c) Conference Statement - Roberts et al. v. SHRA et al. (2:22-cv-01699 DJC AC)

**Sent:** 2025-05-28 10:30:41 -0700

**Gmail link:** https://mail.google.com/mail/#all/19717f242ea79fd1

---

Counsel:

Please find attached Plaintiffs' Local Rule 251(c) Conference Statement regarding Defendants' ongoing failure to provide substantive responses to discovery in Roberts et al. v. SHRA et al., Case No. 2:22-cv-01699 DJC AC.

As detailed in the attached statement and supporting chronology, Defendants have not produced a single responsive document or meaningful answer to any of Plaintiffs' eight categories of discovery served between April 3 and April 25, 2025. In each instance, the only responses provided were boilerplate or general objections, with no substantive production or engagement with the specific requests. Meanwhile, Defendants have continued to pursue aggressive discovery of Plaintiffs, including deposition demands.

We are available to confer further in an effort to resolve these issues without further court intervention. However, absent immediate, complete, and substantive responses including rolling production of all outstanding categories and full identification of all responsive witnesses, Plaintiffs will be forced to seek Rule 37 sanctions, adverse inferences, and all available remedies.

If you contend any of these requests have been substantively addressed, or if you are now prepared to provide complete responses and rolling production, please identify those categories and provide the relevant documents immediately. Otherwise, we expect your written position on or before June 3, 2025 so that the parties can finalize the joint statement or proceed with Plaintiffs' portion as required by Local Rule 251.

Thank you for your attention to this matter.

Best Regards

David

# June 11, 2025 - Response Re Short Notice and Outstanding Discovery

*Email extract packaged for deposition-basis / discovery-stonewalling issues.*

**From:** David Samuel <davidsa@possiblymaybe.com>

**To:** "Castillo, Monica" <Monica.Castillo@wilsonelser.com>; "Garson, Edward" <edward.garson@wilsonelser.com>; "Maddy, David and Artemis Samuel" <home@possiblymaybe.com>; Barbara McGarvey <sea@possiblymaybe.com>

**Subject:** Re: Proposed Mutual Dismissal and Closure - Roberts et al. v. SHRA et al., 2:22-cv-01699-DJC-AC

**Sent:** 2025-06-11 11:55:12 -0700

**Gmail link:** https://mail.google.com/mail/#all/1976058a91699dd6

---

Counsel:

We acknowledge receipt of your June 11, 2025 correspondence.

Absence of Binding Agreement; Fed. R. Civ. P. 41(a)(1)(A)(ii) and Local Rule 160
Plaintiffs reiterate that there is no enforceable settlement agreement under either Federal Rule of Civil Procedure 41(a)(1)(A)(ii) or Eastern District Local Rule 160. Defendants unilaterally introduced material terms including a non-disclosure agreement, non-disparagement provisions, and other substantive restrictions that were never accepted by Plaintiffs and were never incorporated into a fully executed written agreement.

Depositions of SHRA Employees; Fed. R. Civ. P. 30(b)(1) and 26(g)
Plaintiffs are not willing to proceed with the depositions of MaryLiz Paulson or Ilya Prozorov as currently noticed. Defendants failed to provide the requested availability of these witnesses in advance, contrary to the cooperation required by Fed. R. Civ. P. 26(g), resulting in inadequate and prejudicial notice under Fed. R. Civ. P. 30(b)(1). Plaintiffs are not responsible for Defendants' refusal to coordinate scheduling in good faith.

Plaintiff Depositions; Rule 30
The depositions of Mr. Samuel and Ms. Roberts were properly noticed by Defendants pursuant to Fed. R. Civ. P. 30. Plaintiffs were available and prepared to appear on the dates noticed. Defendants unilaterally cancelled those depositions based solely on their assumption that a settlement would occur. Any resulting failure to complete those depositions is attributable to Defendants, not Plaintiffs.

Outstanding Discovery; Rules 26, 34, and 37
Defendants' production remains deficient in violation of Fed. R. Civ. P. 26 and 34, including failure to produce the full administrative case file, Reasonable Accommodation Committee records, and all responsive internal communications. Plaintiffs reserve all rights under Fed. R. Civ. P. 37 to seek appropriate relief, including sanctions and further judicial intervention.

Best Regards,

David

Quoted in thread below from Monica Castillo, June 11, 2025:

**Exhibit 32-2**

"This is not only disappointing but is a breach of our agreement to settle this matter and dismiss the case. We will be filing a motion to enforce our agreement to settle.

Your email came one day after the date we noticed for your deposition and the same day of the noticed deposition for Ms. Roberts, certainly too late to have these go forward.

As for the depositions of SHRA employees, we provided ample time for you to take their depositions on the dates we provided.

Please advise if these will go forward as offered:
- June 16, 2025 - MaryLiz Paulson
- June 17, 2025 - Ilya Prozorov

We will have to find a new date for Melanie Olson, who was offered for today, June 11, 2025."

**Exhibit 33**

# June 3, 2025 - Wilson Elser PMK Identification and Availability

*Email extract packaged for deposition-basis / discovery-stonewalling issues.*

**From:** "Castillo, Monica" <Monica.Castillo@wilsonelser.com>

**To:** David Samuel <davidsa@possiblymaybe.com>

**Subject:** RE: Roberts; identification of SHRA persons most knowledgeable for depositions

**Sent:** 2025-06-03 12:00:34 -0700

**Gmail link:** https://mail.google.com/mail/#all/197372ad534895a2

---

Ms. Olson is available for deposition on June 11, 2025, from 1:30pm - 5 pm.

Monica Castillo
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP

From: Castillo, Monica
Sent: Tuesday, June 3, 2025 10:18 AM
To: David Samuel <davidsa@possiblymaybe.com>
Cc: Castillo, Monica <Monica.Castillo@wilsonelser.com>; Carinio, Jasmine
<Jasmine.Carinio@wilsonelser.com>
Subject: RE: Roberts; identification of SHRA persons most knowledgeable for depositions

Mr. Prozorov is available for deposition on June 17, 2025.

Also, please confirm your depositions: June 9, 2025, for Mr. Samuel and June 10, 2025, for Ms. Roberts

Thank you,

Monica Castillo
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP

From: Castillo, Monica
Sent: Tuesday, June 3, 2025 9:39 AM
To: David Samuel <davidsa@possiblymaybe.com>
Cc: Castillo, Monica <Monica.Castillo@wilsonelser.com>
Subject: Roberts; identification of SHRA persons most knowledgeable for depositions

Mr. Samuel and Ms. Roberts:

Regarding the requested topics for persons most knowledgeable depositions, SHRA identifies MaryLiz Paulson as the person who will testify on the topics of Geographic and Demographic Distribution of Voucher Outcomes, Market data/Contractors, Covid-era lobby and service closures, Phone system, Internal training & policy updates and Data Collection and Retention Policy Updates.

Ms. Paulson is currently available on June 16, 2025, from 11 am - 1 pm then 2 pm to 5 pm. She has availability on other days, but it is limited. Please advise asap regarding this date.

As to Voucher Processing and Approval Timelines, SHRA has identified Ilya Prozorov.

**Exhibit 33-2**

As to Reasonable Accommodation Process and Outcomes, SHRA has identified Melanie Olson. We will soon provide availability for their respective depositions.

Monica Castillo
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP

**Exhibit 34**



# CONCILIATION AGREEMENT / VOLUNTARY COMPLIANCE AGREEMENT

Between

## U.S. Department of Housing and Urban Development

and



## Complainant

and

## Sacramento Housing and Redevelopment Agency
### Respondent / Recipient

Under

Title VIII of the Civil Rights Act of 1968, as amended (Fair Housing Act)
Section 504 of the Rehabilitation Act of 1973, as amended
and
Americans with Disabilities Act of 1990, as amended

Approved by the FHEO Regional Director on behalf of the United States Department of Housing and Urban Development

FHEO CASE NUMBERS:  09-20-0002-8, 09-20-0002-4, and 09-20-0002-D
FHEO CASE NAME: ▮▮▮▮▮ v. Sacramento Housing and Redevelopment Agency

DATE FILED:  March 12, 2020

Effective Date of Agreement: _____

Expiration Date of Agreement: _____

Conciliation Agreement Voluntary Compliance Agreement
09-20-0002-8, 09-20-0002-4, and 09-20-0002-D

### A.    Parties and Subject Property:

Complainant:



Sacramento, CA 95815

Respondents/Recipients

Sacramento Housing and Redevelopment Agency
630 I Street
Sacramento, CA 95814

Angela Pickett
630 I Street
Sacramento, CA 95814

Subject Property:

Gibson Oaks
480 Redwood Avenue
Sacramento, CA 95815

### B.    Statements of Facts:

On March 12, 2020, ███████ ("Complainant") filed a complaint (the "Complaint")
with the United States Department of Housing and Urban Development ("HUD" or "the
Department") alleging that Sacramento Housing and Redevelopment Agency
("Respondent/Recipient") and its employee Angela Pickett violated subsections 804(f)(2)
and 804(f)(3)(B) of the Fair Housing Act as amended in 1988, 42 U.S.C. 3601 *et seq.*
("the Act") on the basis of disability when they delayed installing additional grab bars in
her shower area. The Complaint also alleged noncompliance with Section 504 of the
Rehabilitation Act of 1973 ("Section 504") and Title II of the Americans with Disabilities
Act ("ADA"). This Conciliation/Voluntary Compliance Agreement resolves the
Complaint under the Act, Section 504, and the ADA.

Respondent/Recipient denies discriminating against Complainant but agrees to settle the
claims in the underlying actions by entering into this Conciliation/Voluntary Compliance
Agreement.

### C.    Term of Agreement:

1.    This is a Conciliation Agreement between the Complainant, named above, and
Respondent/Recipient Sacramento Housing and Redevelopment Agency, and a

Conciliation Agreement/Voluntary Compliance Agreement
09-20-0002-8, 09-20-0002-4, and 09-20-0002-D

Voluntary Compliance Agreement between the Department and said
Respondent/Recipient.

    a.   It is understood that this Agreement will also resolve the Complaint as to
Angela Pickett although she is not a party to nor signatory to this Agreement.

2.   As specifically stated herein, this Conciliation/Voluntary Compliance Agreement
("Agreement") shall govern the conduct of the parties for a period of one year
from the Effective Date of the Agreement; provided, however, that the Mutual
Releases provided in Section F herein shall survive the expiration of this
Agreement.

## D.   Effective Date:

3.   The parties expressly agree that this Agreement will not constitute a binding
contract under state or federal law, a Conciliation Agreement pursuant to the Act,
or a Voluntary Compliance Agreement pursuant to Section 504 or the ADA unless
and until such time as it is approved by the Department, through the Regional Fair
Housing and Equal Opportunity ("FHEO") Director or her designee.

4.   This Agreement shall become effective on the date that it is approved by the
Regional FHEO Director or her designee ("Effective Date").

## E.   General Provisions:

5.   The parties acknowledge that this Agreement is a voluntary and full settlement of
the disputed complaints. The parties affirm that they have read and fully
understand the significance of the terms set forth herein. No party has been
coerced, intimidated, threatened, or in any way forced to become a party to this
Agreement.

6.   It is understood that Respondent/Recipient denies any violation of the law and that
this Agreement does not constitute an admission by Respondent/Recipient, nor
evidence of a determination by the Department of any violation of the Act, Section
504, Title II of the ADA, or any other law.

7.   Respondent/Recipient acknowledges that it has an affirmative duty not to
discriminate under the Act, Section 504, the ADA, and other Authorities.
Respondent/Recipient acknowledges that it is unlawful to retaliate against any
person because that person has made a complaint, testified, assisted or participated
in any manner in a proceeding under the Act, Section 504, the ADA, and other
Authorities. Respondent/Recipient further acknowledges that any subsequent
retaliation or discrimination constitutes both a material breach of this Agreement,
and a statutory violation of the Act.

8.   The parties agree that the execution of this Agreement may be accomplished by
separate execution of consents to this Agreement, the original executed signature

Conciliation Agreement Voluntary Compliance Agreement
09-20-0002-8, 09-20-0002-4, and 09-20-0002-D

pages to be attached to the body of the Agreement to constitute one document. It is understood that the signature of La Shelle Dozier, Executive Director, is made with the authority and on behalf of Respondent/Recipient Sacramento Housing and Redevelopment Agency.

9. This Agreement, subsequent to the approval by the FHEO Regional Director, or her designee, is binding upon Respondent/Recipient, its employees, heirs, successors, executors, assignees, predecessors, representatives, agents, principals, directors, officers, affiliates and all others in active concert with Respondent/Recipient in the ownership or operation of the subject Public Housing Authority.

10. It is understood that, pursuant to Section 810(b)(4) of the Act, upon approval of this Agreement by the FHEO Regional Director or her designee, it is a public document.

11. This Agreement does not in any way limit or restrict the Department's authority to investigate any other complaint involving Respondent/Recipient made pursuant to the Act, Section 504, Title II of the ADA, or any other complaint within the Department's jurisdiction.

12. No amendment to, modification of, or waiver of any provision of this Agreement shall be effective unless all the following conditions are met: (a) all signatories or their successors to the Agreement agree in writing to the proposed amendment, modification, or waiver; (b) the amendment, modification, or waiver is in writing; and (c) the amendment, modification, or waiver is approved and signed by the FHEO Regional Director or her designee.

F.    **Mutual Releases:**

13. Complainant hereby forever waives, releases, and covenants not to sue the Department, Respondent/Recipient, Angela Pickett, or their employees, heirs, successors, executors, assignees, predecessors, representatives, agents, principals, directors, officers, affiliates or attorneys with regard to any and all claims, damages and injuries of whatever nature whether presently known or unknown, arising out of the subject matter of HUD case numbers 09-20-0002-8, 09-20-0002-4, and 09-20-0002-D or which could have been filed in any action or suit arising from said subject matter.

14. Respondent/Recipient hereby forever waives, releases, and covenants not to sue the Department or the Complainant, or their employees, heirs, successors, executors, assignees, predecessors, representatives, agents, principals, directors, officers, affiliates or attorneys with regard to any and all claims, damages and injuries of whatever nature whether presently known or unknown, arising out of the subject matter of HUD case numbers 09-20-0002-8, 09-20-0002-4, and 09-20-0002-D or which could have been filed in any action or suit arising from said subject matter.

Conciliation Agreement Voluntary Compliance Agreement
09-20-0002-8, 09-20-0002-4, and 09-20-0002-D

## H.    Relief for Complainant

15.  Respondent/Recipient agrees to pay Complainant the sum total of seven thousand five hundred dollars ($7,500) within thirty (30) calendar days of the Effective Date of this Agreement. Payment will be in the form of a check made payable to ▮▮▮ ▮▮ and mailed to ▮▮▮▮▮▮▮▮▮▮▮ in Sacramento, CA 95815 via U.S. certified mail or other delivery service with tracking capability.



To show compliance with paragraph H15, Respondent/Recipient will provide a copy of the check and the tracking information to the Department within forty-five (45) days of the Effective Date of this Agreement. The copies shall be sent to the Department at the address specified in paragraph K27 below.

16.  Respondent/Recipient agrees that it will process any and all future reasonable accommodation and/or reasonable modification requests made by Complainant in a reasonably timely manner and in a way that complies with the Act, Section 504, Title II of the ADA, and in accordance with Respondent/Recipient's procedures, including the updated procedures as set forth in paragraph I19 below.

To show compliance with paragraph H16, Respondent/Recipient agrees to provide information about any future reasonable accommodation and/or reasonable modification requests made by Complainant within a reasonable after the written request of the Department.

## I.    Relief in the Public Interest

17.  Respondent/Recipient agrees that within one hundred twenty (120) days of the Effective Date of this Agreement, all employees who are classified as employees within the Public Housing or Housing Choice Voucher units of the Sacramento Housing and Redevelopment Agency will attend at least three (3) hours of training on fair housing including coverage of the Act, with an emphasis on reasonable accommodations. A qualified fair housing agency or attorney approved in advance by the Department shall conduct the training. Respondent/Recipient shall pay for any cost of the training. It is understood that prior to the Effective Date of this Agreement, Respondent/Recipient submitted a written request for approval that was approved by the Department.

To show compliance with paragraph I17, within one hundred thirty (130) days of the Effective Date of this Agreement, Respondent/Recipient will submit to the Department Certificates of Completion with the name of each person trained, date of completion of training, the agency or firm that provided the training, and the name and title of the trainer, and the subject matter of the training. Documentation shall be sent to the Department at the address set forth in paragraph K27.

18.  Respondent/Recipient agrees that within one hundred twenty (120) days of the Effective Date of this Agreement, all employees who are classified as employees

Conciliation Agreement Voluntary Compliance Agreement
09-20-0002-8, 09-20-0002-4, and 09-20-0002-D

within the Public Housing or Housing Choice Voucher units of the Sacramento Housing and Redevelopment Agency, will receive training on Respondent/Recipient's reasonable accommodation and modification policies and practices, including its procedures for processing, documenting and implementing reasonable accommodation and reasonable modification requests that do not undergo evaluation by Respondent/Recipient's Reasonable Accommodation Committee.

To show compliance with paragraph 116, within one hundred and thirty (130) days of the Effective Date of this Agreement, Respondent/Recipient will submit to the Department Certificates of Completion with the name of each person trained, date of completion of training, the agency or firm that provided the training, and the name and title of the trainer, and the subject matter of the training. Documentation shall be sent to the Department at the address set forth in paragraph K27.

19. Respondent/Recipient agrees to modify the procedures it utilizes to process reasonable accommodations and reasonable modifications at the properties it owns and/or manages to clearly state that any work order entered into the YARDI system for the purpose of implementing an approved request for reasonable accommodation and/or reasonable modification must either be marked as "Emergency" or "Urgent" so that it is prioritized above routine maintenance ("updated procedures").

To show compliance with paragraph 119, within sixty (60) days of the Effective Date of this Agreement, Respondent/Recipient will submit to the Department, at the address set forth in paragraph K27, a copy of the updated procedures.

20. Respondent/Recipient acknowledges that the Act makes it unlawful to discriminate on the basis of race, color, national origin, religion, sex, familial status, and disability, and further makes it unlawful to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling. Respondent/Recipient further acknowledges that it is unlawful to refuse to permit reasonable modifications of existing premises if such modifications may be necessary to afford such person full enjoyment of the premises.

21. Respondent/Recipient acknowledges that the Act makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of any right granted or protected by Section 803, 804, 805, or 806 of the Act.

22. Respondent/Recipient agrees to refrain from discriminating against any person on the basis of race, national origin, color, disability, sex, religion, and familial status as protected under federal law.

23. Respondent/Recipient agrees to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to

Page 6 of 12

Conciliation Agreement Voluntary Compliance Agreement
09-20-0002-8, 09-20-0002-4, and 09-20-0002-D

afford a person with a disability equal opportunity to use and enjoy housing. Respondent/Recipient further agrees to permit, or when applicable, make reasonable modifications of existing premises occupied or to be occupied by a person with a disability, if such modifications may be necessary to afford such person full enjoyment of the premises.

a.   Respondent/Recipient agrees that it will process any and all reasonable accommodation and/or reasonable modification requests in a reasonably timely manner and in a way that complies with the Act, Section 504, Title II of the ADA, and in accordance with Respondent/Recipient's procedures, including the updated procedures as set forth in paragraph 119 above.

24. Respondent/Recipient acknowledges that Section 504 provides that no otherwise qualified individual with handicaps shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. Respondent/Recipient acknowledges that it receives federal financial assistance and is obligated to abide by and agrees to comply with all of the provisions of Section 504, and implementing regulations at 24 CFR Part 8 *et seq.* including, but not limited to:

   a.   24 CFR Part 8, Section 8.6(a)(1)(2) - Communications
       • The Regulation requires that Respondents shall take appropriate steps to ensure effective communication with applicants, beneficiaries, and members of the public to include telecommunication devices for deaf persons (TDD's) or equally effective communication systems.

   b.   24 CFR Part 8, Section 8.53(a) - Designation of responsible employee (Section 504 Coordinator).
       • The Regulation requires that Respondents that employ 15 or more persons shall designate at least one (1) person to coordinate its efforts to comply with this Part.

   c.   24 CFR Part 8, Section 8.53(b) - Adoption of grievance procedures.
       • The Regulation requires that Respondents that employ 15 or more persons shall adopt grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of complaints alleging any action prohibited by this part.

   d.   24 CFR Part 8, Section 8.54(a) - Notice.
       • The Regulation provides that Respondents that employ 15 or more persons shall take appropriate initial and continuing steps to notify participants, beneficiaries, applicants, and employees that it does not discriminate on the basis of handicap.

Conciliation Agreement Voluntary Compliance Agreement
09-20-0002-8, 09-20-0002-4, and 09-20-0002-D

25. Respondent/Recipient further acknowledges that Title II of the ADA protects qualified individuals with disabilities from discrimination on the basis of disability in services, programs, and activities provided by State and local government entities, and extends the prohibition on discrimination established by Section 504 to all activities of State and local governments regardless of whether these entities receive federal financial assistance. Respondent/Recipient is a Public Housing Authority. Respondent/Recipient acknowledges that it is obligated to abide by and agrees to comply with the provisions of Title II of the ADA:

    a. 28 CFR Part 35, Section 35.106 - Notice.
- The ADA requires that a recipient with fifty or more persons shall take appropriate initial and continuing steps to notify participants, beneficiaries, applicants, and employees, including those with impaired vision or hearing, and unions or professional organizations holding collective bargaining or professional agreements with the recipient that it does not discriminate on the basis of handicap in violation of this part.

    b. 28 CFR Part 35, Section 35.107(a) - Designation of responsible employee.
- The ADA requires a recipient with fifty or more persons to designate at least one person to ensure compliance with

    c. 28 CFR Part 35, Section 35.107(b) - Adoption of grievance procedures.
- The ADA requires a recipient with fifty or more persons to designate to adopt a grievance procedure that provides prompt and equitable resolution of complaints alleging any action prohibited in these parts.

    d. 28 CFR Part 35, Section 35.161 - Telecommunication devices for the deaf.
- The regulations require that the recipient shall take appropriate steps to ensure effective communication with applicants, beneficiaries, and members of the public to include telecommunication devices for deaf persons (TDD's) or equally effective communication systems.

## J. Monitoring

26. The Department shall monitor compliance with this Agreement. As part of such monitoring, the Department may inspect Respondent/Recipient's property, interview witnesses, and copy pertinent records of the Respondent/Recipient. Respondent/Recipient agrees to provide upon 5 business days' prior written request full cooperation in any monitoring review undertaken by the Department to ensure

Page 8 of 12

Exhibit 34-9

Conciliation Agreement/Voluntary Compliance Agreement
09-20-0002-8, 09-20-0002-4, and 09-20-0002-D

compliance with this Agreement.

## K.    Reporting and Record Keeping

27.  All required certifications and documentations of compliance with the terms of this Agreement shall be submitted via e-mail to Stephanie Rabiner at stephanie.k.rabiner@hud.gov.

## L.    Consequences of Breach

28.  The parties understand that if the Department has reasonable cause to believe that Respondent/Recipient has breached this Agreement, the Department shall refer the matter to the Attorney General of the United States, to commence a civil action in the appropriate U.S. District Court, pursuant to 42 U.S.C. §3610(c).

29.  The parties understand further that failure by Respondent/Recipient to carry out the terms of this Agreement may result in suspension or termination of, or refusal to grant or to continue federal financial assistance, or other actions authorized by law pursuant to the Act, Section 504, the ADA, or any other Authority within the Department's jurisdiction.

Conciliation Agreement Voluntary Compliance Agreement
09-20-0002-8, 09-20-0002-4, and 09-20-0002-D

## COMPLAINANT'S SIGNATURE PAGE

**This signature attests to the approval and acceptance of this Agreement.**

<br>

████████████████████████████████████████████████████████

████████                                                    Date

(Complainant)

Conciliation Agreement Voluntary Compliance Agreement
09-20-0002-8, 09-20-0002-4, and 09-20-0002-D

## RESPONDENT/ RECIPIENT'S SIGNATURE PAGE

**This signature attests to the approval and acceptance of this Agreement.**


La Shelle Dozier, Executive Director                    Date
On Behalf of Respondent/Recipient
Sacramento Housing and Redevelopment Agency

Conciliation Agreement/Voluntary Compliance Agreement
09-20-0002-8, 09-20-0002-4, and 09-20-0002-D

## APPROVAL and Execution of Voluntary Compliance Agreement

This signature attests to the approval and acceptance of this Conciliation Agreement and on behalf of the U.S. Department of Housing and Urban Development for the execution of the Voluntary Compliance Agreement.

_____    _____
Anné Quesada                                                                       **Date**
Regional Director
Office of Fair Housing and Equal Opportunity (FHEO)

**Exhibit 35**



**U.S. DEPARTMENT OF JUSTICE**
CIVIL RIGHTS DIVISION



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
OFFICE OF FAIR HOUSING AND EQUAL OPPORTUNITY

*Washington, D.C.*
*May 17, 2004*

## JOINT STATEMENT OF
## THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
## AND THE DEPARTMENT OF JUSTICE

### *REASONABLE ACCOMMODATIONS UNDER THE*
### *FAIR HOUSING ACT*

### Introduction

The Department of Justice ("DOJ") and the Department of Housing and Urban Development ("HUD") are jointly responsible for enforcing the federal Fair Housing Act[1] (the "Act"), which prohibits discrimination in housing on the basis of race, color, religion, sex, national origin, familial status, and disability.[2] One type of disability discrimination prohibited by the Act is the refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person with a disability the equal opportunity to use and enjoy a dwelling.[3] HUD and DOJ frequently respond to complaints alleging that housing providers have violated the Act by refusing reasonable accommodations to persons with disabilities. This Statement provides technical assistance regarding the rights and obligations of persons with disabilities and housing providers under the Act relating to

---

[1]   The Fair Housing Act is codified at 42 U.S.C. §§ 3601 - 3619.

[2]   The Act uses the term "handicap" instead of the term "disability." Both terms have the same legal meaning. *See* Bragdon v. Abbott, 524 U.S. 624, 631 (1998) (noting that definition of "disability" in the Americans with Disabilities Act is drawn almost verbatim "from the definition of 'handicap' contained in the Fair Housing Amendments Act of 1988"). This document uses the term "disability," which is more generally accepted.

[3]   42 U.S.C. § 3604(f)(3)(B).

reasonable accommodations.[4]

## Questions and Answers

### 1. What types of discrimination against persons with disabilities does the Act prohibit?

The Act prohibits housing providers from discriminating against applicants or residents because of their disability or the disability of anyone associated with them[5] and from treating persons with disabilities less favorably than others because of their disability. The Act also makes it unlawful for any person to refuse "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford ... person(s) [with disabilities] equal opportunity to use and enjoy a dwelling."[6] The Act also prohibits housing providers from refusing residency to persons with disabilities, or placing conditions on their residency, because those persons may require reasonable accommodations. In addition, in certain circumstances, the Act requires that housing providers allow residents to

---

[4]    Housing providers that receive federal financial assistance are also subject to the requirements of Section 504 of the Rehabilitation Act of 1973. 29 U.S.C. § 794. Section 504, and its implementing regulations at 24 C.F.R. Part 8, prohibit discrimination based on disability and require recipients of federal financial assistance to provide reasonable accommodations to applicants and residents with disabilities. Although Section 504 imposes greater obligations than the Fair Housing Act, (e.g., providing and paying for reasonable accommodations that involve structural modifications to units or public and common areas), the principles discussed in this Statement regarding reasonable accommodation under the Fair Housing Act generally apply to requests for reasonable accommodations to rules, policies, practices, and services under Section 504. See U.S. Department of Housing and Urban Development, Office of Public and Indian Housing, Notice PIH 2002-01(HA) (www.hud.gov/offices/fheo/disabilities/PIH02-01.pdf) and "Section 504: Frequently Asked Questions," (www.hud.gov/offices/fheo/disabilities/sect504faq.cfm#anchor272118).

