UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SYDNEY BROOKE ROBERTS and
DAVID TYRONE SAMUEL,

Plaintiffs,

v.

SACRAMENTO HOUSING AND
REDEVELOPMENT AGENCY, et al.,

Defendants.

No.  2:22-cv-1699 DJC AC PS

FINDINGS AND RECOMMENDATIONS

Plaintiffs are proceeding in pro se, and the case was accordingly referred to the undersigned for pretrial matters by E.D. Cal. R. ("Local Rule") 302(c)(21).  Before the court is defendants' motion for summary judgment.  ECF No. 146.  Plaintiffs oppose the motion.  ECF No. 152.  Defendants submitted a reply with additional exhibits.  ECF No. 153.  Plaintiffs filed a surreply opposing defendants' inclusion of new exhibits in the reply brief.  ECF No. 154.  The undersigned recommends the motion for summary judgment be GRANTED in part and DENIED in part.

## I.    Overview of the Complaint

This case was filed on September 27, 2022.  ECF No. 1.  The operative Third Amended Complaint ("TAC") was filed on November 15, 2022.  ECF No. 11.  The TAC alleges violations

1

of the Americans with Disabilities Act, the Fair Housing Act, the Rehabilitation Act and the 14th Amendment's Equal Protection and Due Process Clauses.  Id. at 4.  Plaintiffs, two adult members of the same household, allege that defendants have violated the laws with respect to their housing and their requested accommodations related to various disabilities.  See generally, ECF No. 11. Plaintiff David Tyrone Samuel is a disabled person currently receiving Social Security Disability Insurance ("SSDI") for diagnoses of Attention Deficit Hyperactivity Disorder, Autism Spectrum Disorder, Chronic Post Traumatic Stress Disorder, and Major Depressive Disorder.  Id. at 9. Samuel and co-plaintiff Sydney Brooke Roberts are the parents of two children: AIMS and DAYS.  Id.  AIMS has been diagnosed with Autism Spectrum Disorder and is non-verbal.  Id.

The family participates in the Department of Housing and Urban Development Housing Choice Voucher program ("HCV").  Id. at 7.  Plaintiffs submitted a request for an extra bedroom on their voucher as a disability accommodation on May 19, 2022.  Id.  Plaintiffs received a denial signed by MaryLiz Paulson, director of the HVC program operations for SHRA, on behalf of the Reasonable Accommodation Compliance Committee ("RACC"), on July 15, 2022.  Id. at 19.

On August 4, 2022, after various attempts to communicate between plaintiffs and SHRA, plaintiffs submitted a written request for a hearing to SHRA.  Id.  at 19.  On August 28, 2022, plaintiffs received an email from SHRA with login credentials for a zoom hearing to be held on September 12, 2022.  Id. at 20.  Plaintiffs had their hearing before officer John Lew.  Id.  The hearing was attended by Tanya Cruz, who appeared on behalf of RACC.  Id. at 21.  At the hearing, plaintiffs argued that the SHRA regulations allow for housing modification "for durable medical equipment, and [that] the room itself was durable medical equipment."  Id. at 22.  On September 15, 2022, Cruz informed plaintiffs that Lew would not be able to submit a decision for the hearing and that SHRA would set another hearing for a future date.  Id.

On September 16, 2022, plaintiffs sent a certified letter disagreeing with the lack of decision, including a copy of their hearing arguments.  Id. at 23.  On September 26, 2022, plaintiffs sent another letter via certified mail requesting various accommodations to aid in effective communication and other voucher adjustments as reasonable accommodations.  Id.  As of the filing of the TAC on November 11, 2022, SHRA had not responded.  Id.

2

## II.    Standard for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty

3

Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248. In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Service, Inc., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)).  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

### III.   Statement of Undisputed Facts

A.  Submitted Evidence and Request for Judicial Notice

A complete statement of undisputed facts, with each of the parties' positions, is located at ECF No. 153-6.  While the statement has been considered in full, the court notes that the it contains a significant amount of unnecessary and/or unhelpful information regarding the docket in this case.  For example, undisputed fact number 8 simply recounts a minute order issued by the court. ECF No. 153-6 at 5.  Such procedural information is not properly included in a statement of undisputed facts.  Likewise, defendants filed a request for judicial notice that is entirely

4

superfluous because it asks the court to take notice of documents already included in the docket, such as the Third Amended Complaint, defendants' Answer, and other motions and orders.  ECF No. 147.