[5]    The Fair Housing Act's protection against disability discrimination covers not only home seekers with disabilities but also buyers and renters without disabilities who live or are associated with individuals with disabilities 42 U.S.C. § 3604(f)(1)(B), 42 U.S.C. § 3604(f)(1)(C), 42 U.S.C. § 3604(f)(2)(B), 42 U.S.C. § (f)(2)(C). See also H.R. Rep. 100-711 – 24 (reprinted in 1988 U.S.C.A.N. 2173, 2184-85) ("The Committee intends these provisions to prohibit not only discrimination against the primary purchaser or named lessee, but also to prohibit denials of housing opportunities to applicants because they have children, parents, friends, spouses, roommates, patients, subtenants or other associates who have disabilities."). Accord: Preamble to Proposed HUD Rules Implementing the Fair Housing Act, 53 Fed. Reg. 45001 (Nov. 7, 1988) (citing House Report).

[6]    42 U.S.C. § 3604(f)(3)(B). HUD regulations pertaining to reasonable accommodations may be found at 24 C.F.R. § 100.204.

-2-

make reasonable structural modifications to units and public/common areas in a dwelling when those modifications may be necessary for a person with a disability to have full enjoyment of a dwelling.[7]  With certain limited exceptions (*see* response to question 2 below), the Act applies to privately and publicly owned housing, including housing subsidized by the federal government or rented through the use of Section 8 voucher assistance.

### 2. Who must comply with the Fair Housing Act's reasonable accommodation requirements?

Any person or entity engaging in prohibited conduct – *i.e.*, refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling – may be held liable unless they fall within an exception to the Act's coverage.  Courts have applied the Act to individuals, corporations, associations and others involved in the provision of housing and residential lending, including property owners, housing managers, homeowners and condominium associations, lenders, real estate agents, and brokerage services.  Courts have also applied the Act to state and local governments, most often in the context of exclusionary zoning or other land-use decisions. *See e.g.*, City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 729 (1995); Project Life v. Glendening, 139 F. Supp. 703, 710 (D. Md. 2001), aff'd 2002 WL 2012545 (4th Cir. 2002).  Under specific exceptions to the Fair Housing Act, the reasonable accommodation requirements of the Act do not apply to a private individual owner who sells his own home so long as he (1) does not own more than three single-family homes; (2) does not use a real estate agent and does not employ any discriminatory advertising or notices; (3) has not engaged in a similar sale of a home within a 24-month period; and (4) is not in the business of selling or renting dwellings.  The reasonable accommodation requirements of the Fair Housing Act also do not apply to owner-occupied buildings that have four or fewer dwelling units.

### 3. Who qualifies as a person with a disability under the Act?

The Act defines a person with a disability to include (1) individuals with a physical or mental impairment that substantially limits one or more major life activities; (2) individuals who are regarded as having such an impairment; and (3) individuals with a record of such an impairment.

The term "physical or mental impairment" includes, but is not limited to, such diseases and conditions as orthopedic, visual, speech and hearing impairments, cerebral palsy, autism, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, Human Immunodeficiency Virus infection, mental retardation, emotional illness, drug addiction (other than addiction caused by current, illegal use of a controlled substance) and alcoholism.

---

[7]     This Statement does not address the principles relating to reasonable modifications.  For further information see the HUD regulations at 24 C.F.R. § 100.203.  This statement also does not address the additional requirements imposed on recipients of Federal financial assistance pursuant to Section 504, as explained in the Introduction.

- 3 -

**Exhibit 35-4**

The term "substantially limits" suggests that the limitation is "significant" or "to a large degree."

The term "major life activity" means those activities that are of central importance to daily life, such as seeing, hearing, walking, breathing, performing manual tasks, caring for one's self, learning, and speaking.[x] This list of major life activities is not exhaustive. *See e.g.*, <u>Bragdon</u> <u>v. Abbott</u>, 524 U.S. 624, 691-92 (1998)(holding that for certain individuals reproduction is a major life activity).

### 4. Does the Act protect juvenile offenders, sex offenders, persons who illegally use controlled substances, and persons with disabilities who pose a significant danger to others?

No, juvenile offenders and sex offenders, by virtue of that status, are <u>not</u> persons with disabilities protected by the Act.   Similarly, while the Act does protect persons who are recovering from substance abuse, it does <u>not</u> protect persons who are currently engaging in the current illegal use of controlled substances.[9] Additionally, the Act does not protect an individual with a disability whose tenancy would constitute a "direct threat" to the health or safety of other individuals or result in substantial physical damage to the property of others unless the threat can be eliminated or significantly reduced by reasonable accommodation.

### 5. How can a housing provider determine if an individual poses a direct threat?

The Act does not allow for exclusion of individuals based upon fear, speculation, or stereotype about a particular disability or persons with disabilities in general.  A determination that an individual poses a direct threat must rely on an individualized assessment that is based on reliable objective evidence (*e.g.*, current conduct, or a recent history of overt acts). The assessment must consider:  (1) the nature, duration, and severity of the risk of injury; (2) the probability that injury will actually occur; and (3) whether there are any reasonable accommodations that will eliminate the direct threat. Consequently, in evaluating a recent history of overt acts, a provider must take into account whether the individual has received intervening treatment or medication that has eliminated the direct threat (*i.e.*, a significant risk of substantial harm).  In such a situation, the provider may request that the individual document

---

[x]    The Supreme Court has questioned but has not yet ruled on whether "working" is to be considered a major life activity.  <u>See</u> <u>Toyota Motor Mfg, Kentucky, Inc. v. Williams</u>, 122 S. Ct. 681, 692, 693 (2002).  If it is a major activity, the Court has noted that a claimant would be required to show an inability to work in a "broad range of jobs" rather than a specific job. *See* <u>Sutton</u> v. <u>United Airlines, Inc.</u>, 527 U.S. 470, 492 (1999).

[9]    *See, e.g.*, <u>United States</u> v. <u>Southern Management Corp.</u>, 955 F.2d 914, 919 (4th Cir. 1992) (discussing exclusion in 42 U.S.C. § 3602(h) for "current, illegal use of or addiction to a controlled substance").

how the circumstances have changed so that he no longer poses a direct threat. A provider may also obtain satisfactory assurances that the individual will not pose a direct threat during the tenancy. The housing provider must have reliable, objective evidence that a person with a disability poses a direct threat before excluding him from housing on that basis.

      **Example 1**: A housing provider requires all persons applying to rent an apartment to complete an application that includes information on the applicant's current place of residence. On her application to rent an apartment, a woman notes that she currently resides in Cambridge House. The manager of the apartment complex knows that Cambridge House is a group home for women receiving treatment for alcoholism. Based solely on that information and his personal belief that alcoholics are likely to cause disturbances and damage property, the manager rejects the applicant. The rejection is unlawful because it is based on a generalized stereotype related to a disability rather than an individualized assessment of any threat to other persons or the property of others based on reliable, objective evidence about the applicant's recent past conduct. The housing provider may not treat this applicant differently than other applicants based on his subjective perceptions of the potential problems posed by her alcoholism by requiring additional documents, imposing different lease terms, or requiring a higher security deposit. However, the manager could have checked this applicant's references to the same extent and in the same manner as he would have checked any other applicant's references. If such a reference check revealed objective evidence showing that this applicant had posed a direct threat to persons or property in the recent past and the direct threat had not been eliminated, the manager could then have rejected the applicant based on direct threat.

      **Example 2**: James X, a tenant at the Shady Oaks apartment complex, is arrested for threatening his neighbor while brandishing a baseball bat. The Shady Oaks' lease agreement contains a term prohibiting tenants from threatening violence against other residents. Shady Oaks' rental manager investigates the incident and learns that James X threatened the other resident with physical violence and had to be physically restrained by other neighbors to keep him from acting on his threat. Following Shady Oaks' standard practice of strictly enforcing its "no threats" policy, the Shady Oaks rental manager issues James X a 30-day notice to quit, which is the first step in the eviction process. James X's attorney contacts Shady Oaks' rental manager and explains that James X has a psychiatric disability that causes him to be physically violent when he stops taking his prescribed medication. Suggesting that his client will not pose a direct threat to others if proper safeguards are taken, the attorney requests that the rental manager grant James X an exception to the "no threats" policy as a reasonable accommodation based on James X's disability. The Shady Oaks rental manager need only grant the reasonable accommodation if James X's attorney can provide satisfactory assurance that James X will receive appropriate counseling and

- 5 -

periodic medication monitoring so that he will no longer pose a direct threat during his tenancy.   After consulting with James X, the attorney responds that James X is unwilling to receive counseling or submit to any type of periodic monitoring to ensure that he takes his prescribed medication.  The rental manager may go forward with the eviction proceeding, since James X continues to pose a direct threat to the health or safety of other residents.

## 6.  What is a "reasonable accommodation" for purposes of the Act?

A "reasonable accommodation" is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling, including public and common use spaces.  Since rules, policies, practices, and services may have a different effect on persons with disabilities than on other persons, treating persons with disabilities exactly the same as others will sometimes deny them an equal opportunity to use and enjoy a dwelling.  The Act makes it unlawful to refuse to make reasonable accommodations to rules, policies, practices, or services when such accommodations may be necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling.

To show that a requested accommodation may be necessary, there must be an identifiable relationship, or nexus, between the requested accommodation and the individual's disability.

> **Example 1:** A housing provider has a policy of providing unassigned parking spaces to residents.  A resident with a mobility impairment, who is substantially limited in her ability to walk, requests an assigned accessible parking space close to the entrance to her unit as a reasonable accommodation.  There are available parking spaces near the entrance to her unit that are accessible, but those spaces are available to all residents on a first come, first served basis.  The provider must make an exception to its policy of not providing assigned parking spaces to accommodate this resident.

> **Example 2:** A housing provider has a policy of requiring tenants to come to the rental office in person to pay their rent.  A tenant has a mental disability that makes her afraid to leave her unit.  Because of her disability, she requests that she be permitted to have a friend mail her rent payment to the rental office as a reasonable accommodation.  The provider must make an exception to its payment policy to accommodate this tenant.

> **Example 3:** A housing provider has a "no pets" policy.  A tenant who is deaf requests that the provider allow him to keep a dog in his unit as a reasonable accommodation.  The tenant explains that the dog is an assistance animal that will alert him to several sounds, including knocks at the door, sounding of the smoke detector, the telephone ringing, and cars coming into the driveway.  The housing

- 6 -

provider must make an exception to its "no pets" policy to accommodate this tenant.

**7. Are there any instances when a provider can deny a request for a reasonable accommodation without violating the Act?**

Yes. A housing provider can deny a request for a reasonable accommodation if the request was not made by or on behalf of a person with a disability or if there is no disability-related need for the accommodation. In addition, a request for a reasonable accommodation may be denied if providing the accommodation is not reasonable – *i.e.*, if it would impose an undue financial and administrative burden on the housing provider or it would fundamentally alter the nature of the provider's operations. The determination of undue financial and administrative burden must be made on a case-by-case basis involving various factors, such as the cost of the requested accommodation, the financial resources of the provider, the benefits that the accommodation would provide to the requester, and the availability of alternative accommodations that would effectively meet the requester's disability-related needs.

When a housing provider refuses a requested accommodation because it is not reasonable, the provider should discuss with the requester whether there is an alternative accommodation that would effectively address the requester's disability-related needs without a fundamental alteration to the provider's operations and without imposing an undue financial and administrative burden. If an alternative accommodation would effectively meet the requester's disability-related needs and is reasonable, the provider must grant it. An interactive process in which the housing provider and the requester discuss the requester's disability-related need for the requested accommodation and possible alternative accommodations is helpful to all concerned because it often results in an effective accommodation for the requester that does not pose an undue financial and administrative burden for the provider.

> **Example:** As a result of a disability, a tenant is physically unable to open the dumpster placed in the parking lot by his housing provider for trash collection. The tenant requests that the housing provider send a maintenance staff person to his apartment on a daily basis to collect his trash and take it to the dumpster. Because the housing development is a small operation with limited financial resources and the maintenance staff are on site only twice per week, it may be an undue financial and administrative burden for the housing provider to grant the requested daily trash pick-up service. Accordingly, the requested accommodation may not be reasonable. If the housing provider denies the requested accommodation as unreasonable, the housing provider should discuss with the tenant whether reasonable accommodations could be provided to meet the tenant's disability-related needs – for instance, placing an open trash collection can in a location that is readily accessible to the tenant so the tenant can dispose of his own trash and the provider's maintenance staff can then transfer the trash to the dumpster when they are on site. Such an accommodation would not involve a

fundamental alteration of the provider's operations and would involve little financial and administrative burden for the provider while accommodating the tenant's disability-related needs.

There may be instances where a provider believes that, while the accommodation requested by an individual is reasonable, there is an alternative accommodation that would be equally effective in meeting the individual's disability-related needs. In such a circumstance, the provider should discuss with the individual if she is willing to accept the alternative accommodation. However, providers should be aware that persons with disabilities typically have the most accurate knowledge about the functional limitations posed by their disability, and an individual is not obligated to accept an alternative accommodation suggested by the provider if she believes it will not meet her needs and her preferred accommodation is reasonable.

## 8. What is a "fundamental alteration"?

A "fundamental alteration" is a modification that alters the essential nature of a provider's operations.

**Example:** A tenant has a severe mobility impairment that substantially limits his ability to walk. He asks his housing provider to transport him to the grocery store and assist him with his grocery shopping as a reasonable accommodation to his disability. The provider does not provide any transportation or shopping services for its tenants, so granting this request would require a fundamental alteration in the nature of the provider's operations. The request can be denied, but the provider should discuss with the requester whether there is any alternative accommodation that would effectively meet the requester's disability-related needs without fundamentally altering the nature of its operations, such as reducing the tenant's need to walk long distances by altering its parking policy to allow a volunteer from a local community service organization to park her car close to the tenant's unit so she can transport the tenant to the grocery store and assist him with his shopping.

## 9. What happens if providing a requested accommodation involves some costs on the part of the housing provider?

Courts have ruled that the Act may require a housing provider to grant a reasonable accommodation that involves costs, so long as the reasonable accommodation does not pose an undue financial and administrative burden and the requested accommodation does not constitute a fundamental alteration of the provider's operations. The financial resources of the provider, the cost of the reasonable accommodation, the benefits to the requester of the requested accommodation, and the availability of other, less expensive alternative accommodations that would effectively meet the applicant or resident's disability-related needs must be considered in determining whether a requested accommodation poses an undue financial and administrative

- 8 -

burden.

### 10. What happens if no agreement can be reached through the interactive process?

A failure to reach an agreement on an accommodation request is in effect a decision by the provider not to grant the requested accommodation. If the individual who was denied an accommodation files a Fair Housing Act complaint to challenge that decision, then the agency or court receiving the complaint will review the evidence in light of applicable law and decide if the housing provider violated that law. For more information about the complaint process, see question 19 below.

### 11. May a housing provider charge an extra fee or require an additional deposit from applicants or residents with disabilities as a condition of granting a reasonable accommodation?

No. Housing providers may not require persons with disabilities to pay extra fees or deposits as a condition of receiving a reasonable accommodation.

> **Example 1**: A man who is substantially limited in his ability to walk uses a motorized scooter for mobility purposes. He applies to live in an assisted living facility that has a policy prohibiting the use of motorized vehicles in buildings and elsewhere on the premises. It would be a reasonable accommodation for the facility to make an exception to this policy to permit the man to use his motorized scooter on the premises for mobility purposes. Since allowing the man to use his scooter in the buildings and elsewhere on the premises is a reasonable accommodation, the facility may not condition his use of the scooter on payment of a fee or deposit or on a requirement that he obtain liability insurance relating to the use of the scooter. However, since the Fair Housing Act does not protect any person with a disability who poses a direct threat to the person or property of others, the man must operate his motorized scooter in a responsible manner that does not pose a significant risk to the safety of other persons and does not cause damage to other persons' property. If the individual's use of the scooter causes damage to his unit or the common areas, the housing provider may charge him for the cost of repairing the damage (or deduct it from the standard security deposit imposed on all tenants), if it is the provider's practice to assess tenants for any damage they cause to the premises.

> **Example 2**: Because of his disability, an applicant with a hearing impairment needs to keep an assistance animal in his unit as a reasonable accommodation. The housing provider may not require the applicant to pay a fee or a security deposit as a condition of allowing the applicant to keep the assistance animal. However, if a tenant's assistance animal causes damage to the applicant's unit or the common areas of the dwelling, the housing provider may charge the tenant for

- 9 -

Exhibit 35-10

the cost of repairing the damage (or deduct it from the standard security deposit imposed on all tenants), if it is the provider's practice to assess tenants for any damage they cause to the premises.

**12. When and how should an individual request an accommodation?**

Under the Act, a resident or an applicant for housing makes a reasonable accommodation request whenever she makes clear to the housing provider that she is requesting an exception, change, or adjustment to a rule, policy, practice, or service because of her disability. She should explain what type of accommodation she is requesting and, if the need for the accommodation is not readily apparent or not known to the provider, explain the relationship between the requested accommodation and her disability.

An applicant or resident is not entitled to receive a reasonable accommodation unless she requests one. However, the Fair Housing Act does not require that a request be made in a particular manner or at a particular time. A person with a disability need not personally make the reasonable accommodation request; the request can be made by a family member or someone else who is acting on her behalf. An individual making a reasonable accommodation request does not need to mention the Act or use the words "reasonable accommodation." However, the requester must make the request in a manner that a reasonable person would understand to be a request for an exception, change, or adjustment to a rule, policy, practice, or service because of a disability.

Although a reasonable accommodation request can be made orally or in writing, it is usually helpful for both the resident and the housing provider if the request is made in writing. This will help prevent misunderstandings regarding what is being requested, or whether the request was made. To facilitate the processing and consideration of the request, residents or prospective residents may wish to check with a housing provider in advance to determine if the provider has a preference regarding the manner in which the request is made. However, housing providers must give appropriate consideration to reasonable accommodation requests even if the requester makes the request orally or does not use the provider's preferred forms or procedures for making such requests.

> **Example:** A tenant in a large apartment building makes an oral request that she be assigned a mailbox in a location that she can easily access because of a physical disability that limits her ability to reach and bend. The provider would prefer that the tenant make the accommodation request on a pre-printed form, but the tenant fails to complete the form. The provider must consider the reasonable accommodation request even though the tenant would not use the provider's designated form.

**13. Must a housing provider adopt formal procedures for processing requests for a reasonable accommodation?**

- 10 -

No. The Act does not require that a housing provider adopt any formal procedures for reasonable accommodation requests. However, having formal procedures may aid individuals with disabilities in making requests for reasonable accommodations and may aid housing providers in assessing those requests so that there are no misunderstandings as to the nature of the request, and, in the event of later disputes, provide records to show that the requests received proper consideration.

A provider may not refuse a request, however, because the individual making the request did not follow any formal procedures that the provider has adopted. If a provider adopts formal procedures for processing reasonable accommodation requests, the provider should ensure that the procedures, including any forms used, do not seek information that is not necessary to evaluate if a reasonable accommodation may be needed to afford a person with a disability equal opportunity to use and enjoy a dwelling. See Questions 16 - 18, which discuss the disability-related information that a provider may and may not request for the purposes of evaluating a reasonable accommodation request.

**14. Is a housing provider obligated to provide a reasonable accommodation to a resident or applicant if an accommodation has not been requested?**

No. A housing provider is only obligated to provide a reasonable accommodation to a resident or applicant if a request for the accommodation has been made. A provider has notice that a reasonable accommodation request has been made if a person, her family member, or someone acting on her behalf requests a change, exception, or adjustment to a rule, policy, practice, or service because of a disability, even if the words "reasonable accommodation" are not used as part of the request.

**15. What if a housing provider fails to act promptly on a reasonable accommodation request?**

A provider has an obligation to provide prompt responses to reasonable accommodation requests. An undue delay in responding to a reasonable accommodation request may be deemed to be a failure to provide a reasonable accommodation.

**16. What inquiries, if any, may a housing provider make of current or potential residents regarding the existence of a disability when they have not asked for an accommodation?**

Under the Fair Housing Act, it is usually unlawful for a housing provider to (1) ask if an applicant for a dwelling has a disability or if a person intending to reside in a dwelling or anyone associated with an applicant or resident has a disability, or (2) ask about the nature or severity of such persons' disabilities. Housing providers may, however, make the following inquiries, provided these inquiries are made of all applicants, including those with and without disabilities:

- 11 -

**Exhibit 35-12**

- An inquiry into an applicant's ability to meet the requirements of tenancy;

- An inquiry to determine if an applicant is a current illegal abuser or addict of a controlled substance;

- An inquiry to determine if an applicant qualifies for a dwelling legally available only to persons with a disability or to persons with a particular type of disability; and

- An inquiry to determine if an applicant qualifies for housing that is legally available on a priority basis to persons with disabilities or to persons with a particular disability.

**Example 1:** A housing provider offers accessible units to persons with disabilities needing the features of these units on a priority basis. The provider may ask applicants if they have a disability and if, in light of their disability, they will benefit from the features of the units. However, the provider may not ask applicants if they have other types of physical or mental impairments. If the applicant's disability and the need for the accessible features are not readily apparent, the provider may request reliable information/documentation of the disability-related need for an accessible unit.

**Example 2:** A housing provider operates housing that is legally limited to persons with chronic mental illness. The provider may ask applicants for information needed to determine if they have a mental disability that would qualify them for the housing. However, in this circumstance, the provider may not ask applicants if they have other types of physical or mental impairments. If it is not readily apparent that an applicant has a chronic mental disability, the provider may request reliable information/documentation of the mental disability needed to qualify for the housing.

In some instances, a provider may also request certain information about an applicant's or a resident's disability if the applicant or resident requests a reasonable accommodation. See Questions 17 and 18 below.

**17. What kinds of information, if any, may a housing provider request from a person with an obvious or known disability who is requesting a reasonable accommodation?**

A provider is entitled to obtain information that is necessary to evaluate if a requested reasonable accommodation may be necessary because of a disability. If a person's disability is obvious, or otherwise known to the provider, and if the need for the requested accommodation is also readily apparent or known, then the provider may not request any additional information

- 12 -

about the requester's disability or the disability-related need for the accommodation.

If the requester's disability is known or readily apparent to the provider, but the need for the accommodation is not readily apparent or known, the provider may request only information that is necessary to evaluate the disability-related need for the accommodation.

> **Example 1:** An applicant with an obvious mobility impairment who regularly uses a walker to move around asks her housing provider to assign her a parking space near the entrance to the building instead of a space located in another part of the parking lot. Since the physical disability (*i.e.*, difficulty walking) and the disability-related need for the requested accommodation are both readily apparent, the provider may not require the applicant to provide any additional information about her disability or the need for the requested accommodation.

> **Example 2:** A rental applicant who uses a wheelchair advises a housing provider that he wishes to keep an assistance dog in his unit even though the provider has a "no pets" policy. The applicant's disability is readily apparent but the need for an assistance animal is not obvious to the provider. The housing provider may ask the applicant to provide information about the disability-related need for the dog.

> **Example 3:** An applicant with an obvious vision impairment requests that the leasing agent provide assistance to her in filling out the rental application form as a reasonable accommodation because of her disability. The housing provider may not require the applicant to document the existence of her vision impairment.

**18. If a disability is not obvious, what kinds of information may a housing provider request from the person with a disability in support of a requested accommodation?**

A housing provider may not ordinarily inquire as to the nature and severity of an individual's disability (*see* Answer 16, above). However, in response to a request for a reasonable accommodation, a housing provider may request reliable disability-related information that (1) is necessary to verify that the person meets the Act's definition of disability (*i.e.*, has a physical or mental impairment that substantially limits one or more major life activities), (2) describes the needed accommodation, and (3) shows the relationship between the person's disability and the need for the requested accommodation. Depending on the individual's circumstances, information verifying that the person meets the Act's definition of disability can usually be provided by the individual himself or herself (*e.g.*, proof that an individual under 65 years of age receives Supplemental Security Income or Social Security Disability Insurance benefits[13] or a credible statement by the individual). A doctor or other

---

[13]    Persons who meet the definition of disability for purposes of receiving Supplemental Security Income ("SSI") or Social Security Disability Insurance ("SSDI") benefits in most cases meet the definition of disability under the Fair Housing Act, although the converse may not be true. *See e.g.*, <u>Cleveland</u> v. <u>Policy Management Systems Corp.</u>, 526 U.S. 795, 797 (1999)

medical professional, a peer support group, a non-medical service agency, or a reliable third party who is in a position to know about the individual's disability may also provide verification of a disability. In most cases, an individual's medical records or detailed information about the nature of a person's disability is not necessary for this inquiry.

Once a housing provider has established that a person meets the Act's definition of disability, the provider's request for documentation should seek only the information that is necessary to evaluate if the reasonable accommodation is needed because of a disability. Such information must be kept confidential and must not be shared with other persons unless they need the information to make or assess a decision to grant or deny a reasonable accommodation request or unless disclosure is required by law (e.g., a court-issued subpoena requiring disclosure).

**19. If a person believes she has been unlawfully denied a reasonable accommodation, what should that person do if she wishes to challenge that denial under the Act?**

When a person with a disability believes that she has been subjected to a discriminatory housing practice, including a provider's wrongful denial of a request for reasonable accommodation, she may file a complaint with HUD within one year after the alleged denial or may file a lawsuit in federal district court within two years of the alleged denial. If a complaint is filed with HUD, HUD will investigate the complaint at no cost to the person with a disability.

There are several ways that a person may file a complaint with HUD:

- By placing a toll-free call to 1-800-669-9777 or TTY 1-800-927-9275;

- By completing the "on-line" complaint form available on the HUD internet site: http://www.hud.gov; or

- By mailing a completed complaint form or letter to:

  Office of Fair Housing and Equal Opportunity
  Department of Housing & Urban Development
  451 Seventh Street, S.W., Room 5204
  Washington, DC 20410-2000

---

(noting that SSDI provides benefits to a person with a disability so severe that she is unable to do her previous work and cannot engage in any other kind of substantial gainful work whereas a person pursuing an action for disability discrimination under the Americans with Disabilities Act may state a claim that "with a reasonable accommodation" she could perform the essential functions of the job).

- 14 -

**Exhibit 35-15**

Upon request. HUD will provide printed materials in alternate formats (large print, audio tapes, or Braille) and provide complainants with assistance in reading and completing forms.

The Civil Rights Division of the Justice Department brings lawsuits in federal courts across the country to end discriminatory practices and to seek monetary and other relief for individuals whose rights under the Fair Housing Act have been violated. The Civil Rights Division initiates lawsuits when it has reason to believe that a person or entity is involved in a "pattern or practice" of discrimination or when there has been a denial of rights to a group of persons that raises an issue of general public importance. The Division also participates as *amicus curiae* in federal court cases that raise important legal questions involving the application and/or interpretation of the Act. To alert the Justice Department to matters involving a pattern or practice of discrimination, matters involving the denial of rights to groups of persons, or lawsuits raising issues that may be appropriate for *amicus* participation, contact:

> U.S. Department of Justice
> Civil Rights Division
> Housing and Civil Enforcement Section – G St.
> 950 Pennsylvania Avenue, N.W.
> Washington, DC  20530

For more information on the types of housing discrimination cases handled by the Civil Rights Division, please refer to the Housing and Civil Enforcement Section's website at http://www.usdoj.gov/crt/housing/hcehome.html

A HUD or Department of Justice decision not to proceed with a Fair Housing Act matter does not foreclose private plaintiffs from pursuing a private lawsuit. However, litigation can be an expensive, time-consuming, and uncertain process for all parties. HUD and the Department of Justice encourage parties to Fair Housing Act disputes to explore all reasonable alternatives to litigation, including alternative dispute resolution procedures, such as mediation. HUD attempts to conciliate all Fair Housing Act complaints. In addition, it is the Department of Justice's policy to offer prospective defendants the opportunity to engage in pre-suit settlement negotiations, except in the most unusual circumstances.