Additionally, the evidence submitted by defendants in support of their motion for summary judgment is largely useless.  While there are some documents with evidentiary value such as emails and letters (e.g., ECF No. 146-10), defendants also submitted as "evidence" the *entire* House Choice Voucher Program administrative plan for 2023 without directing the court to any particular portions (ECF No. 146-11 through ECF No. 146-17 at 19), and unanswered Requests for Admission submitted to plaintiffs that contain only defendants' requests (ECF Nos. 146-7 and 146-8).[1]  The purpose of evidence submitted in support of a motion for summary judgment, a statement of undisputed facts, and a request for judicial notice is to provide the court with evidence which is not already part of the docket, and which may be used to provide facts relevant to the substance of the legal claims at issue.  Defendants' submissions are inadequate to serve this purpose.

The declaration of MaryLiz Paulson is particularly concerning.  Ms. Paulson identifies herself as the Director of the Housing Choice Voucher Program at SHRA, and states generally that she has "personal knowledge of the facts set forth" in her declaration.  ECF No. 146-4 at 1. Paulson states that "While the September 12, 2022, hearing regarding the denial of Plaintiffs' reasonable accommodation was taking place, the hearing officer had a medical emergency and

---

[1]  Defendants moved for summary judgment on March 6, 2025, asserting that they were entitled to summary judgment because plaintiffs had failed to timely respond to their requests for admission and accordingly all requests should be deemed admitted.  ECF No. 83-1 at 5.  On April 9, 2025, plaintiffs acknowledged that they inadvertently failed to serve timely responses to the requests for admission due to medical and other issues, and asked that the admissions be withdrawn and replaced with attached responses which denied each request for admission.  ECF No. 88.  On May 15, 2025, the undersigned issued a minute order granting the motion to withdraw the admissions, replacing them with plaintiffs submitted responses, and denying the motion for summary judgment without prejudice because it was heavily based on "admissions" which had been withdrawn.  ECF No. 106.  It is accordingly unclear why defendants have submitted their requests for admission in support of the present motion for summary judgment but did not include plaintiffs' responses.  Plaintiffs' responses, which deny each request for admission, are located at ECF No. 88 at 3-5.  Because there are no deemed admissions, the requests themselves have no evidentiary value.

the hearing had to be ended." Id.  Paulson does not state that she was present at the hearing and witnessed this unspecified emergency, nor does she give any alternative basis for her personal knowledge of the fact.  There is no declaration from the hearing officer or other percipient witness.  Plaintiff states in his opposition to defendants' motion that the September 12 hearing lasted approximately two hours, that the hearing officer made substantive rulings during the hearing, and that the hearing officer did not announce a medical emergency or continuance during the hearing.  ECF No. 152 at 10.  Plaintiff objects to the admission of Paulson's declaration because she "does not establish that she was present during the hearing."  ECF No. 152 at 18.  The court sustains the objection for lack of foundation, and will not—for purposes of this motion—credit Ms. Paulson's statement that the hearing officer had a medical emergency, because her declaration does not establish that she was a percipient witness and defendants offer no admissible evidence of such an emergency.

Summary judgment analysis is made more difficult than it should be by the fact that there has apparently been little meaningful discovery in this case—for example, it does not appear that any depositions have been taken—although the case has been pending for over three and a half years.  Nevertheless, having noted the myriad deficiencies in defendants' motion, the undersigned has fully considered the statement of undisputed facts and utilized all relevant substantive information that it contains.  Further, the undersigned has previously adjudicated a motion for partial summary judgment brought by plaintiffs in which the court was able to identify some undisputed facts,[2] and those facts are also included here.  Unless otherwise specified, the facts set forth below are either expressly undisputed by the parties or have been determined by the court, upon a full review of the record, to be undisputed by competent evidence.

B.  Undisputed Facts of the Case

David Samuel, Sydney Roberts, and their two children live in housing subsidized by the Housing Choice Voucher Program operated by SHRA.  Samuel was known by defendants to be an individual with a disability prior to the reasonable accommodation request at issue in this case,

---

[2]  See ECF No. 67 (motion), ECF No. 76 (Findings and Recommendations), ECF No. 79 (Order adopting Findings and Recommendations).