EDWARD P. GARSON (SBN 96786)
Edward.Garson@WilsonElser.com
MONICA C. CASTILLO (SBN 146154)
Monica.Castillo@WilsonElser.com
CHANDNI B. MISTRY (SBN 354088)
Chandni.Mistry@WilsonElser.com
**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone:    (415) 433-0990
Facsimile:    (415) 434-1370

Attorneys for Defendants SACRAMENTO
HOUSING AND REDEVELOPMENT AGENCY,
LA SHELLE DOZIER, MARYLIZ PAULSON,
TORY LYNCH, TANYA CRUZ, TAMEKA
JACKSON, LISA MACIAS, TIFFANY BROWN,
and IBRA HENLEY

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL<br><br>Plaintiffs,<br><br>v.<br><br>SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY, et al.,<br><br>Defendants. | No.: 2:22-cv-01699 TLN AC PS<br><br>**DEFENDANT LA SHELLE DOZIER'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE**<br><br>**[FED. R. CIV. P. 26(A)(1)]**<br><br>Honorable Allison Claire |

PROPOUNDING PARTY:    Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL

RESPONDING PARTY:    Defendant, LA SHELLE DOZIER

SET NO.:    One (1)

//

//

DEFENDANT LA SHELLE DOZIER'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE

313512887v.1

Defendant, LA SHELLE DOZIER, by and through its attorneys of record, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, hereby provides her Supplemental Responses to Requests for Admissions, Set One, propounded by Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL, as follows:

## PRELIMINARY STATEMENT

Responding Party has not completed his investigation or discovery in this action. This response is based on Responding Party's knowledge, information and belief at this time, and is complete to the best of his present knowledge and understanding. Responding Party reserves the right to refer to, to conduct discovery with reference to, and/or to offer into evidence at the time of trial any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents, and things in this response. Responding Party assumes no obligation to voluntarily supplement or amend this response to reflect facts, evidence, or other information discovered following service of this response. Nevertheless, this response is given without prejudice to subsequent revision or supplementation based upon facts, evidence, and other information, which hereafter may be discovered.

## GENERAL OBJECTIONS

The following General Objections are applicable to and incorporated into each response. The assertion of the same, similar, or additional objections in any specific response does not waive Responding Party's general objections as set forth below:

1.      Responding Party objects to the following Requests for Admission to the extent that any of them seek information protected from disclosure by the attorney-client privilege, the work product doctrine, patient-psychiatrist privilege, and/or any other applicable privilege or protection. Responding Party intends to and does claim privilege with respect to all such information and declines to provide any such information. Any inadvertent disclosure of privileged or protected information is not intended to be, and should not be deemed, a waiver of any privilege or protection from disclosure.

2.      Responding Party objects to the following Requests for Admissions to the extent that they seek to impose obligations or burdens that exceed those imposed by the Federal Rules of Civil

2

Exhibit 36-3

Procedure.

3.      Responding Party objects to the following Requests for Admissions to the extent that they seek confidential information and/or private information of third parties. Such information will be provided only pursuant to the terms of an appropriate protective order and/or with the written consent of such third parties.

4.      Responding Party objects to the following Requests for Admissions to the extent that they seek information prohibited and/or restricted from disclosure by agreement, law or regulation.

5.      Responding Party objects to the following Requests for Admissions to the extent that they seek information outside the possession, control, or custody of Responding Party.

6.      Responding Party objects to the following Requests for Admissions to the extent that they seek information and/or documents irrelevant to the dispute at issue in this lawsuit and unlikely to lead to the discovery of admissible evidence.

7.      Responding Party objects to the following Requests for Admissions to the extent that they are overbroad, unduly burdensome and harassing, and to the extent that they seek documents and information that are equally available to Propounding Party, publicly available, and/or that are more properly and more readily obtained from third parties.

8.      Responding Party objects to the following Requests for Admissions to the extent that they contain vague or ambiguous terms, as such Requests for Admissions are overbroad, unduly burdensome and harassing, and not reasonably calculated to lead to the discovery of admissible evidence.

9.      Responding Party objects to the following Requests for Admissions as premature as investigation and fact and expert discovery is ongoing in this action, and reserves the right to supplement all responses, pursuant to Rule 36, subsequent to the completion of discovery.

10.      Information provided in response to the Requests for Admissions are provided without waiver of, and with express reservation of: (a) all objections as to the competency, relevancy, materiality, and admissibility of such information and the subject matter thereof as evidence for any purpose in any further proceeding in this action, or in any other action; (b) the right to object to the use of such information, or the subject matter thereof, on any ground in any further proceeding in

3

313512887v.1

this action, or in any other action; and (c) the right to object on any ground at any time to a demand or Requests for further responses to these Requests for Admissions or any other Requests or other discovery proceedings.

11.    The Specific Responses below are based upon information reasonably available to Responding Party as of the date of this Response, after having made a diligent search. Responding Party reserves the right to supplement, revise, or correct any response pursuant to Fed. R. Civ. P. 26(e) during and subsequent to the completion of discovery. The Specific Responses are made without prejudice to Responding Party's right to present at trial, or in support or opposition of any dispositive motion, additional evidence or witnesses as they may be discovered or produced. Responding Party further reserves the right to challenge the competence, relevance, materiality, and admissibility at trial or any subsequent proceeding, of this or any other action, of any information or documents it provides in response to these Requests.

The foregoing General Objections are incorporated into the responses of each of the Requests for Admissions below as though set forth fully therein.

## SUPPLEMENTAL RESPONSES TO REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that SHRA is a public entity subject to Title II of the Americans with Disabilities Act.

**RESPONSE TO REQUEST NO. 1:**

Admit.

**REQUEST FOR ADMISSION NO. 2:**

Admit that you are the signatory on SHRA's Voluntary Compliance Agreement with HUD dated March 12, 2020.

**RESPONSE TO REQUEST NO. 2:**

Admit.

**REQUEST FOR ADMISSION NO. 3:**

Admit that the Voluntary Compliance Agreement requires SHRA to provide effective communication and accessible grievance procedures under Section 504 and the ADA.

//

**RESPONSE TO REQUEST NO. 3:**

Admit.

**REQUEST FOR ADMISSION NO. 4:**

Admit that SHRA failed to complete or issue a written decision following Plaintiffs' informal hearing originally scheduled for April 20, 2023 (and held on June 2, 2023), and also failed to issue a decision after their prior hearing held on September 12, 2022.

**RESPONSE TO REQUEST NO. 4:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, Responding Party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding is not a party to the informal hearings.

**REQUEST FOR ADMISSION NO. 5:**

Admit that SHRA had knowledge that Plaintiffs had moved to a new address and yet continued to issue housing assistance payments to a landlord at their former residence for over one year.

**RESPONSE TO REQUEST NO. 5:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, Responding Party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding is not aware of the details as presented regarding payments to a landlord in this case.

**REQUEST FOR ADMISSION NO. 6:**

Admit that you received at least one email directly from Plaintiffs during 2022 or 2023 regarding a request for hearing access, real-time transcription, or another disability-related accommodation.

**RESPONSE TO REQUEST NO. 6:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, Responding Party states that it has made reasonable inquiry and

5

313512887v.1

that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding party frequently purges her emails and does not recall receiving any communication directly from Plaintiffs during 2022 or 2023.

**REQUEST FOR ADMISSION NO. 7:**

Admit that Plaintiffs notified you of concerns regarding discrimination or cancellation of hearings in violation of 24 C.F.R. § 982.555 and ADA Title II.

**RESPONSE TO REQUEST NO. 7:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, Responding Party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding party does not recall any notifications from Plaintiffs regarding discrimination or cancellation of hearings.

**REQUEST FOR ADMISSION NO. 8:**

Admit that SHRA did not provide Plaintiffs with an opportunity to inspect their case file prior to one or more scheduled informal hearings.

**RESPONSE TO REQUEST NO. 8:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, Responding Party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding party, as the Executive Director, is not involved in these matters.

**REQUEST FOR ADMISSION NO. 9:**

Admit that as Executive Director, you had authority to intervene, escalate, or override procedural decisions regarding informal hearings or reasonable accommodation denials.

**RESPONSE TO REQUEST NO. 9:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Admitted in Part and Denied in Part. Responding Party has authority to review decisions related to informal hearings and reasonable accommodations and act appropriately where decisions deviate from the procedure set forth in the

6

Administrative Plan approved by the United States Department of Housing and Urban Development.

**REQUEST FOR ADMISSION NO. 10:**

Admit that SHRA does not have a written policy requiring that reasonable accommodation complaints or hearing cancellations be logged and tracked by Executive Management or Human Resources.

**RESPONSE TO REQUEST NO. 10:**

Admit.

**REQUEST FOR ADMISSION NO. 11:**

Admit that you personally received one or more emails from Plaintiffs in 2023 requesting reasonable accommodations related to "rent reasonableness," informal hearing access, and communication by email.

**RESPONSE TO REQUEST NO. 11:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, Responding Party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding party frequently purges her emails and does not recall any communication from Plaintiffs in 2023.

**REQUEST FOR ADMISSION NO. 12:**

Admit that despite receiving multiple written complaints and accommodation requests from Plaintiffs, SHRA did not provide written notice of denial, did not issue formal explanations for adverse actions, and did not complete or schedule requested hearings within the timelines described in SHRA's administrative plan.

**RESPONSE TO REQUEST NO. 12:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. It is SHRA policy to provide all housing decisions in writing. Hearings are scheduled per the procedure set forth in the Administrative Plan approved by the United States Department of Housing and Urban Development.

//

7

31351288v.1

Dated: May 30, 2025

**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**

By: _____

EDWARD P. GARSON
MONICA C. CASTILLO
CHANDNI B. MISTRY
Attorneys for Defendants

8

DEFENDANT LA SHELLE DOZIER'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR
ADMISSION, SET ONE

313512887v.1

## VERIFICATION

*Sydney Brooke, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
United States District Court, Eastern District Of California
Court Case No. 2:22-cv-01699 TLN AC PS
WEMED File No.: 21727.00057

### UNITED STATES DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA

I have read the foregoing **DEFENDANT LA SHELLE DOZIER'S AMENDED RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSION, SET ONE** and know its contents.

### [X] CHECK APPLICABLE PARAGRAPH

[XX]   I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

[   ]   I am authorized on behalf of [CLIENT NAME] to make this verification for and on its behalf, and I make this verification for that reason.

[   ]   I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

[   ]   The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief and as to those matters I believe them to be true.

[   ]   I am one of the attorneys for _____, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on May 29, 2025, at _Sacramento_, California.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

_[signature]_

VERIFICATION

## PROOF OF SERVICE

*Brooke Roberts, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
USDC, Eastern District of California, No. 2:22-cv-01699 TLN AC PS

I, the undersigned, am employed in the county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 655 Montgomery Street, Suite 900, San Francisco CA 94111.

On the date indicated below, I caused to be served the following document(s) described as follows:

**DEFENDANT LA SHELLE DOZIER'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE**

☐:    **PERSONAL SERVICE** - I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below, and providing them to a professional messenger service for service. (A confirmation by the messenger will be provided to our office after the documents have been delivered.)

☐:    **BY MAIL** - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐:    **OVERNIGHT MAIL** - As follows: I am "readily familiar" with the firm's practice of processing correspondence for mailing overnight via Federal Express. Under that practice it would be deposited in a Federal Express drop box, indicating overnight delivery, with delivery fees provided for, on that same day, at San Francisco, California.

☒:    **BY E-MAIL** - Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐:    **BY ELECTRONIC TRANSMISSION** – By causing the document(s) listed above to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

Executed on May 30, 2025, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

_____
Geraldine Touson

DEFENDANT LA SHELLE DOZIER'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE

3135128887v.1

## SERVICE LIST

Sydney Brooke Roberts
David Tyrone Samuel
108 Rinetti Way
Rio Linda, CA 95673

home@possiblymaybe.com
davidsa@possiblymaybe.com
maddy@possiblymaybe.com

T: (512) 522-8571

EDWARD P. GARSON (SBN 96786)
Edward.Garson@WilsonElser.com
MONICA C. CASTILLO (SBN 146154)
Monica.Castillo@WilsonElser.com
CHANDNI B. MISTRY (SBN 354088)
Chandni.Mistry@WilsonElser.com
**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone:    (415) 433-0990
Facsimile:    (415) 434-1370

Attorneys for Defendants SACRAMENTO
HOUSING AND REDEVELOPMENT AGENCY,
LA SHELLE DOZIER, MARYLIZ PAULSON,
TORY LYNCH, TANYA CRUZ, TAMEKA
JACKSON. LISA MACIAS, TIFFANY BROWN,
and IBRA HENLEY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL<br><br>Plaintiffs,<br><br>v.<br><br>SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY, et al.,<br><br>Defendants. | No.: 2:22-cv-01699 TLN AC PS<br><br>**DEFENDANT LA SHELLE DOZIER'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET TWO**<br><br>**[FED. R. CIV. P. 26(A)(1)]**<br><br>Honorable Allison Claire |

PROPOUNDING PARTY:    Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL

RESPONDING PARTY:    Defendant, LA SHELLE DOZIER

SET NO.:    Two (2)

//

//

//

DEFENDANT LA SHELLE DOZIER'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET TWO

313512883v.1

Defendant, LA SHELLE DOZIER, by and through its attorneys of record, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, hereby provides her Supplemental Responses to Requests for Admissions, Set Two, propounded by Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL, as follows:

## PRELIMINARY STATEMENT

Responding Party has not completed his investigation or discovery in this action. This response is based on Responding Party's knowledge, information and belief at this time, and is complete to the best of his present knowledge and understanding. Responding Party reserves the right to refer to, to conduct discovery with reference to, and/or to offer into evidence at the time of trial any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents, and things in this response. Responding Party assumes no obligation to voluntarily supplement or amend this response to reflect facts, evidence, or other information discovered following service of this response. Nevertheless, this response is given without prejudice to subsequent revision or supplementation based upon facts, evidence, and other information, which hereafter may be discovered.

## GENERAL OBJECTIONS

The following General Objections are applicable to and incorporated into each response. The assertion of the same, similar, or additional objections in any specific response does not waive Responding Party's general objections as set forth below:

1.     Responding Party objects to the following Requests for Admission to the extent that any of them seek information protected from disclosure by the attorney-client privilege, the work product doctrine, patient-psychiatrist privilege, and/or any other applicable privilege or protection. Responding Party intends to and does claim privilege with respect to all such information and declines to provide any such information. Any inadvertent disclosure of privileged or protected information is not intended to be, and should not be deemed, a waiver of any privilege or protection from disclosure.

2.     Responding Party objects to the following Requests for Admissions to the extent that they seek to impose obligations or burdens that exceed those imposed by the Federal Rules of Civil

Procedure.

3. Responding Party objects to the following Requests for Admissions to the extent that they seek confidential information and/or private information of third parties. Such information will be provided only pursuant to the terms of an appropriate protective order and/or with the written consent of such third parties.

4. Responding Party objects to the following Requests for Admissions to the extent that they seek information prohibited and/or restricted from disclosure by agreement, law or regulation.

5. Responding Party objects to the following Requests for Admissions to the extent that they seek information outside the possession, control, or custody of Responding Party.

6. Responding Party objects to the following Requests for Admissions to the extent that they seek information and/or documents irrelevant to the dispute at issue in this lawsuit and unlikely to lead to the discovery of admissible evidence.

7. Responding Party objects to the following Requests for Admissions to the extent that they are overbroad, unduly burdensome and harassing, and to the extent that they seek documents and information that are equally available to Propounding Party, publicly available, and/or that are more properly and more readily obtained from third parties.

8. Responding Party objects to the following Requests for Admissions to the extent that they contain vague or ambiguous terms, as such Requests for Admissions are overbroad, unduly burdensome and harassing, and not reasonably calculated to lead to the discovery of admissible evidence.

9. Responding Party objects to the following Requests for Admissions as premature as investigation and fact and expert discovery is ongoing in this action, and reserves the right to supplement all responses, pursuant to Rule 36, subsequent to the completion of discovery.

10. Information provided in response to the Requests for Admissions are provided without waiver of, and with express reservation of: (a) all objections as to the competency, relevancy, materiality, and admissibility of such information and the subject matter thereof as evidence for any purpose in any further proceeding in this action, or in any other action; (b) the right to object to the use of such information, or the subject matter thereof, on any ground in any further proceeding in

3

this action, or in any other action; and (c) the right to object on any ground at any time to a demand or Requests for further responses to these Requests for Admissions or any other Requests or other discovery proceedings.

11.    The Specific Responses below are based upon information reasonably available to Responding Party as of the date of this Response, after having made a diligent search. Responding Party reserves the right to supplement, revise, or correct any response pursuant to Fed. R. Civ. P. 26(e) during and subsequent to the completion of discovery. The Specific Responses are made without prejudice to Responding Party's right to present at trial, or in support or opposition of any dispositive motion, additional evidence or witnesses as they may be discovered or produced. Responding Party further reserves the right to challenge the competence, relevance, materiality, and admissibility at trial or any subsequent proceeding, of this or any other action, of any information or documents it provides in response to these Requests.

The foregoing General Objections are incorporated into the responses of each of the Requests for Admissions below as though set forth fully therein.

## SUPPLEMENTAL RESPONSES TO REQUESTS FOR ADMISSION

## REQUEST FOR ADMISSION NO. 6:

Admit that you received at least one email directly from Plaintiffs during 2022 or 2023 regarding a request for hearing access, real-time transcription, or another disability-related accommodation.

## RESPONSE TO REQUEST NO. 6:

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Further, this Request is duplicative of Request for Admission No. 6 in Requests for Admission to La Shelle Dozier. Set One. Without waiving said objection, Responding Party provides its prior response as follows: Responding Party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding party frequently purges her emails and does not recall receiving any communication directly from Plaintiffs during 2022 or 2023.

//

**Exhibit 37-5**

**REQUEST FOR ADMISSION NO. 7:**

Admit that Plaintiffs notified you of concerns regarding discrimination or cancellation of hearings in violation of 24 C.F.R. § 982.555 and ADA Title II.

**RESPONSE TO REQUEST NO. 7:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Further, this Request is duplicative of Request for Admission No. 7 in Requests for Admission to La Shelle Dozier, Set One. Without waiving said objection, Responding Party provides its prior response as follows: Responding Party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding party does not recall any notifications from Plaintiffs regarding discrimination or cancellation of hearings.

**REQUEST FOR ADMISSION NO. 8:**

Admit that SHRA did not provide Plaintiffs with an opportunity to inspect their case file prior to one or more scheduled informal hearings.

**RESPONSE TO REQUEST NO. 8:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Further, this Request is duplicative of Request for Admission No. 8 in Requests for Admission to La Shelle Dozier, Set One. Without waiving said objection, Responding Party provides its prior response as follows: Responding Party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding party, as the Executive Director, is not involved in these matters.

**REQUEST FOR ADMISSION NO. 9:**

Admit that as Executive Director, you had authority to intervene, escalate, or override procedural decisions regarding informal hearings or reasonable accommodation denials.

**RESPONSE TO REQUEST NO. 9:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Further, this Request is duplicative of Request for Admission No. 9 in Requests for Admission to La Shelle Dozier, Set One. Without waiving said objection, Responding Party provides its prior

5

4135128883v.1

response as follows: This Request for Admission is Admitted in Part and Denied in Part. Responding Party has authority to review decisions related to informal hearings and reasonable accommodations and act appropriately where decisions deviate from the procedure set forth in the Administrative Plan approved by the United States Department of Housing and Urban Development

**REQUEST FOR ADMISSION NO. 10:**

Admit that SHRA does not have a written policy requiring that reasonable accommodation complaints or hearing cancellations be logged and tracked by Executive Management or Human Resources

**RESPONSE TO REQUEST NO. 10:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Further, this Request is duplicative of Request for Admission No. 10 in Requests for Admission to La Shelle Dozier, Set One. Without waiving said objection, Responding Party provides its prior response as follows: Admit.

**REQUEST FOR ADMISSION NO. 11:**

Admit that you personally received one or more emails from Plaintiffs in 2023 requesting reasonable accommodations related to "rent reasonableness," informal hearing access, and communication by email.

**RESPONSE TO REQUEST NO. 11:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Further, this Request is duplicative of Request for Admission No. 11 in Requests for Admission to La Shelle Dozier, Set One. Without waiving said objection, Responding Party provides its prior response as follows: Responding Party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding party frequently purges her emails and does not recall any communication from Plaintiffs in 2023.

**REQUEST FOR ADMISSION NO. 12:**

Admit that despite receiving multiple written complaints and accommodation requests from Plaintiffs, SHRA did not provide written notice of denial, did not issue formal explanations for

6

513512883v.1

adverse actions, and did not complete or schedule requested hearings within the timelines described in SHRA's administrative plan.

**RESPONSE TO REQUEST NO. 12:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Further, this Request is duplicative of Request for Admission No. 12 in Requests for Admission to La Shelle Dozier, Set One. Without waiving said objection, Responding Party provides its prior response as follows: Denied. It is SHRA policy to provide all housing decisions in writing. Hearings are scheduled per the procedure set forth in the Administrative Plan approved by the United States Department of Housing and Urban Development.

Dated:  May 30, 2025

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

By: _____
EDWARD P. GARSON
MONICA C. CASTILLO
CHANDNI B. MISTRY
Attorneys for Defendants

DEFENDANT LA SHELLE DOZIER'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET TWO

313512883v.1

## VERIFICATION

*Sydney Brooke, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
United States District Court Eastern District Of California
Court Case No. 2:22-cv-01699 TLN AC PS
WEMED File No.: 21727.00057

## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA

I have read the foregoing **DEFENDANT LA SHELLE DOZIER'S AMENDED RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSION, SET TWO** and know its contents.

## [X] CHECK APPLICABLE PARAGRAPH

[XX]   I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

[ ]   I am authorized on behalf of [CLIENT NAME] to make this verification for and on its behalf, and I make this verification for that reason.

[ ]   I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

[ ]   The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief and as to those matters I believe them to be true.

[ ]   I am one of the attorneys for _____, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on May *9*, 2025, at *Sacramento*, California.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

_____

1
VERIFICATION

## PROOF OF SERVICE

*Brooke Roberts, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
USDC, Eastern District of California, No. 2:22-cv-01699 TLN AC PS

I, the undersigned, am employed in the county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 655 Montgomery Street, Suite 900, San Francisco CA 94111.

On the date indicated below, I caused to be served the following document(s) described as follows:

### DEFENDANT LA SHELLE DOZIER'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET TWO

☐: **PERSONAL SERVICE** - I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below, and providing them to a professional messenger service for service. (A confirmation by the messenger will be provided to our office after the documents have been delivered.)

☐: **BY MAIL** - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐: **OVERNIGHT MAIL** - As follows: I am "readily familiar" with the firm's practice of processing correspondence for mailing overnight via Federal Express. Under that practice it would be deposited in a Federal Express drop box, indicating overnight delivery, with delivery fees provided for, on that same day, at San Francisco, California.

☒: **BY E-MAIL** - Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐: **BY ELECTRONIC TRANSMISSION** – By causing the document(s) listed above to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

Executed on May 30, 2025, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Geraldine Touson

8

## SERVICE LIST

| | |
|---|---|
| Sydney Brooke Roberts<br>David Tyrone Samuel<br>108 Rinetti Way<br>Rio Linda, CA 95673<br><br>home@possiblymaybe.com<br>davidsa@possiblymaybe.com<br>maddy@possiblymaybe.com<br><br>T: (512) 522-8571 | |

9

EDWARD P. GARSON (SBN 96786)
Edward.Garson@WilsonElser.com
MONICA C. CASTILLO (SBN 146154)
Monica.Castillo@WilsonElser.com
CHANDNI B. MISTRY (SBN 354088)
Chandni.Mistry@WilsonElser.com
**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone:    (415) 433-0990
Facsimile:    (415) 434-1370

Attorneys for Defendants SACRAMENTO
HOUSING AND REDEVELOPMENT AGENCY,
LA SHELLE DOZIER, MARYLIZ PAULSON,
TORY LYNCH, TANYA CRUZ, TAMEKA
JACKSON, LISA MACIAS, TIFFANY BROWN,
and IBRA HENLEY

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL<br><br>Plaintiffs,<br><br>v.<br><br>SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY, et al.,<br><br>Defendants. | No.: 2:22-cv-01699 TLN AC PS<br><br>**DEFENDANT LA SHELLE DOZIER'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' INTERROGATORIES, SET ONE**<br><br>**[FED. R. CIV. P. 26(A)(1)]**<br><br>Honorable Allison Claire |

PROPOUNDING PARTY:        Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID

TYRONE SAMUEL

RESPONDING PARTY:        Defendant, LA SHELLE DOZIER

SET NO.:        One (1)

//

//

DEFENDANT LA SHELLE DOZIER'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS'
INTERROGATORIES, SET ONE

3135128814.1

Defendant, LA SHELLE DOZIER, (hereinafter referred to as "Defendant" or "Responding Party"), by and through her attorneys of record, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, hereby supplements her responds to Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL's Interrogatories, Set One, as follows:

## PRELIMINARY STATEMENT

These responses and objections are based upon responding party's diligent and best efforts to respond to these discovery requests based upon the investigation carried out to date with respect to facts relevant to this litigation. There may exist further information responsive to these discovery requests which is not within responding party's present knowledge or reasonably available to responding party. There may be information relating to the subject matter of this discovery which responding party has not located, identified, or reviewed, despite its best efforts to do so. There may exist persons with knowledge relating to the subject matter of these discovery requests of whom responding party is not presently aware, whom it has not interviewed, or who have not been deposed. Accordingly, these responses and objections are based solely upon facts and information presently known to responding party, and these responses and objections do not constitute an admission or representation that additional facts, documents, or witnesses with knowledge relevant to the subject matter of this litigation do not exist.

In the course of this litigation, responding party may discovery additional facts witnesses, or documents relevant to its discovery responses and objections set forth herein. Without any manner obligating itself to do so, responding party reserves the right to alter, supplement, amend or otherwise modify these responses at any time.

## GENERAL OBJECTIONS AND RESERVATIONS

Each response and objection provided by responding party in response to propounding party's discovery requests herein is subject to the following General Objections and Reservations, which are incorporated into each of the responses set forth hereinafter:

1. Responding Party objects to Propounding Party's discovery requests to the extent they call for information which is protected from disclosure by the attorney-client privilege, the

3135128881v.1

attorney work product doctrine, and/or other applicable privileges, including documents prepared in anticipation of litigation. Such information will not be provided.

2.      Responding Party objects to Propounding Party's discovery requests to the extent they call for responses containing privileged, proprietary and/or confidential business information or trade secrets. Such information will not be provided.

3.      Responding Party objects to Propounding Party's discovery requests to the extent they call for responses or information violative of any constitutional, statutory or common law privacy rights of Responding Party, any current or former employee of Responding Party, or any other persons. Such information will not be provided.

4.      Responding Party objects to Propounding Party's discovery requests on the bases that they are not reasonably limited in time, are overboard, vague, ambiguous and unintelligible.

5.      Responding Party objects to Propounding Party's discovery requests to the extent they seek information or documents already in the possession, custody or control of Propounding Party, or are as easily accessible to Propounding Party as to Responding Party.

6.      Responding Party objects to Propounding Party's discovery requests on the basis that they are violative of Federal Rules of Civil Procedure, Rule 33.

7.      As used herein, all objections as to relevancy shall mean that the information requested is neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

8.      Nothing herein shall be construed as an admission by responding party as respects the admissibility or relevance of any fact or document.

9.      Pursuant to Federal Rule of Civil Procedure, Rule 26(e), Defendants fully reserve the right to amend, supplement, or otherwise modify these disclosures should different, contrary, or additional information become available.

### SUPPLEMENTAL RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Describe in detail your current duties and responsibilities as Executive Director of SHRA,

3

3135128817.1

including your supervisory authority over SHRA's Housing Choice Voucher program and any role you play in reviewing or approving policies related to participant accommodations or informal hearings.

**RESPONSE TO INTERROGATORY NO. 1:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory on the grounds that it exceeds the number of interrogatories permissible, per Fed. R. Civ. P. 33(a)(1). Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, Responding Party responds as follows:

a) Oversee the management of over $700 million in assets, including capital assets, cash and loan portfolios.

b) Oversee the administration of approximately $210 million of federal rental assistance programs for the City and County of Sacramento.

c) Oversee the application for and administration of Community Development Block Grant funds, Local Housing Trust Funds, City Mixed Housing Ordinance Funds and PLHA Funds.

d) Anticipate Federal and State trends and make proactive organizational changes.

e) Oversee the implementation of housing ordinances and ensure that new developments meet affordable housing obligations.

f) Develop public and private partnerships in service of SHRA's mission and priorities.

g) Oversee SHRA's budget of over $340 million dollars from Federal, State and Local Funds.

h) Maintain positive working relations with elected officials, board members, business leaders, advocates, neighborhood groups, and professional colleagues.