6

according to SHRA's own documents.  ECF No. 74-1 at 2.  Defendants had noticed that Samuel was receiving Social Security Disability Insurance payments through their income verification process.  Id.  On May 19, 2022, plaintiffs submitted their first reasonable accommodation request on behalf of Samuel and their minor child AIMS.  Id. at 2.  On or about May 19, 2022, plaintiffs and their children were residing in a two- bedroom apartment.  ECF No. 74-1 at 8.  The letter dated May 19, 2022, requested reasonable accommodation for an extra bedroom so that Samuel could have his own bedroom and AIMS could have her own bedroom.  Id.

In a letter dated July 8, 2022, defendants denied the reasonable accommodation request for Samuel and ignored the request for AIMS in a letter signed by MaryLiz Paulson.  ECF No. 67 at 62.  A hearing was held on the denial on September 12, 2022 before hearing officer John Lew.  ECF No. 146-4 (Paulson Declaration) at 1; 146-9 at 1 (letter from SHRA setting hearing).  At the conclusion of the haring, Samuel understood that he was to submit a written summary of his arguments to SHRA, which would be forwarded to the hearing officer.  ECF No. 146-10 at 92.  Plaintiff submitted the summary.  ECF No. 146-10.

On September 16, 2022, Samuel sent a letter to SHRA memorializing the fact that plaintiffs had received a phone call on Thursday, September 15, 2022, stating that their "reasonable accommodation request could not be decided" by the hearing officer, but that the call provided no reason for the inability to provide a decision and provided no alternative arrangement.  ECF No. 146-10 at 92.  The actual reason that the hearing officer did not issue a decision is disputed, though Paulson states that she "eventually learned" that the hearing officer was unable to return to work due to a medical condition, which required her to hire a new officer.  ECF No. 146-4 at 2.  There is no evidence that the officer's medical condition or the status of a decision resulting from the September 12, 2022 hearing was ever communicated to plaintiffs.  Instead of a decision from the hearing, in a letter dated November 16, 2022 and signed by Paulson, defendants again denied the reasonable accommodation request for Samuel and also denied the request for AIMS.  ECF No. 67 at 64.

On March 9, 2023, Ibra Henley sent an email stating "We are very close to being able to reschedule the Informal Hearing.  We apologize for the delay."  ECF No. 146-10 at 81.  Henley

also referenced the fact that new accommodations had been requested.  Id.  On March 20, 2023, Henley sent an email stating that the request for an additional bedroom (3-bedroom voucher) was granted (without any explanation for the change in decision), but that plaintiffs' new request for housekeeping services was denied because such accommodation would require a "fundamental change to the Housing Choice Voucher program which provides rental subsidies for low income families."  ECF No. 146-10 at 79 (e-mail from Henley).  Henley asked if a hearing was still necessary in light of the fact that the request for 3 bedrooms had been granted.  Id.

On March 21, 2023, Samuel responded that issuance of the 3-bedroom voucher was not sufficient because the rooms needed to be "configured specifically to accommodate" the individuals with disabilities in their family.  Id. at 78.  Samuel also stated that the family needed to modify their September 2022 request from a 3-bedroom voucher to a 5-bedroom voucher to accommodate the family's disability needs.  Id. at 19.  On April 3, 2023, a letter was sent to plaintiffs noting their previous request for an additional bedroom (3 bedrooms total) had already been approved and that a new request for two bedrooms each  for Samuel and AIMS (5 bedrooms total) was denied, as was their request for sound proofing and black out curtains, which needed to be directed to their landlord.  ECF No. 74-2 at 6; ECF No. 146-9 at 7 (letter from SHRA).

### IV.    Analysis

Defendants seek summary judgment, arguing that discovery has revealed no evidence that they violated any law.  ECF No. 146-1 at 11-14.

A. Americans with Disabilities Act, Rehabilitation Act, and Fair Housing Act

Defendants combine their arguments for summary judgment as to plaintiffs' ADA, Rehabilitation Act, and FHA claims.  ECF No. 146-1 at 7-9.  A plaintiff alleging a violation of Title II of the ADA "must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) *such exclusion, denial of benefits, or discrimination was by reason of his disability*."  Weinreich v. Los Angeles County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir.1997) (italics original).  "A claim under Section 504 [of the Rehabilitation Act] is composed of identical elements and applies to any

8

public program that receives federal financial assistance." C.B. v. Moreno Valley Unified Sch. Dist., 732 F. Supp. 3d 1139, 1156 (C.D. Cal. 2023) (citing Duvall v. County of Kitsap, 260 F.3d at 1135); see also Wong v. Regents of Univ. of Cal., 192 F.3d 807, 816 (9th Cir. 1999).