**INTERROGATORY NO. 2:**

Identify the dates and roles of all positions you have held at SHRA, including your role as Director or Manager of the Housing Choice Voucher (HCV) unit. For each position, describe your responsibilities regarding policy development and compliance monitoring.

//

DEFENDANT LA SHELLE DOZIER'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS'
INTERROGATORIES, SET ONE

313512881v.1

**RESPONSE TO INTERROGATORY NO. 2:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory on the grounds that it exceeds the number of interrogatories permissible, per Fed. R. Civ. P. 33(a)(1). Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory because it is vague, ambiguous, and overly burdensome because it seeks a high level of detail regarding employment information over an unspecified time period that is neither relevant to the incident giving rise to this litigation, nor reasonably calculated to lead to admissible evidence. Subject to and without waiving said objections, Responding Party responds as follows:

April 8, 2002 – December 9, 2002 - Management Analyst

December 9, 2002 – July 18, 2003 - Resident Services Manager

July 18, 2003 – April 19, 2004 - Acting Assistant Director, HCV

April 19, 2004 – June 8, 2005 - Assistant Director, HCV

June 8, 2005 – March 13, 2006 - Director of HCV

March 13, 2006 – January 20, 2008 - Director of Housing Authority

January 20, 2008 – July 1, 2009 - Acting Executive Director

July 1, 2009 – present - Executive Director

**INTERROGATORY NO. 3:**

Describe the policies and procedures in effect between 2020 and 2024 regarding how SHRA schedules, conducts, records, and resolves informal hearings under 24 C.F.R. § 982.555.

**RESPONSE TO INTERROGATORY NO. 3:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory on the grounds that it exceeds the number of interrogatories permissible, per Fed. R. Civ. P. 33(a)(1). Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not

31351288 v.1

reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections. Responding Party responds as follows: This interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary from documents. (Federal Rules of Civil Procedure, Rule 33(d).) Responding Party exercises the option under Rule 33(d) of the Federal Rules of Civil Procedure to produce writings in response to this Interrogatory. Responding Party refers Propounding Party to the Informal Hearing Procedures set forth in the Housing Choice Voucher Program Administrative Plan for years 2020 through 2024 which are attached hereto as Exhibits A-F.

**INTERROGATORY NO. 4:**

Describe the procedures used by SHRA to ensure that participants with disabilities receive effective communication and access to services, including what auxiliary aids or reasonable modifications are offered in hearings or inspections.

**RESPONSE TO INTERROGATORY NO. 4:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory on the grounds that it exceeds the number of interrogatories permissible, per Fed. R. Civ. P. 33(a)(1). Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory because it is vague, ambiguous, and overly burdensome. Responding Party further objects to this interrogatory to the extent that it is compound. Responding Party will treat this as two separate Interrogatories, as provided by Federal Rules of Civil Procedure, Rule 33(a)(1), and identify the separate Interrogatories as Interrogatory 4a and Interrogatory 4b for clarity.

**INTERROGATORY NO. 4a:**

Describe the procedures used by SHRA to ensure that participants with disabilities receive effective communication and access to services.

//

31351288.1v.1

**RESPONSE TO INTERROGATORY NO. 4a:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory on the grounds that it exceeds the number of interrogatories permissible, per Fed. R. Civ. P. 33(a)(1). Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections. Responding Party responds as follows: This interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary from documents. (Federal Rules of Civil Procedure, Rule 33(d).) Responding Party exercises the option under Rule 33(d) of the Federal Rules of Civil Procedure to produce writings in response to this Interrogatory. Responding Party refers Propounding Party to Chapter 24: Reasonable Accommodation Policy and Procedures set forth in the Housing Choice Voucher Program Administrative Plan for years 2020 through 2024 which are attached hereto as Exhibits A-F.

**INTERROGATORY NO. 4b:**

Describe what auxiliary aids or reasonable modifications are offered in hearings or inspections.

**RESPONSE TO INTERROGATORY NO. 4b:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory on the grounds that it exceeds the number of interrogatories permissible. per Fed. R. Civ. P. 33(a)(1). Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections. Responding Party responds as follows: Individuals with disabilities request the particular accommodation needed, verified in writing by their Health Care Professional that the specific accommodation requested is due to the disability and the specific change is required for equal access to the housing program. If the request is approved, the accommodation specified in the request is provided.

7

31351288iv.1

**INTERROGATORY NO. 5:**

Identify all individuals who served on SHRA's Reasonable Accommodation Committee between 2020 and 2024, and describe their roles, responsibilities, and qualifications.

**RESPONSE TO INTERROGATORY NO. 5:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory on the grounds that it exceeds the number of interrogatories permissible, per Fed. R. Civ. P. 33(a)(1). Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory because it is vague, ambiguous, and overly burdensome because of the number of individuals on SHRA's Reasonable Accommodation Committee from 2020 to 2024 and the high level of detail this request seeks for each individual that is neither relevant to the incident giving rise to this litigation, nor reasonably calculated to lead to admissible evidence. Subject to and without waiving said objections, Responding Party responds as follows: Responding party does not have knowledge of individuals who served on SHRA's Reasonable Accommodation Committee between 2020 and 2024. Responding Party directs Plaintiff to Exhibit A produced in SHRA's Response to Interrogatories No. 1.

**INTERROGATORY NO. 6:**

Describe the grievance and appeal process available to Housing Choice Voucher participants who allege discrimination, denial of access to services, or denial of hearing rights.

**RESPONSE TO INTERROGATORY NO. 6:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory on the grounds that it exceeds the number of interrogatories permissible, per Fed. R. Civ. P. 33(a)(1). Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, Responding Party responds as follows: This interrogatory would

8

necessitate the preparation of a compilation, abstract, audit, or summary from documents. (Federal Rules of Civil Procedure. Rule 33(d).) Responding Party exercises the option under Rule 33(d) of the Federal Rules of Civil Procedure to produce writings in response to this Interrogatory. Responding Party refers Propounding Party to Chapter 18: Complaints and Appeals set forth in the Housing Choice Voucher Program Administrative Plan for years 2020 through 2024 which are attached hereto as Exhibits A-F.

Dated: May 30, 2025

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

By: _____

EDWARD P. GARSON
MONICA C. CASTILLO
CHANDNI B. MISTRY
Attorneys for Defendants

DEFENDANT LA SHELLE DOZIER'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' INTERROGATORIES, SET ONE

## VERIFICATION

*Sydney Brooke, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
United States District Court Eastern District Of California
Court Case No. 2:22-cv-01699 TLN AC PS
WEMED File No.: 21727.00057

### UNITED STATES DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA

I have read the foregoing **DEFENDANT LA SHELLE DOZIER'S AMENDED RESPONSES TO PLAINTIFF'S INTERROGATORIES, SET ONE** and know its contents.

### [X] CHECK APPLICABLE PARAGRAPH

[XX]   I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

[  ]   I am authorized on behalf of [CLIENT NAME] to make this verification for and on its behalf, and I make this verification for that reason.

[  ]   I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

[  ]   The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief and as to those matters I believe them to be true.

[  ]   I am one of the attorneys for _____, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on May 29, 2025, at _____, California.

I declare under penalty of perjury under the laws of the state of California that the

VERIFICATION

## PROOF OF SERVICE

*Brooke Roberts, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
USDC, Eastern District of California, No. 2:22-cv-01699 TLN AC PS

I, the undersigned, am employed in the county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 655 Montgomery Street, Suite 900, San Francisco CA 94111.

On the date indicated below, I caused to be served the following document(s) described as follows:

### DEFENDANT LA SHELLE DOZIER'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' INTERROGATORIES, SET ONE

☐:  **PERSONAL SERVICE** - I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below, and providing them to a professional messenger service for service.  (A confirmation by the messenger will be provided to our office after the documents have been delivered.)

☐:  **BY MAIL** - As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business.  The envelope was sealed and placed for collection and mailing on this date following our ordinary practices.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐:  **OVERNIGHT MAIL** - As follows:  I am "readily familiar" with the firm's practice of processing correspondence for mailing overnight via Federal Express.  Under that practice it would be deposited in a Federal Express drop box, indicating overnight delivery, with delivery fees provided for, on that same day, at San Francisco, California.

☑:  **BY E-MAIL** - Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐:  **BY ELECTRONIC TRANSMISSION** – By causing the document(s) listed above to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case.  The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

Executed on May 30, 2025, at San Francisco, California.  I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

_____
Geraldine Touson

10

31351288v.1

## SERVICE LIST

| | |
|---|---|
| Sydney Brooke Roberts<br>David Tyrone Samuel<br>108 Rinetti Way<br>Rio Linda, CA 95673<br><br>home@possiblymaybe.com<br>davidsa@possiblymaybe.com<br>maddy@possiblymaybe.com<br><br>T: (512) 522-8571 | |

12

3/3512881v.1

**Exhibit 39**

EDWARD P. GARSON (SBN 96786)
Edward.Garson@WilsonElser.com
MONICA C. CASTILLO (SBN 146154)
Monica.Castillo@WilsonElser.com
CHANDNI B. MISTRY (SBN 354088)
Chandni.Mistry@WilsonElser.com
**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone:    (415) 433-0990
Facsimile:    (415) 434-1370

Attorneys for Defendants SACRAMENTO
HOUSING AND REDEVELOPMENT AGENCY,
LA SHELLE DOZIER, MARYLIZ PAULSON,
TORY LYNCH, TANYA CRUZ, TAMEKA
JACKSON, LISA MACIAS, TIFFANY BROWN,
and IBRA HENLEY

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL<br><br>Plaintiffs,<br><br>v.<br><br>SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY, et al.,<br><br>Defendants. | No.: 2:22-cv-01699 TLN AC PS<br><br>**DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE**<br><br>**[FED. R. CIV. P. 26(A)(1)]**<br><br>Honorable Allison Claire |

PROPOUNDING PARTY:    Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID

TYRONE SAMUEL

RESPONDING PARTY:    Defendant, MARYLIZ PAULSON

SET NO.:    One (1)

---

DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR
ADMISSION, SET ONE

313512868v.1

Defendant, MARYLIZ PAULSON, by and through her attorneys of record, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, hereby provides her SUPPLEMENTAL Responses to Requests for Admissions, Set One, propounded by Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL, as follows:

## PRELIMINARY STATEMENT

Responding Party has not completed his investigation or discovery in this action. This response is based on Responding Party's knowledge, information and belief at this time, and is complete to the best of his present knowledge and understanding. Responding Party reserves the right to refer to, to conduct discovery with reference to, and/or to offer into evidence at the time of trial any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents, and things in this response. Responding Party assumes no obligation to voluntarily supplement or amend this response to reflect facts, evidence, or other information discovered following service of this response. Nevertheless, this response is given without prejudice to subsequent revision or supplementation based upon facts, evidence, and other information, which hereafter may be discovered.

## GENERAL OBJECTIONS

The following General Objections are applicable to and incorporated into each response. The assertion of the same, similar, or additional objections in any specific response does not waive Responding Party's general objections as set forth below:

1.      Responding Party objects to the following Requests for Admission to the extent that any of them seek information protected from disclosure by the attorney-client privilege, the work product doctrine, patient-psychiatrist privilege, and/or any other applicable privilege or protection. Responding Party intends to and does claim privilege with respect to all such information and declines to provide any such information. Any inadvertent disclosure of privileged or protected information is not intended to be, and should not be deemed, a waiver of any privilege or protection from disclosure.

2.      Responding Party objects to the following Requests for Admissions to the extent that they seek to impose obligations or burdens that exceed those imposed by the Federal Rules of Civil

2

Procedure.

3.     Responding Party objects to the following Requests for Admissions to the extent that they seek confidential information and/or private information of third parties. Such information will be provided only pursuant to the terms of an appropriate protective order and/or with the written consent of such third parties.

4.     Responding Party objects to the following Requests for Admissions to the extent that they seek information prohibited and/or restricted from disclosure by agreement, law or regulation.

5.     Responding Party objects to the following Requests for Admissions to the extent that they seek information outside the possession, control, or custody of Responding Party.

6.     Responding Party objects to the following Requests for Admissions to the extent that they seek information and/or documents irrelevant to the dispute at issue in this lawsuit and unlikely to lead to the discovery of admissible evidence.

7.     Responding Party objects to the following Requests for Admissions to the extent that they are overbroad, unduly burdensome and harassing, and to the extent that they seek documents and information that are equally available to Propounding Party, publicly available, and/or that are more properly and more readily obtained from third parties.

8.     Responding Party objects to the following Requests for Admissions to the extent that they contain vague or ambiguous terms, as such Requests for Admissions are overbroad, unduly burdensome and harassing, and not reasonably calculated to lead to the discovery of admissible evidence.

9.     Responding Party objects to the following Requests for Admissions as premature as investigation and fact and expert discovery is ongoing in this action, and reserves the right to supplement all responses, pursuant to Rule 36, subsequent to the completion of discovery.

10.     Information provided in response to the Requests for Admissions are provided without waiver of, and with express reservation of: (a) all objections as to the competency, relevancy, materiality, and admissibility of such information and the subject matter thereof as evidence for any purpose in any further proceeding in this action, or in any other action; (b) the right to object to the use of such information, or the subject matter thereof, on any ground in any further proceeding in

3

313512868v.1

this action, or in any other action; and (c) the right to object on any ground at any time to a demand or Requests for further responses to these Requests for Admissions or any other Requests or other discovery proceedings.

11.    The Specific Responses below are based upon information reasonably available to Responding Party as of the date of this Response, after having made a diligent search. Responding Party reserves the right to supplement, revise, or correct any response pursuant to Fed. R. Civ. P. 26(e) during and subsequent to the completion of discovery. The Specific Responses are made without prejudice to Responding Party's right to present at trial, or in support or opposition to any dispositive motion, additional evidence or witnesses as they may be discovered or produced. Responding Party further reserves the right to challenge the competence, relevance, materiality, and admissibility at trial or any subsequent proceeding, of this or any other action, of any information or documents it provides in response to these Requests.

The foregoing General Objections are incorporated into the responses of each of the Requests for Admissions below as though set forth fully therein.

## SUPPLEMENTAL RESPONSES TO REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that you are the signatory on multiple reasonable accommodation denial letters issued to Plaintiffs between 2022 and 2023.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 1:**

Admit.

**REQUEST FOR ADMISSION NO. 2:**

Admit that SHRA's 2020 Voluntary Compliance Agreement with HUD requires the designation of a Section 504 Coordinator and mandates compliance with 24 C.F.R. § 8.53.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 2:**

Admit.

**REQUEST FOR ADMISSION NO. 3:**

Admit that SHRA has not consistently provided written notice of reasonable accommodation denials to Plaintiffs.

4

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 3:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. Responding Party is only aware of providing written notice of approvals, denials, and voids, per SHRA's policy.

**REQUEST FOR ADMISSION NO. 4:**

Admit that SHRA has denied reasonable accommodation requests submitted by Plaintiffs without conducting an individualized assessment of their disability-related needs.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 4:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. Responding party states that the purpose of the Reasonable Accommodation process (including, but not limited to, completion of Reasonable Accommodation request forms, review of the Reasonable Accommodation request by the Reasonable Accommodation Compliance Committee, and the informal hearing process) is to conduct an individualized assessment to assess and adjudicate on the need for assistance or special consideration to allow equal opportunity to participate or benefit from the housing program based on a person's disability.

**REQUEST FOR ADMISSION NO. 5:**

Admit that Plaintiffs submitted multiple requests for communication accommodations (including email, real-time transcription, and captioning) which were either denied or ignored.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 5:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. Responding Party states that SHRA's policy for submitting a request for reasonable accommodation, including accommodations related to communication, must be made in writing through full completion of the Request for Reasonable Accommodation form, which includes verification by the requestee's Health Care Professional of the disability after requestee's completion of the Authorization for Use or Disclosure of Health Information Responding party states that Plaintiffs' requests were only verbal and did not include third-party verification by a Health Care Professional of a disability that is required to make

a determination on the Request for Reasonable Accommodation. Additional information was requested by SHRA but not submitted.

**REQUEST FOR ADMISSION NO. 6:**

Admit that SHRA has cancelled or failed to conduct multiple informal hearings requested by Plaintiffs without issuing a written explanation or decision.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 6:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. Responding party is not aware of any cancellation or failure to conduct an informal hearing requested by Plaintiffs without the issuance of a written explanation or decision.

**REQUEST FOR ADMISSION NO. 7:**

Admit that as the HCV Program Manager and participant in the Reasonable Accommodation Committee, you had authority to intervene in accommodation decisions made by subordinate SHRA staff.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 7:**

Admit.

**REQUEST FOR ADMISSION NO. 8:**

Admit that SHRA policy does not expressly require tracking of informal hearing cancellations or accommodation denials in a centralized database accessible by executive management.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 8:**

Admit.

Dated: May 30, 2025

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

By: _____
EDWARD P. GARSON
MONICA C. CASTILLO
CHANDNI B. MISTRY
Attorneys for Defendants

6

3135128868v.1

# VERIFICATION

*Sydney Brooke, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
United States District Court Eastern District Of California
Court Case No. 2:22-cv-01699 TLN AC PS
WEMED File No.: 21727.00057

## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA

I have read the foregoing **DEFENDANT MARYLIZ PAULSON'S AMENDED RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSION, SET ONE** and know its contents.

### [X] CHECK APPLICABLE PARAGRAPH

[XX]    I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

[   ]    I am authorized on behalf of [CLIENT NAME] to make this verification for and on its behalf, and I make this verification for that reason.

[   ]    I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

[   ]    The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief and as to those matters I believe them to be true.

[   ]    I am one of the attorneys for _____, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on May 5/29/2025, 2025, at _____Fresno_____, California.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

DocuSigned by:
*MaryLiz Paulson*
91AB617048A140B

VERIFICATION

**PROOF OF SERVICE**

*Brooke Roberts, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
USDC, Eastern District of California, No. 2:22-cv-01699 TLN AC PS

I, the undersigned, am employed in the county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 655 Montgomery Street, Suite 900, San Francisco CA 94111.

On the date indicated below, I caused to be served the following document(s) described as follows:

**DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS'
REQUEST FOR ADMISSION, SET ONE**

☐:    **PERSONAL SERVICE** - I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below, and providing them to a professional messenger service for service. (A confirmation by the messenger will be provided to our office after the documents have been delivered.)

☐:    **BY MAIL** - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐:    **OVERNIGHT MAIL** - As follows: I am "readily familiar" with the firm's practice of processing correspondence for mailing overnight via Federal Express. Under that practice it would be deposited in a Federal Express drop box, indicating overnight delivery, with delivery fees provided for, on that same day, at San Francisco, California.

☒:    **BY E-MAIL** - Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐:    **BY ELECTRONIC TRANSMISSION** – By causing the document(s) listed above to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

Executed on May 30, 2025, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

_____
Geraldine Touson

7

313512868v.1

## SERVICE LIST

| | |
|---|---|
| Sydney Brooke Roberts<br>David Tyrone Samuel<br>108 Rinetti Way<br>Rio Linda, CA 95673<br><br>home@possiblymaybe.com<br>davidsa@possiblymaybe.com<br>maddy@possiblymaybe.com<br><br>T: (512) 522-8571 | |

DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE

313512868v.1

**Exhibit 40**

EDWARD P. GARSON (SBN 96786)
Edward.Garson@WilsonElser.com
MONICA C. CASTILLO (SBN 146154)
Monica.Castillo@WilsonElser.com
CHANDNI B. MISTRY (SBN 354088)
Chandni.Mistry@WilsonElser.com
**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone:    (415) 433-0990
Facsimile:    (415) 434-1370

Attorneys for Defendants SACRAMENTO
HOUSING AND REDEVELOPMENT AGENCY,
LA SHELLE DOZIER, MARYLIZ PAULSON,
TORY LYNCH, TANYA CRUZ, TAMEKA
JACKSON, LISA MACIAS, TIFFANY BROWN,
and IBRA HENLEY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL<br><br>Plaintiffs,<br><br>v.<br><br>SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY, et al.,<br><br>Defendants. | No.: 2:22-cv-01699 TLN AC PS<br><br>**DEFENDANT MARYLIZ PAULSON'S SUPPLEMETNAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET TWO**<br><br>**[FED. R. CIV. P. 26(A)(1)]**<br><br>Honorable Allison Claire |

PROPOUNDING PARTY:        Plaintiffs,  SYDNEY  BROOKE  ROBERTS  and  DAVID

TYRONE SAMUEL

RESPONDING PARTY:        Defendant, MARYLIZ PAULSON

SET NO.:        Two (2)

//

//

1

313512871v.1

Defendant, MARYLIZ PAULSON, by and through her attorneys of record, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, hereby provides her Supplemental Responses to Requests for Admissions, Set Two, propounded by Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL, as follows:

## PRELIMINARY STATEMENT

Responding Party has not completed his investigation or discovery in this action. This response is based on Responding Party's knowledge, information and belief at this time, and is complete to the best of his present knowledge and understanding. Responding Party reserves the right to refer to, to conduct discovery with reference to, and/or to offer into evidence at the time of trial any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents, and things in this response. Responding Party assumes no obligation to voluntarily supplement or amend this response to reflect facts, evidence, or other information discovered following service of this response. Nevertheless, this response is given without prejudice to subsequent revision or supplementation based upon facts, evidence, and other information, which hereafter may be discovered.

## GENERAL OBJECTIONS

The following General Objections are applicable to and incorporated into each response. The assertion of the same, similar, or additional objections in any specific response does not waive Responding Party's general objections as set forth below:

1.     Responding Party objects to the following Requests for Admission to the extent that any of them seek information protected from disclosure by the attorney-client privilege, the work product doctrine, patient-psychiatrist privilege, and/or any other applicable privilege or protection. Responding Party intends to and does claim privilege with respect to all such information and declines to provide any such information. Any inadvertent disclosure of privileged or protected information is not intended to be, and should not be deemed, a waiver of any privilege or protection from disclosure.

2.     Responding Party objects to the following Requests for Admissions to the extent that they seek to impose obligations or burdens that exceed those imposed by the Federal Rules of Civil

2

Procedure.

3.      Responding Party objects to the following Requests for Admissions to the extent that they seek confidential information and/or private information of third parties. Such information will be provided only pursuant to the terms of an appropriate protective order and/or with the written consent of such third parties.

4.      Responding Party objects to the following Requests for Admissions to the extent that they seek information prohibited and/or restricted from disclosure by agreement, law or regulation.

5.      Responding Party objects to the following Requests for Admissions to the extent that they seek information outside the possession, control, or custody of Responding Party.

6.      Responding Party objects to the following Requests for Admissions to the extent that they seek information and/or documents irrelevant to the dispute at issue in this lawsuit and unlikely to lead to the discovery of admissible evidence.

7.      Responding Party objects to the following Requests for Admissions to the extent that they are overbroad, unduly burdensome and harassing, and to the extent that they seek documents and information that are equally available to Propounding Party, publicly available, and/or that are more properly and more readily obtained from third parties.

8.      Responding Party objects to the following Requests for Admissions to the extent that they contain vague or ambiguous terms, as such Requests for Admissions are overbroad, unduly burdensome and harassing, and not reasonably calculated to lead to the discovery of admissible evidence.

9.      Responding Party objects to the following Requests for Admissions as premature as investigation and fact and expert discovery is ongoing in this action, and reserves the right to supplement all responses, pursuant to Rule 36, subsequent to the completion of discovery.

10.     Information provided in response to the Requests for Admissions are provided without waiver of, and with express reservation of: (a) all objections as to the competency, relevancy, materiality, and admissibility of such information and the subject matter thereof as evidence for any purpose in any further proceeding in this action, or in any other action; (b) the right to object to the use of such information, or the subject matter thereof, on any ground in any further proceeding in

3

DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET TWO

313512871v.1

this action, or in any other action; and (c) the right to object on any ground at any time to a demand or Requests for further responses to these Requests for Admissions or any other Requests or other discovery proceedings.

11.    The Specific Responses below are based upon information reasonably available to Responding Party as of the date of this Response, after having made a diligent search. Responding Party reserves the right to supplement, revise, or correct any response pursuant to Fed. R. Civ. P. 26(e) during and subsequent to the completion of discovery. The Specific Responses are made without prejudice to Responding Party's right to present at trial, or in support or opposition to any dispositive motion, additional evidence or witnesses as they may be discovered or produced. Responding Party further reserves the right to challenge the competence, relevance, materiality, and admissibility at trial or any subsequent proceeding, of this or any other action, of any information or documents it provides in response to these Requests.

The foregoing General Objections are incorporated into the responses of each of the Requests for Admissions below as though set forth fully therein.

## SUPPLEMENTAL RESPONSES TO REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 9:**

Admit that you personally received one or more emails from Plaintiffs requesting reasonable accommodations and hearing access.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 9:**

Admit.

**REQUEST FOR ADMISSION NO. 10:**

Admit that you were made aware, in writing, of Plaintiffs' request for communication accommodations including the use of email and real-time captioning.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 10:**

Admit.

**REQUEST FOR ADMISSION NO. 11:**

Admit that Plaintiffs' requests for communication accommodations were not consistently honored by SHRA.

3435128711v.1

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 11:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. Responding Party states that SHRA's policy for submitting a request for reasonable accommodation, including accommodations related to communication, must be made in writing through full completion of the Request for Reasonable Accommodation form, which includes verification by the requestee's Health Care Professional of the disability after requestee's completion of the Authorization for Use or Disclosure of Health Information. Responding party states that Plaintiffs' requests were only verbal and did not include third-party verification by a Health Care Professional of a disability that is required to make a determination on the Request for Reasonable Accommodation. Additional information was requested by SHRA but not submitted.

**REQUEST FOR ADMISSION NO. 12:**

Admit that SHRA failed to reschedule or complete at least two informal hearings requested by Plaintiffs.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 12:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. Responding party is not aware of any cancellation or failure to reschedule or conduct two informal hearings requested by Plaintiffs without the issuance of a written explanation or decision.

**REQUEST FOR ADMISSION NO. 13:**

Admit that SHRA failed to provide Plaintiffs with written decisions or explanations following one or more denied reasonable accommodation requests.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 13:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. Responding Party states that SHRA's policy for submitting a request for reasonable accommodation, including accommodations related to communication, must be made in writing through full completion of the Request for Reasonable Accommodation form, which includes verification by the requestee's Health Care

31351287.v.1

Professional of the disability after requestee's completion of the Authorization for Use or Disclosure of Health Information. Responding party states that Plaintiffs' requests were only verbal and did not include third-party verification by a Health Care Professional of a disability that is required to make a determination on the Request for Reasonable Accommodation. Additional information was requested by SHRA but not submitted.

**REQUEST FOR ADMISSION NO. 14:**

Admit that SHRA does not maintain a centralized or accessible database to log and monitor reasonable accommodation denials.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 14:**

Admit.

**REQUEST FOR ADMISSION NO. 15:**

Admit that you were aware of HUD's findings or guidance related to SHRA's obligations under Section 504 and the ADA as of 2020.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 15:**

Admit.

Dated: May 30, 2025

**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**

By: _____

EDWARD P. GARSON
MONICA C. CASTILLO
CHANDNI B. MISTRY
Attorneys for Defendants

DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET TWO

31351287;v.1

## VERIFICATION

*Sydney Brooke, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
United States District Court Eastern District Of California
Court Case No. 2:22-cv-01699 TLN AC PS
WEMED File No.: 21727.00057

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA

I have read the foregoing **DEFENDANT MARYLIZ PAULSON'S AMENDED RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSION, SET TWO** and know its contents.

### [X] CHECK APPLICABLE PARAGRAPH

[XX] I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

[ ] I am authorized on behalf of [CLIENT NAME] to make this verification for and on its behalf, and I make this verification for that reason.

[ ] I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

[ ] The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief and as to those matters I believe them to be true.

[ ] I am one of the attorneys for ___ _____ ____, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on May/29/2025, 2025, at _____ Fresno _____, California.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

DocuSigned by:

*MaryLiz Paulson*
91AB01704BA140H

---

VERIFICATION

## PROOF OF SERVICE

*Brooke Roberts, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
USDC, Eastern District of California, No. 2:22-cv-01699 TLN AC PS

I, the undersigned, am employed in the county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 655 Montgomery Street, Suite 900, San Francisco CA 94111.