The Fair Housing Act (FHA) prohibits discrimination against "any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin," 42 U.S.C. § 3604(b), or "because of a handicap," 42 U.S.C. § 3604(f)(2).  To show discrimination based on failure to provide a reasonable accommodation, a plaintiff must demonstrate that: (1) he or she suffers from a handicap as defined by the Fair Housing Act; (2) the defendant knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendant refused to make such accommodation.  Giebeler v. M & B Associates, 343 F. 3d 1143, 1147 (9th Cir. 2003).

Defendants contend that plaintiffs are unable to show they were denied a benefit or accommodation by defendants because on or about March 20, 2023, plaintiffs' request for an additional bedroom was granted, rendering the claim moot.  ECF No. 146-1 at 8.  Further, defendants argue that plaintiffs' later requests for 5 bedrooms, sound proofing, blackout curtains, and that all communications with all plaintiffs be through emails to David Samuel were denied because (1) the property owner, not defendants, had jurisdiction over the property and these types of requests, and (2) plaintiff Roberts, not plaintiff Samuel, was the head of household, and defendants had no information that plaintiff Roberts had a disability which required email communication.  ECF No. 146-1 at 9.

Plaintiffs counter that summary judgment is not warranted because this case is "not about a single, cured error" but instead about repeated refusals to provide fair hearing processes and unnecessary delay in providing the initially requested accommodation.  ECF No. 152 at 2.  As to the original issue of the third bedroom, the court agrees that defendants have not made a compelling point regarding mootness.  The TAC seeks monetary damages (ECF No. 11 at 26), which as a matter of law are not mooted by the eventual provision of an accommodation after a

period of denial.  Duvall v. County of Kitsap, 260 F.3d 1124, 1133, n.4 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001); Memmer v. Marin County Courts, 169 F.3d 630, 632, n.3 (9th Cir. 1999) ("monetary damages (both compensatory and punitive) . . . are recoverable under the ADA in certain circumstances even where the discriminatory conduct has ceased.").  The fact that SHRA ultimately did determine that plaintiffs were entitled to a 3-bedroom voucher as a disability accommodation seriously undercuts any argument that plaintiffs were not denied a benefit and/or prevented from participating fully in the Voucher Program for the prolonged period that they waited for the 3-bedroom voucher to be approved.

Defendants' arguments regarding plaintiffs' entitlement to a five bedroom accommodation are largely conclusory.  The number of bedrooms covered by a voucher—unlike the conditions of a particular apartment—clearly comes within the scope of the program operated by defendants, and the record presented to the court does not permit determination as a matter of law that plaintiffs were not or are not entitled to a voucher that would enable them to rent a five bedroom unit as an accommodation for disabled family members.  Nor have defendants provided any explanation as to why their duty to communicate in an accessible manner is limited to communications with the designated head of household.  See ECF No. 146-1.  Indeed, it is apparent that SHRA was regularly communicating with Samuel as the de facto family spokesperson, and SHRA had ample notice that he asserted a disability that required communication accommodations.  ECF No. 146-1 at 9.  In sum, defendants have not demonstrated their entitlement to summary judgment on these issues.

Defendants have, however, provided an adequate showing that they are entitled to summary judgment as to plaintiffs' claims regarding the failure to provide blackout curtains, soundproofing, and/or housekeeping services because these services fall outside the scope of the Voucher program, and plaintiffs have not made any showing otherwise.  The law is clear that "under the [Fairh Housing Act], RA and the ADA, only reasonable accommodations that do not cause undue hardship or mandate fundamental changes in a program are required."  Giebeler v. M & B Assocs., 343 F.3d 1143, 1154 (9th Cir. 2003).  Defendants have demonstrated that the Voucher program provides only subsidies for housing, and that ancillary services such as

10

housekeeping and room features are outside the scope of the program.  The court agrees with defendants that requiring SHRA to provide such accommodations would require a fundamental change to the program itself.  Because plaintiffs have put forth no evidence to the contrary, the court agrees that defendants are entitled to summary judgment as to these accommodations because they would require a "fundamental change" to the Voucher program.

In sum, summary judgment is appropriate only on claims arising from plaintiffs' requested accommodations for housekeeping, soundproofing, and blackout curtains.  Defendants have not otherwise demonstrated that they are entitled to summary judgment as to plaintiffs' claims under the ADA, RA and FHA.