On the date indicated below, I caused to be served the following document(s) described as follows:

### DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSION, SET TWO

☐:    **PERSONAL SERVICE** - I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a professional messenger service for service. (A confirmation by the messenger will be provided to our office after the documents have been delivered.)

☐:    **BY MAIL** - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐:    **OVERNIGHT MAIL** - As follows: I am "readily familiar" with the firm's practice of processing correspondence for mailing overnight via Federal Express. Under that practice it would be deposited in a Federal Express drop box, indicating overnight delivery, with delivery fees provided for, on that same day, at San Francisco, California.

☒:    **BY E-MAIL** - Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐:    **BY ELECTRONIC TRANSMISSION** - By causing the document(s) listed above to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

Executed on May 30, 2025, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

_____
Geraldine Touson

7

DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET TWO

313512871v.1

## SERVICE LIST

| | |
|---|---|
| Sydney Brooke Roberts<br>David Tyrone Samuel<br>108 Rinetti Way<br>Rio Linda, CA  95673<br><br>home@possiblymaybe.com<br>davidsa@possiblymaybe.com<br>maddy@possiblymaybe.com<br><br>T: (512) 522-8571 | |

8

31351287;v.1

EDWARD P. GARSON (SBN 96786)
Edward.Garson@WilsonElser.com
MONICA C. CASTILLO (SBN 146154)
Monica.Castillo@WilsonElser.com
CHANDNI B. MISTRY (SBN 354088)
Chandni.Mistry@WilsonElser.com
**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone:    (415) 433-0990
Facsimile:    (415) 434-1370

Attorneys for Defendants SACRAMENTO
HOUSING AND REDEVELOPMENT AGENCY,
LA SHELLE DOZIER, MARYLIZ PAULSON,
TORY LYNCH, TANYA CRUZ, TAMEKA
JACKSON, LISA MACIAS, TIFFANY BROWN,
and IBRA HENLEY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL<br><br>Plaintiffs,<br><br>v.<br><br>SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY, et al.,<br><br>Defendants. | No.: 2:22-cv-01699 TLN AC PS<br><br>**DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' INTERROGATORIES, SET ONE**<br><br>**[FED. R. CIV. P. 26(A)(1)]**<br><br>Honorable Allison Claire |

PROPOUNDING PARTY:        Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID

TYRONE SAMUEL

RESPONDING PARTY:        Defendant, MARYLIZ PAULSON

SET NO.:        One (1)

//

//

1

Defendant, MARYLIZ PAULSON, (hereinafter referred to as "Defendant" or "Responding Party"), by and through her attorneys of record, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, hereby responds to Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL's Interrogatories, Set One, as follows:

## PRELIMINARY STATEMENT

These responses and objections are based upon responding party's diligent and best efforts to respond to these discovery requests based upon the investigation carried out to date with respect to facts relevant to this litigation. There may exist further information responsive to these discovery requests which is not within responding party's present knowledge or reasonably available to responding party. There may be information relating to the subject matter of this discovery which responding party has not located, identified, or reviewed, despite its best efforts to do so. There may exist persons with knowledge relating to the subject matter of these discovery requests of whom responding party is not presently aware, whom it has not interviewed, or who have not been deposed. Accordingly, these responses and objections are based solely upon facts and information presently known to responding party, and these responses and objections do not constitute an admission or representation that additional facts, documents, or witnesses with knowledge relevant to the subject matter of this litigation do not exist.

In the course of this litigation, responding party may discovery additional facts witnesses, or documents relevant to its discovery responses and objections set forth herein. Without any manner obligating itself to do so, responding party reserves the right to alter, supplement, amend or otherwise modify these responses at any time.

## GENERAL OBJECTIONS AND RESERVATIONS

Each response and objection provided by responding party in response to propounding party's discovery requests herein is subject to the following General Objections and Reservations, which are incorporated into each of the responses set forth hereinafter:

1. Responding Party objects to Propounding Party's discovery requests to the extent they call for information which is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or other applicable privileges, including documents prepared

2

in anticipation of litigation. Such information will not be provided.

2. Responding Party objects to Propounding Party's discovery requests to the extent they call for responses containing privileged, proprietary and/or confidential business information or trade secrets. Such information will not be provided.

3. Responding Party objects to Propounding Party's discovery requests to the extent they call for responses or information violative of any constitutional, statutory or common law privacy rights of Responding Party, any current or former employee of Responding Party, or any other persons. Such information will not be provided.

4. Responding Party objects to Propounding Party's discovery requests on the bases that they are not reasonably limited in time, are overboard, vague, ambiguous and unintelligible.

5. Responding Party objects to Propounding Party's discovery requests to the extent they seek information or documents already in the possession, custody or control of Propounding Party, or are as easily accessible to Propounding Party as to Responding Party.

6. Responding Party objects to Propounding Party's discovery requests on the basis that they are violative of Federal Rules of Civil Procedure, Rule 33.

7. As used herein, all objections as to relevancy shall mean that the information requested is neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

8. Nothing herein shall be construed as an admission by responding party as respects the admissibility or relevance of any fact or document.

9. Pursuant to Federal Rule of Civil Procedure, Rule 26(e). Defendants fully reserve the right to amend, supplement, or otherwise modify these disclosures should different, contrary, or additional information become available.

//
//
//
//
//

3

DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS'
INTERROGATORIES, SET ONE

## SUPPLEMENTAL RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify your current title, responsibilities, and role at SHRA, including your authority over reasonable accommodation procedures, the Housing Choice Voucher program, and any compliance obligations under Section 504 of the Rehabilitation Act or Title II of the Americans with Disabilities Act.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to the term "authority" as it is vague, subjective, ambiguous, undefined, and subject to multiple interpretations. Subject to and without waiving the foregoing objections, Responding Party responds as follows: Director of the Housing Choice Voucher Program; Ensure that the HCV program is managed with integrity in compliance with federal regulations so that only families that are eligible benefit from the rental subsidies and only eligible landlords receive payment for acceptable rental units. Oversee the staff hiring and training and responsible for all aspects of the HCV program including Section 504 compliance. Oversee the Reasonable Accommodation process.

### INTERROGATORY NO. 2:

Identify all job titles and roles you have held within SHRA since 2018 and describe the responsibilities associated with each position.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory because it is vague, ambiguous, and overly burdensome because it seeks a high level of detail regarding employment information from over seven years ago that is neither relevant to the incident giving rise to this

4

litigation, nor reasonably calculated to lead to admissible evidence. Responding Party further objects to the term "roles" as it is vague, subjective, ambiguous, undefined, and subject to multiple interpretations. Subject to and without waiving the foregoing objections, Responding Party responds as follows:

    a) April 2017 – April 2019 – Management Analyst; supported the Assistant Director, HCV with special projects as needed;

    b) April 29, 2019 – May 25, 2020 — Interim Homeless Services Project Manager; opened and oversaw the Capitol Park Hotel Shelter and then closed the shelter; opened the Emergency Bridge Housing Navigation Center for Youth aged 18-24; Meadowview Navigation Center for Women; X Street Navigation Center for Adults

    c) May 25, 2020 – April 9, 2022 – Assistant Director, Homeless Innovations; launched the Sacramento Emergency Rental Assistance (SERA) Program and oversaw several programs providing vouchers to homeless families and individuals;

    d) April 9, 2022 – Present – Director; oversee all aspects of the House Choice Voucher Program and the Section 504 Coordinator the House Choice Voucher Program.

**INTERROGATORY NO. 3:**

State whether you are or have been designated as SHRA's Section 504 Coordinator pursuant to 24 C.F.R. § 8.53(a) and PIH Notice 2010-26, and if not, identify the person(s) who served in that capacity during your employment.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory to the extent that it is compound. Responding Party will treat this as two separate Interrogatories, as provided by Federal Rules of Civil Procedure, Rule 33(a)(1), and identify the separate Interrogatories as Interrogatory 3a and Interrogatory 3b for clarity.

//

**INTERROGATORY NO. 3a:**

State whether you are or have been designated as SHRA's Section 504 Coordinator pursuant to 24 C.F.R. § 8.53(a) and PIH Notice 2010-26.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3a:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Responding Party responds as follows: Responding Party is the Section 504 coordinator for the Housing Choice Voucher program.

**INTERROGATORY NO. 3b:**

If your answer to Interrogatory No. 3a is no, identify the person(s) who served in the capacity of SHRA's Section 504 Coordinator pursuant to 24 C.F.R. § 8.53(a) and PIH Notice 2010-26 during your employment.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3b:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Responding Party responds as follows: Not applicable.

**INTERROGATORY NO. 4:**

Describe your role in reviewing, approving, or denying reasonable accommodation requests submitted by program participants between 2022 and 2024.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Responding Party

6

responds as follows: I am a member of the Reasonable Accommodation Compliance Committee that reviews and makes a determination on Reasonable Accommodation requests.

**INTERROGATORY NO. 5:**

Identify all individuals who served on SHRA's Reasonable Accommodation Committee between 2020 and 2024, and describe their titles, roles, and the process used by the Committee to review requests.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory because it is vague, ambiguous, and overly burdensome because of the number of individuals on SHRA's Reasonable Accommodation Committee from 2020 to 2024 and the high level of detail this request seeks for each individual that is neither relevant to the incident giving rise to this litigation, nor reasonably calculated to lead to admissible evidence. Responding Party further objects to this interrogatory to the extent that it is compound. Responding Party will treat this as two separate Interrogatories, as provided by Federal Rules of Civil Procedure, Rule 33(a)(1), and identify the separate Interrogatories as Interrogatory 5a and Interrogatory 5b for clarity.

**INTERROGATORY 5a:**

Identify all individuals who served on SHRA's Reasonable Accommodation Committee between 2020 and 2024, and describe their titles and roles.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY 5a:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory because it is vague, ambiguous, and overly burdensome because of the number of individuals on SHRA's Reasonable Accommodation Committee from 2020 to 2024 and the high level of detail this request seeks for

7

each individual that is neither relevant to the incident giving rise to this litigation, nor reasonably calculated to lead to admissible evidence. Subject to and without waiving the foregoing objections, Responding Party responds as follows: This interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary from documents. (Federal Rules of Civil Procedure. Rule 33(d).) Responding Party exercises the option under Rule 33(d) of the Federal Rules of Civil Procedure to produce writings in response to this Interrogatory. Responding Party directs Plaintiff to Exhibit A produced in SHRA's Response to Interrogatories No. 1.

**INTERROGATORY 5b:**

Identify the process used by SHRA's Reasonable Accommodation Committee to review requests.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY 5b:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Responding Party responds as follows: This interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary from documents. (Federal Rules of Civil Procedure, Rule 33(d).) Responding Party exercises the option under Rule 33(d) of the Federal Rules of Civil Procedure to produce writings in response to this Interrogatory. Responding Party refers Propounding Party to Chapter 24: Reasonable Accommodation Policy and Procedures set forth in the Housing Choice Voucher Program Administrative Plan for years 2020 through 2024 which were produced as Exhibits A-F in La Shelle Dozier's Supplemental Responses to Plaintiff's Interrogatories. Set One.

**INTERROGATORY NO. 6:**

Identify the training you have received between 2020 and 2024 regarding your obligations under Section 504, the ADA, the Fair Housing Act, and California civil rights laws.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad,

8

vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Responding Party responds as follows: Training includes, but is not limited to, the following: SHRA All Hands Staff Training: training provided by US Department of Housing and Urban Development, California Civil Rights Department, and the Office of Fair Housing and Equal Opportunity; various conferences that cover Section 504, the Americans with Disabilities Act, the Fair Housing Act, and California civil rights laws.

**INTERROGATORY NO. 7:**

Describe the procedures in effect at SHRA from 2020 through 2024 for documenting, responding to, and providing written decisions for reasonable accommodation requests.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Responding Party responds as follows:  This interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary from documents. (Federal Rules of Civil Procedure, Rule 33(d).) Responding Party exercises the option under Rule 33(d) of the Federal Rules of Civil Procedure to produce writings in response to this Interrogatory. Responding Party refers Propounding Party to Chapter 24: Reasonable Accommodation Policy and Procedures set forth in the Housing Choice Voucher Program Administrative Plan for years 2020 through 2024 which were produced as Exhibits A-F in La Shelle Dozier's Supplemental Responses to Plaintiff's Interrogatories, Set One.

**INTERROGATORY NO. 8:**

Describe the procedures in effect at SHRA from 2020 through 2024 for responding to complaints about informal hearing cancellations, failure to accommodate communication needs, or failure to provide case file access prior to hearings.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Responding Party responds as follows: This interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary from documents. (Federal Rules of Civil Procedure, Rule 33(d).) Responding Party exercises the option under Rule 33(d) of the Federal Rules of Civil Procedure to produce writings in response to this Interrogatory. Responding Party refers Propounding Party to Chapter 18: Complaints and Appeals set forth in the Housing Choice Voucher Program Administrative Plan for years 2020 through 2024 which were produced as Exhibits A-F in La Shelle Dozier's Supplemental Responses to Plaintiff's Interrogatories, Set One.

## INTERROGATORY NO. 9:

Identify each reasonable accommodation request submitted by Plaintiffs that you reviewed, participated in, or denied, including the date of request, the decision, and the reason for denial.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to the term "participated in" as it is vague, subjective, ambiguous, undefined, and subject to multiple interpretations. Subject to and without waiving the foregoing objections, Responding Party responds as follows:

(a) Reasonable Accommodation request for 3-bedroom voucher received on May 19, 2022; Denied request for 3-bedroom voucher as needs can be accommodated without increasing voucher size;

(b) Request for housekeeping services and an additional bedroom for David Samuel and Artemis Samuel considered on March 20, 2023: Approved request for one additional bedroom and increase of voucher size to a three bedroom. Denied request for

10

housekeeping services as SHRA does not provide housekeeping services and to do so would be a fundamental change in the program;

(c) Request for additional room for both David Samuel and Artemis Samuel, blackout curtains and sound proofing, list of available housing, assistance with housing search, emails communication only, and extensions considered on March 29, 2023; Denied request for additional bedrooms as no nexus is provided by medical provider. Denied request for email communication only as there is no nexus to support the request for the Head of Household. Voided requests for blackout curtains and soundproofing as these requests should be directed to the landlord. Voided requests for assistance with searching services, list of available housing, and extension requests as assistance was already being provided.

(d) Request for exception to the rent reasonableness requirement dated June 3, 2023; Not within the scope of SHRA as only the US Department of Housing and Urban Development staff can approve the request.

## INTERROGATORY NO. 10

Identify any complaints, concerns, or internal warnings brought to your attention between 2020 and 2024 alleging discrimination or noncompliance with Section 504 or the ADA by SHRA staff or contractors.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to the terms "concerns" and "internal warnings" as they are vague, subjective, ambiguous, undefined, and subject to multiple interpretations. Subject to and without waiving the foregoing objections, Responding Party responds as follows: FHEO Case Nos.: 09-20-0002-8, 09-20-0002-4, and 09-20-0002D.

Dated: May 30, 2025

**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**

By: _____

EDWARD P. GARSON
MONICA C. CASTILLO
CHANDNI B. MISTRY
Attorneys for Defendants

DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS'
INTERROGATORIES, SET ONE

## PROOF OF SERVICE

*Brooke Roberts, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
USDC, Eastern District of California, No. 2:22-cv-01699 TLN AC PS

I, the undersigned, am employed in the county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 655 Montgomery Street, Suite 900, San Francisco CA 94111.

On the date indicated below, I caused to be served the following document(s) described as follows:

### DEFENDANT MARYLIZ PAULSON'S AMENDED RESPONSES TO PLAINTIFFS' INTERROGATORIES, SET ONE

☐: **PERSONAL SERVICE** - I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below, and providing them to a professional messenger service for service. (A confirmation by the messenger will be provided to our office after the documents have been delivered.)

☐: **BY MAIL** - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐: **OVERNIGHT MAIL** - As follows: I am "readily familiar" with the firm's practice of processing correspondence for mailing overnight via Federal Express. Under that practice it would be deposited in a Federal Express drop box, indicating overnight delivery, with delivery fees provided for, on that same day, at San Francisco, California.

☒: **BY E-MAIL** - Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐: **BY ELECTRONIC TRANSMISSION** – By causing the document(s) listed above to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

Executed on May 30, 2025, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

_____
Geraldine Touson

DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' INTERROGATORIES, SET ONE

14

DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS'
INTERROGATORIES, SET ONE

## SERVICE LIST

Sydney Brooke Roberts
David Tyrone Samuel
108 Rinetti Way
Rio Linda, CA 95673

home@possiblymaybe.com
davidsa@possiblymaybe.com
maddy@possiblymaybe.com

T: (512) 522-8571

15

DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS'
INTERROGATORIES, SET ONE

Exhibit 42

EDWARD P. GARSON (SBN 96786)
Edward.Garson@WilsonElser.com
MONICA C. CASTILLO (SBN 146154)
Monica.Castillo@WilsonElser.com
CHANDNI B. MISTRY (SBN 354088)
Chandni.Mistry@WilsonElser.com
**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone:    (415) 433-0990
Facsimile:    (415) 434-1370

Attorneys for Defendants SACRAMENTO
HOUSING AND REDEVELOPMENT AGENCY,
LA SHELLE DOZIER, MARYLIZ PAULSON,
TORY LYNCH, TANYA CRUZ, TAMEKA
JACKSON, LISA MACIAS, TIFFANY BROWN,
and IBRA HENLEY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL, <br><br> Plaintiffs, <br><br> v. <br><br> SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY, et al., <br><br> Defendants. | No.: 2:22-cv-01699 TLN AC PS <br><br> **DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' INTERROGATORIES, SET TWO** <br><br> **[FED. R. CIV. P. 26(A)(1)]** <br><br> Honorable Allison Claire |

PROPOUNDING PARTY:        Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID

TYRONE SAMUEL

RESPONDING PARTY:        Defendant, MARYLIZ PAULSON

SET NO.:        Two (2)

//

//

//

1

Defendant, MARYLIZ PAULSON, (hereinafter referred to as "Defendant" or "Responding Party"), by and through her attorneys of record, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, hereby supplements her responses to Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL's Interrogatories, Set Two, as follows:

## PRELIMINARY STATEMENT

These responses and objections are based upon responding party's diligent and best efforts to respond to these discovery requests based upon the investigation carried out to date with respect to facts relevant to this litigation. There may exist further information responsive to these discovery requests which is not within responding party's present knowledge or reasonably available to responding party. There may be information relating to the subject matter of this discovery which responding party has not located, identified, or reviewed, despite its best efforts to do so. There may exist persons with knowledge relating to the subject matter of these discovery requests of whom responding party is not presently aware, whom it has not interviewed, or who have not been deposed. Accordingly, these responses and objections are based solely upon facts and information presently known to responding party, and these responses and objections do not constitute an admission or representation that additional facts, documents, or witnesses with knowledge relevant to the subject matter of this litigation do not exist.

In the course of this litigation, responding party may discovery additional facts witnesses, or documents relevant to its discovery responses and objections set forth herein. Without any manner obligating itself to do so, responding party reserves the right to alter, supplement, amend or otherwise modify these responses at any time.

## GENERAL OBJECTIONS AND RESERVATIONS

Each response and objection provided by responding party in response to propounding party's discovery requests herein is subject to the following General Objections and Reservations, which are incorporated into each of the responses set forth hereinafter:

1.    Responding Party objects to Propounding Party's discovery requests to the extent they call for information which is protected from disclosure by the attorney-client privilege, the

2

attorney work product doctrine, and/or other applicable privileges, including documents prepared in anticipation of litigation. Such information will not be provided.

2.    Responding Party objects to Propounding Party's discovery requests to the extent they call for responses containing privileged, proprietary and/or confidential business information or trade secrets. Such information will not be provided.

3.    Responding Party objects to Propounding Party's discovery requests to the extent they call for responses or information violative of any constitutional, statutory or common law privacy rights of Responding Party, any current or former employee of Responding Party, or any other persons. Such information will not be provided.

4.    Responding Party objects to Propounding Party's discovery requests on the bases that they are not reasonably limited in time, are overboard, vague, ambiguous and unintelligible.

5.    Responding Party objects to Propounding Party's discovery requests to the extent they seek information or documents already in the possession, custody or control of Propounding Party, or are as easily accessible to Propounding Party as to Responding Party.

6.    Responding Party objects to Propounding Party's discovery requests on the basis that they are violative of Federal Rules of Civil Procedure, Rule 33.

7.    As used herein, all objections as to relevancy shall mean that the information requested is neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

8.    Nothing herein shall be construed as an admission by responding party as respects the admissibility or relevance of any fact or document.

9.    Pursuant to Federal Rule of Civil Procedure, Rule 26(e), Defendants fully reserve the right to amend, supplement, or otherwise modify these disclosures should different, contrary, or additional information become available.

//

//

//

//

3

## SUPPLEMENTAL RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 11:

Identify all emails, letters, or communications you received from Plaintiffs in 2022 or 2023 regarding reasonable accommodations, effective communication, hearing access, or allegations of discrimination.

### RESPONSE TO INTERROGATORY NO. 11:

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Responding Party responds as follows: This interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary from documents. (Federal Rules of Civil Procedure, Rule 33(d).) Responding Party exercises the option under Rule 33(d) of the Federal Rules of Civil Procedure to produce writings in response to this Interrogatory. Responding Party refers Propounding Party to the emails produced concurrently with the herein responses.

### INTERROGATORY NO. 12:

Describe any steps you personally took, or directed others to take, in response to complaints from Plaintiffs regarding the cancellation of hearings, refusal to provide auxiliary aids, or denial of housing opportunities.

### RESPONSE TO INTERROGATORY NO. 12:

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad as to time and scope, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory to the extent that it is compound. Responding Party will treat this as six separate Interrogatories, as provided by Federal Rules of Civil Procedure, Rule 33(a)(1), and identify the separate Interrogatories as Interrogatories 12a through 12f for clarity.

### INTERROGATORY 12a:

Describe any steps you personally took in response to complaints from Plaintiffs regarding the cancellation of hearings.

**RESPONSE TO INTERROGATORY 12a:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad as to time and scope, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to the extent that this interrogatory assumes facts not in evidence, specifically, that hearings were cancelled. Subject to and without waiving the foregoing objections, Responding Party responds as follows: Responding Party is not aware of any hearings that were canceled.

**INTERROGATORY 12b:**

Describe any steps you directed others to take in response to complaints from Plaintiffs regarding the cancellation of hearings.

**RESPONSE TO INTERROGATORY 12b:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad as to time and scope, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to the extent that this interrogatory assumes facts not in evidence, specifically, that hearings were cancelled. Subject to and without waiving the foregoing objections, Responding Party responds as follows Responding Party is not aware of any hearings that were canceled.

**INTERROGATORY 12c:**

Describe any steps you personally took in response to complaints from Plaintiffs regarding the refusal to provide auxiliary aids.

**RESPONSE TO INTERROGATORY 12c:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad as to time and scope, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the

5

discovery of admissible evidence. Responding Party further objects to the extent that this interrogatory assumes facts not in evidence, specifically, that there was a request for auxiliary aids and a subsequent refusal to provide the requested auxiliary aids. Subject to and without waiving the foregoing objections, Responding Party responds as follows: Transcripts of Zoom hearings and the use of closed-captioning during Zoom hearings were offered.

**INTERROGATORY 12d:**

Describe any steps you directed others to take in response to complaints from Plaintiffs regarding the refusal to provide auxiliary aids.

**RESPONSE TO INTERROGATORY 12d:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad as to time and scope, vague, ambiguous. unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to the extent that this interrogatory assumes facts not in evidence, specifically, that there was a request for auxiliary aids and a subsequent refusal to provide the requested auxiliary aids. Subject to and without waiving the foregoing objections, Responding Party responds as follows:  Transcripts of Zoom hearings and the use of closed-captioning during Zoom hearings were offered.

**INTERROGATORY 12e:**

Describe any steps you personally took in response to complaints from Plaintiffs regarding the denial of housing opportunities.

**RESPONSE TO INTERROGATORY 12e:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad as to time and scope. vague, ambiguous. unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Responding Party responds as follows: Housing opportunities were not denied to Plaintiffs.

**INTERROGATORY 12f:**

Describe any steps you directed others to take in response to complaints from Plaintiffs

Exhibit 42-7

regarding the denial of housing opportunities.

**RESPONSE TO INTERROGATORY 12f:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad as to time and scope, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Responding Party responds as follows:  Housing opportunities were not denied to Plaintiffs.

**INTERROGATORY NO. 13:**

Identify all requests made by Plaintiffs for effective communication formats (such as email correspondence, real-time transcription, captioning, or written confirmation of verbal notices), and state whether each request was granted or denied.

**RESPONSE TO INTERROGATORY NO. 13:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory to the extent it is overbroad as to time and scope, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to the term "effective" as it is vague, subjective, ambiguous, undefined, and subject to multiple interpretations. Subject to and without waiving the foregoing objections, Responding Party responds as follows:  Request for emails communication only considered by the Reasonable Accommodation Compliance Committee on March 29, 2023. The request for email communication only was denied as there was no nexus to support the request for the Head of Household.

**INTERROGATORY NO. 14:**

Describe SHRA's process for logging, tracking, and reviewing complaints of disability-based discrimination or failure to accommodate, including who has access to that tracking system and how those complaints are escalated.

**RESPONSE TO INTERROGATORY NO. 14:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory on the grounds that it exceeds

7

the number of interrogatories permissible, per Fed. R. Civ. P. 33(a)(1). Responding Party objects to this interrogatory to the extent it is overbroad as to time and scope, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory to the extent that it is compound. Responding Party will treat this as three separate Interrogatories, as provided by Federal Rules of Civil Procedure, Rule 33(a)(1), and identify the separate Interrogatories as Interrogatories 14a through 14c for clarity.

**INTERROGATORY 14a:**

Describe SHRA's process for logging, tracking, and reviewing complaints of disability-based discrimination or failure to accommodate.

**RESPONSE TO INTERROGATORY 14a:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory on the grounds that it exceeds the number of interrogatories permissible, per Fed. R. Civ. P. 33(a)(1). Responding Party objects to this interrogatory to the extent it is overbroad as to time and scope, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Responding Party responds as follows: Logging and tracking of case-related materials and actions are completed using Yardi. Review of a denial of any Reasonable Accommodation is completed the procedure outlined in Chapter 18: Complaints and Appeals set forth in the Housing Choice Voucher Program Administrative Plan. This interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary from documents. (Federal Rules of Civil Procedure, Rule 33(d).) Responding Party exercises the option under Rule 33(d) of the Federal Rules of Civil Procedure to produce writings in response to this Interrogatory. Responding Party refers Propounding Party to Chapter 18: Complaints and Appeals set forth in the Housing Choice Voucher Program Administrative Plan that was produced as Exhibits A-F in La Shelle Dozier's Supplemental Responses to Plaintiff's Interrogatories, Set One.

**INTERROGATORY 14b:**

Exhibit 42-9

Identify who has access to SHRA's tracking system for logging, tracking, and reviewing complaints of disability-based discrimination or failure to accommodate.

**RESPONSE TO INTERROGATORY 14b:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory on the grounds that it exceeds the number of interrogatories permissible, per Fed. R. Civ. P. 33(a)(1). Responding Party objects to this interrogatory to the extent it is overbroad as to time and scope, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Responding Party responds as follows: SHRA staff have access to Yardi.

**INTERROGATORY 14c:**

Describe how disability-based discrimination or failure to accommodate complaints are escalated.

**RESPONSE TO INTERROGATORY 14c:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory on the grounds that it exceeds the number of interrogatories permissible, per Fed. Civ. P. 33(a)(1). Responding Party objects to this interrogatory to the extent it is overbroad as to time and scope, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Responding Party responds as follows: This interrogatory would necessitate the preparation of a compilation, abstract, audit, or summary from documents. (Federal Rules of Civil Procedure, Rule 33(d).) Responding Party exercises the option under Rule 33(d) of the Federal Rules of Civil Procedure to produce writings in response to this Interrogatory. Responding Party refers Propounding Party to Chapter 18: Complaints and Appeals set forth in the Housing Choice Voucher Program Administrative Plan that was produced as Exhibits A-F in La Shelle Dozier's Supplemental Responses to Plaintiff's Interrogatories, Set One.