    B.  Constitutional Claims

        1.  Overview

Claim Three of the TAC asserts a cause of action under 42 U.S.C. § 1983, alleging both due process and equal protection violations.  Each of the other claims in the TAC is based on a discrete act of alleged discrimination, which is asserted to violate the FHA, RA and ADA as well as plaintiffs' equal protection rights.[3]  Defendants' motion addresses all putative constitutional claims collectively.  ECF No. 146-1 at 9-10.

        2.  Claim Three: Section 1983

To prevail on a claim for the violation of civil rights under 42 U.S.C. § 1983, plaintiffs must show that the defendants, acting under color of state law, deprived them of a right guaranteed under the Constitution or a federal statute.  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988).  "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'"  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (alteration in original, emphasis in original) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).

_____

[3]  Claim One alleges refusal to provide reasonable accommodation in plaintiffs' housing; Claim 2 alleges denial of effective communication; Claim 4 alleges inaccessibility of services; Claim 5 alleges discrimination based on disability for refusing to provide space for durable medical equipment; Claim 6 alleges discrimination based on family composition.  ECF No. 11 at 23-30.

a.  Plaintiffs' Equal Protection Claim Fails as a Matter of Law

The Equal Protection Clause provides that "no State shall ... deny to any person within its jurisdiction equal protection of its laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all similarly situated persons should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Generally speaking, "[t]o state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). Disability is not a protected class for equal protection purposes. City of Cleburne, 473 U.S. at 446; Pierce v. County of Orange, 526 F.3d 1190, 1225 (9th Cir. 2008). "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational… If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause." Bd. of Trs. of Univ. of Alabama v. Garrett, 531 U.S. 356, 367–68 (2001). To the extent that plaintiffs claim that the denial of accommodations and/or acts of disability discrimination violate their equal protection rights, the claim therefore fails as a matter of law.

Where a governmental entity distinguishes among citizens on grounds other than membership in a protected class, the Equal Protection Clause requires only that it have a rational basis for doing so. See Kadrmas v. Dickinson Pub. Sch., 487 U.S. 450, 457-58 (1988). Whether defendants' responses to plaintiffs' requests satisfied the ADA, RA and FHA remains to be seen. However, no jury could find that the reasons articulated by SHRA fall below the low bar of the rational basis test. Moreover, plaintiffs have identified no evidence that other voucher holders in similar circumstances were granted similar accommodations. Absent such evidence, there can be no equal protection violation. See Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

For all these reasons, defendants are entitled to summary judgment on the § 1983 claim to the extent it alleges violation of equal protection.

////

12

b.  Plaintiffs' Due Process Claim Fails as a Matter of Law

Plaintiffs' other cause of action under § 1983 is for alleged violations of the Due Process Clause of the Fourteenth Amendment.  Under the Due Process Clause, "No State shall ... deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "A section 1983 claim based upon procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process."  Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993).  Thus, to state a procedural or substantive due process claim, the plaintiff must "as a threshold matter" show that she was deprived of a "life, liberty, or property" interest protected by the Constitution.  Nunez v. City of L.A., 147 F.3d 867, 871 (9th Cir. 1998).  Defendants argue that plaintiffs' due process claim fails because "there is no admissible evidence that Plaintiffs were denied benefits by Defendants."  Id. at 9.

The court agrees that plaintiffs have not demonstrated that the delay or denial of their requested accommodations deprived them of a constitutionally protected property right. Applicants for and participants in some Section 8 programs may have protected property interests in the programs' benefits, see Nozzi v. Hous. Auth. of City of L.A., 806 F.3d 1178, 1191 (9th Cir. 2015), but the benefits thus protected are the receipt of or access to a housing subsidy. Accordingly, subsidies may not be reduced without notice and an opportunity to be heard.  Id. Section 8 applicants are also, under some circumstances, constitutionally entitled to a transparent and fundamentally fair process for consideration of their applications.  See Ressler v. Pierce, 692 F.2d 1212 (9th Cir. 1982).  Here, however, plaintiffs are not facing termination from the Housing Choice Voucher Program or a reduction in their benefits.  The court is unaware of any authority for the proposition that a participant has a constitutionally protected property interest in requested disability accommodations within the program.[4]

---

[4]  Courts have rejected claims that disability entitles Section 8 applicants to be placed on a waiting lists for vouchers, or given priority placement on waiting lists.  See, e.g., Emrit v. Marion County Housing Auth., 2017 U.S. Dist. LEXIS 25897 *8-9 (Dist. Or., Feb. 23, 2017) (finding Housing Choice Voucher Program does not create protected property interest in disabled person's placement on the waiting list, citing HUD regulations and decisions of other courts).