**INTERROGATORY NO. 15:**

State whether you have reviewed HUD guidance documents including PIH 2010-26, PIH 2012-31, or the SHRA 2020 Voluntary Compliance Agreement, and describe how SHRA has implemented or failed to implement the required reforms.

**RESPONSE TO INTERROGATORY NO. 15:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory on the grounds that it exceeds the number of interrogatories permissible, per Fed. R. Civ. P. 33(a)(1). Responding Party objects to this interrogatory to the extent it is overbroad as to time and scope, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory to the extent that it is compound. Responding Party will treat this as two separate Interrogatories, as provided by Federal Rules of Civil Procedure, Rule 33(a)(1), and identify the separate Interrogatories as Interrogatories 15a through 15b for clarity.

**INTERROGATORY NO. 15a:**

State whether you have reviewed HUD guidance documents including PIH 2010-26, PIH 2012-31, or the SHRA 2020 Voluntary Compliance Agreement.

**RESPONSE TO INTERROGATORY NO. 15a:**

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory on the grounds that it exceeds the number of interrogatories permissible, per Fed. R. Civ. P. 33(a)(1). Responding Party objects to this interrogatory to the extent it is overbroad as to time and scope, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Responding Party responds as follows: Yes.

**INTERROGATORY NO. 15b:**

Describe how SHRA has implemented or failed to implement the required reforms.

10

## RESPONSE TO INTERROGATORY NO. 15b:

Responding Party incorporates its Preliminary Statement and General Objections as though fully set forth herein. Responding Party objects to this interrogatory on the grounds that it exceeds the number of interrogatories permissible, per Fed. R. Civ. P. 33(a)(1). Responding Party objects to this interrogatory to the extent it is overbroad as to time and scope, vague, ambiguous, unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence. Responding Party objects to this interrogatory because this interrogatory is so broad, uncertain, and unintelligible that Responding Party cannot determine the nature of the information sought and, accordingly, cannot provide an answer to the Interrogatory as phrased.

Dated:  May 30, 2025

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

By: _____

EDWARD P. GARSON
MONICA C. CASTILLO
CHANDNI B. MISTRY
Attorneys for Defendants

DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS'
INTERROGATORIES, SET TWO

# VERIFICATION

*Sydney Brooke, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
United States District Court Eastern District Of California
Court Case No. 2:22-cv-01699 TLN AC PS
WEMED File No.: 21727.00057

## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA

I have read the foregoing **DEFENDANT MARYLIZ PAULSON'S AMENDED RESPONSES TO PLAINTIFF'S INTERROGATORIES, SET TWO** and know its contents.

[X] CHECK APPLICABLE PARAGRAPH

[XX]   I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

[   ]   I am authorized on behalf of [CLIENT NAME] to make this verification for and on its behalf, and I make this verification for that reason.

[   ]   I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

[   ]   The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief and as to those matters I believe them to be true.

[   ]   I am one of the attorneys for _____, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on May 5/29/2025 ____, 2025, at _____Fresno_____, California.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

DocuSigned by:

*MaryLiz Paulson*
011A56170A8A140B

VERIFICATION

## PROOF OF SERVICE

*Brooke Roberts, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
USDC, Eastern District of California, No. 2:22-cv-01699 TLN AC PS

I, the undersigned, am employed in the county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 655 Montgomery Street, Suite 900, San Francisco CA 94111.

On the date indicated below, I caused to be served the following document(s) described as follows:

### DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' INTERROGATORIES, SET TWO

☐: **PERSONAL SERVICE** - I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below, and providing them to a professional messenger service for service. (A confirmation by the messenger will be provided to our office after the documents have been delivered.)

☐: **BY MAIL** - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐: **OVERNIGHT MAIL** - As follows: I am "readily familiar" with the firm's practice of processing correspondence for mailing overnight via Federal Express. Under that practice it would be deposited in a Federal Express drop box, indicating overnight delivery, with delivery fees provided for, on that same day, at San Francisco, California.

☒: **BY E-MAIL** - Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission. I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐: **BY ELECTRONIC TRANSMISSION** – By causing the document(s) listed above to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

Executed on May 30, 2025, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

_____
Geraldine Touson

12

## SERVICE LIST

Sydney Brooke Roberts
David Tyrone Samuel
108 Rinetti Way
Rio Linda, CA 95673

home@possiblymaybe.com
davidsa@possiblymaybe.com
maddy@possiblymaybe.com

T: (512) 522-8571

DEFENDANT MARYLIZ PAULSON'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS'
INTERROGATORIES, SET TWO

Exhibit 43

EDWARD P. GARSON (SBN 96786)
Edward.Garson@WilsonElser.com
MONICA C. CASTILLO (SBN 146154)
Monica.Castillo@WilsonElser.com
CHANDNI B. MISTRY (SBN 354088)
Chandni.Mistry@WilsonElser.com
**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone:    (415) 433-0990
Facsimile:    (415) 434-1370

Attorneys for Defendants SACRAMENTO
HOUSING AND REDEVELOPMENT AGENCY,
LA SHELLE DOZIER, MARYLIZ PAULSON,
TORY LYNCH, TANYA CRUZ, TAMEKA
JACKSON, LISA MACIAS, TIFFANY BROWN,
and IBRA HENLEY

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL<br><br>Plaintiffs,<br><br>v.<br><br>SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY, et al.,<br><br>Defendants. | No.: 2:22-cv-01699 TLN AC PS<br><br>**DEFENDANT TANYA CRUZ'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE**<br><br>**[FED. R. CIV. P. 26(A)(1)]**<br><br>Honorable Allison Claire |

PROPOUNDING PARTY:     Plaintiffs, SYDNEY   BROOKE   ROBERTS   and   DAVID
TYRONE SAMUEL

RESPONDING PARTY:     Defendant, TANYA CRUZ

SET NO.:     One (1)

///

///

---

3135:286:v.1

Defendant, TANYA CRUZ, by and through her attorneys of record, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, hereby provides her Supplemental Responses to Requests for Admissions, Set Two, propounded by Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL, as follows:

## PRELIMINARY STATEMENT

Responding Party has not completed his investigation or discovery in this action. This response is based on Responding Party's knowledge, information and belief at this time, and is complete to the best of his present knowledge and understanding. Responding Party reserves the right to refer to, to conduct discovery with reference to, and/or to offer into evidence at the time of trial any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents, and things in this response. Responding Party assumes no obligation to voluntarily supplement or amend this response to reflect facts, evidence, or other information discovered following service of this response. Nevertheless, this response is given without prejudice to subsequent revision or supplementation based upon facts, evidence, and other information, which hereafter may be discovered.

## GENERAL OBJECTIONS

The following General Objections are applicable to and incorporated into each response. The assertion of the same, similar, or additional objections in any specific response does not waive Responding Party's general objections as set forth below:

1.      Responding Party objects to the following Requests for Admission to the extent that any of them seek information protected from disclosure by the attorney-client privilege, the work product doctrine, patient-psychiatrist privilege, and/or any other applicable privilege or protection. Responding Party intends to and does claim privilege with respect to all such information and declines to provide any such information. Any inadvertent disclosure of privileged or protected information is not intended to be, and should not be deemed, a waiver of any privilege or protection from disclosure.

2.      Responding Party objects to the following Requests for Admissions to the extent that they seek to impose obligations or burdens that exceed those imposed by the Federal Rules of Civil

2

Procedure.

3.    Responding Party objects to the following Requests for Admissions to the extent that they seek confidential information and/or private information of third parties. Such information will be provided only pursuant to the terms of an appropriate protective order and/or with the written consent of such third parties.

4.    Responding Party objects to the following Requests for Admissions to the extent that they seek information prohibited and/or restricted from disclosure by agreement, law or regulation.

5.    Responding Party objects to the following Requests for Admissions to the extent that they seek information outside the possession, control, or custody of Responding Party.

6.    Responding Party objects to the following Requests for Admissions to the extent that they seek information and/or documents irrelevant to the dispute at issue in this lawsuit and unlikely to lead to the discovery of admissible evidence.

7.    Responding Party objects to the following Requests for Admissions to the extent that they are overbroad, unduly burdensome and harassing, and to the extent that they seek documents and information that are equally available to Propounding Party, publicly available, and/or that are more properly and more readily obtained from third parties.

8.    Responding Party objects to the following Requests for Admissions to the extent that they contain vague or ambiguous terms, as such Requests for Admissions are overbroad, unduly burdensome and harassing, and not reasonably calculated to lead to the discovery of admissible evidence.

9.    Responding Party objects to the following Requests for Admissions as premature as investigation and fact and expert discovery is ongoing in this action, and reserves the right to supplement all responses, pursuant to Rule 36, subsequent to the completion of discovery.

10.    Information provided in response to the Requests for Admissions are provided without waiver of, and with express reservation of: (a) all objections as to the competency, relevancy, materiality, and admissibility of such information and the subject matter thereof as evidence for any purpose in any further proceeding in this action, or in any other action: (b) the right to object to the use of such information, or the subject matter thereof, on any ground in any further proceeding in

31351286-v.1

this action. or in any other action; and (c) the right to object on any ground at any time to a demand or Requests for further responses to these Requests for Admissions or any other Requests or other discovery proceedings.

11. The Specific Responses below are based upon information reasonably available to Responding Party as of the date of this Response, after having made a diligent search. Responding Party reserves the right to supplement. revise, or correct any response pursuant to Fed. R. Civ. P. 26(e) during and subsequent to the completion of discovery. The Specific Responses are made without prejudice to Responding Party's right to present at trial, or in support or opposition to any dispositive motion, additional evidence or witnesses as they may be discovered or produced. Responding Party further reserves the right to challenge the competence, relevance, materiality, and admissibility at trial or any subsequent proceeding, of this or any other action, of any information or documents it provides in response to these Requests.

The foregoing General Objections are incorporated into the responses of each of the Requests for Admissions below as though set forth fully therein.

## SUPPLEMENTAL RESPONSES TO REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that you attended the April 20, 2023, hearing involving Plaintiffs.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 1:**

Admit.

**REQUEST FOR ADMISSION NO. 2:**

Admit that you informed Plaintiffs during the April 20, 2023. hearing that the hearing would be cancelled and rescheduled.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 2:**

Admit.

**REQUEST FOR ADMISSION NO. 3:**

Admit that you did not provide Plaintiffs with a written decision or explanation for the cancellation of the April 20, 2023, hearing.

//

4

DEFENDANT TANYA CRUZ'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE.

31351286-v.1

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 3:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Admitted.

**REQUEST FOR ADMISSION NO. 4:**

Admit that you were aware of and did not provide real-time transcription or text-based communication accommodations requested by Plaintiffs.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 4:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, Responding Party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding party does not recall if closed captioning was enabled for meetings and/or hearings conducted via Zoom.

**REQUEST FOR ADMISSION NO. 5:**

Admit that you did not ensure Plaintiffs had access to their case file before one or more scheduled hearings.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 5:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. Responding Party was not responsible for providing access to case files.

**REQUEST FOR ADMISSION NO. 6:**

Admit that you participated in internal SHRA discussions about Plaintiffs' hearing requests or accommodations between 2022 and 2023.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 6:**

Admit.

**REQUEST FOR ADMISSION NO. 7:**

Admit that you received or reviewed complaints, objections, or requests for clarification from Plaintiffs related to the April 20, 2023, hearing.

//

5

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 7:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, Responding Party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding Party does not recall receiving or reviewing any complaints.

**REQUEST FOR ADMISSION NO. 8:**

Admit that you stated or implied during the April 20, 2023, hearing that the cancellation decision was not subject to Plaintiffs' objection or further review.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 8:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, Responding Party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding Party does not recall whether she made such statement or implication. Plaintiff DAVID SAMUEL'S objection was noted and included in the Notification of Information Hearing Results.

Dated: May 30, 2025

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

By: _____
EDWARD P. GARSON
MONICA C. CASTILLO
CHANDNI B. MISTRY
Attorneys for Defendants

3135128645.1

Docusign Envelope ID: A222094E-18691-E09-AB1A-C6D9A987A4D6

# VERIFICATION

*Sydney Brooke, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
United States District Court Eastern District Of California
Court Case No. 2:22-cv-01699 TLN AC PS
WEMED File No.: 21727.00057

## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA

I have read the foregoing **DEFENDANT MARYLIZ PAULSON'S AMENDED RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSION, SET ONE** and know its contents.

## [X] CHECK APPLICABLE PARAGRAPH

[XX]   I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

[  ]   I am authorized on behalf of [CLIENT NAME] to make this verification for and on its behalf, and I make this verification for that reason.

[  ]   I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

[  ]   The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief and as to those matters I believe them to be true.

[  ]   I am one of the attorneys for _____, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on May 5/29/2025, 2025, at Fresno _____, California.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

DocuSigned by:

*MaryLiz Paulson*
31A6617049A1408

---

VERIFICATION

**PROOF OF SERVICE**

*Brooke Roberts, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
USDC, Eastern District of California, No. 2:22-cv-01699 TLN AC PS

I, the undersigned, am employed in the county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 655 Montgomery Street, Suite 900, San Francisco CA 94111.

On the date indicated below, I caused to be served the following document(s) described as follows:

**DEFENDANT TANYA CRUZ'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSION, SET ONE**

☐:    **PERSONAL SERVICE** - I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below, and providing them to a professional messenger service for service. (A confirmation by the messenger will be provided to our office after the documents have been delivered.)

☐:    **BY MAIL** - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐:    **OVERNIGHT MAIL** - As follows: I am "readily familiar" with the firm's practice of processing correspondence for mailing overnight via Federal Express. Under that practice it would be deposited in a Federal Express drop box, indicating overnight delivery, with delivery fees provided for, on that same day, at San Francisco, California.

☒:    **BY E-MAIL** - Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐:    **BY ELECTRONIC TRANSMISSION** – By causing the document(s) listed above to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

Executed on May 30, 2025, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

_____

Geraldine Touson

DEFENDANT TANYA CRUZ'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE

313512864v.1

## SERVICE LIST

| | |
|---|---|
| Sydney Brooke Roberts<br>David Tyrone Samuel<br>108 Rinetti Way<br>Rio Linda, CA  95673<br><br>home@possiblymaybe.com<br>davidsa@possiblymaybe.com<br>maddy@possiblymaybe.com<br><br>T: (512) 522-8571 | |

DEFENDANT TANYA CRUZ'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE

313512864v.1

Exhibit 44

EDWARD P. GARSON (SBN 96786)
Edward.Garson@WilsonElser.com
MONICA C. CASTILLO (SBN 146154)
Monica.Castillo@WilsonElser.com
CHANDNI B. MISTRY (SBN 354088)
Chandni.Mistry@WilsonElser.com
**WILSON ELSER MOSKOWITZ**
**EDELMAN & DICKER LLP**
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone:    (415) 433-0990
Facsimile:    (415) 434-1370

Attorneys for Defendants SACRAMENTO
HOUSING AND REDEVELOPMENT AGENCY,
LA SHELLE DOZIER, MARYLIZ PAULSON,
TROY LYNCH, TANYA CRUZ, TAMEKA
JACKSON, LISA MACIAS, TIFFANY BROWN,
and IBRA HENLEY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL, <br><br> Plaintiffs, <br><br> v. <br><br> SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY, et al., <br><br> Defendants. | No.: 2:22-cv-01699 TLN AC PS <br><br> **DEFENDANT TIFFANY BROWN'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE** <br><br> **[FED. R. CIV. P. 26(A)(1)]** <br><br> Honorable Allison Claire |

PROPOUNDING PARTY:      Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL

RESPONDING PARTY:      Defendant, TIFFANY BROWN

SET NO.:      One (1)

//

//

//

3135561??v.1

Exhibit 44-2

Defendant, TIFFANY BROWN, by and through her attorneys of record, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, hereby provides her Supplemental Responses to Requests for Admissions, Set One, propounded by Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL, as follows:

## PRELIMINARY STATEMENT

Responding Party has not completed his investigation or discovery in this action. This response is based on Responding Party's knowledge, information and belief at this time, and is complete to the best of his present knowledge and understanding. Responding Party reserves the right to refer to, to conduct discovery with reference to, and/or to offer into evidence at the time of trial any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents, and things in this response. Responding Party assumes no obligation to voluntarily supplement or amend this response to reflect facts, evidence, or other information discovered following service of this response. Nevertheless, this response is given without prejudice to subsequent revision or supplementation based upon facts, evidence, and other information, which hereafter may be discovered.

## GENERAL OBJECTIONS

The following General Objections are applicable to and incorporated into each response. The assertion of the same, similar, or additional objections in any specific response does not waive Responding Party's general objections as set forth below:

1.     Responding Party objects to the following Requests for Admission to the extent that any of them seek information protected from disclosure by the attorney-client privilege, the work product doctrine, patient-psychiatrist privilege, and/or any other applicable privilege or protection. Responding Party intends to and does claim privilege with respect to all such information and declines to provide any such information. Any inadvertent disclosure of privileged or protected information is not intended to be, and should not be deemed, a waiver of any privilege or protection from disclosure.

2.     Responding Party objects to the following Requests for Admissions to the extent that they seek to impose obligations or burdens that exceed those imposed by the Federal Rules of Civil

Exhibit 44-3

Procedure.

3.      Responding Party objects to the following Requests for Admissions to the extent that they seek confidential information and/or private information of third parties. Such information will be provided only pursuant to the terms of an appropriate protective order and/or with the written consent of such third parties.

4.      Responding Party objects to the following Requests for Admissions to the extent that they seek information prohibited and/or restricted from disclosure by agreement, law or regulation.

5.      Responding Party objects to the following Requests for Admissions to the extent that they seek information outside the possession, control, or custody of Responding Party.

6.      Responding Party objects to the following Requests for Admissions to the extent that they seek information and/or documents irrelevant to the dispute at issue in this lawsuit and unlikely to lead to the discovery of admissible evidence.

7.      Responding Party objects to the following Requests for Admissions to the extent that they are overbroad, unduly burdensome and harassing, and to the extent that they seek documents and information that are equally available to Propounding Party, publicly available, and/or that are more properly and more readily obtained from third parties.

8.      Responding Party objects to the following Requests for Admissions to the extent that they contain vague or ambiguous terms, as such Requests for Admissions are overbroad, unduly burdensome and harassing, and not reasonably calculated to lead to the discovery of admissible evidence.

9.      Responding Party objects to the following Requests for Admissions as premature as investigation and fact and expert discovery is ongoing in this action, and reserves the right to supplement all responses, pursuant to Rule 36, subsequent to the completion of discovery.

10.     Information provided in response to the Requests for Admissions are provided without waiver of, and with express reservation of: (a) all objections as to the competency, relevancy, materiality, and admissibility of such information and the subject matter thereof as evidence for any purpose in any further proceeding in this action, or in any other action; (b) the right to object to the use of such information, or the subject matter thereof, on any ground in any further proceeding in

3

313596177v.1

Exhibit 44-4

this action. or in any other action: and (c) the right to object on any ground at any time to a demand or Requests for further responses to these Requests for Admissions or any other Requests or other discovery proceedings.

11.    The Specific Responses below are based upon information reasonably available to Responding Party as of the date of this Response, after having made a diligent search. Responding Party reserves the right to supplement. revise, or correct any response pursuant to Fed. R. Civ. P. 26(e) during and subsequent to the completion of discovery. The Specific Responses are made without prejudice to Responding Party's right to present at trial, or in support or opposition to any dispositive motion. additional evidence or witnesses as they may be discovered or produced. Responding Party further reserves the right to challenge the competence, relevance, materiality, and admissibility at trial or any subsequent proceeding, of this or any other action, of any information or documents it provides in response to these Requests.

The foregoing General Objections are incorporated into the responses of each of the Requests for Admissions below as though set forth fully therein.

### SUPPLEMENTAL RESPONSES TO REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit that you received one or more documents or messages from or concerning Plaintiffs between March and June 2022.

### SUPPLEMENTAL RESPONSE TO REQUEST NO. 1:

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, Responding Party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding party does not recall whether she received one or more documents or messages from or concerning Plaintiffs.

### REQUEST FOR ADMISSION NO. 2:

Admit that you did not personally notify Plaintiffs or their representative that the documents had been received.

//

313556377v.1

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 2:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Admitted in part and Denied in part. SHRA does not have a policy or procedure for confirmation receipt of documents upon submission. If Plaintiffs or their representative had called SHRA to confirm receipt of documents submitted, staff could do so verbally.

**REQUEST FOR ADMISSION NO. 3:**

Admit that you did not follow up with SHRA supervisory staff to ensure that Plaintiffs' RA request was being reviewed.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 3:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Admitted in part and Denied in part. SHRA does not have a policy or procedure that required Responding Party to follow up with SHRA supervisory staff to ensure Reasonable Accommodation requests were being reviewed. If Plaintiffs or their representative had called SHRA to follow up on the status of the request for Reasonable Accommodation, staff could provide this information verbally.

**REQUEST FOR ADMISSION NO. 4:**

Admit that you took no action to confirm that Plaintiffs' RA request had been forwarded to the appropriate party.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 4:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Admitted in part and Denied in part. SHRA does not have a policy or procedure that required Responding Party to confirm the request for Reasonable Accommodation had been forwarded to the appropriate party. If Plaintiffs or their representative had called SHRA to follow up on the status of the request for Reasonable Accommodation, staff could provide this information verbally.

**REQUEST FOR ADMISSION NO. 5:**

Admit that your failure to confirm or log the receipt of Plaintiffs' documents contributed to

5

delays in their accommodation review.

## SUPPLEMENTAL RESPONSE TO REQUEST NO. 5:

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. Responding Party did not fail to log the receipt of Plaintiffs' documents or fail to confirm receipt upon inquiry by Plaintiffs or their representative.

Dated: May 30, 2025

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

By: _____

EDWARD P. GARSON
MONICA C. CASTILLO
CHANDNI B. MISTRY
Attorneys for Defendants

DEFENDANT TIFFANY BROWN'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE

3135561775.1

# VERIFICATION

*Sydney Brooke, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
United States District Court Eastern District Of California
Court Case No. 2:22-cv-01699 TLN AC PS
WEMED File No.: 21727.00057

## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA

I have read the foregoing **DEFENDANT TIFFANY BROWN'S AMENDED RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSION, SET ONE** and know its contents.

## [X] CHECK APPLICABLE PARAGRAPH

[XX]   I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

[   ]   I am authorized on behalf of [CLIENT NAME] to make this verification for and on its behalf, and I make this verification for that reason.

[   ]   I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

[   ]   The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief and as to those matters I believe them to be true.

[   ]   I am one of the attorneys for _____, a party to this action.  Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason.  I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on May 5/29/2025, 2025, at _____Sacramento_____, California.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Signed by:
198D520E9C88475

1

VERIFICATION

## PROOF OF SERVICE

*Brooke Roberts, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
USDC, Eastern District of California, No. 2:22-cv-01699 TLN AC PS

I, the undersigned, am employed in the county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 655 Montgomery Street, Suite 900, San Francisco CA 94111.

On the date indicated below, I caused to be served the following document(s) described as follows:

**DEFENDANT TIFFANY BROWN'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE**

☐: **PERSONAL SERVICE** - I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below, and providing them to a professional messenger service for service. (A confirmation by the messenger will be provided to our office after the documents have been delivered.)

☐: **BY MAIL** - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐: **OVERNIGHT MAIL** - As follows: I am "readily familiar" with the firm's practice of processing correspondence for mailing overnight via Federal Express. Under that practice it would be deposited in a Federal Express drop box, indicating overnight delivery, with delivery fees provided for, on that same day, at San Francisco, California.

☒: **BY E-MAIL** - Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐: **BY ELECTRONIC TRANSMISSION** – By causing the document(s) listed above to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

Executed on May 30, 2025, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Geraldine Touson

7

313556177v.1

**Exhibit 44-9**

## SERVICE LIST

Sydney Brooke Roberts
David Tyrone Samuel
108 Rinetti Way
Rio Linda, CA 95673

home@possiblymaybe.com
davidsa@possiblymaybe.com
maddy@possiblymaybe.com

T: (512) 522-8571

DEFENDANT TIFFANY BROWN'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE

313556177v.1

Exhibit 45

EDWARD P. GARSON (SBN 96786)
Edward.Garson@WilsonElser.com
MONICA C. CASTILLO (SBN 146154)
Monica.Castillo@WilsonElser.com
CHANDNI B. MISTRY (SBN 354088)
Chandni.Mistry@WilsonElser.com
**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone:   (415) 433-0990
Facsimile:   (415) 434-1370

Attorneys for Defendants SACRAMENTO
HOUSING AND REDEVELOPMENT AGENCY,
LA SHELLE DOZIER, MARYLIZ PAULSON,
TORY LYNCH, TANYA CRUZ, TAMEKA
JACKSON, LISA MACIAS, TIFFANY BROWN,
and IBRA HENLEY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL, <br><br> Plaintiffs, <br><br> v. <br><br> SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY, et al., <br><br> Defendants. | No.: 2:22-cv-01699 TLN AC PS <br><br> **DEFENDANT LISA MACIAS' SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE** <br><br> **[FED. R. CIV. P. 26(A)(1)]** <br><br> Honorable Allison Claire |

PROPOUNDING PARTY:     Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL

RESPONDING PARTY:     Defendant, LISA MACIAS

SET NO.:     One (1)

//

//

//

313512858v.2

Defendant, LISA MACIAS, by and through her attorneys of record, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, hereby provides her Supplemental Responses to Requests for Admissions, Set One, propounded by Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL, as follows:

## PRELIMINARY STATEMENT

Responding Party has not completed his investigation or discovery in this action. This response is based on Responding Party's knowledge, information and belief at this time, and is complete to the best of his present knowledge and understanding. Responding Party reserves the right to refer to, to conduct discovery with reference to, and/or to offer into evidence at the time of trial any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents, and things in this response. Responding Party assumes no obligation to voluntarily supplement or amend this response to reflect facts, evidence, or other information discovered following service of this response. Nevertheless, this response is given without prejudice to subsequent revision or supplementation based upon facts, evidence, and other information, which hereafter may be discovered.

## GENERAL OBJECTIONS

The following General Objections are applicable to and incorporated into each response. The assertion of the same, similar, or additional objections in any specific response does not waive Responding Party's general objections as set forth below:

1. Responding Party objects to the following Requests for Admission to the extent that any of them seek information protected from disclosure by the attorney-client privilege, the work product doctrine, patient-psychiatrist privilege, and/or any other applicable privilege or protection. Responding Party intends to and does claim privilege with respect to all such information and declines to provide any such information. Any inadvertent disclosure of privileged or protected information is not intended to be, and should not be deemed, a waiver of any privilege or protection from disclosure.

2. Responding Party objects to the following Requests for Admissions to the extent that they seek to impose obligations or burdens that exceed those imposed by the Federal Rules of Civil

2

Procedure.

3.    Responding Party objects to the following Requests for Admissions to the extent that they seek confidential information and/or private information of third parties. Such information will be provided only pursuant to the terms of an appropriate protective order and/or with the written consent of such third parties.

4.    Responding Party objects to the following Requests for Admissions to the extent that they seek information prohibited and/or restricted from disclosure by agreement, law or regulation.

5.    Responding Party objects to the following Requests for Admissions to the extent that they seek information outside the possession, control, or custody of Responding Party.

6.    Responding Party objects to the following Requests for Admissions to the extent that they seek information and/or documents irrelevant to the dispute at issue in this lawsuit and unlikely to lead to the discovery of admissible evidence.

7.    Responding Party objects to the following Requests for Admissions to the extent that they are overbroad, unduly burdensome and harassing, and to the extent that they seek documents and information that are equally available to Propounding Party, publicly available, and/or that are more properly and more readily obtained from third parties.

8.    Responding Party objects to the following Requests for Admissions to the extent that they contain vague or ambiguous terms, as such Requests for Admissions are overbroad, unduly burdensome and harassing, and not reasonably calculated to lead to the discovery of admissible evidence.

9.    Responding Party objects to the following Requests for Admissions as premature as investigation and fact and expert discovery is ongoing in this action, and reserves the right to supplement all responses, pursuant to Rule 36, subsequent to the completion of discovery.