13

Moreover, even if there were a property interest at stake, the Due Process Clause sets only minimum procedural requirements.  Plaintiffs indisputably had access to a process for requesting accommodations, they had opportunities to be heard both via written submissions and at a hearing conducted by videoconference, and they received an explanation of the reasons for denial of their requests.  These are the essential requirements of due process.  See United States v. James Daniel Good Real Prop., 510 U.S. 43, 48 (1993).  Plaintiffs' complaints regarding delays, inadequate responsiveness, and lack of accommodation in communications during this process, as well as their substantive challenge to the denials, all present questions of compliance with the ADA, RA and FHA, but they do not suggest a deprivation of procedural due process.

Because no authority supports the propositions (1) that plaintiffs have a protected property interest in the accommodations at issue, or (2) that they were deprived of constitutionally required process, defendants are entitled to summary judgment on the § 1983 claim to the extent it alleges violation of procedural due process.

3.   Claims One, Two, Four and Five

Claims One, Two, Four and Five of the TAC each allege disability discrimination and/or denial of necessary accommodations, and each claim asserts that the actions challenged as discriminatory under the ADA, RA and FHA also violated plaintiffs' equal protection rights.  For the reasons explained above regarding Claim Three, plaintiffs' equal protection claims arising from responses to their disabilities fail as a matter of law.  Defendants are entitled to summary judgment on the equal protection aspect of these claims.

4.   Claim Six: Discrimination Based on Family Composition

Claim Six alleges that defendants have forced plaintiffs into an "'under-housed' condition" because of the composition of their family, contrary to the FHA's explicit protection against discrimination based on family status.  ECF No. 111 at 29-30.[5]  Plaintiffs make no factual allegations suggesting an intent to discriminate against them on the basis of their family's specific

---

[5]  The TAC notes in this context the FHA's protections for foster and adoptive families, id. at 30, although plaintiffs do not allege that they are foster or adoptive parents.  The undersigned reads this claim to allege that defendants have effectively penalized plaintiffs for having a total number of "family members exceed[ing] what SHRA believes the family should have."  Id. at 29.

14

size or composition. Plaintiff's theory appears to be that defendants have failed to reasonably accommodate the family's collective need for additional bedrooms in light of the specific disabilities of two out of four family members (David Samuel and AIMS), and that this constitutes discrimination on the basis of family composition as well as on the basis of disability. As with Claims One, Two, Four and Five, the TAC alleges a violation of equal protection as well as violation of the applicable statutes.

Like disability, "family composition" is not recognized as a protected class for purposes of equal protection analysis. While substantive due process and the First Amendment both prevent government abridgement of the fundamental right to familial association, see Keates v. Koile, 883 F.3d 1228, 1235-1236 (9th Cir. 2018), this case does not involve any alleged interference by defendants in plaintiff's relationships with their children or with each other. Rather, this case is about defendants' failure to provide certain accommodations to plaintiffs' family. That matter is governed by the statutory frameworks discussed above. Equal protection requires only that defendants not treat plaintiffs differently from other similarly situated voucher holders without a rational basis for the difference. See Nurre v. Whitehead, 580 F.3d 1087, 1098 (9th Cir. 2009). Plaintiffs have identified no evidence that other similarly situated families have received the benefits at issue, such that plaintiffs are being treated differently. Moreover, defendants did provide a rationale for their decision which is not objectively irrational. (Whether the denials accord with the requirements of the applicable statutes is another matter.) Accordingly, defendants are entitled to summary judgment on the equal protection aspect of Claim Six.

## V.    Conclusion

For the reasons explained above, IT IS RECOMMENDED that defendants' motion for summary judgment (ECF No. 146) be GRANTED IN PART AND DENIED IN PART as follows:

1. GRANTED as to Claim Three (42 U.S.C. § 1983); the equal protection aspects of Claims One, Two, Four, Five and Six; and statutory claims related to housekeeping, soundproofing, and blackout curtains; and

15

2.   DENIED in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: June 10, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

16