10.    Information provided in response to the Requests for Admissions are provided without waiver of, and with express reservation of: (a) all objections as to the competency, relevancy, materiality, and admissibility of such information and the subject matter thereof as evidence for any purpose in any further proceeding in this action, or in any other action; (b) the right to object to the use of such information, or the subject matter thereof, on any ground in any further proceeding in

3

313512858v.2

this action, or in any other action; and (c) the right to object on any ground at any time to a demand or Requests for further responses to these Requests for Admissions or any other Requests or other discovery proceedings.

11.    The Specific Responses below are based upon information reasonably available to Responding Party as of the date of this Response, after having made a diligent search. Responding Party reserves the right to supplement, revise, or correct any response pursuant to Fed. R. Civ. P. 26(e) during and subsequent to the completion of discovery. The Specific Responses are made without prejudice to Responding Party's right to present at trial, or in support or opposition to any dispositive motion, additional evidence or witnesses as they may be discovered or produced. Responding Party further reserves the right to challenge the competence, relevance, materiality, and admissibility at trial or any subsequent proceeding, of this or any other action, of any information or documents it provides in response to these Requests.

The foregoing General Objections are incorporated into the responses of each of the Requests for Admissions below as though set forth fully therein.

## SUPPLEMENTAL RESPONSES TO REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit that you were the SHRA point of contact for Ashley Valentine of Sacramento Self Help Housing concerning Plaintiffs' case in or around May 2022.

### SUPPLEMENTAL RESPONSE TO REQUEST NO. 1:

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, Responding Party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding Party does not recall whether she was the point of contact for Ashley Valentine of Sacramento Self Help Housing concerning Plaintiffs' case in or around May 2022.

### REQUEST FOR ADMISSION NO. 2:

Admit that you received one or more voicemail messages or email communications from Ashley Valentine in May 2022.

**4**

Exhibit 45-5

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 2:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Admitted.

**REQUEST FOR ADMISSION NO. 3:**

Admit that your voicemail inbox was full and unable to receive new messages at one or more times in May 2022.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 3:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. Responding Party states that it is unlikely that Responding Party's voicemail inbox was full as most of the messages received were via email.

**REQUEST FOR ADMISSION NO. 4:**

Admit that you did not return one or more calls or emails from Plaintiffs or their representative between April and June 2022.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 4:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Admitted in part and Denied in part. Due to the high volume of daily emails received, responding to each email was not possible. Instead, SHRA held bi-weekly Zoom meetings for Service Providers to get in touch with SHRA to follow up if they had not yet received a response to their email(s).

**REQUEST FOR ADMISSION NO. 5:**

Admit that you received at least one document submission or drop box notice from Plaintiffs or their representative during that period.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 5:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms and is vague as to time. Without waiving said objection, this Request for Admission is Denied. Responding Party would not have personally received documents from Plaintiffs or Plaintiffs' representative.

5

**Exhibit 45-6**

**REQUEST FOR ADMISSION NO. 6:**

Admit that you did not send a written acknowledgment or confirmation of receipt to Plaintiffs or their representative.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 6:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Admitted.

**REQUEST FOR ADMISSION NO. 7:**

Admit that your failure to respond contributed to delays in processing Plaintiffs' reasonable accommodation or housing paperwork in May or June 2022.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 7:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. Responding Party states Responding Party was not responsible for processing Plaintiffs' Reasonable Accommodation request.

Dated: May 30, 2025

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

By: _____

EDWARD P. GARSON
MONICA C. CASTILLO
CHANDNI B. MISTRY
Attorneys for Defendants

6

DocuSign Envelope ID: 3D8D75E0-F30B-4C94-8A75-C17C75E2D04D

# VERIFICATION

*Sydney Brooke, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
United States District Court Eastern District Of California
Court Case No. 2:22-cv-01699 TLN AC PS
WEMED File No.: 21727.00057

## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA

I have read the foregoing **DEFENDANT LISA MACIAS' AMENDED RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSION, SET ONE** and know its contents.

[X] CHECK APPLICABLE PARAGRAPH

[XX]   I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

[   ]   I am authorized on behalf of [CLIENT NAME] to make this verification for and on its behalf, and I make this verification for that reason.

[   ]   I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

[   ]   The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief and as to those matters I believe them to be true.

[   ]   I am one of the attorneys for _____, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on 5/30/2025 2025, at _____Sacramento_____, California.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Signed by:
*Lisa Macias*
C34J6A965B9C471

VERIFICATION

## PROOF OF SERVICE

*Brooke Roberts, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
USDC, Eastern District of California, No. 2:22-cv-01699 TLN AC PS

I, the undersigned, am employed in the county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 655 Montgomery Street, Suite 900, San Francisco CA 94111.

On the date indicated below, I caused to be served the following document(s) described as follows:

### DEFENDANT LISA MACIAS' SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE

☐: **PERSONAL SERVICE** - I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below, and providing them to a professional messenger service for service. (A confirmation by the messenger will be provided to our office after the documents have been delivered.)

☐: **BY MAIL** - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐: **OVERNIGHT MAIL** - As follows: I am "readily familiar" with the firm's practice of processing correspondence for mailing overnight via Federal Express. Under that practice it would be deposited in a Federal Express drop box, indicating overnight delivery, with delivery fees provided for, on that same day, at San Francisco, California.

☒: **BY E-MAIL** - Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐: **BY ELECTRONIC TRANSMISSION** – By causing the document(s) listed above to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

Executed on May 30, 2025, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

_____
Geraldine Touson

7

## SERVICE LIST

| | |
|---|---|
| Sydney Brooke Roberts<br>David Tyrone Samuel<br>108 Rinetti Way<br>Rio Linda, CA  95673<br><br>home@possiblymaybe.com<br>davidsa@possiblymaybe.com<br>maddy@possiblymaybe.com<br><br>T: (512) 522-8571 | |

DEFENDANT LISA MACIAS' SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION,
SET ONE

3135128858v 2

EDWARD P. GARSON (SBN 96786)
Edward.Garson@WilsonElser.com
MONICA C. CASTILLO (SBN 146154)
Monica.Castillo@WilsonElser.com
CHANDNI B. MISTRY (SBN 354088)
Chandni.Mistry@WilsonElser.com
**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone:      (415) 433-0990
Facsimile:      (415) 434-1370

Attorneys for Defendants SACRAMENTO
HOUSING AND REDEVELOPMENT AGENCY,
LA SHELLE DOZIER, MARYLIZ PAULSON,
TORY LYNCH, TANYA CRUZ, TAMEKA
JACKSON, LISA MACIAS, TIFFANY BROWN,
and IBRA HENLEY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL, <br><br> Plaintiffs, <br><br> v. <br><br> SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY, et al., <br><br> Defendants. | No.: 2:22-cv-01699 TLN AC PS <br><br> **DEFENDANT IBRA HENLEY'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSION, SET ONE** <br><br> **[FED. R. CIV. P. 26(A)(1)]** <br><br> Honorable Allison Claire |

PROPOUNDING PARTY:      Plaintiffs, SYDNEY  BROOKE  ROBERTS  and  DAVID
TYRONE SAMUEL

RESPONDING PARTY:      Defendant, IBRA HENLEY

SET NO.:      One (1)

//

//

//

//

DEFENDANT IBRA HENLEY'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S REQUEST FOR
ADMISSION, SET ONE

2135128930.1

Defendant, IBRA HENLY, by and through its attorneys of record, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, hereby provides her Supplemental Responses to Requests for Admissions, Set One, propounded by Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL, as follows:

## PRELIMINARY STATEMENT

Responding Party has not completed his investigation or discovery in this action. This response is based on Responding Party's knowledge, information and belief at this time, and is complete to the best of his present knowledge and understanding. Responding Party reserves the right to refer to, to conduct discovery with reference to, and/or to offer into evidence at the time of trial any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents, and things in this response. Responding Party assumes no obligation to voluntarily supplement or amend this response to reflect facts, evidence, or other information discovered following service of this response. Nevertheless, this response is given without prejudice to subsequent revision or supplementation based upon facts, evidence, and other information, which hereafter may be discovered.

## GENERAL OBJECTIONS

The following General Objections are applicable to and incorporated into each response. The assertion of the same, similar, or additional objections in any specific response does not waive Responding Party's general objections as set forth below:

1.    Responding Party objects to the following Requests for Admission to the extent that any of them seek information protected from disclosure by the attorney-client privilege, the work product doctrine, patient-psychiatrist privilege, and/or any other applicable privilege or protection. Responding Party intends to and does claim privilege with respect to all such information and declines to provide any such information. Any inadvertent disclosure of privileged or protected information is not intended to be, and should not be deemed, a waiver of any privilege or protection from disclosure.

2.    Responding Party objects to the following Requests for Admissions to the extent that they seek to impose obligations or burdens that exceed those imposed by the Federal Rules of Civil

2

Exhibit 46-3

Procedure.

3.      Responding Party objects to the following Requests for Admissions to the extent that they seek confidential information and/or private information of third parties. Such information will be provided only pursuant to the terms of an appropriate protective order and/or with the written consent of such third parties.

4.      Responding Party objects to the following Requests for Admissions to the extent that they seek information prohibited and/or restricted from disclosure by agreement, law or regulation.

5.      Responding Party objects to the following Requests for Admissions to the extent that they seek information outside the possession, control, or custody of Responding Party.

6.      Responding Party objects to the following Requests for Admissions to the extent that they seek information and/or documents irrelevant to the dispute at issue in this lawsuit and unlikely to lead to the discovery of admissible evidence.

7.      Responding Party objects to the following Requests for Admissions to the extent that they are overbroad, unduly burdensome and harassing, and to the extent that they seek documents and information that are equally available to Propounding Party, publicly available, and/or that are more properly and more readily obtained from third parties.

8.      Responding Party objects to the following Requests for Admissions to the extent that they contain vague or ambiguous terms, as such Requests for Admissions are overbroad, unduly burdensome and harassing, and not reasonably calculated to lead to the discovery of admissible evidence.

9.      Responding Party objects to the following Requests for Admissions as premature as investigation and fact and expert discovery is ongoing in this action, and reserves the right to supplement all responses, pursuant to Rule 36, subsequent to the completion of discovery.

10.      Information provided in response to the Requests for Admissions are provided without waiver of, and with express reservation of: (a) all objections as to the competency, relevancy, materiality, and admissibility of such information and the subject matter thereof as evidence for any purpose in any further proceeding in this action, or in any other action: (b) the right to object to the use of such information, or the subject matter thereof, on any ground in any further proceeding in

3

this action, or in any other action; and (c) the right to object on any ground at any time to a demand or Requests for further responses to these Requests for Admissions or any other Requests or other discovery proceedings.

11.      The Specific Responses below are based upon information reasonably available to Responding Party as of the date of this Response, after having made a diligent search. Responding Party reserves the right to supplement, revise, or correct any response pursuant to Fed. R. Civ. P. 26(e) during and subsequent to the completion of discovery. The Specific Responses are made without prejudice to Responding Party's right to present at trial, or in support or opposition of any dispositive motion, additional evidence or witnesses as they may be discovered or produced. Responding Party further reserves the right to challenge the competence, relevance, materiality, and admissibility at trial or any subsequent proceeding, of this or any other action, of any information or documents it provides in response to these Requests.

The foregoing General Objections are incorporated into the responses of each of the Requests for Admissions below as though set forth fully therein.

**AMENDED RESPONSES TO REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 1:**

Admit that you are responsible for coordinating or administering informal hearings for Housing Choice Voucher participants at SHRA.

**RESPONSE TO REQUEST NO. 1:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, Responding Party Admits in part and Denies in part because responding party coordinated the activities of the Reasonable Accommodation Compliance Committee but did not administer informal hearings.

**REQUEST FOR ADMISSION NO. 2:**

Admit that you personally reviewed or responded to at least one reasonable accommodation request submitted by Plaintiffs.

**RESPONSE TO REQUEST NO. 2:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms.

3135128930.1

Without waiving said objection, Responding Party Admits in part and Denies in part. Responding Party reviewed requests for Reasonable Accommodation for the sake of completeness before providing them to the Reasonable Accommodation Compliance Committee.

**REQUEST FOR ADMISSION NO. 3:**

Admit that you are not a licensed medical professional or social worker.

**RESPONSE TO REQUEST NO. 3:**

Admit.

**REQUEST FOR ADMISSION NO. 4:**

Admit that you have questioned the validity of Plaintiffs' disability or need for accommodation during SHRA's internal discussions.

**RESPONSE TO REQUEST NO. 4:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, Responding Party Admits in part and Denies in part. The request for Reasonable Accommodation was questioned for the sake of completeness as to the inclusion of proper documentation and clarity as to the information provided in said documentation.

**REQUEST FOR ADMISSION NO. 5:**

Admit that SHRA has not issued a written decision following one or more informal hearings or hearing requests submitted by Plaintiffs.

**RESPONSE TO REQUEST NO. 5:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. SHRA policy is to provide written decisions following each hearing.

**REQUEST FOR ADMISSION NO. 6:**

Admit that you did not provide Plaintiffs with advance access to their case file before one or more informal hearings.

**RESPONSE TO REQUEST NO. 6:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, Request for Admission is Denied. SHRA policy is to provide the

5

3135128930 1

hearing brief with exhibits to participants at the time the informal hearing is scheduled.

**REQUEST FOR ADMISSION NO. 7:**

Admit that you have previously made or been reported for making statements suggesting that voucher participants exaggerate or fabricate disability claims to obtain benefits.

**RESPONSE TO REQUEST NO. 7:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. Responding Party never shared her personal opinion of any disability and solely solicited information the Reasonable Accommodation Compliance Committee required to make a decision.

**REQUEST FOR ADMISSION NO. 8:**

Admit that you did not take steps to ensure that Plaintiffs' communication accommodation requests were implemented prior to a hearing or adverse action.

**RESPONSE TO REQUEST NO. 8:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. Meetings were conducted via Zoom and closed captioning was provided as a courtesy. Additionally, Plaintiffs did not complete all components of the request for Reasonable Accommodation, including providing support from their Health Care Professional, necessary to obtain a communication-related accommodation.

**REQUEST FOR ADMISSION NO. 9:**

Admit that SHRA did not consistently evaluate Plaintiffs' accommodation requests based on individualized assessment or HUD guidance.

**RESPONSE TO REQUEST NO. 9:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. The Reasonable Accommodation Compliance Committee consistently applied the Procedure for Processing Requests for Reasonable Accommodation of Disabilities across all individualized assessments it conducted.

**REQUEST FOR ADMISSION NO. 10:**

Admit that you acted on behalf of SHRA in a manner intended to advocate for denial of Plaintiffs' requested accommodation.

**RESPONSE TO REQUEST NO. 10:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. Responding Party's role related to Reasonable Accommodation requests was administrative only.

Dated: May 30, 2025

**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**

By:  *[signature]*

EDWARD P. GARSON
MONICA C. CASTILLO
CHANDNI B. MISTRY
Attorneys for Defendants

DEFENDANT IBRA HENLY'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSION, SET ONE

3135.2895v.1

# VERIFICATION

*Sydney Brooke, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
United States District Court Eastern District Of California
Court Case No. 2:22-cv-01699 TLN AC PS
WEMED File No.: 21727.00057

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA

I have read the foregoing **DEFENDANT IBRA HENLEY'S AMENDED RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSION, SET ONE** and know its contents.

## [X] CHECK APPLICABLE PARAGRAPH

[XX]   I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

[   ]   I am authorized on behalf of [CLIENT NAME] to make this verification for and on its behalf, and I make this verification for that reason.

[   ]   I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

[   ]   The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief and as to those matters I believe them to be true.

[   ]   I am one of the attorneys for _____, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on May 5/30/2025 ____, 2025, at _____ Sacramento _____, California.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

DocuSigned by:

Ibra Henley
DB8D21938889443

---

VERIFICATION

## PROOF OF SERVICE

*Brooke Roberts, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
USDC, Eastern District of California, No. 2:22-cv-01699 TLN AC PS

I, the undersigned, am employed in the county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 655 Montgomery Street, Suite 900, San Francisco CA 94111.

On the date indicated below, I caused to be served the following document(s) described as follows:

### DEFENDANT IBRA HENLY'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE

☐: **PERSONAL SERVICE** - I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below, and providing them to a professional messenger service for service. (A confirmation by the messenger will be provided to our office after the documents have been delivered.)

☐: **BY MAIL** - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐: **OVERNIGHT MAIL** - As follows: I am "readily familiar" with the firm's practice of processing correspondence for mailing overnight via Federal Express. Under that practice it would be deposited in a Federal Express drop box, indicating overnight delivery, with delivery fees provided for, on that same day, at San Francisco, California.

☐: **BY E-MAIL** - Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐: **BY ELECTRONIC TRANSMISSION** – By causing the document(s) listed above to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

Executed on May 30, 2025, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

_____
Geraldine Touson

8

DEFENDANT IBRA HENLY'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSION, SET ONE

31351289301

## SERVICE LIST

| | |
|---|---|
| Sydney Brooke Roberts<br>David Tyrone Samuel<br>108 Rinetti Way<br>Rio Linda, CA 95673<br><br>home@possiblymaybe.com<br>davidsa@possiblymaybe.com<br>maddy@possiblymaybe.com<br><br>T: (512) 522-8571 | |

DEFENDANT IBRA HENLY'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S REQUEST FOR
ADMISSION, SET ONE

213812893v.1

EDWARD P. GARSON (SBN 96786)
Edward.Garson@WilsonElser.com
MONICA C. CASTILLO (SBN 146154)
Monica.Castillo@WilsonElser.com
CHANDNI B. MISTRY (SBN 354088)
Chandni.Mistry@WilsonElser.com
**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone:    (415) 433-0990
Facsimile:    (415) 434-1370

Attorneys for Defendants SACRAMENTO
HOUSING AND REDEVELOPMENT AGENCY,
LA SHELLE DOZIER, MARYLIZ PAULSON,
TORY LYNCH, TANYA CRUZ, TAMEKA
JACKSON, LISA MACIAS, TIFFANY BROWN,
and IBRA HENLEY

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL, <br><br> Plaintiffs, <br><br> v. <br><br> SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY, et al., <br><br> Defendants. | No.: 2:22-cv-01699 TLN AC PS <br><br> **DEFENDANT IBRA HENLY'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET TWO** <br><br> **[FED. R. CIV. P. 26(A)(1)]** <br><br> Honorable Allison Claire |

PROPOUNDING PARTY:      Plaintiffs, SYDNEY   BROOKE   ROBERTS   and   DAVID

TYRONE SAMUEL

RESPONDING PARTY:      Defendant, IBRA HENLY

SET NO.:      Two (2)

//

//

//

31351288911

Defendant, IBRA HENLY, by and through their attorneys of record, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, hereby provides her Supplemental Responses to Requests for Admissions, Set Two, propounded by Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL, as follows:

## PRELIMINARY STATEMENT

Responding Party has not completed his investigation or discovery in this action. This response is based on Responding Party's knowledge, information and belief at this time, and is complete to the best of his present knowledge and understanding. Responding Party reserves the right to refer to, to conduct discovery with reference to, and/or to offer into evidence at the time of trial any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents, and things in this response. Responding Party assumes no obligation to voluntarily supplement or amend this response to reflect facts, evidence, or other information discovered following service of this response. Nevertheless, this response is given without prejudice to subsequent revision or supplementation based upon facts, evidence, and other information, which hereafter may be discovered.

## GENERAL OBJECTIONS

The following General Objections are applicable to and incorporated into each response. The assertion of the same, similar, or additional objections in any specific response does not waive Responding Party's general objections as set forth below:

1.      Responding Party objects to the following Requests for Admission to the extent that any of them seek information protected from disclosure by the attorney-client privilege, the work product doctrine, patient-psychiatrist privilege, and/or any other applicable privilege or protection. Responding Party intends to and does claim privilege with respect to all such information and declines to provide any such information. Any inadvertent disclosure of privileged or protected information is not intended to be, and should not be deemed, a waiver of any privilege or protection from disclosure.

2.      Responding Party objects to the following Requests for Admissions to the extent that they seek to impose obligations or burdens that exceed those imposed by the Federal Rules of Civil

3135128895.1

Procedure.

3.      Responding Party objects to the following Requests for Admissions to the extent that they seek confidential information and/or private information of third parties. Such information will be provided only pursuant to the terms of an appropriate protective order and/or with the written consent of such third parties.

4.      Responding Party objects to the following Requests for Admissions to the extent that they seek information prohibited and/or restricted from disclosure by agreement, law or regulation.

5.      Responding Party objects to the following Requests for Admissions to the extent that they seek information outside the possession, control, or custody of Responding Party.

6.      Responding Party objects to the following Requests for Admissions to the extent that they seek information and/or documents irrelevant to the dispute at issue in this lawsuit and unlikely to lead to the discovery of admissible evidence.

7.      Responding Party objects to the following Requests for Admissions to the extent that they are overbroad, unduly burdensome and harassing, and to the extent that they seek documents and information that are equally available to Propounding Party, publicly available, and/or that are more properly and more readily obtained from third parties.

8.      Responding Party objects to the following Requests for Admissions to the extent that they contain vague or ambiguous terms, as such Requests for Admissions are overbroad, unduly burdensome and harassing, and not reasonably calculated to lead to the discovery of admissible evidence.

9.      Responding Party objects to the following Requests for Admissions as premature as investigation and fact and expert discovery is ongoing in this action, and reserves the right to supplement all responses, pursuant to Rule 36, subsequent to the completion of discovery.

10.     Information provided in response to the Requests for Admissions are provided without waiver of, and with express reservation of: (a) all objections as to the competency, relevancy, materiality, and admissibility of such information and the subject matter thereof as evidence for any purpose in any further proceeding in this action, or in any other action; (b) the right to object to the use of such information, or the subject matter thereof, on any ground in any further proceeding in

3

31351288961

this action, or in any other action; and (c) the right to object on any ground at any time to a demand or Requests for further responses to these Requests for Admissions or any other Requests or other discovery proceedings.

11.     The Specific Responses below are based upon information reasonably available to Responding Party as of the date of this Response, after having made a diligent search. Responding Party reserves the right to supplement, revise. or correct any response pursuant to Fed. R. Civ. P. 26(e) during and subsequent to the completion of discovery. The Specific Responses are made without prejudice to Responding Party's right to present at trial, or in support or opposition of any dispositive motion, additional evidence or witnesses as they may be discovered or produced. Responding Party further reserves the right to challenge the competence, relevance, materiality, and admissibility at trial or any subsequent proceeding, of this or any other action, of any information or documents it provides in response to these Requests.

The foregoing General Objections are incorporated into the responses of each of the Requests for Admissions below as though set forth fully therein.

## AMENDED RESPONSES TO REQUESTS FOR ADMISSION

## REQUEST FOR ADMISSION NO. 11:

Admit that you were notified that Plaintiffs requested that all communication be provided in writing or by email as an effective communication accommodation.

## SUPPLEMENTAL RESPONSE TO REQUEST NO. 11:

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Admitted in part and Denied in part. Plaintiffs did not complete all components of the request for Reasonable Accommodation, including providing support from their Health Care Professional, necessary to obtain a communication-related accommodation.

## REQUEST FOR ADMISSION NO. 12:

Admit that you or SHRA provided verbal notice or left voice mail messages relating to adverse housing decisions despite Plaintiffs' repeated objections to this method of communication.

//

3135428895.1

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 12:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. All housing decisions are provided in writing.

**REQUEST FOR ADMISSION NO. 13:**

Admit that you did not personally ensure communication accommodations were in place for at least one hearing or adverse decision.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 13:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. Plaintiffs did not complete all components of the request for Reasonable Accommodation, including providing support from their Health Care Professional, necessary to obtain a communication-related accommodation.

**REQUEST FOR ADMISSION NO. 14:**

Admit that SHRA has no formal procedure for pre-hearing review of accommodation requests by a neutral party not involved in denial decisions.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 14:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. SHRA has a procedure for review of requests for Reasonable Accommodations for completeness and clarity by staff who have no decision-making power regarding the requests.

**REQUEST FOR ADMISSION NO. 15:**

Admit that your role in reviewing accommodation requests includes identifying reasons to deny nexus or documentation rather than neutrally evaluating whether the request is reasonable.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 15:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. Responding Party reviewed requests for Reasonable Accommodation for the sake of completeness as to the inclusion of proper documentation and clarity as to the information provided in said documentation before providing

5

3135128589v.1

them to the Reasonable Accommodation Compliance Committee.

**REQUEST FOR ADMISSION NO. 16:**

Admit that SHRA has not issued written findings for one or more of Plaintiffs' hearing requests.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 16:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. All housing decisions are provided in writing.

**REQUEST FOR ADMISSION NO. 17:**

Admit that SHRA's administrative procedures do not require case file access to be granted in advance of informal hearings.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 17:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. SHRA policy is to provide the hearing brief with exhibits to participants at the time the informal hearing is scheduled.

**REQUEST FOR ADMISSION NO. 18:**

Admit that you have received complaints from tenants, advocates, or other agencies alleging disability discrimination or failure to accommodate by SHRA staff.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 18:**

Responding Party objects to the Request to the extent that it is vague or ambiguous as to terms and time. Without denying the foregoing objection, this Request for Admission is Admitted.

Dated: May 30, 2025

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

By: _____
EDWARD P. GARSON
MONICA C. CASTILLO
CHANDNI B. MISTRY
Attorneys for Defendants

6

3135128890.1

# VERIFICATION

*Sydney Brooke, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
United States District Court Eastern District Of California
Court Case No. 2:22-cv-01699 TLN AC PS
WEMED File No.: 21727.00057

## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA

I have read the foregoing **DEFENDANT IBRA HENLEY'S AMENDED RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSION, SET TWO** and know its contents.

### [X] CHECK APPLICABLE PARAGRAPH

[XX] I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

[ ] I am authorized on behalf of [CLIENT NAME] to make this verification for and on its behalf, and I make this verification for that reason.

[ ] I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

[ ] The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief and as to those matters I believe them to be true.

[ ] I am one of the attorneys for _____, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on May 5/30/2025, 2025, at _____Sacramento_____, California.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

DocuSigned by:

*Ibra Henley*

_____

1

VERIFICATION

## PROOF OF SERVICE

*Brooke Roberts, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
USDC, Eastern District of California, No. 2:22-cv-01699 TLN AC PS

I, the undersigned, am employed in the county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 655 Montgomery Street, Suite 900, San Francisco CA 94111.

On the date indicated below, I caused to be served the following document(s) described as follows:

## DEFENDANT IBRA HENLY'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET TWO

☐: **PERSONAL SERVICE** - I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a professional messenger service for service. (A confirmation by the messenger will be provided to our office after the documents have been delivered.)

☐: **BY MAIL** - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐: **OVERNIGHT MAIL** - As follows: I am "readily familiar" with the firm's practice of processing correspondence for mailing overnight via Federal Express. Under that practice it would be deposited in a Federal Express drop box, indicating overnight delivery, with delivery fees provided for, on that same day, at San Francisco, California.

☐: **BY E-MAIL** - Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐: **BY ELECTRONIC TRANSMISSION** – By causing the document(s) listed above to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

Executed on May 30, 2025, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Geraldine Touson

DEFENDANT IBRA HENLY'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET TWO

3135128895.1

## SERVICE LIST

| | |
|---|---|
| Sydney Brooke Roberts<br>David Tyrone Samuel<br>108 Rinetti Way<br>Rio Linda, CA 95673<br><br>home@possiblymaybe.com<br>davidsa@possiblymaybe.com<br>maddy@possiblymaybe.com<br><br>T: (512) 522-8571 | |

DEFENDANT IBRA HENLY'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET TWO

3135128895.1

EDWARD P. GARSON (SBN 96786)
Edward.Garson@WilsonElser.com
MONICA C. CASTILLO (SBN 146154)
Monica.Castillo@WilsonElser.com
CHANDNI B. MISTRY (SBN 354088)
Chandni.Mistry@WilsonElser.com
**WILSON ELSER MOSKOWITZ**
**EDELMAN & DICKER LLP**
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone:    (415) 433-0990
Facsimile:    (415) 434-1370

Attorneys for Defendants SACRAMENTO
HOUSING AND REDEVELOPMENT AGENCY,
LA SHELLE DOZIER, MARYLIZ PAULSON,
TROY LYNCH, TANYA CRUZ, TAMEKA
JACKSON, LISA MACIAS, TIFFANY BROWN,
and IBRA HENLEY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL<br><br>Plaintiffs,<br><br>v.<br><br>SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY, et al.,<br><br>Defendants. | No.: 2:22-cv-01699 TLN AC PS<br><br>**DEFENDANT TROY LYNCH'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE**<br><br>**[FED. R. CIV. P. 26(A)(1)]**<br><br>Honorable Allison Claire |

PROPOUNDING PARTY:    Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID

TYRONE SAMUEL

RESPONDING PARTY:    Defendant, TROY LYNCH

SET NO.:    One (1)

8135.18885.2

Defendant, TROY LYNCH, by and through his attorneys of record, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, hereby provides his Supplemental Responses to Requests for Admissions, Set One, propounded by Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL, as follows:

## PRELIMINARY STATEMENT

Responding Party has not completed his investigation or discovery in this action. This response is based on Responding Party's knowledge, information and belief at this time, and is complete to the best of his present knowledge and understanding. Responding Party reserves the right to refer to, to conduct discovery with reference to, and/or to offer into evidence at the time of trial any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents, and things in this response. Responding Party assumes no obligation to voluntarily supplement or amend this response to reflect facts, evidence, or other information discovered following service of this response. Nevertheless, this response is given without prejudice to subsequent revision or supplementation based upon facts, evidence, and other information, which hereafter may be discovered.

## GENERAL OBJECTIONS

The following General Objections are applicable to and incorporated into each response. The assertion of the same, similar, or additional objections in any specific response does not waive Responding Party's general objections as set forth below:

1. Responding Party objects to the following Requests for Admission to the extent that any of them seek information protected from disclosure by the attorney-client privilege, the work product doctrine, patient-psychiatrist privilege, and/or any other applicable privilege or protection. Responding Party intends to and does claim privilege with respect to all such information and declines to provide any such information. Any inadvertent disclosure of privileged or protected information is not intended to be, and should not be deemed, a waiver of any privilege or protection from disclosure.

2. Responding Party objects to the following Requests for Admissions to the extent that they seek to impose obligations or burdens that exceed those imposed by the Federal Rules of Civil

2

Procedure.

3.    Responding Party objects to the following Requests for Admissions to the extent that they seek confidential information and/or private information of third parties. Such information will be provided only pursuant to the terms of an appropriate protective order and/or with the written consent of such third parties.

4.    Responding Party objects to the following Requests for Admissions to the extent that they seek information prohibited and/or restricted from disclosure by agreement, law or regulation.

5.    Responding Party objects to the following Requests for Admissions to the extent that they seek information outside the possession, control, or custody of Responding Party.

6.    Responding Party objects to the following Requests for Admissions to the extent that they seek information and/or documents irrelevant to the dispute at issue in this lawsuit and unlikely to lead to the discovery of admissible evidence.

7.    Responding Party objects to the following Requests for Admissions to the extent that they are overbroad, unduly burdensome and harassing, and to the extent that they seek documents and information that are equally available to Propounding Party, publicly available, and/or that are more properly and more readily obtained from third parties.

8.    Responding Party objects to the following Requests for Admissions to the extent that they contain vague or ambiguous terms, as such Requests for Admissions are overbroad, unduly burdensome and harassing, and not reasonably calculated to lead to the discovery of admissible evidence.

9.    Responding Party objects to the following Requests for Admissions as premature as investigation and fact and expert discovery is ongoing in this action, and reserves the right to supplement all responses, pursuant to Rule 36, subsequent to the completion of discovery.

10.    Information provided in response to the Requests for Admissions are provided without waiver of, and with express reservation of: (a) all objections as to the competency, relevancy, materiality, and admissibility of such information and the subject matter thereof as evidence for any purpose in any further proceeding in this action, or in any other action; (b) the right to object to the use of such information, or the subject matter thereof, on any ground in any further proceeding in

3

3135118889.2

this action, or in any other action; and (c) the right to object on any ground at any time to a demand or Requests for further responses to these Requests for Admissions or any other Requests or other discovery proceedings.

11.    The Specific Responses below are based upon information reasonably available to Responding Party as of the date of this Response, after having made a diligent search. Responding Party reserves the right to supplement, revise, or correct any response pursuant to Fed. R. Civ. P. 26(e) during and subsequent to the completion of discovery. The Specific Responses are made without prejudice to Responding Party's right to present at trial, or in support or opposition of any dispositive motion, additional evidence or witnesses as they may be discovered or produced. Responding Party further reserves the right to challenge the competence, relevance, materiality, and admissibility at trial or any subsequent proceeding, of this or any other action, of any information or documents it provides in response to these Requests.

The foregoing General Objections are incorporated into the responses of each of the Requests for Admissions below as though set forth fully therein.

## SUPPLEMENTAL RESPONSES TO REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that you were present at the June 2, 2023 hearing involving Plaintiffs.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 1:**

Admit.

**REQUEST FOR ADMISSION NO. 2:**

Admit that you supervised or provided training to Tanya Cruz with regard to SHRA informal hearing procedures in 2022 or 2023.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 2:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Denied. Responding Party was subordinate to Tanya Cruz in 2022 and 2023.

**REQUEST FOR ADMISSION NO. 3:**

Admit that you were aware of Plaintiffs' request for real-time captioning or transcription for

**4**

**Exhibit 48-5**

one or more hearings.

## SUPPLEMENTAL RESPONSE TO REQUEST NO. 3:

Admit.

## REQUEST FOR ADMISSION NO. 4:

Admit that SHRA did not issue a written decision following the September 12, 2022, hearing.

## SUPPLEMENTAL RESPONSE TO REQUEST NO. 4:

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, Responding Party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding Party only observed the September 12, 2022 hearing. Responding Party did not participate in the September 12, 2022 hearing or any subsequent decision related to the September 12, 2022 hearing.

## REQUEST FOR ADMISSION NO. 5:

Admit that SHRA did not issue a written decision following the June 2, 2023, hearing.

## SUPPLEMENTAL RESPONSE TO REQUEST NO. 5:

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, Responding Party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding Party only observed the June 2, 2023 hearing. Responding Party did not participate in the June 2, 2023 hearing or any subsequent decision related to the June 2, 2023 hearing.

## REQUEST FOR ADMISSION NO. 6:

Admit that you participated in or attended one or more SHRA Reasonable Accommodation Committee meetings between 2022 and 2023 where Plaintiffs' requests were discussed.

## SUPPLEMENTAL RESPONSE TO REQUEST NO. 6:

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Admitted in part and Denied in part. Responding Party only received communications related to SHRA Reasonable Accommodation Committee meetings between 2022 and 2023. To the extent the term "participate" is intended to

5

mean actively reviewing Reasonable Accommodation requests and drafting written decisions regarding the outcome of the Reasonable Accommodation requests, Responding party did not participate in SHRA Reasonable Accommodation Committee meetings between 2022 and 2023.

**REQUEST FOR ADMISSION NO. 7:**

Admit that you authored or received communications related to Plaintiffs' hearing access, accommodation requests, or complaints.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 7:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, this Request for Admission is Admitted in part and Denied in part, because Request. Responding Party only received communications related to Plaintiffs' hearing access, accommodation requests, or complaints. Responding party did not author communications related to Plaintiffs' hearing access, accommodation requests, or complaints.

**REQUEST FOR ADMISSION NO. 8:**

Admit that you did not provide Plaintiffs access to their case file prior to one or more scheduled hearings.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 8:**

Responding Party objects to this Request to the extent it contains vague or ambiguous terms. Without waiving said objection, Responding Party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request. Responding Party only observed hearings related to Plaintiffs and did not directly participate in said hearings.

Dated: May 30, 2025

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

By: _____

EDWARD P. GARSON
MONICA C. CASTILLO
CHANDNI B. MISTRY
Attorneys for Defendants

DEFENDANT TROY LYNCH'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE

3135118882 2

DocuSign Envelope ID: B7A64FB5-1507-4B36-9EBB-11F2DF9E713D

# VERIFICATION

*Sydney Brooke, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
United States District Court Eastern District Of California
Court Case No. 2:22-cv-01699 TLN AC PS
WEMED File No.: 21727.00057

## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA

I have read the foregoing **DEFENDANT TROY LYNCH'S AMENDED RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSION, SET ONE** and know its contents.

[X] CHECK APPLICABLE PARAGRAPH

[XX]   I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

[ ]   I am authorized on behalf of [CLIENT NAME] to make this verification for and on its behalf, and I make this verification for that reason.

[ ]   I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

[ ]   The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief and as to those matters I believe them to be true.

[ ]   I am one of the attorneys for _____, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on May 29, 2025, at Sacramento, California.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

DocuSigned by:
*Troy Lynch*
B35E16A2523A478

I

VERIFICATION

## PROOF OF SERVICE

*Brooke Roberts, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
USDC, Eastern District of California, No. 2:22-cv-01699 TLN AC PS

I, the undersigned, am employed in the county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 655 Montgomery Street, Suite 900, San Francisco CA 94111.

On the date indicated below, I caused to be served the following document(s) described as follows:

### DEFENDANT TROY LYNCH'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE

☐: **PERSONAL SERVICE** - I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below, and providing them to a professional messenger service for service. (A confirmation by the messenger will be provided to our office after the documents have been delivered.)

☐: **BY MAIL** - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐: **OVERNIGHT MAIL** - As follows: I am "readily familiar" with the firm's practice of processing correspondence for mailing overnight via Federal Express. Under that practice it would be deposited in a Federal Express drop box, indicating overnight delivery, with delivery fees provided for, on that same day, at San Francisco, California.

☒: **BY E-MAIL** - Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐: **BY ELECTRONIC TRANSMISSION** – By causing the document(s) listed above to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

Executed on May 30, 2025, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Geraldine Touson

DEFENDANT TROY LYNCH'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET ONE

## SERVICE LIST

| | |
|---|---|
| Sydney Brooke Roberts<br>David Tyrone Samuel<br>108 Rinetti Way<br>Rio Linda, CA 95673<br><br>home@possiblymaybe.com<br>davidsa@possiblymaybe.com<br>maddy@possiblymaybe.com<br><br>T: (512) 522-8571 | |

9

DEFENDANT TROY LYNCH'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR
ADMISSION, SET ONE

21551 1888v.2

EDWARD P. GARSON (SBN 96786)
Edward.Garson@WilsonElser.com
MONICA C. CASTILLO (SBN 146154)
Monica.Castillo@WilsonElser.com
CHANDNI B. MISTRY (SBN 354088)
Chandni.Mistry@WilsonElser.com
**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone:    (415) 433-0990
Facsimile:    (415) 434-1370

Attorneys for Defendants SACRAMENTO
HOUSING AND REDEVELOPMENT AGENCY,
LA SHELLE DOZIER, MARYLIZ PAULSON,
TORY LYNCH, TANYA CRUZ, TAMEKA
JACKSON, LISA MACIAS, TIFFANY BROWN,
and IBRA HENLY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL<br><br>Plaintiffs,<br><br>v.<br><br>SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY, et al.,<br><br>Defendants. | No.: 2:22-cv-01699 TLN AC PS<br><br>**DEFENDANT SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY'S RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET THREE [FED. R. CIV. P. 26(A)(1)]**<br><br>Honorable Allison Claire |

PROPOUNDING PARTY:    Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL

RESPONDING PARTY:    Defendant, SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY

SET NO.:    Three (3)

1

---

DEFENDANT SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY'S RESPONSES TO
PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET THREE

Defendant, SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY, by and through its attorneys of record, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, hereby provides its Responses to Requests for Production, Set Three, propounded by Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL, as follows:

## PRELIMINARY STATEMENT

Responding Party has not yet completed its investigation of the facts relating to this action, has not yet completed its discovery in this action, and has not yet completed its preparation for trial. All of the responses contained herein are based only upon such information and documents which are presently available to it. It is anticipated that further discovery, independent investigations, legal research and analysis will supply additional facts, add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions, changes and variations from the contentions and responses set forth herein. The following responses are given without prejudice to Responding Party's right to produce evidence of any subsequently discovered fact or facts which Responding Party may later develop or recall. The responses contained herein were prepared with the assistance of counsel and are made in a good faith effort to supply as much factual information as is presently known, but should in no way be to the prejudice of Responding Party in relation to further discovery, research, analysis or production of evidence.

Furthermore, to the extent that the documents produced include personally identifiable information of third parties, this information will be redacted accordingly.

## GENERAL OBJECTIONS AND RESERVATIONS

Each response and objection provided by responding party in response to propounding party's discovery requests herein is subject to the following General Objections and Reservations, which are incorporated into each of the responses set forth hereinafter:

1.    Responding Party objects to Propounding Party's discovery requests to the extent they call for information which is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or other applicable privileges, including documents prepared in anticipation of litigation. Such information will not be provided.

2.    Responding Party objects to Propounding Party's discovery requests to the extent

2

they call for responses containing privileged, proprietary and/or confidential business information or trade secrets. Such information will not be provided.

3.    Responding Party objects to Propounding Party's discovery requests to the extent they call for responses or information violative of any constitutional, statutory or common law privacy rights of Responding Party, any current or former employee of Responding Party, or any other persons. Such information will not be provided.

4.    Responding Party objects to Propounding Party's discovery requests on the bases that they are not reasonably limited in time, are overboard, vague, ambiguous and unintelligible.

5.    Responding Party objects to Propounding Party's discovery requests to the extent they seek information or documents already in the possession, custody or control of Propounding Party, or are as easily accessible to Propounding Party as to Responding Party.

6.    Responding Party objects to Propounding Party's discovery requests on the basis that they are violative of Federal Rules of Civil Procedure, Rule 34.

7.    As used herein, all objections as to relevancy shall mean that the information requested is neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

8.    Nothing herein shall be construed as an admission by responding party as respects the admissibility or relevance of any fact or document.

9.    Pursuant to Federal Rule of Civil Procedure, Rule 26(e), Defendants fully reserve the right to amend, supplement, or otherwise modify these disclosures should different, contrary, or additional information become available.

This preliminary statement and general objections are incorporated into each of the responses set forth below:

## RESPONSES TO REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All communications, emails, notes, or documents between SHRA staff and Sacramento Self Help Housing (SSHH) or its employees, including Ashley Valentine, from January 1, 2022 through December 31, 2024.

**RESPONSE TO REQUEST NO. 1:**

Responding Party objects to this request to the extent it is overbroad in scope, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Responding Party will limit this request to those documents regarding and relating to Plaintiffs from January 1, 2022 through December 31, 2024. Without waiving said objections, Responding Party responds as follows: To the extent that Responsive Party has any documents responsive to this Request that are in its possession, custody, or control, Responding Party will comply with this Request.

**REQUEST FOR PRODUCTION NO. 2:**

All contracts, memoranda of understanding (MOUs), funding agreements, or partnership documents between SHRA and Sacramento County relating to the Flexible Supportive Rehousing Program (FSRP), Permanent Rehousing Transition Services (PRTS), or any related supportive housing programs from 2016 to the present.

**RESPONSE TO REQUEST NO. 2:**

Responding Party objects to this request to the extent it is overbroad in scope, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections, Responding Party responds as follows: Responding Party will comply with this Request and produce documents responsive to this Request that are in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 3:**

All internal communications, meeting notes, or memoranda discussing Sacramento Self Help Housing's role in housing navigation, voucher processing, reasonable accommodation support, or case management services.

**RESPONSE TO REQUEST NO. 3:**

Responding Party objects to this request to the extent it is overbroad in scope, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Responding Party will limit this request to those documents regarding and relating to Plaintiffs. Without waiving said objections, Responding Party responds as follows: To the extent that Responsive Party has any documents responsive to this Request that are in its possession, custody, or control, Responding Party will comply with this Request.

4

**REQUEST FOR PRODUCTION NO. 4:**

All documents discussing the shutdown, transition, reallocation of clients, or service discontinuation related to Sacramento Self Help Housing from January 1, 2016 through December 31, 2024.

**RESPONSE TO REQUEST NO. 4:**

Responding Party objects to this request to the extent it is overbroad in scope, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Responding Party will limit this request to those documents regarding and relating to Plaintiffs. Without waiving said objections, Responding Party responds as follows: To the extent that Responsive Party has any documents responsive to this Request that are in its possession, custody, or control, Responding Party will comply with this Request.

**REQUEST FOR PRODUCTION NO. 5:**

All communications, emails, reports, meeting notes, or memoranda involving SHRA staff that reference the Permanent Rehousing Transition Services (PRTS) program, including any interagency coordination meetings with Sacramento County or County-affiliated behavioral health providers.

**RESPONSE TO REQUEST NO. 5:**

Responding Party objects to this request to the extent it is overbroad in scope, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Responding Party will limit this request to those documents regarding and relating to Plaintiffs. Without waiving said objections, Responding Party responds as follows: To the extent that Responsive Party has any documents responsive to this Request that are in its possession, custody, or control, Responding Party will comply with this Request.

**REQUEST FOR PRODUCTION NO. 6:**

All internal SHRA documents or communications identifying SHRA's role or obligations in relation to the FSRP or PRTS programs, including references to voucher approvals, participant referrals, or service integration.

DEFENDANT SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY'S RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET THREE

## RESPONSE TO REQUEST NO. 6:

Responding Party objects to this request to the extent it is overbroad in scope, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Responding Party will limit this request to those documents regarding and relating to Plaintiffs. Without waiving said objections. Responding Party responds as follows: To the extent that Responsive Party has any documents responsive to this Request that are in its possession, custody, or control. Responding Party will comply with this Request.

Dated: May 30, 2025

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

By: _Monica Castillo_

EDWARD P. GARSON
MONICA C. CASTILLO
CHANDNI B. MISTRY
Attorneys for Defendants

DEFENDANT SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY'S RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET THREE

## PROOF OF SERVICE

*Brooke Roberts, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
USDC, Eastern District of California, No. 2:22-cv-01699 TLN AC PS

I, the undersigned, am employed in the county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 655 Montgomery Street, Suite 900, San Francisco CA 94111.

On the date indicated below, I caused to be served the following document(s) described as follows:

## DEFENDANT SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY'S RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET THREE

☐:     **PERSONAL SERVICE** - I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below, and providing them to a professional messenger service for service. (A confirmation by the messenger will be provided to our office after the documents have been delivered.)

☐:     **BY MAIL** - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐:     **OVERNIGHT MAIL** - As follows: I am "readily familiar" with the firm's practice of processing correspondence for mailing overnight via Federal Express. Under that practice it would be deposited in a Federal Express drop box, indicating overnight delivery, with delivery fees provided for, on that same day, at San Francisco, California.

☐:     **BY E-MAIL** - Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐:     **BY ELECTRONIC TRANSMISSION** – By causing the document(s) listed above to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

Executed on May 30, 2025, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

Geraldine Touson

7

## SERVICE LIST

| | |
|---|---|
| Sydney Brooke Roberts<br>David Tyrone Samuel<br>108 Rinetti Way<br>Rio Linda, CA 95673<br><br>home@possiblymaybe.com<br>davidsa@possiblymaybe.com<br>maddy@possiblymaybe.com<br><br>T: (512) 522-8571 | |

DEFENDANT SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY'S RESPONSES TO
PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET THREE

EDWARD P. GARSON (SBN 96786)
Edward.Garson@WilsonElser.com
MONICA C. CASTILLO (SBN 146154)
Monica.Castillo@WilsonElser.com
CHANDNI B. MISTRY (SBN 354088)
Chandni.Mistry@WilsonElser.com
**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone:    (415) 433-0990
Facsimile:    (415) 434-1370

Attorneys for Defendants SACRAMENTO
HOUSING AND REDEVELOPMENT AGENCY,
LA SHELLE DOZIER, MARYLIZ PAULSON,
TORY LYNCH, TANYA CRUZ, TAMEKA
JACKSON, LISA MACIAS, TIFFANY BROWN,
and IBRA HENLY

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL<br><br>Plaintiffs,<br><br>v.<br><br>SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY, et al.,<br><br>Defendants. | No.: 2:22-cv-01699 TLN AC PS<br><br>**DEFENDANT SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY'S RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSION, SET FOUR**<br><br>**[FED. R. CIV. P. 26(A)(1)]**<br><br>Honorable Allison Claire |

PROPOUNDING PARTY:     Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL

RESPONDING PARTY:     Defendant, SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY

SET NO.:     Four (4)

//

//

1

Defendant, SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY, by and through its attorneys of record, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, hereby provides its Responses to Requests for Production, Set Four, propounded by Plaintiffs, SYDNEY BROOKE ROBERTS and DAVID TYRONE SAMUEL, as follows:

## PRELIMINARY STATEMENT

Responding Party has not yet completed its investigation of the facts relating to this action, has not yet completed its discovery in this action, and has not yet completed its preparation for trial. All of the responses contained herein are based only upon such information and documents which are presently available to it. It is anticipated that further discovery, independent investigations, legal research and analysis will supply additional facts, add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions, changes and variations from the contentions and responses set forth herein. The following responses are given without prejudice to Responding Party's right to produce evidence of any subsequently discovered fact or facts which Responding Party may later develop or recall. The responses contained herein were prepared with the assistance of counsel and are made in a good faith effort to supply as much factual information as is presently known, but should in no way be to the prejudice of Responding Party in relation to further discovery, research, analysis or production of evidence.

Furthermore, to the extent that the documents produced include personally identifiable information of third parties, this information will be redacted accordingly.

## GENERAL OBJECTIONS AND RESERVATIONS

Each response and objection provided by responding party in response to propounding party's discovery requests herein is subject to the following General Objections and Reservations, which are incorporated into each of the responses set forth hereinafter:

1.    Responding Party objects to Propounding Party's discovery requests to the extent they call for information which is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or other applicable privileges, including documents prepared in anticipation of litigation. Such information will not be provided.

2.    Responding Party objects to Propounding Party's discovery requests to the extent

DEFENDANT SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY'S RESPONSES TO
PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET FOUR

they call for responses containing privileged, proprietary and/or confidential business information or trade secrets. Such information will not be provided.

3.    Responding Party objects to Propounding Party's discovery requests to the extent they call for responses or information violative of any constitutional, statutory or common law privacy rights of Responding Party, any current or former employee of Responding Party, or any other persons. Such information will not be provided.

4.    Responding Party objects to Propounding Party's discovery requests on the bases that they are not reasonably limited in time, are overboard, vague, ambiguous and unintelligible.

5.    Responding Party objects to Propounding Party's discovery requests to the extent they seek information or documents already in the possession, custody or control of Propounding Party, or are as easily accessible to Propounding Party as to Responding Party.

6.    Responding Party objects to Propounding Party's discovery requests on the basis that they are violative of Federal Rules of Civil Procedure, Rule 34.

7.    As used herein, all objections as to relevancy shall mean that the information requested is neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

8.    Nothing herein shall be construed as an admission by responding party as respects the admissibility or relevance of any fact or document.

9.    Pursuant to Federal Rule of Civil Procedure, Rule 26(e), Defendants fully reserve the right to amend, supplement, or otherwise modify these disclosures should different, contrary, or additional information become available.

This preliminary statement and general objections are incorporated into each of the responses set forth below:

## RESPONSES TO REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All documents, meeting agendas, meeting notes, minutes, summaries, memoranda, or action item lists created or maintained by SHRA reflecting or referring to meetings between SHRA staff and representatives of Consumers Self Help Center, Sustainable Wellness Solutions, or peer

3

advocate organizations from January 1, 2023 through May 31, 2024.

**RESPONSE TO REQUEST NO. 1:**

Responding Party objects to this request to the extent it is overbroad in scope, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Responding Party will limit this request to those documents regarding and relating to Plaintiffs. Responding Party objects to this request to the extent it is vague, overbroad, ambiguous, and unintelligible as to the term "peer advocate organizations." Without waiving said objections, Responding Party responds as follows: To the extent that Responsive Party has any documents responsive to this Request that are in its possession, custody, or control, Responding Party will comply with this Request.

**REQUEST FOR PRODUCTION NO. 2:**

All attendance sheets, sign-in logs, scheduling notices, or internal communications identifying participants, locations, or purposes of meetings held between SHRA staff and representatives of Consumers Self Help Center, Sustainable Wellness Solutions, or peer advocate organizations between January 1, 2023 and May 31, 2024.

**RESPONSE TO REQUEST NO. 2:**

Responding Party objects to this request to the extent it is overbroad in scope, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Responding Party will limit this request to those documents regarding and relating to Plaintiffs. Responding Party objects to this request to the extent it is vague, overbroad, ambiguous, and unintelligible as to the term "peer advocate organizations." Without waiving said objections, Responding Party responds as follows: To the extent that Responsive Party has any documents responsive to this Request that are in its possession, custody, or control, Responding Party will comply with this Request.

**REQUEST FOR PRODUCTION NO. 3:**

All internal emails, memoranda, or reports summarizing issues discussed, outcomes, or follow-up actions from meetings held between SHRA staff and representatives of Consumers Self Help Center, Sustainable Wellness Solutions, or peer advocate organizations from January 1, 2023 through May 31, 2024.

DEFENDANT SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY'S RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET FOUR

**RESPONSE TO REQUEST NO. 3:**

Responding Party objects to this request to the extent it is overbroad in scope, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Responding Party will limit this request to those documents regarding and relating to Plaintiffs. Responding Party objects to this request to the extent it is vague, overbroad, ambiguous, and unintelligible as to the term "peer advocate organizations." Without waiving said objections, Responding Party responds as follows: To the extent that Responsive Party has any documents responsive to this Request that are in its possession, custody, or control, Responding Party will comply with this Request.

**REQUEST FOR PRODUCTION NO. 4:**

All documents identifying the SHRA staff members responsible for attending, coordinating, or reporting on meetings involving Consumers Self Help Center, Sustainable Wellness Solutions, or peer advocate organizations between January 1, 2023 and May 31, 2024.

**RESPONSE TO REQUEST NO. 4:**

Responding Party objects to this request to the extent it is overbroad in scope, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Responding Party will limit this request to those documents regarding and relating to Plaintiffs. Responding Party objects to this request to the extent it is vague, overbroad, ambiguous, and unintelligible as to the term "peer advocate organizations." Without waiving said objections, Responding Party responds as follows: To the extent that Responsive Party has any documents responsive to this Request that are in its possession, custody, or control, Responding Party will comply with this Request.

Dated: May 30, 2025

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

By: _____

EDWARD P. GARSON
MONICA C. CASTILLO
CHANDNI B. MISTRY
Attorneys for Defendants

DEFENDANT SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY'S RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET FOUR

## PROOF OF SERVICE

*Brooke Roberts, et al. v. Sacramento Housing and Redevelopment Agency, et al.*
USDC, Eastern District of California, No. 2:22-cv-01699 TLN AC PS

I, the undersigned, am employed in the county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 655 Montgomery Street, Suite 900, San Francisco CA 94111.

On the date indicated below, I caused to be served the following document(s) described as follows:

### DEFENDANT SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY'S RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET FOUR

☐: **PERSONAL SERVICE** - I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below, and providing them to a professional messenger service for service. (A confirmation by the messenger will be provided to our office after the documents have been delivered.)

☐: **BY MAIL** - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐: **OVERNIGHT MAIL** - As follows: I am "readily familiar" with the firm's practice of processing correspondence for mailing overnight via Federal Express. Under that practice it would be deposited in a Federal Express drop box, indicating overnight delivery, with delivery fees provided for, on that same day, at San Francisco, California.

☒: **BY E-MAIL** - Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐: **BY ELECTRONIC TRANSMISSION** – By causing the document(s) listed above to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

Executed on May 30, 2025, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California, that the above is true and correct.

_____

Geraldine Touson

## SERVICE LIST

| | |
|---|---|
| Sydney Brooke Roberts<br>David Tyrone Samuel<br>108 Rinetti Way<br>Rio Linda, CA 95673<br><br>home@possiblymaybe.com<br>davidsa@possiblymaybe.com<br>maddly@possiblymaybe.com<br><br>T: (512) 522-8571 | |

DEFENDANT SACRAMENTO HOUSING AND REDEVELOPMENT AGENCY'S RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET FOUR